IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

RECEIVED
2014 MAY 23 P 3:48
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

RAEMONICA CARNEY,   )
                    )
     Plaintiff,     )
                    )  CIVIL ACTION NO:
vs.                 )  1:14-cv-392
                    )
CITY OF DOTHAN,     )  JURY TRIAL DEMANDED
                    )
     Defendant.     )

## COMPLAINT

### I. NATURE AND CAUSE OF ACTION

Plaintiff RaeMonica Carney, a former fourteen (14) year veteran of the Dothan Police Department, brings this action against Defendant City of Dothan to redress severe and pervasive discrimination, harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, this Court's Consent Decree prohibiting race discrimination in the City of Dothan, and Defendant's unlawful violations of Plaintiff's First Amendment right to freedom of speech.

### II. PARTIES

1. Plaintiff RaeMonica Carney (hereinafter "Carney") is a citizen of the state of Alabama currently residing in the state of Kentucky.

2. Defendant City of Dothan (hereinafter "Defendant") is a municipal

1

corporation in Dothan, Alabama.

III. JURISDICTION

3. Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331, 1343; 42 U.S.C. § 1983; 42 U.S.C. § 2000(e), *et seq.*; and this Court's Consent Decree set forth in *Wiggins v. Hollis, et al.*, No 75-57-S (M.D. Ala. 1976) (adopting the Affirmative Action Plan set forth in *Yelverton v. City of Dothan*, 370 F. Supp. 612 (M.D. Ala. 1974)). (Ex. A).

4. Jurisdiction is further invoked as Plaintiff has exhausted all administrative remedies by timely filing a formal charge of race and sex discrimination, harassment, and retaliation with the Equal Employment Opportunity Commission (hereinafter "EEOC") and receiving the attached Notice of Right to Sue. (Ex. B).

IV. FACTS

5. Carney is a black female.

6. In 1999, Defendant hired Carney as a police officer.

7. Carney worked for Defendant for fourteen (14) years with good performance, assuming additional responsibilities such as School Resource Officer, Community Watch Coordinator, Crime Stoppers Coordinator, and Recruiting Team Member, in addition to regular officer duties.

8. Carney received no additional compensation for the increased

responsibilities.

9. Throughout Carney's employment, Defendant promoted white officers with less seniority and experience at a faster rate than Carney.

10. Carney trained a white officer, who was promoted to Corporal over Carney after only three (3) years of service with the department.

11. The white officer had no previous law enforcement experience.

12. Carney had approximately six (6) years of service with the department, and ten (10) years of overall law enforcement experience.

13. Defendant denied Carney the right to apply for said promotion to Corporal.

14. Defendant failed to promote Carney to Corporal until 2011, at which time she had approximately eleven (11) years of service with the department, and fifteen (15) years of overall law enforcement experience.

15. Defendant promoted the white officer to Sergeant approximately two (2) years after the officer's promotion to Corporal, at which time the officer had approximately five (5) years of service.

16. Defendant never promoted Carney to Sergeant during her fourteen (14) years of employment, despite Carney's good performance and assumption of increased levels of responsibility.

17. Several other white officers were promoted at a faster rate than

Carney.

18. Carney applied for several positions within the Investigation Division and the Hostile Negotiation Team during her employment.

19. Defendant failed to grant Carney any interviews for said positions.

20. Defendant offered the positions to white officers.

21. Defendant credited white officers with more paid leave time than Carney during her employment.

22. Defendant fostered a hostile work environment throughout Carney's employment.

23. Carney's work environment became increasingly hostile when she began voicing concerns about the rights of minority citizens who she believed the department was unfairly targeting and treating differently than white citizens.

24. Defendant removed Carney's access to certain computer applications in which Carney received community tips that assisted her in solving crimes.

25. The computer applications were part of the Crime Stoppers program, a program that Carney largely implemented.

26. Defendant allowed Carney's white co-workers to access the applications and gave them credit for solving the crimes.

27. Defendant required officers to complete and pass periodic, employment-related exams.

28. Carney consistently scored above average on the exams.

29. However, Defendant incorrectly scored Carney's exams on several occasions, resulting in lower scores than Carney actually earned.

30. On one occasion, Carney challenged a clearly erroneous scoring, demonstrating that her answer was correct according to the department's training manual.

31. Carney's white superior officer refused to review the error or correct Carney's score.

32. In a required firearms test, Defendant failed to score several of Carney's shots that she fired within the target zone, resulting in a reduced score.

33. Carney pointed out the incorrectly-counted shots to her white superior officer.

34. The superior officer gave Carney credit for some, but not all, of the accurately-fired shots.

35. Carney nonetheless scored a ninety-six (96) on the exam.

36. The results of the required tests were used both to evaluate present performance and to evaluate officers for future promotions.

37. Carney was denied training opportunities that were offered to white officers, including, but was not limited to, advanced School Resource Officer training.

38. In or around February 2013, Defendant accused Carney of an alleged breach of Defendant's social media policy.

39. Carney had posted comments to her personal Facebook page about an ongoing news story, while off-duty, on her personal computer.

40. Carney's speech was protected by the First Amendment.

41. Defendant mischaracterized Carney's comments and alleged that she was in violation of Defendant's Social Media Policy.

42. Defendant began retaliating against Carney for her speech.

43. Defendant immediately removed Carney from her office within the police department and assigned the office to a white male.

44. Defendant moved Carney to an offsite, warehouse storage room, away from the main police building.

45. The storage room had no phone, no computer, no office equipment, no keys or locks on the doors, no security, and a faulty air conditioner.

46. Carney was forced to assist the janitor in cleaning out the space and remove chairs and other items held in storage before attempting to set up a makeshift office.

47. Defendant then suspended Carney for ten (10) days without pay, alleging the unfounded social media violation.

48. Defendant stripped Carney of the duties of Community Watch

Coordinator, Crime Stoppers Coordinator, and Recruiting Team Member.

49. Defendant demoted Carney to front desk duty upon her return from the suspension, which is a low-status position within the department.

50. A white male officer that had worked under Carney's direction assumed Carney's previous duties.

51. Carney is the only officer to have ever been accused of a social media policy violation within the department.

52. White officers posted comments and photos on Facebook and other social media, arguably more controversial than Carney's speech, in violation of the social media policy.

53. The white officers were not disciplined, suspended, or terminated.

54. On or about April 19, 2013, Carney filed an EEOC Charge against Defendant alleging race discrimination and harassment.

55. In or around May 2013, Carney applied for a Sergeant position.

56. Defendant administered Carney a faulty exam, giving the questions in an incorrect order during an oral exam.

57. Despite Carney's answers being out of sync with the scoring, Carney placed eighth (8th) out of approximately seventeen (17) applicants.

58. Defendant gave the promotion to a white male officer.

59. Prior to the exam, Defendant gave the chosen officer special training

in preparation for the exam.

60. A superior officer advised Carney that the white officer was being "groomed" for the Sergeant position.

61. Carney heard racial jokes and slurs on a regular basis throughout her employment.

62. Carney complained to management on several occasions about the discrimination and harassment.

63. Defendant failed to investigate Carney's complaints or remedy the unlawful conduct.

64. On or about May 28, 2013, Defendant subjected Carney to a meritless psychiatric examination.

65. Carney scored high marks on the examination.

66. The exam, typically administered to candidates for employment within the police department, ranked Carney as "highly recommended."

67. On June 20, 2013, the City of Dothan Personnel Board upheld Carney's ten (10) day suspension.

68. On July 10, 2013, Carney appealed the Dothan Personnel Board's decision to the Houston County Circuit Court.

69. On December 16, 2013, prior to the court's ruling, Defendant terminated Carney's employment based on unfounded allegations of "gross

8

insubordination."

70. Defendant claimed that Carney was being "grossly insubordinate" during a call to Carney's home in which she was the victim of a minor domestic dispute, while off duty.

71. On or about December 16, 2013, Carney amended her EEOC Charge to add retaliation.

72. On January 14, 2014, the Houston County Circuit Court upheld Carney's suspension, but declined to exercise jurisdiction over Carney's First Amendment claims as set forth herein. (Carney's termination was never an issue before the court.)

73. Defendant's actions constitute discrimination, harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended.

74. Defendant's actions constitute violations of the Consent Decree entered by this Court to redress pervasive race discrimination within the City of Dothan in, *e.g.*, promotions, assignments, testing, and other rights and privileges of employment.

75. Defendant's actions constitute violations of Carney's First Amendment right to free speech.

76. Carney has suffered significant damages as a result of Defendant's unlawful actions.

## COUNT I – RACE AND GENDER DISCRIMINATION
## TITLE VII

77. Carney re-alleges every preceding fact as if fully set forth herein.

78. Carney is a black female.

79. Defendant promoted white officers with less seniority and experience at a faster rate than Carney.

80. Defendant offered white officers preferential work assignments over Carney.

81. Defendant offered white officers better training opportunities than Carney.

82. Defendant offered white officers a better work environment than Carney.

83. Defendant gave white officers preferential treatment with regard to testing.

84. Defendant removed responsibilities from Carney and assigned them to a white officer.

85. Defendant restricted Carney's access to computer programs given to white officers that better enabled them to perform their duties.

86. Defendant credited white officers with more paid leave time than Carney.

87. Defendant unlawfully suspended Carney for ten (10) days without pay

and placed her on a two (2) year probation for an alleged social media policy violation.

88. White officers that committed the similar or worse offenses were not disciplined.

89. Defendant unlawfully terminated Carney's employment on December 16, 2013 for unfounded accusations of "gross insubordination."

90. White officers who committed similar or worse violations than Carney and were not charged with gross insubordination or terminated.

91. Carney was replaced by a white officer.

92. Defendant discriminated against Plaintiff on the basis of race and sex in violation of Title VII of the Civil Rights Act of 1964, as amended.

93. Carney suffered significant damages as a result of Defendant's unlawful actions.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays for the following relief:

(a) Entry of judgment in favor of the Plaintiff;

(b) Equitable relief enjoining Defendant, its agents, its successors, employees, and those acting in concert with Defendant from continuing to violate Plaintiff's civil rights;

(c) Reinstatement of Plaintiff's employment;

(d) An Order requiring Defendant to pay lost wages and other lost employment benefits, front pay, compensatory damages, and any other monetary relief available at law;

(e) An award of costs and reasonable attorneys' fees, plus interest;

(f) Such other and further relief this Court deems just and proper.

## COUNT II – RACE DISCRIMINATION
## VIOLATION OF CONSENT DECREE

94. Carney re-alleges every preceding fact as if fully set forth herein.

95. On February 13, 1976, this Court entered a Consent Decree to redress race discrimination in the City of Dothan. *Wiggins v. Hollis, et al.*, No. 75-57-S (M.D. Ala. 1976) (Ex. A).

96. The Consent Decree incorporated the Affirmative Action Plan entered in *Yelverton v. City of Dothan*, wherein the Court held that "there has been and still remains substantial and pervasive racial discrimination in Dothan" *Yelverton*, 370 F. Supp. 612, 618 (M.D. Ala. 1974).

97. The Eleventh Circuit and this Court have expressly acknowledged the Affirmative Action Plan and Consent Decree adopted in these cases. *Williams v. City of Dothan*, 818 F.2d 755, 760-61 (11th Cir. 1987) (acknowledging Dothan's continued obligations under the Affirmative Action Plan in *Yelverton*); *Matthews v. City of Dothan*, No. 04-640, 2006 WL 3742237 (M.D. Ala. Dec. 18, 2006) (acknowledging the existence of the Consent Decree in *Wiggins*).

98. The Consent Decree prohibits discrimination in, *e.g.*, promotions, assignments, testing, and the "rights and privileges given white employees."

99. Defendant failed to promote Carney in violation of the Consent Decree prohibiting discrimination in promotions.

100. Defendant discriminated against Carney with regard to assignments in violation of the Consent Decree.

101. Defendant failed to score Carney's required testing accurately in violation of the Consent Decree prohibiting discrimination in testing.

102. Defendant offered white officers preferential training opportunities in violation of the Consent Decree prohibiting discrimination in the rights and privileges of employment.

103. Defendant suspended and terminated Carney's employment in violation of the Consent Decree.

104. Carney has suffered significant damages as a result of Defendant's unlawful actions.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays for the following relief:

(a) An Order holding the City of Dothan in contempt of this Court's Consent Decree;

(b) Equitable relief enjoining Defendant, its agents, its successors,

employees, and those acting in concert with Defendant from continuing to violate the Consent Decree;

(c) Reinstatement of Plaintiff's employment;

(d) An Order requiring Defendant to pay lost wages and other lost employment benefits, front pay, compensatory damages, and any other monetary relief available at law;

(e) An award of costs and reasonable attorneys' fees, plus interest;

(f) Such other and further relief this Court deems just and proper.

### COUNT III – 42 U.S.C. § 1983
### FIRST AMENDMENT VIOLATIONS

105. Carney re-alleges every preceding fact as if fully set forth herein.

106. In or around February 2013, Defendant accused Carney of an alleged breach of Defendant's Social Media Policy.

107. Carney had posted Facebook comments about an ongoing news story on her personal computer, while off-duty.

108. Defendant misconstrued Carney's comments and began retaliating against her for the speech.

109. Defendant removed Carney from her office within the police department.

110. Defendant placed Carney into a makeshift office in an offsite, warehouse storage room, away from the main police building.

111. Defendant suspended Carney for ten (10) days without pay.

112. Defendant stripped Carney of the Community Watch Coordinator, Crime Stoppers Coordinator, and Recruiting Team Member duties.

113. Defendant demoted Carney to front desk duty, a low-status position within the department.

114. Defendant placed Carney on a two (2) year probation in which any further disciplinary action would subject Carney to termination.

115. Defendant terminated Carney's employment on December 16, 2013 based on unfounded allegations of "gross insubordination."

116. At the time of Carney's termination, she was the only officer to have ever been disciplined under Defendant's Social Media Policy.

117. Defendant unconstitutionally applied its policies to Carney, violating her First Amendment right to freedom of speech.

118. Carney has suffered significant damages as a result of Defendant's actions.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays for the following relief:

(a) Entry of judgment in favor of the Plaintiff;

(b) Equitable relief enjoining Defendant, its agents, its successors, employees, and those acting in concert with Defendant from

continuing to violate Plaintiff's constitutional rights;

(c) Reinstatement of Plaintiff's employment;

(d) An Order requiring Defendant to pay lost wages and other lost employment benefits, front pay, compensatory damages, and any other monetary relief available at law;

(e) An award of costs and reasonable attorneys' fees, plus interest;

(f) Such other and further relief this Court deems just and proper.

## COUNT IV – RETALIATORY HOSTILE WORK ENVIRONMENT

119. Carney re-alleges every preceding fact as if fully set forth herein.

120. Defendant subjected Carney to a retaliatory hostile work environment following her complaints about the department's discriminatory treatment of minority citizens.

121. Defendant subjected Carney to a retaliatory hostile work environment following the filing of her EEOC charge alleging race and sex discrimination on or about April 19, 2013.

122. Defendant denied Carney promotional opportunities after Carney made said complaints.

123. Defendant removed Carney from her office within the police department and assigned the office to a white officer.

124. Defendant placed Carney into a makeshift office in an offsite,

warehouse storage room, away from the main police building.

125. Defendant suspended Carney for ten (10) days without pay.

126. Defendant stripped Carney of the Community Watch Coordinator, Crime Stoppers Coordinator, and Recruiting Team Member duties.

127. Defendant demoted Carney to front desk duty, a low-status position within the department.

128. Defendant subjected Carney to a meritless psychiatric examination, which Carney passed as "highly recommended."

129. Carney was subjected to racial jokes and slurs on a regular basis.

130. Defendant placed Carney on a two (2) year probation in which any further disciplinary action would subject Carney to termination.

131. Defendant unlawfully terminated Carney's employment on December 16, 2013 based on unfounded allegations of "gross insubordination."

132. Carney has suffered significant damages as a result of Defendant's unlawful actions.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays for the following relief:

(a) Entry of judgment in favor of the Plaintiff;

(b) Equitable relief enjoining Defendant, its agents, its successors, employees, and those acting in concert with Defendant from

continuing to violate Plaintiff's civil rights;

(c) Reinstatement of Plaintiff's employment;

(d) An Order requiring Defendant to pay lost wages and other lost employment benefits, front pay, compensatory damages, and any other monetary relief available at law;

(e) An award of costs and reasonable attorneys' fees, plus interest;

(f) Such other and further relief this Court deems just and proper.

WHEREFORE, Plaintiff respectfully requests all relief set forth herein, plus such other or further relief this Court so orders.

**JURY TRIAL DEMANDED**

/s/ Sonya C. Edwards
Sonya C. Edwards
ASB-8848-S73E

EDWARDS LAW, LLC
121 Edenton Street
Birmingham, Alabama 35242
SonyaEdwardsLaw@gmail.com
Phone: (205) 408-0956
Fax: (205) 408-9236

/s/ Jeffrey W. Bennitt
Jeffrey W. Bennitt
ASB-0774-N51J

JEFFREY W. BENNITT & ASSOCIATES
121 Edenton Street
Birmingham, Alabama 35242
Bennittlaw@aol.com
Phone: (205) 408-7240
Fax: (205) 408-9236