# EXHIBIT A CONT'D





LIVE BROADCAST: WATCH NOW: KTLA 5 Morning News live streaming video                    ✕

Home      Local News

Brought to you by Avon Walk for Breast Cancer



Join us for a life-changing weekend.   **LEARN MORE**

AVON WALK for BREAST CANCER

51 UPDATES FOR THIS STORY. SEE THE BIG PICTURE.

7 days ago                                                      LOCAL NEWS

## Christopher Dorner's Manifesto (Disturbing Content and Language)
BY KTLA 5 WEB STAFF

Ads by Google
(3 people unfriended you)
Free FB tool that shows you who unfriended you!
www.UnfriendApp.com



From: Christopher Jordan Dorner /7648

DEFENDANT'S EXHIBIT

Cloyd    13

CITY OF DOTHAN/CARNEY 000982
CONFIDENTIAL

To: America

Subj: Last resort

Regarding CF# 07-004281



I know most of you who personally know me are in disbelief to hear from media reports that I am suspected of committing such horrendous murders and have taken drastic and shocking actions in the last couple of days. You are saying to yourself that this is completely out of character of the man you knew who always wore a smile wherever he was seen. I know I will be vilified by the LAPD and the media. Unfortunately, this is a necessary evil that I do not enjoy but must partake and complete for substantial change to occur within the LAPD and reclaim my name. The department has not changed since the Rampart and Rodney King days. It has gotten worse. The consent decree should never have been lifted. The only thing that has evolved from the consent decree is those officers involved in the Rampart scandal and Rodney King incidents have since promoted to supervisor, commanders, and command staff, and executive positions.

The question is, what would you do to clear your name?

Name;

A word or set of words by which a person, animal, place, or thing is known, addressed, or referred to.

Name Synonyms;

reputation, title, appellation, denomination, repute.

A name is more than just a noun, verb, or adjective. It's your life, your legacy, your journey, sacrifices, and everything you've worked hard for every day of your life as and adolescent, young adult and adult. Don't let anybody tarnish it when you know you've live up to your own set of ethics and personal ethos.

In 8/07 I reported an officer (Ofcr. XXXX/now a Sergeant), for kicking a suspect (excessive force) during a Use of Force while I was assigned as a patrol officer at LAPD's Harbor Division. While cuffing the suspect, (XXXX), XXXX kicked the suspect twice in the chest and once in the face. The kick to the face left a visible injury on the left cheek below the eye. Unfortunately after reporting it to supervisors and investigated by PSB (internal affairs investigator Det. XXXX), nothing was done, I had broken their supposed "Blue Line". Unfortunately, it's not JUST US, it's JUSTICE!!! In fact, 10 months later on 6/25/08, after already successfully completing probation, acquiring a basic Post Certificate, and Intermediate Post Certificate, I was relieved of duty by the LAPD while assigned to patrol at Southwest division. It is clear as day that the department retaliated toward me for reporting XXXX for kicking Mr. XXXX. The department stated that I had lied and made up the report that XXXX had kicked the suspect.

I later went to a Board of Rights (department hearing for decision of continued employment) from 10/08 to 1/09. During this BOR hearing a video was played for the BOR panel where XXXX stated that he was indeed kicked by Officer XXXX (video sent

CITY OF DOTHAN/CARNEY 000983
CONFIDENTIAL

to multiple news agencies). In addition to XXXX stating he was kicked, his father XXXX, also stated that his son had stated he was kicked by an officer when he was arrested after being released from custody. This was all presented for the department at the BOR hearing. They still found me guilty and terminated me.

What they didn't mention was that the BOR panel made up of Capt. XXXX, Capt. XXXX, and City Attorney XXXX had a significant problem from the time the board was assembled. Capt. XXXX was a personal friend of XXXX from when he was her supervisor at Harbor station. That is a clear conflict of interest and I made my argument for his removal early and was denied. The advocate for the LAPD BOR was Sgt. XXXX. XXXX also had a conflict of interest as she was XXXX friend and former partner from Harbor division where they both worked patrol together. I made my argument for her removal when I discovered her relation to XXXX and it was denied.

During the BOR, the department attempted to label me unsuccessfully as a bully. They stated that I had bullied a recruit, XXXX, in the academy when in reality and unfounded disposition from the official 1.28 formal complaint investigation found that I was the one who stood up for XXXX when other recruits sang nazi hitler youth songs about burning Jewish ghettos in WWII Germany where his father was a survivor of a concentration camp. How fucking dare you attempt to label me with such a nasty vile word. I ask that all earnest journalist investigating this story ask Ofcr. XXXX about the incident when Ofcr. XXXX began singing a nazi youth song about burning jewish ghettos.

The internal affairs investigation in the academy involving XXXX was spurned by a complaint that I had initiated toward two fellow recruit/offifcers. While assigned patrol footbeat in Hollywood Division, Officers XXXX and XXXX (both current LAPD officers) decided that they would voice their personal feelings about the black community.

While traveling back to the station in a 12 passenger van I heard XXXX refer to another individual as a nigger. I wasn't sure if I heard correctly as there were many conversations in the van that was compiled of at least 8 officers and he was sitting in the very rear and me in the very front. Even with the multiple conversations and ambient noise I heard Officer XXXX call an indivdual a nigger again. Now that I had confirmed it, I told XXXX not to use that word again. I explained that it was a well-known offensive word that should not be used by anyone. He replied, "I'll say it when I want".

Officer XXXX, a friend of his, also stated that he would say nigger when he wanted. At that point I jumped over my front passenger seat and two other officers where I placed my hands around XXXXs' neck and squeezed. I stated to XXXX, "Don't fucking say that". At that point there was pushing and shoving and we were separated by several other officers. What I should have done, was put a Winchester Ranger SXT 9mm 147 grain bullet in his skull and Officer XXXX's skull. The Situation would have been resolved effective, immediately.

The sad thing about this incident was that when Detective XXXX from internal affairs investigated this incident only (1) officer (unknown) in the van other than myself had statements constistent with what actually happened. The other six officers  all stated they heard nothing and saw nothing. Shame on every one of you. Shame on Detective XXXX (same ethnicity as XXXX) for creating a separate 1.28 formal complaint against me (XXXX complaint) in retaliation for initiating the complaint against XXXX and XXXX. Don't retaliate against honest officers for breaking your so-called blue line. I hope your son XXXX, who I knew, is a better officer than you, Detective XXXX. The saddest part of this ordeal was that Officer XXXX and XXXX were only given 22 day suspensions and are still LAPD officers to this day.

CITY OF DOTHAN/CARNEY 000984
CONFIDENTIAL

That day, the LAPD stated that it is acceptable for fellow officers to call black officers niggers to their face and you will receive a slap on the wrist. Even sadder is that during that 22 day suspension XXXX and XXXX received is that the LAPPL (Los Angeles Police Protective League) paid the officers their salaries while they were suspended. When I took a two-day suspension for an accidental discharge, I took my suspension and never applied for a league salary. Its called integrity.

Journalist, I want you to investigate every location I resided in growing up. Find any incidents where I was ever accused of being a bully. You won't, because it doesn't exist. It's not in my DNA. Never was. I was the only black kid in each of my elementary school classes from first grade to seventh grade in junior high and any instances where I was disciplined for fighting was in response to fellow students provoking common childhood schoolyard fights, or calling me a nigger or other derogatory racial names. I grew up in neighborhoods where blacks make up less than 1%.

My first recollection of racism was in the first grade at Norwalk Christian elementary school in Norwalk, CA. A fellow student, XXXX if I can recall, called me a nigger on the playground. My response was swift and non-lethal. I struck him fast and hard with a punch an kick. He cried and reported it to a teacher. The teacher reported it to the principal. The principal swatted XXXX for using a derogatory word toward me. He then for some unknown reason swatted me for striking XXXX in response to him calling me a nigger. He stated as good Christians we are to turn the other cheek as Jesus did.

Problem is, I'm not a fucking Christian and that old book, made of fiction and limited non-fiction, called the bible, never once stated Jesus was called a nigger. How dare you swat me for standing up for my rights for demanding that I be treated as an equal human being. That day I made a life decision that I will not tolerate racial derogatory terms spoken to me. Unfortunately I was swatted multiple times for the same exact reason up until junior high. Terminating me for telling the truth of a Caucasian officer kicking a mentally ill man is disgusting.

Don't ever call me a fucking bully. I want all journalist to utilize every source you have that specializes in collections for your reports. With the discovery and evidence available you will see the truth. Unfortunately, I will not be alive to see my name cleared. That's what this is about, my name. A man is nothing without his name. Below is a list of locations where I resided from childhood to adulthood.

Cerritos, CA.
Pico Rivera, CA.
La Palma, CA.
Thousand Oaks, CA.
Cedar City, UT.
Pensacola, FL.
Enid, OK.
Yorba Linda, CA.
Las Vegas, NV.

During the BOR an officer named, Sgt. XXXX, from Los Angeles Port Police testified on behalf of the LAPD. XXXX stated for the BOR that he arrived at the location of the UOF shortly before I cuffed the suspect. He also stated that he assisted in cuffing the suspect and that's old the BOR he told me to fix my tie. All of those statements were LIES!!! XXXX, you arrived at the UOF location up to 30 seconds after I had cuffed Mr.XXXX. All you did was help me lift the suspect to his feet as it was difficult for me to do by myself because of his heavy weight. You did not tell me to fix my tie as the BOR members and

CITY OF DOTHAN/CARNEY 000985
CONFIDENTIAL

everyone else in the room know you lied because the photographic evidence from the UOF scene where XXXX's injuries were photographed clearly shows me wearing a class B uniform on that day.

A class B uniform is a short sleeved uniform blouse. A short sleeved uniform blouse for the LAPD does not have a tie included. This is not Super Troopers uniform, you jackass. Why did you feel the need to embellish and lie about your involvement in the UOF? Are you ashamed that you could not get hired on by any other department other than port police? Do you have delusions of grandeur? What you did was perjury, exactly what XXXX did when she stated she did not kick XXXX.

What they failed to mention in the BOR was XXXX own use of force history during her career on the LAPD. She has admitted that she has a lengthy use of force record and has been flagged several times by risk management. She has a very well known nickname, Chupacabra, which she was very proud to flaunt around the division.

She found it very funny and entertaining to draw blood from suspects and arrestees. At one point she even intentionally ripped the flesh off the arm of a woman we had arrested for battery (sprayed her neighbor with a garden water hose). Knowing the woman had thin elastic skin, she performed and Indian burn to the woman's arm after cuffing her. That woman was in her mid-70's, a mother and grandmother, and was angry at her tenants who failed to pay rent on time. Something I can completely understand and I am sure many have wanted to do toward tenants who do not pay their rent.

XXXX was also demoted from a senior lead officer rank/position for performance issues. During my two months of working patrol with XXXX, I found her as a woman who was very angry that she had been pulled from patrol for a short time because of a domestic violence report made by Long Beach Police Department because of an incident involving her active LAPD officer boyfriend, XXXX, and herself.

XXXX is the same officer investigated for witness tampering. She also was visibly angry on a daily basis that she was going to have to file for bankruptcy because her ex-husband, a former LAPD officer and not XXXX, who had left the department, state, and was nowhere to be found had left her with a tax bill and debt that she was unable to pay because of a lack of financial means. XXXX, you are a POS and you lied right to the BOR panel when XXXX asked you if you kicked XXXX. You destroyed my life and name because of your actions. Time is up. The time is now to confess to Chief Beck.

I ask that all journalist investigating this story submit request for FOIA with the LAPD to gain access to the BOR transcripts which occurred from 10/08 to 2/09. There, you will see that a video was played for the BOR members of Mr. XXXX who suffers from Schizophrenia and Dementia stating that he was kicked by a female officer.

That video evidence supports my claim that XXXX kicked him twice in the upper body and once in the face. I would like all journalist to also request copies of all reports that I had written while employed by LAPD. Whether in the academy, or during my 3 years as a police officer. There are DR#'s attached to each report (investigative report) that I have ever written so they all exist. A FOIA request will most likely be needed to access these at Parker center or at the Personnel/Records.

Judge my writin/grammar skills for yourself. The department attempted to paint me as an officer who could not write reports. Even though Sgt. XXXX a training officer who trained me stated for the BOR panel that there was nothing wrong with my report writing and that I was better than all rookie/probationer officers he has ever trained. Officer XXXX

CITY OF DOTHAN/CARNEY 000986
CONFIDENTIAL

stated the same but refused to testify as he did not want to "get involved" with the BOR's. Contact Sgt. XXXX ,(now a Captain at Lompoc PD), Sgt. XXXX, and Sgt. XXXX. All will state that my report writing was impeccable.

I will tell you this, I always type my reports because I have messy handwriting/penmanship. I never had a single kickback/redlined report at Southwest division and Sgt. XXXX and Sgt. XXXX can testify to that. I never received an UNSATISFACTORY on any day or week. The same can be said within the U.S. Naval Reserves. All commanders will state that my report writing was always clear, concise, and impeccable. Even search my AAR (after action reports),chits, Memorandum's, IIR's (Intelligence Information Reports) which were written in the Navy. All were pristine.

I had worked patrol at LAPD's Harbor Division from 2/06 until 7/06 when I was involuntarily recalled back to active duty (US Navy) for a 12 month mobilization/deployment to Centcom in support of OIF/OEF. I returned back to LAPD's Harbor division on 7/07 and immediately returned to patrol. I worked at Harbor division until 11/07 where I then transferred to Southwest Division. I worked At Southwest division until 6/25/08 when I was relieved of duty.

I have exhausted all available means at obtaining my name back. I have attempted all legal court efforts within appeals at the Superior Courts and California Appellate courts. This is my last resort. The LAPD has suppressed the truth and it has now lead to deadly consequences. The LAPD's actions have cost me my law enforcement career that began on 2/7/05 and ended on 1/2/09. They cost me my Naval career which started on 4/02 and ends on 2/13. I had a TS/SCI clearance(Top Secret Sensitive Compartmentalized Information clearance) up until shortly after my termination with LAPD.

This is the highest clearance a service member can attain other than a Yankee White TS/SCI which is only granted for those working with and around the President/Vice President of the United States. I lost my position as a Commanding Officer of a Naval Security Forces reserve unit at NAS Fallon because of the LAPD. I've lost a relationship with my mother and sister because of the LAPD. I've lost a relationship with close friends because of the LAPD. In essence, I've lost everything because the LAPD took my name and new I was INNOCENT!!!

XXXX, XXXX, XXXX , and XXXX all new I was innocent but decided to terminate me so they could continue Ofcr. XXXX. I know about the meeting between all of you where XXXX attorney, XXXX, confessed that she kicked XXXX (excessive force). Your day has come.

I'm not an aspiring rapper, I'm not a gang member, I'm not a dope dealer, I don't have multiple babies momma's. I am an American by choice, I am a son, I am a brother, I am a military service member, I am a man who has lost complete faith in the system, when the system betrayed, slandered, and libeled me.

I lived a good life and though not a religious man I always stuck to my own personal code of ethics, ethos and always stuck to my shoreline and true North. I didn't need the US Navy to instill Honor, Courage, and Commitment in me but I thank them for re-enforcing it. It's in my DNA.

Luckily I don't have to live everyday like most of you. Concerned if the misconduct you were apart of is going to be discovered. Looking over your shoulder, scurrying at every phone call from Internal affairs or from the Captains office wondering if that is the day

CITY OF DOTHAN/CARNEY 000987
CONFIDENTIAL

PSB comes after you for the suspects you struck when they were cuffed months/years ago or that $500 you pocketed from the narcotics dealer, or when the other guys on your watch beat a transient nearly to death and you never reported the UOF to the supervisor.

No, I don't have that concern, I stood up for what was right but unfortunately have dealt with the reprocussions of doing the right thing and now losing my name and everything I ever stood for. You fuckers knew XXXX was guilty of kicking (excessive force) XXXX and you did nothing but get rid of what you saw as the problem, the whistleblower. XXXX himself stated on video tape ( provided for the BOR and in transcripts) he was kicked and even his father stated that his son said he was kicked by XXXX when he was released from custody. The video was played for the entire BOR to hear. You're going to see what a whistleblower can do when you take everything from him especially his NAME!!!

Look what you did to Sgt. XXXX (now lieutenant) when he exposed the truth of your lying, racism, and PSB cover-ups to frame and convict an innocent man. You can not police yourselves and the consent decree was unsuccessful. Sgt. XXXX, I met you on the range several times as a recruit and as an officer. You're a good man and I saw it in your eyes an actions.

Self Preservation is no longer important to me. I do not fear death as I died long ago on 1/2/09. I was told by my mother that sometimes bad things happen to good people. I refuse to accept that.

From 2/05 to 1/09 I saw some of the most vile things humans can inflict on others as a police officer in Los Angeles. Unfortunately, it wasn't in the streets of LA. It was in the confounds of LAPD police stations and shops (cruisers). The enemy combatants in LA are not the citizens and suspects, it's the police officers.

People who live in glass houses should not throw stones. How ironic that you utilize a fixed glass structure as your command HQ. You use as a luminous building to symbolize that you are transparent, have nothing to hide, or suppress when in essence, concealing, omitting, and obscuring is your forte.

Chief Beck, this is when you need to have that come to Jesus talk with Sgt. XXXX and everyone else who was involved in the conspiracy to have me terminated for doing the right thing. you also need to speak with her attorney, Rico, and his conversation with the BOR members and her confession of guilt in kicking Mr. XXXX. I'll be waiting for a PUBLIC response at a press conference. When the truth comes out, the killing stops.

Why didn't you charge me with filing a false police report when I came forward stating that XXXX kicked Mr. XXXX? You file criminal charges against every other officer who is accused and terminated for filing a false police report. You didn't because you knew I was innocent and a criminal court would find me innocent and expose your department for suppressing the truth and retaliation, that's why.

The attacks will stop when the department states the truth about my innocence, PUBLICLY!!! I will not accept any type of currency/goods in exchange for the attacks to stop, nor do I want it. I want my name back, period. There is no negotiation. I am not the state department who states they do not negotiate with terrorist, because anybody with a Secret or TS/SCI has seen IIR's on SIPR and knows that the US state department always negotiates by using CF countries or independent sovereign/neutral country to mediate and compromising.

CITY OF DOTHAN/CARNEY 000988
CONFIDENTIAL

This department has not changed from the Daryl Gates and Mark Fuhrman days. Those officers are still employed and have all promoted to Command staff and supervisory positions. I will correct this error. Are you aware that an officer (a rookie/probationer at the time) seen on the Rodney King videotape striking Mr. King multiple times with a baton on 3/3/91 is still employed by the LAPD and is now a Captain on the police department? Captain XXXX is now the commanding officer of a LAPD police station (West LA division).

As a commanding officer, he is now responsible for over 200 officers. Do you trust him to enforce department policy and investigate use of force investigations on arrestees by his officers? Are you aware XXXX has since promoted to Sergeant after kicking Mr. XXXX in the face. Oh, you violated a citizens civil rights? We will promote you. Same as LAPD did with the officers from Metro involved in the May Day melee at MacArthur Park. They promoted them to Sergeant (a supervisor role).

No one is saying you can't be prejudiced or a bigot. We are all human and hold prejudices. If you state that you don't have prejudices, your lying! But, when you act on it and victimize innocent citizens and fellow innocen officers, than that is a concern.

For you officers who do the job in the name of JUSTICE, those of you who lost honest officers to this event, look at the name of those on the BOR and the investigating officers from PSB and XXXX and ask them, how come you couldn't tell the truth? Why did you terminate an honest officer and cover for a dishonest officer who victimized a mentally ill citizen.

Sometimes humans feel a need to prove they are the dominant race of a species and they inadvertently take kindness for weakness from another individual. You chose wrong.

Terminating officers because they expose a culture of lying, racism (from the academy), and excessive use of force will immediately change. PSB can not police their own and that has been proven. The blue line will forever be severed and a cultural change will be implanted. You have awoken a sleeping giant.

I am here to change and make policy. The culture of LAPD versus the community and honest/good officers needs to and will change. I am here to correct and calibrate your morale compasses to true north.

Those Caucasian officers who join South Bureau divisions (77th,SW,SE, an Harbor) with the sole intent to victimize minorities who are uneducated, and unaware of criminal law, civil law, and civil rights. You prefer the South bureau because a use of force/deadly force is likely and the individual you use UOF on will likely not report it. You are a high value target.

Those Black officers in supervisory ranks and pay grades who stay in south bureau (even though you live in the valley or OC) for the sole intent of getting retribution toward subordinate caucasians officers for the pain and hostile work environment their elders inflicted on you as probationers (P-1's) and novice P-2's. You are a high value target. You perpetuated the cycle of racism in the department as well. You breed a new generation of bigoted caucasian officer when you belittle them and treat them unfairly.

Those Hispanic officers who victimize their own ethnicity because they are new immigrants to this country and are unaware of their civil rights. You call them wetbacks to their face and demean them in front of fellow officers of different ethnicities so that you will receive some sort of acceptance from your colleagues. I'm not impressed. Most

CITY OF DOTHAN/CARNEY 000989
CONFIDENTIAL

likely, your parents or grandparents were immigrants at one time, but you have forgotten that. You are a high value target.

Those lesbian officers in supervising positions who go to work, day in day out, with the sole intent of attempting to prove your misandrist authority (not feminism) to degrade male officers. You are a high value target.

Those Asian officers who stand by and observe everything I previously mentioned other officers participate in on a daily basis but you say nothing, stand for nothing and protect nothing. Why? Because of your usual saying, " I......don't like conflict". You are a high value target as well.

Those of you who "go along to get along" have no backbone and destroy the foundation of courage. You are the enablers of those who are guilty of misconduct. You are just as guilty as those who break the code of ethics and oath you swore.

Citizens/non-combatants, do not render medical aid to downed officers/enemy combatants. They would not do the same for you. They will let you bleed out just so they can brag to other officers that they had a 187 caper the other day and can't wait to accrue the overtime in future court subpoenas. As they always say, "that's the paramedics job...not mine". Let the balance of loss of life take place. Sometimes a reset needs to occur.

It is endless the amount of times per week officers arrest an individual, label him a suspect-arrestee-defendant and then before arraignment or trial realize that he is innocent based on evidence. You know what they say when they realize an innocent man just had his life turned upside down?. "I guess he should have stayed at home that day he was discovered walking down the street and matching the suspects description. Oh well, he appeared to be a dirtbag anyways". Meanwhile the falsely accused is left to pick up his life, get a new, family, friends, and sense of self worth.

Don't honor these fallen officers/dirtbags. When your family members die, they just see you as extra overtime at a crime scene and at a perimeter. Why would you value their lives when they clearly don't value yours or your family members lives? I've heard many officers who state they see dead victims as ATV's, Waverunners, RV's and new clothes for their kids.

Why would you shed a tear for them when they in return crack a smile for your loss because of the impending extra money they will receive in their next paycheck for sitting at your loved ones crime scene of 6 hours because of the overtime they will accrue. They take photos of your loved ones recently deceased bodies with their cellphones and play a game of who has the most graphic dead body of the night with officers from other divisions. This isn't just the 20 something year old officers, this is the 50 year old officers with significant time on the job as well who participate.

You allow an officer, XXXX, to attempt to hack into my credit union account and still remain on the job even when Det. XXXX shows the evidence that the IP address (provided by LAPFCU) that attempted to hack into my account and change my username and password leads directly to her residence. You even allow this visibly disgusting looking officer to stay on the job when she perjures (lies) in court (Clark County Family Court) to the judge's face and denies hacking into my personal credit union online account when I attempted to get my restraint order extended. Det. XXXX provided the evidence and you still do nothing.

CITY OF DOTHAN/CARNEY 000990
CONFIDENTIAL

How do you know when a police officer is lying??? When he begins his sentence with, "based on my experience and training".

No one grows up and wants to be a cop killer. It was against everything I've ever was. As a young police explorer I found my calling in life. But, As a young police officer I found that the violent suspects on the street are not the only people you have to watch, It is the officer who was hired on to the department (pre-2000) before polygraphs were standard for all new hires and a substantial vetting in a backround investigation.

To those children of the officers who are eradicated, your parent was not the individual you thought they were. As you get older, you will see the evidence that your parent was a tyrant who loss their ethos and instead followed the path of moral corruptness. They conspired to hide and suppress the truth of misconduct on others behalf's. Your parent will have a name and plaque on the fallen officers memorial in D.C. But, In all honesty, your parents name will be a reminder to other officers to maintain the oath they swore and to stay along the shoreline that has guided them from childhood to that of a local, state, or federal law enforcement officer.

Your lack of ethics and conspiring to wrong a just individual are over.
Suppressing the truth will leave to deadly consequences for you and your family. There will be an element of surprise where you work, live, eat, and sleep. I will utilize ISR at your home, workplace, and all locations in between. I will utilize OSINT to discover your residences, spouses workplaces, and children's schools. IMINT to coordinate and plan attacks on your fixed locations. Its amazing whats on NIPR. HUMINT will be utilized to collect personal schedules of targets. I never had the opportunity to have a family of my own, I'm terminating yours. XXXX, XXXX, XXXX, and BOR members Look your wives/husbands and surviving children directly in the face and tell them the truth as to why your children are dead.

Never allow a LAPPL union attorney to be a retired LAPD Captain,(XXXX). He doesn't work for you, your interest, or your name. He works for the department, period. His job is to protect the department from civil lawsuits being filed and their best interest which is the almighty dollar. His loyalty is to the department, not his client. Even when he knowingly knows your innocent and the BOR also knows your innocent after XXXX stated on videotape that he was kicked and XXXX attorney confessed to the BOR off the record that she kicked XXXX.

The tree of liberty must be refreshed from time to time with the blood of patriots and tyrants.-TJ. This quote is not directed toward the US government which I fully support 100%. This is toward the LAPD who can not monitor itself. The consent decree should not have been lifted, ever.

I know your TTP's, (techniques, tactics, and procedures). Any threat assessments you generate will be useless. This is simple, I know your TTP's and PPR's. I will mitigate any of your attempts at preservation. ORM is my friend. I will mitigate all risks, threats and hazards. I assure you that Incident Command Posts will be target rich environments. KMA-367 license plate frames are great target indicators and make target selection even easier.

I will conduct DA operations to destroy, exploit and seize designated targets. If unsuccessful or unable to meet objectives in these initial small-scale offensive actions, I will reassess my BDA and re-attack until objectives are met. I have nothing to lose. My personal casualty means nothing. Just alike AAF's, ACM's, and AIF's, you can not

CITY OF DOTHAN/CARNEY 000991
CONFIDENTIAL

prevail against an enemy combatant who has no fear of death. An enemy who embraces death is a lose, lose situation for their enemy combatants.

Hopefully you analyst have done your homework. You are aware that I have always been the top shot, highest score, an expert in rifle qualifications in every unit I've been in. I will utilize every bit of small arms training, demolition, ordnance, and survival training I've been given.

Do you know why we are unsuccessful in asymmetrical and guerrilla warfare in CENTCOM theatre of operations? I'll tell you. It's not the inefficiency of our combatant commanders, planning, readiness or training of troops. Much like the Vietnam war, ACM, AAF, foreign fighters, Jihadist, and JAM have nothing to lose. They embrace death as it is a way of life. I simply don't fear it. I am the walking exigent circumstance you created.

The Violence of action will be HIGH. I am the reason TAC alert was established. I will bring unconventional and asymmetrical warfare to those in LAPD uniform whether on or off duty. ISR is my strength and your weakness. You will now live the life of the prey.

Your RD's and homes away from work will be my AO and battle space. I will utilize every tool within INT collections that I learned from NMITC in Dam Neck. You have misjudged a sleeping giant. There is no conventional threat assessment for me. JAM, New Ba'ath party, 1920 rev BGE, ACM, AAF, AQAP, AQIM and AQIZ have nothing on me. Do not deploy airships or gunships. SA-7 Manpads will be waiting. As you know I also own Barrett .50's so your APC are defunct and futile.

You better have all your officers radio/phone muster (code 1) on or off duty every hour, on the hour.

Do not attempt to shadow or conduct any type of ISR on me. I have the inventory listing of all UC vehicles at Piper Tech and the home addresses of any INT analyst at JRIC and detachment locations. My POA is always POI and always true. This will be a war of attrition and a Pyrrhic and Camdean Victory for myself. You may have the resources and manpower but you are reactive and predictable in your op plans and TTP's. I have the strength and benefits of being unpredictable, unconventional, and unforgiving. Do not waste your time with briefs and tabletops.

Whatever pre-planned responses you have established for a scenario like me, shelve it. Whatever contingency plan you have, shelve it. Whatever tertiary plan you've created, shelve it. I am a walking exigent circumstance with no OFF or reset button. JRIC, DOJ, LASD, FBI and other local LE can't assist and should not involve themselves in a matter that does not concern them. For all other agencies, do not involve yourself in this capture or recovery of me. Look at the big picture of the situation. They (LAPD) created the situation. I will harm no outside agency unless it is a deadly force/IDOL situation. With today's budgeting and fiscal mess, you guys can not afford lose several officers to IOD or KIA/EOW. Plus, other officers should not have to take on the additional duties and responsibilities of dead officers. Think about their families, outside agencies, Chiefs/Directors.

Outside agencies and individual officers on patrol. If you recognize my vehicle, and confirm it is my vehicle thru a dmv/want warrant check. It behoves you to respond to dispatch that your query was for information purposes only. If you proceed with a traffic stop or attempt to notify other officers of my location or for backup you will not live to see

CITY OF DOTHAN/CARNEY 000992
CONFIDENTIAL

Case 1:14-cv-00392-WKW-WC   Document 44-2   Filed 07/17/15   Page 13 of 220

the medal of valor you were hoping to receive for your actions. Think before you attempt to intervene. You will not survive.

Your family will receive that medal of valor posthumously. It will gather dust on the fireplace mantel for years. Then one day, it will go in a shoe box with other memories. Your mother will lose a son or daughter. Your significant other will be left alone, but they will find someone else to fill your void in the future and make them just as happy. Your children, if you have them, will call someone else mommy or daddy. Don't be selfish. Your vest is only a level II or IIIA, think about it.

No amount of IMINT, MASINT, and ELINT assist you in capturing me. I am off the grid. You better use your feet, tongue and every available DOD/ NON-DOD HUMINT agency, contractor to find me. I know your route to and from home, and your division. I know your significant others routine, your children's best friends and recess. I know Your Sancha's gym hours and routine. I assure you that the casualty rate will be high. Because of that, no one will remember your name. You will merely be a DR# and "that guy" who was KIA/EOW or long term IOD/light duty in the kit room. This is exactly why "station 500" was created.

Unfortunately, orphanages will be making a comeback in the 21st century.

If you had a well regulated AWB, this would not happen. The time is now to reinstitute a ban that will save lives. Why does any sportsman need a 30 round magazine for hunting? Why does anyone need a suppressor? Why does anyone need a AR15 rifle? This is the same small arms weapons system utilized in eradicating Al Qaeda, Taliban, and every enemy combatant since the Vietnam war. Don't give me that crap that its not a select fire or full auto rifle like the DoD uses. That's (expletive) because troops who carry the M-4/M-16 weapon system for combat ops outside the wire rarely utilize the select fire function when in contact with enemy combatants. The use of select fire probably isn't even 1% in combat. So in essence, the AR-15 semiautomatic rifle is the same as the M-4/M-16. These do not need to be purchased as easily as walking to your local Walmart or striking the enter key on your keyboard to "add to cart". All the firearms utilized in my activities are registered to me and were legally purchased at gun stores and private party transfers. All concealable weapons (pistols) were also legally register in my name at police stations or FFL's. Unfortunately, are you aware that I obtained class III weapons (suppressors) without a background check thru NICS or DROS completely LEGALLY several times? I was able to use a trust account that I created on quicken will maker and a $10 notary charge at a mailbox etc. to obtain them legally. Granted, I am not a felon, nor have a DV misdemeanor conviction or active TRO against me on a NCIC file. I can buy any firearm I want, but should I be able to purchase these class III weapons (SBR's, and suppressors) without a background check and just a $10 notary signature on a quicken will maker program? The answer is NO. I'm not even a resident of the state I purchased them in. Lock n Load just wanted money so they allow you to purchase class III weapons with just a notarized trust, military ID. Shame on you, Lock n Load. NFA and ATF need new laws and policies that do not allow loopholes such as this. In the end, I hope that you will realize that the small arms I utilize should not be accessed with the ease that I obtained them. Who in there right mind needs a (expletive) silencer!!! who needs a freaking SBR AR15? No one. No more Virginia Tech, Columbine HS, Wisconsin temple, Aurora theatre, Portland malls, Tucson rally, Newtown Sandy Hook. Whether by executive order or thru a bi-partisan congress an assault weapons ban needs to be re-instituted. Period!!!

CITY OF DOTHAN/CARNEY 000993
CONFIDENTIAL

Mia Farrow said it best. "Gun control is no longer debatable, it's not a conversation, its a moral mandate."

Sen. Feinstein, you are doing the right thing in leading the re-institution of a national AWB. Never again should any public official state that their prayers and thoughts are with the family. That has become cliche' and meaningless. Its time for action. Let this be your legacy that you bestow to America. Do not be swayed by obstacles, antagaonist, and naysayers. Remember the innocent children at Austin, Kent, Stockton, Fullerton, San Diego, Iowa City, Jonesboro, Columbine, Nickel Mines, Blacksburg, Springfield, Red Lake, Chardon, Aurora, and Newtown. Make sure this never happens again!!!

In my cache you will find several small arms. In the cache, Bushmaster firearms, Remington precision rifles, and AAC Suppressors (silencers). All of these small arms are manufactured by Cerberus/Freedom Group. The same company responsible for the Portland mall shooting, Webster , NY, and Sandy Hook massacre.

You disrespect the office of the POTUS/Presidency and Commander in Chief. You call him Kenyan, mongroid, halfrican, muslim, and FBHO when in essence you are to address him as simply, President. The same as you did to President George W. Bush and all those in the highest ranking position of our land before him. Just as I always have. You question his birth certificate, his educational and professional accomplishments, and his judeo-christian beliefs. You make disparaging remarks about his dead parents. You never questioned the fact that his former opponent, the honorable Senator John McCain, was not born in the CONUS or that Bush had a C average in his undergrad. Electoral Candidates children (Romney) state they want to punch the president in the face during debates with no formal repercussions. No one even questioned the fact that the son just made a criminal threat toward the President. You call his wife a Wookie. Off the record, I love your new bangs, Mrs. Obama. A woman whose professional and educational accomplishments are second to none when compared to recent First wives. You call his supporters, whether black, brown, yellow, or white, leeches, FSA, welfare recipients, and ni$&er lovers. You say this openly without any discretion. Before you start with your argument that you believe I would vote for Obama because he has the same skin color as me, (expletive) you. I didn't vote in this last election as my choice of candidate, John Huntsman, didn't win the primary candidacy for his party. Mr. President, I haven't agreed with all of your decisions but of course I haven't agreed with all of your predecessors decisions. I think you've done a hell of a job with what you have been dealt and how you have managed it. I shed a tear the night you were initially elected President in 2008. I never thought that day would occur. A black man elected president in the U.S. in my lifetime. I cracked a smiled when you were re-elected in 2012 because I really didn't think you were going to pull that one off. Romney, stop being a sore loser. You could've exited graciously and still contributed significantly to public service, not now. Mr. President, get back to work. Many want to see you fail as they have stated so many times previously. Unfortunately, if you fail, the U.S. fails but your opponents do not concern themselves about the big picture. Do not forget your commitment to transparency in your administration. Sometimes I believe your administration forgets that. America, you will realize today and tomorrow that this world is made up of all human beings who have the same general needs and wants in life for themselves, their kin, community, and state. That is the freedom to LIVE and LOVE. They may eat different foods, enjoy different music, have different dialects, or speak a second language, but in essence are no different from you and I. This is America. We are not a perfect sovereign country as we have our own flaws but we are the closest that will ever exist.

CITY OF DOTHAN/CARNEY 000994
CONFIDENTIAL

Unfortunately, this is not the first time an authoritative figure has lied on me.

Mr. xx, assistant principal, xx HS. Remember when you lied to my mother and the police officer in your office about stating that you never stated to me in a private conversation that you know the theft suspect (xx) stole my watch. Let me refresh your memory. A physical education teachers assistant, a student, stole the list of combination codes to peoples lockers, from the P.E. teacher. That student then opened many of those lockers and stole students personal property. My watch was taken in that multi theft an I reported it to you. A week later you discovered that the theft suspect was xx xx, a student. You stated to me in private that you know for a fact he stole my property. When I attempted to retrieve my property from the suspect. Campus security was called and you lied and stated that you never stated to me that you "know he stole my watch". You sat there and lied to their faces right in front of me. You said it with such a deliberate, stern face. I never forgot that and was not surprised when 13 years later I was lied on again in the BOR by xx xx. maybe you can confess to your family at the very least in the private of your own home. After that, contact my mother and apologize for lying to her in 1996.

If possible, I want my brain preserved for science/research to study the effects of severe depression on an individual's brain. Since 6/26/08 when I was relieved of duty and 1/2/09 when I was terminated I have been afflicted with severe depression. I've had two CT scans during my lifetime that are in my medical record at Kaiser Permanente. Both are from concussions resulting from playing football. The first one was in high school, 10/96. The second was in college and occurred in 10/99. Both were conducted at Kaiser Permanente hospitals in LA/Orange county. These two CT scans should give a good baseline for my brain activity before severe depression began in late 2008.

Sure, many of you "law enforcement experts and specialist" will state, "in all my years this is the worst........", StopIII That's not important. Ask yourselves what would cause somebody to take these drastic measures like I did. That's what is important.

To my friends listed below, I wish we could have grown old together and spent more time together. When you reminisce of our friendship and experiences, think of that and that only. Do not dwell on my recent actions the last few days. This was a necessary evil that had to be executed in order for me to obtain my NAME back. The only thing that changes policy and garners attention is death.

Xx xx, greatest friend, Marine officer, aviator, and an even better father and husband. I Couldn't have had a better big brother than you. Your spoken wisdom was always retained by me, you old salty Mustang. You sternly told me that no matter what I accomplish I will always be a ni#%er in many individuals eyes. At the time, I did not comprehend your words. I do now. I never forgot the quote you state below. I love you bro.

I never saw a wild thing feel sorry for itself. A small bird will drop frozen dead from a bough without ever feeling sorry for itself. D.H. Lawrence

Xx xx, greatest friend, Naval officer, aviator, Great Father, husband, doctor, and even better human being. I always strived to live my life parallel to your similar values and personal disciplines. Xx is lucky to have found a man like yourself, and you are fortunate to have married an irrefutable imperfect woman. Always focus on your IMMEDIATE family as they are the ones who have loved you unconditionally and always been their to support you in difficult times. I always lived my life as WWJD (what would xx do). Xx, take care of this guy. Xx, I'm sorry I missed your wedding and you had to find another

CITY OF DOTHAN/CARNEY 000995
CONFIDENTIAL

best man. I'm sorry my predicament with the department stopped me from watching you and xx get married and arguing with you about issues that were insignificant when I was really angry at the LAPD for what they did to me. I'm deeply sorry and I love you guys.

Xx, great friend, attorney, father, husband, and the most cynical/blatant/politically incorrect friend a man can have. Best quality about you in college and now is that you never sugar coated the truth. I will miss our political discussions that always turned argumentative. Thanks for introducing me to outdoor sports like fishing, hunting, mudding, and also respect for the land and resources. Us city boys don't get out much like you Alaskans. You even introduced me to PBR. A beer, that when you're a poor college student is completely acceptable to get buzzed off of. I'm sorry I'll never get to go on that moose and bear hunt with you. I love you bro.

Xx, greatest friend, accountant, entrepreneur, and even better Human being. You are probably the most well balanced person I've ever met and the most driven for success. In college, and after graduation, I was inspired by your personal drive. Never settle. When you make your first million, promise me you won't forget to enjoy it a bit. I know your first reaction will be to invest it somewhere else. Spend a little, just a little. I love you bro.

Xx xx, great friend, entrepeneur, husband and father. You showed me the importance of fatherhood and friendship. Love you bro.

[Names redacted]

You guys were all important and very special to me. Don't be angry with me. I missed some of your weddings and unfortunately, some of your funerals. This was a necessary evil.

Some say it is my fault that I was terminated. Yes, xxx, I remember you stating this to me in an angry fit. You said that I should have kept my mouth shut about another officer's misconduct. Maybe you were right. But I'm not built like others, it's not in my DNA and my history has always shown that. When you view the video of the suspect stating he was kicked by xx, maybe you will see that I was a decent person after all. I told the truth. It still hurt that you abandoned me in my time of need. I hope you're happy, that's all I ever wanted for you.

Sgt. Xx xx, you meant well but you should have known with your time on the job that the department would attempt to protect someone like xx because of her time on the job, personal friendships, and ethicity. I'm not angry with you, but you should have known as an IA investigator.

Sgt xx xx LPPD, Ofcr xx xx LPPD (ret), and Chief xx xx LPPD, your guidance and mentoring as a young police explorer was second to none and invaluable as a young man, police officer, and naval officer. Sgt xx, you forewarned me long ago about joining LAPD as they were "different" and operated differently from other modern law enforcement agencies. I now know it was your humbleness and respect for all who wear the badge and protect their communities that you didn't just express what you wanted to say, that they lack values and basic ethics as law enforcement officers. Chief xx, your (expletive) awesome. Thanks for the long talks over the years when I was an explorer, college student, Naval officer, and Police officer. Your are a great leader and carry your heart on your sleeve. Your son will be a great Air Force officer with the upringing you provided. Xx, what can I say? Your just an awesome person and my first exposure to what law enforcement was really about was on our ride alongs. Your realistic approach

CITY OF DOTHAN/CARNEY 000996
CONFIDENTIAL

and empathetic approach to treating all people as humans first is something I carried with me daily. Thank you, every one of you.

Dr. xx, thank you for the superb surgery you performed on my knee on 7/98 in Irvine, CA. I never had the opportunity to thank you for allowing me to live a life free of knee joint pain. Thank you.

CM1 xx (Ret.), I learned more from you about leadership than most of my own commanders. You lived by a strict ethos of get it done, and get it done right. I wanted to attend your retirement, I really did. But because of my predicament I was unable to. Hope you and xx are still together. I've always held you in high regard.

Sgt Maj. xx "xx" xx USMC, Thank you for the intense instruction and mentorship and time spent forging me into a never quit officer. You were challenging as a DI. You made sure the vicious and intense personality I possess was discovered. On a lighter note....Don't feel humbled you never broke me. I made it a personal goal to never give up years before. The Corp is lucky to have you at the front. Your leadership is essential and needed for all marines, especially staff NCO's and mentorship and advisement to company grade officers. You are the epitome of a US marine and never forget that.

I thank my friends for the awesome shared experiences. I thank the unnamed women I dated over my lifetime for the great and sometimes not so great sex.

It's kind of sad I won't be around to view and enjoy The Hangover III. What an awesome trilogy. Xx xx, don't make anymore Hangovers after the third, takes away the originality of its foundation. World War Z looks good and The Walking Dead season 3 (second half) looked intriguing. Damn, gonna miss shark week.

Mr. Vice President, do your due diligence when formulating a concise and permanent national AWB plan. Future generations of Americans depend on your plan and advisement to the president. I've always been a fan of yours and consider you one of the few genuine and charismatic politicians. Damn, sounds like an oxymoron calling you an honest politician. It's the truth.

Hillary Clinton. You'll make one hell of a president in 2016. Much like your husband, Bill, you will be one of the greatest. Look at Castro in San Antonio as a running mate or possible secretary of state. He's (good people) and I have faith and confidence in him. Look after Bill. He was always my favorite President.

Chelsea grew up to be one hell of an attractive woman. No disrespect to her husband.

Gov. Chris Christie. What can I say? You're the only person I would like to see in the White House in 2016 other than Hillary. You're America's no (expletive) taking uncle. Do one thing for your wife, kids, and supporters. Start walking at night and eat a little less, not a lot less, just a little. We want to see you around for a long time. Your leadership is greatly needed.

Wayne LaPierre, President of the NRA, you're a vile and inhumane piece of (expletive). You never even showed 30 seconds of empathy for the children, teachers, and families of Sandy Hook. You deflected any type of blame/responsibility and directed it toward the influence of movies and the media. You are a failure of a human being. May all of your immediate and distant family die horrific deaths in front of you.

Chris Matthews, Joe Scarborough, Pat Harvey, Brian Williams, Soledad Obrien, Wolf Blitzer, Meredith Viera, Tavis Smiley, and Anderson Cooper, keep up the great work and follow Cronkite's lead. I hold many of you in the same regard as Tom Brokaw and the

CITY OF DOTHAN/CARNEY 000997
CONFIDENTIAL

late Peter Jennings, Cooper, stop nagging and berating your guest, they're your (guest), Mr. Scarborough, we met at McGuire's pub in P-cola in 2002 when I was stationed there. It was an honor conversing with you about politics, family, and life.

Willie Geist, you're a talented and charismatic journalist. Stop with all the talk show shenanigans and get back to your core of reporting. Your future is brighter than most.

Revoke the citizenship of Fareed Zakaria and deport him. I've never heard a positive word about America or its interest from his mouth, ever. On the same day, give Piers Morgan an indefinite resident alien and Visa card. Mr. Morgan, the problem that many American gun owners have with you and your continuous discussion of gun control is that you are not an American citizen and have an accent that is distinct and clarifies that you are a foreigner. I want you to know that I agree with you 100% on enacting stricter firearm laws but you must understand that your critics will always have in the back of their mind that you are native to a country that we won our sovereignty from while using firearms as a last resort in defense and you come from a country that has no legal private ownership of firearms. That is disheartening to American gun owners and rightfully so.

The honorable President George H.W. Bush, they never give you enough credit for your successful Presidency. You were always one of my favorite Presidents (2nd favorite). I hope your health improves greatly. You are the epitome of an American and service to country.

General Petraeus, you made a mistake that the majority of men make once, twice, or unfortunately many times in a lifetime. You are human. You thought with your penis. It's okay, I personally believe you should have never resigned and told your critics to shove it. You only answer to two people regarding the affair, your wife and children, period. I hope you return to government service to your country as it is visibly in your DNA.

General Colin Powell, your book "My American Journey" solidified my decision to join the military after college. I had always intended to serve, but your book and journey motivated me. You are an inspiration to all Americans and influenced me greatly.

To all SEA's (senior enlisted advisers), you are just as important if not a greater viability to large and small commands. It's time you take a more active role in leading your enlisted and advising officers. These are not your twilight years or time to relax. You can either strengthen the tip of the spear, or make it brittle.

You decide.

Pat Harvey, I've always thought you carried yourself professionally and personally the way a strong black woman should. Your articulation and speech is second to none. You are the epitome of a journalist/anchor. You are America.

Ellen Degeneres, continue your excellent contribution to entertaining America and bringing the human factor to entertainment. You changed the perception of your gay community and how we as Americans view the LGBT community. I congratulate you on your success and opening my eyes as a young adult, and my generation to the fact that you are know different from us other than who you choose to love. Oh, and you Prop 8 supporters, why the (expletive) do you care who your neighbor marries. Hypocritical pieces of (expletive).

Westboro Baptist Church, may you all burn slowly in a fire, not from smoke inhalation, but from the flames and only the flames.

CITY OF DOTHAN/CARNEY 000998
CONFIDENTIAL

Tebow, I really wanted to see you take charge of an offense again and the game. You are not a good QB by todays standards, but you are a great football player who knows how to lead a team and WIN. You will be "Tebowing" when you reach your next team. I have faith in you. Get out of that circus they call the Jets and away from the reality TV star, Rex Ryan, and Mark Rapist Sanchez.

Christopher Walz, you impressed me in Inglorious Basterds. After viewing Django Unchained, I was sold. I have come to the conclusion that you are well on your way to becoming one of the greats if not already and show glimpses of Daniel Day Lewis and Morgan Freeman-esque type qualities of greatness. Trust me when I say that you will be one of the greatest ever.

Jennifer Beals, Serena Williams, Grae Drake, Lisa Nicole-Carson, Diana Taurasi, N'bushe Wright, Brenda Villa, Kate Winslet, Ashley Graham, Erika Christensen, Gabrielle Union, Isabella Soprano, Zain Verjee, Tamron Hall, Gina Carano, America Ferrara, Giana Michaels, Nene, Natalie Portman, Queen Latifah, Michelle Rodriguez, Anjelah Johnson, Kelly Clarkson, Nora Jones, Laura Prepon, Margaret Cho, and Rutina Wesley, you are THE MOST beautiful women on this planet, period. Never settle, professionally or personally.

Dave Brubeck's "Take Five" is the greatest piece of music ever, period. Hanz Zimmer, William Bell, Eric Clapton, BB King, Bob Marley, Sam Cooke, Metallica, Rob Zombie, Nora Jones, Marvin Gaye, Jay-Z, and the King (Louis Armstrong) are musical prodigies.

Jeffrey Toobin and David Gergen, you are political geniuses and modern scholars. Hopefully Toobin is nominated for the Supreme Court and implements some damn common sense and reasoning instead of partisan bickering. But in true Toobin fashion, we all know he would not accept the nomination.

John and Ken from KFI, never mute your facts and personal opinions. You are one of the few media personalities who speak the truth, even when the truth is not popular. I will miss listening to your discussions.

Bill Handel, your effin awesome. For years I enjoyed your show.

Anthony Bourdain, you're a modern renaissance man who epitomizes the saying "too cool for school".

Larry David, Kevin Hart, the late Patrice Oneal, Lisa Lampanelli, Chris Rock, Jerry Seinfeld, Louis CK, Dave Chapelle, Jon Stewart, Wanda Sykes, Dennis Miller, and Jeff Ross are pure geniuses. I'm a big fan of all of your work. As a child my mom caught me watching Def Jam comedy at midnight when I should have been asleep. Instead of scolding me, the next night she let me stay up late and watch George Carlin, Eddie Murphy and Richard Pryor comedy specials with her for hours. My sides were sore for days.

Larry David, I agree, 72-82 degrees is way to hot in a residence. 68 degrees is perfect.

Cyclist, I have no problem sharing the road with you. But, at least go the (expletive) speed limit posted or get off the road!!! That is a feasible request.

Livestrong you fraudulent (expletive).

Cardinal Mahoney, you are in essence a predator yourself as you enabled your subordinates to molest multiple children in the church over many decades.

May you die a long and slow painful death.

CITY OF DOTHAN/CARNEY 000999
CONFIDENTIAL

If you continuously followed me while I was walking at dusk/night I would confront you as well. Too bad Trayvon didn't smash your skull completely open, Zim. While Trayvon's body erodes to bones 6 feet under, Zimmerman has put on no less than 40 pounds while out on bail. Zimmerman was arrested for battery on a Peace officer and avoided jail/prison because he completed a diversion program. Thats a history of being an (expletive). Zimmerman couldn't get hired by a LE agency because of poor credit/and a history of violence/restraining orders with women. So what does he do? Designate himself, neighborhood watch captain and make complaints to his city council about the horrible work ethic and laziness of the officers patrolling his neighborhood. Good one Zim.

How classy that your father attempts to use his veterans status "disabled veteran" during your bail hearing but doesn't state what his disability percentage is.

Prior service personnel know it can be 5% disability to 100%. You and your attorneys always avoid mentioning your fathers occupation as a magistrate/judge because I'm sure he's utilized his position to get you out of way more jams then the public has discovered and that your family is not indigent. Oh, tell your wife to stop perjuring herself in court.

KCCO

Anonymous, you are hated, vilified, and considered an enemy to the state. I personally view you as a culture and a necessity that brings truth to a cloaked world. Forge ahead!

Charlie Sheen, you're effin awesome.

My opinion on women in combat MOS', Designators, Rates, and AFSC's. I wish all of you who attempt to pursue combat occupational roles the greatest success in completing, graduating, and qualifying in their respective schools/courses. Many want to see you fall. Remember, everyone of you is a pioneer.

There was a time when they didn't allow blacks to fight the good fight. This is your civil rights. Don't quit!!!

It's time to allow gay service member's spouses to utilize the same benefits that all heterosexual dependents are eligible for. Medical, Dental, Tricare, Deers, SGLI, BX, Commissary, Milstar, MWR, etc. Flag officers, lets be honest. You can't really give a valid argument to as why gays shouldn't be eligible as every month a new state enacts laws that allow same sex marriage.

LGBT community and supporters, the same way you have the right to voice your opinion on acceptance of gay marriage, Chick Fil-A has a right to voice their beliefs as well. That's what makes America so great. Freedom of expression. Don't be (expletive) and boycott/degrade their business and customers who patronize the locations. They make some damn good chicken! Vandalizing (graffiti) their locations does not help any cause.

Mr. Bill Cosby, you are a reasonable and talented man who has spoken the truth of the cultural anomalies within the black communities that need to change now. The black communities' resentment toward you is because they don't like hearing the truth or having their clear and evident dirty laundry aired to the nation. The problem is, the country is not blind nor dumb. They believe we are animals. Do not mute your unvarnished truthful speech or moral compass.

Blacks must strive for more in life than bling, hoes, and cars. The current culture is an epidemic that leaves them with no discernible future. They're suffocating and don't even

CITY OF DOTHAN/CARNEY 001000
CONFIDENTIAL

know it. MLK Jr. Would be mortified at what he worked so hard for in our acceptance as equal beings and how unfortunately we stopped progressing and began digressing. Chicago's youth violence is a prime example of how our black communities values have declined. We can not address this nation's intolerant issues until we address our own communities morality issues first. Accountability. We need to hold ou [manifesto ends]

(KTLA has removed the names of a number of officers to protect their families.)

**SHARE**   Tweet +1 Share

**Share this story with friends who would like it.**
We recommend which of your friends would enjoy this story.

[?]

Ads by Google

**How I Removed Bad Credit**
1 simple trick & my credit score jumped 217 pts. Banks hate this!
www.thecreditsolutionprogram.com

**Install Google Chrome**
A free browser where you type less & surf the web faster! Download now
www.google.com/chrome

VIEW & ADD COMMENTS

This is part of a larger story. See the big picture!

STORY SUMMARY

**Manhunt for Former Cop Christopher Dorner**



http://ktla.com/2013/02/12/read-christopher-dorners-so-called-manifesto/          2/19/2013

CITY OF DOTHAN/CARNEY 001001
CONFIDENTIAL



Authorities have positively identified the remains found in a burned cabin in the Big Bear area as those of fugitive former cop Christopher Dorner.

The identification brought to and end the intense manhunt for the quadruple murder suspect.

Dorner is believed to have penned an angry manifesto saying he was unfairly fired from the LAPD and was seeking vengeance.



Ads by Google
## Free Printable Crosswords

Direct to Printer - Download Now. No More Wet Newspapers! PC Only.

cloudpublish.com/Hewlett-Packard

YOU MIGHT ALSO LIKE

**STORIES**

VIDEOS


Kellogg's Special K Recalled Due to Possible Glass Fragments


Women in Westwood on Alert After Attack


O.C. Shooting Spree: Suspect Kills 3, Commits Suicide


Facebook Page Helps Reuinte Man with Beloved Dog

**POPULAR VIDEOS**

CITY OF DOTHAN/CARNEY 001002
CONFIDENTIAL

Stoned Girl Gets Behind
Wheel





FACEBOOK     TWITTER

## Topics

- VIEWER INFO
- LOCAL NEWS
- NATION/WORLD
- KTLA 5 MORNING NEWS
- 5 LIVE TRAFFIC
- 5 LIVE WEATHER
- SURF REPORT
- SKI REPORT
- ENTERTAINMENT
- LIVE FROM THE OSCARS
- MONEY SMART
- CONSUMER CONFIDENTIAL
- HEALTH SMART
- TECHNOLOGY WITH RICH DEMURO

CITY OF DOTHAN/CARNEY 001003
CONFIDENTIAL

Case 1:14-cv-00392-WKW-WC   Document 44-2   Filed 07/17/15   Page 24 of 220

- SPORTS
- PETS
- HEROES AT HOME
- CAR PRO SHOW
- SPECIAL REPORTS
- EARTHQUAKES

# Links

- CONTESTS
- PROGRAM GUIDE
- ANTENNA TV DT2
- THISTV DT3
- NEWS STAFF
- ROSE PARADE
- ABOUT KTLA
- SHOWS
- COMMUNITY CALENDAR
- JOBS
- ADVERTISE WITH KTLA
- ABOUT OUR ADS
- CONTACT US
- PRIVACY POLICY
- TERMS OF SERVICE
- KTLA ONLINE PUBLIC FILE
- PUBLIC FILE & ACCESSIBILITY QUESTIONS

# Contact Us

KTLA-TV
5800 Sunset Blvd.
Los Angeles, CA, 90028

Copyright © 2013 Tribune Broadcasting Company | Powered by WordPress.com VIP

CITY OF DOTHAN/CARNEY 001004
CONFIDENTIAL



# THE CITY OF
# DOTHAN, ALABAMA

POST OFFICE BOX 2128 • DOTHAN, ALABAMA 36302 • 334-615-3000

## MEMORANDUM

GREGORY J. BENTON
CHIEF OF POLICE

**TO**      : CORPORAL RAEMONICA CARNEY

**FROM**   : SERGEANT DONNY SMITH

**DATE**    : FEBRUARY 15, 2013

**SUBJECT** : INTERNAL COMPLAINT

Department policy provides that you have the right to be advised in writing of the complaint against you prior to you being questioned concerning the allegation regardless of its nature.

This is to inform you of a complaint filed against you by the Internal Affairs Division. It is alleged that on February 12, 2013 you posted to a social networking site (Facebook) statements that impair working relationships of this department for which loyalty is important. These statements also cause disharmony among coworkers and negatively affect the public perception of the department. This conduct also has a tendency to destroy public respect for employee and confidence in the department.

You will be given an opportunity in the future to respond to the allegations against you.

The office of the Chief of Police has been notified of this investigation as well as your supervisor.

You will be notified at the conclusion of this internal investigation.

Sergeant Donny Smith
Internal Affairs Division

**DEFENDANT'S EXHIBIT**

Cloyd  14

# POLICE DEPARTMENT

210 NORTH SAINT ANDREWS STREET • DOTHAN, ALABAMA 36303 • 334-615-3601
Email: dpd@dothan.org

CITY OF DOTHAN/CARNEY 000559
CONFIDENTIAL

RaeMonica Carney
2601 Stringer Street
Dothan, AL 36303
February 15, 2013


Greg Benton
Chief of Police
Dothan Police Department
210 N. Saint Andrews Street
Dothan, AL 36303

Dear Chief Benton:

Since my employment with Dothan Police Department initially in 1999 and again in 2005 after leaving for one year then returning, I have had to address issues of sexual and racial discrimination within the ranks of the department from the lowest ranking officer to the highest. I now have to address this issue again as I feel that I am being sexually and racially discriminated against by two high ranking officers within the department. At this time I do not wish to disclose the names of those officers because of their high profile positions within the department, but they will be named in my formal EEO complaint to the City of Dothan's Equal Employment Opportunity Office.

The conduct of these high ranking officers creates an intimidating, hostile, and offensive work environment for me. It also tends to sway other officers to believe what they project about me causing dissention and issues of challenged integrity and trustworthiness amongst us. In addition, it creates an unequal relationship between other officers and me in terms of current and future promotional positions within the department when being evaluated by senior staff.

I have always placed in high regards my position as a Police Corporal for Dothan Police Department and U.S. Army Sergeant in the Intelligence field when involving myself on any matter, whether public or private, which could bring discredit upon either employing agency or my position within those agencies. I sincerely hope that you will exercise due diligence in investigating and determining what actions should be taken to appropriately handle the matters detailed in my complaint to the EEO.


Sincerely,

RaeMonica Carney, Corporal
Community Watch & Crime Stoppers Coordinator
Dothan Police Department

**DEFENDANT'S EXHIBIT**

Cloyd   15

CITY OF DOTHAN/CARNEY 000561
CONFIDENTIAL

CONFIDENTIAL
CITY OF DOTHAN/CARNEY 000834

# DOTHAN POLICE DEPARTMENT

## INTERNAL AFFAIRS DIVISION

### GARRITY NOTICE

You are being questioned as a part of an official administrative investigation of the Dothan Police Department. You will be asked questions specifically directed and narrowly related to the performance of your official duties or fitness for office. You are entitled to all of the rights and privileges guaranteed by the laws and the Constitution of the State of Alabama and the Constitution of the United States, including the right not to be compelled to incriminate yourself. If you refuse to testify or to answer questions related to your official duties or fitness for duty, you will be subject to departmental charges, which could result in your dismissal from the Dothan Police Department. If you do answer, neither your statement nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceeding, <u>except for Perjury or Obstruction of Justice charges</u>. However, these statements may be used against you in relation to subsequent departmental charges.

MEMBERS SIGNATURE: *RaeMonica Carney* *RaeMonica Carney*

DATE/TIME: 18 FEB 2013 9:56 AM

INVESTIGATING OFFICER: *Denny Shirl*

DATE/TIME: 2-18-13 0957

WITNESS SIGNATURE: _____

DATE/TIME: 2-18-13 09:57

PD 15 B



DEFENDANT'S
EXHIBIT

Cloyd   16



# City of Dothan
# Alabama

F. Darryl Mathews
EEO/Training Officer

## MEMORANDUM

**TO:** Corporal Raemonica Carney, Dothan Police Dept.

**FROM:** F. Darryl Mathews, EEO/Training Officer *FDM*

**DATE:** February 21, 2013

**SUBJECT:** Dothan Police Officers' complaint of racially motivated Facebook comments

Please be advised that various Dothan Police Officers have registered a complaint regarding several public posts you made on your Facebook page that appear to be racially motivated. Therefore, my office will initiate an investigation into this matter.


cc: Mike West, City Manager
    Delvick McKay, Personnel Director
    Greg Benton, Police Chief

*RaeMonica Carney* 26 FEB 2013



DEFENDANT'S
EXHIBIT

Cloyd 17

CARNEY-00040



# City of Dothan
# Alabama

F. Darryl Mathews
EEO/Training Officer

## MEMORANDUM

**TO:**        Corporal Raemonica Carney, Dothan Police Dept.

**FROM:**   F. Darryl Mathews, EEO/Training Officer

**DATE:**    February 21, 2013

**SUBJECT:**   Dothan Police Officers' complaint of racially motivated Facebook
comments

Please be advised that various Dothan Police Officers have registered a complaint
regarding several public posts you made on your Facebook page that appear to be
racially motivated. Therefore, my office will initiate an investigation into this
matter.


cc: Mike West, City Manager
    Delvick McKay, Personnel Director
    Greg Benton, Police Chief

*RaeMonica Carney* 26 FEB 2013

CARNEY-00041

**McKay, Delvick J**

| | |
|---|---|
| **From:** | Carney, Raemonica |
| **Sent:** | Tuesday, February 19, 2013 4:10 PM |
| **To:** | McKay, Delvick J |
| **Cc:** | West, Michael K; Benton, Greg; Mathews, Darryl |
| **Subject:** | RE: URGENT |
| | |
| **Importance:** | High |

Mr. McKay,

The Internal Affairs Investigators who questioned me made me feel that they came into the investigation with a preconceived determination that I was guilty of the allegations made by the letter of complaint from the onset of the questioning. I asked had a formal complaint been filed against me and I was told there had not been by SGT Donny Smith. SGT Smith's demeanor towards me was threatening because he raised his voice in anger while making hand gestures towards me, and his questions were directed in an accusatory and coercive way. I did not feel that they, as he was accompanied by SGT Doug Magill, were trying to get a clear understanding my posts relating to the case nor the conversations that I had with long time friend, but were in essence an attempt to intimidate me into agreeing with their preconceived perceptions or the perception of some of the other members within the department as well as outside the department.

Prior to being questioned by Internal Affairs I was called into Major Parrish's office and told by him that "several officers in the department were scratching their heads" regarding my postings about the cop killer Christopher Dorner. Major Parrish also said to me, "just understand that every time you post something it fuels some people's fires," which makes me feel that the subsequent IA investigation was in retaliation to additional postings I made after my conversation with him. I feel the investigation was a way to scare me into backing away from posting about the unfolding investigation into that case.

In previous IA complaint investigations that have been initiated against me in the past there was only one investigator who questioned me. Due to the allegations that I have shown some racial bias towards a Black male labeled a cop killer accused of killing Caucasian officers, why wasn't the EEO officer informed and involved in the investigation being conducted by the department. I do not feel that an internal investigation will yield an unbiased finding because I was called a racist on my Facebook page by two white male former COD Police Dept former Police Officers, Jim Holley and Richard Odom, who are friends of the assigned investigators, Major Parrish, Chief Benton and several other current Police Officers. I also know that this lady is friends with current Police Lieutenant Mark Lee Nelms who is friends with and worked for several years in multiple internal divisions of the Police Department with both of the former Police Officers. SGT Magill, SGT Smith, Richard Odom and Jim Holley have all worked together in one capacity or another when they all were employed at the Police Department. I do not think it's hard to see the connection that exists amongst these friends.

I do not question Chief Benton's concern or authority to have citizens complaints thoroughly investigated to protect the departments image to the public, whether it's against me or any other officer, as he has a duty to.

I am, however, very fearful for my safety and the safety of my family due to the ties that exist between the former and current members of the department. I have been called a derogative and highly inflammatory name by individuals whose clear intent was to defame my character to their friends who are current employees and also those members of the public who are members of Wiregrass Live. I ask that an immediate outside investigation be conducted so that the true facts of the allegations against me are revealed without any impropriety or the appearance of impropriety or bias.



1

CITY OF DOTHAN/CARNEY 000587
CONFIDENTIAL

*CPL RaeMonica Carney*
*Community Watch Program Coordinator*
*Crime Stoppers Coordinator*
*Recruiting Team Member*
*Dothan Police Department*
*Office: 334-615-3654*
*Cell: 334-797-0121*

**From:** McKay, Delvick J
**Sent:** Tuesday, February 19, 2013 1:57 PM
**To:** Carney, Raemonica
**Cc:** West, Michael K; Benton, Greg
**Subject:** RE: URGENT
**Importance:** High

As you know, all employees are expected to work in an environment that is free of personal threats and threats of violence towards themselves, their supervisors, and or co-workers. If there is any <u>specific</u> reports of threats being made to you by a supervisor or employees related to this matter, I need to know as well as the Chief. When complaints are received particularly relating to the inefficiency and/or misconduct of any employee, it is investigated to ensure that no policy violations have occurred and that the public trust and expectations of the public agency remain intact.

What is posted on public domain (social media, facebook, twitter, etc.) is subject to be reviewed by the general public and could have implications on the individual posting such comments and perhaps a negative connotation upon the entity that individual represents (public agency or private company).

The City has the responsibility to investigate these matters that has been reported to Internal Affairs and the Police Chief concerning what was posted on your Facebook. What an individual posts on public domain can potentially harm the entity they work for and cause some challenges in how the entity is perceived in the public's eye. Therefore, social media serves its purpose but must be used wisely. The Chief and Internal Affairs must do their due diligence, along with my department to ascertaining the facts in this case.

If you receive personal threats of your personal safety from employees, supervisors, or the public, report them to the proper authorities. However, it is proper that the City review all facts in this case and to follow the appropriate protocol. Employers find it difficult to control the public's opinion particularly when it's placed on public domain. However, employers must investigate the alleged misconduct of an employee's actions that may deem to be detrimental to its operation.

Delvick J. McKay
Personnel Director
City of Dothan, AL
(334) 615-3116 p
(334) 615-3189 f
www.dothan.org

**From:** Carney, Raemonica
**Sent:** Tuesday, February 19, 2013 12:54 PM
**To:** McKay, Delvick J
**Subject:** URGENT
**Importance:** High

2

CITY OF DOTHAN/CARNEY 000588
CONFIDENTIAL

I AM IN IMMINENT FEAR FOR MY PERSONAL SAFETY AND THE SAFETY OF MY FAMILY MEMBERS FROM OFFICERS OF THIS DEPARTMENT WHOM I FEEL ARE IN COLLUSION WITH FORMER POLICE OFFICERS OF THIS DEPARTMENT AND THEIR INTENTION IS TO LABEL ME A RACIST IN THE EYES OF THE PUBLIC. INTERNAL AFFAIRS INVESTIGATORS SGT DONNY SMITH AND SGT DOUG MAGILL ARE CURRENTLY CONDUCTING AN INVESTIGATION INTO WHAT I WAS TOLD WAS A REQUEST BY CHIEF BENTON FOR THEM TO LOOK INTO THE MATTER AFTER HE RECEIVED A LETTER FROM A CITIZEN EMILY HAYS ALLEGING I MADE RACIST COMMENTS AND BRING DISCREDIT TO THE DEPARTMENT FROM CONVERSATIONS SHE INITIALLY SAW ON WIREGRASS LIVE FROM POLICE OFFICERS WHO HAD TAKEN MY FB POSTS AND COPIED THEM TO THAT SITE AND WERE BAD MOUTHING ME IN THEIR DISCUSSION. I AM ASKING THAT THE CITY OF DOTHAN TAKE IMMEDIATE ACTION TO PROTECT ME AND MY FAMILY FROM ACTS OF VIOLENCE THAT MAY BE DIRECTED TOWARDS ME AS A RESULT OF WHAT IS NOW BEING POSTED ON RICKEY STOKES NEWS ONLINE WEBSITE.

*CPL RaeMonica Carney*
*Community Watch Program Coordinator*
*Crime Stoppers Coordinator*
*Recruiting Team Member*
*Dothan Police Department*
*Office: 334-615-3654*
*Cell: 334-797-0121*

CITY OF DOTHAN/CARNEY 000589
CONFIDENTIAL



# City of Dothan
# Alabama

F. Darryl Mathews
EEO/Training Officer

## MEMORANDUM

**TO:**      Corporal Raemonica Carney, Dothan Police Department

**FROM:**    F. Darryl Mathews, EEO/Training Officer *[signature]*

**DATE:**     March 20, 2013

**SUBJECT:**   Findings and Recommendations from complaints registered against you by various Dothan Police Officers

Corporal Carney, my investigation into Dothan Police Officers complaints against you has been completed

Therefore, my findings are that your public posts on Facebook had racial content and implied race. Also, on March 15, 2013, during our interview, you admitted your public posts had racial content and implied race. Corporal Carney, this conduct is unbecoming of a Dothan Police Officer and merit corrective action.

Please be advised that other actions may be forthcoming by the Internal Affairs Division of the Police Department.

Therefore, recommendations from my office are as follows:

     (1) You attend race sensitivity sessions designed by Bradford Services;
     (2) You attend sessions designed by Bradford Services on Leadership, Professional
          Conduct, and Accountability in written and verbal communication, and;
     (3) These sessions are to be monitored by the EEO/Training Officer.

cc: Mike West, City Manager
     Delvick McKay, Personnel Director
     Greg Benton, Police Chief



DEFENDANT'S
EXHIBIT

Cloyd    19

CITY OF DOTHAN/CARNEY 000662
CONFIDENTIAL



# City of Dothan
# Alabama

F. Darryl Mathews
EEO/Training Officer

## MEMORANDUM

**TO:**        Corporal Raemonica Carney, Dothan Police Dept.

**FROM:**    F. Darryl Mathews, EEO/Training Officer

**DATE:**     March 20, 2013

**SUBJECT:**    EEO Complaint

Corporal Carney, I acknowledged receipt of your letters of complaint submitted to my office dated February 26, 2013.  In a follow-up email to you dated March 5, 2013, additional information was requested to commence with the investigation of your complaint.  Also, in that email, information was requested to clarify your complaint under Title VII and resolution of your complaint. The deadline for submitting that information was March 7, 2013.  However, during our interview on March 14, 2013, you felt your letters of complaint provided the needed information and clarity. **(Please be advised that the tape recording agreed to by both of us will serve as facts in this investigation).**

### Corporal Carney's Complaint
Corporal Carney, you alleged *"intentional conspired racial discrimination, harassment, coercion and intimidation and threats of violence against you by named Dothan Police Department employees: Major Steve Parrish, Captain David Jay, Lieutenant William Benny, Sergeant Donny Smith, and Sergeant Doug Magill.  Furthermore, you state you have reason to believe that these employees conspired with former employees and a local resident; retired police Sergeant Jimmy Holley, ex-Police Officer Richard Odom and Emily Hays, to take posts I made on my personal Facebook page about a highly publicized man-hunt for alleged murderer Christopher Dormer, and posted portions of them on one or more of their own personal Facebook pages and a second social media site known as Wiregrass Live in an attempt to make it appear to the public and co-workers that I was making racist comments, supporting an alleged cop-killer, and bringing discredit to the Dothan Police Department and the City of Dothan as a whole. I am in fear of retaliation and grave fear of physical attacks against my person by persons listed above to include currently employed law enforcement officers who may be supporting their views"*.



DEFENDANT'S EXHIBIT

Cloyd   20

CITY OF DOTHAN/CARNEY 000663
CONFIDENTIAL

Memo to Corporal Carney re-EEO Complaint
March 20, 2013
Page 2 of 4

### EEO/Training Officer's Response

Corporal Carney, your personal Facebook posts regarding Christopher Dormer are at the center of this investigation. Facebook comments you posted about Christopher Dormer in a public forum were viewed by those with Facebook accounts and undoubtedly posted your comments to other Social Media sites. Thus your claims against those who *"allegedly conspired with Emily Hays, intentional conspired racial discrimination, harassment, coercion and intimidation and threats of violence* are unsubstantiated.

Corporal Carney, the facts are that people in the community and workplace are outraged by your Facebook posts. Emily Hays' posts were seen by Chief of Police, Greg Benton, who has a Wiregrass Live account and directed Internal Affairs to initiate an investigation. Internal Affairs were tasked with determining if your Facebook comments violated the department's Social Media policy. Under Title VII cases, you have to show an adverse employment action by your employer has occurred. Also, you have not shown that any threats of physical violence against have occurred by former or current Dothan Police Officers.

Corporal Carney, on February 14, 2013, you stated that you were directed to move your office location to Wiregrass Park and that Lieutenant Benny Baxley would be in charge of the newly created Division of the Community Services. In our interview on March 14, 2013, you admitted to the facts of the new Community Services Division being created. Corporal Carney, you stated that you and two other law enforcement personnel were moved to that location resulting from this organizational formation. Furthermore, you stated that you were denied access to a TipSoft Online Crime Stoppers program you were instrumental in obtaining for the Police Department.

### EEO/Training Officer's Response
Corporal Carney, I have review the contents and findings of your formal grievance filed with the Personnel Department on February 27, 2012. Mr. Delvick McKay, Personnel Director, addressed the above mentioned Police Department organizational restructuring and the personnel move to Wiregrass Park. He further mentioned to you that although access to the TipSoft Online Crime Stoppers program was changed from you to Communication Center personnel you remained the Crime Stoppers' Coordinator. Therefore, no adverse employment action has taken place and the decision for the TipSoft program access was changed for operational efficiency.

Corporal Carney, on February 15, 2013, you stated that Lieutenant Baxley served you with notice that Internal Affairs was initiating an investigation against you by unnamed persons. Then, on February 18, 2013, you were informed by Lieutenant Baxley to report to Donny Smith's office in reference to the investigation. Sergeant Magill was also in Sergeant Smith's office. You immediately thought a meeting with two investigators was out of the ordinary. During the interview, you said that their manner of questioning your posts was along the lines of trying to coerce and intimidate you into admitting that your comments were racially offense.

CITY OF DOTHAN/CARNEY 000664
CONFIDENTIAL

Memo to Corporal Carney re-EEO Complaint
March 20, 2013
Page 3 of 4

Furthermore, you stated that their interrogating approach was intimidating and that they were
trying to get you to commit to their personal views of your post. In the end, you stated that
you felt threatened by Sergeant Smith's aggressive hand gestures toward you.

### EEO/Training Officer's Response

Corporal Carney, the Personnel Director and I have both reviewed the tape recording of
Internal Affairs and did not reach the same conclusions. Police Department's investigative
tactics are not the same as those done by the Personnel Director or myself. While at times the
questioning was heightened, it did not appear to be out of the ordinary. The questioning
directed towards your posts by Internal Affairs was at times strong but didn't appear
combative. Finally, I cannot substantiate the aggressive hand gestures you stated Sergeant
Smith directed toward you because I was not present at the interview. Also, I did not hear you
complain on the tape about this issue.

### Corporal Carney's Complaint

Corporal Carney, on February 20, 2013, you spoke to Police Officer Woodside who advised you
that he knew for a fact that a former Police Officer was generating or stirring up things with
other officers. Furthermore, you mentioned Emily Hays started a post on Wiregrass Live where
several officers have accounts, including Police Chief Greg Benton. Also, you said that Lt. Benny
discriminates against female officers within the department. Corporal Carney, you also felt that
Lt. Benny was retaliating against you for the complaint you filed against Officer Grantham who
was interviewed during the Internal Affairs investigation. Additionally, you state that Major
Parrish was instrumental in having the Internal Affairs investigation conducted from the
comments he made when questioning you about the Facebook comments.

Corporal Carney, you state that high ranking officers have created an intimidating, hostile and
offensive work environment for you. Also, you state your Performance Evaluation has been
affected negatively. In addition, you felt the conduct of these officers created an unequal
relationship between you and them for promotions. You also felt these Police Officers should
be punished for slandering your name on Facebook and Wiregrass Live to the general public. In
your opinion, criminal charges should be brought against those Police Officers found in
violation of any criminal law in regards to this matter.

### EEO/Training Officer's Response

In my capacity, your statement that Lt. Benny discriminates against women and is retaliating
against you for filing a complaint against Officer Grantham is **unsubstantiated**. Corporal
Carney, you stated that you feel Major Parrish was instrumental in having you investigated by
Internal Affairs. In my capacity, I find this allegation **unsubstantiated**. Again, Chief Benton, a
Wiregrass Live member, read Emily Hays post and directed Internal Affairs to initiate an
investigation. Corporal Carney, comments you posted on Facebook in a public forum allowed
social media followers to posts your comments onto other sites. There is nothing criminal or
slandering here because they simply posted comments you made publicly to other sites.

CITY OF DOTHAN/CARNEY 000665
CONFIDENTIAL

Memo to Corporal Carney re-EEO Complaint
March 20, 2013
Page 4 of 4

Finally, I do not find that your letters of complaint show any adverse employment action has occurred. Allegations you made in your letters of complaint are **unsubstantiated**. The facts here are about whether or not you violated the Police Department's Social Media Policy and what corrective actions are appropriate. **Therefore, it is my determination that you do not have a Title VII case.**

cc: Mike West, City Manager
    Delvick McKay, Personnel Director

CITY OF DOTHAN/CARNEY 000666
CONFIDENTIAL

RaeMonica Carney
2601 Stringer Street
Dothan, AL 36303
Cell: 334-685-4623
raecarney@yahoo.com


Daryl Mathews
EEO Officer/Training Officer
City of Dothan
126 N. Saint Andrews Street
Dothan, AL 36303


Reference: Formal Grievance                          February 26, 2013


Sir:

Please let this letter serve as additional notice of grievance, along with the City of
Dothan's Formal Grievance and Appeal Procedure Form (Personnel Form 118), of
intentional conspired racial discrimination, harassment, coercion and intimidation, and
threats of violence against me by Police Department employees: Major Steve Parrish,
Captain David Jay, Lieutenant William Benny, Sergeant Donny Smith, and Sergeant
Doug Magill. I have reason to believe that these employees conspired with former
employees and a local resident, retired police Sergeant Jimmy Holley, ex-Police Officer
Richard Odom and Emily Hays to take posts I made on my personal Facebook page
about the highly publicized man-hunt for alleged murderer Christopher Dorner, and
posted portions of them onto one or more of their own personal Facebook pages and a
second social media site known as Wiregrass Live in an attempt to make it appear to the
public and co-workers that I was making racist comments, supporting an alleged cop-
killer, and bringing discredit upon the Dothan Police Department and the City of Dothan
as a whole. I am in fear of retaliation and grave fear of physical attacks against my
personal safety by all the persons listed above to include currently employed law
enforcement officers who may be supporting their views.

On Friday, February 8, 2013 I met with Lieutenant Benny Baxley in my office which was
located in the Criminal Investigations Division. He met with me to inform me that he
would now be my direct supervisor in charge of the Community Services Division. He
informed me the Police Department was in the process of cleaning up a storage building
located at Wiregrass Park for the Community Services Division to operate out of mainly
because of the Police Athletic League's involvement with children during the summer
months. During that meeting I informed him about some issues I was having involving
my responsibilities as Crime Stoppers Coordinator. I informed him that back in
November 2012 Lt. William Benny notified me that I would no longer have Admin
access rights (Admin is able to control the access of all users) to TipSoft Online, the
Crime Stoppers tip management program that I was instrumental in obtaining for the
Police Department and other involved entities. I explained to Lt Baxley that I felt like my



DEFENDANT'S
EXHIBIT

Clayd    21

CITY OF DOTHAN/CARNEY 000592
CONFIDENTIAL

Daryl Mathews
February 19, 2013
Page 2

access rights were lowered due to retaliation from Lt. Will Benny as a result of an excessive use of force complaint I filed against Officer Daniel Grantham in 2011 when Lt. Benny was the Lieutenant over Officer Grantham. Lt. Benny and Corporal Scott Smith were also investigated. The investigation was determined to be unfounded by Sergeant Mike Etress. I was contacted by two different Officers, Officer Jason Neal and Officer Bobby Ashley, advising me to come check the patrol board because of a letter copied on pink paper that had been posted on the patrol bulletin board. I was advised that the letter was a photocopy of the Internal Affairs finding in my complaint against Officer Daniel Grantham, Cpl Scott Smith, and Lt. Will Benny. The letter I received from Internal Affairs was dated April 7, 2011. I advised Lt. Baxley that it wasn't possible for me to be in charge of a program without full access to the program. I advised him that not having the appropriate access severely limited my abilities to effectively manage the program and it would at some point reflect negatively on my performance evaluation. Lt. Baxley stated he agreed with me and advised that he would speak with Major Parrish about the matter to see what could be done.

On Thursday, February 14, 2013 at approximately 0830 hours I met with Major Steve Parrish in his office after being summoned by Secretary Pam Deese. Accompanying him was my supervisor Lt. Benny Baxley. The purpose of the meeting according to Major Parrish was to inform me about some remarks he had been hearing from other officers, whom he did not name, regarding comments I posted on my personal Facebook page. He stated he wanted to tell me something and for me to just mull it over, but that in his opinion, I had every right under freedom of speech to post whatever I want on Facebook. He explained that he had been hearing that I was making posts regarding Christopher Dorner, the ex-cop from Los Angeles Police Department, and his manifesto. He said the posts I was making or had made were, "having some officers in this department scratching their heads." He stated that he did not have a Facebook page and that he didn't know anything about Christopher Dorner other than "he killed some police officers." Major Parrish said "whatever your political view of that is, it's your business." He then went on to ask me, "Do you have any idea how much pressure that puts on this hallway from the rank and file when you post stuff like that," and "do you consider that, do you care." I responded yes I do consider it and yes of course I care. He stated he was sure that I was familiar with the personnel rules and reminded me that I can't do anything that has a negative reflection on the department. He said he didn't know the guy or what his position was, but that, "they say he killed police officers." He stressed that I'm a police officer in a high profile position who's recruiting for the agency. He said, "What you do is up to you, but if you could help us out and understand that every time you post something it fuels some people's fires." He went on to say that my Facebook posts were on Wiregrass Live and that he doesn't read Wiregrass Live and that he "had not read my Facebook posts and I'm not going to," but he wanted to tell me how he felt about it. He goes on to say, "Understand the position that it puts us in when everybody's saying I can't believe y'all are putting up with that," but then goes back to saying that "you have a right to say what you want to say and feel how you want to feel." Major Parrish said they have me in a very important high profile position and "they have no intention of taking

2

CITY OF DOTHAN/CARNEY 000593
CONFIDENTIAL

Daryl Mathews
February 19, 2013
Page 3

me out of it, but you need to consider those things when you post things about people who kill police officers." I replied to Major Parrish that I always take into account what I do or say before it's done, not only because I'm a Police Officer, but also because I'm a Sergeant in the U.S. Army. I told him that I would never do anything to jeopardize my careers in either field, but that I appreciated him sharing the views of the department from his standpoint. Prior to my visit with Major Parrish, none of the department's current employees made contact with me to indicate that they were in disagreement with or insulted by any of my recent Facebook posts regarding my following of the unfolding media events about Christopher Dorner, his manifesto, nor the LAPD officers involved in that investigation. After I left the meeting with Major Parrish, Lt. Baxley contacted me and informed me that I had to move out of my office located in the Criminal Investigations Division and over to the Wiregrass Park building. I advised him that I would get to it after lunch since I was attending a recruiting event at the time. After lunch I relocated my office to Wiregrass Park.

On Friday, February 15, 2013 around 0930 hours Captain David Jay and Captain Stacy Robinson came over to the new office location at Wiregrass Park. Captain David Jay walked in the door and said, "Surprise inspection." Lt. Baxley and I were the only persons present. The building was and still is not equipped with phone, cable/internet access, or copier/fax which is necessary in the performance of our duties. Captain Jay was my immediate supervisor prior to Lt. Baxley's appointment, and he has never conducted an inspection of my workspace before, however, on this day he circled around my desk area paying particular attention to my work laptop and personal laptop that I was working on. I have memorabilia of President Barack Obama on my desk, as a backdrop on my work laptop, in a picture frame, and posted on my cork board. I also have numerous work related materials posted and on a bookshelf in my workspace area. Toward the end of the work day Lt. Baxley served me with the Internal Affairs investigation initiated against me by unnamed persons.

On Monday, February 18, 2013 at approximately 0930 hours I was informed by Lt. Baxley to report to Sgt Donny Smith's office in reference to the investigation. Sgt Smith was accompanied by Sgt Doug Magill in his office. I immediately thought it was out of the ordinary to be questioned by two IA investigators, but I cooperated with the investigation. During the investigation I felt that Sgt Smith's manner of questioning my posts was along the lines of trying to coerce and intimidate me into admitting I was making racially offensive comments. He was speaking very aggressively as if he came in with his own personal beliefs about the posts. I felt as if both of them were trying to intimidate me into agreeing with their views. I felt threatened by Sgt Smith's aggressive hand gestures towards me.

On Wednesday, February 20, 2013 at approximately 1330 hours I went to the Police Department to find out more information regarding the arrest of a student at the Civic Center who was attending the Basketball Tournament at the request of Coach Jonathan Carmichael. I made contact with Officer Mike Woodside on the south side patrol parking lot as he was talking to the parent of the student in question. Officer Woodside advised

3

CITY OF DOTHAN/CARNEY 000594
CONFIDENTIAL

Daryl Mathews
February 19, 2013
Page 4

me that he needed to talk to me so I waited for him to finish. Officer Woodside advised me that he wanted me to know that despite what had been posted on Rickey Stokes News (RSN) regarding my Facebook posts his relationship with me would not change. He said that he knew nothing about my Facebook posts prior to seeing them on RSN, but even still he wanted me to know personally that he was not getting caught up in the rumors being generated by some of the other Officers within the department. He stated that he told several Officers that if they originally had nothing to do with my Facebook posts then they should not get involved with the things going on because he knew for a fact that it involved a former Police Officer that no longer works at the department. Officer Woodside did not mention the names of the Officers he spoke with, nor did he name the former Officer he advised he knew was behind the scenes. He stated that he didn't trust the former Officer when he was employed.

The former Police Officers who engaged me in conversation on my personal Facebook page include Carl Midkiff, Jim Holley, and Richard Odom. I am friends with Carl Midkiff and Jim Holley, but prior to my posts on February 12, 2013, I do not recall having had any Facebook conversations with them. Richard Odom and I were never friends or aquaintances on Facebook. John Riley, another former Dothan Police Officer, selected to follow me on Facebook on February 16, 2013, and when I messaged him about following my Facebook page after all the years that had passed, he did not respond. Danny Herold is someone I am not familiar with; however, I am certain that he learned of my Facebook page after my posts were shared to one of my former co-workers Facebook pages just as Jim Holley shared my post on his Facebook page, in particular, the post that named Brent Parrish and several others by name. Emily Hays, the lady who complained to the Chief's office and whose letter of complaint was read to me by Sgt Donny Smith during the IA investigation, stated that she did not know me and only learned of me from several police officers who were talking about me to her. Ms. Hays started a social media post via a Wiregrass Live thread titled "Dothan Police Officer angers other officers and myself" on February 14, 2013. She then posted her letter of complaint to Chief Benton on that thread. Captain David Jay and Ms. Hays are friends on Wiregrass Live. Chief Benton, Captain Jay and several other current Police Officers have Wiregrass Live memberships, some who it appears, urged Ms. Hays to file a letter of complaint. One of the Wiregrass Live members known as Vettman1 made the following statement: "Wgl members won't have to do anything. I certainly hope she never needs back up. I can assure you other members of the dept. will allow her plenty of time to think and reflect on her comments. This I am most certain." Ms. Hays is also Facebook friends with Lt. Mark Nelms, whose friends with the same high ranking Officers and IA Officers listed in this complaint.

Lt. Benny and Brent Parrish worked together on 4th Squad years ago and have maintained their friendship. They filed complaints against another former female Police Officer Christine Ortiz Maddox alleging she failed to assist with the arrest of a suspect that resulted in her being placed on probation for two years. I believe that Lt. Benny discriminates against female Officers within this department. I also feel that he is

4

CITY OF DOTHAN/CARNEY 000595
CONFIDENTIAL

Daryl Mathews
February 26, 2013
Page 5

retaliating against me for the complaint I filed against Officer Grantham because he was interviewed also during the investigation.

I believe that Major Parrish is conspiring with Lt. Benny to further his attempts to get me written up and or terminated. I feel that Major Parrish was instrumental in having the investigation conducted after his conversation with me in his office specifically due to his comment, "What you do is up to you, but if you could help us out and understand that every time you post something it fuels some people's fires," because I made a subsequent post on my Facebook page referencing "scratching their heads" which was similar to his comment, "having some officers in this department scratching their heads." I know that Major Parrish has long been associated with Sons of Confederate Veterans, which has been held to be a racist organization. There are several Police Officers affiliated with the organization as was also mentioned in the Wiregrass Live thread Ms. Hays initiated.

The conduct of these high ranking officers creates an intimidating, hostile, and offensive work environment for me. It also tends to sway other officers to believe what they project about me causing dissension and issues of challenged integrity and trustworthiness amongst us. In addition, it creates an unequal relationship between other officers and me in terms of current and future promotional positions within the department when being evaluated by senior staff. My performance evaluation based on my current positions can also be affected negatively. The Police Officers, no matter their rank, should be investigated for their deliberate actions to create a hostile work environment for me, as well as, for deliberately slandering my name on Facebook and Wiregrass Live to members of the general public. Criminal charges should also be brought against those found to be in violation of any criminal law in regards to this matter.

I have always placed in high regards my position as a Police Corporal for the Dothan Police Department and as a Sergeant in the U.S. Army in the Intelligence field when involving myself on any matter, whether public or private, which could bring discredit upon either employing agency or my position within those agencies. I sincerely hope that you will exercise due diligence in investigating and determining what actions should be taken to appropriately handle the matters detailed in my complaint.

Sincerely,

RaeMonica Carney, Corporal
Community Watch & Crime Stoppers Coordinator
Dothan Police Department

5

CITY OF DOTHAN/CARNEY 000596
CONFIDENTIAL

RaeMonica Carney
2601 Stringer Street
Dothan, AL 36303
Cell: 334-685-4623
raecarney@yahoo.com

Daryl Mathews
EEO Officer/Training Officer
City of Dothan
126 N. Saint Andrews Street
Dothan, AL 36303

Reference: Formal Grievance                                    February 26, 2013

Sir:

Please let this letter serve as additional notice of grievance, along with the City of
Dothan's Formal Grievance and Appeal Procedure Form (Personnel Form 118), of
intentional conspired racial discrimination, harassment, coercion and intimidation, and
threats of violence against me by Police Department employees: Major Steve Parrish,
Captain David Jay, Lieutenant William Benny, Sergeant Donny Smith, and Sergeant
Doug Magill. I have reason to believe that these employees conspired with former
employees and a local resident; retired police Sergeant Jimmy Holley, ex-Police Officer
Richard Odom and Emily Hays, to take posts I made on my personal Facebook page
about the highly publicized man-hunt for alleged murderer Christopher Dorner, and
posted portions of them onto one or more of their own personal Facebook pages and a
second social media site known as Wiregrass Live in an attempt to make it appear to the
public and co-workers that I was making racist comments, supporting an alleged cop-
killer, and bringing discredit upon the Dothan Police Department and the City of Dothan
as a whole. I am in fear of retaliation and grave fear of physical attacks against my person
by all the persons listed above to include currently employed law enforcement officers
who may be sudpporting their views.

On Friday, February 8, 2013 I met with Lieutenant Benny Baxley in my office which was
located in the Criminal Investigations Division. He met with me to inform me that he
would now be my direct supervisor in charge of the Community Services Division. He
informed me the Police Department was in the process of cleaning up a storage building
located at Wiregrass Park for the Community Services Division to operate out of mainly
because of the Police Athletic League's involvement with children during the summer
months. During that meeting I informed him about some issues I was having involving
my responsibilities as Crime Stoppers Coordinator. I informed him that back in
November 2012 Lt. William Benny notified me that I would no longer have Admin
access rights (Admin is able to control the access of all users) to TipSoft Online, the
Crime Stoppers tip management program that I was instrumental in obtaining for the
Police Department and other involved entities. I explained to Lt Baxley that I felt like my

CITY OF DOTHAN/CARNEY 000597
CONFIDENTIAL

Daryl Mathews
February 27, 2013
Page 2

access rights were lowered due to retaliation from Lt. Will Benny as a result of an excessive use of force complaint I filed against Officer Daniel Grantham in 2011 when Lt. Benny was the Lieutenant over Officer Grantham. Lt. Benny and Corporal Scott Smith were also investigated. The investigation was determined to be unfounded by Sergeant Mike Etress. I was contacted by two different Officers, Officer Jason Neal and Officer Bobby Ashley, advising me to come check the patrol board because of a letter copied on pink paper that had been posted on the patrol bulletin board. I was advised that the letter was a photocopy of the Internal Affairs finding in my complaint against Officer Daniel Grantham, Cpl Scott Smith, and Lt. Will Benny. The letter I received from Internal Affairs was dated April 7, 2011. I advised Lt. Baxley that it wasn't possible for me to be in charge of a program without full access to the program. I advised him that not having the appropriate access severely limited my abilities to effectively manage the program and it would at some point reflect negatively on my performance evaluation. Lt. Baxley stated he agreed with me and advised that he would speak with Major Parrish about the matter to see what could be done.

On Thursday, February 14, 2013 at approximately 0830 hours I met with Major Steve Parrish in his office after being summoned by Secretary Pam Deese. Accompanying him was my supervisor Lt. Benny Baxley. The purpose of the meeting, according to Major Parrish, was to inform me about some remarks he had been hearing from other officers, whom he did not name, regarding comments I posted on my personal Facebook page. He stated he wanted to tell me something and for me to just mull it over, but that in his opinion, I had every right under freedom of speech to post whatever I want on Facebook. He explained that he had been hearing that I was making posts regarding Christopher Dorner, the ex-cop from Los Angeles Police Department, and his manifesto. He said the posts I was making or had made were, "having some officers in this department scratching their heads." He stated that he did not have a Facebook page and that he didn't know anything about Christopher Dorner other than "he killed some police officers." Major Parrish said "whatever your political view of that is, it's your business." He then went on to ask me, "Do you have any idea how much pressure that puts on this hallway from the rank and file when you post stuff like that," and "do you consider that, do you care." I responded yes I do consider it and yes of course I care. He stated he was sure that I was familiar with the personnel rules and reminded me that I can't do anything that has a negative reflection on the department. He said he didn't know the guy or what his position was, but that, "they say he killed police officers." He stressed that I'm a police officer in a high profile position who's recruiting for the agency. He said, "What you do is up to you, but if you could help us out and understand that every time you post something it fuels some people's fires." He went on to say that my Facebook posts were on Wiregrass Live and that he doesn't read Wiregrass Live and that he "had not read my Facebook posts and I'm not going to," but he wanted to tell me how he felt about it. He goes on to say, "Understand the position that it puts us in when everybody's saying I can't believe y'all are putting up with that," but then goes back to saying that "you have a right to say what you want to say and feel how you want to feel." Major Parrish said they have me in a very important high profile position and "they have no intention of taking

2

Daryl Mathews
February 27, 2013
Page 3

me out of it, but you need to consider those things when you post things about people who kill police officers." I replied to Major Parrish that I always take into account what I do or say before it's done, not only because I'm a Police Officer, but also because I'm a Sergeant in the U.S. Army. I told him that I would never do anything to jeopardize my careers in either field, but that I appreciated him sharing the views of the department from his standpoint. Prior to my visit with Major Parrish, none of the department's current employees made contact with me to indicate that they were in disagreement with or insulted by any of my recent Facebook posts regarding my following of the unfolding media events about Christopher Dorner, his manifesto, nor the LAPD officers involved in that investigation. After I left the meeting with Major Parrish, Lt. Baxley contacted me and informed me that I had to move out of my office located in the Criminal Investigations Division and over to the Wiregrass Park building. I advised him that I would get to it after lunch since I was attending a recruiting event at the time. After lunch I relocated my office to Wiregrass Park. I feel the only reason I was told to move my office was because Lt. Benny did not want my office located in CID. My office was also located directly across from the CID conference room where CID meetings and investigations would be conducted. I believe that Lt. Benny was making sure that in addition to me not being able access crime tips that I would also not be privy to any investigations being conducted. I believe that Major Parrish was fully aware of Lt. Benny's deliberate act of retaliation.

On Friday, February 15, 2013 around 0930 hours Captain David Jay and Captain Stacy Robinson came over to the new office location at Wiregrass Park. Captain David Jay walked in the door and said, "Surprise inspection." Lt. Baxley and I were the only persons present. The building was and still is not equipped with phone, cable/internet access, or copier/fax which is necessary in the performance of my duties. Captain Jay was my immediate supervisor prior to Lt. Baxley's appointment, and he has never conducted an inspection of my workspace before, however, on this day he circled around my desk area paying particular attention to my work laptop and personal laptop that I was working on. I have memorabilia of President Barack Obama on my desk, as a backdrop on my work laptop, in a picture frame, and posted on my cork board. I have a military award along with various collected military coins, my Columbia Southern University graduation photo plaque and honors tassel, and a Life Saver Award from Dothan Fire Department in my work area. I also have numerous work related materials posted and on a bookshelf in my workspace area. Toward the end of the work day Lt. Baxley served me with the Internal Affairs investigation initiated against me by unnamed persons. I believe that their visit was to make note of what personal items I had within my work space area, specifically, the Presidential memorabilia.

On Monday, February 18, 2013 at approximately 0930 hours I was informed by Lt. Baxley to report to Sgt Donny Smith's office in reference to the investigation. Sgt Smith was accompanied by Sgt Doug Magill in his office. I immediately thought it was out of the ordinary to be questioned by two IA investigators, but I cooperated with the investigation. During the investigation I felt that Sgt Smith's manner of questioning my posts was more of a coercive and intimidation tactic to get me to admit I was making

3

CITY OF DOTHAN/CARNEY 000599
CONFIDENTIAL

Daryl Mathews
February 27, 2013
Page 4

racially offensive posts. He was speaking very aggressively as if he came in with his own personal beliefs about the posts. I felt as if both of them were trying to intimidate me into agreeing with their views. I felt threatened by Sgt Smith's aggressive hand gestures towards me and extremely argumentative questioning.

On Wednesday, February 20, 2013 at approximately 1330 hours I went to the Police Department to find out more information regarding the arrest of a student at the Civic Center who was attending the Basketball Tournament at the request of Coach Jonathan Carmichael. I made contact with Officer Mike Woodside on the south side patrol parking lot as he was talking to the parent of the student in question. Officer Woodside advised me that he needed to talk to me so I waited for him to finish. Officer Woodside advised me that he wanted me to know that despite what had been posted on Rickey Stokes News (RSN) regarding my Facebook posts his relationship with me would not change. He said that he knew nothing about my Facebook posts prior to seeing them on RSN, but even still he wanted me to know personally that he was not getting caught up in the rumors being generated by some of the other Officers within the department. He stated that he told several Officers that if they originally had nothing to do with my Facebook posts then they should not get involved with the things going on because he knew for a fact that it involved a former Police Officer that no longer works at the department. Officer Woodside did not mention the names of the Officers he spoke with, nor did he name the former Officer he advised he knew was behind the complaint filed against me. He stated that he didn't trust the former Officer when he was employed with Dothan Police.

The former Police Officers who engaged me in conversation on my personal Facebook page include Carl Midkiff, Jim Holley, and Richard Odom. I am Facebook friends with Carl Midkiff and Jim Holley, but prior to my posts on February 12, 2013, I do not recall having had any Facebook conversations with them. Richard Odom and I were never friends or aquaintances on Facebook. John Riley, another former Dothan Police Officer, selected to follow me on Facebook on February 16, 2013, and when I messaged him about following my Facebook page after all the years that had passed, he did not respond. Danny Herold is someone I am not familiar with; however, I am certain that he learned of my Facebook page after my posts were shared to one of my former co-workers Facebook pages just as Jim Holley shared my post on his Facebook page, in particular, the post that named Brent Parrish and several others by name. Emily Hays, the lady who complained to the Chief's office and whose letter of complaint was read to me by Sgt Donny Smith during the IA investigation, stated that she did not know me and only learned of me from several police officers who were talking about me to her. I was informed by Sgt Smith that Ms. Hays stated that she googled my name to find out more information about me and found an article about a previous complaint I had against former Police Chief Jihn Powell. In my research I learned that Ms. Hays started a social media post on Wiregrass Live in the thread titled "Dothan Police Officer angers other officers and myself" on February 14, 2013. She then posted her letter of complaint to Chief Benton on that thread. Captain David Jay and Ms. Hays are friends on Wiregrass Live. Chief Benton and several other current Police Officers have Wiregrass Live memberships, and one member whom I believe to be Major Parrish, urged Ms. Hays to file a letter of complaint to the Chief's

4

CITY OF DOTHAN/CARNEY 000600
CONFIDENTIAL

Daryl Mathews
February 27, 2013
Page 5

office. One of the Wiregrass Live members known as Vettman1 made the following statement: "Wgl members won't have to do anything. I certainly hope she never needs back up. I can assure you other members of the dept. will allow her plenty of time to think and reflect on her comments. This I am most certain." I am not certain who Vettman1 is, however, I do feel this person is a law enforcement officer with Dothan Police. Ms. Hays is also Facebook friends with Lt. Mark Nelms, whose friends with the same high ranking Officers and IA Officers listed in this complaint.

Lt. Benny and Brent Parrish worked together on 4th Squad years ago and have maintained their friendship. They filed complaints against another former female Police Officer Christine Ortiz Maddox alleging she failed to assist with the arrest of a suspect that resulted in her being suspended for three (3) days and being placed on probation for two years. I believe that Lt. Benny discriminates against female Officers within this department and conspires with his friends/coworkers to file bogus complaints. I also feel that he is retaliating against me for the complaint I filed against Officer Grantham because he was interviewed during the investigation, and according to the determination letter, made to think that I had filed a complaint against him and Corporal Scott Smith.

I believe that Major Parrish is conspiring with Lt. Benny to further his attempts to get me written up and or terminated. I feel that Major Parrish was instrumental in having the investigation conducted after his conversation with me in his office specifically due to his comment, "What you do is up to you, but if you could help us out and understand that every time you post something it fuels some people's fires," because I made a subsequent post on my Facebook page referencing "scratching their heads" which was similar to his comment, "having some officers in this department scratching their heads." I know that Major Parrish has long been associated with Sons of Confederate Veterans, which has been held to be a racist organization. There are several current Dothan Police Officers affiliated with the organization and some former Dothan Police Officers affiliated with the organization as was also mentioned in the Wiregrass Live thread Ms. Hays initiated.

The conduct of these high ranking officers creates an intimidating, hostile, and offensive work environment for me. It also tends to sway other officers to believe what they project about me causing dissention and issues of challenged integrity and trustworthiness amongst us. In addition, it creates an unequal relationship between other officers and me in terms of current and future promotional positions within the department when being evaluated by senior staff. My performance evaluation based on my current positions can also be affected negatively. The Police Officers involved in conspiring against me, no matter their rank, should be investigated for their deliberate actions to create a hostile work environment for me, as well as, for deliberately slandering my name on Facebook and Wiregrass Live to members of the general public. Criminal charges should also be brought against those found to be in violation of any criminal law in regards to this matter. Due to the Wiregrass Live posts regarding Officers not responding as my back up if needed further confirm my fears that the influence of these past and present Officers may jeopardize my personal safety in the performance of my duties as a Police Officer. I

5

CITY OF DOTHAN/CARNEY 000601
CONFIDENTIAL

Daryl Mathews
February 27, 2013
Page 6

also feel threatened that if those actions fail there may be attempts outside of my Police duties.

During my seventeen years in law enforcement, I have always treated others the way I wish to be treated and that is with respect and without prejudice. I have always placed in high regards my position as a Police Corporal for the Dothan Police Department and as a Sergeant in the U.S. Army in the Intelligence field when involving myself on any matter, whether public or private, which could bring discredit upon either employing agency or my position within those agencies. I sincerely hope that you will exercise due diligence in investigating and determining what actions should be taken to appropriately handle the matters detailed in my complaint.

Sincerely,

RaeMonica Carney, Corporal
Community Watch & Crime Stoppers Coordinator
Dothan Police Department

6

CITY OF DOTHAN/CARNEY 000602
CONFIDENTIAL

√ KK
k 5 13

# The City of Dothan Employee Disciplinary Action Report Form
*Authority: Regulation III - DISCIPLINARY POLICY*

| SECTION III - EMPLOYEE INFORMATION | | | |
|---|---|---|---|
| Employee Name<br>RaeMonica Carney | Employee ID Number<br>100585 | Hire Date<br>05-11-2005 | Department<br>Police |
| Employee Job Title<br>Corporal | | Counseling Supervisor Name & Job Title<br>David Jay, Captain | |

## SECTION IV - OFFENSE AND TYPE OF ACTION

Check (√) Category and Offense, Circle (O) Rule Number(s) violated

| ☐ MINOR CATEGORY | ☐ 1st Offense | ☐ 2nd Offense | ☐ 3rd Offense | ☐ 4th Offense |
|---|---|---|---|---|
| Violation of Rule: Section 3-41. | 1  2  3  4  5  6  7  8  9  10  11  12  13  14  15  16  17  18 | | | |
| X  MAJOR CATEGORY | X 1st Offense | ☐ 2nd Offense | | |
| Violation of Rule: Section 3-42. | 1  2  3  4  5  6  7  8  9  10  11  12 (13) 14  15  16  17  18  19 | | | |
| ☐ INTOLERABLE CATEGORY | ☐ 1st Offense | | | |
| Violation of Rule: Section 3-43. | 1  2  3  4  5  6  7  8  9  10  11  12  13  14  15  16  17  18  19  20 | | | |

Check (√) Type of Disciplinary Action For This Offense

☐ FORMAL COUNSELING    ☐ WRITTEN WARNING    X  FINAL WRITTEN WARNING    ☐ DISCHARGE

## SECTION V - DETAILS OF THIS DISCIPLINARY ACTION REPORT

In the space below or on additional sheets provide detailed documentation of the rule(s) violated to include dates and the specific actions of the employee. Include details of recommendations for corrective action and consequence of future violations.

As a Police Officer, tasked with enforcing laws and adhering to conduct of integrity and sound decision making, on February 12, 2013; you posted on public domain(via Facebook) comments that detrimentally affects the public's trust and public expectation of you as a law enforcement officer and the City of Dothan Police Department as a public entity. Your comments were of a racial nature and were offensive to members of the Dothan Police Department and general public. Furthermore, your comments on public domain related to a law enforcement tactical operation, where you had no direct knowledge of the facts, demonstrates your lapse in judgment and how this effects your role as a Dothan Police Officer; where tactical operations and law enforcement related activities are carried out.

This is a violation of Dothan Police Department General order 100-52 Social Media Section V.

You are in violation of Sec. 3-42 (13) Major Offense: Misconduct, or any disgraceful conduct which reflects unfavorably on the City as an employer or public entity.

Further violations will result in additional disciplinary actions and up to termination.

See attachment A

RECEIVED
MAR 22 2013
PERSONNEL DEPARTMENT

| Supervisor Signature | Date signed<br>03-21-13 | Department Head Signature | Date Signed<br>3-19-2013 |
|---|---|---|---|

I acknowledge I was counseled or warned in reference to the rule violation(s) cited above. I understand my signature on this form acknowledges the counseling or warning took place for the reasons given. I understand my signature does not mean I agree or disagree with the statements documented on this form. I also understand I may provide a written explanation of the offense for which the counseling or warning report has been issued and attach this written statement to this form. I understand this Personnel Form #147 and any attachments will be forwarded to the Personnel Department and become a part of my permanent employment record.

EMPLOYEE SIGNATURE: RaeMonica Carney          Date Signed: MARCH 21, 2013

Distribution: ☐ ORIGINAL to Personnel Department    ☐ COPY to Employee    ☐ COPY to Department Head

PERSONNEL FORM #147 (rev. 8/2006)

**DEFENDANT'S EXHIBIT**

Cloyd    22

# The City of Dothan Employee Disciplinary Action Report Form
*Authority: Regulation III – DISCIPLINARY POLICY*

**How to use the Tables below:** Complete SECTION I by listing the employee's minor offense history for the past twelve months and/or Major offense history for the past twenty-four months.  Refer to the SECTION II - DISCIPLINARY ACTIONS SUMMARY TABLE to determine the appropriate disciplinary action to be taken and whether the disciplinary action must follow the Due Process Procedure as set out in Personnel Regulation IV.

**Note:** "Minor", "Major", or "Intolerable" offenses have separate disciplinary action progressions.  See the SUMMARY TABLE in SECTION II below.  The offense free time period required to clear a disciplinary record of MINOR offenses is 12 months and MAJOR offenses is 24 months from the "date of record" for last offense committed.   ("Date of Record" is date form signed by department head.)

| SECTION I - REVIEW OF EMPLOYEE DISCIPLINARY HISTORY | | | |
|---|---|---|---|
| A review of this employee's active Disciplinary History includes the following MINOR category offense(s) and/or the following Major category offense(s).  If the employee has no active disciplinary history, write N/A. | | | |
| Category | Type of Action | Dated | Specific Violation - Cite Rule and Offense |
| MINOR | Formal Counseling | | |
| MINOR | Written Warning | | |
| MINOR | Final Written Warning or Final Written Warning & 1-5 Day Suspension | | |
| MAJOR | Final Written Warning & 1-20 Day Suspension | | |

The SUMMARY TABLE below shows: (1) The disciplinary progression (1st, 2nd, 3rd, etc., offense) and resulting disciplinary action for MINOR; MAJOR, and INTOLERABLE offenses; and (2) Whether a disciplinary action requires a Due Process Hearing before being administered.

| SECTION II - REVIEW OF ACTION SUMMARY TABLE | | | | |
|---|---|---|---|---|
| **DUE PROCESS HEARING NOT REQUIRED** | First Offense MINOR<br><br>Formal Counseling | Second Offense MINOR<br><br>Written Warning | Third Offense MINOR<br><br>Final Warning or (See below) | Fourth Offense MINOR<br><br>See Below |
| **❖ DUE PROCESS HEARING REQUIRED PRIOR TO ADMINISTERING.** | First Offense MAJOR<br><br>Final Warning and 1-20 Day Suspension. | Second Offense MAJOR<br><br>Discharge | Third Offense MINOR<br><br>Final Warning and 1-5 Day Suspension | Fourth Offense MINOR<br><br>Discharge |
| | First Offense INTOLERABLE<br><br>Discharge | Due Process Hearings are implemented in accordance with Personnel Regulation IV | | |

CITY OF DOTHAN/CARNEY 000675
CONFIDENTIAL

# DECISION OF DETERMINATION HEARING
### (Personnel Form 155)

| Employee Name | Employee SSN | Department |
|---|---|---|
| RaeMonica Carney | 100585 | Police |
| Employee Job Title | | Date of Determination Hearing |
| Police Corporal | | 03-25-2013 |

### Statement of Department Head's Decision

You are hereby notified that after the due process determination hearing and consideration of the charges and possible violations of Personnel Rules and/or the Civil Service Act of Dothan, as amended, I have made the following decision concerning disciplinary action: (*State the decision in the space below*)

After reviewing all the facts and circumstances, the IA investigation and investigation by the EEO Officer of the City of Dothan, I have determined you were in violation of General Order 100-52 Social Media Section V of the Dothan Police Department and Sec. 3-42 (13) City of Dothan Personnel rules and regulations: Misconduct, or any disgraceful conduct which reflects unfavorably on the City as an employer or public entity.

It is my decision to suspend you for a period of ten (10) working days. You will also be required to complete any training designated by the EEO Officer of the City of Dothan. The office of the Chief of Police shall be notified of your completion of this training.

After the completion of the ten (10) days of suspension, you will be reassigned to the Front Desk position of the Police Department Lobby. You will report to Bureau Commander, Captain Keith Gray.

The eighty (80) hours will be as follows: April 1 through 4 and April 8 through 11, 2013 from 0700 hours until 1700 hours. You will return to duty on April 15, 2013 at 0800 hours.

Furthermore, you are hereby advised that if you are dissatisfied with this decision to discipline you have available to you the procedures for review and/or appeal as provided by the Civil Service Act of Dothan, as amended, and the Personnel Rules and Regulations.

| Signature of Department Head | Date Signed |
|---|---|
| *[signature]* | 3-28-2013 |

### Employee Certification of Receipt of Department Head's Decision and Employee Notice of Appeal Right

I hereby certify I have received a copy of this decision to discipline from my department head or his/her designated representative. I understand that should I wish to appeal my department head's disciplinary decision I must file a written notice with my department head and the Personnel Board within the time period specified in the Personnel Rules and Regulations, Section 3-50, Appeal of Disciplinary Action. Personnel Form #152 – City of Dothan Appeal Form may be used to initiate an appeal of disciplinary action. Any Classified employee or laborer, other than those under **initial probationary status**, may appeal any disciplinary action taken by following the procedure outlined in REGULATION V - GRIEVANCE AND APPEAL PROCEDURE or by following the procedures in Sections 21 and 22 of "the Civil Service Act of Dothan."

| Employee's Signature | Date Signed |
|---|---|
| *[signature]* RaeMonica Carney | March 28, 2013 |

### To be completed by person serving this notice to employee

| Signature of person serving this notice | Date Notice Served | Time Notice Served |
|---|---|---|
| *[signature]* | 3-28-2013 | 10:20 am |

Distribution: ☐ Original to Personnel   ☐ Copy to Department Head   ☐ Copy to Employee

Personnel Form #155 (Revised 2/2001)
C:\Users\dwsmith\Documents\INTERNAL AFFAIRS INVESTIGATIONS\INTERNAL INVESTIGATIONS\2013\2013 - 0011 Internal Affairs - Cpl. R. Carney\PF155 Decision Of Determination Hearing.doc

CITY OF DOTHAN/CARNEY 000676
CONFIDENTIAL

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Ms. Angela T. Howard, Investigator
U.S. Equal Employment Opportunity Commission
Birmingham District Office, Ridge Park Place
1130 22nd Street Suite 2000
Birmingham, Alabama 35205

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☐ Agent  ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery

RECEIVED

D. Is delivery address different from Item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

MAY 13 2013

BIRMINGHAM DISTRICT OFFICE

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)

7011 2000 0001 7104 3126

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540

CITY OF DOTHAN/CARNEY 000677
CONFIDENTIAL

THE CITY OF DOTHAN
FORMAL GRIEVANCE AND APPEAL PROCEDURE FORM

An employee who desires to initiate a Grievance must file a complaint in writing (Personnel Form Number 118), within ten working days after the date of the incident giving rise to the complaint, with the supervisor and furnish a copy thereof to the department head and the City Manager, unless the complaint is against the supervisor, in which case the grievant bypasses the supervisor and files the grievance directly with the department head. The department head shall, within five working days thereafter, arrange a conference on the grievance with the grievants, with or without the supervisor, and such other representatives as the department head and the grievants may agree upon in order to ascertain all the facts in the grievance. Both the department head and the grievant shall make a good faith effort to resolve the grievance. Within ten working days after such conference, the department head shall advise the grievant in writing of the disposition of the grievance, a copy of which shall be transmitted to the Personnel Director. If the disposition of the grievance from the department head has been filed with the Personnel Director and served on the grievant as herein prescribed, and the disposition is not satisfactory to the grievant, the grievant may appeal the grievance to step two within five working days after such report has been filed. Unless the grievance shall be appealed to step two, the grievant shall be barred from any further proceedings with respect to such grievance.

**STEP ONE: PRESENTATION OF GRIEVANCE TO IMMEDIATE SUPERVISOR, COPY TO DEPARTMENT HEAD AND CITY MANAGER (PERSONNEL REGULATION V, SECTION 5-30 (1))**

**EMPLOYEE'S GRIEVANCE STATEMENT**

INTENTIONAL CONSPIRED ACTS OF RACE AND SEX DISCRIMINATION, HARASSMENT, COERCION, INTIMIDATION, AND THREATS OF VIOLENCE BY THE FELLOW POLICE OFFICERS IDENTIFIED IN THE ATTACHED SIX (6) PAGE DOCUMENT.

A just and fair solution to my grievance is:

DISCIPLINARY ACTIONS TO BE ADMINISTERED TO THOSE OFFICERS FOUND TO HAVE COMMITTED ANY OR ALL OF THE ACTS MENTIONED ABOVE AND CRIMINAL CHARGES LEVIED TO THOSE WHO VIOLATE CRIMINAL LAWS. THE INVESTIGATION SHOULD BE CONDUCTED BY AN OUTSIDE NON-AFFILIATED AGENCY. *DeMonica Carney* 27 FEB 2013

Employee Signature and Date

**DEPARTMENT HEAD'S SOLUTION TO GRIEVANCE:**

✱ Employee chose to by-pass Department Head and sought resolution from Personnel Director.

Department Head's Signature

Date Received ___2/27/2013___   Date Returned to Employee ___3/4/2013___

Date Copy Received by Personnel Director: ___2/27/2013___

**STEP TWO: APPEAL TO THE PERSONNEL BOARD (PERSONNEL REGULATION V, SECTION 5-40 (2))**

✱ See Personnel Director's Response attached

**THIS SECTION TO BE COMPLETED BY EMPLOYEE:** *(signature)* J. McKay 3/4/2013

RECEIVED
FEB 27 2013
PERSONNEL DEPARTMENT

_____ I have received the Department Head's decision to my grievance and accept it.

_____ I have received the Department Head's decision to my grievance and because this decision is unacceptable to me I wish to appeal my grievance to the Personnel Director, which is Step Two-(a) in the Formal Grievance and Appeal Procedure.

_____
Employee's Signature and Date

Page 1 of 2 pages

Personnel Form 118 - REVISED 1/88, 8/18/95 · 8/12/97
NEU LLBACK\PERSONNEL\PERSONNEL FORM\PPF#118-GRIEVANCE & APPEAL FORM.DOC

CITY OF DOTHAN/CARNEY 000678
CONFIDENTIAL



THE CITY OF **CONFIDENTIAL**

# DOTHAN, ALABAMA

POST OFFICE BOX 2128 · DOTHAN, ALABAMA 36302 · 334-615-3000

**DELVICK J. McKAY**
PERSONNEL DIRECTOR

**PERSONNEL BOARD**
BARBARA A. SPANN, CHAIR
MARY W. DAVIS
MARK SMITH
ALAN B. CLARK
EARL TYSON

Corporal RaeMonica Carney                                    March 4, 2013
2601 Stringer Street
Dothan, AL 36303

Dear Corporal Carney:

The City of Dothan Personnel Department is in receipt of your formal grievance filed on
February 27, 2013. During our initial meeting on February 27, 2013; the following was
determined:

1. That you wanted to by-pass the Police Chief in filing your grievance because he was
a member of "Wiregrass Live" and his affiliation with this social media group would
hinder his ability to make a just and equitable decision in the matters concerning post
made on certain social media websites.

2. That you have been questioned by the Internal Affairs Division related to your posts
on Facebook and subsequent posts from citizens on "Wiregrass Live" commenting about
your post. However, as of February 27, 2013; you had not received the final outcome
of the Internal Affairs Investigation.

3. You mentioned that the EEO Officer had placed you on notice that other officers
have filed complaints with him concerning posts that were made on your Facebook
page, however; as of February 27, 2013; you have not received the final outcome of
the EEO Officer's investigation.

4. I asked you had you been physically or verbally threatened in any way by other
employees or supervisors pertaining to these most recent events, and you answered,
"no".

5. I also asked you had your job duties changed or modified since the most recent
events surrounding posts on social media and subsequent investigations by Internal
Affairs and the EEO Office. You mentioned that your administrative rights to the
TipSoft Online System were removed in November 2012; however, you remained as the
Crime Stoppers Coordinator.

You mention as a just and fair solution to your grievance is:

**PERSONNEL DEPARTMENT**

126 NORTH SAINT ANDREWS STREET · DOTHAN, ALABAMA 36303 · PHONE 334-615-3180 · FAX 334-615-3189

Service • Excellence • Commitment ... *The Dothan Way*

CITY OF DOTHAN/CARNEY 000685
CONFIDENTIAL

"Disciplinary actions to be administered to those officers found to have committed any or all of the acts mentioned above and criminal charges levied to those who violate criminal laws. The investigation should be conducted by an outside non-affiliated agency."

## Response to 1 and 2:

The Police Chief has the authority and is tasked to ascertain if there are any Police Department General Orders or City Policies that have been violated stemming from your behavior or any behavior from other Officers within his purview. Disciplinary actions are administered by the Department Head. Therefore, the Police Chief is the appropriate authority to make employment decisions and disciplinary actions pertaining to employees in the Dothan Police Department. There are no conflicts of interest present nor is there any reason to why the Police Chief would need to be removed from directing an internal investigation and administering discipline as appropriate. Furthermore, there is no evidence proving any officer conspired against you to have an individual from the general public to place a post on "Wiregrass Live" commenting about what you posted on your Facebook page. During my investigation, it was learned that the Police Chief himself noticed the posting of a citizen on "Wiregrass Live", and therefore prompting him to direct Internal Affairs to investigate this matter according to the Police Department's standard procedures.

Therefore, in your own recommendation to what is a just and fair solution: "disciplinary actions to be administered to those officers found to have committed any or all of the acts mention above".

It is the Police Chief's responsibility to direct an internal investigation concerning employees within the Department and administer discipline, where appropriate, to those employees who have violated City policies and procedures. I do not see where a conflict of interest exists nor should the Police Chief be removed from carrying out the proper administrative duties that are inherit within his position as Police Chief.

## The Internal Affairs investigation shall continue and the Police Chief has the authority to administer the appropriate discipline according to policy.

Note: Filing a grievance does not preclude or insulate you or anyone else from disciplinary actions if it is determined that you or any officer involved has violated City policy. It is the City's responsibility to investigate all matters regarding employees and to make the appropriate corrective actions pertaining thereto.

## Response to 3:

The EEO Officer is also tasked to ascertain if such behavior of all Officers, including yours; are in violation of Title VII of the Civil Rights Act and other employment laws. You have been placed on notice by the EEO Officer that complaints have been filed and his investigation is ongoing.

## The EEO Officer's investigation shall continue and it is within his purview to review all complaints that are protected under Title VII of the Civil Rights Act, and make recommendations pertaining thereto.

### PERSONNEL DEPARTMENT

126 NORTH SAINT ANDREWS STREET · DOTHAN, ALABAMA 36303 · PHONE 334-615-3180 · FAX 334-615-3189

Service · Excellence · Commitment ... *The Dothan Way*

CITY OF DOTHAN/CARNEY 000686
CONFIDENTIAL

**Response to 4:**

By your own admission, you have not been threatened, verbally or physically. Therefore, no criminal charges are necessary and if so, those complaints should be made to the proper law enforcement entity.

**Response to 5:**

Based upon my fact finding investigation, it was a proper operational decision to give personnel within the Communications Center as well as personnel in the Criminal Investigations Division administrative authority into TipSoft Online. You are to be commended for pioneering this program and helping to bring it to the City of Dothan. However, to respond more effectively to tips, assign investigators to follow-up on these leads, and compensate individuals who call into Crime stoppers; it was determined by the Police Chief and senior staff that the administrative responsibilities are managed more effectively through its current assignment.

The Police Chief has the responsibility to ascertain if any employees within his department has violated any policies and the EEO Officer is currently investigating complaints that could potentially be in violation of Title VII of the Civil Rights Act. By your own admission, there has not been any adverse action made against you including verbal or physical threats.    All other administrative actions that rest within the purview of the Police Chief and the EEO Officer are being handled appropriately. Therefore, actions of all employees, including yours, are being investigated under the purview of the Police Chief and EEO Officer to determine if any policy violations have resulted in posts made on social media.  I will then make sure the appropriate actions taken are within policy guidelines.

In your statement you mention that there were "intentional acts of race and sex discrimination, harassment, coercion, intimidation, and threats of violence by fellow officers".

**Unsubstantiated:**

By your own admission, there has not been any threat of violence or physical harm made to you.  After questioning the Internal Affairs Officers and reviewing the audio tape of your interview with Internal Affairs, the interview and questioning was not coercive, violent, or threatening in seeking to get an understanding of your Facebook posting.   Appropriate actions have been taken to better meet the operational efficiency of the TipSoft program and this administrative decision was made for the business necessity of the Police Department, not because of retaliation of your race, gender, or complaints you have filed in the past or present.

In closing, the Police Chief is continuing the investigation of any violations of Police General Orders and City Policies and the EEO Officer is continuing his investigation to determine if there has been any violation under Title VII of the Civil Rights Act.

Your grievance is closed with no further actions.

_Delvick G. McKay_
Delvick J. McKay, Personnel Director

cc: Mike West, City Manager
Greg Benton, Police Chief
Darryl Mathews, EEO

**PERSONNEL DEPARTMENT**

126 NORTH SAINT ANDREWS STREET · DOTHAN, ALABAMA 36303 · PHONE 334-615-3180 · FAX 334-615-3189

Service • Excellence • Commitment ... *The Dothan Way*

CITY OF DOTHAN/CARNEY 000687
CONFIDENTIAL

STATE OF ALABAMA
COUNTY OF HOUSTON

## AFFIDAVIT

BEFORE ME the undersigned authority, personally appeared RaeMonica Carney, and having been duly sworn, she did depose and say on oath as follows:

My name is RaeMonica Carney, and I am over the age of nineteen years and reside in Dothan, Houston County, Alabama. I am the Community Watch & Crime Stoppers Coordinator for the City of Dothan with this letter, I would like to express my position as it relates to the following:

1. My Facebook (FB) posts,
2. The Internal Affairs investigation and EEO complaints filed by various DPD Officers, and
3. The findings of the Internal Affairs investigation as recorded on Personnel Form #147.

**My FB Posts**

Due to the highly publicized news coverage of the Los Angeles Police Department's search for their former LAPD officer, Christopher Dorner, from multiple national news media broadcasting agencies to include CNN, Headline News, FOX news, local news, online news sources to include Democracy Now, and social media sites one in particular included FB, I became aware of the manhunt. The news reports regarding Dorner's case as reported by these multiple agencies shared the same content to their many viewers. I engaged in conversation on my personal FB page, which was open to public viewing, with my friends about the information being reported by the media. My initial post regarding Dorner was made on February 8, 2013, but was never questioned by investigators during the IA investigation. I stated:

> *When a person is pushed to the point where they begin to destroy EVERYTHING that once was held in the HIGHEST ESTEEM and EVERYONE who should have stood for what was RIGHT, the one thing they were ready to give up is the only thing they feel taking out will be the solution to restoring the name, respect, and honor that he was revered for: HUMAN LIFE!!!*

In making this statement I expressed my belief that when any person who once honored and valued human life and would lay down his own life in defense of another's would in turn become so distraught over the loss of his/her name/status in the eyes of others, disrespect or the loss of respect from his peers to feel that the only solution to restoring those things would be to take a life is something that deserves attention and understanding. I was encouraging my friends to think about the things I mentioned, although I made no reference to Dorner, LAPD, or any other situation. On February 8, 2013 I commented on that status saying:

> *We never know what values a person truly has until they stand up, stand firm, and fight for them!!! Like if you will stand up, stand firm, and fight for the values you have...I WILL!!!*

DEFENDANT'S EXHIBIT

Cloyd     23

After hearing and following multiple news media reports about Dorner and learning more about him and his military background as a decorated Naval Officer who held a Top Secret Security Clearance for his military occupational specialty, on February 9, 2013 I made a personal plea to Dorner thru his personal FB page to turn himself in rather than resorting to a vigilante style of justice and my message to him read:

> GM Christopher...I understand your position and the values you are defending bc I have been in the same position and fought to clear my name with my employing law enforcement agency. I'm writing bc I could immediately relate to you. I'm certain that you have the support of your family, friends, and law enforcement family who do not want you to be injured or killed while trying to bring justice to your cause. Vigilante justice is no justice at all. Tell your story from your viewpoint while you live rather than having it skewed by those whom you wish to expose. YOU HAVE THE ATTENTION OF THE WORLD!!! I don't know you but I'd rather hear your view from you not the viewpoint of those who wish to quiet you. Praying you turn yourself in....R. Carney

My message to Dorner should show that I empathized with his situation, and was not a supporter of the style of justice he was being accused of committing. On February 12, 2013 I made two FB posts regarding the media reports. The first post included a link to Dorner's (uncensored) manifesto (http://m.dailykos.com/story/2013/02/091185809/-Christopher-Dorner-Manifesto-Uncensored) that was provided to me by TSUD Police Officer Paul Motzenbecker on my FB page, and it stated:

> FB form your own opinion about Christopher Dorner after you read his manifesto at the link below. "For what shall it profit a man, if he shall gain the whole world, and lose his own soul?" (Mark 8:36-37 KJV)

The second post was one of two posts that became the focus of IA's investigation. My post stated:

> CNN is playing the audio from the shoot-out allegedly btwn Christopher Dorner and San Bernadino Officers....sounds like several hundreds of rounds being fired and none from a semiautomatic weapon....one man can only fire a maximum of two handguns at one time which would equate to roughly 30 rounds with no magazine exchanges (hard to do with both hands holding guns)...AND the fire was set from outside the cabin not inside the cabin....I'm NOT SURPRISED!!! Does this not sound like slavery times when mobs would burn blacks just because....

I posted what was reported by CNN regarding the alleged shoot-out between Dorner and San Bernadina Officers and CNN's live-feed news report informing viewers that the fire to the cabin that Dorner was allegedly surrounded inside of, was set from outside the cabin not inside the cabin. CNN aired the actual police radio dispatch communication between the Officers on the scene and the police dispatchers the Officers were communicating their actions to. The live feed of the officer's communications included transmissions from a male officer informing Steve that they were going to proceed as planned to deploy burners. A male officer then advises the dispatcher that seven burners had been deployed and there was a fire. The female dispatcher confirms the officer's transmission by repeating back what he stated. Also aired live was a police officer who could be heard in the background shouting, "We're going to burn him out," and "Burn it down." There were additional statements about burning him out and burning down the cabin made by other police officers at the scene that included the use of expletives in referring to Dorner whom they believed was inside the cabin. My statement "I'm NOT SURPRISED" was not only in response to the cabin being set on fire, but also in response to the additional reports that LAPD Officers had opened fire upon two vehicles of uninvolved citizens mistaken to be Dorner and reports that a privately funded million dollar reward was being offered toward his

capture, although I did not mention them in my post. LAPD officers, according to media reports, had taken a very aggressive and almost deadly approach to the lives of innocent citizens as they continued their search efforts for Dorner. The reference I made to African American history regarding slavery times, which was not only inflicted against blacks but also inflicted against whites who opposed slavery, was done to point out the fact that history seemed to be repeating itself as the accused was not being afforded his 4th and 14th Constitutional Amendment rights as was perpetuated during slavery times. The 4th Amendment of the Constitution was established to safeguard citizens against unreasonable searches and seizures (including arrest) and the 14th Amendment to the Constitution was established to afford all citizens the right to due process of law and equal protection of the laws. There was conversation between Karla C. Mays, a close personal friend of mine, and I in response to my post where she made assumptions about my personal position/opinion regarding the actions of Dorner. In responding to her post that stated, "He was a cop killer, even if they unleashed gunfire, he killed a Deputy a few hours before, not to mention the 3 lives he took previously...No excuse for this behavior...People are railroaded everyday, but killing wasn't necessary...Surprised you feel this way as a member of law enforcement..." I replied to her in two posts. My first post stated:

> *Don't read into my responses to this TRAGEDY Karla C. Mays...I'm simply highlighting those things that the media don't seem to find important enough to make mention of. If the story is going to be told tell ALL OF IT NOT PART OF IT!!! The media nor LAPD were posting Chistopher Dorner's manifesto when this all began to be pushed to the public. The only thing that was said was that he allegedly killed two people with no specifics as to how or why he was the primary suspect. Then they post that he shot two LAPD Police Officers but not until last night did they mention the HORRIBLE CIVIL RIGHTS VIOLATIONS BY THE FEMALE LAPD OFFICER AND COVERUPS BY SENIOR LAPD OFFICERS AND THEIR BOARD OF RIGHTS.*
> *INJUSTICE BY ANY NAME, WHETHER IT'S AT THE HANDS OF LAW ENFORCEMENT OR AT THE HANDS OF THE COMMON CITIZEN, IS NO JUSTICE AT ALL!!!*

My second post in response to her was the other post that IA focused on in the investigation and it stated:

> *Labeling someone a cop killer doesn't automatically give other law enforcement the right to BURN A MAN TO DEATH WITHOUT DUE PROCESS AFFORDED TO ALL CITIZENS IN THE UNITED STATES CONSTITUTION!!! There were no reports that he came out shooting only that he threw out a smoke grenade. EVERY TIME we encounter ANY PERSON POSING A THREAT we as law enforcement have to be able to use more than just DEADLY FORCE to resolve tense and often times unpredictable situations. IT IS MY OPINION THAT THIS TRAGIC SITUATION TURNED INTO A LYNCHING FOR THE ACCUSED BEFORE HE WAS AFFORDED HIS CONSTITUTIONAL DUE PROCESS RIGHTS!!!*

I replied "we as law enforcement" because I am not only a Police Officer but a Sergeant in the U.S. Army. The Armed Forces are considered on the federal level to be a law enforcement entity. Upon enlistment every Soldier is required to recite under oath the Oath of Enlistment whether as an enlisted Soldier or an Officer to defend the U.S. Constitution and I have upheld this oath every day of my enlistment. The Oath of Enlistment (for enlisted Soldiers) reads:

> "I, _____, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States and the orders of the officers appointed over me, according to regulations and the Uniform Code of Military Justice. So help me God."

---

CARNEY-00031

My opinion and observations regarding the burning of the cabin were confirmed when San Bernadino County Sheriff John McMahon admitted his deputies deployed the highly flammable hot gas canisters, but denied they intentionally started the fire, and in his media interview stated,

> *"I can tell you that it was not on purpose. We did not intentionally burn down that cabin to get Mr. Dorner out. The tear gas canisters that we used—first off, we used a presence when we showed up. Secondly, we used a cold tear gas. Then we used—the next tear gas was that that was pyrotechnic, does generate a lot of heat. We introduced those canisters into the residence, and a fire erupted."*

In addition, my military occupational specialty (MOS) as an Intelligence Analyst requires a Top Secret (TS) Security Clearance with Sensitive Compartmented Information (SCI) access and authority. A security clearance investigation is an inquiry into an individual's loyalty, character, trustworthiness and reliability to ensure that he or she is eligible for access to national security information. The investigation focuses on an individual's character and conduct, emphasizing such factors as honesty, trustworthiness, reliability, financial responsibility, criminal activity, emotional stability, and other similar and pertinent areas. All investigations consist of checks of national records and credit checks; some investigations also include interviews with individuals who know the candidate for the clearance as well as the candidate himself/herself. I have maintained my security clearance since my initial enlistment in 1993 and have never had my clearance pulled for any reason.

I stated my opinion in this post and referred to the tragic situation as a "lynching for the accused" because of the unethical, unconventional and diabolic methods law enforcement officers exercised in rendering an extrajudicial execution of the accused. The term lynching has multiple historical definitions that identify hanging, burning, and shooting to death the accused by mob action in order to punish an alleged transgressor, or to intimidate, control, or otherwise manipulate a population of people. In many cases lynching's were not spontaneous mob violence, but involved a degree of planning and law-enforcement cooperation. The terminology I used to express my opinion reflected factual references to actual historical events. The fact still remains that the mention of slavery or lynching's elicits strong feelings and reactions from those who either, supported that era in history or who opposed that era and continue to fight against its reintegration. There is always the possibility for misinterpretation, misrepresentation, and manipulation of words, terms, or statements made by anyone, but more so when taken out of the context in which they were used. In this case my FB posts/statements that contained the words or terms blacks, mobs, slavery, and lynching were taken out of context by former and current police officers within this department. My posts were then reposted not only on their FB pages as retired Sergeant Jim Holley reposted them to his FB page, but also on Wiregrass Live, another social media site, both done without my knowledge or consent which is against Facebook's Community Standards. FB specifically addresses the following standards in regards to members' posts, in addition to other standards, that they warn their members could result in the removal of their content if reported and determined to be a violation:

- **Identity and Privacy**
On Facebook people connect using their real names and identities. We ask that you refrain from publishing the personal information of others without their consent. Claiming to be another person, creating a false presence for an organization, or creating multiple accounts undermines community and violates Facebook's terms.
- **Hate Speech**

---

CARNEY-00032

Facebook does not permit hate speech, but distinguishes between serious and humorous speech. While we encourage you to challenge ideas, institutions, events, and practices, we do not permit individuals or groups to attack others based on their race, ethnicity, national origin, religion, sex, gender, sexual orientation, disability or medical condition.

Facebook also requires in its memberships for members to be aware of its Statement of Rights and Responsibilities and more specifically its Safety policy. The Safety policy details twelve (12) responsibilities it asks its members to commit to whereby the tenth responsibility states:

> *You will not use Facebook to do anything unlawful, misleading, malicious, or discriminatory.*

The reposting of my FB posts by former and/or current members of Dothan Police Department was clearly done first in a manner to maliciously mislead and discriminate against me due to the fact that Dorner and I are of African American descent; secondly due to their presumption that I was supporting a "cop-killer;" and lastly due to their assumption that the law enforcement officers from LAPD and San Bernadino involved in Dorner's search, the officers allegedly killed by Dorner, and the daughter and fiancée of the former Captain of LAPD were not of African American descent. There were other employees of the Dothan Police Department who "liked" or either commented on one or more of my FB posts regarding Dorner, as well as, other citizens of Dothan. Jim Holley, Richard Odom, Brent Parrish, and Jon Riley were the former DPD police officers who attempted to either twist my FB posts into something discriminatory/biased or gain access to my FB page when they had never made contact with me on my FB page to friend me or comment on anything I've posted in the past. Also in that same post, Richard Odom, Brent Parrish, and Danny Herold, an unknown person to me, made comments to me that was in my opinion their way to twist my FB posts into something racially motivated.

> *Richard Odom commented: Racism is perpetuated by racism, hence your statement! Only psychopaths write manifestos, read mein kampf!*
> *Brent Parrish commented: Who whould have ever thought a Cop would take the side of a COP KILLER!!!!! And all over ther color of their skin!!!!! WOW!!!!!*
> *Danny Herold commented: You're an ignorant racist, Carney, and a disgrace to law enforcement. I intend to file a complaint Monday morning with the Dothan Police Department and the City of Dothan regarding your insensitive and misguided rantings.*

I asked Odom to elaborate on his comment, but he did not respond. I chose not to engage Parrish and Herold in conversation because I didn't feel their comments were worthy of a response because my posts were not racially motivated to begin with, as they had clearly misinterpreted my post or were deliberately trying to make my post racially biased. On February 13, 2012 I posted another media report which stated:

> *"We did not intentionally burn down the cabin." Well did you intentionally call for a fire truck to put out the unintentional burning cabin? I never saw any footage of water being applied to the burning cabin. If they felt someone, whether it was Chris or not, was inside don't they have a lawful duty to preserve the life of others including criminals....ijs*

On February 15, 2013 I posted:

> *GM FB....The Constitution of the United States is the SUPREME LAW of the land: Amendment I states:*
>
> *Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise*

---

CARNEY-00033

> *thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.*
>
> *Freedom of Speech...at what point does one's freedom of speech rights violate the supreme law of the land...when he/she expresses his/her opinion on social media sites, when having discussion in public places, when merely commenting on news articles publicized by national media, when it brings negative/positive attention to his/her employer, family, place of worship....Or maybe there is no point because it is after all Freedom of Speech...*

On February 16, 2013 I was called into Major Parrish's office where he informed me about the concerns of several members of the department as they related to my FB posts about Dorner. Later that evening, I made a FB post which stated:

> *Recently people have been "scratching their heads" questioning my values based on some of my recent FB posts. For ALL of my new and old FB followers let be CLEAR about the 7 MOST IMPORTANT VALUES I live by whether on or off duty as a Police Corporal and as an ARMY Sergeant:*
>
> *LOYALTY - Bear true faith and allegiance to the U.S. Constitution, the Army, your unit and other Soldiers. Bearing true faith and allegiance is a matter of believing in and devoting yourself to something or someone. A loyal Soldier is one who supports the leadership and stands up for fellow Soldiers. By wearing the uniform of the U.S. Army you are expressing your loyalty. And by doing your share, you show your loyalty to your unit.*

In making this post I wanted the people who were not identified to me to have a clear understanding of my values which in turn shape my character. Since they did not express their concerns with me in person, I used the same forum in which their concerns were developed to address them. I made several additional posts that listed all of the seven (7) values I made reference to in this post. Then I made a FB post and directed it to the former DPD officers whom I felt had something to do with Major Parrish calling me into his office, and it stated:

> *Brent Parrish, Danny Herold, Jim Holley, Richard Odom, John Riley, those who want to throw stones and hide your hands, and all of my newest FB followers who want to now see what's on my FB page so you can copy what I say here onto other social media sites like Wiregrass Live in your attempts to smear my name in the eye of the public and within the ranks of my coworkers, copy and paste my 7 values. If you're going to repeat what I say repeat all of what I say not part of what I say.*
>
> *No weapon formed against me shall prosper...*

The following thread ensued:

> *Virgil K Red Byrd: Freedom of speech*
> *Jim Holley: It's IRONIC that you have not mentioned anything about the WHITE MAN that was killed by the police in Midland City. And I wonder if you would feel the same about Dorner if it was your children that he had killed.*
> *RaeMonica Carney: Jim Holley...Maybe if you had been following me on FB prior to last week then you would not have made that post.*
> *Jim Holley: Would you be defending him if it had been your children?*
> *RaeMonica Carney: I defend my children and everyone else's children when it's necessary.*
> *RaeMonica Carney: If you're not intelligent enough to understand fact from opinion it's not my duty to show you the difference.*
> *Jim Holley: That's not what I ask. Would you be defending Dorner like you are, if he had killed your children or family. It's a simple Question.*

---

CARNEY-00034

*RaeMonica Carney: First off it seems you have formed an assumption about my personal opinion and views so for me to respond to your assumption would say I'm in agreement with it.*

*RaeMonica Carney: As I told another FB follower who made assumptions about my posts...Don't read into what I posted.*

*Jim Holley: I didn't think you could answer because it would go against what you have been posting.*

*RaeMonica Carney: That's where you are mistaken. Like I said before if you had been following me on my page prior to last week then you wouldn't have to ask. After working along side me in law enforcement for at least 10 years you should already know my values and beliefs. There have been many a call that I have had your back without question.*

*RaeMonica Carney: I'm still the same person I was prior to becoming a police officer and after being a police officer for the last 17 years because the values I live today were instilled in me when I was a child by my grandparents who raised me. Then those same values were just reinforced when I joined the U.S. Army 13 years ago. Law enforcement share the same values the Army teaches so it was a perfect fit for my way of living.*

*Jim Holley: You still have not answered my Question.*

*RaeMonica Carney: Now Jim Holley you can interpret my answer to you however you please.*

*Jim Holley: Just remember those children that parents that are having to deal with their loss and the police officers have children that are now having to grow up without a farther because of Christopher Dorner. I sure hope they don't see your post.*

*RaeMonica Carney: Only "Fools rush in where Angels fear to tread"...*

*Anita Smith: RaeMonica, I've only know you for Afew years now, the guys are just jerks, we are all initial to our on points & views, never agree on same things. But no one has a right to smear a good name or person! Hold your head high, we know your a person I would be proud to call friend & my children to look for guildness !!*

*Richard Odom: I stated my opinion about your statement. I didn't post it anywhere else, only on your page. However, it is clear you are RACIST! Your personal "publicly announced" opinion should eliminate you from working in law enforcement. You judge those officers in California, how can you. I am sure you have never been on a SWAT deployment or probably even a search warrant. Your opinion disguist me, it literally sickens my stomach. Don't get upset when you post your opinion and people answer you with negative reactions, then start talking about freedom of speech. It's my freedom of speech to say to you" I am sickened by your statements, you make me want to vomit. I think your attitude should get you fired from the department". I think in all this you got what you want. Your intention was to "stir a pot" and you got it. I will not post on this again. Carney,i am sure you will. Because it is in your nature to start crap. For you to be so RACIST how can you claim to be a Christian!*

*RaeMonica Carney: Richard Odom...This coming from an ex-cop who tried to fight his coworkers after breaking the law, and who never once initiated a single hello to me when worked together for 5-6 years yet and still I always spoke to you and had your back on every call...I'm not surprised that you would have such an opinion.*

*Rhonda Ardis: RAE, KEEP PRAISING GOD AND SHARING YOUR VIEWS ON THINGS THAT MATTER TO OUR HEARTS. YOUR VALUES AND BELIEFS ARE RIGHT ON POINT!*

*Stephanie Delane Truitt: Pain is pain!!! I wonder how one would feel to have their kid inform them that he had been kicked in the face by someone that had been sworn in to serve and protect. To have one of those that had taken oath to be willing to go against the "blue line", and admit that in fact that it had happened. Due to the victim having some mental issues, his abuse went unpunished. If you are kicked in the face, slapped, or experience any type of physical contact, one maybe mentally challenged, but they are still able to identify when physical harm have been inflicted. I can't imagine how those kids feel, but I'd be willing to bet that as much as they loved their parents, the father of the mentally challenged didn't love his son any less. His disability doesn't discredit his ability to realize that he had been done wrong.*

In summary of my FB posts, I must emphasize that I have always represented myself to the public as a woman, mother, and professional with a character based on these values: personal courage, honor, integrity, respect, selfless service, loyalty, and duty. In 17 years of law enforcement experience earned from multiple agencies, my character has never been called into question. There have never been any citizen complaints that I treated them in a manner to

---

indicate a racially biased disposition, nor have there been any co-worker complaints alleging the same. I pride myself on treating others as I would want to be treated, regardless of their race or ethnicity. I have served in the U.S. Army for 13 years and I have never had any co-workers allege that I treated them or any other person in a manner to indicate a racially biased disposition. I have attended numerous multicultural diversity training classes administered through the military, law enforcement, and my real estate careers on, which have helped me to remain vigilant in the way I treat others.

### The Internal Affairs investigation and EEO complaints filed by various DPD Officers

The IA investigation, according to SGT Donny Smith, was supposed to be an investigation to determine the facts and intentions behind my FB posts; however, it became a hostile, threatening, and intimidating interrogation by SGT Donny Smith and SGT Doug Magill. Their fact finding methods were not to find out what I meant by all of my FB posts regarding Dorner's case but a means to try and coerce and intimidate me into agreeing with the misinterpretation that the complainant Emily Hays developed from the conversations with the unidentified police officers she stated she learned the information from. She admitted to not knowing me and never having had any interaction with me from my position as a law enforcement officer. She stated those conversations are what prompted her to locate and view my FB page. In order for her to find my page she would have to know how to correctly spell my name which could only have been accomplished in one of two ways; the police officers she referred to would have had to provide it to her, or she would have had to be friends with one or more of them on FB in order to see the reposting on their page. My first name is not a common name nor does it have a common spelling.

The reposting of my FB posts without my knowledge or consent is a violation of Facebook's terms of use in regards to Identity and Privacy. In legal proceedings the term fruit of the poisonous tree refers to the principle or law that prohibits the use of secondary evidence in trial that was cullied directly from primary evidence derived from an illegal search and seizure. Due to the illegal sharing of my FB posts onto another FB member's page, namely Jim Holley, and or other social media sites, the IA investigators should have taken that into account and made a determination as to whether or not any information that was posted on my FB page could or should be used against me in any adverse administrative action. In addition to Hays not knowing me, the spelling of my uncommon name, or what I look like, she would not have easily identified me by my profile picture because it had no indications that I was employed by Dothan Police Department or the City of Dothan. This further proves that the actions of those unidentified officers were to maliciously misrepresent my FB post to make it appear that I was making racially motivated posts.

Hays also noted in her letter that I had close ties to the NAACP, but there is nothing on my FB page to indicate that I have "close ties" with the NAACP. In fact, I have not been affiliated with the NAACP since 2008, which would infer that Hays was given this misinformation by someone who knew I had previous ties with the NAACP. Hays attempted to foster support from other members of the Wiregrass area by posting the letter she sent to your office on her Wiregrass Live (WGL) account. You and several other members of the department, both past and present, are members of WGL; however, unlike FB, WGL members are not required to provide true and accurate personal information in order to establish a membership, only a valid email address.

CARNEY-00036

There were WGL members who appeared to agree in some small part with her plea, but none made any statements to indicate that they would join her in filing a complaint against me, and in fact some stated that I was entitled to my opinion and Constitutional right to freedom of speech. Some members even encouraged her to take her complaint back to FB. I am not of the opinion that Hays acted solely on her own accord in bringing my FB posts to your attention. I am of the opinion that her actions were prompted by former members of the police department who attempted to twist my words into something derogative and unbecoming of a law enforcement officer.

I find it very interesting that none of my FB friends who commented on my posts were contacted by the IA investigators during their investigation, which I feel further validates my statement that the investigators conducted the interview with the intent to coerce and intimidate me based on their own perceptions coupled with the allegations of the former police officers who attacked me on my FB page. This investigation has done nothing more than further victimize me to the racism exhibited by the former police officers and unknown citizen who called me racist, the informal complaint of Emily Hays, the IA investigation, its findings, and the investigators who conducted the investigation, and finally the various officers who filed EEO complaints against me.

The EEO investigation into the complaints by various officers who felt my FB posts were racially motivated was done in a manner to protect them only and no consideration was given to my complaint that I was not being protected. I've never heard of, been involved in, or been a party to any investigation where the accused was never informed of who his accusers were. The accused cannot properly defend him/herself to any allegations when they are not informed of the names of the persons who are accusing them. In the end, the accusations are determined to have merit without any specific information being provided to explain how the determination was made. I feel that this investigation was done in a manner to protect the officers within the department whom I complained were discriminating against me and then use the findings to support the informal complaint of Emily Hays.

**The findings of the Internal Affairs investigation as recorded on Personnel Form #147**

The findings of the IA investigation state:

> *As a Police Officer, tasked with enforcing laws and adhering to conduct of integrity and sound decision making, on February 12, 2013; you posted on public domain (via Facebook) comments that detrimentally affects the public's trust and public expectation of you as a law enforcement officer and the City of Dothan Police Department as a public entity. Your comments were of a racial nature and were offensive to members of the Dothan Police Department and general public. Furthermore, your comments on public domain related to a law enforcement tactical operation, where you had no direct knowledge of the facts, demonstrates your lapse in judgment and how this affects your role as a Dothan Police Officer; where tactical operations and law enforcement related activities are carried out.*

As I have detailed above in my explanation into my FB posts, it should be very clear that I have always done what's right both legally and morally in my position as a Police Officer. I have never done anything to deceive another, nor have I allowed for others to be purposely deceitful to others in my presence. I have reported at least on one occasion, a Dothan Police Officer for misconduct whether my complaint was found to have merit or not and I will continue to report

CARNEY-00037

any act that I feel is inappropriate and against policy. I am no stranger to making mistakes and being punished for them, as evidenced in my military career by summarized article 15's for various violations, but I pride myself in admitting when I have made a mistake and accepting the punishment that comes with that. My FB posts were not racially motivated, and my references to factual history should not be construed to be racially motivated because others may not have the vast knowledge of history that I have. I have conducted a number of community events during and after my FB posts and have not had any member of the public comment to me about the postings even after my FB post was placed on Rickey Stokes News and was viewed by nearly 8,000 viewers on February 18, 2013. I believe that if that many additional viewers in the general public did not come forward and also file formal and or informal complaints against me then the general public's trust in the Dothan Police Department has not been detrimentally affected nor has the public's expectation of me as a law enforcement officer. The tactical operation that I figure the IA investigators are referring to must be in reference to the deployment of the "burners" or pyrotechnic tear gas canisters, as for which they state I had no direct knowledge of the facts demonstrated a lapse in judgment. I have received enough training in the military, law enforcement, and in my college studies to be able to make an informed and educated conclusion as to how the deployment of those incendiary canisters into an enclosed structure would result in what the canisters were designed to produce. I made no false statements in my FB posts, no racially motivated posts, and none of my posts were in violation of the department's Social Media policy. I hope that you are able to clearly see the facts of this matter after reviewing this document, and that you agree no violation of PGO 100-52 Section V of the Social Media policy and no violation of Sec. 3-42(13) Misconduct, or any disgraceful conduct which reflects unfavorably on the City as an employer or public entity have occurred.

*FURTHER AFFIANT SAITH NOT.*

RaeMonica Carney

SWORN AND SUBSCRIBED BEFORE ME on this the 25th day of March, 2013.

Notary Public

My Commission Expires: April 13, 2016

---

AFFIDAVIT OF RAEMONICA CARNEY                                        PAGE 10 OF 10

# EMPLOYEE HANDBOOK

I, ___RAEMONICA CARNEY___, an employee with the City of Dothan, Alabama, have received a CITY OF DOTHAN EMPLOYEE HANDBOOK which includes a copy of THE PERSONNEL RULES AND REGULATIONS, CIVIL SERVICE ACT, DRUG TESTING POLICIES AND PROCEDURES, EMPLOYEE BENEFITS SUMMARY, MOTOR VEHICLE OPERATIONS POLICY AND EMPLOYEE SAFETY COMMITTEE POLICY,   AND COMPUTER POLICIES AND PROCEDURES.

_RaeMonica Carney_
Signature

05-04-05
Date

**DEFENDANT'S EXHIBIT**

Cloyd   24

CITY OF DOTHAN/CARNEY 000096
CONFIDENTIAL



# *City of Dothan*

## *Receipt of Computer Policies and Procedures*

*I,* _____RAEMONICA CARNEY_____ *, an employee of the City of Dothan, do hereby acknowledge that I have received, and understand it is my responsibility to read and follow, the City of Dothan Policies and Procedures governing use of computers, E-mail and Internet usage. I agree to abide by these policies and procedures. I understand that violation of these policies could result in disciplinary action, up to and including suspension without pay and/or discharge.*

| | |
|---|---|
| *Signature* | 05-04-05 |
| | *Date* |

CITY OF DOTHAN/CARNEY 000097
CONFIDENTIAL



# Certificate of Completion

This is to certify that

## RaeMonica Carney
of
## City of Dothan Police Department

successfully completed the mastery test (non-supervisory) in
### *Preventing Employment Discrimination*
on June 27, 2009, with a score of 93%

Print this certificate (click Print under the File menu above) and sign it
and send it to City of Dothan Police Department's Human Resources
Department.

I confirm that this certificate represents my test score in
*Preventing Employment Discrimination*

RaeMonica Carney

This program is provided with the compliments of
**City of Dothan**

It may be copied without restriction, and may be used free for personnel training by
organizations within the City of Dothan that employ no more than 50 people. Larger employers may use
this program for
demonstration and evaluation but must obtain a license from New Media Learning for instructional use.

Copyright 2008 New Media Learning, LLC
For licensing information, please contact New Media Learning Tel. (707) 254-3500

http://training.newmedialearning.com/cgi-bin/anyform36.cgi

CITY OF DOTHAN/CARNEY 003782009
CONFIDENTIAL



## THE CITY OF DOTHAN
## DOTHAN, ALABAMA

January 2, 2007

### STATEMENT OF EEO POLICY

It is the policy of The City of Dothan to insure affirmative action in providing equal employment opportunities without regard to race, creed, religion, color, sex, age, handicapped persons or national origin, except where age or sex is a bona fide occupational qualification.

In the implementation of this policy The City of Dothan will, among other appropriate actions:

I.  Recruit, test, select, hire, train and promote personnel in all job classifications without regard to race, creed, religion, color, sex, age, handicapped persons or national origin, except where age or sex is a bona fide occupational qualification.

II.  Base employment decisions as to further insure the principle of equal employment opportunity to all.

III.  Base employment decisions as to further insure the principle of equal employment opportunity by imposing only valid and job-oriented requirements for promotional opportunities.

IV.  It is the announced policy that all personnel actions, such as compensation, fringe benefits, or promotional training, social or recreational programs will be administered without regard to race, color, sex, religion, age, creed, handicapped persons or national origin.

Periodic analysis, at least every twelve months, will be made by the Personnel Department to insure that personnel actions are in accord with the aims and stated objective of this program.

Pat Thomas
_____
PAT THOMAS, Mayor
Board of City Commissioners

cc:  Department Bulletin Boards
     Mayor and Commissioners
     City Manager
     Department Heads
     Personnel Board

_____
KAI W. DAVIS
Personnel Director

_____
DAVID THORNTON
EEO Officer

CITY OF DOTHAN/CARNEY 000729
CONFIDENTIAL



# THE CITY OF DOTHAN
# DOTHAN, ALABAMA

### October 05, 2009

## STATEMENT OF EEO POLICY

It is the policy of The City of Dothan to insure affirmative action in providing equal employment opportunities without regard to race, creed, religion, color, sex, age, handicapped persons or national origin, except where age or sex is a bona fide occupational qualification.

In the implementation of this policy The City of Dothan will, among other appropriate actions:

I. Recruit, test, select, hire, train and promote personnel in all job classifications without regard to race, creed, religion, color, sex, age, handicapped persons or national origin, except where age or sex is a bona fide occupational qualification.

II. Base employment decisions as to further insure the principle of equal employment opportunity to all.

III. Base employment decisions as to further insure the principle of equal employment opportunity by imposing only valid and job-oriented requirements for promotional opportunities.

IV. It is the announced policy that all personnel actions, such as compensation, fringe benefits, or promotional training, social or recreational programs will be administered without regard to race, color, sex, religion, age, creed, handicapped persons or national origin.

Periodic analysis, at least every twelve months, will be made by the Personnel Department to insure that personnel actions are in accord with the aims and stated objective of this program.

MIKE SCHMITZ, Mayor
*Board of City Commissioners*

DELVICK J. MCKAY
*Personnel Director*

GARY J. GRIFFIN
*EEO Officer*

cc:  Department Bulletin Boards
     Mayor and Commissioners
     City Manager
     Department Heads
   ✓ Personnel Board

CITY OF DOTHAN/CARNEY 000730
CONFIDENTIAL



# THE CITY OF DOTHAN
## DOTHAN, ALABAMA

May 8, 2012

### STATEMENT OF EEO POLICY

It is the policy of The City of Dothan to insure affirmative action in providing equal employment opportunities without regard to race, creed, religion, color, sex, age, handicapped persons or national origin, except where age or sex is a bona fide occupational qualification.

In the implementation of this policy The City of Dothan will, among other appropriate actions:

   I.     Recruit, test, select, hire, train and promote personnel in all job classifications without regard to race, creed, religion, color, sex, age, handicapped persons or national origin, except where age or sex is a bona fide occupational qualification.

   II.    Base employment decisions as to further insure the principle of equal employment opportunity to all.

   III.   Base employment decisions as to further insure the principle of equal employment opportunity by imposing only valid and job-oriented requirements for promotional opportunities.

   IV.   It is the announced policy that all personnel actions, such as compensation, fringe benefits, or promotional training, social or recreational programs will be administered without regard to race, color, sex, religion, age, creed, handicapped persons or national origin.

Periodic analysis, at least every twelve months, will be made by the Personnel Department to insure that personnel actions are in accord with the aims and stated objective of this program.

MIKE SCHMITZ, Mayor
*Board of City Commissioners*

DELVICK J. MCKAY
*Personnel Director*

DARRYL MATHEWS
*EEO Officer*

cc:    Department Bulletin Boards
       Mayor and Commissioners
       City Manager
       Department Heads
       Personnel Board

CITY OF DOTHAN/CARNEY 000731
CONFIDENTIAL

## CITY OF DOTHAN

### PERSONNEL RULES AND REGULATIONS

(Revised _____)

## REGULATION 1 - GENERAL PROVISIONS

Sec. 1-10.    **Purpose:** It is the purpose of these rules and regulations to establish normal procedures which will serve as a guide in administrative action concerning the various personnel activities of the City of Dothan. These rules are supplementary to the "Civil Service Act of Dothan" and are not intended to supplant or overrule said act.

Sec. 1-20.    **Declaration of Policy:** The following personnel policies are established for the City of Dothan:

Sec. 1-20.    (1)    It is the policy of the City of Dothan to insure affirmative action in providing equal employment opportunities without regard to race, creed, religion, sex, age, mental or physical disability, national origin, or political background, except where age or sex is a bonafide occupational qualification. (PBA 11/9/92)

Sec. 1-20.    (2)    Employment with the City shall be based on merit and free of personal and political consideration.

Sec. 1-20.    (3)    Just and equitable incentives and conditions of employment shall be established and maintained to promote efficiency and economy in operation of the municipal government.

Sec. 1-20.    (4)    Positions having similar duties and responsibilities shall be classified and compensated on a uniform basis.

Sec. 1-20.    (5)    Appointments, promotions, and other personnel actions requiring the application of the merit system shall be based on systematic tests and evaluations.

Sec. 1-20.    (6)    Every effort shall be made to stimulate high morale by fair administration of these regulations and by every consideration of the right and interest of the employee, consistent with the best interest of the City.

Sec.1-20.    (7)    Continuation of employment with the City shall be subject to good behavior, satisfactory performance of work, necessity of the positions, and availability of funds.

Sec. 1-30.    **Coverage:** These rules shall apply to all positions and offices in the Classified Service unless otherwise provided by law.

Sec. 1-40.    **Classified Service:** The Classified Service shall comprise all offices and positions in the City employ, now existing or hereafter created, except those positions specified as the "Unclassified Service" by state laws.



DEFENDANT'S EXHIBIT

Cloyd        25

Page -1

CITY OF DOTHAN/CARNEY 001132
CONFIDENTIAL

Sec. 1-50.    **Interpretation:**  These regulations are intended to cover most personnel problems and actions likely to be encountered.  Those points not specifically covered shall be interpreted by the Personnel Director in keeping with the intent and objectives of these regulations.  Records of any interpretations shall be kept by the Personnel Director for consideration of incorporation into these regulations.

Sec. 1-60.    **Enforcement and Administration:**    The enforcement and administration of the rules and regulations set forth in this publication are the responsibility of the Personnel Director; however, the implementation of same is the responsibility of the department heads (Appointing Authorities).

Sec. 1-70.    **Approval of Rules:**  These rules shall be in force and effect when adopted by the Personnel Board.

CITY OF DOTHAN/CARNEY 001133
CONFIDENTIAL

REGULATION II - RECRUITMENT, SELECTION AND PROBATION

Sec. 2-10.    **The Classified Service:** The Classified Service shall comprise all offices and positions in the City employ, now existing or hereafter created, except those positions specified as the "Unclassified Service" by state laws.

Sec. 2-20.    **Employee Status:** The status of each person employed in a classified position falls into one of six separate and distinct categories.  (PBA 7-24-95, 9-11-06)

Sec 2-20.    (1)    **Regular Full Time:**  A full time status employee is defined as an employee who is scheduled to work a minimum of forty (40) hours per work week for 52 weeks per twelve (12) month period (2080.0 hours per year) or an equivalent work schedule determined by the Personnel Director to constitute full time status including fire, police and public services shift employees. An employee earns regular full time status after satisfactorily completing the probationary working test period established for the class of position into which employed (see §2-80., Working Test Period) and being certified as qualified for the position by the department head. Employees under this status participate in employee benefits including group hospitalization and life insurance, retirement, vacation, sick leave, and holiday pay.  (PBA 6-8-87, 7-24-95, 10/11/04, PBA 6/11/07)

Sec. 2-20.    (2)    **Probationary Full Time:** A full time status employee as defined in §2-20.(1), upon being employed in a classified or laborer position, whether through initial employment, re-employment, promotion, demotion, or transfer, is under this status until satisfactorily completing the probationary working test period established for the class of position into which employed (see §2-80., **Working Test Period**) and is certified as qualified for the position by the department head. Employees under this status participate in all employee benefits as listed under paragraph (1) above. (PBA 10/11/04, 9/11/06)

Sec. 2-20.    (3)    **Part Time:** A part time status employee is defined as an employee, who is scheduled to work less than forty (40) hours per week. An employee earns regular part time status after satisfactorily completing the probationary working test period established for the class of position into which employed (see § 2-80, Working Test Period) and being certified as qualified for the position by the department head.  A part time status employee who is scheduled to work a minimum of thirty (30) hours per week is eligible for group health and life insurance benefits in accordance with the City's group health and life insurance policies. A part time status employee who is scheduled to work a minimum of twenty (20) hours per week participates in the Employees' Retirement Systems of Alabama. A part time status employee is not eligible for holiday, vacation or sick leave benefits. Note: unclassified part time appointed or elected officials are eligible for group health and life insurance benefits in accordance with the City's group health and life insurance policies. (PBA 7-24-95, 4-12-99, 10/11/04)

Sec. 2-20.    (4)    [deleted PBA 10/11/04]

Sec. 2-20.    (5)    **Temporary:** A temporary status employee is defined as an employee who is hired for a limited period of time, not to exceed twelve (12) continuous months as defined by a calendar period, for the performance of specific tasks.  A temporary status employee may be scheduled to work any number of hours per week up to a full forty-(40) hour workweek. A temporary status employee is in the Classified Service.  An employee in this status is not eligible for group hospitalization and life insurance, vacation and sick leave benefits, and is not eligible to participate in the Employees' Retirement Systems of Alabama. A temporary status employee scheduled to work a full forty (40) hour work week is eligible for holiday pay provided he/she works the full eighty (80) hour pay period (except holidays) during which the holiday falls.  (PBA 7-24-95, 4-12-99, 10/11/04)

Page revised 3/14/00, 10/11/04, 9/11/06, 6/11/07

CITY OF DOTHAN/CARNEY 001134
CONFIDENTIAL

Sec. 2-20.     (6)    **Unclassified Seasonal/Recreational**: A temporary unclassified seasonal/recreational status employee is an employee who is employed to work in the seasonal recreational programs sponsored by the City. An unclassified seasonal/recreational employee's work schedule is limited to and dependent upon the work hours per week and work weeks per calendar year required to operate the particular seasonal recreational program in which he/she is employed. An employee in this class generally works less than a cumulative 1,040.0 hours per year. An employee in this status is not eligible for group health and life insurance benefits, vacation or sick leave benefits or holiday pay. However, an employee in this status is eligible for holiday pay provided he/she works the full eighty (80)-hour pay period during which the holiday occurs. (PBA 7-24-95, 4-12-99, 10/11/04)

Sec. 2-25.     **Temporary Alternative Duty** is duty that is assigned to employees who have a restricted activity status, as recommended by their treating physician, or in the case of a work related injury, by the City's Medical staff and/or treating physician. For non-work related injuries/illnesses temporary alternate duty is available to full time employees following their initial probationary period at time of hire. This alternate duty status has a time limit of eight calendar weeks within a twelve month period from the time the employee is first placed on 'light duty', regardless of the number of injuries/illnesses sustained during that twelve month period. It is the responsibility of the affected employee to present to the Employee Health Clinic with written documentation from their treating physician specifying the restrictions and the length of time the restriction applies. The employee should keep the Clinic staff informed of their status after each visit to their physician, which should be at least every four-calendar week. *If, after the eight week time frame, the employee is not released to his/her full duty status by their treating physician, he/she will have to be taken off work until which time his/her physician releases employee to full duty.* If the treating physician feels the employee cannot return to his/her full duty status, additional testing/evaluations may be warranted as recommended by the City's Medical Director. This will be at the expense of the employee if not covered by insurance.

In cases of restricted activity status that is a result of a work-related injury/illness, the eight-calendar week limit does not apply. The City's Medical staff in accordance with the authorized treating physician will monitor the covered employee's work status.
(PBA 8/17/92, PBA 8-9-93, PBA 12/13/93, PBA 3/13/00, PBA 4/14/03)

Sec. 2-30.     **Residence Rule**: It is the policy of the City of Dothan to give preference in hiring to persons living within the city limits of Dothan. This means that when a position vacancy occurs with the City of Dothan, those persons found to be most qualified for the position and living within the city limits of Dothan shall be given first preference for the position. If no individual is found to be most qualified within the city limits, selection shall be conducted outside the city limits.

Sec. 2-30.     (1)    All employees of the Fire, Police, Water, Public Works, Electric and Community Developments, and such other personnel as may be designated by department heads for emergency and/or standby duty must be immediately available to their department heads at all times by means of telephone and must be able to meet emergency calls in a minimum of time.

Sec. 2-30.     (2)    Maximum reporting time for emergency and/or standby duty for employees noted in § 2.30(1), above, is thirty (30) minutes from time notified to report to employee's regular work reporting station. (PBA 1/9/95)

> *Note: This reporting time supersedes all previous maximum reporting times. (PBA 1/9/95)*

Sec. 2-30.     (3)    All employees of the City of Dothan are encouraged to move within the city limits, as preference shall be given to those employees living within the city limits in case of layoffs.

CITY OF DOTHAN/CARNEY 001135
CONFIDENTIAL

Sec. 2-40.   **Employment of Veterans and Disabled Persons:**  It shall be the policy of the City to give special consideration to the employment of war veterans and to encourage wherever possible the employment of persons with disabilities in positions where the disability will not substantially interfere with the performance of assigned duties.  Veterans shall receive credit according to Section 13 of the Civil Service Act of Dothan:

"Upon successfully passing an entrance examination for a position in the Classified Service, five point preference is given to honorably separated veterans who served on active duty in the Armed Forces of the United States during any war (the official dates of war service are April 6, 1917 - July 2, 1921, and December 7, 1941 - April 28, 1952); during the Period April 28, 1952, through July 1, 1955; in any campaign or expedition for which a campaign badge or service medal has been authorized; for more than 180 consecutive days, any part of which occurred after January 31, 1955, and before October 15, 1976.  (An initial period of active duty or training under the "six-month" Reserve or National Guard programs does not count.); during the Gulf War between August 2, 1990 and January 2, 1992.  Ten point preference is given to veterans who served on active duty in the Armed Forces at any time, and who (1) have a service-connected disability or (2) are receiving compensation, disability retirement benefits, or pension under laws administered by the Veterans Administration, Army, Navy, Air Force, Coast Guard, or Marine Corps.  A veteran who has been awarded the Purple Heart for wounds received in action is considered to have a service connected disability.  (PBA 11-9-92) (6-17-2002 to reflect Civil Service Act)

Sec. 2-50.   **Eligible, Promotional and Re-employment Registers:**  The Personnel Director shall establish and maintain such eligible, promotional and re-employment registers for the various classes of positions within the City service as are necessary to meet the needs of the service.  The Personnel Director shall determine the period during which such registers shall remain in effect, but this period shall not exceed two (2) years. (PBA 11-14-88, 8-12-96)

Sec. 2-50.   (1)   **Eligible Registers:**  Eligible registers shall contain the names of those applicants who are deemed by virtue of the examination process (See § 2-60(5), Examination Process) to be qualified to perform the duties required of a specific class.  The names of the eligibles may be placed on such registers in order of applicants' final ratings on examinations. Applicants shall be notified by the Personnel Director of their qualifying or failure to qualify for placement on an eligible register. The Personnel Director may remove from an eligible register the name of an applicant who has been placed on such register if it is determined that he/she intentionally made a false statement on his/her application, cheated on his/her examination, or permitted any fraud preventing the impartial execution of the principles of selection through merit.  The Personnel Director shall notify each person of the removal of his/her name and the reason therefore.  When the Director deems it necessary to do so, a new eligible register may be combined with an existing register by placing the names of those eligible from both registers on a combined register.

Sec. 2-50.   (2)   **Promotional or In-House Registers:**  Promotional or in-house registers shall contain the names of those City employees who are qualified for a vacant position. (PBA 9/11/06)

(a)   **Service Credit:**  In establishing promotional or in-house registers, City employees receive a maximum of five (5) points for years of service. The formula for computing service points should be a factor of .5 x years of service up to a maximum of five (5) points. Such service points shall be added to the employee's total test score. (PBA 4/8/96, 11/14/05)

CITY OF DOTHAN/CARNEY 001136
CONFIDENTIAL

(b)   **Time of Service Requirement:** For tested positions with a required study or preparatory period, the initial examination date will be used to determine whether an employee has completed any required time in grade or time in rank or years of experience requirements established for the position. For all other positions, the initial closing date for receiving applications will be used. (PBA 05/12/97, 11/14/05)

(c)   **Examination date:** Any examination date(s) will be set by the Personnel Department allowing for the required study time as set by the testing instrument and recognizing the necessity of maintaining current promotional or in-house registers for high turnover positions. (PBA 01/13/89, 11/14/05)

Sec. 2-50.     (3)   **Re-employment Registers:** City employees separated from the Classified Service in good standing (See §.10.10(1), Resignation) or as a result of layoffs shall be placed on a re-employment register in an order determined by length of service.   Each name on a re-employment register shall be removed from such register at the expiration of one (1) year from the effective date of separation. A person employed under this provision has suffered a break in service and is beginning a new employment period. A person re-employed under this provision must complete the required initial probationary period for the position into which re-employed. A person re-employed under this provision shall have time in rank, seniority or service credit calculated from the most recent date of hire.  (PBA 10/09/06)

Sec. 2-60.     **Personnel Selection Procedures:** The following procedures shall be used in recruiting and selecting City employees.

Sec. 2-60.     (1)   **Written Notice:**   The department head shall give notice in writing to the Personnel Director of any pending position openings, utilizing Personnel Requisition Form #139.

Sec. 2-60.     (2)   **Job Announcements:**     The Personnel Director shall have prepared written job announcements giving the major functions, prerequisites, and minimum qualifications for each position to be filled, and the closing date for receiving applications. §2-60(3) and (4). immediately following may be initiated simultaneously when time is a critical factor in filling a vacancy in the Classified Service.

Sec. 2-60.     (3)   **Promotions:** It is the policy of the City of Dothan to fill classified positions with the most qualified personnel available.   To allow for upward mobility, all vacancies and promotional positions shall be advertised internally utilizing promotional registers;  job announcements for same shall be posted on all departmental bulletin boards. The City of Dothan shall, as an Equal Opportunity Employer, recognize its responsibility to insure equal opportunity in promotional decisions based only on valid and job oriented requirements.

Sec. 2-60.     (4)   **Outside Advertisement:** If an insufficient number of City employees in the Classified Service are interested in and/or qualified for a vacant position, the Personnel Director shall advertise for applicants in whatever manner will provide a suitable number and quality of applicants including:  advertisement of job announcements in local or national news media as appropriate; distribution of same to local employment agencies and/or colleges as required to attract the best qualified individuals; and utilization of eligible and re-employment registers.

Sec. 2-60.     (5)   **Examination Process:** All applications received for vacant positions shall be screened for required and/or basic qualifications.  All qualified applicants shall be examined for qualifications by application review; and/or by written and/or performance tests related to training and experience; and/or by personal interview with the Appointing Authority in cases warranting same.

CITY OF DOTHAN/CARNEY 001137
CONFIDENTIAL

Sec. 2-60.   (6)   **Selection:** After oral interviews are completed, the department head shall examine the merits of all applicants interviewed, and select the person who best meets the job requirements.

Sec. 2-60.   (7)   **Selection Follow-up:** After an applicant has been selected, *notice of the selection shall be sent by the department head to the EEO Officer with Copy to the Personnel Director for his approval. In the event that a qualified applicant is considered for appointment and is not hired, the department head shall be responsible for explaining in detail and in writing his reasons for not hiring the person. This explanation shall be forwarded to the EEO Officer who shall satisfy himself that the reasons given are valid and nondiscriminatory. If he is not satisfied, the matter shall be referred to the Personnel Board, which shall conduct a hearing with notice to all parties. Thereafter, the EEO Officer shall be authorized to direct the appointment of the qualified applicant if the board has determined that the applicant was rejected or discriminated against because of his race, creed, religion, sex, age, mental or physical disability, national origin or political background. Applicants shall not be notified until the above process is completed. (PBA 11/9/92)

Sec. 2-60.   (8)   **Processing:** The new employee shall be referred to the Personnel Department for employment processing at least 24 hours prior to the starting date of employment. The Department Head shall have Personnel Form #110 completed and forwarded to the Personnel Department prior to the new employee's starting date.

Sec 2-67.5.   **Drug and/or Alcohol Testing:** Drug and/or alcohol testing of City employees shall be conducted in accordance with The City of Dothan Drug Testing Policy and Procedures which are incorporated herein by reference. (PBA 8-11-90, 1-9-95, 7/24/95, 3-11-96, 4-14-97, 11/10/97, 2/9/98, 9/13/99, 10/18/99, 4/08/02, 8/09/04, 12/13/04, Restated Policy adopted by PBA 9/11/06)

| COPY OF POLICY ON FILE IN PERSONNEL DEPARTMENT |
| --- |

Sec. 2-70.   **Employment Physical Standards:** The following procedures shall be used to determine applicants' conformance to the City of Dothan employment physical standards.

Sec. 2-70.   (1)   The Safety/Employee Health division shall be responsible for the development of physical standards for the various job classifications in the City of Dothan which are job related and in compliance with all applicable Federal and State laws and City policies concerning employee selection. These physical standards shall become effective when certified to the Personnel Director by the Employee Health Clinic Medical Director. (PBA 12-10-90)

Sec. 2-70.   (2)   All employees including full time, part time, seasonal and rehires shall be certified as meeting the City of Dothan physical standards for the position applied prior to the applicant being processed for employment by the Personnel Department.

Sec. 2-70.   (3)   It shall be the responsibility of the Employee Health Clinic to perform all physical examinations and certify the applicant as meeting the approved physical standards.

Final determination regarding an applicant's failure to meet physical standards shall be made by the Employee Health Clinic Medical Director (PBA 7-13-87). Results of pre-placement physical examinations will be documented on Personnel Form 168, (Screening Form). (PBA 12-10-90, PBA 3/13/00)

*Notice by Memorandum

Page revised 10/09/06

CITY OF DOTHAN/CARNEY 001138
CONFIDENTIAL

Sec. 2-80.    **Working Test Period (Probation):**

Sec. 2-80.    (1)    **Appointed or promoted employees:** Every employee appointed or promoted to a position in the Classified Service or to a common laborer position, shall automatically be placed under probationary status and required to serve a working test period of not less than six (6) months. The length of the working test period or probationary status shall be determined by the class of position and training period established for the position. During this working test period, periodic performance and other job related evaluations showing employee progress shall be made, and the employee shall be kept informed of individual progress. Employees who prove unsatisfactory during the working test period may be removed from the position by the Appointing Authority at any time during this period, subject to the approval of the Personnel Director; however, inadequate job progress and/or deficiencies must be pointed out to the employee and the employee must be given the opportunity to improve and/or correct the inadequacies and/or deficiencies before being removed from the position. The Personnel Director may remove an employee during a working test period if the employee was appointed, promoted or demoted without prejudice as the result of fraud or error. The removal action is usually final. (Revised by Personnel Director 10/22/04)

Sec. 2-80.    (2)    **Demoted employees:** An employee demoted without prejudice shall be placed on probationary status as above if requested by his/her department head and approved by the Personnel Director. (PBA 09-19-88)

Sec. 2-80.    (3)    **Position change.** An employee serving an initial probationary working test period shall not be eligible for promotional and/or in-house vacancies in the Classified Service until satisfactorily completing this initial probationary working test period.

Sec. 2-80.    (4)    **Due process procedure.** Due process procedures as outlined in Regulation IV - DUE PROCESS PROCEDURE, shall be afforded any employee who is removed during an initial probationary working test period. (Approved PBA 6-9-86)

Sec. 2-90.    **Personnel Records:** Employees shall bring to the immediate attention of their supervisors and department heads any changes or errors in personal information such as change of name, phone number, dependent beneficiaries, etc. The department shall then notify the Personnel Department of such changes or errors and refer the employee to the Personnel Department, if necessary, for completion of proper forms. This will enable the City to keep up-to-date personnel information and at the same time assure the employee that items affecting pay, benefits, etc., are handled in a timely and efficient manner. The Personnel Department is the official repository for every employee's individual personnel records and related papers.

CITY OF DOTHAN/CARNEY 001139
CONFIDENTIAL

REGULATION III - DISCIPLINARY POLICY

Sec. 3-10.      **Policy:**

Sec. 3-10.      (1)      **Duty:**  It shall be the duty of all City employees to comply with and to assist in the compliance of the provisions of the Personnel Rules and Regulations.  Employees shall be disciplined for violation of established rules and regulations; such discipline shall be in accordance with procedures established by the Personnel Rules and Regulations.

Sec. 3-10.      (2)      **Date of Record:**  The "date of record" used for disciplinary offenses is the date on which the department head signs the counseling or warning report. (PBA 5/9/94)

Sec. 3-10.      (3)      **Past Practice (Consistent Application):**  Non-enforcement of City Personnel Rules and Regulations can lead employees to believe that violation of specific rules and regulations is acceptable.  Later attempts to enforce these rules and regulations can cause deep-seated discontent and morale problems. Be Consistent.

Sec. 3-10.      (4)      An employee in an active disciplinary progression period for a major category offense shall not be eligible for promotions or in-house position transfers. (PBA 12/12/05)

Sec. 3-10.      (5)      Expired disciplinary actions remain a part of an employee's personnel record. (PBA 12/12/05)

Sec. 3-10.      (6)      An employee's disciplinary history may be reviewed by a selecting appointing authority with the approval of the Personnel Director. (PBA 12/12/05)

Sec. 3-20.      **Classification of Offenses:**  In order that discipline is not disproportionate to the offense, offenses are classified in a progression from minor, less serious type offenses—including Sick Leave Abuse; to major, serious offenses; and intolerable offenses.  (See § 9-60(10), for Abuse of Sick Leave disciplinary action.) The classification of offenses are defined as follows:

Sec. 3-20.      (1)      **Minor, Less Serious Type Offenses:**  Disciplinary actions for violation of "Minor" offenses are designed to be positive in nature, whereby employees are accorded the opportunity to correct their behavior or performance.

        (a)      Disciplinary actions for these type offenses progress through a formal counseling report, written warning report, final warning report or a final warning report with a one to five day suspension without pay. Whether or not an employee receives a final warning report and a suspension without pay shall depend upon whether there are any mitigating circumstances present. For employees who are unable or unwilling to correct their job performance and/or behavior in a satisfactory manner, the last recourse in disciplinary progression for minor type offenses is discharge. Overtime exempt employees can only be suspended in full-day increments for infractions of safety rules of major significance, and certain workplace conduct rules such as sexual harassment and work-place violence. (See §8-70[6]). (PBA 9-9-96, 10/11/04)

        (b)      The disciplinary progression period for "Minor" offenses shall be twelve consecutive months from the date of the last Minor offense violated. In order for an employee to clear his record of "Minor" disciplinary offenses, employee must not commit any minor disciplinary offense for twelve continuous months from the "date of record" of the last Minor disciplinary offense. (PBA 5/9/94)

CITY OF DOTHAN/CARNEY 001140
CONFIDENTIAL

Sec. 3-20.   (2)   Major Offense: "Major" offenses are offenses that are extremely serious in nature but not so serious that a discharge is required upon committing the first such offense.

        (a)   The first "Major" offense committed shall result in a "final warning" and a one (1) to twenty-(20) day suspension without pay.  Overtime exempt employees can only be suspended in full-day increments for infractions of safety rules of major significance, and certain workplace conduct rules such as sexual harassment and work-place violence.  (See §8-70[6]).  Violation of any subsequent "Major" offense within two years shall be grounds for discharge. (PBA 9-9-96, PBA 10/11/04)

        A *"day"*, as referenced in the Civil Service Act of Dothan, Section 22, Suspensions, is defined as 8 hours pay or compensation, or in the case of shift employees 1/10 (.10) of their bi-weekly pay or compensation.  (An alternative method to administer the above provision of the Personnel Rules would be to transfer the suspended employee to 8-hour shifts for the duration of their suspension) (PBA 2/12/01)

        (b)   The disciplinary progression period for "Major" category offenses shall be twenty-four consecutive months from the date of the last "Major" category offense violation. In order for an employee to clear his record of "Major" category offenses, the employee must not commit any major category disciplinary offenses during the twenty-four month progression period. (PBA 5/9/94)   (PBA 2/03/03)

Sec. 3-20.   (3)   **Intolerable Offenses:**  "Intolerable" offenses are those offenses that are of such severe nature that the employer cannot tolerate more than the commission of one such offense.  An employee who violates or commits an "Intolerable" offense shall be subject to discharge (Implemented in accordance with Personnel Regulation IV, DUE PROCESS PROCEDURE).

Sec. 3-30.   **Types of Disciplinary Actions:**

Sec. 3-30.   (1)   **Formal Counseling Report:**  This is the first step in the progressive disciplinary system for "Minor Offenses."  The Formal Counseling Report involves a formal conversation between a supervisor and an employee about a behavior and/or a performance problem.  The supervisor shall explain to the employee the exact nature of the offense(s) violated and shall instruct the employee how the problem can be corrected.  At the time the supervisor meets with the employee, a completed Personnel Form #147 shall be given to the employee for his/her signature and a copy shall be given to the employee.  The original shall be remitted to the Personnel Department and shall become a part of the employee's personnel record.

Sec. 3-30.   (2)   **Written Warning Report:**  A Written Warning Report is the second step in the progressive discipline system for "Minor Offense" violations.  The supervisor shall complete Personnel Form #147 and meet with the employee for a formal discussion of the exact offense(s) the employee violated.  He shall explain to the employee how the problem may be corrected.  The supervisor shall also explain to the employee that further violation of any of the offenses classified as "Minor" within a twelve month period after the date of record for the last "Minor Offense," shall result in a "Final Warning" or a "Final Warning and Suspension Without Pay."  The employee shall sign a copy of the Personnel Form #147 report, which shall become part of the employee's personnel file, with a copy given to the employee and the original forwarded to the Personnel Department.

Sec. 3-30.   (3)   **Final Warning Report or Final Warning Report With A One To Five Day Suspension Without Pay:**  This is the third step in the progressive discipline system for "Minor Offense" violations.  The supervisor shall complete Personnel Form #147 and meet with the employee for a formal discussion of the exact offense(s) violated by the employee. The supervisor shall instruct the employee how he/she may improve his/her performance and/or behavioral problem.

CITY OF DOTHAN/CARNEY 001141
CONFIDENTIAL

The supervisor shall also explain to the employee the severity of a "Final Written Warning" or a "Final Written Warning and Suspension Without Pay" and shall explain to the employee that the commission of any other offense classified as "Minor" within a twelve-month period from the date of this warning report shall be grounds for the employee's discharge. The employee shall sign the completed Personnel Form #147 report; a copy shall be given to the employee and the original forwarded to the Personnel Department and shall become part of the employee's personnel file. (Note: A due process hearing [Determination Hearing] shall be conducted with an employee before any decision is made to suspend an employee without pay—Personnel Regulation IV, DUE PROCESS PROCEDURE.)

Sec. 3-30.    (4)    **Final Warning and One To Twenty Days Suspension Without Pay:** This is the disciplinary action that follows violation of any offense classified as "Major." A due process hearing (Determination Hearing) is conducted with the employee prior to making a decision to implement this disciplinary action (Personnel Regulation IV). The supervisor will meet in a formal discussion with the employee explaining the exact offense(s) the employee violated and the seriousness and consequences of the offense(s). The supervisor shall instruct the employee how he/she may correct his/her performance and/or behavioral problem. The supervisor shall explain to the employee that the violation of any further "Major Offense" within two years from the date of record of this offense is grounds for discharge. At the time of the meeting, the supervisor will have completed the Personnel Form #147 report documenting all points discussed in the formal meeting. He signs the Form and gives a copy to the employee. The original is forwarded to the Personnel Department, which becomes a part of the employee's personnel file. (PBA 5/9/94)

A *"day"*, as referenced in the Civil Service Act of Dothan, Section 22, Suspensions, is defined as 8 hours pay or compensation, or in the case of shift employees 1/10 (.10) of their bi-weekly pay or compensation. (An alternative method to administer the above provision of the Personnel Rules would be to transfer the suspended employee to 8-hour shifts for the duration of their suspension) (PBA 2/12/01)

Sec. 3-30.    (5)    **Discharge:** Discharge is the most severe disciplinary action that may be taken against an employee. A due process hearing (Determination Hearing) must be conducted with an employee prior to making a decision to discharge an employee (Personnel Regulation IV). An employee who does not correct performance and/or behavioral problems after the progressive discipline process for "Minor" and/or "Major Offenses" or an employee who commits an "Intolerable Offense" is indicating an inability or unwillingness to correct his/her behavior. By utilizing progressive discipline, it is hoped that many employee problems can be corrected at an early stage, thereby benefiting both employees and the City by eliminating an employee's discharge from his/her position with the City of Dothan.

Sec. 3-30.    (6)    **Demotion:** See Personnel Rules and Regulations VIII, §8.53. The application of one disciplinary action does not preclude the imposition of another. (Note: A due process hearing [Determination Hearing] must be conducted with an employee prior to a decision being made to demote an employee [Personnel Regulation IV].)

CITY OF DOTHAN/CARNEY 001142
CONFIDENTIAL

Sec. 3-40.    S C H E D U L E   O F   D I S C I P L I N A R Y   P E N A L T I E S: This schedule of Disciplinary Penalties is not all inclusive.  There may be offenses other than those listed for each category of "Minor", "Major", or "Intolerable Offenses" for which the appropriate level of discipline is administered.  These types of offenses shall be explained in full on Personnel Form #147 under "Other" "Other" for each category of offense.  The application of one disciplinary action does not preclude the imposition of another.

Sec. 3-40.    S C H E D U L E   O F   D I S C I P L I N A R Y   P E N A L T I E S: This schedule of Disciplinary Penalties is not all inclusive.  There may be offenses other than those listed for each category of "Minor", "Major", or "Intolerable Offenses" for which the appropriate level of discipline is administered.  These types of offenses shall be explained in full on Personnel Form #147 under "Other" for each category of offense. The application of one disciplinary action does not preclude the imposition of another.

| Sec. 3-41.    MINOR OFENSES | First Offense | Second Offense | Third Offense | Fourth Offense |
|---|---|---|---|---|
| Sec. 3-41. (1)    Failure to give proper notice of an absence which could be anticipated | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41. (2)  Unauthorized absence. | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41. (3)    Failure to report to work as soon as possible from any period of paid time off, included but not limited to, personal illness, extended disability, sickness in family, death in family, jury duty, vacation. | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41. (4)    Tardiness (An employee not at his or her assigned workstation at the beginning of the first hour of his/her workday is considered tardy.) | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41. (5)    Leaving work without permission | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41. (6)    Interfering with the work of others, offensive personal habits which interfere with efficiency. | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41. (7)    Inaccurate, careless, failure to comply with standard procedures, makes recurring errors. | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41. (8)    Unsatisfactory learning rate, unable or unwilling to learn or understand work or new procedures as demonstrated by work standard or performance rating. | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41. (9)    Unreliable, forgets to carry out normal assigned tasks; requires unusual amount of supervisory time. | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41. (10) Uncooperative in dealing with co-workers, customers, supervisors, or public. | Formal Counseling | | Final Warning or Final Warning and Suspension | Discharge |

CITY OF DOTHAN/CARNEY 001143
CONFIDENTIAL

Reg.III, continued.

| Sec. 3-41.      MINOR OFFENSES continued | First Offense | Second Offense | Third Offense | Fourth Offense |
|---|---|---|---|---|
| Sec. 3-41. (11)    Improper use of, or failure to exercise, supervisory authority and responsibility. | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41. (12)    Discourteous treatment of the public, customers or co-workers, | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41. (13)    Violation of routine safety practices, failure to report a work related injury within a twenty-four hour period. | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41. (14)    Improper use or care of city property. | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41. (15)    Political solicitation during working time. | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41. (16)    Violation of dress codes as prescribed by department policy. | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41. (17)    Language or conduct that is abusive or offensive to members of the opposite sex. | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41. (18)    Other; explain in detail on Personnel Form #147 the offenses(s) committed by the employee. | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |

CITY OF DOTHAN/CARNEY 001144
CONFIDENTIAL

**Reg.III, continued.**

| Sec. 3-42.            MAJOR OFFENSES | First Offense | Second Offense | Third Offense | Fourth Offense |
|---|---|---|---|---|
| Sec. 3-42. (1)    Negligent damage to City property or to property of others. | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (2)    Dangerous horseplay, threatening physical harm to or otherwise endangering others. | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (3)    Serious violations of safety practices which could have dangerous consequences. | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (4)    Serious violation of city ordinances, administrative regulations, or department rules which could have dangerous consequences. | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (5)    Sexual harassment as defined in Personnel Rules and Regulations XI, Sec. 11-80. | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (6)    Action(s), or lack of action(s) that could endanger the life or health of self or others, that could cause undue financial loss to the City, negligence in carrying out assigned tasks or duties or responsibilities of one's position. | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (7)    Gambling or unauthorized loaning (loan sharking) of money while on the job. | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (8)    Sleeping on the job. | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (9)    Possession of alcoholic beverages with no proof of intention to consume while on the job. | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (10)    Careless misrepresentation of work records. | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (11)    Irresponsible use of City credit, purchasing authority. | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (12)    Delaying or restricting City operations or influencing others to do so. | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (13)    Misconduct, contravention of criminal law, or any disgraceful conduct which reflects unfavorably on the City as an employer or public entity. | Final Warning and Suspension | Discharge | | |

CITY OF DOTHAN/CARNEY 001145
CONFIDENTIAL

Reg.III, continued.

| Sec. 3-42. MAJOR OFFENSES continued | First Offense | Second Offense | Third Offense | Fourth Offense |
|---|---|---|---|---|
| Sec. 3-42. (14)    Insubordination | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (15)    Release of confidential or restricted information. | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (16)    First time loss of driver's license where driver's license is a requirement for the position in which employed.  License must be reinstated within ninety days, otherwise employee will be terminated after due process § 3-43. (20). (PBA 1-13-92, 1-9-95) | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (17)    Failure to report for emergency call-out or standby duty in maximum time allowed as specified at Personnel Regulation VIII, § 8-80 (PBA 1-9-95) | Final Warning and Suspension | Discharge | | |
| Sec.  3-42.(18)    Testing positive for alcohol (0.02 to 0.03999 for CDL/Public Safety/Safety Sensitive positions; 0.02 to 0.07999 for all other positions) in accordance with City of Dothan Drug and Alcohol Testing Policy. (PBA 11-10-97) | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (19)    Other, explain in detail on Personnel Form #153 the offense(s) committed by the employee. (PBA 1-9-95) | Final Warning and Suspension | Discharge | | |

Page revised 11-10-97 corrected 12/19/97

CITY OF DOTHAN/CARNEY 001146
CONFIDENTIAL

Reg.III, continued.

| Sec. 3-43.          INTOLERABLE OFFENSES | First Offense | Second Offense | Third Offense | Fourth Offense |
|---|---|---|---|---|
| Sec. 3-43. (1)     Possession and/or use of controlled, non-prescribed dangerous drugs, while on the facility or on the job by other than sworn law enforcement officers in the line of duty performing evidence seizure or undercover operations of the Dothan Police Department. | Discharge | | | |
| Sec. 3-43. (2)     Use of alcohol while on the job or under the influence of alcohol while on the job | Discharge | | | |
| Sec. 3-43. (3)     Driving a City vehicle while under the influence of intoxicants such as alcohol, non-prescribed drugs, controlled substances. | Discharge | | | |
| Sec. 3-43. (4)     Actual physical possession and/or use of a firearm or force against another person while on City property by other than sworn law enforcement officers operating within the line of duty (NOTE: With the exception of properly permitted firearms secured in privately owned vehicles which are parked in public parking lots). | Discharge | | | |
| Sec. 3-43. (5)     Deliberate falsification of records and/or personal misrepresentation of statements given to a supervisor, officials, the public or Boards. | Discharge | | | |
| Sec. 3-43. (6)     Falsifying employment application, employee records or medical records. | Discharge | | | |
| Sec. 3-43. (7)     Punching another employee's time card or deliberate falsification of time cards. | Discharge | | | |
| Sec. 3-43. (8)     Willful and deliberate damage to city property, the public, or the property of co-employees. | Discharge | | | |
| Sec. 3-43. (9)     Violation of City of Dothan Drug Testing Policy and Procedures approved by Personnel Board 4/08/02 as amended. | Discharge | | | |
| Sec. 3-43. (10)    Theft of City property, property of the public or co-employees. | Discharge | | | |

CITY OF DOTHAN/CARNEY 001147
CONFIDENTIAL

Reg.III, continued.

| Sec. 3-43.        INTOLERABLE OFFENSES continued | First Offense | Second Offense | Third Offense | Fourth Offense |
|---|---|---|---|---|
| Sec. 3-43. (11)    Membership in any organization which advocates the overthrow of the government of the United States by force or violence. | Discharge | | | |
| Sec. 3-43. (12)    Acceptance of gratuities for personal favors or personal gain as defined by the ethics laws of the State of Alabama | Discharge | | | |
| Sec. 3-43. (13)    Refusal to be examined by a City authorized, fully licensed physician when so directed. | Discharge | | | |
| Sec. 3-43. (14)    Prohibited political activity as defined in Section 11-80-6, Code of Alabama, 1975 as amended. | Discharge | | | |
| Sec. 3-43. (15)    Repeated sexual harassment as defined by Personnel Rules and Regulations XI, §11-.80. | Discharge | | | |
| Sec. 3-43. (16)    Abandoning the job, unauthorized absence for five consecutive work days. | Discharge | | | |
| Sec. 3-43. (17)    Unsatisfactory work performance during the probationary period as evidenced by the employee's job performance evaluation reports. | Discharge | | | |
| Sec. 3-43. (18)    Gross insubordination. | Discharge | | | |
| Sec. 3-43. (19)    Other; Explain in detail on Personnel Form #153 the offense(s) committed by the employee. | Discharge | | | |
| Sec. 3-43. (20)    Where driver's license is a requirement for the position in which employed, second loss of driver's license within a two-year period of time or loss for a period greater than ninety days. (PBA 1-13-92). | Discharge | | | |

CITY OF DOTHAN/CARNEY 001148
CONFIDENTIAL

Reg.III, continued.

| Sec. 3-44. | SICK LEAVE ABUSE OFFENSES (See §9-60(10) for Implementation) | First Offense | Second Offense | Third Offense | Fourth Offense |
|---|---|---|---|---|---|
| Sec. 3-44. (1)   Employee has used eight (8) occurrences of unscheduled sick leave in a twelve (12) month period, and/or | | Formal Counseling | First Written Warning | Final Written Warning/Discharge | |
| Sec. 3-44. (2)   Where there is a consistent pattern of utilization of sick leave. (PBA 5/9/94) | | Formal Counseling | First Written Warning | Final Written Warning/Discharge | |

Sec. 3-45     **VEHICLE ACCIDENT POINT SCALE AND DISCIPLINARY PROGRESSION.**

> (1)     Employees accumulating vehicle accident points under the City of Dothan Motor Vehicle Operations Policy, adopted herein by reference, will be subject to the following disciplinary action(s), administered in accordance with this Regulation III and Regulation IV – Due Process Procedure:

> | | |
> |---|---|
> | 1 point | Formal Counseling Report |
> | 2 points | One (1) Day Suspension |
> | 3 points | Three (3) Day Suspension |
> | 4 points | Five (5) Day Suspension |
> | 5 points | Ten (10) Day Suspension |
> | Over 5 points | 11 – 20 Day Suspension or Termination |

> (2)     The disciplinary action progression under this Vehicle Accident Point scale is independent of other disciplinary action progressions authorized by these Personnel Rules and Regulations. (PBM 9-10-01)

Sec. 3-50.     **Appeal of Disciplinary Action:**   Any Classified employee or laborer, other than those under probationary status, may appeal any disciplinary action taken by following the procedure outlined in REGULATION V - GRIEVANCE AND APPEAL PROCEDURE or by following the procedures in Sections 21 and 22 of "the Civil Service Act of Dothan" outlined below.

Sec. 3-50.     (1)     **Discharges:**   A discharged employee may, within ten (10) days after receipt of the discharge notice, appeal the action of the department head to the Personnel Board, by filing a written answer to the chairman with a demand for a hearing.  It shall be the duty of the Board to fix a time and place for hearing the appeal, and to give notice thereof to the employee and the department head, which appeal shall be heard by the Board on a date not later than thirty (30) days from the date the appeal is taken.  The Personnel Board shall have the authority, after an appropriate hearing, and based upon a finding of the facts and applicable law involved, to reduce the severity of the disciplinary action taken by the department head, and issue such orders and decrees with reference thereto as may be just and reasonable, and for the best interest of the City. (rev. CSA 5/14/92)

Sec. 3-50.     (2)     **Suspensions:**   A suspended employee may, within ten (10) days from the date of receipt of the suspension notice, file with the Personnel Board and the department head a written answer or explanation of the assigned charges and such answer shall be preserved as a part of the Public Record and the Board may, for cause shown, set aside such suspension order. (PBA 4-8-85)

Page revised 09/10/01, 11/08/04

CITY OF DOTHAN/CARNEY 001149
CONFIDENTIAL

REGULATION IV - DUE PROCESS PROCEDURE

Sec. 4-10.   **Policy:** When disciplinary action is indicated, it is necessary that such action be administered timely, justly, uniformly, and impartially.

Sec. 4-20.   **Procedure:** Whenever any such disciplinary action could result in suspension, demotion, or dismissal of a classified employee or laborer, the following procedures shall be followed to insure that each employee in fact receives "due process" in accordance with legal precedents.

Sec. 4-20.   (1)   Department heads, as appointing authorities, shall conduct determination hearings for their respective departments.  If a department head is absent for any reason, the individual designated as acting department head is to conduct the hearing.   For uniformity and convenience, standard forms have been prepared and are to be used.

Sec. 4-20.   (2)   The department head shall have completed Personnel Forms #147 (Employee Disciplinary Action Report Form) and #153 (Notice of Determination Hearing).  The notices shall be served by the department head or through the Dothan Police Department to the affected employee at least twenty-four (24) hours prior to the date of the hearing.  (PBA 6/8/92)

Sec. 4-20.   (3)   The Personnel Director or his designated representative shall be present at the hearing and assure that Personnel Form #154 (Interview Questions Prior to Determination Hearing) is completed before the hearing begins.

Sec. 4-20.   (4)   Within three (3) working days after the hearing is conducted, the department head shall render a decision based on the facts in the case, and notification of the decision (completed Personnel Form #155 - Decision of Determination Hearing) shall be served to the affected employee by the department head or through the Dothan Police Department.

Sec. 4-20.   (5)   In all cases, Forms #147, #153 and #155 shall be completed in triplicate.  The affected employee shall receive a copy, the department head shall be furnished a copy, and the original shall be retained by the Personnel Director to be placed in the employee's 201 File.

Sec. 4-20.   (6)   In the event of a particularly violent action or intolerable offense on the part of an employee, e.g. fighting, destruction of City property, gross insubordination, etc. the employee shall be removed from the job and placed on administrative leave with pay until the determination hearing is held and the decision is made.

CITY OF DOTHAN/CARNEY 001150
CONFIDENTIAL

REGULATION V - GRIEVANCE AND APPEAL PROCEDURE

Sec. 5-10.   Policy: It is the Policy of the Personnel Board to provide equitable treatment of all its employees. In order that local government can meet the needs of its citizens, it is imperative that there exist an orderly and constructive employee-employer relationship. In order to insure that such a relationship continues to exist, there must be prompt consideration and equitable adjustment of employee grievances.

Sec. 5-20.   Definition: A grievance is defined as a dispute or complaint by any classified employee with regard to the administration of policies, rules, procedures or other aspects of the working relationship with the City. Actual policy, rules and established procedure cannot be grieved. A grievable issue exists where there is a complaint regarding the administration of such policy, rule or procedure. Grievances shall include any dispute concerning

- the interpretation or application of policies, rules or procedures governing disciplinary action, performance ratings, attendance and hours of work, working conditions, and
- allegations of personal bias or reprisal, as well as
- any other matters which are germane to the employee's employment, and which are not specifically reserved to the Personnel Board under the law and rules of the Personnel Board, or are not reserved to the various governmental bodies under any statutory provision.

**Non Grievable Issues:** Matters dealing with classification, pay compensation and benefits and actions specifically set forth in the Civil Service act of Dothan and Personnel Board rules and regulations shall not be considered under grievance procedures, but shall be addressed in accordance with the provision set forth in the Civil Service Act and in the rules and regulations. Any question as to what constitutes a grievance or what should be processed as a grievance or what should be processed as a matter subject to the rules and regulations, shall be determined by the Personnel Director, subject to review by the Personnel Board.

Sec. 5-30.   Procedure: Any classified employee who is not under initial probationary status in accordance with the Policy outlined above may initiate a grievance. In the presentation of grievances, grievants are assured of freedom from restraint, interference, discrimination or reprisal. All adjudication of grievances processed under this rule shall be retroactive until the time the grievance occurred or as modified by the Personnel Board. The grievants may be represented by counsel only in step Two-B (Section 5-30.(2) [b]) of the grievance procedure.

Sec. 5-30.   (1)   **Step One:**   An employee who desires to initiate a Grievance must file a complaint in writing (Personnel Form Number 118), within ten working days after the date of the incident giving rise to the complaint, with the supervisor and furnish a copy thereof to the department head and the City Manager, unless the complaint is against the supervisor, in which case the grievant bypasses the supervisor and files the grievance directly with the department head. The department head shall, within five working days thereafter, arrange a conference on the grievance with the grievants, with or without the supervisor, and such other representatives as the department head and the grievants may agree upon in order to ascertain all the facts in the grievance. Both the department head and the grievant shall make a good faith effort to resolve the grievance. Within ten working days after such conference, the department head shall advise the grievant in writing of the disposition of the grievance, a copy of which shall be transmitted to the Personnel Director.

If the disposition of the grievance from the department head has been filed with the Personnel Director and served on the grievant as herein prescribed, and the disposition is not satisfactory to the grievant, the grievant may appeal the grievance to step two within five working days after such report has been filed. Unless the grievance shall be appealed to step two, the grievant shall be barred from any further proceedings with respect to such grievance.

CITY OF DOTHAN/CARNEY 001151
CONFIDENTIAL

Sec. 5-30.    (2)    **Step Two: Appeal to the Personnel Board.** In order for a grievance to be considered in step two, it must be presented in writing utilizing personnel form number 118 by the grievant to the Personnel Director with a copy to the department head within the time prescribed in step one above. The grievance as presented to the Personnel director shall consist of the statement of the grievance, the statement of the supervisor, if any, and the statement of the department head.

(a)    **Pre-hearing fact finding investigation.** Within the period of twenty working days, the Personnel Department will conduct a fact finding investigation in order to ascertain for the Personnel Board the pertinent facts involved in the grievance. The Personnel Director or his/her designate shall obtain from the grievant and the department head a list of all individuals or witnesses involved in the grievance. The Personnel Director or his/her designate shall interview or obtain statements from the grievant and the department head and other witnesses to the grievance as noted above. The Personnel Director shall determine from the facts gathered from the investigation of the grievance what policies, rules or procedures are in question concerning the grievance and, if the grievance meets the criteria of the grievance policy, definition and procedures. The Personnel Director shall have compiled a report of all the findings for and certify the report to the Personnel Board along with a copy to the grievant and the department head.

(b)    **Personnel Board.** Within twenty working days of receiving the Personnel Director's report, the Personnel Board shall convene a meeting with notices to all parties of the grievance to hear testimony, if any, as to the disposition of the grievance and whether or not to proceed with a Personnel Board Hearing.

If it is the decision of the Personnel Board to hear the grievance, the Board shall schedule a public hearing on the grievance as early as practical. Notice of the date, time and place shall be given to the grievant and the appointing authority (Department Head). The parties may be represented by counsel. The Board shall not be bound by technical rules of evidence and court but shall seek diligently all the information and evidence bearing on the merits of the case.

Sec. 5-40.    **Attendance of witnesses.** It shall be the duty of the Personnel Director to subpoena witnesses for or against the employee upon written request of either party to the hearing. Civil Service employees under the jurisdiction of the Personnel Board shall be required to attend and testify without subpoena.

Sec. 5-50.    **Personnel Board Hearing:** The hearing before the Board shall be de novo, and the Board may rescind, modify, alter or affirm the action of the appointing authority, if any, or may impose such additional or different action as may be warranted by the evidence adduced at the hearing. Within thirty working days after the conclusion of the hearing, the Board shall render its decision in the form of a Personnel Board Order. Copies of the decision shall be delivered to all parties at interest. The Board shall require that all testimony introduced at hearings shall be under oath and recorded and transcribed by a certified Court Reporter and that such record shall be preserved and filed in the Personnel Department. Any party to the hearing may request copies of the transcript, provided all costs of such transcription is borne by the party requesting same.

Page revised 8/11/97

CITY OF DOTHAN/CARNEY 001152
CONFIDENTIAL

REGULATION VII - JOB PERFORMANCE EVALUATIONS

Sec. 7-10.    **Purpose:**  The Personnel Director shall establish, in cooperation with department heads, a job performance evaluation system for each position classification in the Classified Service based on standards of employment and output of employees. The system may be amended periodically as necessity arises. Its main objective is to provide employees with sufficient information to enable them to improve their job performance. Job performance evaluation ratings shall be considered in such manner and with such weight as hereby set forth in the Personnel Rules and Regulations: (PBA 5-11-09)

- In determining pay increases or decreases within the established limits,
- As a factor in promotional tests,
- As a factor in determining layoffs when forces are reduced because of insufficient funds or work,
- In determining the order in which names are to be placed on a reemployment register, and
- As a means of discovering employees who should be promoted, demoted, transferred or dismissed.

Sec. 7-20.    **Procedure:**  Job performance evaluations shall be made by the employee's supervisor.  All adverse evaluations shall include recommendations for corrective action for the employee. After review and final approval of the approving authority all evaluations shall be discussed with the employee and shall be signed by the employee following the conclusion of such discussions. In the event that an employee disagrees with an evaluation rating, he/she shall have the right to utilize the Grievance and Appeal Procedure. All job performance evaluations shall become a part of the individual's personnel records. (PBA 09-19-88)

Sec. 7-30.    **Period of Evaluation:**  Job performance evaluations shall be made in writing at such periodic intervals as the Personnel Director deems necessary to effectively evaluate an employee's performance during the probationary or working test period established for the class of position held.  Upon successful completion of the probationary or working test period, job performance evaluations shall be made in writing at least annually. (See §2-80. -  Working Test Period). (Revised PBA 6-9-86)

Sec. 7-40.    **Unsatisfactory Job Performance Post Probationary Employees:** If during the period of evaluation an employee's job performance is unsatisfactory, the employee's department head and evaluating supervisor shall immediately meet with the employee in order to determine the areas in which the employee fails to meet the expected levels of job performance and identify ways in which the employee may be able to improve his or her job performance.

The employee will be placed on a performance improvement plan and reevaluated at the completion of six months.  Failure of the employee to improve job performance to a satisfactory level at the completion of the six-month reevaluation period shall be grounds for discharge. (PBA 12-10-90, PBA 12/08/08)

A performance improvement plan allows an employee to have a performance planning session, coaching session, and final appraisal during this special evaluation period to ascertain such ability to maintain employment.  (PBA 12/08/08)

An employee on this type of special evaluation schedule will not be eligible for promotion or transfer or other job action, including pay increases, until the employee has completed the six-month special evaluation schedule with a satisfactory or higher rating. (PBA 8-12-02, 5-11-09)

Sec. 7-50.    **Confidentiality:** Job performance evaluations shall be confidential and shall be made available to only:

- The employee,
- the employee's supervisor and department head,
- the Personnel Director or representative, and the Personnel Board.

Page -24-

CITY OF DOTHAN/CARNEY 001155
CONFIDENTIAL

REGULATION IX - LEAVES OF ABSENCE

Sec. 9-10.    **General Policy:**

Sec. 9-10.    (1)    **Official Leaves:** Holiday leave, vacation leave, sick leave, military leave and civil leave are officially established leaves of absence and shall be granted by department heads in accordance with this Division, Regulation IX, of the Personnel Rules and Regulations.

Sec. 9-10.    (2)    **Other:** Periods of unpaid leave up to two (2) weeks shall be requested in writing by the employee and may be granted by department heads on a case by case basis, subject to the approval of the Personnel Director. Periods of unpaid leave exceeding two (2) weeks must be requested in writing by the employee, approved by the department head and the Personnel Board. (PBA 8/15/05).

Sec. 9-10.    (3)    **Maternity Leave:** Pregnancy shall be treated as any other illness. Sick leave and, if necessary, vacation leave may be utilized for this purpose.

Sec. 9-20.    **Holiday Leave:** Announced holidays for all employees are New Year's Day, Martin Luther King's Birthday, Memorial Day, Independence Day, Labor Day, Veteran's Day, Thanksgiving Day, day after Thanksgiving, Christmas Day, and any other day the Personnel Board proclaims a holiday. Whenever possible, when a holiday falls on a Saturday or Sunday, the following Monday shall be declared a holiday for City employees. Employees required to be on regular duty on an announced holiday shall receive compensation according to §8-90, Holiday Pay.

Sec. 9-30.    **Vacation Leave:** The City provides eligible employees with paid vacation leave benefits. All vacation leave shall be computed and reported in hours. Eight (8) hours leave equals one (1) working day, based on the eight-(8) hour, five-(5) day work week. (PBA 6/11/07)

Sec. 9-30.    (1)    **Accrual:** Each department head, classified employee and full time laborer shall accrue vacation leave as follows: (PBA 6-8-87, PBA 6/11/07)

    (a)    Employees with continuous service up to and through ten (10) years shall accrue four (4) hours vacation leave per each completed pay period (except the third pay period of any month) not to exceed a maximum of ninety-six (96) hours per year.

    (b)    Employees with over ten (10) years continuous service shall accrue six (6) hours vacation leave per each completed pay period (except the third pay period of any month) not to exceed a maximum of one hundred forty-four (144) hours per year.

    (c)    The pay period an employee becomes eligible to *accrue* six (6) vacation hours is the pay period after his/her ten-year anniversary hire date falls, except the third pay period of any month. Should an employee's ten-year anniversary hire date fall the pay period before or during a third pay period, his/her accumulation of six (6) vacation hours shall begin the pay period following the third pay period. (PBA 6/11/07)

    (d)    Employees hired during the first week of a pay period (except the third pay period of any month) shall accrue four (4) hours vacation leave for that pay period. Employees hired during the second week of a pay period begin accumulating four (4) hours vacation leave the following pay period unless that following pay period is the third pay period of any month, in which case accumulation begins the first pay period of the following month. Employees hired during the third pay period of any month begin accumulating four (4) hours vacation leave the following pay period. (PBA 6-8-87, PBA 6/11/07)

CITY OF DOTHAN/CARNEY 001164
CONFIDENTIAL

## REGULATION X - SEPARATIONS

Sec. 10-10.    **Types of Separations:**   All separations of classified and unclassified employees shall be designated as one of the following types and shall be accomplished in the manner indicated: resignation, compulsory resignation, quit without written notice, disability, death, retirement, layoff or dismissal.   Department heads shall furnish the Personnel Director a Notice of Termination (Personnel Form #111) no later than one (1) working day (24 hours) following the effective date of separation.   The Personnel Department will not process any related paperwork including personnel requisitions and retirement withdrawals until this Notice Of Termination has been received.

Sec. 10-10.    (1)    **Resignation:** An employee wishing to leave City employment in good standing shall file with his/her department head, at least one week before leaving, a written resignation stating the date the resignation shall become effective and the reason(s) for leaving.  Failure to comply with this procedure may be considered cause for denying said employee future employment with the City.  Department heads shall forward a copy of all written resignations to the Personnel Director within twenty-four (24) hours after receipt.

Sec. 10-10.    (2)    **Compulsory Resignation:**  Unauthorized absence from work for a period of five (5) consecutive working days shall be considered a compulsory resignation.

Sec. 10-10.    (3)    **Quit Without Written Notice:**  Quitting the job without written notice or other proper notice. (PBA 8-9-82)

Sec. 10-10.    (4)    **Disability:** An employee may be separated for disability when he/she cannot perform the required duties because of a physical or mental impairment.  Actions may be initiated by the employee or by the City; however, all cases must be supported by medical evidence acceptable to the Personnel Director.  Disability resulting from an on-the-job injury may lead to retirement of the employee.

Sec. 10-10.    (5)    **Death:** Separation shall become effective as of the date of death.  All compensation due in accordance with §10-20, Rights of Employees at Separation shall be paid to the estate of the employee or to the surviving spouse as may be required by law.

Sec. 10-10.    (6)    **Retirement:** Eligible employees (See §2.20, Employee Status) are automatically covered under the Employees' Retirement Systems of Alabama as a condition of employment.  (PBA 10/11/04)

        (a)    Payroll deductions for the retirement plan and Social Security (FICA) are automatically deducted at the prescribed percentages from each payroll check.

        (b)    For more details on the retirement system, please refer to Employees' Retirement System of Alabama Member Handbook. (PBA 10/11/04)

        (c)    No right to the receipt of any post employment benefit is conferred or guaranteed to any employee. Post employment benefits available to retiring employees (retiring under the provisions of the Employees' Retirement Systems of Alabama) may include group health, group dental and life insurance. Eligibility for the post employment benefits are determined by the provisions of each benefit plan as said plan(s) has been approved and or amended by the Governing Body and provided the retiring employee pays the required premium. Any employee hired after January 1, 2009 is solely responsible for the full cost of any post employment benefit upon retiring from employment. (PBA 11/10/08)

Page revised 10/11/04, 11/10/08

CITY OF DOTHAN/CARNEY 001176
CONFIDENTIAL

Sec. 10-10.    (7)    **Layoff:** A department head may lay off any employee whenever such action is made necessary by reason of shortage of work or funds, the abolition of a position, or because of changes in organization; however, no regular employee shall be laid off while there are temporary, provisional, or probationary employees serving in the same class of positions for which the regular employee is eligible and available. The Personnel Director shall prescribe layoff procedures to include consideration of length of service. The names of employees laid off for any of the above reasons shall be placed on a reemployment register for a period of one year. If an abolished position is recreated within one year, individuals laid off shall be reemployed according to their position on the reemployment register.

Sec. 10-10.    (8)    **Dismissal:** REGULATION IV - DUE PROCESS PROCEDURE must be followed in any dismissal case involving classified or unclassified employees, to include part time, temporary/seasonal or probationary employees. (See §2-80. Working Test Period for additional information regarding the dismissal of probationary employees.) (Revised PD 7-31-96)

Page revised 7/31/96, 10/11/04

CITY OF DOTHAN/CARNEY 001177
CONFIDENTIAL

(a)  If the activity is of a criminal nature, the City Manager and the ranking officer on duty in the Police Department shall be notified. The Police Department shall conduct an investigation to determine the validity of the information. If the information is valid, normal investigative procedures shall be followed. The Chief of Police or officer in charge shall keep the City Manager appraised as the investigation progresses.

(b)  The Office of the Police Chief shall complete a report of the investigation and submit a copy to the City Manager and the Personnel Director.

(c)  If the information is of a non-criminal nature, the Department Head shall notify the City Manager and the Personnel Director, who shall evaluate the information and order or conduct an investigation if deemed necessary. The City Manager shall have the prerogative of utilizing the Police Department to assist with or conduct the investigation. In any event, a report shall be compiled by the investigating department and submitted to the City Manager and Personnel Director.

Sec. 11-60.  (3)  **Police Department Internal Investigations:**

(a)  In the event an investigation of any criminal offense or misconduct involving Police Department personnel becomes necessary, the incident shall be investigated by the Office of the Police Chief.

(b)  If the incident does not come within the jurisdiction of the department by statute or City of Dothan Merit System, or if the incident is of a nature whereby another agency would have offense jurisdiction outside the department's jurisdiction, the proper agency shall be notified and department personnel shall cooperate with the authorized agency.

(c)  In any investigation whereby the expertise or resources of another agency can or might assist or expedite the investigation, the services of that agency may be requested and utilized. (PBA 6-13-83)

Sec. 11-70.  **Firearms:** With the exception of duly sworn law enforcement officers, all City employees are expressly prohibited from carrying firearms (pistols, guns, etc.), concealed or openly displayed, into any City owned or leased facility or property. Under certain conditions, work crews and/or survey parties may be authorized to carry a weapon (shotgun) when working in areas where snakes or other animals may endanger the safety or life of employees. Department Heads only have the authority to approve a request from their crew foreman to carry a weapon when working in such infested and hazardous areas.

Sec. 11-80  **Harassment, Threats, and Violence Policy:** (Rev. 10-18-99)

Sec. 11-80.  (1)  **Purpose:** The purpose of this policy is to help assure a working environment where all employees can maximize productivity in their jobs by eliminating offensive or threatening conduct that might interfere with maximum productivity. There are several types of anti-social behavior that can interfere with this goal including: (1) sexual harassment; (2) racial, religious and other forms of harassment; and (3) Violence and threats of violence. All of these types of behavior can distract employees from their job-related duties, and it is the policy of the City of Dothan to prohibit and eliminate these types of behaviors.

CITY OF DOTHAN/CARNEY 001180
CONFIDENTIAL

Personnel Rules and Regulations

Sec. 11-80.   (2)   Definitions:

(a)   **Sexual Harassment:**   Sexual Harassment can include:

1.   Physical assaults or physical conduct that is sexual in nature (touching, pinching, or brushing against another's body).

2.   Unwelcome sexual advances, propositions, comments, "kidding," "teasing," or requests for sexual favors.

3.   Sexual displays or publications such as calendars, cartoons, graffiti, or computer pornography.

4.   Other verbal or physical conduct of a sexual nature that would interfere with an individual's work performance, or create an intimidating, hostile or offensive work environment.

5.   Retaliation for complaints of harassment.

(b)   **Racial, Religious, National Origin, Disability, or Age Harassment:** These types of harassment can include:

1.   Any conduct based on race, religion, national origin, disability, or age that makes an employee uncomfortable at work or which interferes with an employee's ability to perform the job.

2.   Jokes which refer to race, religion, national origin, disability, or which portray age in a negative light.

3.   The posting or distribution of cartoons, drawings, or any other material which adversely reflects on a person's race, religion, national origin, disability, or age.

4.   The use of "slurs" or other offensive language.

5.   Practical jokes, horseplay, or teasing which tend to make fun of a person's race, religion, national origin, disability, or which reflect negatively on a person's age.

6.   Retaliation for complaints of harassment.

(c)   **Violence and Threats of Violence.** This type of anti-social behavior can include:

1.   Any conduct which involves the offensive touching of another employee.

2.   Intimidating or threatening gestures or body posture that reflect possible violence or a threat of violence.

3.   Verbal threats to "get even," "go postal," or similar statements that cause an employee to fear possible harm by another employee.

CITY OF DOTHAN/CARNEY 001181
CONFIDENTIAL

Sec. 11-80.  (3)   **What To Do If You Experience Harassment, Threats Of Violence, Or Violent Behavior:** These types of anti-social behaviors can be blatant or they can be subtle. Despite the definitions given above, it is sometimes difficult to recognize whether particular conduct falls within these types of anti-social behaviors. Any employee who feels that he or she is the victim of any of these types of anti-social behaviors should report the conduct immediately. Further, any employee who observes conduct that could be a violation of this policy should report that conduct promptly.

Reports should be made to your supervisor, your Department Head, the EEO Officer, the Assistant Personnel Director or Personnel Analyst, or the Personnel Director. Upon receipt of a harassment complaint by a supervisor, department head, EEO Officer or Personnel Analyst, the Personnel Director shall be notified immediately. While verbal reports will be accepted, in most cases an employee reporting these types of behaviors will be asked to make a written report providing as much detail as possible concerning who has engaged in the behavior, when, where, and exactly what was done or said.

Sec. 11-80.  (4)   **How Reports Will Be Handled:** Reports of anti-social behavior will be promptly investigated. In most cases, the investigators will meet with the person making the report to get a complete and accurate statement concerning the nature of the problem. The investigators will then normally meet with the accused employees and other potential witnesses. Once the facts have been gathered, the City will try to address and eliminate any problems through one or more of the following actions: (1) verbal counseling sessions with those committing possible anti-social behavior; (2) group meetings or training sessions; (3) referrals to formal counseling; (4) written disciplinary action or suspension; or (5) terminations of employment.

In most cases, the employee reporting the anti-social behavior will be informed of the results of the investigation and of the remedial action taken.

While all reports of anti-social behavior will be treated as confidentially as possible, the requirement to conduct an impartial investigation means that complete confidentiality cannot be assured.

Sec. 11-80.  (5)   **Your Role and Responsibility:**

First and foremost, each of us is responsible for our own conduct and should avoid the types of behaviors addressed in this policy.

Second, each of us has a responsibility to report anti-social behavior that we experience or observe.

With your help in enforcing this policy, we can make our City a better and more productive place to work for all employees.

CITY OF DOTHAN/CARNEY 001182
CONFIDENTIAL

**The City of Dothan, Alabama**

# Civil Service Act



\CSC\CIVSERV.ACT

i

DEFENDANT'S
EXHIBIT

Cloyd    26

CITY OF DOTHAN/CARNEY 001115
CONFIDENTIAL

TABLE OF CONTENTS

Section 2.   DEFINITIONS                                                          -3-

Section 3.   UNCLASSIFIED SERVICE                                                 -4-

Section 4.   PERSONNEL DEPARTMENT CREATED                                         -4-

Section 5.   PURPOSES OF PERSONNEL DEPARTMENT                                     -5-

Section 6.   CITIZENS SUPERVISORY COMMITTEE                                   -5-

Section 7. ALTERNATE METHOD OF SELECTING BOARD                                    -6-

Section 8.  PERSONNEL BOARD                                                       -6-

Section 9. PERSONNEL DIRECTOR                                                     7-

Section 10.  RULES AND REGULATIONS                                               -7-

Section 11. CLASSIFICATION OF POSITIONS                                           -8-

Section 12. COMPENSATION PLAN                                                     -8-

Section 13.  TESTS                                                               -8-

Section 14. FILLING VACANCIES                                                -9-

Section 15.  TRANSFER                                                            -10-

Section 16.  DEMOTIONS                                                           -10-

Section 17.  PROVISIONAL APPOINTMENTS                                            -10-

Section 18.  WORKING TEST PERIOD                                                 -10-

Section 19.  SERVICE RATINGS                                                     -11-

Section 20.  LAY-OFFS                                                            -11-

Section 21.  DISCHARGES                                                          -11-

Section 22.  SUSPENSIONS                                                         -12-

Section 23.  POLITICAL ACTIVITIES PROHIBITED                                 -12-

Section 24.  POLITICAL ACTIVITIES OF DEPARTMENT HEADS PROHIBITED                 -12-

Section 25.  INVESTIGATIONS                                                      -13-

Section 26.  CORRUPT PRACTICES                                                   -13-

Section 27.  CERTIFICATIONS OF PAYROLLS                                          -13-

\CSC\CIVSERV.ACT                                    ii

CITY OF DOTHAN/CARNEY 001116
CONFIDENTIAL

Section 28. ATTENDANCE OF WITNESSES: FEES: FALSE OATHS      -14-

Section 29. EXPENSES OF THE DEPARTMENT      -14-

Section 30. USE OF BUILDING      -14-

Section 31. LEGAL SERVICE      -15-

Section 32. RECORDS OF THE DEPARTMENT      -15-

Section 33. COURT PROCEEDINGS      -15-

Section 34. SEVERABILITY      -15-

Section 35. REPEALING CLAUSE      -16-

Section 36. EFFECTIVE DATE      -16-

CITY OF DOTHAN/CARNEY 001117
CONFIDENTIAL

1   regular session in each of the months of April and October, at such date and hour as the committee shall
2   determine to receive reports of the Mayor, Personnel Board and City Manager and to make such
3   recommendations to the Board as it shall deem in the interest of the sound administration of this act, to
4   elect a successor of any member of the Personnel Board whose term of office expires before the next
5   regular meeting of the committee and to transact such other business as may properly come before the
6   committee.  The Chairperson of the committee or a majority of the members thereof may call special
7   meetings of the committee to transact any business  which may have arisen.  All meetings shall be held at
8   the City Hall, or some other public meeting place designated by the Chairperson.  Notice of all call
9   meetings of the committee shall be given to members of the committee by certified mail giving at least five
10  days notice of such meeting; such notice must be signed by the persons calling the meeting and the
11  purpose thereof shall be briefly outlined.  Notice of regular meetings shall be given to members of the
12  committee by regular mail giving at least five days notice of such meeting, but failure of any member to
13  receive notice of any meeting either regular or special shall not invalidate any act of the committee
14  transacted at such meeting.  A majority of persons serving as members of the committee shall constitute a
15  quorum to do business, but less than that number may adjourn and may compel the attendance of the
16  absent members, in such manner and under such penalties as may be prescribed by the rules and
17  regulations promulgated by the committee.  The committee shall serve without compensation and shall
18  have general supervisory control of the Personnel Department.
19
20  Section 7. ALTERNATE METHOD OF SELECTING BOARD.  In the event the Committee shall fail for any
21  reason to elect the Personnel Board for a period of thirty (30) days after this Act becomes effective, or in
22  the event the Committee shall fail to fill any vacancy on the Personnel Board within a period of thirty (30)
23  days after such vacancy occurs, then, and in that event, the Governor is hereby empowered, authorized
24  and directed to appoint the members of said Board or fill any vacancy thereon.
25
26  Section 8. PERSONNEL BOARD.  The Personnel Board shall consist of five members and they and their
27  successors in office shall be elected or appointed by the Citizens Supervisory Committee.  The five
28  members shall be designated respectively as member No. 1, member No. 2, member No. 3, member No. 4,
29  and member No. 5.  Provided that after the effective date of the 1992 amendment hereto, that those
30  members in office on the effective date of said amendment may serve out the remainder of their
31  unexpired terms and shall be designated as member No. 1, member No. 2,  and member No. 3, in order of
32  their original appointments.  Member No. 4 shall be for a term of three years and until his successor is
33  appointed.  Member No. 5 shall be for a term of five years and until his successor is appointed, and their
34  successors in office shall serve for a term of five years and until their successors in office have been
35  appointed and qualified.  Each member shall be:  (a) Over 21 years of age, (b) Of recognized good
36  character and executive ability, (c) A bona fide resident of Dothan and (d) A qualified elector of Dothan.
37  No person shall I be elected or appointed as a member of said Board if he or she, within three years next
38  preceding the date of his appointment as a member of said Board, received an appointment to any public
39  office in the City or Houston County or becomes elected for any public office in the City or Houston
40  County; any member of said Board shall forthwith forfeit his position as a member of said Board.  Each
41  member of the Board shall receive $50 per meeting attended and $50 per day for attendance upon all
42  trials and hearings by the Board.  Such compensation shall be paid from the same funds as other expenses
43  of the Personnel Department are paid. The Personnel Board shall meet once a month on dates to be fixed
44  by its Rules and Regulation and as often as shall be necessary for the orderly dispatch of its business.  The
45  Board shall have the power and authority and it shall be its duty to:  (a) Select a Personnel Director of the
46  City of Dothan; (b) Adopt rules and regulations for the administration of the provisions of this act; (c)
47  Approve, modify, revise and reject recommendations made by the Director; (d) Make reasonable
48  investigations of all charges or complaints presented to it concerning the observance of the provisions of
49  this act;  (e) Enforce the Provisions of this act and the provisions of the rules and regulations made in
50  pursuant thereof; (f) Consider and determine all matters referred to it by the Director; (g) Do all things

CivilServiceActofDothan.doc                                                                     - 7 -

CITY OF DOTHAN/CARNEY 001121
CONFIDENTIAL

1   necessary and proper to improve the administration of the Classified Service hereby established; (h)
2   Advise with and assist the Director in fostering and promoting the public interest;  (i)  Adopt rules
3   providing for subrogation of the City to the rights of an employee against a third party to the extent of all
4   salary and other expenditures made or to be made by the City to or for such employee because of injuries
5   received while in the line of duty due to the negligence of such third party;  (j) To conduct hearings and to
6   render decisions, as hereafter provided, on charges preferred against persons in the classified service;  (k)
7    To elect at the regular monthly meeting of each year one of its members to serve as
8   Chairperson of the Board of the ensuing twelve months; (l) To attend all regular meetings of the Citizen
9   Supervisory Committee; and (m)  Exercise all other powers, functions and duties provided by this act or
10   essential to its effective administration.
11
12   Section 9. PERSONNEL DIRECTOR.  The Personnel Director shall be elected or appointed by the Personnel
13   Board and he shall serve at the pleasure of the said Board; he shall:  (a) be over twenty-one years of age,
14   (b) be of recognized good character and administrative ability, and (c) be or become within thirty days of
15   appointment, a bona fide resident of Dothan.  The salary of the Personnel Director shall be fixed by the
16   Personnel Board.  The Director shall have power and authority and it shall be his duty to: (a) direct and
17   supervise the administrative and technical activities of the department; (b) appoint from the Employment
18   Register, with the approval of the Board, such employees and special assistants as may be necessary to
19   effectively organize the Department and the System herein created; (c) attend all meetings of the Board
20   and provide for recording its official acts; (d) prepare and recommend Rules and Regulations for the
21   administration of the provisions of this Act; (e) recommend and on its adoption establish, administer and
22   execute a plan for a Classified Service in the City of Dothan; (f) submit to the Board a Compensation Plan
23   for all positions in the Classified Service; (g) Conduct Tests, formulate Employment Registers and certify
24   names of persons qualified for appointment under the Classified Service; (h) devise and administer an
25   Employment Service Rating; (i) examine all payrolls or other compensation for personnel service, within
26   the Classified Service, and to disapprove from time to time, any compensation which is not in line with the
27   Compensation Plan adopted by the Board; (j) to establish and maintain a Roster of all of the officers and
28   employees in the Classified Service; (k) make reasonable investigations pertaining to personnel, salary
29   scales and employment conditions in the Classified Service as may be requested by the Board, the Citizens
30   Supervisory Committee or by the Governing Body of the City; (l) make investigations concerning the
31   administration and effect of this Act, the Rules and Regulations made thereunder and to report his findings
32   and recommendations to the Board; (m) make at least one comprehensive annual report to the Board,
33   which shall include the Efficiency Rating of each person employed under the Classified Service; and (n)
34   perform any other act or acts required of him under provisions of this Act, by the Personnel Board or by
35   the Citizens Supervisory Committee, which may be necessary or proper to carry into effect the purposes
36   and objectives of this Act.
37
38   Section 10.  RULES AND REGULATIONS.  No Rule or Regulation shall be adopted by the Board unless it is
39   proposed at a prior meeting and public notice thereof given by posting a copy of same for ten days within
40   the vestibule of the City Hall.  Any citizen or taxpayer in the City of Dothan may appear before the Board
41   and advocate or protest the adoption of such Rule or Regulation.  The scope of all Rules and Regulations
42   shall be:  (a) to provide a method for administering the Classification Service and the Compensation Plan,
43   adopted by the Board; (b) to establish, maintain, consolidate and cancel Personnel lists; (c) to provide a
44   system for receiving, accepting or rejecting applications for tests; (d) to prescribe the manner of giving
45   tests, grading papers and otherwise determining the qualifications of applications for rating under the
46   Classified Service; (e) pertaining to the adoption and application of a Service Rating System; (f) pertaining
47   to uniform recommendations as to working conditions, hours of employment, leaves of absence and
48   vacations of employees in the Classified Service; and (g) the order and manner in which suspension from
49   service may be applied to persons in the Classified Service.  All Rules and Regulations, duly adopted by the
50   Board, if not inconsistent with the provisions of this Act, shall have the force and effect of law and shall.

CivilServiceActofDothan.doc                                                                    - 8 -

CITY OF DOTHAN/CARNEY 001122
CONFIDENTIAL

become effective when a copy thereof is recorded in the office of the Clerk of the City.

Section 11. CLASSIFICATION OF POSITIONS. The Director shall, as soon as practicable after his appointment, ascertain and record an outline of the duties of each position to be filled from the Classified Service, and, after consultation with the Appointing Authority, recommend to the Board a Classification Plan, together with proposed Rules and Regulations for its administration. Such plan shall show each class of position in the Classified Service, separately stated as to each Appointing Authority, and, when approved by the Board, the plan together with the Rules and Regulations for its administration shall be made public. Each such class shall include positions requiring duties which are substantially similar in respect to the authority, responsibility and the character of the services required, and shall be designated by a title indicative of such duties. Each class shall be so defined that the same general requirements as to education, experience, capacity, knowledge, skill, and aptitude are demanded of incumbents, for the proper performance of their respective duties. The same test of fitness may be used in selecting qualified appointees, the same schedule of pay may apply where equitable and the same practical plan of promotion and demotion shall as far as practicable be followed. The Director shall have authority and it shall be his duty to investigate the number of employees in any department or office in the city and if in his opinion, after conference with the Department Head, there are an excessive number, or an insufficient number of employees, in proportion to the amount of work required in such department or office, the Director shall recommend to the Board that the excessive number of employees be laid off or transferred, either permanently or temporarily in accordance with the provisions of this Act; or the Director, if in his judgment there be an insufficient number of employees, may, with the approval of the Board, certify to the appointing Authority additional names to fill such positions, and the Appointing Authority shall forthwith put into effect the order of the Personnel Board, in such respect.

Section 12. COMPENSATION PLAN. The Director shall prepare and recommend to the Board, after consultation with the Appointing Authority and other officers, a uniform Compensation Plan for all employees in the Classified Service; such plan shall include, for each class of positions, a minimum and maximum rate not inconsistent with such rate or rates as may be fixed by law, in other specific instances. The Director, in establishing such rates, shall give consideration to the experience in recruiting for positions in the Classified Service, the prevailing rates of pay for comparable services in public and private employment, living costs, maintenance or other benefits received by employees, and the financial condition of the City. Such Compensation Plan shall take effect when approved by the Board, and same may be thereafter modified or revised at the pleasure of the Board. Each employee in the Classified Service shall be paid initially at the minimum rate fixed in the Compensation Plan for the Class of Positions in which he is employed, and the raising or lowering of the pay of an individual, within such limitations, shall be done upon request of the Appointing Authority, with a similar recommendation by the Director, and the approval of the Governing Body. The foregoing provisions may be relaxed by the Board in fixing the compensation of persons employed by the City at the time this Act becomes effective.

Section 13. TESTS.
General. The Director shall prepare and conduct tests for the purpose of enabling him to establish Employment Registers for the various classes of positions in the Classified Service. The tests shall be prepared and conducted so as to take into consideration elements of character, reputation, education, aptitude, experience, knowledge, physical fitness and other pertinent matters. Such tests may be given in writing, orally, or in any other manner which will enable the Director to determine the fitness of the applicant for acceptance into some class of position in the Classified Service. Public notice of the time, place and general scope of every test must be given by the Director. Promotional Tests shall be conducted in like manner and embrace the same subject-matter as initial tests for similar Classified Employment. Admissions to test shall be open to all persons who: (a) reasonably appear to the Director to possess the required qualifications, (b) may be lawfully appointed to a position in the class for which a

CivilServiceActofDothan.doc                                                                    - 9 -

CITY OF DOTHAN/CARNEY 001123
CONFIDENTIAL

1  
2  Promotion:  Vacancies other than entry level positions shall be filled by promotion in so far as practicable,  
3  from the appropriate promotional register.  The certification of individuals for promotion shall be the same  
4  as provided for in paragraph (a) above, with the exception that individuals certified to the appointing  
5  authority as many as three times shall not be removed from the promotional register.  
6  
7  Section 15.  TRANSFER.  The Appointing Authority may, when desirable, transfer a Classified Employee  
8  under his jurisdiction from one position to another in the same class.  Any Classified Employee may be  
9  transferred from one department to another in the same class, provided the Director has authorized the  
10 transfer and it has been approved by the Appointing Authority concerned.  The Appointing Authority shall  
11 give written notice to the Director of each Transfer made by him and same may be disapproved by the  
12 Board, after a hearing.  
13  
14 Section 16.  DEMOTIONS.  An Appointing Authority may, with the approval of the Director, Demote a  
15 Classified Employee under his jurisdiction from a position in one class to a position in a lower class, upon  
16 giving written notice stating the reasons thereof, but such Demotion may be disapproved by the Board,  
17 after a hearing.  
18  
19 Section 17.  PROVISIONAL APPOINTMENTS.  Whenever in the opinion of the Director it is impossible within  
20 a reasonable time to certify eligible persons for appointment to a vacancy in the Classified Service, the  
21 Appointing Authority may nominate a person for the vacancy to the Director.  If such nominee is found by  
22 the director to have had experience and training which appear to qualify him for the position, the Director  
23 may authorize the Appointment of such person to such vacancy only until an appropriate eligible Register  
24 can be established and an Appointment made therefrom.  Such Provisional Appointments shall be for a  
25 period of ninety (90) days and may, with the approval of the Director, be extended for an additional ninety  
26 (90) days, however, in no event shall a provisional Appointment be made for a period aggregating more  
27 than 180 days.  
28  
29 Section 18.  WORKING TEST PERIOD.  (a) Every person appointed to a position in the Classified Service,  
30 after certification of his name from a Promotion List or an Employment Register, shall be tested by a  
31 Working Test while occupying such position.  The period of such Working Test shall commence  
32 immediately upon appointment and shall continue for such time, not less than six months, as shall be  
33 determined by the Director.  The Appointing Authority shall observe the employee's attitude toward his  
34 work, his capacity to perform the duties required of him, any habits which may affect in any manner the  
35 character of service performed by him, and his general dependability, during such Working Test Period,  
36 and report to the Director, periodically as required, in writing, the results of such observation.  The  
37 Appointing Authority may remove an employee, after a reasonable Test Period, if in his opinion the  
38 employee is unable or unwilling to perform the prescribed duties satisfactorily, or if his habits or  
39 dependability do not merit his continuance in the service, subject to the approval of the Director.  Notice  
40 of such removal, with the reasons assigned therefor, shall be given to the employee and the Director, at  
41 the time of the discharge.  No more than two employees shall be removed successively from the same  
42 position by the same Appointing Authority, during their Working Test Period, without the approval of the  
43 Director.  The Director may remove an employee during his Working Test Period if he finds, after notice  
44 and an opportunity to be heard, that such employee was appointed as a result of fraud or error.  (b) Ten  
45 days prior to the expiration of an employee's Working Test Period, unless the employee has been  
46 previously removed, the Appointing Authority shall notify the Director in writing whether the service of the  
47 employee has been satisfactory and whether he desires to continue the employee in his position, and a  
48 copy of such notice shall be given to the employee.  If he is not to be continued in the position, after such  
49 notice the employee shall not be paid for work performed after the expiration of his Working Test Period.  
50 (c) If any employee is removed from his position during his Working Test Period and the Director  

CITY OF DOTHAN/CARNEY 001125  
CONFIDENTIAL

1  determines that he is suitable for appointment to another position, his name may be restored to the list
2  from which it was certified.  If any such employee was a regular employee in another position in the
3  Classified Service immediately prior to his appointment and such position has not been filled, he shall be
4  reinstated and if such position has been filled, his name shall be placed on the re-employment list.
5
6  Section 19.  SERVICE RATINGS.  The Director shall establish, in cooperation with the Appointing
7  Authorities, a system of Service Ratings, based upon standards of employment and output of employees in
8  each class of positions in the Classified Service, which may be amended from time to time as the necessity
9  arises, and such Service Ratings shall be considered in such manner and with such weight as shall be
10  provided by the Rules and Regulations:  (a) in determining salary increases or decreases, within the
11  established limits; (b) as a factor in Promotional Tests; (c) as a factor in determining Lay-offs, when forces
12  should be reduced because of insufficient funds or work; (d) in determining the order in which names are
13  to be placed on the Re-employment Lists; and (e) as a means of discovering employees who should be
14  promoted, demoted, transferred or dismissed.  Each Appointing Authority shall report to the Director, in
15  such manner and at such times as the Rules and Regulations require, the Service Ratings of Employees in
16  his division or department and shall also disclose such other information as the Director may request, to
17  enable the Director to determine the Service Ratings of all employees.  Each employee shall be given
18  reasonable opportunity to inspect the records of the Department which show his Service Ratings.
19
20  Section 20.  LAY-OFFS.  An Appointing Authority may Lay-Off employees in the Classified Service, in
21  accordance with the Rules and Regulations adopted under the provisions of this Act, whenever he deems it
22  expedient because of shortage of work or funds or material changes in duties or organization, and
23  Seniority and Service Ratings of employees shall control in determining the order of Lay-Offs.  The
24  Appointing Authority shall give written notice to the Director of every proposed Lay-Off, at least ten days
25  before the effective date thereof, and the Director shall make such orders relating thereto as he considers
26  necessary to secure compliance with the established Rules and Regulations.  The name of any regular
27  employee laid-off shall be placed on the appropriate Re-employment List.
28
29  Section 21.  DISCHARGES.  (I) The Appointing Authority may discharge an employee in the Classified
30  Service, whenever he considers the good of the service and the welfare of the city will be best served
31  thereby, by making and filing in his office an order to that effect together with the reasons assigned for
32  the discharge, however, the power to discharge shall not be capriciously or arbitrarily exercised in any
33  case; a copy of such order and the reasons assigned shall be served upon each the employee and the
34  Director before the effective date thereof; and a copy served upon the Director shall be filed and retained
35  in this office as a Public Record.  The discharged employee may, within ten days after receipt of the
36  discharge notice, appeal the action of the Appointing Authority to the Board, by filing a written order to
37  the chairman with a demand for a hearing.  It shall be the duty of the Board to fix a time and place for
38  hearing on the appeal, and to give notice thereof to the employee and the Appointing Authority, which
39  appeal shall be heard by the Board on a date not later than thirty days from the date the appeal is taken.
40  The Personnel Board shall have the authority, after an appropriate hearing, and based upon a finding of
41  the facts and applicable law involved, to reduce the severity of the disciplinary action taken by the
42  Appointing Authority, and issue such orders and decrees with reference thereto as may be just and
43  reasonable, and for the best interest of the City.  The findings of fact by the Board, based upon its
44  records, and the testimony taken before it, shall be conclusive if supported by substantial evidence.  If the
45  Appointing Authority is sustained by the Board, the discharge shall be final as of the date thereof; if the
46  discharge is not sustained, the employee shall continue in the service of the City and shall be entitled to
47  full compensation.  (II) A person in the Classified Service may also be removed or disciplined in the
48  following manner: Charges may be filed with the Director by any officer, citizen, or taxpayer of the city and
49  the Director shall, after an investigation, certify the charges filed, together with the results of his
50  investigation, to the Personnel Board and said Board shall set a day for a public hearing on such charges.

CITY OF DOTHAN/CARNEY 001126
CONFIDENTIAL

1   The Board shall on the date fixed receive testimony offered in support of and in denial of such charges
2   and from such testimony make a finding of the facts and applicable law involved, in writing, and make
3   such orders and decrees with reference thereto as may be just and reasonable and for the best interest of
4   the city. The findings of fact by the Board, based upon its records and the testimony taken before it, shall
5   be conclusive if supported by substantial evidence. (III) If a person in the Classified Service relies upon a
6   direct order by a superior; (a) as a defense or excuse for the violation of any of the provisions of this Act
7   or the Rules and Regulations adopted thereunder, or (b) an omission to observe the provisions of this Act
8   or Rules and Regulations adopted thereunder, he must establish such direct order of a superior to the
9   reasonable satisfaction of the Board.
10
11  Section 22. SUSPENSIONS. An appointing Authority may, from time to time, suspend an employee
12  without pay or other compensation, as punishment for improper behavior, but no employee may be
13  suspended for a period or periods within the aggregate of more that [sic] 30 days in any year's service. A
14  Suspension may be effected by serving written notice upon the employee together with a statement
15  clearly setting forth the causes thereof; a copy of which must be forthwith mailed or delivered to the
16  Director. The suspended employee may file with the Board and the Appointing Authority a written answer
17  or explanation of the assigned charges and such answer shall be preserved as a part of the Public Record
18  and the Board may, for cause shown, set aside such suspension order.
19
20  Section 23. POLITICAL ACTIVITIES PROHIBITED. (a) No person shall be appointed or promoted to, or
21  demoted or dismissed from, any position in the Classified Service, or in any way favored or discriminated
22  against with respect to employment in the Classified Service because of his political or religious opinions or
23  affiliations. (b) No person shall seek or attempt to use any political endorsement in connection with any
24  appointment to a position in the Classified Service. (c) No person shall use or promise to use, directly or
25  indirectly, any official authority or influence, whether possessed or anticipated, to secure or attempt to
26  secure for any person an appointment, or advantage in appointment, to a position in the Classified
27  Service, or an increase in compensation or other advantage in employment in any such position, for the
28  purpose of influencing the vote or political action of any person, or for any other consideration. (d) No
29  employee in the Classified Service shall, directly or indirectly, pay or promise to pay any assessment,
30  subscription or contribution for any political organization, or purpose, or solicit, or take any part in soliciting
31  any such assessment, subscription or contribution. No person shall solicit any such assessment,
32  subscription or contribution of any employee in the Classified Service. (e) No employee in the Classified
33  Service shall be a candidate for nomination or election to any City of Dothan municipal public office or shall
34  take any part in the management in the affairs of any political party or any political campaign relating to
35  City of Dothan municipal elections except to exercise his right as a citizen privately to express his opinion
36  and to cast his vote. (f) Any officer or employee in the Classified Service who violates any of the foregoing
37  provisions of this Section shall forfeit his office or position and may not be again employed by the City of
38  Dothan. The provisions of this Act shall not preclude any employee in the Classified Service who has been
39  elected to public office or nominated or selected as a member of a committee of a political party prior to
40  the effective date of this Act from discharging duties of his office.
41
42  Section 24. POLITICAL ACTIVITIES OF DEPARTMENT HEADS PROHIBITED. (a) No employee named in
43  Section 3 (I) of this bill shall: (a) use or promise to use, directly or indirectly, any official authority or
44  influence, whether possessed or anticipated, to secure for any person an appointment, or advantage in
45  appointment, to a position in the Classified Service, or an increase in compensation or other advantage in
46  employment in any such position, for the purpose of influencing the vote or political action of any person,
47  or for any other consideration. (b) Directly or indirectly, pay or promise to pay any assessment,
48  subscription or contribution for any political organization, or purpose, or solicit, or take any part in soliciting
49  any such assessment, subscription or contribution. No person shall solicit any such assessment,
50  subscription or contribution of any employee in the Classified Service. (c) Be a candidate for nomination or

CivilServiceActofDothan.doc         ,         - 13 -

CITY OF DOTHAN/CARNEY 001127
CONFIDENTIAL

1  election to any public office or participate in any political campaign relating to City municipal elections, or
2  shall take any part in the management of the affairs of any campaign committee, or any political campaign
3  related to City of Dothan municipal elections, except to exercise his right as a citizen privately to express
4  his opinion and to cast his vote. Any such officer or employee who violates any of the foregoing provisions
5  of this Section shall forfeit his office or position and may not be again employed by the City of Dothan.
6

7  Section 25. INVESTIGATIONS. The Board and the Director shall make a study of all matters touching the
8  administration and enforcement of the provisions of this Act and the Rules and Regulations adopted
9  thereunder. To this end, the Board or the Director may visit all offices and places of employment to
10  ascertain information and to advise with the heads of the various departments concerning their method of
11  handling matters affecting the Service; and to ascertain if the provisions of this Act and the adopted Rules
12  and Regulations are fully complied with. The Board or Director, in the course of such inquiries, shall have
13  the power to administer oaths, subpoena and require the attendance of witnesses and the production of
14  records, books, papers and documents pertaining to the subject-matter under Investigations. The Board,
15  or the Director, shall have the authority to inquire into the number of employees in any office or
16  department and, after notice and an opportunity to be heard by the Appointing Authority and the
17  employees affected, the Board may determine there is an excessive number of employees in such office or
18  department, in proportion to the amount of work required, and, in that event, it shall issue an order in
19  writing to the Appointing Authority to eliminate the number of employees found to be excessive, in the
20  manner prescribed by this Act or the Rules and Regulations, and such order shall be forthwith complied
21  with by the Appointing Authority. The Board and the Director shall also study the organization of the
22  system, procedure of administration and other matters which affect the successful operation of the system
23  and make such lawful changes as may increase efficiency or economy.
24

25  Section 26. CORRUPT PRACTICES. (a) No person shall make any false statement, certificate, mark, rating
26  or report with regard to any test, certification or appointment made under any provision of this Act or in
27  any manner commit or attempt to commit any fraud preventing the impartial execution of the provisions of
28  this Act and the prescribed Rules and Regulations. (b) No person shall, directly or indirectly, give, render,
29  pay, offer, solicit, or accept any money, service or other valuable consideration for or on account of any
30  appointment, proposed appointment, promotion or proposed promotion to, or any advantage in, a position
31  in the Classified Service. (c) No employee of the Department or other person shall defeat, deceive, or
32  obstruct any person in his right to an examination, eligibility, certification or appointment under the
33  provisions of this Act, or furnish to any person any special or secret information for the purpose of
34  affecting the rights or prospects of any persons with respect to employment in the Classified Service. (d)
35  No person shall be appointed or employed in any position in the Classified Service as defined in this Act in
36  a department of the City if such person is related by blood or marriage within the second degree to a
37  commissioner or to the department head who is in charge of such department. This provision shall not be
38  construed to require the dismissal of any employee in said Classified Service where, subsequent to his
39  original employment in such service, the department head of the department in which such employee is
40  working or Commissioner becomes related to such employee by blood or marriage within the second
41  degree. The commission of any such corrupt practice shall constitute a misdemeanor and shall be
42  punished in the manner provided by the general laws of the State.
43

44  Section 27. CERTIFICATIONS OF PAYROLLS. (a) It shall be unlawful for any City official, employee or
45  other officer to pay or cause to be paid any salary or compensation to any person in the Classified Service
46  of the City, for Personal services, unless the payroll estimate, voucher, or account, for such compensation,
47  containing the name of the persons to be paid, shall bear the certification of such persons' Department
48  Head or Appointing Authority that the person or persons named therein are employees of the City and are
49  legally entitled to receive the sums stated therein and such payroll or voucher must be approved by the
50  Director. (b) Any sum paid in violation to the provisions of this Act or the Rules and Regulations adopted

CITY OF DOTHAN/CARNEY 001128
CONFIDENTIAL

# DOTHAN POLICE DEPARTMENT
## GENERAL ORDER 100-52

### *Social Media*




**PURPOSE:** The department endorses the secure use of social media to enhance communication, collaboration, and information exchange, streamline process, and foster productivity. This policy establishes this department's position on the utility and management of social media and provides guidance on its management, administration, and oversight. This policy is not meant to address one particular form of social media; rather social media in general, as advances in technology will occur and new tools will emerge.

**POLICY:** Social media provides a new and potentially valuable means of assisting the department and its personnel in meeting community outreach, problem-solving, investigative, crime prevention, and related objectives. This policy identifies potential uses that may be explored or expanded upon as deemed reasonable by administrative and supervisory personnel. The department also recognizes the role that these tools play in the personal lives of some department personnel. The personal use of social media can have bearing on departmental personnel in their official capacity. As such, this policy provides information of a precautionary nature as well as prohibitions on the use of social media by department personnel.

## I.  DEFINITIONS

*Blog:* A self-published diary or commentary on a particular topic that may allow visitors to post responses, reactions, or comments. The term is short for "Web log."

*Page:* The specific portion of a social media website where content is displayed, and managed by an individual or individuals with administrator rights.

**DEFENDANT'S EXHIBIT**

Cloyd  27

CITY OF DOTHAN/CARNEY 000723
CONFIDENTIAL

*Post:* Content and individual shares on a social media site or the act of publishing content on a site.

*Profile:* Information that a user provides about himself or herself on a social networking site.

*Social Media:* A category of Internet-based resources that integrate user-generated content and user participation. This includes, but is not limited to social networking sites (Face book, MySpace), micro blogging sites (Twitter, Nixle), photo- and video- sharing sites (Flickr, YouTube), wikis (Wikipedia), blogs, and news sites (Digg, Reddit).

*Social Networks:* On line platforms where users can create profiles, share information, and socialize with others using a range of technologies.

*Speech:* Expression or communication of thoughts or opinions in spoken words, in writing, by expressive conduct, symbolism, photographs, videotape, or related forms of communication.

*Web 2.0:* The second generation of the World Wide Web focused on shareable, user-generated content, rather than static web pages. Some use this term interchangeably with social media.

*Wiki:* Web page(s) that can be edited collaboratively.

## II.  ON-THE-JOB USE

A.   Department-Sanctioned Presence

1.  Determine Strategy

a.  Where possible, each profile page shall include an introductory statement that clearly specifies the purpose and scope of the agency's presence on the website.

b.  Where possible, the page(s) should link to the department's official website.

2.  Procedures

a.  The original creation of any social media site shall be approved by the Chief of Police or his or her designee and shall be administered by the departmental media information officer or as otherwise determined.

b.  Social media content shall adhere to applicable laws, regulations, and policies, including all information technology and records management policies.

CITY OF DOTHAN/CARNEY 000724
CONFIDENTIAL

(1) Content is subject to public records laws. Relevant records retention schedules apply to social media content. The social media provider maintains those records which are available by subpoena.

c. Where possible, social media pages should state that the opinions expressed by visitors to the page(s) do not reflect the opinions of the department.

(1) Profile pages shall clearly indicate that posted comments will be monitored and that the department reserves the right to remove obscenities, off-topic comments, and personal attacks.

(2) Profile pages shall clearly indicate that any content posted or submitted for posting is subject to public disclosure.

3. Department-Sanctioned Use

a. Department personnel representing the department via social media outlets shall do the following:

(1) Conduct themselves at all times as representatives of the department and, accordingly, shall adhere to all department standards of conduct and observe conventionally accepted protocols and proper decorum.

(2) Identify themselves as a member of the department.

(3) Not make statements about the guilt or innocence of any suspect or arrestee, or comments concerning pending prosecutions, nor post, transmit, or otherwise disseminate confidential information, including photographs or videos, related to department training, activities, or work-related assignments without express written permission. The Department Media Information Officer is authorized by the Chief of Police to release certain information.

(4) Not conduct political activities or private business.

b. Employees shall observe and abide by all copyright, trademark, and service mark restrictions in posting materials to electronic media.

B. Potential Uses

1. Social media is a valuable investigative tool when seeking evidence or information about

CITY OF DOTHAN/CARNEY 000725
CONFIDENTIAL

      a. missing persons;
      b. wanted persons;
      c. gang participation;
      d. crimes perpetrated online (i.e., cyber bullying, cyber stalking; and
      e. photos and videos of a crime posted by DPD.

2. Social media can be used for community outreach and engagement by
      a. providing crime prevention tips;
      b. sharing crime maps and data; and
      c. soliciting tips about unsolved crimes (i.e., Crime stoppers).

3. Social media can be used to make time-sensitive notifications related to
      a. road closures,
      b. special events,
      c. weather emergencies, and
      d. missing or endangered persons.

4. Persons seeking employment and volunteer positions use the Internet to search for opportunities, and social media can be a valuable recruitment mechanism.

5. This department has an obligation to include Internet-based content when conducting background investigations of job candidates.

6. Searches should be conducted by a non-decision maker.  Information pertaining to protected classes shall be filtered out prior to sharing any information found online with decision makers.

7. Persons authorized to search Internet-based content should be deemed as holding a sensitive position.

8. Search methods shall not involve techniques that are a violation of existing law.

9. Vetting techniques shall be applied uniformly to all candidates.

10. Every effort must be made to validate Internet-based information considered during the hiring process.

V.   PERSONAL USE

  A. Precautions and Prohibitions

    Barring state law to the contrary, department personnel shall abide by the following when using social media.

    1. Department personnel are free to express themselves as private citizens on social media sites to the degree that their speech does not impair working relationships of this department for which loyalty and confidentiality are important, impede the performance of duties, impair discipline and harmony among coworkers, or negatively affect the public perception of the department.

CITY OF DOTHAN/CARNEY 000726
CONFIDENTIAL

2. As public employees, department personnel are cautioned that speech on- or off-duty, made pursuant to their official duties—that is, that owes its existence to the employee's professional duties and responsibilities—is not protected speech under the First Amendment and may form the basis for discipline if deemed detrimental to the department. Department personnel should assume that their speech and related activity on social media sites will reflect upon their office and this department.

3. Department personnel shall not post, transmit, or otherwise disseminate any information to which they have access as a result of their employment without written permission from the Chief of Police or his or her designee.

4. For safety and security reasons, department personnel are cautioned not to disclose their employment with this department nor shall they post information pertaining to any other member of the department without their permission. As such, department personnel are cautioned not to do the following:

   a. Display department logos, uniforms, or similar identifying items on personal web pages.

   b. Post personal photographs or provide similar means of personal recognition that may cause them to be identified as a police officer of this department. Officers who are, or who may reasonably be expected to work in undercover operations, shall not post any form of visual or personal identification.

5. When using social media, department personnel should be mindful that their speech becomes part of the worldwide electronic domain. Therefore, adherence to the department's code of conduct is required in the personal use of social media. In particular, department personnel are prohibited from the following:

   a. Speech containing obscene or sexually explicit language, images, or acts and statements or other forms of speech that ridicule, malign, disparage, or otherwise express bias against any race, any religion, or any protected class of individuals.

   b. Speech involving themselves or other department personnel reflecting behavior that would reasonably be considered reckless or irresponsible.

6. Engaging in prohibited speech noted herein, may provide grounds for undermining or impeaching an officer's testimony in criminal proceedings. Department personnel thus sanctioned are subject to discipline up and including termination of office.

7. Department personnel may not divulge information gained by reason of their authority; make any statements, speeches, appearances, and endorsements; or publish materials that could reasonably be considered to represent the views or positions of this department without express authorization.

G.O. 100-52                          Page 5 of 6

CITY OF DOTHAN/CARNEY 000727
CONFIDENTIAL

8. Department personnel should be aware that they may be subject to civil litigation for

    a. publishing or posting false information that harms the reputation of another person, group, or organization (defamation);

    b. publishing or posting private facts and personal information about someone without their permission that has not been previously revealed to the public, is not of legitimate public concern, and would be offensive to a reasonable person;

    c. using someone else's name, likeness, or other personal attributes without that person's permission for an exploitative purpose; or

    d. publishing the creative work of another, trademarks, or certain confidential business information without the permission of the owner.

9. Department personnel should be aware that privacy settings and social media sites are constantly in flux, and they should never assume that personal information posted on such sites is protected.

10. Department personnel should expect that any information created, transmitted, downloaded, exchanged, or discussed in a public online forum may be accessed by the department at any time without prior notice.

11. Reporting violations—Any employee becoming aware of or having knowledge of a posting or of any website or web page in violation of the provision of this policy shall notify his or her supervisor immediately for follow-up action.

CITY OF DOTHAN/CARNEY 000728
CONFIDENTIAL



# THE CITY OF
# DOTHAN, ALABAMA

POST OFFICE BOX 2128 · DOTHAN, ALABAMA 36302 · 334-615-3000

**DELVICK J. MCKAY**
PERSONNEL DIRECTOR

**PERSONNEL BOARD**
ALAN B. CLARK, CHAIR
MARY W. DAVIS
MARK SMITH
BARBARA A. SPANN
EARL TYSON

DATE:     June 23, 2010

TO:       Department Heads
          All Employees

RE:       Social Networking Websites

With the transformation of technology and popularity of social networking websites such as Facebook, MySpace, and LinkedIn; the City of Dothan like most employers are experiencing high traffic volume on sites like these from its employees.  Although these methods of communication have become commonplace, certain inappropriate conversations or "blogs" posted by City employees referencing their employment with the City of Dothan may be considered unprofessional and a misrepresentation of a public employee.

Many of these social networking websites require the account holder to accept people as "friends" in order to share information and communicate with each other.  However, please be mindful that many of these websites are on public domain and the information you think you are sharing with "friends" could potentially be disseminated to others.  It is imperative that the actions of City employees are not detrimental to the City of Dothan as a public employer.  Furthermore, when acting in your official City capacity, professionalism must be paramount and the public trust not violated.

**Points to Consider**
1.   Your online presence reflects the City of Dothan. Be aware that your actions captured via images, posts, or comments can reflect unfavorably upon the City.

2.  Information published on your blog(s) should not contain information that damages the City of Dothan as a public employer and/or disrupts the workplace.

3.  Be respectful to the City of Dothan as your employer, other employees, customers, and clients of the City of Dothan.

**PERSONNEL DEPARTMENT**
126 NORTH SAINT ANDREWS STREET · DOTHAN, ALABAMA 36303 · PHONE 334-615-3180 · FAX 334-615-3189
Service · Excellence · Commitment ... *The Dothan Way*



DEFENDANT'S
EXHIBIT

Cloyd     28

CITY OF DOTHAN/CARNEY 000820
CONFIDENTIAL

CONFIDENTIAL
CITY OF DOTHAN/CARNEY 000821 -

Social Networking Websites
page 2

4.  Social media activities should not interfere with work commitments nor should City of Dothan business transactions or agreements be made or discussed through these channels of communication.

5.  Do not publish or disseminate information regarding a City of Dothan client or business transaction.

6.  Issues relating to your employment with the City of Dothan (claims of sexual harassment, discrimination, hostile working environment, etc.) must be reported to your immediate supervisor, Personnel Director, or EEO/Training Officer and not posted on social networking websites.

If I can be of further assistance, don't hesitate to contact my office.

Sincerely,

Delvick J. McKay

---

**PERSONNEL DEPARTMENT**

126 NORTH SAINT ANDREWS STREET · DOTHAN, ALABAMA 36303 · PHONE 334-615-3180 · FAX 334-615-3189

Service · Excellence · Commitment . . . *The Dothan Way*

Report

Signatures229 Rows, Generated by Admin User 10/7/2014 4:54 PM Central Standard Time

| Username | Last | First | Doc Name | Subject | Rev Date | Revision Type | Document Type | Title | Location | Signed Date |
|---|---|---|---|---|---|---|---|---|---|---|
| 669 | Carney | Raemonica | 20100623AllCityEmployees | Use of Social Networking Sites | 6/23/2010 12:00:00 AM | New | Memorandum | Corporal | Administrative Services Bureau | 8/9/2010 9:15:52 AM |
| 669 | Carney | Raemonica | 100-56 | Outside Employment | 6/25/2010 12:00:00 AM | New | General Orders | Corporal | Administrative Services Bureau | 8/12/2010 11:33:19 AM |
| 669 | Carney | Raemonica | Taser9thCir2010 | Taser Use | 6/18/2010 12:00:00 AM | New | Legal Updates | Corporal | Administrative Services Bureau | 8/12/2010 11:37:38 AM |
| 669 | Carney | Raemonica | 20100701 | Special Order | 7/15/2010 12:00:00 AM | New | Special Orders | Corporal | Administrative Services Bureau | 8/12/2010 11:39:15 AM |
| 669 | Carney | Raemonica | 400-51 | Traffic Collision Investigation | 7/23/2010 12:00:00 AM | New | General Orders | Corporal | Administrative Services Bureau | 8/12/2010 11:39:58 AM |
| 669 | Carney | Raemonica | 400-06 | Bicycle Patrol | 8/6/2010 12:00:00 AM | New | General Orders | Corporal | Administrative Services Bureau | 8/12/2010 11:41:16 AM |
| 669 | Carney | Raemonica | 100-10 | Jurisdiction and Mutual Aid | 7/30/2010 12:00:00 AM | New | General Orders | Corporal | Administrative Services Bureau | 8/12/2010 11:44:15 AM |
| 669 | Carney | Raemonica | 200-81H | Bomb Threats | 8/6/2010 12:00:00 AM | New | General Orders | Corporal | Administrative Services Bureau | 8/12/2010 11:46:05 AM |
| 669 | Carney | Raemonica | 201008063 | Immigration Customs Enforcement | 8/6/2010 12:00:00 AM | New | Special Orders | Corporal | Administrative Services Bureau | 8/12/2010 11:46:45 AM |
| 669 | Carney | Raemonica | 201008112 | Juvenile Custody and Transportation Procedure | 8/11/2010 12:00:00 AM | New | Memorandum | Corporal | Administrative Services Bureau | 8/12/2010 11:50:52 AM |
| 669 | Carney | Raemonica | 201008121 | City Damage Claims | 8/12/2010 12:00:00 AM | New | Memorandum | Corporal | Administrative Services Bureau | 8/12/2010 11:51:49 AM |
| 669 | Carney | Raemonica | Taser9thCir2009 | Taser Use | | New | Legal Updates | Corporal | | |

**DEFENDANT'S EXHIBIT**

29

Ca-14

Report

| 669 | Carney | Raemonica | 100-40 | Oath of Office | New | 12/28/2009 12:00:00 AM | General Orders | Corporal | Administrative Services Bureau | 8/12/2010 11:52:47 AM |
|---|---|---|---|---|---|---|---|---|---|---|
| 669 | Carney | Raemonica | 100-41 | Code of Ethics | New | 6/18/2010 12:00:00 AM | General Orders | Corporal | Administrative Services Bureau | 8/12/2010 11:53:44 AM |
| 669 | Carney | Raemonica | 400-30H | Canine Unit | New | 6/18/2010 12:00:00 AM | General Orders | Corporal | Administrative Services Bureau | 8/12/2010 11:56:06 AM |
| 669 | Carney | Raemonica | 201008172 | Violation of Protection Orders | New | 8/20/2010 12:00:00 AM | Legal Updates | Corporal | Administrative Services Bureau | 8/16/2010 11:39:27 AM |
| 669 | Carney | Raemonica | 201008191 | Emergency Medical Dispatch | New | 8/17/2010 12:00:00 AM | Special Orders | Corporal | Administrative Services Bureau | 8/18/2010 8:00:42 AM |
| 669 | Carney | Raemonica | 201008192 | Sovereign Citizen Advisory | New | 8/19/2010 12:00:00 AM | Roll Call Training | Corporal | Administrative Services Bureau | 8/20/2010 8:55:44 AM |
| 669 | Carney | Raemonica | 100-31 | Compensatory and Overtime | New | 8/20/2010 12:00:00 AM | General Orders | Corporal | Administrative Services Bureau | 8/23/2010 3:18:51 PM |
| 669 | Carney | Raemonica | 100-74 | Media Information | New | 8/27/2010 12:00:00 AM | General Orders | Corporal | Administrative Services Bureau | 8/23/2010 3:19:26 PM |
| 669 | Carney | Raemonica | 200-82H | Hostages and Barricaded Persons | New | 8/27/2010 12:00:00 AM | General Orders | Corporal | Administrative Services Bureau | 8/23/2010 3:21:46 PM |
| 669 | Carney | Raemonica | 300-50 | Vice, Drugs and Organized Crime | New | 8/27/2010 12:00:00 AM | General Orders | Corporal | Administrative Services Bureau | 8/23/2010 3:23:48 PM |
| 669 | Carney | Raemonica | 400-20H | Domestic Violence | New | 8/27/2010 12:00:00 AM | General Orders | Corporal | Administrative Services Bureau | 8/23/2010 3:26:10 PM |
| 669 | Carney | Raemonica | 100-91 | Victim/Witness Assistance | New | 9/17/2010 12:00:00 AM | General Orders | Corporal | Administrative Services Bureau | 8/23/2010 3:32:44 PM |
| 669 | Carney | Raemonica | 100-91 | Victim/Witness Assistance | New | 9/17/2010 12:00:00 AM | General Orders | Corporal | Administrative Services Bureau | 10/5/2010 12:10:36 PM |

Report

| 669 | Carney | Raemonica | 201009241 | Juvenile Pickup Orders | 9/24/2010 12:00:00 AM | New | Memorandum | Corporal | Administrative Services Bureau | 10/5/2010 12:15:49 PM |
| 669 | Carney | Raemonica | 100-53 | Awards Program | 11/14/2010 12:00:00 AM | New | General Orders | Corporal | Administrative Services Bureau | 11/9/2010 9:05:24 AM |
| 669 | Carney | Raemonica | 201010181 | Injury and Accident Photos | 10/19/2010 12:00:00 AM | New | Memorandum | Corporal | Administrative Services Bureau | 11/9/2010 9:06:39 AM |
| 669 | Carney | Raemonica | 100-20 | Staff Meetings | 12/3/2010 12:00:00 AM | New | General Orders | Corporal | Administrative Services Bureau | 11/29/2010 7:38:17 PM |
| 669 | Carney | Raemonica | 100-92 | Line of Duty Deaths and Serious Injuries | 12/3/2010 12:00:00 AM | New | General Orders | Corporal | Administrative Services Bureau | 11/29/2010 8:00:49 PM |
| 669 | Carney | Raemonica | 201012061 | ADFS Evidence Submission | 12/6/2010 12:00:00 AM | New | Memorandum | Corporal | Administrative Services Bureau | 12/20/2010 8:40:35 AM |
| 669 | Carney | Raemonica | 100-26 | Planning and Research | 12/10/2010 12:00:00 AM | New | General Orders | Corporal | Administrative Services Bureau | 1/26/2011 2:07:50 PM |
| 669 | Carney | Raemonica | 201012142 | Warrantless Arrests 11th Fed CCA | 12/14/2010 12:00:00 AM | New | Legal Updates | Corporal | Administrative Services Bureau | 1/26/2011 2:35:38 PM |
| 669 | Carney | Raemonica | 201001041 | Anonymous Callers | 1/4/2011 12:00:00 AM | New | Legal Updates | Corporal | Administrative Services Bureau | 1/26/2011 2:42:20 PM |
| 669 | Carney | Raemonica | 100-70 | Administrative Reporting System | 1/7/2011 12:00:00 AM | New | General Orders | Corporal | Administrative Services Bureau | 1/26/2011 2:47:33 PM |
| 669 | Carney | Raemonica | 300-45 | Crime Analysis | 1/7/2011 12:00:00 AM | New | General Orders | Corporal | Administrative Services Bureau | 1/26/2011 2:50:44 PM |
| 669 | Carney | Raemonica | 201101121 | 11th Cir Fed Ct Warrantless Entry Decision | 1/13/2011 12:00:00 AM | New | Legal Updates | Corporal | Administrative Services Bureau | 1/26/2011 3:03:06 PM |
| 669 | Carney | Raemonica | 201012301 | Medications | 12/30/2010 12:00:00 AM | New | Memorandum | Corporal | Administrative Services Bureau | 1/26/2011 3:18:36 PM |

Report

| 669 | Carney | Raemonica | 201111111 | 11th Cir Fed Ct LEO Shooting Decision | 1/11/2011 12:00:00 AM | New | Legal Updates | Corporal | Administrative Services Bureau | 1/26/2011 3:20:26 PM |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 669 | Carney | Raemonica | 201102141 | Bomb Squad K9 | 2/14/2011 12:00:00 AM | New | Memorandum | Corporal | Administrative Services Bureau | 2/16/2011 11:44:49 AM |
| 669 | Carney | Raemonica | 201102182 | Information Technology Requests | 2/18/2011 12:00:00 AM | New | Memorandum | Corporal | Administrative Services Bureau | 2/22/2011 12:23:02 PM |
| 669 | Carney | Raemonica | 201102221 | Federal Agent Ambush/Murder | 2/22/2011 12:00:00 AM | New | Homeland Security Alert Bulletin | Corporal | Administrative Services Bureau | 2/22/2011 12:27:52 PM |
| 669 | Carney | Raemonica | 500-05 | Training | 2/28/2011 12:00:00 AM | New | General Orders | Corporal | Administrative Services Bureau | 2/22/2011 12:32:35 PM |
| 669 | Carney | Raemonica | 201103072 | SouthernLinc Use | 3/7/2011 12:00:00 AM | New | Memorandum | Corporal | Administrative Services Bureau | 3/24/2011 9:00:31 AM |
| 669 | Carney | Raemonica | 201103081 | Administrative Hours | 3/9/2011 12:00:00 AM | New | Memorandum | Corporal | Administrative Services Bureau | 3/24/2011 10:11:53 AM |
| 669 | Carney | Raemonica | 201103111 | Weight Room | 3/11/2011 12:00:00 AM | New | Memorandum | Corporal | Administrative Services Bureau | 3/24/2011 10:16:50 AM |
| 669 | Carney | Raemonica | 201103101 | Local Impact | 3/11/2011 10:17:27 AM | New | Memorandum | Corporal | Administrative Services Bureau | 3/24/2011 10:18:16 AM |
| 669 | Carney | Raemonica | 201103291 | Crimestoppers Program | 3/29/2011 2:14:15 PM | New | Memorandum | Corporal | Administrative Services Bureau | 4/1/2011 11:15:43 AM |
| 669 | Carney | Raemonica | 200-54 | SRO | 4/7/2011 12:00:00 AM | New | General Orders | Corporal | Administrative Services Bureau | 4/8/2011 4:28:23 PM |
| 669 | Carney | Raemonica | 201104061 | Staff Inspection Officer | 4/7/2011 8:14:20 AM | New | Memorandum | Corporal | Administrative Services Bureau | 4/8/2011 4:30:11 PM |
| 669 | Carney | Raemonica | C20110412 | Law Enforcement Ethics | 4/11/2011 12:00:00 AM | New | Training Activity | Corporal | Administrative Services Bureau | 4/19/2011 10:19:38 AM |

Report

| 669 | Carney | Raemonica | 100-80H.1 | Warrant Service Sheet | 4/18/2011 5:12:22 PM | New | General Orders Associated Form | Corporal | Administrative Services Bureau | 4/19/2011 11:51:44 AM |
|---|---|---|---|---|---|---|---|---|---|---|
| 669 | Carney | Raemonica | 201104272 | GO 100-35 Appearance | 4/27/2011 3:36:59 PM | New | Memorandum | Corporal | Administrative Services Bureau | 5/8/2011 10:08:12 AM |
| 669 | Carney | Raemonica | 100-90 | Crime Prevention and Community Involvement | 5/3/2011 12:00:00 AM | New | General Orders | Corporal | Administrative Services Bureau | 5/8/2011 10:35:23 AM |
| 669 | Carney | Raemonica | 200-11H.1 | Non Issued Personal Firearm Request/Qualification | 5/5/2011 2:07:42 PM | New | General Orders Associated Form | Corporal | Administrative Services Bureau | 5/12/2011 8:16:32 PM |
| 669 | Carney | Raemonica | 201105172 | Physical Agility Test | 5/18/2011 7:50:59 AM | New | Memorandum | Corporal | Administrative Services Bureau | 5/18/2011 11:06:42 AM |
| 669 | Carney | Raemonica | 200-53 R | Juvenile Operations | 5/16/2011 12:00:00 AM | New | General Orders | Corporal | Administrative Services Bureau | 5/18/2011 11:09:14 AM |
| 669 | Carney | Raemonica | 201105171 | Evidence Exigency US Supreme Court | 5/17/2011 12:00:00 AM | New | Legal Updates | Corporal | Administrative Services Bureau | 5/18/2011 1:19:30 PM |
| 669 | Carney | Raemonica | 201106141 | Facebook Safety for Law Enforcement | 6/14/2011 12:00:00 AM | New | Roll Call Training | Corporal | Administrative Services Bureau | 8/10/2011 4:18:46 PM |
| 669 | Carney | Raemonica | 201106171 | US DOS Driver's Licenses | 6/17/2011 12:00:00 AM | New | Legal Updates | Corporal | Administrative Services Bureau | 8/10/2011 4:57:38 PM |
| 669 | Carney | Raemonica | 200-51H | Dealing with Mentally Ill Persons | 6/24/2011 12:00:00 AM | Revised | General Orders | Corporal | Administrative Services Bureau | 8/10/2011 5:16:05 PM |
| 669 | Carney | Raemonica | 400-56H | Biased Based Profiling | 7/4/2011 12:00:00 AM | New | General Orders | Corporal | Administrative Services Bureau | 8/10/2011 5:30:27 PM |
| 669 | Carney | Raemonica | 300-60 | Interview Rooms | 7/18/2011 12:00:00 AM | Revised | General Orders | Corporal | Administrative Services Bureau | 8/10/2011 5:42:51 PM |
| 669 | Carney | Raemonica | 200-20 | Communications | | Revised | | Corporal | | |

Report

| Report | Last Name | First Name | Number | Title | Effective Date | Status | Type | Rank | Bureau | Modified Date |
|---|---|---|---|---|---|---|---|---|---|---|
| 669 | Carney | Raemonica | 100-36 | Inspections | 7/19/2011 12:00:00 AM | Revised | General Orders | Corporal | Administrative Services Bureau | 8/10/2011 5:58:37 PM |
| 669 | Carney | Raemonica | 200-42H | Mobile Data Terminals and Electronic Messaging | 7/26/2011 12:00:00 AM | Revised | General Orders | Corporal | Administrative Services Bureau | 8/10/2011 6:22:28 PM |
| 669 | Carney | Raemonica | 400-49 | Escorts | 8/1/2011 12:00:00 AM | Revised | General Orders | Corporal | Administrative Services Bureau | 8/10/2011 6:26:00 PM |
| 669 | Carney | Raemonica | 100-02 | ACJIC/NCIC Rules and Regulations | 5/25/2011 12:00:00 AM | Revised | General Orders | Corporal | Administrative Services Bureau | 8/10/2011 6:49:40 PM |
| 669 | Carney | Raemonica | 201106221 | Bomb & Explosive Devices Unit | 5/26/2011 9:21:50 AM | New | Memorandum | Corporal | Administrative Services Bureau | 8/10/2011 6:52:19 PM |
| 669 | Carney | Raemonica | 201106231 | Southern Linc Replacement | 6/22/2011 3:14:08 PM | New | Memorandum | Corporal | Administrative Services Bureau | 8/10/2011 6:58:33 PM |
| 669 | Carney | Raemonica | 201107131 | Critical Incidents | 6/24/2011 8:29:45 AM | New | Memorandum | Corporal | Administrative Services Bureau | 8/10/2011 7:06:51 PM |
| 669 | Carney | Raemonica | 100-12 | Volunteers | 7/13/2011 2:45:37 PM | New | General Orders | Corporal | Administrative Services Bureau | 8/10/2011 7:12:43 PM |
| 669 | Carney | Raemonica | 201108041 | Rescinding of Policy Manual and Supervisor PGO Man | 8/4/2011 10:59:41 AM | New | Memorandum | Corporal | Administrative Services Bureau | 8/10/2011 7:18:06 PM |
| 669 | Carney | Raemonica | WD201008171 | Court Attendance | 8/5/2011 4:50:17 PM | Revised | Written Directives | Corporal | Administrative Services Bureau | 8/10/2011 7:19:32 PM |
| 669 | Carney | Raemonica | Leave Request | Leave Request | 6/27/2011 12:00:00 AM | New | General Orders Associated Form | Corporal | Administrative Services Bureau | 8/10/2011 7:22:35 PM |
| 669 | Carney | Raemonica | 400-52 | Traffic Direction and Control | 7/19/2011 12:00:00 AM | Revised | General Orders | Corporal | Administrative Services Bureau | 8/10/2011 7:26:43 PM |

Report

| 669 | Carney | Raemonica | 201108042 | Firing Range Hours | 8/2/2011 12:00:00 AM | New | Memorandum | Corporal | Administrative Services Bureau | 8/10/2011 7:49:08 PM |
|---|---|---|---|---|---|---|---|---|---|---|
| 669 | Carney | Raemonica | 400-54 | Use of Speed Detection Devices | 8/8/2011 2:49:20 PM | Revised | General Orders | Corporal | Administrative Services Bureau | 8/10/2011 7:57:47 PM |
| 669 | Carney | Raemonica | 100-80H | Warrant/Subpoena process. | 8/24/2011 12:00:00 AM | Revised | General Orders | Corporal | Administrative Services Bureau | 9/6/2011 12:50:49 PM |
| 669 | Carney | Raemonica | 100-01 | Written Directive System | 8/20/2011 12:00:00 AM | Revised | General Orders | Corporal | Administrative Services Bureau | 9/6/2011 12:54:29 PM |
| 669 | Carney | Raemonica | 201108253 | Prisoner Transport Procedures | 8/26/2011 8:55:53 AM | New | Memorandum | Corporal | Administrative Services Bureau | 9/6/2011 12:58:04 PM |
| 669 | Carney | Raemonica | 201108262 | Security Measures | 8/26/2011 1:47:43 PM | New | Memorandum | Corporal | Administrative Services Bureau | 9/6/2011 1:01:47 PM |
| 669 | Carney | Raemonica | 200-53 | Juvenile Operations | 9/19/2011 12:00:00 AM | Revised | General Orders | Corporal | Administrative Services Bureau | 9/6/2011 1:03:01 PM |
| 669 | Carney | Raemonica | 201109161 | Emergency Escort Services | 9/19/2011 11:35:19 AM | New | Memorandum | Corporal | Administrative Services Bureau | 9/20/2011 10:23:45 AM |
| 669 | Carney | Raemonica | 200-84 | Terrorism Prevention Plan | 9/27/2011 12:00:00 AM | Revised | General Orders | Corporal | Administrative Services Bureau | 9/20/2011 10:31:26 AM |
| 669 | Carney | Raemonica | 400-53 | DUI Enforcement | 9/28/2011 12:00:00 AM | Revised | General Orders | Corporal | Administrative Services Bureau | 10/11/2011 11:46:18 AM |
| 669 | Carney | Raemonica | 201110101 | Lawsuit Notification | 10/10/2011 4:04:02 PM | New | Memorandum | Corporal | Administrative Services Bureau | 10/11/2011 11:56:48 AM |
| 669 | Carney | Raemonica | 100-52 | Social Media | 10/12/2011 4:01:55 PM | New | General Orders | Corporal | Administrative Services Bureau | 10/23/2011 10:05:30 AM |

Report

| | | | | Identification | | New | Memorandum | Corporal | Administrative Services Bureau | |
|---|---|---|---|---|---|---|---|---|---|---|
| 669 | Carney | Raemonica | 201109062 | | 9/22/2011 8:04:55 AM | New | Memorandum | Corporal | Administrative Services Bureau | 10/23/2011 10:22:45 AM |
| 669 | Carney | Raemonica | 400-55 | Vehicle Impound and Towing | 10/5/2011 12:00:00 AM | Revised | General Orders | Corporal | Administrative Services Bureau | 10/23/2011 10:36:52 AM |
| 669 | Carney | Raemonica | 100-56 R | Secondary and Extra-Duty Employment | 10/11/2011 12:00:00 AM | New | General Orders | Corporal | Administrative Services Bureau | 10/23/2011 10:43:46 AM |
| 669 | Carney | Raemonica | 300-10 | Use of Informants | 10/24/2011 12:00:00 AM | Revised | General Orders | Corporal | Administrative Services Bureau | 11/18/2011 7:56:09 AM |
| 669 | Carney | Raemonica | 100-25 | Fiscal Management | 10/27/2011 12:00:00 AM | Revised | General Orders | Corporal | Administrative Services Bureau | 11/18/2011 8:03:54 AM |
| 669 | Carney | Raemonica | 200-30 | Professional Standards | 10/27/2011 12:00:00 AM | Revised | General Orders | Corporal | Administrative Services Bureau | 11/18/2011 8:05:00 AM |
| 669 | Carney | Raemonica | 200-05H | Arrest Discretion and Authority | 10/31/2011 12:00:00 AM | Revised | General Orders | Corporal | Administrative Services Bureau | 11/18/2011 8:07:25 AM |
| 669 | Carney | Raemonica | 201110271 | Administrative Order - Juv Court of Hosuton County | 10/27/2011 3:44:34 PM | New | General Announcement | Corporal | Administrative Services Bureau | 11/18/2011 8:09:14 AM |
| 669 | Carney | Raemonica | 201111081 | Staging Directive (Temporary) | 11/8/2011 9:57:36 AM | New | Memorandum | Corporal | Administrative Services Bureau | 11/18/2011 9:20:28 AM |
| 669 | Carney | Raemonica | 201111091 | Awards Review Board Chairperson | 11/10/2011 10:42:09 AM | New | Memorandum | Corporal | Administrative Services Bureau | 11/18/2011 9:22:09 AM |
| 669 | Carney | Raemonica | 100-61 | Promotional procedures for sworn personnel. | 12/1/2011 12:00:00 AM | Revised | General Orders | Corporal | Administrative Services Bureau | 1/4/2012 9:41:30 AM |
| 669 | Carney | Raemonica | 300-40 | Criminal Intelligence | 12/1/2011 12:00:00 AM | Revised | General Orders | Corporal | Administrative Services Bureau | 1/4/2012 9:43:37 AM |
| 669 | Carney | Raemonica | 300-61 | Temporary Detention | 12/28/2011 12:00:00 AM | Revised | General Orders | Corporal | Administrative Services Bureau | 1/4/2012 9:50:37 AM |

Report

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 669 | Carney | Raemonica | 201110272 | Timesheets and Overtime Sheets Procedures | 10/31/2011 11:08:07 AM | New | Memorandum | Corporal | Administrative Services Bureau | 1/4/2012 9:56:03 AM |
| 669 | Carney | Raemonica | 201111292 | Patrol Evidence Locker Instructions | 11/29/2011 4:57:55 PM | New | Memorandum | Corporal | Administrative Services Bureau | 1/4/2012 9:59:49 AM |
| 669 | Carney | Raemonica | 300-40 Training Document | Briefing on Criminal Intelligence Process | 12/1/2011 9:43:58 AM | New | Roll Call Training | Corporal | Administrative Services Bureau | 1/4/2012 10:04:35 AM |
| 669 | Carney | Raemonica | 201112072 | Radio Signal Modifications | 12/7/2011 12:13:23 PM | New | Memorandum | Corporal | Administrative Services Bureau | 1/4/2012 10:06:25 AM |
| 669 | Carney | Raemonica | 201112161 | Guidelines for Covert Operations | 12/16/2011 1:58:34 PM | New | Memorandum | Corporal | Administrative Services Bureau | 1/4/2012 10:10:37 AM |
| 669 | Carney | Raemonica | 201201231 | Law Enforcement Lump Sum Payments | 1/23/2012 10:34:55 AM | New | Memorandum | Corporal | Administrative Services Bureau | 2/6/2012 11:53:18 AM |
| 669 | Carney | Raemonica | 201202061 | Law Enforcement Lump Sum Payments Update | 2/6/2012 10:18:07 AM | New | Memorandum | Corporal | Administrative Services Bureau | 2/6/2012 11:59:00 AM |
| 669 | Carney | Raemonica | 201202062 | Travel Request Routing | 2/7/2012 8:06:07 AM | New | Memorandum | Corporal | Administrative Services Bureau | 2/7/2012 8:21:19 AM |
| 669 | Carney | Raemonica | C20120208 | Veh Ops in Emergency Situations | 2/7/2012 12:00:00 AM | New | Training Activity | Corporal | Administrative Services Bureau | 3/1/2012 8:01:07 AM |
| 669 | Carney | Raemonica | 200-90H | Courtroom Security | 2/29/2012 12:00:00 AM | Revised | General Orders | Corporal | Administrative Services Bureau | 3/1/2012 8:17:21 AM |
| 669 | Carney | Raemonica | 201204302 | Emergency Radio Transmissions | 4/30/2012 12:00:00 AM | New | Roll Call Training | Corporal | Administrative Services Bureau | 5/15/2012 9:27:23 AM |
| 669 | Carney | Raemonica | 201204201 | Local Impact Coordinator Assignment | 4/20/2012 2:16:21 PM | New | Memorandum | Corporal | Administrative Services Bureau | 5/15/2012 9:28:33 AM |
| 669 | Carney | Raemonica | 201204301 | Alabama Dept of Forensic Sciences | 4/30/2012 4:30:23 PM | New | General Announcement | Corporal | Administrative Services Bureau | 5/15/2012 9:30:18 AM |

Report

| 669 | Carney | Raemonica | 200-11H | Weapons Authorization | 5/14/2012 12:00:00 AM | Revised | General Orders | Corporal | Administrative Services Bureau | 5/15/2012 9:36:16 AM |
|---|---|---|---|---|---|---|---|---|---|---|
| 669 | Carney | Raemonica | 100-14 | Reserves | 5/2/2012 3:10:49 PM | New | General Orders | Corporal | Administrative Services Bureau | 5/15/2012 9:39:34 AM |
| 669 | Carney | Raemonica | 200-44 | Polygraphs | 6/4/2012 12:00:00 AM | Revised | General Orders | Corporal | Administrative Services Bureau | 6/17/2012 10:15:58 AM |
| 669 | Carney | Raemonica | 201206081 | Sovereign Citizens on LEO During Traffic Stops | 6/8/2012 12:00:00 AM | New | Homeland Security Alert Bulletin | Corporal | Administrative Services Bureau | 6/17/2012 10:19:55 AM |
| 669 | Carney | Raemonica | 20100817I Revised 051712 | Court Attendance Directive Revised | 5/17/2012 11:02:09 AM | New | Written Directives | Corporal | Administrative Services Bureau | 6/17/2012 10:20:47 AM |
| 669 | Carney | Raemonica | 201206152 | Traffic Court Dates | 6/18/2012 11:14:02 AM | New | Memorandum | Corporal | Administrative Services Bureau | 6/19/2012 5:20:54 PM |
| 669 | Carney | Raemonica | 201207031 | Report Labeling | 7/9/2012 11:18:53 AM | New | Memorandum | Corporal | Administrative Services Bureau | 8/3/2012 6:14:30 PM |
| 669 | Carney | Raemonica | 201207311 | Alabama Texting Law Act. 2012-291 | 7/31/2012 9:58:19 AM | New | Memorandum | Corporal | Administrative Services Bureau | 8/3/2012 6:21:39 PM |
| 669 | Carney | Raemonica | 400-50 | Traffic Enforcement | 8/8/2012 12:00:00 AM | Revised | General Orders | Corporal | Administrative Services Bureau | 8/8/2012 12:33:33 PM |
| 669 | Carney | Raemonica | 201208093 | CALEA Presentation | 8/9/2012 4:49:05 PM | New | General Announcement | Corporal | Administrative Services Bureau | 8/30/2012 8:10:26 AM |
| 669 | Carney | Raemonica | 201208291 | Municipal Court Docket | 8/29/2012 4:00:25 PM | New | Memorandum | Corporal | Administrative Services Bureau | 8/30/2012 8:13:56 AM |
| 669 | Carney | Raemonica | 200-86 Rapid Response Team | Rapid Response Team | 10/8/2012 4:39:16 PM | New | General Orders | Corporal | Administrative Services Bureau | 10/8/2012 5:24:58 PM |
| 669 | Carney | Raemonica | 201209263 | Rapid Response Team Supervisor | 9/26/2012 10:26:53 AM | New | Memorandum | Corporal | Administrative Services Bureau | 10/17/2012 3:57:36 PM |

Report

| 669 | Carney | Raemonica | 201210021 | Dignitary Protection Team | 10/4/2012 11:54:49 AM | New | Memorandum | Corporal | Administrative Services Bureau | 10/17/2012 3:58:35 PM |
|---|---|---|---|---|---|---|---|---|---|---|
| 669 | Carney | Raemonica | 201210082 | Rapid Response Team Members | 10/8/2012 3:51:28 PM | New | Memorandum | Corporal | Administrative Services Bureau | 10/17/2012 4:00:28 PM |
| 669 | Carney | Raemonica | 201210241 | Off Duty Employment Coordinator (Cain) | 10/24/2012 1:59:13 PM | New | Memorandum | Corporal | Administrative Services Bureau | 10/24/2012 3:43:45 PM |
| 669 | Carney | Raemonica | 200-52 | Missing Persons | 10/24/2012 12:00:00 AM | Revised | General Announcement | Corporal | Administrative Services Bureau | 10/24/2012 3:45:38 PM |
| 669 | Carney | Raemonica | 200-95 | Animal Services | 10/26/2012 12:00:00 AM | New | General Orders | Corporal | Administrative Services Bureau | 12/17/2012 8:39:47 AM |
| 669 | Carney | Raemonica | 100-60 Recruitment | G.O. Revision | 12/3/2012 12:00:00 AM | Revised | General Orders | Corporal | Administrative Services Bureau | 12/17/2012 8:46:36 AM |
| 669 | Carney | Raemonica | 300-05 | Criminal Investigations | 12/5/2012 12:00:00 AM | Revised | General Orders | Corporal | Administrative Services Bureau | 12/17/2012 8:47:38 AM |
| 669 | Carney | Raemonica | 201211011 | Commitments through Judge of Probate | 11/1/2012 10:50:45 AM | New | General Announcement | Corporal | Administrative Services Bureau | 12/18/2012 11:19:30 AM |
| 669 | Carney | Raemonica | 201211091 | Obtaining Warrants | 11/9/2012 10:30:35 AM | New | General Announcement | Corporal | Administrative Services Bureau | 12/18/2012 11:23:20 AM |
| 669 | Carney | Raemonica | 201211141 | Advertising on City Vehicles | 11/14/2012 3:18:12 PM | New | Memorandum | Corporal | Administrative Services Bureau | 12/18/2012 11:25:39 AM |
| 669 | Carney | Raemonica | 201211151 | Delayed Report Entry | 11/15/2012 1:42:34 PM | New | Memorandum | Corporal | Administrative Services Bureau | 12/18/2012 11:27:56 AM |
| 669 | Carney | Raemonica | 201301041 | Theft by Fraudulent Leasing | 1/4/2013 3:17:39 PM | New | Memorandum | Corporal | Administrative Services Bureau | 1/9/2013 5:34:32 PM |
| 669 | Carney | Raemonica | 201301092 | Community Services Division | 1/9/2013 9:08:10 AM | New | Memorandum | Corporal | Administrative Services Bureau | 1/9/2013 5:37:44 PM |

Report

| 669 | Carney | Raemonica | 200-60 | Searches | 1/10/2013 12:00:00 AM | Revised | General Orders | Corporal | Administrative Services Bureau | 1/14/2013 12:35:06 PM |
|---|---|---|---|---|---|---|---|---|---|---|
| 669 | Carney | Raemonica | 201301174 | Promotion Presentation | 1/17/2013 11:43:23 AM | New | General Announcement | Corporal | Administrative Services Bureau | 1/23/2013 9:16:53 AM |
| 669 | Carney | Raemonica | 201103031 | K 9 Leadership | 3/4/2011 12:00:00 AM | New | Memorandum | Corporal | Administrative Services Bureau | 2/15/2013 11:34:19 AM |
| 669 | Carney | Raemonica | 201301282 | RSA Retirement Presentations | 1/28/2013 12:00:00 AM | New | Personnel Dept Document | Corporal | Administrative Services Bureau | 2/15/2013 12:16:21 PM |
| 669 | Carney | Raemonica | 201301311 | Transfer | 1/31/2013 2:12:59 PM | New | Memorandum | Corporal | Administrative Services Bureau | 2/15/2013 12:17:24 PM |
| 669 | Carney | Raemonica | 201302061 | Dignitary Protection Unit Application | 2/6/2013 9:38:25 AM | New | Memorandum | Corporal | Administrative Services Bureau | 2/15/2013 12:18:40 PM |
| 669 | Carney | Raemonica | 201302111 | Polygraphs | 2/11/2013 3:07:47 PM | New | Memorandum | Corporal | Administrative Services Bureau | 2/15/2013 12:22:05 PM |
| 669 | Carney | Raemonica | 201302121 | Media Information Officer | 2/12/2013 4:02:23 PM | New | Memorandum | Corporal | Administrative Services Bureau | 2/15/2013 12:22:32 PM |
| 669 | Carney | Raemonica | C20130215 Ethics | Law Enforcement Ethics | 2/15/2013 12:00:00 AM | New | Training Activity | Corporal | Administrative Services Bureau | 2/18/2013 9:02:21 |
| 669 | Carney | Raemonica | 201302151 | Transfers | 2/18/2013 9:41:00 AM | New | Memorandum | Corporal | Administrative Services Bureau | 2/18/2013 9:45:17 AM |
| 669 | Carney | Raemonica | 100-30 | Departmental Property | 2/18/2013 2:52:53 PM | Revised | General Orders | Corporal | Administrative Services Bureau | 2/18/2013 11:32:56 PM |
| 669 | Carney | Raemonica | 200-80 | Unusual Occurrences | 2/26/2013 12:00:00 AM | Revised | General Orders | Corporal | Administrative Services Bureau | 2/28/2013 7:48:40 AM |
| 669 | Carney | Raemonica | 201302251 | National Crime Victims' Rights Week Awards | 2/25/2013 2:18:24 PM | New | General Announcement | Corporal | Administrative Services Bureau | 2/28/2013 7:50:56 AM |

Report

| 669 | Carney | Raemonica | 201302252 | 7K Schedule | 2/25/2013 3:44:54 PM | New | Memorandum | Corporal | Administrative Services Bureau | 2/28/2013 7:52:08 AM |
|---|---|---|---|---|---|---|---|---|---|---|
| 669 | Carney | Raemonica | 201303051 | Special Response Team | 3/6/2013 11:04:57 AM | New | Memorandum | Corporal | Administrative Services Bureau | 3/13/2013 10:19:36 PM |
| 669 | Carney | Raemonica | 201302261 | Dignitary Protection Detail | 3/6/2013 8:29:31 AM | New | Memorandum | Corporal | Administrative Services Bureau | 3/13/2013 10:20:41 PM |
| 669 | Carney | Raemonica | 201303141 | Annual Awards Nominations | 3/15/2013 8:12:25 AM | New | Memorandum | Corporal | Administrative Services Bureau | 3/21/2013 3:58:58 PM |
| 669 | Carney | Raemonica | 100-35 | Appearance | 3/14/2013 2:16:32 PM | Revised | General Orders | Corporal | Administrative Services Bureau | 3/25/2013 10:09:05 AM |
| 669 | Carney | Raemonica | 201303142 | Name Tags | 3/15/2013 8:14:23 AM | New | Memorandum | Corporal | Administrative Services Bureau | 3/25/2013 10:09:42 AM |
| 669 | Carney | Raemonica | 201304032 | Community Watch Coordinator | 4/3/2013 5:06:09 PM | New | Memorandum | Corporal | Administrative Services Bureau | 4/15/2013 4:10:57 PM |
| 669 | Carney | Raemonica | 201304052 | DPD 2013 Goals and Objectives | 4/5/2013 1:30:52 PM | New | General Announcement | Corporal | Administrative Services Bureau | 4/15/2013 4:13:15 PM |
| 669 | Carney | Raemonica | 201304051 | Community Services / SRO Sergeant Position | 4/5/2013 3:44:41 PM | New | Memorandum | Corporal | Administrative Services Bureau | 4/15/2013 4:13:50 PM |
| 669 | Carney | Raemonica | 201304054 | Transfers / Assignments | 4/5/2013 4:03:30 PM | New | Memorandum | Corporal | Administrative Services Bureau | 4/15/2013 4:14:40 PM |
| 669 | Carney | Raemonica | 201304151 | Transfers | 4/15/2013 3:34:02 PM | New | Memorandum | Corporal | Administrative Services Bureau | 4/15/2013 4:15:43 PM |
| 669 | Carney | Raemonica | 201304231 | Transfers / Assignments | 4/23/2013 9:10:56 AM | New | Memorandum | Corporal | Administrative Services Bureau | 4/23/2013 9:19:43 AM |
| 669 | Carney | Raemonica | 201304301 | Comm Services / Community Watch Dist Coordinator | 5/1/2013 8:24:55 AM | New | Memorandum | Corporal | Administrative Services Bureau | 5/1/2013 8:28:05 AM |

Report

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 669 | Carney | Raemonica | 200-10H | Response to Resistance | 5/8/2013 12:00:00 AM | Revised | General Orders | Corporal | Administrative Services Bureau | 5/22/2013 11:33:42 AM |
| 669 | Carney | Raemonica | 201305011 | VICE Investigator Position | 5/2/2013 10:47:30 AM | New | Memorandum | Corporal | Administrative Services Bureau | 5/22/2013 11:34:38 AM |
| 669 | Carney | Raemonica | 201305021 | Internal Investigations Notifications | 5/3/2013 9:29:29 AM | New | Memorandum | Corporal | Administrative Services Bureau | 5/22/2013 5:07:47 PM |
| 669 | Carney | Raemonica | 201305083 | Crimestoppers Coordinator | 5/8/2013 11:10:14 AM | New | Memorandum | Corporal | Administrative Services Bureau | 5/22/2013 5:08:35 PM |
| 669 | Carney | Raemonica | 201305212 | Community Impact Team | 5/21/2013 11:14:04 AM | New | Memorandum | Corporal | Administrative Services Bureau | 5/22/2013 5:09:26 PM |
| 669 | Carney | Raemonica | 201305081 | Promotions | 5/8/2013 11:05:49 AM | New | Memorandum | Corporal | Administrative Services Bureau | 5/22/2013 5:10:00 PM |
| 669 | Carney | Raemonica | 201305082 | Off Duty Gas Mileage Reports | 5/8/2013 11:08:45 AM | New | Memorandum | Corporal | Administrative Services Bureau | 5/22/2013 5:10:29 PM |
| 669 | Carney | Raemonica | 201305084 | Police Promotions Presentation Announcement | 5/8/2013 11:12:35 AM | New | General Announcement | Corporal | Administrative Services Bureau | 5/22/2013 5:10:47 PM |
| 669 | Carney | Raemonica | 201305171 | Use of Force and Vehicle Pursuit Form Change | 5/17/2013 9:48:25 AM | New | Memorandum | Corporal | Administrative Services Bureau | 5/22/2013 9:25:35 PM |
| 669 | Carney | Raemonica | 201305172 | VICE Sergeant Position | 5/17/2013 2:54:23 PM | New | Memorandum | Corporal | Administrative Services Bureau | 5/22/2013 9:26:06 PM |
| 669 | Carney | Raemonica | 201305211 | Transfers | 5/21/2013 11:10:01 AM | New | Memorandum | Corporal | Administrative Services Bureau | 5/22/2013 9:27:21 PM |
| 669 | Carney | Raemonica | 300-21 | Video Recording | 6/12/2013 12:00:00 AM | Revised | General Orders | Corporal | Administrative Services Bureau | 6/14/2013 10:17:08 AM |
| 669 | Carney | Raemonica | 201306031 | Firearms and Ammunition | 6/3/2013 3:59:24 PM | New | Memorandum | Corporal | Administrative Services Bureau | 6/14/2013 10:19:16 AM |

Report

| 669 | Carney | Raemonica | 201306032 | Recovery of Non Evidentiary Property | 6/3/2013 4:02:04 PM | New | Memorandum | Corporal | Administrative Services Bureau | 6/14/2013 10:20:26 AM |
| 669 | Carney | Raemonica | 201306062 | Transfers | 6/6/2013 1:49:06 PM | New | Memorandum | Corporal | Administrative Services Bureau | 6/14/2013 10:20:48 AM |
| 669 | Carney | Raemonica | 201306061 | Private Property Collision Reports | 6/6/2013 4:37:01 PM | New | Memorandum | Corporal | Administrative Services Bureau | 6/14/2013 10:23:58 AM |
| 669 | Carney | Raemonica | 201306201 | E-Cite | 6/20/2013 12:00:00 AM | New | Memorandum | Corporal | Administrative Services Bureau | 7/3/2013 2:31:39 AM |
| 669 | Carney | Raemonica | 201306202 | Bi-Annual Discipline Report | 6/24/2013 12:56:14 PM | New | Memorandum | Corporal | Administrative Services Bureau | 7/3/2013 2:32:27 AM |
| 669 | Carney | Raemonica | 201306281 | Transfers | 6/28/2013 10:20:17 AM | New | Memorandum | Corporal | Administrative Services Bureau | 7/3/2013 2:34:22 AM |
| 669 | Carney | Raemonica | 201308021 | Criminal Investigations Division | 8/2/2013 10:47:49 AM | New | Memorandum | Corporal | Administrative Services Bureau | 8/6/2013 9:15:43 AM |
| 669 | Carney | Raemonica | 400-05H | Patrol Operations | 7/26/2013 12:00:00 AM | Revised | General Orders | Corporal | Administrative Services Bureau | 8/6/2013 9:18:12 AM |
| 669 | Carney | Raemonica | 100-72 | Records | 7/26/2013 12:00:00 AM | Revised | General Orders | Corporal | Administrative Services Bureau | 8/6/2013 9:43:16 AM |
| 669 | Carney | Raemonica | 200-40H | Vehicle Operations | 8/5/2013 12:00:00 AM | Revised | General Orders | Corporal | Administrative Services Bureau | 8/6/2013 11:28:00 AM |
| 669 | Carney | Raemonica | 100-64 | Light Duty, Pregnancy | 8/5/2013 12:00:00 AM | New | General Orders | Corporal | Administrative Services Bureau | 8/6/2013 11:34:54 AM |
| 669 | Carney | Raemonica | 201307121 | Acting Chief of Police | 7/12/2013 11:27:09 AM | New | Memorandum | Corporal | Administrative Services Bureau | 8/9/2013 11:12:24 AM |
| 669 | Carney | Raemonica | 201307161 | Transfers | 7/16/2013 3:50:50 PM | New | Memorandum | Corporal | Administrative Services Bureau | 8/9/2013 11:12:41 AM |

Report

| 669 | Carney | Raemonica | 201307221 | Promotion | 7/22/2013 9:18:27 AM | New | Memorandum | Corporal | Administrative Services Bureau | 8/9/2013 11:23:35 AM |
|---|---|---|---|---|---|---|---|---|---|---|
| 669 | Carney | Raemonica | 201307251 | Assignments | 7/25/2013 8:36:53 AM | New | Memorandum | Corporal | Administrative Services Bureau | 8/9/2013 11:24:08 AM |
| 669 | Carney | Raemonica | 201307252 | Acting Chief of Police | 7/25/2013 8:39:34 AM | New | Memorandum | Corporal | Administrative Services Bureau | 8/9/2013 11:24:23 AM |
| 669 | Carney | Raemonica | 201307253 | Acting ISB Commander | 7/26/2013 9:07:21 AM | New | Memorandum | Corporal | Administrative Services Bureau | 8/9/2013 11:24:54 AM |
| 669 | Carney | Raemonica | 201308081 | Transfer | 8/8/2013 10:05:43 AM | New | Memorandum | Corporal | Administrative Services Bureau | 8/9/2013 11:25:47 AM |
| 669 | Carney | Raemonica | 201308091 | Proof of Fitness Form | 8/9/2013 9:51:05 AM | New | Memorandum | Corporal | Administrative Services Bureau | 8/9/2013 11:27:11 AM |
| 669 | Carney | Raemonica | 201308092 | Leave Procedures | 8/9/2013 9:52:36 AM | New | Memorandum | Corporal | Administrative Services Bureau | 8/9/2013 11:30:49 AM |
| 669 | Carney | Raemonica | 200-80-13 | Unusual Occurrences | 6/11/2013 12:00:00 AM | New | Training Activity | Corporal | Administrative Services Bureau | 8/9/2013 12:01:26 PM |
| 669 | Carney | Raemonica | 100-07 | Goals and Objectives | 8/14/2013 12:00:00 AM | Revised | General Orders | Corporal | Administrative Services Bureau | 8/19/2013 4:41:26 PM |
| 669 | Carney | Raemonica | 201308271 | Acting Chief of Police | 8/27/2013 1:00:34 PM | New | Memorandum | Corporal | Administrative Services Bureau | 8/28/2013 8:04:13 AM |
| 669 | Carney | Raemonica | 201309031 | S32s at Fun Zone | 9/3/2013 1:37:55 PM | New | Memorandum | Corporal | Administrative Services Bureau | 9/4/2013 9:38:31 AM |
| 669 | Carney | Raemonica | 201309051 | Transfer | 9/5/2013 10:34:52 AM | New | Memorandum | Corporal | Administrative Services Bureau | 9/6/2013 3:58:41 PM |
| 669 | Carney | Raemonica | 201309041 | Transfers | 9/4/2013 10:02:46 AM | New | Memorandum | Corporal | Administrative Services Bureau | 9/6/2013 3:59:51 PM |

Report

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 669 | Carney | Raemonica | 201309052 | Officer of the Year Award Nominations | 9/6/2013 2:37:43 PM | New | Memorandum | Corporal | Administrative Services Bureau | 9/6/2013 4:00:44 PM |
| 669 | Carney | Raemonica | 201309091 | Canine Handler Position | 9/9/2013 11:31:26 AM | Revised | Memorandum | Corporal | Administrative Services Bureau | 9/11/2013 10:35:41 AM |
| 669 | Carney | Raemonica | 201309161 | Reports Involving Juveniles | 9/16/2013 1:40:22 PM | New | Memorandum | Corporal | Administrative Services Bureau | 9/17/2013 9:51:11 PM |
| 669 | Carney | Raemonica | 201309171 | Transfer | 9/17/2013 4:05:13 PM | New | Memorandum | Corporal | Administrative Services Bureau | 9/17/2013 9:52:13 PM |
| 669 | Carney | Raemonica | 201309231 | Bomb Squad and Dignitary Protection Unit | 9/24/2013 12:00:00 AM | New | Memorandum | Corporal | Administrative Services Bureau | 9/24/2013 10:29:09 AM |
| 669 | Carney | Raemonica | 201309241 | Transfer | 9/24/2013 12:00:00 AM | New | Memorandum | Corporal | Administrative Services Bureau | 9/24/2013 4:09:30 PM |
| 669 | Carney | Raemonica | 201309271 | Physical Exams | 9/27/2013 12:00:00 AM | New | Memorandum | Corporal | Administrative Services Bureau | 9/27/2013 4:54:16 PM |
| 669 | Carney | Raemonica | 201309252 | Administrative Services Bureau Captain Duties | 9/25/2013 12:00:00 AM | New | Memorandum | Corporal | Administrative Services Bureau | 9/27/2013 4:56:50 PM |
| 669 | Carney | Raemonica | 201309251 | Alabama Peace Officers' Association | 9/25/2013 12:00:00 AM | New | Memorandum | Corporal | Administrative Services Bureau | 9/27/2013 4:58:29 PM |
| 669 | Carney | Raemonica | 201310071 | Vice Position | 10/7/2013 12:00:00 AM | New | Memorandum | Corporal | Administrative Services Bureau | 10/10/2013 10:18:16 AM |
| 669 | Carney | Raemonica | 201310072 | Promotions and Assignments | 10/7/2013 12:00:00 AM | New | Memorandum | Corporal | Administrative Services Bureau | 10/10/2013 10:49:46 AM |
| 669 | Carney | Raemonica | 201310081 | Polygraph Examiner Position | 10/9/2013 12:00:00 AM | New | Memorandum | Corporal | Administrative Services Bureau | 10/10/2013 10:51:10 AM |
| 669 | Carney | Raemonica | 300-20H | Evidence and Property | 10/9/2013 12:00:00 AM | Revised | General Orders | Corporal | Administrative Services Bureau | 10/10/2013 10:52:34 AM |

Report

| Report | Last | First | Document ID | Title | Date | Status | Type | Rank | Bureau | Timestamp |
|---|---|---|---|---|---|---|---|---|---|---|
| 669 | Carney | Raemonica | 201310111 | Acting Chief of Police | 10/11/2013 12:00:00 AM | New | Memorandum | Corporal | Administrative Services Bureau | 10/20/2013 10:08:38 AM |
| 669 | Carney | Raemonica | 201310181 | Honor Guard | 10/18/2013 12:00:00 AM | New | Memorandum | Corporal | Administrative Services Bureau | 10/20/2013 10:09:26 AM |
| 669 | Carney | Raemonica | 201310182 | Bomb and Explosive Devices Unit | 10/18/2013 12:00:00 AM | New | Memorandum | Corporal | Administrative Services Bureau | 10/20/2013 10:10:11 AM |
| 669 | Carney | Raemonica | 201310182R | Bomb and Explosive Devices Unit - REVISED | 10/21/2013 12:00:00 AM | New | Memorandum | Corporal | Administrative Services Bureau | 10/24/2013 9:09:57 AM |
| 669 | Carney | Raemonica | 201310241 | Polygraph Examiner | 10/24/2013 12:00:00 AM | New | Memorandum | Corporal | Administrative Services Bureau | 11/12/2013 11:17:29 AM |
| 669 | Carney | Raemonica | 300-30 | Crime Scene Processing | 10/25/2013 12:00:00 AM | Revised | General Orders | Corporal | Administrative Services Bureau | 11/12/2013 11:17:49 AM |
| 669 | Carney | Raemonica | 201311082 | Assignments / Transfers | 11/8/2013 12:00:00 AM | New | Memorandum | Corporal | Administrative Services Bureau | 11/12/2013 11:24:04 AM |
| 669 | Carney | Raemonica | 201311082R | Assignments and Transfers REVISED | 11/8/2013 12:00:00 AM | New | Memorandum | Corporal | Administrative Services Bureau | 11/12/2013 11:24:28 AM |
| 669 | Carney | Raemonica | 201311081 | Promotions | 11/8/2013 12:00:00 AM | New | Memorandum | Corporal | Administrative Services Bureau | 11/12/2013 11:25:42 AM |
| 669 | Carney | Raemonica | 2014 Taser Recertification | Taser Recertification | 11/1/2013 12:00:00 AM | New | Training Recertification | Corporal | Administrative Services Bureau | 11/13/2013 9:55:33 AM |
| 669 | Carney | Raemonica | 201311151 | Recruiting Team Leader | 11/15/2013 12:00:00 AM | New | Memorandum | Corporal | Administrative Services Bureau | 11/22/2013 8:04:26 AM |
| 669 | Carney | Raemonica | 201312021 | Transfer | 12/2/2013 12:00:00 AM | New | Memorandum | Corporal | Administrative Services Bureau | 12/4/2013 8:09:57 AM |

# DOTHAN POLICE DEPARTMENT
## GENERAL ORDER 100-41
### *Code of Ethics*




**Purpose:** To establish that all sworn personnel of the Dothan Police Department shall abide by the Law Enforcement Code of Ethics as published by the Dothan Police Department.

**Policy:** It is the policy of the Dothan Police Department that all personnel will receive ethics training regarding this general order and any other training related to ethics at least biennially.

## I.   GENERAL

A. **Primary Responsibility as a Police Officer:** A police officer acts as an official representative of government who is required and trusted to work within the law. The officer's powers and duties are conferred by statute. The fundamental duties of a police officer include serving the community; safeguarding lives and property; protecting the innocent; keeping the peace; and ensuring the rights of all to liberty, equality, and justice.

B. **Performance of the Duties of a Police Officer:** A police officer shall perform all duties impartially; without favor or affection or ill will; and without regard to status, sex, race, religion, political belief, or aspiration. All citizens will be treated equally with courtesy, consideration, and dignity.

Officers will never allow personal feelings, animosity, or friendships to influence official conduct. Laws will be enforced appropriately and courteously and, in carrying out their responsibilities, officers will strive to obtain maximum cooperation from the public. They will conduct themselves in appearance and deportment in such a manner as to inspire confidence and respect for the position of public trust they hold.


DEFENDANT'S EXHIBIT

Cloyd      30

G.O. 100-41                         Page 1 of 3

CITY OF DOTHAN/CARNEY 000817
CONFIDENTIAL

C. **Discretion:** A police officer will responsibly use the discretion vested in the position and exercise it within the law. The principle of reasonableness will guide the officer's determinations and the officer will consider all surrounding circumstances in determining whether any legal action shall be taken.

Consistent and wise use of discretion, based on professional policing competence, will do much to preserve good relationships and retain the confidence of the public. There can be difficulty in choosing between conflicting courses of action. It is important to remember that a timely word of advice which may be correct in appropriate circumstances, rather than arrest, can be a more effective means of achieving a desired end.

D. **Use of Force:** A police officer will never employ unnecessary force or violence, and will use only such force in the discharge of duty as is reasonable in all circumstances. While the use of force is occasionally unavoidable, every police officer will refrain from applying the unnecessary infliction of pain or suffering and will never engage in cruel, degrading, or inhuman treatment of any person.

E. **Confidentiality:** Whatever a police officer sees, hears, or learns of, which is of a confidential nature, will be kept secret unless the performance of duty or legal provision requires otherwise.

Members of the public have a right to security and privacy, and information obtained about them must not be improperly divulged.

F. **Integrity:** A police officer will not engage in acts of corruption or bribery, nor will an officer condone such acts by other police officers.

The public demands that the integrity of police officers be above reproach. Police officers must, therefore, avoid any conduct that might compromise integrity and thus undercut the public confidence in a law enforcement agency. Officers will refuse to accept any gifts, presents, subscription, favors, gratuities, or promises that could be interpreted as seeking to cause the officer to refrain from performing official responsibilities honestly and within the law. Police officers must not receive private or special advantage from their official duty. Respect from the public cannot be bought; it can only be earned and cultivated.

G. **Cooperation with Other Officers and Agencies:** Police officers will cooperate with all legally authorized agencies and their representatives in the pursuit of justice. An officer's own agency may be one among many organizations that provide law enforcement services to a jurisdiction. It is imperative that police officers assist colleagues fully and completely with respect and consideration at all times.

H. **Personal/Professional Capabilities:** Police officers will be responsible for their own standard of professional performance and will take every reasonable opportunity to enhance and improve their level of knowledge and competence.

Through study and experience, a police officer can acquire the high level of knowledge and competence essential for the efficient and effective performance of duty. The

CITY OF DOTHAN/CARNEY 000818
CONFIDENTIAL

acquisition of knowledge is a never-ending process of personal and professional development that should be pursued constantly.

I. **Private Life:** Police officers will behave in a manner that does not bring discredit to their agencies or themselves.

A police officer's character and conduct, while off duty, must always be exemplary, thus maintaining a position of respect in the community in which he or she lives and serves. The officer's personal behavior must be beyond reproach.

## II.   LAW ENFORCEMENT CODE OF ETHICS – IACP/DPD

*AS A LAW ENFORCEMENT OFFICER, my fundamental duty is to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation and the peaceful against violence or disorder; and to respect the constitutional rights of all to liberty, equality and justice.*

*I WILL keep my private life unsullied as an example to all and will behave in a manner that does not bring discredit to me or to my agency. I will maintain courageous calm in the face of danger, scorn or ridicule; develop self-restraint; and be constantly mindful of the welfare of others. Honest in thought and deed both in my personal and official life, I will be exemplary in obeying the law and the regulations of my department. Whatever I see or hear of a confidential nature or that is confided to me in my official capacity will be kept ever secret unless revelation is necessary in the performance of my duty.*

*I WILL never act officiously or permit personal feelings, prejudices, political beliefs, aspirations, animosities or friendships to influence my decisions. With no compromise for crime and with relentless prosecution of criminals, I will enforce the law courteously and appropriately without fear or favor, malice or ill will, never employing unnecessary force or violence and never accepting gratuities.*

*I RECOGNIZE the badge of my office as a symbol of public faith, and I accept it as a public trust to be held so long as I am true to the ethics of police service. I will never engage in acts of corruption or bribery, nor will I condone such acts by other police officers. I will cooperate with all legally authorized agencies and their representatives in the pursuit of justice.*

*I KNOW that I alone am responsible for my own standard of professional performance and will take every reasonable opportunity to enhance and improve my level of knowledge and competence. I will constantly strive to achieve these objectives and ideals, dedicating myself before God to my chosen profession . . . law enforcement.*

CITY OF DOTHAN/CARNEY 000819
CONFIDENTIAL

# DOTHAN POLICE DEPARTMENT

## GENERAL ORDER 100-50

### _Code of Conduct_




**Purpose**: The purpose of this Order is to establish uniform rules of conduct and responsibilities required by employees and prohibited acts on the part of employees of the Dothan Police Department.

**Policy**:  This Order is to serve as a guideline and is not intended to encompass all policies, rules and/or regulations that may be stated elsewhere in the policy manual. It shall be departmental policy to provide employees with written rules and regulations that define what is expected of them with respect to their conduct and responsibilities. Employees are required to follow all directives and adhere to all rules and regulations imposed upon them by policy and by law.

## I. GENERAL

    A. Officers and employees shall not commit any acts or omit any acts, which constitute a violation of any of the rules, regulations, directives, policies or orders of the Police Department or of the City of Dothan; whether cited in this Order, the City of Dothan Personnel Rules Manual, or elsewhere. A copy of the policy manual is maintained on the City of Dothan Intranet network and available for all employees.

    B. Disciplinary actions that may be taken as a result of a violation of a policy, procedure, rule, or regulation of the Dothan Police Department are established in the _City of Dothan Personnel Rules and Regulations Employee Handbook_.

    C. Each incident will be based on the merits of that case.

## II. CONDUCT UNBECOMING AN OFFICER

    A. An officer must at all times, on duty and off duty, conduct himself in a manner which does not bring discredit to himself, the Department, the City of Dothan, or law enforcement in general.

DEFENDANT'S EXHIBIT

Cloyd   31

CITY OF DOTHAN/CARNEY 000802
CONFIDENTIAL

B. Conduct unbecoming an officer/employee shall include any conduct or personal association that brings the Department into disrepute; which adversely affects the morale or efficiency of the Department; has an adverse effect on the employee's job performance, or which has a tendency to destroy public respect for employees and confidence in the Department.

C. To sustain conduct unbecoming an officer, it is not necessary that the alleged conduct be criminal in nature. The basis for disciplinary action will be a preponderance of the evidence.

D. Typical examples of conduct unbecoming officers include, but are not limited to:

1. Repeated or flagrant violations of laws or ordinances;

2. Unreasonably vulgar or profane language in public;

3. Attempting to improperly affect the disposition of a traffic ticket or other case;

4. Assault on a fellow officer/employee;

5. Misappropriation of City/Departmental Property;

6. Intentionally damaging or attempting to damage City property;

7. Intentional interference with legal processes or cases;

8. Removal and/or release of Departmental records without authorization;

9. Possession/use of illegal drugs/substances;

10. Horseplay with firearms or other City Property;

11. Failure to cooperate with an internal investigation;

12. Public criticism of a Supervisor or Peer.

D. Any employee, to include a civilian employee, who observes or has knowledge of any other employee who is engaged in criminal activity, or any other activity which may be included in Section II. B. shall be obligated to report such activity in writing to the Office of the Chief of Police. This report should be submitted no later than eight hours after the beginning of the next working day following the observation or receipt of knowledge of the aforementioned activity.

## III. INSUBORDINATION

A. An officer may be disciplined or discharged for his speech or conduct before a superior officer if it is bitter, discourteous, abusive, profane, or threatening. Failing to carry out a lawful order when directed is insubordination.

B. Compliance with Lawful Orders: The Department is organized with a clearly defined chain of command. Obedience to a superior's lawful command is essential for the safe and prompt performance of law enforcement operations. Lawful orders, commands, rules, regulations, or directives shall be followed by all employees.

## IV. DERELICTION OF DUTY

A. An employee carries with him the responsibility for the safety of the community and

G.O. 100-50                              Page 2 of 15

CITY OF DOTHAN/CARNEY 000803
CONFIDENTIAL

his fellow employees. He discharges that responsibility by the faithful and diligent performance of his/her assigned duties. Members of the Department shall promptly and punctually perform these duties.

B. Dereliction/Neglect of duty shall include but not be limited to:

1. Failure to arrest or notify a superior officer/ employee of a serious violation of the law which the officer/employee has knowledge and jurisdiction over;

2. Failure to report for duty, to include failure to report in answer to a judicial subpoena;

3. Failure to respond to a call for service;

4. Cowardice in the performance of duty, defined as shrinking away from danger or responsibility without justifiable cause;

5. Failure to respond when called via radio;

6. Sleeping on duty;

7. Repeatedly leaving assigned area without notifying communications or a superior officer/employee;

8. Allowing escape of a prisoner through negligence or willful conduct or actions.

## V. ABUSE OF POSITION

A. Employees shall not use their official position, official identification cards or badges to solicit any of the following:

1. Personal or financial gain, other than as outlined in this section;

2. Obtaining privileges not otherwise available to them except in the performance of duty;

3. Avoiding the consequences of illegal acts.

B. Failure to report any knowledge of an activity that could be construed as bribery is incompatible with the efficient operation of the Department and is grounds for dismissal.

C. Soliciting Gifts, Gratuities, Fees, Rewards, Loans, Etc.: Officers and employees shall not solicit any gift, gratuity, fee, reward, or loan, where there is a direct or indirect connection between the solicitation and their employment by or membership in the Police Department, unless approved by the Chief of Police.

D. Accepting Discounted Meals: Officers of the Dothan Police Department are authorized to accept discounted meals at restaurants which provide them; provided that the following guidelines are met:

1. The officer is "on-duty" at the time the discounted meal is offered and accepted;

2. The discounted meal is available to all on-duty police officers of this department;

3. The officer does not solicit the discount for the meal. This provides that even though it may be the establishment's policy to provide the discount, NO

CITY OF DOTHAN/CARNEY 000804
CONFIDENTIAL

officer shall remind establishment's employees that such discount is expected;

    4. The officer utilizes the discount no more than once a tour of duty at any given establishment;

    5. The discount is only to be accepted by departmental personnel. The discount is not to be accepted for any family members, friends, or acquaintances, which may be present with officer; the giving of the discount or the receipt thereof does not provide any expectation to receive any kind of benefit for the restaurant, the department or officer.

    6. The Chief of Police may at his discretion, alter, change or restrict this policy to correct abusive action that may result due to violations of the policy.

E. Accepting Gifts, Gratuities, Fees, Loans, Etc.: Officers and employees shall not accept, either directly or indirectly, any gift, gratuity, fee, loan, or any other thing of value arising from or offered because of police employment or any activity connected with such employment unless approved by the Chief of Police. Officers and employees shall not accept any gift, gratuity, fee, loan, or anything of value, when the acceptance might tend to influence, directly or indirectly, the actions of the member or employee or any other member or employee in any manner of police business, or which might tend to cast an adverse reflection on the Police Department or any officer or employee of the Department.

F. Acceptance of Rewards, Gifts and Gratuities by Departmental Bureaus or Sections: Any individual Departmental Bureau and/or Section may accept a gift or gratuity, provided that it is offered as a measure of appreciation and thoughtfulness, and that every member of that Bureau and/or section that was involved in the act being rewarded is included and provided for. Further, before acceptance of any gift or gratuity with a value exceeding $50.00, expressed authorization from the Chief of Police in the form of a written memorandum shall be obtained and filed with the Bureau Commander. (Unsolicited food items are excluded from this section.)

G. Disposition of Unauthorized Gifts, Gratuities, Etc.: Any unauthorized gift, gratuity, loan, fee, reward, or other thing falling into any of the above categories which come into the possession of any officer or employee will be forwarded to the Chief of Police together with a written report explaining the surrounding circumstances. The Chief of Police will make the final determination concerning the disposition of the item in question.

H. Endorsements and Referrals: Officers shall not recommend or suggest in any manner, while in the course of their official duties, the employment or procurement of a particular product, professional service, or commercial service (such as an attorney, ambulance service, towing service, bondsman, mortician, etc.). In the case of ambulance or towing service, when such service is necessary and the person needing the service is unable or unwilling to procure it or requests assistance, officers shall proceed in accordance with established departmental procedures.

## VI. INCOMPETENCY, INEFFICIENCY, AND/OR UNSATISFACTORY PERFORMANCE

A. Officers shall maintain sufficient competency to properly perform their duties and assume the responsibilities of their positions.

G.O. 100-50　　　　　　　　　　　　　　Page 4 of 15

CITY OF DOTHAN/CARNEY 000805
CONFIDENTIAL

B. Officers shall perform their duties in a manner, which will maintain the highest standards of efficiency in carrying out the functions and objectives of the Department.

C. Unsatisfactory performance may be demonstrated by a lack of knowledge of the application of laws required to be enforced; an unwillingness or inability to perform assigned tasks; the failure to conform to work standards established for the officer's rank, grade, or position; the failure to take appropriate action on the occasion of a crime, disorder, or other condition deserving police attention; or absence without leave. This list is not, nor is it intended to be, all-inclusive.

D. Repeated poor evaluations and/or a written record of repeated infractions of rules regulations, directives, policies, or orders of the Department may be considered prima facie evidence of unsatisfactory performance.

## VII. CONFORMANCE TO LAWS

A. Officers are expected to obey all laws of the United States and of any State and local jurisdiction in which the officers are present.

B. Officers/employees will notify their Bureau Commander as soon as possible when they are arrested for any violation of law or become aware that they are considered a suspect in any crime.

C. The Chief of Police, Major and the respective Bureau Commander will consider the nature and frequency of the offense when determining if departmental action is necessary.

## VIII. REPORTING FOR DUTY

A. Officers shall report for duty at the time and place required by assignment or orders and shall be physically and mentally fit to perform their duties.

B. They shall be properly equipped and cognizant of information required for the proper performance of duty so that they may immediately assume their duties.

C. Judicial subpoenas shall constitute an order to report for duty under this section.

D. Calls dispatched by the Communications Center shall be considered orders of the Chief of Police and shall be carried out immediately. Any deviations shall require the affected personnel to submit a PD 12 explaining the reason for the deviation.

## IX. PUBLIC STATEMENTS AND APPEARANCES

A. Employees shall not publicly criticize or ridicule the Department, its policies, or other officers/employees by speech, writing, or other expression, where such speech, writing, or other expression is defamatory, obscene, or unlawful, and undermines the effectiveness of the Department, interferes with the maintenance of discipline, is detrimental to the welfare and good name of the Department, or is made with reckless disregard for the truth. Employees shall not address public gatherings, appear on radio or television, prepare any articles for publication, act as correspondents to a newspaper, internet blog or newspaper, or a periodical, release, or divulge, investigative information or any other matters of the Department as a department representative without proper authority from the Office of the Chief of Police.

## X. USE/MISUSE OF ALCOHOL AND/OR DRUGS

CITY OF DOTHAN/CARNEY 000806
CONFIDENTIAL

A. Use of Alcohol on Duty: Officers shall not consume intoxicating beverages while on-duty, or off-duty in uniform, except in the performance of duty and then only under specific and proper orders of a superior officer or when circumstances dictate. Officers shall not be under the influence of alcohol when reporting for duty. Officers shall not purchase alcohol when on-duty or in uniform or operating a departmental vehicle, even for consumption at a later time.

B. Possession and Use of Drugs: Employees shall not possess or use for personal consumption any controlled substances, narcotics, or hallucinogens except prescribed for treatment by a physician or dentist. When taking prescribed controlled substances or nonprescription medication likely to cause drowsiness, or other impairment, employees shall notify their superior officer.

C. Intoxication Verification: When reasonable grounds exist to believe an on-duty employee may be intoxicated (two supervisors must concur), that employee may be ordered to submit to chemical test(s) of his blood, breath, or urine to determine the presence of any alcohol or drug content, and the extent thereof. Employee Health Clinic form number 100 must be completed. Failure to obey an order to submit to chemical test(s) may result in charges of insubordination.

D. Use of Alcohol Off-Duty: Employees shall refrain from consuming intoxicating beverages to the extent that it results in impairment, intoxication, or obnoxious or offensive behavior which discredits them or the Department, or renders that employee unfit to report for their next regular tour of duty.

E. An arrest for and/or a pattern of intoxication are grounds for dismissal.

## XI. CARE AND MAINTENANCE OF EQUIPMENT

A. All equipment issued to employees of this Department is and remains the property of the Dothan Police Department.

B. Certain items issued by the Department are considered disposable, and need not be returned upon termination of employment (for example; shoes). However, these items must be present or accounted for during the course of employment.

C. It shall be the responsibility of each and every employee of this Department to properly care for and practice proper preventive maintenance for equipment issued for their use, and/or equipment of a general nature, which employees may come into contact with.

D. An employee who comes into contact with any piece of equipment, which is defective, soiled, broken, requires servicing, or is otherwise inoperable, shall immediately report such finding to his/her supervisor.

E. Under normal conditions, employees shall utilize Departmental equipment only for its intended use, in accordance with established Departmental procedures, and shall not unnecessarily abuse, damage, or lose Departmental equipment/property. All Departmental equipment shall be maintained in proper order at all times.

## XII. MISUSE OF FIREARMS

A. Officers shall not use or handle weapons in a careless or imprudent manner.

B. Typical examples of misuse of firearms include but are not limited to:

G.O. 100-50                          Page 6 of 15

CITY OF DOTHAN/CARNEY 000807
CONFIDENTIAL

1. Pointing any firearm at a fellow officer;

2. Firing any type of unauthorized ammunition that damages the weapon;

3. Negligent shooting of another;

4. Drawing a weapon in public except for inspection by a superior or for official duty reasons;

5. Carrying a loaded shotgun/rifle in the Police Department building.

6. Violation of safety rules and regulations while on the firing range.

## XIII. FAILURE TO PAY DEBTS

Employees are expected to meet their civil monetary liabilities. In addition, employees are not to establish any financial relationships that present a conflict of interest, or compromise the image of the Department.

## XIV. MISTREATMENT OF PRISONERS AND CITIZENS

An officer lawfully acting within the scope of his authority does not deprive persons of their civil liberties. However, when an officer exceeds his authority by unreasonable or unnecessary use of force or by negligent conduct which results in a deprivation of an arrestee or citizen's civil liberties, he violates the sanctity of the law which he is sworn to uphold and is subject to disciplinary and/or civil action and/or criminal prosecution.

## XV. INTERVENTION AND INTERFERENCE

A. Employees shall not interfere with or hinder the legal and legitimate official actions of other officers or by any other government agency unless ordered to intervene by a superior officer or the intervening officer believes beyond a reasonable doubt that a manifest injustice would result from failure to take immediate action.

B. Officers shall notify their immediate supervisor, as soon as reasonably possible, when the officer initiates any investigation or official action, which is not part of their regular duties. Officers may, however, take immediate appropriate action as necessary.

C. Officers/employees shall treat the official business of the Department as confidential. Information regarding official business shall be disseminated only to those for whom it is intended, in accordance with established, written departmental procedures.

D. Officers may remove or copy official records of reports from a police installation only in accordance with established, written departmental procedures.

E. Officers shall not divulge the identity of persons giving confidential information except as authorized by proper authority.

## XVI. SEXUAL AND RACIAL HARASSMENT

A. The Equal Employment Opportunity Commission (EEOC) has issued guidelines setting forth the Commission's interpretation regarding sexual and racial harassment as a violation of Title VII of the Civil Rights Act of 1964. These guidelines are consistent with our policy that conduct by employees which creates an intimidating, hostile, or offensive working environment in regards to sexual or racial matters will not be tolerated; and those violating this policy may be subject to disciplinary action up to and including discharge. Any employee who feels that he or she has been subjected to

CITY OF DOTHAN/CARNEY 000808
CONFIDENTIAL

sexual or racial harassment is urged to contact his supervisor, Office of the Chief of Police, the City of Dothan EEO Officer, the Assistant Personnel Director, Personnel Analyst or the Personnel Director.

B. A supervisor of the Dothan Police Department who receives notification either in writing or verbally of the sexual or racial harassment of an employee, shall immediately document such notification in a signed memorandum to the Chief of Police providing the following information at a minimum:

1. Name of person subjected to the harassment;

2. Name of the person(s) conducting the harassment;

3. Time, date, and location of the harassment;

4. Brief description of incident;

5. Indication as to whether this is an isolated incident or a recurring pattern, if known;

6. Any other detail significant to the incident.

C. The memorandum will be hand carried by the employee documenting the notification of harassment to the Office of the Chief of Police. The Personnel Director and City of Dothan EEO Officer shall be notified immediately.

D. The Chief, upon receipt of the documented notification, will evaluate and determine if a criminal offense or misconduct involving Police Department personnel has occurred. If an investigation is necessary the Office of the Chief of Police will conduct the investigation utilizing any of the following methods.

1. Appointment of an internal investigator, Major or a Bureau Commander who will report their findings directly to the Chief;

2. Request an outside agency to investigate the allegation and report their findings directly to the Chief;

3. Investigate the incident himself.

E. Investigative findings and reports will be handled in accordance with policy established in the City of Dothan Employee Handbook.

F. Employees who are the victims of sexual or racial harassment are encouraged to take the matter directly to **their supervisor**, the Office of the Chief of Police, EEO Officer, the Assistant Personnel Director or Personnel Analyst.

## XVII. TELEPHONE AND TELEPHONE USAGE

A. Officers of this department are required to have a telephone contact number at all times and to supply the Department with the telephone number. Officers shall notify the Chief's Office in writing of any change of the telephone number or the address of their residence by completing a City of Dothan Employee Information Change Form PF186A within three days of such change.

B. Officers on paid leave status from the police department shall be responsible for returning telephone calls, pages, and/or messages from supervisory personnel of the police department as soon as possible.

C. Employees of this Department shall not use Department telephones for long distance

CITY OF DOTHAN/CARNEY 000809
CONFIDENTIAL

calls except on departmental business or authorized by a supervisor. Telephone calls will be kept to a minimum and of a minimum duration.

D. Officers may, at their discretion, choose to possess a cellular telephone while on duty. However, personal calls must be limited while on duty. Officers may choose to use their cellular phone for departmental business at their expense. Officers shall exercise special care when using a cellular phone while operating a department vehicle and comply with any and all laws associated with the use of personal communications devices. The Chief of Police may revoke this privilege at any time.

## XVIII. RESIDENCE

Officers shall physically reside where they can respond to the Police Department within thirty (30) minutes from the time notified. Newly hired officers are required to comply with the residence requirement in accordance with established City of Dothan policy. Failure by any officer to comply with this requirement may result in termination.

## XIX. REQUESTS FOR ASSISTANCE

When any person requests assistance; to make a report; to be contacted by an officer, or lodge a complaint, either by telephone or in person, all pertinent information will be obtained in an official and courteous manner and will be properly acted upon consistent with established departmental procedures.

## XX. DEPARTMENTAL REPORTS

A. Officers shall submit all necessary reports on time and in accordance with established departmental procedures.

B. Reports submitted by officers shall be truthful and complete, and no officer shall knowingly enter or cause to be entered any inaccurate, false, or improper information, except as required in the performance of duty.

## XXI. PROCESSING PROPERTY AND EVIDENCE

A. Property or evidence which has been discovered, gathered, or received in connection with departmental responsibilities will be processed in accordance with established departmental procedures.

B. Officers shall not convert to their own use, conceal, manufacture, falsify, destroy, remove, tamper with, or withhold any property or evidence in connection with an investigation or other police action, except in accordance with established departmental procedures.

## XXII. ABUSE OF PROCESS

Officers shall not make false accusations in a criminal or traffic enforcement action or case.

## XXIII. SLEEPING ON DUTY

Officers shall remain awake and alert while on duty [Exceptions must be made in advance of the specific assignment; i.e., stakeouts]. If unable to do so, they shall report such to their supervisor immediately.

CITY OF DOTHAN/CARNEY 000810
CONFIDENTIAL

## XXIV. LEAVING DUTY POST

Officers shall not leave their assigned duty posts during a tour of duty without first seeking and receiving the permission of their supervisor; receiving dispatched instructions or upon the lawful order of a superior officer.

## XXV. MEAL BREAKS

Officers on 7K work schedule shall be permitted to suspend patrol or other assigned activity for a period of forty-five (45) minutes, subject to immediate recall at any time, generally for the purpose of having meals during their tour of duty. All other employees shall limit their meal break as approved by Department policy or their Supervisor. Such break shall be only at such time and place, within or contiguous to the City limits, as approved by their immediate supervisor.

## XXVI. GAMBLING

Officers shall not engage or participate in any form of illegal gambling at any time, except in the performance of duty and while acting under proper and specific orders from a Superior Officer or the Chief of Police. Except as outlined above; officers shall not engage in any form of gambling while on duty or in uniform.

## XXVII. IDENTIFICATION

A. Employees and volunteers shall be issued a Dothan Police Department Identification Card when employed with the Department. The identification card for sworn personnel shall include a minimum of the Dothan Police Department patch, officer rank and name, officer photograph, officer employee number, name of the Chief of Police and be clearly marked POLICE at the bottom of the card. Retired Officers and non-sworn department personnel shall be issued Identification cards that are clearly marked RETIRED. Identification cards for regular, non-sworn members of the Department shall include a minimum of the Dothan Police Department patch, persons name, photograph, employee number, name of the Chief of Police and be clearly marked, STAFF at the bottom of the card. Identification cards for volunteer, non-sworn members of the Department shall include a minimum of the Dothan Police Department patch, persons name, photograph, employee number, name of the Chief of Police and be clearly marked, AUXILIARY or CHAPLAIN at the bottom of the card. All issued identification cards shall remain the property of the Dothan Police Department.

B. Officers shall carry their badge and Dothan Police Department Identification Card all times while on duty, except when impractical or dangerous to their safety or to an investigation. Officers shall have their badge and police department identification card readily available at all times while within the jurisdiction, whether on or off duty when armed.

C. Officers shall furnish their name and employee identification card for viewing to any person requesting that information when they are on duty or while holding themselves out as having an official capacity, except when the withholding of such information is necessary for the performance of police duties or is authorized by proper authority.

D. Regular, Auxiliary and Chaplain Members shall wear their Dothan Police Department Identification Cards plainly visible when working and are encouraged to carry and

G.O. 100-50                          Page 10 of 15

CITY OF DOTHAN/CARNEY 000811
CONFIDENTIAL

have their identification cards readily available when off duty. Police Officers when in civilian attire and on duty shall wear their Dothan Police Department Identification cards plainly visible unless to do so would compromise their safety or interfere with an investigation.

## XXVIII. CITIZEN COMPLAINTS

Officers/Employees shall courteously direct any complaint made by a citizen against any employee of the Department to the Shift Supervisor or Professional Standards. Officers/Employees shall follow established departmental procedures for processing complaints *(G.O. 200-30, Professional Standards).*

## XXIX. COURTESY

Officers/Employees shall be courteous to the public. Officers/Employees shall be tactful in the performance of their duties, control their tempers, exercise patience and discretion, and shall not engage in argumentative discussion. In the performance of duty, officers/employees shall not use coarse, violent, profane, or insolent language or gestures, and shall not express any prejudice concerning race, religion, politics, national origin, lifestyle, or similar personal characteristics.

## XXX. OPERATING VEHICLES

Officers shall operate official vehicles in a careful and prudent manner, and shall obey all laws and all departmental orders pertaining to such operation *(General Order 200-40H).* Loss or suspension of any driving license shall be immediately reported to the Bureau Commander.

## XXXI. CARRYING FIREARMS

A. Officers shall carry firearms in accordance with law and established departmental procedures *(See G.O. 200-11H, Weapons Authorization).*

B. Any officer carrying his department-issued firearm while off duty must have his badge and I.D. card readily available. Any officer carrying a personal weapon while off duty must have his badge and I.D. card readily available when within the jurisdiction. Anytime an officer is relying upon his position for the authority to carry a weapon, he must have his badge and I.D. card readily available.

## XXXII. TRUTHFULNESS

Upon the order of the Chief, the Chief's designee, or a superior officer, employees shall truthfully answer all questions specifically directed and related to the scope of employment and operations of the Department, which may be asked of them.

Any employee found to be intentionally untruthful may be subject to termination, aside from any additional improper conduct discovered.

## XXXIII. ARREST, SEARCH, AND SEIZURE

Officers shall not make any arrest, search or seizure when they know or should know that it is contrary to law or departmental procedure.

## XXXIV. TARDINESS INCIDENTS

G.O. 100-50                                           Page 11 of 15

CITY OF DOTHAN/CARNEY 000812
CONFIDENTIAL

A. Employees are expected to be at work at the assigned time. Any officer or employee arriving for duty later than the scheduled time shall be considered tardy.

B. If the officer's supervisor feels that the officer or employee has an excusable reason for being tardy, he may excuse the tardiness, with no further involvement.

C. If, in the opinion of the Supervising Officer, the reason for tardiness is not excusable, the supervisor may take action in accordance with the City of Dothan Personnel Rules and Regulations as outlined in the Employee Handbook.

## XXXV. USE OF TOBACCO

A. Officers, when on duty and/or in uniform, may use tobacco as long as:

1. They are not in formation;

2. They must not leave their assignment/post for the sole purpose of doing so;

3. They are not engaged in traffic direction and/or control;

4. They are not engaged in official police business with a citizen.

5. They are not within the Police Headquarters Building or other tobacco prohibited area.

## XXXVI. CONDUCT TOWARD SUPERIORS, SUBORDINATES, & ASSOCIATES

A. All employees shall treat superior officers, subordinates, and associates with respect. They shall be courteous and civil at all times in their relationships with one another. Employees are forbidden to injure or discredit other employees by capricious conduct or by abusive language. When on duty and particularly in the presence of other officers, employees, or the public, officers shall be referred to by rank.

B. Ranking officers shall, by example, demonstrate proper deportment and desirable attitudes in dealing with the public and their subordinates. Authority in the department shall be exercised to the end that justice and fairness are accomplished. Supervisors are forbidden to injure or discredit those under their authority by tyrannical or capricious conduct or by abusive language.

## XXXVII. LABOR ACTIVITIES

Officers and employees shall not engage in any strike. A strike action includes the concerted failure to report for duty, willful absence from one's position, taking unauthorized holidays, sickness unsubstantiated by a physician's statement, the stoppage of work, or the abstinence in whole or in part from the full, faithful and proper performance of the duties of employment for the purpose of inducing, influencing or coercing a change in conditions, compensation, rights, privileges, or obligations of employment.

## XXXVIII. MEMBERSHIP IN ORGANIZATIONS

A. Officers and employees of this Department shall not affiliate with, or become a member of, any organization if such affiliation or membership would in any way impede or prevent their effective duty performance, or bring the credibility and integrity of the Department into question.

B. Officers and employees shall not affiliate with or become a member of any

CITY OF DOTHAN/CARNEY 000813
CONFIDENTIAL

organization whose purpose, objective or reputation is, or has been shown to be, directed toward unlawful or illegal activities; except with permission from the Chief of Police specifically for legitimate law enforcement purposes.

C. Determination of violations of this section shall reside with the Office of the Chief of Police.

## XXXIX. REPORTING ACCIDENTS

A. Accidents involving department vehicles, property, personnel, and/or equipment must be reported in accordance with procedures established by Departmental policy (*G.O. 400-51, Traffic Accident Investigation* and the City of Dothan Motor Vehicle Operations Policy located in the Employee Handbook).

B. The supervisor of the operator involved in a motor vehicle accident shall submit necessary reports setting forth his findings relative to the responsibility or negligence on the part of the operator to the Chief of Police as soon as practical.

C. If the Officer is off duty when the accident occurs, the on-duty supervisor shall submit the necessary reports to the Chief of Police.

## XL. RADIO INSTRUCTIONS

A. All messages transmitted over the police radio system or Mobile Data Terminals (MDT) by any officer or communications personnel shall be direct and concise and shall conform to all departmental radio procedures and the rules and regulations of the Federal Communications Commission.

B. Officers are required to answer all radio calls in accordance with *General Order 200-20, Communications*. No officer shall fail to obey or refuse to acknowledge any communication or lawful order or direction transmitted by the Communications Center, unless directed to do so by a superior officer or supervisor.

## XLI. CIVIL DISPUTES

All officers shall take a neutral position in any dispute of a civil nature, acting only to prevent or control any breach of the peace that may arise and only take actions necessary to that end and/or in accordance with established policies or law.

## XLII. AWARENESS OF ACTIVITIES

A. Upon returning to duty from any period of absence, all officers and employees shall inform themselves about all new orders, regulations, memoranda and all other important matters governing their assignments to include checking their department email account, PowerDMS account, bulletin board and monitors located in their division.

B. A sworn officer shall familiarize himself with all the laws, statutes, ordinances and regulations necessary for the proficient execution of his duty as a Law Enforcement Officer.

## XLIII. KNOWLEDGE OF THE COMMUNITY

Every officer shall familiarize himself with the geography of the community, including routes of public transportation, the location of streets, highways, bridges, schools, public

CITY OF DOTHAN/CARNEY 000814
CONFIDENTIAL

buildings and places, hospitals, courts, transportation offices and stations, prominent or important office buildings, large industrial plants or commercial establishments, and such other information as may be disseminated by his superior officers from time to time.

## XLIV. LEAVING THE CITY LIMITS

A. Whenever it is necessary in the performance of duty for an officer to leave the city limits of Dothan, he shall request permission for such leave from his supervisor. Upon receipt of approval, the officer shall inform the Communications Center of his intentions prior to leaving the City Limits and notify the Communications Center upon return.

B. If an emergency prevents following the procedure outlined in paragraph "A", the officer must notify supervisor as soon as possible.

## XLV. MUTUAL PROTECTION

All officers shall come to the immediate aid, assistance, or protection of fellow officers, who in the performance of their duties require such aid and assistance.

## XLVI. PERSONAL RELATIONSHIPS

All officers and employees of this Department shall be considerate and polite at all times to all department personnel and maintain good relations with their superiors and their fellow officers in a spirit of mutual concern for their common objectives.

## XLVII. PHYSICAL OR PSYCHOLOGICAL EXAMINATION

An officer/employee shall submit to a physical, medical or psychological examination, at the expense of the Department, when so directed by the Chief of Police.

## XLVIII. PHYSICAL FITNESS

The nature of the job of law enforcement requires a certain degree of physical fitness and mental alertness. Officers are expected to keep themselves as physically fit as their age permits. Supervisors should allow a reasonable amount of time during a shift for sworn personnel to physically train to remain fit for duty. Public Safety and response times should not be diminished. Employees are encouraged to utilize city resources for physical fitness as well as any wellness programs or medical check ups that may be offered. **See also General Order 100-37 Physcial Fitness.**

## XLIX. TRIALS AND HEARINGS

All officers concerned with cases before the courts, grand jury, or bond hearings shall be punctual in attendance. All officers shall have the cases in which they are concerned properly prepared and their evidence suitably arranged for presentation to the court, grand jury or hearing board. They shall afford the utmost respect toward the court, officers of hearing boards, and members of the jury. When presenting evidence or testimony they shall speak calmly and explicitly in a clear, distinct and audible tone so as to be easily understood. They shall give evidence with accuracy, confining themselves to the case before the court. When cross-examined by a defense attorney, they shall answer with the same civility and readiness as when giving testimony in support of the prosecution.

CITY OF DOTHAN/CARNEY 000815
CONFIDENTIAL

## L. DEPARTMENTAL LETTERHEAD

Employees shall not use the Department Letterhead for private correspondence or for sending official correspondence out of the Department without the permission from the Office of the Chief of Police.

## LI. MAILING ADDRESS

Officers and employees shall not use the Department as a mailing address for private purposes, without permission of the Chief of Police. At no time will the Department be used as mailing address for the purpose of a motor vehicle license or registration.

## LII. USE OF PRIVATE VEHICLES

While an officer or employee is on regular Departmental duty he shall not drive a privately owned vehicle to accomplish Departmental business, unless authorized to do so by a Bureau or Division Commander, Major or the Chief of Police.

## LIII. FRATERNIZATION

Social relationships may develop between employees from time to time. Although such consensual relationships are a matter of personal choice and privacy between the individuals involved, any adverse effect that such relationships have on the Department will not be tolerated. This is necessary to avoid misunderstandings; actual or potential conflicts of interest, complaints of favoritism, possible claims of sexual harassment or hostile work environment, and the morale and dissension problems that can result from fraternization.

Dating, cohabitation or sexual intimacy between supervisors and personnel under their supervision, or between two supervisors in the same chain of command, are clearly inappropriate and are prohibited. Additionally, dating, cohabitation or sexual intimacy between personnel assigned to the same precinct and shift, or specialized unit are prohibited.

Should two employees wish to be involved in a relationship which would be prohibited by this code of conduct, they must request through the chain of command that one party be transferred to another chain of command before beginning or continuing a relationship. The responsibility and mandatory obligation to disclose the existence of the relationship will rest with the supervisor or senior employee involved.

Failure by an employee to report a relationship as required will constitute misconduct and may subject an employee to disciplinary action.

CITY OF DOTHAN/CARNEY 000816
CONFIDENTIAL

CARNEY-00080

CARNEY-00080



DEFENDANT'S
EXHIBIT

Cloyd  32

FILED

FEB 13 1976

JANE P. GORDON, CE

DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

GLENNIE WIGGINS, et al.,      )

   Plaintiffs,   )

vs.         )  CIVIL ACTION NO. 75-57-S

R. H. HOLLIS, JR., et al., )

   Defendants.   )

<u>CONSENT DECREE</u>

  This Class Action was filed on June 3, 1975, challenging various

employment practices and procedures by the City of Dothan, Alabama.

More particularly, the Plaintiffs claimed that black persons were being

discriminated against by the City on the basis of race in the City's re-

cruiting, hiring, promoting, assigning, and testing practices. On the

28th day of July, 1975, the Defendants filed their Answer denying that

any of them had discriminated against or were discriminating against the

named Plaintiffs or any members of the class they represent.

  NOW, in resolution and settlement of all pending claims and

allegations, and without adjudication of the merits, the Parties agree

to the entry of and to be bound by the following Order and Decree:

I

  It is ORDERED, ADJUDGED AND DECREED that all of the De-

fendants, including the City of Dothan, the Citizens Supervisory Committee,

the Personnel Board, and the City Commission, their agents, assigns,

employees, successors in office, and all those acting in concert or par-

ticipating with them, be and the same are hereby permanently enjoined

from discriminating on the basis of race against the named Plaintiffs and

the members of the class they represent in recruiting, hiring, promoting,

assigning, and testing all job applicants and/or City employees.

II

  It is further ORDERED, ADJUDGED AND DECREED:

DEFENDANT'S
EXHIBIT

Cloyd  33

A. The Citizens Supervisory Committee shall be expanded so that at least 25% of the organizations and clubs comprising the CSC shall have substantially black memberships. The following four organizations with predominantly black members shall be added immediately to the Citizens Supervisory Committee:

    1. The Dothan Chapter of the National Association for the Advancement of Colored People,

    2. The Dothan Elks' Club (Black),

    3. The Young Men's Civic Club of Dothan,

    4. The Renaissance Wives' Club.

B. The City will immediately commence an affirmative action recruitment program designed to attract qualified applicants from the black community. In addition to continuing its present affirmative action recruitment policies and efforts, the City will:

    1. Advertise all positions (classified and unclassified) and publicize all employment tests in the Dothan Eagle, in block form, three times in a ten day period, prior to the filling of the position or the taking of the test. In addition, each classified position, each supervisory unclassified position, and each employment test shall, prior to its filling or taking, be publicized at least three times in a ten day period on WDIG radio in Dothan.

    2. Each job or test announcement shall include the expression "the City of Dothan is an equal opportunity employer M/F".

    3. The City shall establish a speaker's bureau, comprised of the Mayor, City Commission, the Personnel Board, the Personnel Director, and the City's EEO Officer, which will schedule and present talks to black civic, social, fraternal, church, and civic groups in Dothan about job opportunities for blacks with the City.

    4. Commence recruitment efforts at the predominantly black colleges and universities in Alabama, including Tuskegee and Alabama State University.

    5. Include pictures of black persons and black employees in all promotional literature prepared by or for the City of Dothan.

C. The City will immediately initiate the following changes and reforms in its job testing policies and practices:

CARNEY-00089

1. Continue present test validation efforts, including but not limited to, preparing valid task analyses, evaluation forms, etc.

2. Stop using the present entry level police and fire entry level written tests and the police sergeant written promotional test. The City will immediately employ police and fire testing experts agreed to by the parties, and allow those persons to develop a job related test and/or screening device for the three positions which will comply with E.E.O.C. requirements. The screening device for the position of sergeant will consist, in addition to a written test, of evaluations, on-the-job performance, etc. to be determined by the testing expert and the Chief of the Police Department.

3. Continue evaluating and validating each of the other employment tests given by the City until all tests have been shown to be job related in accordance with E.E.O.C. standards and guidelines in existence at the time of the entry of this Decree.

4. Implement a remedial program to help job applicants prepare for police and fire written promotional tests. This would include advice and guidance from the Department Head on books and resource materials which will be of assistance in preparing for promotional tests and/or screening devices. The Department Head shall also be responsible for providing such books and resource materials to interested applicants.

D. The City shall appoint one person to act as EEO Officer for the City. The person holding this position shall be responsible to defendants for implementing the provisions of this Decree and the provisions of the "Affirmative Action Plan". This individual shall further be responsible to defendants for ensuring that all employment tests and screening devices used by the City are validated in accordance with EEOC guidelines, for ensuring that the provisions of this Decree and the "Affirmative Action Plan" are being complied with, for receiving, processing, and following up on any complaints of racial discrimination made by any black applicant, employee, and/or community person, and for preparing a "Personnel Policy Manual" for the City's EEO program.

E. The Defendant Police Chief and Defendant Fire Chief, their employees, successors in office, and all persons acting in concert with them shall:

1. Be enjoined from discriminating against black employees in assignments.

-3-

CARNEY-00090

2. Be required to cross-train and assign black em-
ployees in the same manner that white employees
are cross-trained and assigned.

3. Be enjoined from discriminating against black em-
ployees in on-the-job training and schooling.

4. Be required to train and send to schools, training
sessions, etc. black employees on the same basis
as white employees.

5. Be required to assign and allow black employees
to patrol and serve all sections of the City of Dothan.

6. Be required to see that black employees and white
employees shall drive, eat, sleep and work together
while on duty.

7. Be enjoined from using the word "nigger" or any
other deprecatory term for a black person.

8. Be required to accord black employees all of the
rights and privileges given white employees, includ-
ing, but not limited to, shift assignments, work
schedules, etc.

F. The City shall establish a procedure whereby each time a black
applicant or black employee is referred by the Personnel Board for a position
and is not hired, the appointing authority shall be responsible for explaining,
in detail, his reason for not hiring the black person. This explanation shall
be in writing and shall be forwarded to the EEO officer who shall satisfy him-
self that the reasons given are valid and nondiscriminatory. If the EEO
officer is not so satisfied, then he shall report the matter to the Personnel
Board which shall investigate the matter, conduct a hearing with notice to all
parties, and thereafter be authorized to direct the appointment if the Board
determines an applicant has been rejected or discriminated against because
of his race.

G. The present promotion register for the position of Sergeant in
the Dothan Police Department shall be abolished and the Police Chief of the
City of Dothan shall be authorized to make provisional appointments for such
positions until an acceptable validated written test and/or screening device
can be developed for use in filling this position. The Plaintiff Williams will
receive a provisional appointment within 30 days as a Sergeant in the Dothan

CARNEY-00091

Police Department, with all the rights and privileges and duties of any other Sergeant, and when the validated written test and/or screening device have been developed, he will then take such written test and, if he achieves a passing grade, he shall retain the position of Sergeant. In the event the Plaintiff Williams does not pass such written test, he may be demoted from the position of Sergeant or assigned to such other positions in the Dothan Police Department as the Police Chief deems appropriate at such time.

H. The "Affirmative Action Plan" previously prepared and filed by the City of Dothan with the Court, in the case styled Yelverton v. Driggers, Civil Action No. 1305-S (M.D. Ala.), shall be made a part of and shall be incorporated into this Consent Decree. All of the Defendants shall be required to comply with the provisions of this "Affirmative Action Plan".

I. Defendants shall file with the Court and with Plaintiffs' counsel on an annual basis for a period of four years from the date of the entry of this Decree, a report outlining the extent of compliance with the terms and provisions of this Decree.

J. The City shall pay all court costs and expenses incurred by Plaintiffs in this litigation and shall pay Plaintiffs' attorney a reasonable attorney's fee.

DONE this the 13th day of February, 1976.

_____
United States District Judge

_____
Attorney for the Plaintiffs

_____
_____
**Attorneys for the Defendants**

CARNEY-00092

**FILED**

IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE

DISTRICT OF ALABAMA, SOUTHERN DIVISION

JUL 22 1976

JANE P. GORDON, CLERK

DEPUTY CLERK

GLENNIE WIGGINS; et al., )
)
Plaintiffs, )
)
v. )          CIVIL ACTION NO. 75-57-S
)
R. H. HOLLIS; et al., )
)
Defendants. )

O R D E R

The joint petition of the parties filed herein July 20, 1976, by and through their attorneys of record, asking this Court to modify and amend Paragraph "B" of the consent decree entered and approved by this Court in this case on February 13, 1976, is ORDERED to be and is hereby granted; said consent decree heretofore entered is amended pursuant to said joint motion to modify and amend.

Done, this the 22nd day of July, 1976.

UNITED STATES DISTRICT JUDGE

CARNEY-00093

FILED

JUL 20 1976

JANE P. GORDON, CLERK

BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

GLENNIE WIGGINS, et al.,      )
                             )
        Plaintiffs,          )
                             )
VS.                          )     CIVIL ACTION NO. 75-57-S
                             )
R.H. HOLLIS, JR., et al.,    )
                             ).
        Defendants.          )

JOINT PETITION TO MODIFY CONSENT DECREE

    Come now the Parties, by and through their attorneys, and

respectfully petition the Honorable Court to modify and amend

Paragraph "B." of the Consent Decree, entered and approved by

the Court on February 13, 1976, in the following manner:

    B.      The City will immediately commence an
            affirmative action recruitment program designed
            to attract qualified applicants from the black
            community.  In addition to continuing its
            present affirmative action recruitment policies
            and efforts, the City will:

        1.   Fill positions (classified and unclassified) as
             follows:

            (a)  LABORERS (Unclassified).  Place requests
                 for laborers with the Alabama State
                 Employment Service for the required number
                 of laborers needed as vacancies occur
                 and are to be filled.

            (b)  ENTRY LEVEL POSITIONS (Classified).  All
                 openings and vacancies for entry level
                 positions with the City of Dothan will be
                 advertised in The Dothan Eagle in block
                 form at least three (3) times and will be
                 broadcast in spot announcements on WDIG
                 Radio at least three (3) times during
                 the ten (10) day period immediately prior
                 to the giving of employment tests for
                 said position and/or the filling of said
                 position.  Additionally, all City de-
                 partments will be notified by memorandum
                 to be posted on Department Bulletin
                 Boards of entry level positions that
                 are vacant and are to be filled.

CARNEY-00094

(c)  CLASSIFIED VACANCIES (Other Than Entry
     Level) OR CLASSIFIED PROMOTIONS.

     (1)  All vacancies and/or promotions
          for classified positions, other
          than entry level classified
          positions, shall be advertised
          internally in all Departments
          within the City. Such positions
          will be advertised by the posting
          of Memoranda to all Department
          Heads in hours at all times _____
          days prior to the cut-off date
          for receiving for said position.
          Said Memoranda, which are to be
          prepared and issued by the City
          Personnel Department, shall give
          information regarding the position
          including, but not limited to, the
          name of the position, minimum
          qualifications for the position,
          and the closing date for receiving
          applications for said position.

     (2)  In the event there are no interested
          or qualified individuals who apply
          for announced vacancies, said
          positions will then be announced
          and advertised as indicated in
          Paragraph "1.(b)" above (Entry
          Level Positions).

(d)  DEPARTMENT HEADS (Unclassified).

     (1)  Vacancies for Department Heads
          shall be advertised internally
          within the City Departments in
          the same manner as provided for
          in Paragraph "1.(c)(1)" above.
          In the event there are no interested
          or qualified individuals who apply
          for the announced Department Head
          vacancy, said position will then
          be advertised in the manner des-
          cribed in Paragraph "1.(b)" above,
          and, if necessary to seek out and
          attract professionally qualified
          individuals, said position shall
          further be advertised in State/National
          professional periodicals and publi-
          cations. All these actions may be
          initiated concurrently if time is
          a critical factor.

(e)  VACANCIES FOR SPECIFIC CITY OFFICIALS
     (Unclassified).

     (1)  Vacancies for the following positions
          and offices:  (A) Officers elected
          by popular vote; (B) Principals,
          Supervisors, Teachers and Instructors
          engaged in supervising or teaching
          in the Public Schools of the City of
          Dothan, along with all other Employees
          of the City Board of Education; (C)

-2-

CARNEY-00095

Independant Contractors receiving
their remuneration from public
funds under contract awarded by
competitive bidding; (D) Attorneys,
Physicians, Surgeons and Dentists
employed in their professional
capacities; (E) the Judge of The
City's Municipal Court(s); and
(F) Members of Boards, who are not
employed on a full time basis and
are not required to devote their
entire services to the City, are
excluded from the scope of this
Paragraph. Vacancies for said
positions shall, of course, be
filled in such manner as to fully
comply with the laws of the State
of Alabama and of the United States
and with the various federal court
decrees governing said positions.

Respectfully submitted,

Howard A. Mandell
125 Washington Avenue
P.O. Box 1904
Montgomery, Alabama  36103

ATTORNEY FOR PLAINTIFFS

Oakley Melton, Jr.
P.O. Box 1267
Montgomery, Alabama  36102

William G. Hause
The City of Dothan
Dothan, Alabama  36301

ATTORNEYS FOR DEFENDANTS

-3-

CARNEY-00096

Kenneth Cloyd's Car

DEFENDANT'S
EXHIBIT

34

# RAEMONICA CARNEY'S AUDIO TRANSCRIPTION 12/09/2013

This is a true and accurate transcription of the audio recording captured by RaeMonica Carney's Sony IC Digital Recorder. The audio recording begins at approximately 1:10 AM and records for a total of 58 minutes and 03 seconds.

The parties responses captured on the audio recording include the following persons: Major Steve Parrish, LT Scott Long, SGT Derek Wieczorek, Officer Taiwan Truitt, Officer Lacy Schulmerich, Officer Anthony McClendon, Officer Matthew Brady and RaeMonica Carney.

For the purpose of this transcript the parties involved will be identified by their initials only. For example RaeMonica Carney will be referenced as RC, Officer Taiwan Truitt will be referenced as TT, etc.

## DIALOGUE

### (Dialogue with officers starts at 0:28)

TT: Carney it ain't been nothing physical between you

RC: Yes

Unidentifiable male voice in background

TT: Did he hit you

RC: He grabbed me when I was sitting in the car and tried to pull me out this car. (Reference to Patrol Unit 6942)

TT: This one

RC: Yes

TT: You, you got your ID

RC: No I don't have my...military ID

TT: It's R E E right

RC: R A E

TT: M O N I C A

RC: Yep

TT: What's your middle name?



DEFENDANT'S
EXHIBIT

35

## RAEMONICA CARNEY'S AUDIO TRANSCRIPTION 12/09/2013

RC: Don't have one

TT: You sure... you don't have one?

SL: What's going on?

RC: He wanted to leave. I told him to go ahead on and I was going to call a tow company to come get his car out of my yard.

SL: Why can't he drive it?

RC: I took him...

RC: I'm sorry

SL: Why can't he just drive it away?

RC: Because I told him I was going to call a tow company to come tow it out my yard I don't want him in my yard.

SL: Then let him drive it away.

RC: That means he has to come in my yard.

SL: Absolutely

RC: No

SL: Give me your keys

RC: To what

SL: To this car

RC: He's still not coming in my yard

SL: Yes he is. Give me the keys

RC: He's not coming in my yard

SL: Yes he is. You can't hold his property like that, now give me your keys

RC: I'm not going to hold his property

SL: Give me your keys

RC: I'm asking him not to come in my yard. He's already put his hands on me.

# RAEMONICA CARNEY'S AUDIO TRANSCRIPTION 12/09/2013

SL: Carney you listen to me

RC: Yes sir I am

SL: Give me your car keys right now

RC: Okay

RC: He's still not coming in my yard

SL: Hand them to me

SL: Yes he is

RC: No he's not

SL: Okay we'll push the car out in the yard, here

DW: I'll, I'll drive it out

SL: Here give me the keys

DW: Sir

SL: I said give me the keys

DW: Can I drive your car out in the street

SL: Get out of the way.

TT: What's your date of birth?

RC: 10-15-72

SL: Could somebody back that car out of the way.

RC: Don't come in my yard.

DW: I'm coming in your yard to get this car out of here.

RC: No sir. I'm called for a wrecker to come and get it.

DW: Ok ...no I'm removing this car.

RC: No sir. I called for a wrecker to come and get this car out of my yard. I can refuse you the right to come in my yard.

## RAEMONICA CARNEY'S AUDIO TRANSCRIPTION 12/09/2013

DW: Okay. This vehicle

RC: It belongs to him...

DW: Exactly

RC: and I'm calling for a wrecker to come and get this car out of my yard.

DW: He has the opportunity to get this car out of here.

RC: And I understand that.

DW: Ok

RC: And I can refuse to have you along with anybody else to step foot in my property. He is out there. Y'all can deal with him out there. You can call for a wrecker to come and get it. It doesn't make a difference to me.

DW: What difference does it make if he drive it on here or push it off here.

RC: He's not coming foot on my yard and no one else is coming in here to do anything else on my property other than what I ask.

DW: He's not on your yard

DW: Ok

DW: Does that property belong to you

RC: It sure doesn't. That's why I'm having it towed from my yard.

DW: Well then why can't we just take it

RC: No

DW: I'm asking you why can't we just take it

RC: Because I said no.

DW: Well why why Carn, why can't we just...Carney why can't we just take the vehicle off of there

RC: Because I said no. He's already put his hands on me.

DW: And we're not letting him come on your yard are we Carney. We're doing you a report for that.

## RAEMONICA CARNEY'S AUDIO TRANSCRIPTION 12/09/2013

RC: I don't care. He, he has already put his hands on me. Domestic violence...he and I are engaged to be married, so he has put his hands on me he needs to go to jail for domestic violence. So his property will be removed from my property when a tow truck comes and tows it off otherwise it will stay there until a tow truck gets here.

TT: What's your social

RC: 422901887

TT: What time did this happen

RC: Within the last twenty minutes

TT: How tall are you Carney

RC: 5'04

TT: What's your weight

RC: 125

TT: You use brown black...hair

RC: Black hair brown eyes

TT: What is your position at the duty desk

RC: Duty desk

TT: What phone number do you want to use

RC: 685-4623

TT: Alright well Lacy is going to be doing your report so um you can explain to her what happened with the domestic

RC: I was sitting in the patrol car when he kept trying to back out and he hit my planter up there and knocked it over and when I opened the...I got in the car and sat in the car and I told him if you hit this car I was hoping to get the camera to come on...I said then your going to be responsible for that...he said well I'll just back into it and get it out my way. I said well do what you feel like you need to do. I said and you'll just have to go to jail for criminal damage to police property. So then he stopped and got out the car and came over opened the door to my patrol car and grabbed me by the arm and tried to pull me out twice and I told him to stop pulling me because the car was in drive. So he said put the car in park and we can go in the house and talk and I said no. I put the car in park. He walked away from the car and stood in the yard and he

### RAEMONICA CARNEY'S AUDIO TRANSCRIPTION 12/09/2013

said well you want me to call the police. I said you call whoever you want to call. So he got on the phone with dispatch and called dispatch and I stayed right out here. I walked in the house whenever you uh drove up I walked in the house.

LS: Where did the argument start at?

RC: Um, well we were at the hospital earlier I took him to the hospital because he was sick. While we were at the hospital I asked him could I hold his phone because my phone battery was almost dead. So I asked him, you know, he let me use his phone and while I was on his phone I was searching for the different strains of the flu virus. Well while I was on his phone he received an email message from some female I don't know. So the message was Hey Boo, so I didn't say anything to him about immediately about it I was still searching for what I was looking for which was the flu stuff that they had said there were different strains of the flu so the one they tested him for didn't come back positive, he didn't have strep throat. So I said ok fine no problem. So when I asked him who this person was, then he said um that he didn't know.

LS: Were yall still at the hospital?

RC: um hm

LS: Ok. About what time was this?

RC: We stayed there from about a quarter til six until um almost 12 about a quarter til 12. So when we left the hospital, um, I drove over to Northview Christian Church and parked in the parking lot so we could talk without my son being here at the house being a party to our conversation. I didn't want to wake him up. So we were sitting in the car talking and I was expressing to him, um, how I felt that was disrespectful. If you asked me to marry you, why would you be on any other dating site, or whatever, having conversations with other women. That's inappropriate, that's disrespectful to our relationship. And I said do you not understand that that's disrespectful and he was like, well I've got plenty of friends on Tagged and I said I've got plenty of friends on Tagged I said however I haven't had any conversations with any other man on Tagged, Tango, Facebook, no other website that you might think of or mention. And, um, he was like, well, ok, well I understand and I said ok. And we kept talking for a few minutes and then, um, I said so where do you want to go from here and he says nowhere. I said ok. I said well if that's the way you feel, I said then you need to get out of my car.

DW: Ok Carney here's what we're going to do. When he came here originally when he parked this car and he was here willingly right it was ok to be here initially before all this mess happened. Is that right?

## RAEMONICA CARNEY'S AUDIO TRANSCRIPTION 12/09/2013

RC: Yes, and while we were at Northview Christian Church I told him I was going to have a tow company come and get his car out of my yard.

DW: Okay so you want him to leave, you want him off your property. Is that correct?

RC: That's correct

DW: Ok. You are prohibiting him from leaving your property by trying to detain his vehicle.

RC: I'm not prohibiting him...

DW: Yes you are

RC: His person can walk right down the street. He walked from Northview Christian Church all the way over here.

DW: You are prohibiting him from leaving by keeping his property, so we are taking this car. If you don't like that you can take that up when you go to court or whatever it is, but I'm getting in that car and I'm taking it off this lot.

RC: You can get off my property.

DW: I'm taking this car first.

SL: Do you have any personal items in your patrol car you need to get them. I'm taking that with me also.

TT: Don't get in trouble for obstruction. Carney, don't do that.

SL: Do you have any items inside your car.

DW: Where are the keys at?

RC: I'm sure I do

SL: Ok well you need to go get them. Are you going to go get them or you just want to get them later.

RC: I can get them later

SL: Ok. In the morning whenever you uh show up for work you need to go see the Captain or the Major.

SL: Back out of the way. Carney, get out of the way.

RC: Y'all are on my property.

## RAEMONICA CARNEY'S AUDIO TRANSCRIPTION 12/09/2013

SL: Carney you can go to jail by not getting out of the way. Now

RC: You all are on my property.

SL: Get out of the way.

RC: Well why don't you call the Chief because you all are on my property. **(Time 10:40)**

SL: Get out of the way.

TT: Carney, listen, listen Carney. Carney listen…hold, hold, hold, hold, hold. **(Directed at DW as he began backing up Ken Cloyd's vehicle while I was standing at the rear of the vehicle on my driveway)**

SL: Hold on **(Directed at DW as he began backing up Ken Cloyd's vehicle while I was standing at the rear of the vehicle on my driveway)**

TT: Listen Carney don't do that.

RC: No this man has put his hands on me and tried to pull me out of the car and you all are sitting here arguing with me about his car being on my property.

TT: No no no no….We're trying to make sense of this.

RC: No sir I've made sense of it. I've asked him to go and get a hotel room.

TT: He's, he's trying to leave.

RC: He did not have to come to my house. I was kind enough to come back here, pack his things that were in my house and take them to him while he was walking on the roadway. I politely put his things out on the side of the road. I didn't ask him to get back in my car. I didn't try to entice him to come back over here. I went and stopped down there at the stop sign and I said, why are you coming to my house? There is no hotel….

TT: Stop trying to obstructing….stop obstruct….

RC: Over here on this street. You need to go to a hotel.

TT: Listen stop obstructing.

RC: I'm not. Y'all are on my property.

TT: We don't…we don't…we don't want you to get in trouble. Okay

RC: Y'all are on my property.

## RAEMONICA CARNEY'S AUDIO TRANSCRIPTION 12/09/2013

TT: We're here because we were called.

RC: I didn't call. I didn't call, he called for you.

TT: Alright. We're here for a reason.

RC: You want to talk to him, talk to him out there in the roadway.

TT: Listen Carney

RC: This is on the property that I pay for.

TT: This don't make any sense. I, we understand that.

RC: And I understand that you feel that way.

TT: But just let him leave.

RC: He can leave.

TT: But just let him leave. Ain't no sense in you getting in trouble over all this.

RC: He can leave. He can leave.

TT: And that's fine let him leave Carney.

RC: The trouble was started when he decided to put his hands on me. That's when the trouble started.

TT: We doing a report for that but you know, you know that procedure. Okay. There's court. You know there's court and there's that time for you to tell your story. There's no sense for you sitting here uh going thru all this. It doesn't make any sense Carney. Use your court date. You understand. You, you been a law officer for many years. And there's no sense in this happening.

RC: Hey this is 669. Can you please get the Chief or the Major on the phone?

SL: And I'm just gone call them and tell them no. I'm telling you to move. I'm telling you as a Lieutenant to move out from the back of that car. Are you listening to me?

RC: I am on my own property.

SL: And I'm telling you to move.

RC: This car is on my property and I asked for you all to call a wrecker and you all have not called for one. I said I was calling for one.

**RAEMONICA CARNEY'S AUDIO TRANSCRIPTION 12/09/2013**

SL: So you are refusing.  You are refusing to leave?

RC: I called Schulman's. I called Schulman's and asked Schulman's. I tried to get Schulman's on the phone but I got their recording.

SL: You are being insubordinate.

RC: I'm not being insubordinate...

SL: Yes you are.

RC: Because I am not on duty. You asked for the keys to my car....

SL: You used your car a while ago so you used...

RC: My car was parked on my driveway where it's always parked.

SL: It is a city vehicle.

RC: That car was parked on my driveway where it's always parked.

SL: How did that car get right there with your car parked right here.

RC: It was parked here already. My car was parked right here.

TT: Carney the sensible thing to do is just let him leave.

RC: He can leave. I'm not stopping him from leaving.

TT: You don't need to get into trouble. I mean...don't

SL: You are stopping him from leaving. You won't let him have his car.

RC: I'm not stopping him from leaving. He can get it from the tow....

SL: You're depriving him from getting his property.

RC: He can get it from the tow company. That's what he can do.

TT: Carney it ain't making no sense for you to do this. I'm just telling you, it's not.

TT: Let him go, move on, let him go on with his life. Whatever the case may be Carney...

RC: I'm sure he will.

TT: But there's no sense in you getting in trouble is what I'm trying to tell you.

**RAEMONICA CARNEY'S AUDIO TRANSCRIPTION 12/09/2013**

RC: And I wouldn't be getting in no trouble cause I haven't done anything to get into any trouble.

TT: Carney you can't stop him from leaving now. This man is trying to leave, just let him go. Ain't no sense in you getting wrote up and getting in trouble over that. It ain't worth it.

RC: I'm getting wrote up for what....being on my property.

TT: Carney....Lieutenant was telling you

RC: I gave the lieutenant my keys. He asked me for the keys. He moved the car. This is still on my property.

TT: We understand that Carney but you know we were called here for the domestic issue we have a right to be here and you know it.

RC: And I understand that. I haven't made any threats to anybody.

TT: You don't have to...

RC: He put his hands on me and nobody has placed him under arrest to this point.

TT: You got...do you have any bruises? Do you have any bruises Carney?

RC: No I haven't looked at my arm to see if it's bruised.

TT: Well here's the deal. Let Lacy take a look at you then and see if there's any bruises, if not, Carney you know there's gonna have to be a court date.

RC: He grabbed my arm and pulled it right here...

LS: Inaudible

RC: Twice.

LS: Inaudible

DW: Who's got a camera?

LS: Haslam's the only one with a camera on our shift.

DW: Do you have a cell phone...

LS: Um

DW: I don't know just get it on city camera Lacy.

## RAEMONICA CARNEY'S AUDIO TRANSCRIPTION 12/09/2013

RC: So are y'all refusing to call for a wrecker to get it off my property? Since it's on private property I need to call one for myself, correct?

TT: Carney, you ain't, it ain't making no sense though. You gotta let the man leave.

RC: He can leave.

TT: Why, why? Come on man.

RC: He can leave.

TT: Carney just let the man go.

RC: No. He has already hit my planter up there and knocked it off the stand...

TT: Okay

RC: With this car

TT: But listen

RC: So it has been used to commit a crime.

TT: Listen

RC: He damaged my property.

TT: Alright. Listen it's, it's criminal mischief. Alright...

RC: Exactly and it's domestic violence...

TT: So, so, hears the deal...

RC: Because he put his hands on me.

TT: That's gonna be documented Carney. You're gonna have a court date. Use your court date.

RC: (On the phone with dispatcher) Yes I am...thank you

Inaudible in background

RC: (On phone with dispatcher) Hello. Hello.

RC: I hope y'all are taking pictures of the front of the car where it damaged my, my planter.

**(On personal cell phone with Major Steve Parrish: Time 16:37)**

# RAEMONICA CARNEY'S AUDIO TRANSCRIPTION 12/09/2013

RC: Hello Major Parrish. Hey how are you? Well I apologize for this late night call, but, however, um the gentleman I'm engaged to, um, he and I had a disagreement and I told him to....

TT: Show me...show me where he hit it.

RC: I'm talking to Major Parrish

TT: Where did he hit it?

RC: I'm sorry...

TT: Where did he dent it?

RC: Right up there where the car is right now. Where he knocked over the planter...

RC: (On phone with Major Parrish) Um, the gentleman and I, I had taken him to the hospital earlier this evening because he was sick. And during that timeframe there was uh a message that came to his phone from another....(Listening to Major Parrish)...I...Yes sir I called dispatch because I've asked the officers to get off of my property because I didn't call for them and I understand they're working a domestic, but the person they need to talk to is standing in the roadway. I asked him to leave my property. I told him I was calling the tow company to come and tow his vehicle off my property. He's already gotten his personal belongings, his suitcase. I've already given that back to him. And Lt Long wanted to, um, move the car off my property. Drive it off my property and I told him no. I said you can call for a wrecker to come and tow it off my property, but, um, no one else is coming on my property to remove anything off my property.

Inaudible response in background

RC: (On phone with Major Parrish) Yes sir.

TT: Let me see your hand. Let me see your arm.

RC: (On phone with Major Parrish) It, it will be resolved when once a tow company comes and tows his vehicle off my driveway.

MB: Do you want some light on it?

TT: No. It's 250 and up.

RC: (On phone with Major Parrish) Yes sir I do.

TT: It's just a faint light...hold it, hold it.

RC: Well I told him not to come to my house.

**RAEMONICA CARNEY'S AUDIO TRANSCRIPTION 12/09/2013**

TT: Inaudible in background….

RC: I told him, I told him that his car would be towed from my property and he said oh you're going to do me like that. I said well you know you've done me wrong, plain and simple. I said I've not done anything to you. I said and you're having conversations with other women and you think that that's okay, and I've done nothing, nothing wrong to you.

MB: Inaudible

TT: Inaudible…did you get the back side

RC: (On phone with Major Parrish) Nothing at all. I said, I've been nothing but nice to you. And I said, so bottom line is, is now you want me…

TT: Turn your arm under

RC: (On phone with Major Parrish) to be nice and let you…

TT: Turn it under

RC: (On phone with Major Parrish) just come back on my property whenever you want to. I said and that doesn't work with me. Yes sir, um, my patrol car was actually parked on my driveway behind his vehicle that was parked in my driveway as well. So when um, Lacy got here, Schulmerich got here, um, of course her camera shows that my car was already parked in the driveway. And it was parked behind his vehicle and Sergeant Long or Lieutenant Long asked me for the keys to my patrol car so that he could move it out of the way. And I said okay here's the key, so he takes the key and then he pulls my car up out onto the roadway. And I said, well you can move the car all day you want, all day long, that's fine. I said, but he's not coming back on my property to move anything. And I said furthermore you guys are not going to just drive it off my property if you think that's going to be a resolution to it. This is on my property and you all need to get off of my property. You can talk to him out in the roadway. Uh…Lieutenant Long was demanding that I get all of my personal property out of my patrol car and when I report to work to report to uh my supervisor and either the Captain or the Major. Um I guess because uh he wanted me to get my personal property out I guess because under the aspects that I was gonna go to jail for um, I don't know, disorderly conduct or interference with governmental operations. And I said well neither one of those apply because I'm not interfering with anything. I'm on my own property and the person you need to talk to who called for you is standing in the roadway. So, if y'all want to talk to him, you can gladly talk to him, but no one is coming back on my property to get anything off of it without my permission. Um, taking pictures of…one where my ex, now, grabbed me by my arm and tried to snatch me out of my patrol car when I was in the car. Because I turned on, I tried to get the camera to come on as he was trying to

## RAEMONICA CARNEY'S AUDIO TRANSCRIPTION 12/09/2013

maneuver the car out of the driveway, um, so he could try to get around and get the car off my property after I had already asked him not to even come to my house anymore. And I gave him the entire scenario. He walked all the way from Northview Christian Church um all the way to my house on Stringer Street and I went back and took him his clothes, his suitcase, his um, his dress suit, his shoes, his um, um overnight bag, or um, what do you call toothbrush bag or whatever you want to call it from the bathroom. I took him all his stuff. I pulled off the road. Put it out on the side of the road in front of him so he could get his things, so he could see I was returning him his property so he would not have to return to my house. And he said, well I have to get my car. I said no, I'm calling a tow company to come get your car so you can contact the tow company when they come and get your vehicle and you can settle up with them to get your car off my property. I said otherwise you're not welcome on my property. So he walked all the way down, he made it to State Ave. I was stopped by the fire department and when he made it up to the intersection I said, there's no reason for you to come to my house. I've already told you. You have your things. There's no reason for you to step foot on my property at all. I said, so if you step foot on my property, then I guess you're just going to have to end up going to jail for being, for trespassing on my property. Yes he did. That's when he got in the car and a, attempted to maneuver the car so he could get it passed my parked patrol car and my house. So, as he pulled forward in his car, he struck the planter that's in front of my house and knocked it over. So the car was right behind it so he couldn't back up any further because of the angle of the cars. So then, uh, when Schulmerich, well actually he got out of the vehicle and he came around to the driver door of the patrol car because I had got in it and tried to get the camera on in case he struck the car. And I said, if you strike this car when he opened the door, he said, I said if you strike this car, I said, you're gonna go to jail for criminal mischief damage to city property. Yes sir he is. Lieutenant Long. Lieutenant. He's on the phone with someone else at the present time.

**(Major Parrish asked me to place the phone on speaker so that Lieutenant Long and I could hear what he had to say at the same time: Time 24:25)**

SP: Okay. Uh. Let me, let me uh, let me call him.

RC: He's coming.

SP: Okay

SL: Do what

RC: Major Parrish wants to talk to you and I on speaker.

SL: Okay yes sir.

## RAEMONICA CARNEY'S AUDIO TRANSCRIPTION 12/09/2013

SP: Hey, can y'all both hear me?

SL: Yes sir.

SP: Uh...I don't want to uh, I don't want to uh sit here and have a debate. Um, but here's the way I see this. I've only heard one side of it, Scott. Rae, when you, when you took your car and blocked him in.

RC: My car was already parked. I didn't block him in.

SP: Exactly, when you, when you got in your car, and, and was gonna activate your equipment and talked about uh what he could and couldn't do, you became, you went from being a victim to trying to become a police officer okay. So, I don't know anything about the particulars of what's going on there, but if Lt Long is telling you what you need to do because you've acted as a police officer then you allow him to do it. It's best to give that guy his car and take it off that car, he's acting as a supervisor.

RC: Yes sir I gave Lt Long the keys and he moved the patrol car.

SP: I'm talking about the other car too. This whole thing is a police matter, so, if he, if in if in his judgment, he is a Lieutenant he wants to resolve this by doing something, then since, since you're acting in some regards and part of this as a police officer...

RC: No sir I was trying to protect the police property.

SP: By you, by you advising or attempt to utilize the camera system...

RC: Yes sir to record if he hit the vehicle. That's correct, so he wouldn't hit the vehicle, if that was captured on the camera.

SP: Well, well here, here's what we're gonna do....here's what we're gonna do...Lt Long

RC: But the camera didn't activate. Sir...

SP: Lt Long is gonna make the call and we are going to go with it, and uh, whatever he decides as a matter of an officer is what we're gone do. And I uh, again I apologize for being in a dead sleep, but Scott did you hear what I said?

SL: Yes sir.

SP: Okay. You're in charge of it, um, uh Rae, I'm sorry you're having a problem but it's a domestic call and uh, you have uh, a commanding officer who's making that decision. Uh to you as a police officer what will best resolve it and that's what we're gone do. And, and what we'll do is, if you have a problem with it then we'll it tomorrow. Uh

## RAEMONICA CARNEY'S AUDIO TRANSCRIPTION 12/09/2013

RC: Well I want the officers to leave my home.

SP: Right. Well, as soon as they uh, as soon as Lt Long makes a decision on what he wants to do then that'll be fine. If he wants to let 'em tow it, uh, and in his mind that's the best course of action, that's fine. But he is, he is in charge.

RC: Yes sir, I'm aware of that.

SP: Okay, alright, uh Scott

SL: Yes sir

SP: Did you get all that.

SL: yes sir I did

SP: Alright, uh, if you need me to call you back on your phone or anything I will, but uh, uh, y'all need to talk about this anymore.

SL: Okay

SP: Alright I'll uh I'll give you a call you on your cell phone in a minute, but uh this is resolved as far as I'm concerned.

SL: Yes sir

SP: Okay

RC: I did ask them to call for a wrecker if they want to get this car off of my property. Okay I guess he hung up. **(Major Parrish hangs up on me: Time 28:09)**

SL: We just need you to move out the way so we can back this car up.

RC: No sir. You can call for a tow company to come and tow this car off my property.

SL: Carney

RC: Yes sir please.

SL: You are depriving him of his property.

RC: I'm not depriving him of anything. I told him not to come to my house that his car was going to be towed bottom line. When he put his hands on me and tried to snatch me out of that car. He went well beyond what was necessary in order to get his car.

SL: Okay, You heard what the Major just said right.

## RAEMONICA CARNEY'S AUDIO TRANSCRIPTION 12/09/2013

RC: You're in charge of this scene when it comes to these officers, not in charge of me personally. I am not on duty and I'm not trying to act in the capacity of a police officer. I am acting as a private citizen on my own private property. This is on my property. I'm asking y'all if y'all want this off my property to please call a wrecker service to come and get it off my property. I have no problem with that at all.

SL: Why, why are you wanting to do this to him so badly? You know this could be done in two minutes, and everybodied be gone

RC: It could have been.

SL: But you're refusing to do that.

RC: It could've been. If I could have gotten Schulman wrecker on the phone they probably would've already been over here. Unfortunately they didn't answer.

**(On the phone with Southeast Towing: Time 30:15)**

Southeast Towing: Hello...inaudible male answering phone

RC: Yes, is this Southeast Towing

Southeast Towing Male: Yes it is

RC: Yes I need to have a vehicle towed off of my driveway. Can you all come out and tow that vehicle for me.

Southeast Towing Male: Ummm, we don't do abandons

RC: It's not abandoned, the owner is actually here and the police as well. I'm having it towed away off of my property. The person who owns this vehicle doesn't live here. And I'm not allowing the person on my property and that's why the police are here. Dothan. Um hmm. Okay. I thank you so much. No sir no problem. Thank you. Bye bye.

SL: Alright, we're gone ask you one more time for you to move so we can get the car.

RC: Are y'all going to arrest me if I don't move...

SL: Yes we are

RC: off of my own property

SL: Yes we are

## RAEMONICA CARNEY'S AUDIO TRANSCRIPTION 12/09/2013

TT: Carney it ain't worth all that. Listen now, listen now just let the man get his car and go. I mean you got your son in there. I mean, don't, don't that. It ain't worth all that for real.

RC: Well I've asked for you all to call a wrecker company and I've attempted to call a wrecker company.

SL: Okay, and I'm asking you for the last time to move.

TT: Carney just move. You got your son in there. Carney, don't go to jail over something stupid, please, just just move out the way.

RC: No. It ain't nothing stupid...

SL: Ok, alright. You're under arrest

RC: It's just something the police department is gone have to...

SL: Are you gone move

RC: um deal with

SL: Are you gone stay there. Carney are you gone stay there. Carney are you gone stay there or are you gone jump back in front of the car again.

SL: Alright go on and back it out (Directed to DW)

LS: Here's the case number for the signal 11.

RC: I hope y'all placing him under arrest for domestic violence.

**(On phone with Attorney Sonya Edwards: Time 34:06 – 39:17)**

DW (Time 39:18): Is there anything else that's yours personal in your car that you can think of...no.

RC: Umm yes.

DW: What do got

RC: Um, I, I have to get. I mean there are some things in there. Yes, my property.

DW: I mean that you need to get right now. I know you need the garage door opener, that kinda goes without saying.

RC: And the reason that my car is being taken or

## RAEMONICA CARNEY'S AUDIO TRANSCRIPTION 12/09/2013

TT: There was no visible injury. I didn't see an injury and you know the procedure. And, no injuries. We gone do a report. Go to court and the judge will rule.

RC: So this person pull me twice on my arm trying to snatch me out of my patrol car.

TT: Here's the key to the car. Can you get it?

RC: It's the key fob to the car.

**(Police Contact End Time 51:27) (On phone with Attorney Sonya Edwards: Time 51:27 – 58:03)**

## RAEMONICA CARNEY'S AUDIO TRANSCRIPTION 12/09/2013

DW: This is authority of the Captain

RC: Authority of the Captain my car is being taken

DW: Yes ma'am

DW (Time 40:02): She's getting personal property Lt

**(On phone with Attorney Sonya Edwards: Time 40:08 – 49:08)**


TT (Time 49:09): You good. You need anything

RC: Naw. What's the new, what's, what's his name

TT: Brady

RC: Who

TT: Brady

RC: Brady...oh, what's his name

MB: McClendon

TT: McClendon

RC: McClenny

TT: McClendon

RC: McClendon

Atty SE: ███████████████

RC: Brady and McClendon

RC: Truitt

TT: Hmm

RC: So what's the reason why he wasn't arrested

TT: It's Lacy's call. They gone do a report and this is gone be handled in court.

RC: So what's the reason he wasn't arrested for domestic violence.

THE CITY OF

# DOTHAN, ALABAMA

POST OFFICE BOX 2128 · DOTHAN, ALABAMA 36302 · 334-615-3000

**CONFIDENTIAL**

DELVICK J. MCKAY
PERSONNEL DIRECTOR

PERSONNEL BOARD
BARBARA A. SPANN, CHAIR
MARY W. DAVIS
MARK SMITH
ALAN B. CLARK
EARL TYSON

March 4, 2013

Corporal RaeMonica Carney
2601 Stringer Street
Dothan, AL 36303

Dear Corporal Carney:

The City of Dothan Personnel Department is in receipt of your formal grievance filed on February 27, 2013. During our initial meeting on February 27, 2013; the following was determined:

1. That you wanted to by-pass the Police Chief in filing your grievance because he was a member of "Wiregrass Live" and his affiliation with this social media group would hinder his ability to make a just and equitable decision in the matters concerning post made on certain social media websites.

2. That you have been questioned by the Internal Affairs Division related to your posts on Facebook and subsequent posts from citizens on "Wiregrass Live" commenting about your post. However, as of February 27, 2013; you had not received the final outcome of the Internal Affairs Investigation.

3. You mentioned that the EEO Officer had placed you on notice that other officers have filed complaints with him concerning posts that were made on your Facebook page, however; as of February 27, 2013; you have not received the final outcome of the EEO Officer's investigation.

4. I asked you had you been physically or verbally threatened in any way by other employees or supervisors pertaining to these most recent events, and you answered, "no".

5. I also asked you had your job duties changed or modified since the most recent events surrounding posts on social media and subsequent investigations by Internal Affairs and the EEO Office. You mentioned that your administrative rights to the TipSoft Online System were removed in November 2012; however, you remained as the Crime Stoppers Coordinator.

You mention as a just and fair solution to your grievance is:

**DEFENDANT'S EXHIBIT**

36

## PERSONNEL DEPARTMENT

126 NORTH SAINT ANDREWS STREET · DOTHAN, ALABAMA 36303 · PHONE 334-615-3180 · FAX 334-615-3189
Service · Excellence · Commitment ... *The Dothan Way*

CITY OF DOTHAN/CARNEY 001890
CONFIDENTIAL

"Disciplinary actions to be administered to those officers found to have committed any or all of the acts mentioned above and criminal charges levied to those who violate criminal laws. The investigation should be conducted by an outside non-affiliated agency."

### Response to 1 and 2:

The Police Chief has the authority and is tasked to ascertain if there are any Police Department General Orders or City Policies that have been violated stemming from your behavior or any behavior from other Officers within his purview.   Disciplinary actions are administered by the Department Head.  Therefore, the Police Chief is the appropriate authority to make employment decisions and disciplinary actions pertaining to employees in the Dothan Police Department. There are no conflicts of interest present nor is there any reason to why the Police Chief would need to be removed from directing an internal investigation and administering discipline as appropriate. Furthermore, there is no evidence proving any officer conspired against you to have an individual from the general public to place a post on "Wiregrass Live" commenting about what you posted on your Facebook page.   During my investigation, it was learned that the Police Chief himself noticed the posting of a citizen on "Wiregrass Live", and therefore prompting him to direct Internal Affairs to investigate this matter according to the Police Department's standard procedures.

Therefore, in your own recommendation to what is a just and fair solution: "disciplinary actions to be administered to those officers found to have committed any or all of the acts mention above".

It is the Police Chief's responsibility to direct an Internal Investigation concerning employees within the Department and administer discipline, where appropriate, to those employees who have violated City policies and procedures.  I do not see where a conflict of interest exists nor should the Police Chief be removed from carrying out the proper administrative duties that are inherit within his position as Police Chief.

**The Internal Affairs investigation shall continue and the Police Chief has the authority to administer the appropriate discipline according to policy.**

Note: Filing a grievance does not preclude or insulate you or anyone else from disciplinary actions if it is determined that you or any officer involved has violated City policy.  It is the City's responsibility to investigate all matters regarding employees and to make the appropriate corrective actions pertaining thereto.

### Response to 3:

The EEO Officer is also tasked to ascertain if such behavior of all Officers, including yours; are in violation of Title VII of the Civil Rights Act and other employment laws. You have been placed on notice by the EEO Officer that complaints have been filed and his investigation is ongoing.

**The EEO Officer's investigation shall continue and it is within his purview to review all complaints that are protected under Title VII of the Civil Rights Act, and make recommendations pertaining thereto.**

PERSONNEL DEPARTMENT

126 NORTH SAINT ANDREWS STREET · DOTHAN, ALABAMA 36303 · PHONE 334-615-3180 · FAX 334-615-3189

Service · Excellence · Commitment ... *The Dothan Way*

CITY OF DOTHAN/CARNEY 001891
CONFIDENTIAL

**Response to 4**                  

<u>By your own admission, you have not been threatened, verbally or physically.
Therefore, no criminal charges are necessary and if so, those complaints should be
made to the proper law enforcement entity.</u>

## Response to 5:

Based upon my fact finding investigation, it was a proper operational decision to give
personnel within the Communications Center as well as personnel in the Criminal
Investigations Division administrative authority into TipSoft Online. You are to be
commended for pioneering this program and helping to bring it to the City of Dothan.
<u>However, to respond more effectively to tips, assign investigators to follow-up on these
leads, and compensate individuals who call into Crime stoppers; it was determined by
the Police Chief and senior staff that the administrative responsibilities are managed
more effectively through its current assignment.</u>

The Police Chief has the responsibility to ascertain if any employees within his
department has violated any policies and the EEO Officer is currently investigating
complaints that could potentially be in violation of Title VII of the Civil Rights Act. By
your own admission, there has not been any adverse action made against you including
verbal or physical threats.   All other administrative actions that rest within the
purview of the Police Chief and the EEO Officer are being handled appropriately.
Therefore, actions of all employees, including yours, are being investigated under the
purview of the Police Chief and EEO Officer to determine if any policy violations have
resulted in posts made on social media.  I will then make sure the appropriate actions
taken are within policy guidelines.

In your statement you mention that there were "intentional acts of race and sex
discrimination, harassment, coercion, intimidation, and threats of violence by fellow
officers".

## Unsubstantiated:

By your own admission, there has not been any threat of violence or physical harm
made to you.  After questioning the Internal Affairs Officers and reviewing the audio
tape of your interview with Internal Affairs, the interview and questioning was not
coercive, violent, or threatening in seeking to get an understanding of your Facebook
posting.   Appropriate actions have been taken to better meet the operational efficiency
of the TipSoft program and this administrative decision was made for the business
necessity of the Police Department, not because of retaliation of your race, gender, or
complaints you have filed in the past or present.

In closing, the Police Chief is continuing the investigation of any violations of Police
General Orders and City Policies and the EEO Officer is continuing his investigation to
determine if there has been any violation under Title VII of the Civil Rights Act.

Your grievance is closed with no further actions.

*Delvick J. McKay*                                      cc: Mike West, City Manager
Delvick J. McKay, Personnel Director                        Greg Benton, Police Chief
                                                            Darryl Mathews, EEO

CITY OF DOTHAN/CARNEY 001892
CONFIDENTIAL

# DOTHAN POLICE DEPARTMENT

# INTERNAL AFFAIRS DIVISION

## GARRITY NOTICE

You are being questioned as a part of an official administrative investigation of the Dothan Police Department. You will be asked questions specifically directed and narrowly related to the performance of your official duties or fitness for office. You are entitled to all of the rights and privileges guaranteed by the laws and the Constitution of the State of Alabama and the Constitution of the United States, including the right not to be compelled to incriminate yourself. If you refuse to testify or to answer questions related to your official duties or fitness for duty, you will be subject to departmental charges, which could result in your dismissal from the Dothan Police Department. If you do answer, neither your statement nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceeding, except for Perjury or Obstruction of Justice charges. However, these statements may be used against you in relation to subsequent departmental charges.

MEMBERS SIGNATURE: _RaeMonica Carney_

DATE/TIME: _DECEMBER 9, 2013   11:19 AM_

INVESTIGATING OFFICER: _____

DATE/TIME: _11/5/15   12:9213_

WITNESS SIGNATURE: _____

DATE/TIME: _12-09-13_

FD 15 B

DEFENDANT'S EXHIBIT

37

CITY OF DOTHAN/CARNEY 001042
CONFIDENTIAL



## THE CITY OF
# DOTHAN, ALABAMA

POST OFFICE BOX 2128 • DOTHAN, ALABAMA 36302 • 334-615-3000

GREGORY J. BENTON
CHIEF OF POLICE

# MEMORANDUM

TO          : Corporal Raemonica Carney

**FROM**      : Gregory J. Benton, Chief of Police

**DATE**      : ~~August 25,~~ *December 09* 2013

**SUBJECT**   : ADMINISTRATIVE LEAVE WITH PAY

Effective immediately, December 09, 2013 at *1225* hours you are hereby placed on administrative leave with pay pending an internal investigation of officer misconduct.

You shall monitor your pager and make yourself available to members of the Dothan Police Department during the hours of 0800 until 1700, Monday through Friday if requested.

Gregory J. Benton
Chief of Police

Employee Signature: Raemonica Carney

Date and time served: *12 - 09 - 13   12:25 hrs*

Served by: 

Witness: 

cc: Major S. Parrish
Tonya Shelley

**DEFENDANT'S EXHIBIT**
*38*

## POLICE DEPARTMENT

210 NORTH SAINT ANDREWS STREET • DOTHAN, ALABAMA 36303 • 334-615-3601
Email: dpd@dothan.org

CITY OF DOTHAN/CARNEY 001043
CONFIDENTIAL

16

# NOTICE OF DETERMINATION HEARING AND POSSIBLE DISCIPLINARY ACTION
(Reproduce in one page (front and back) format to maintain form integrity)

| (Employee Name) | TO: | RaeMonica Carney | Emp ID: | 100585 |
|---|---|---|---|---|
| (Department Head) | FROM: | Chief Gregory J. Benton | | |
| | DATE: | 12-12-2013 | | |

## SECTION I - NOTICE OF CATEGORY FOR CHARGES
(✓ All that apply)

| | | | |
|---|---|---|---|
| **MINOR CATEGORY:** | | | * 3rd Offense, Final Warning & 1-5 Day Suspension |
| | | | * 4th Offense, Grounds for Discharge |
| **MAJOR CATEGORY:** | | | * 1st Offense, Final Warning & 1-20 Day Suspension |
| | | | * 2nd Offense, Grounds for Discharge |
| **INTOLERABLE CATEGORY:** | | x | * 1st Offense, Grounds for Discharge. |
| **SICK LEAVE ABUSE:** | | | * 4th Offense, Grounds for Discharge |
| **VEHICLE ACCIDENT:** | | | * 2 - 5 Points, Suspension |
| | | | * Over 5 Points, Suspension or Termination |

* PF #147 (or PF#147-A for Sick Leave Abuse, or PF#148 Vehicle Accident) is submitted when an employee commits any category offense requiring due process and is attached to PF#153 for Major and Intolerable Offenses. If after due process the Department Head or Personnel Board determines the employee did not violate any rules, all copies of the applicable PF#147/PF#147-A/PF#148 are destroyed.

## SECTION II - NOTICE OF CHARGES

You are hereby notified that possible disciplinary action is contemplated against you on the charges specified below and that such action could result in suspension, demotion or dismissal. It has been brought to my attention as Department Head that you have possibly violated the Personnel Rules and/or Civil Service Act of the City of Dothan, Alabama, in that [Give specific details of the offense(s) to include date(s), location(s), person(s) involved, cite rule(s) violated. Additional sheets may be attached if needed]:

On 12-9-2013 you were involved in a domestic incident at your residence involving your fiancé, Kenneth Cloyd. During the incident, you used your city issued police vehicle to block in Mr. Cloyd's vehicle and prevent him from leaving. You told Mr. Cloyd (and later Lieutenant Long) the only way the vehicle was leaving your property was via tow truck. Mr. Cloyd then called the Dothan Police Department and requested assistance. Upon the arrival of two Dothan Police Supervisors, Sergeant Derek Wieczorek and Lieutenant Scott long, Lieutenant Long ordered you to remove your city issued vehicle from behind Mr. Cloyd's vehicle, in which you refused. Lieutenant Long gave you a second command to give him the keys to your city issued car and you refused. It wasn't until the third time being ordered did you comply with that order. Lieutenant Long then moved your police issued vehicle out of the path of Mr. Cloyd's vehicle and you immediately stepped to the rear of Mr. Cloyd's vehicle blocking the exit again, this time with your person.

Lieutenant Long then ordered you to move out of the vehicles path and you refused. Lieutenant Long ordered you to move 4 more times and you refused. You then called dispatch and addressed yourself as your badge number (669) and asked to speak to Major Parrish. Once on the phone, Major Parrish informed you that Lieutenant Long was in charge of the scene and for you to follow his command. You advised Major Parrish that you understood that. When you hung up with Major Parrish you again refused to move stating "I'm off duty." Lieutenant Long told you to move again and you still refused. It wasn't until Lieutenant Long was in the process of placing you under arrest did you move out of the way.

Mr. Cloyd's vehicle came onto your property with your permission and he had committed no crime. When your personal argument with him began, you used your City patrol vehicle to prevent him from leaving without paying a towing charge. You also attempted to use your in-car camera to record Mr. Cloyd's vehicle during the incident. After refusing direct orders from superior officers on the scene to move your city patrol vehicle, you used your badge number with police dispatch to directly contact Maj. Parrish. Your actions in refusing to obey direct orders from those officers as well as those of Maj. Parrish to either move or allow Mr. Cloyd's car to be moved, constitute gross insubordination. Your further action of placing yourself in the path of Mr. Cloyd's vehicle while another officer was attempting to move it was a violation of a direct order given to you by a superior officer and also constitutes gross insubordination.

Your actions during this incident constitute gross insubordination as set out in the City of Dothan Personnel Rules and Regulations, Sec. 3-43. (18) Gross insubordination. This is an intolerable offense.

## SECTION III - NOTICE OF HEARING ON CHARGES

You are hereby given twenty-four (24) hours advance notice that a Determination Hearing will be held

| (Day of week, Calendar Date and Time of Hearing) | on: | Monday, December 16 at 0830 hours (8:30 A.M.) |
|---|---|---|
| (Location where hearing will be held) | at: | Roy M. Driggers Municipal Building (Civic Center) 1st Floor Room 101 |

Personnel Form #153 (Revised 6/95)
C:\Users\drmagill\Desktop\PF153-Notice of Det Hearing carney.doc



DEFENDANT'S EXHIBIT
39

CITY OF DOTHAN/CARNEY 000710
CONFIDENTIAL

At the time of the Determination Hearing you will have the opportunity to respond to the above charge(s) orally and/or in writing if you so desire. If you wish to reply to the charges in writing, you must have the documents prepared and ready to present at the time designated for the hearing. You may submit sworn affidavits in reply to these charges if you so elect. You are hereby advised that you have the right not to respond to these charges if you so elect. If you desire, you may be accompanied by an impartial observer of your choosing. This hearing will not be of an adversary nature and no examination or celling of witnesses to testify will be permitted.

You will be notified in writing of the Department Head's disciplinary decision within three (3) working days after the date of this hearing. In the event disciplinary action is taken, the procedures for review and appeal as provided by the Personnel Rules and/or Civil Service Act of the City of Dothan are available to any Classified employee or laborer, other then those under initial probationary status.

**Signature of Department Head:** _Virgoy Jr Benton_

Personnel Form #153 (Revised 6/95
C:\Users\drmegli\Desktop\PF153-Notice of Det  Hearing carney.doc

CITY OF DOTHAN/CARNEY 000711
CONFIDENTIAL

18

## NOTICE OF DETERMINATION HEARING AND POSSIBLE DISCIPLINARY ACTION
(Reproduce in one page (front & back format) to maintain form integrity)

### SECTION IV - DOCUMENTATION OF NOTICE BEING SERVED
(Complete *either* Part A *or* both Part B and C of this section)

**PART A.**

I certify that I served _RAEMONICA    CARNEY_ a copy of this Notice of hearing at
(Employee Name)

_1 2:23 pm_ O'clock (☐ em  ☐ pm) on _12-12-13_
(Time Served)                                        (Date Served - M/D/Y)

which is at least twenty-four (24) hours prior to the date and time specified on the front of this form.

_____
(Signature of Department Head or Supervisor)

### OR

**PART B.**

I certify that due to the unavailability of the employee I have delivered a copy of this Notice of Determination Hearing (Personnel Form #153) to the City of Dothan Police Department for service on the employee named on the front of this Notice at least twenty-four (24) hours in advance of the time and date specified on this notice.

_____
(Signature of Department Head or Supervisor)

**PART C.**

I certify that a copy of this Notice of Determination Hearing was served on the employee named on the front of this Notice at

_____ on _____
(Time of Service)                              (Date Served - M/D/Y)

_____
(Signature of Server [Member, Dothan Police Department])

### SECTION V - DOCUMENTATION OF NOTICE BEING RECEIVED

I acknowledge that I received a copy of this Notice of Determination Hearing at least twenty-four (24) hours prior to the date and time of said hearing.

Signature of Employee: _RaeMonica Carney_          Date: _12 Dec 13_

Distribution of PF#153:   ☐ Original to Personnel Department      ☐ Copy to Department Head      ☐ Copy to Employee

Personnel Form #153 (Revised 6/95
C:\Users\drmaglil\Desktop\PF153-Notice of Det Hearing carney.doc

Page 3 of 2

CITY OF DOTHAN/CARNEY 000712
CONFIDENTIAL

7

## THE CITY OF DOTHAN
### Dothan, Alabama

### <u>DETERMINATION HEARING OF RAEMONICA CARNEY</u>

**KRIS KNIGHT**         :   Today is Monday, December 16, 2013 at 8:30 a.m.

This hearing is being recorded, and will be the official transcript in the event of an appeal by the employee to the Personnel Board. My name is Kris Knight, Personnel Analyst with the City of Dothan. Present in the room for the determination hearing are RaeMonica Carney, Chief Benton, Donny Smith, Doug Magill, Darryl Mathews, and Pat Jones.

Ms. Carney, do you acknowledge that you were served notice of this determination hearing on or about 12:23 p.m. on December 12, 2013?

**RAEMONICA CARNEY**    :   I do.

**KRIS KNIGHT**         :   Okay. And, do you acknowledge that this is your signature?

**RAEMONICA CARNEY**    :   I do.

**KRIS KNIGHT**         :   Okay.   Have you read the information provided on the form, and did you understand the procedure outlined on the form?

**RAEMONICA CARNEY**    :   I have, and I do.

**KRIS KNIGHT**         :   Okay.  I have several questions I need to ask you.  Please respond with yes or no, and respond loud enough for the recorder to pick up your response.  If you have a question or do not understand what I am asking you, please direct your questions to me.

Do you acknowledge that you were notified at least 24 hours in advance of this determination hearing?

**RAEMONICA CARNEY**    :   Yes ma'am, I was.

**KRIS KNIGHT**         :   Do you have any specific questions regarding this procedure?

**RAEMONICA CARNEY**    :   No, ma'am.

**KRIS KNIGHT**         :   Do you understand that this is not an adversarial hearing, this means there is no cross examination of witnesses or calling of witnesses to testify?

**RAEMONICA CARNEY**    :   Yes ma'am, I do.

**KRIS KNIGHT**         :   Do you understand that you do not have to reply to these charges?

**RAEMONICA CARNEY**    :   Yes, ma'am.

CITY OF DOTHAN/CARNEY 000701
CONFIDENTIAL

8

**KRIS KNIGHT** : Do you understand you do have the right to reply orally, and/or in writing, to these charges?

**RAEMONICA CARNEY** : Yes, ma'am.

**KRIS KNIGHT** : Do you understand you had a reasonable opportunity within the past 24 hours to reply in writing, or submit sworn affidavits in reply to the charges, if you so elected?

**RAEMONICA CARNEY** : Yes, ma'am.

**KRIS KNIGHT** : Do you have a written statement or sworn affidavit you wish to submit in response to the charges?

**RAEMONICA CARNEY** : Yes, ma'am.

**KRIS KNIGHT** : Okay, and I'll need to make a copy of that to go on the record.

**RAEMONICA CARNEY** : Okay.

**KRIS KNIGHT** : Okay.

Do you have any reason at this time why this hearing should not proceed?

**RAEMONICA CARNEY** : No, ma'am.

**KRIS KNIGHT** : Alright. Then, at this time, Chief Benton will begin the hearing by presenting the charges to you again.

**CHIEF BENTON** : On 12-9-2013 you were involved in a domestic incident at your residence involving your fiancé, Kenneth Cloyd. During the incident, you used your city issued police vehicle to block in Mr. Cloyd's vehicle, and prevent him from leaving. You told Mr. Cloyd, and later Lieutenant Long, the only way the vehicle was leaving your property was via tow truck. Mr. Cloyd then called the Dothan Police Department and requested assistance. Upon the arrival of two Dothan Police Supervisors, Sergeant Derek Wieczorek and Lieutenant Scott Long, Lieutenant Long ordered you to remove your City-issued vehicle from behind Mr. Cloyd's vehicle, in which you refused. Lieutenant Long gave you a second command to give him the keys to your city-issued car, and you refused. It wasn't until the third time being ordered did you comply with that order. Lieutenant Long then moved your police vehicle - police-issued vehicle out of the path of Mr. Cloyd's vehicle, and you immediately stepped to the rear of Mr. Cloyd's vehicle, blocking the exit again, this time with your person.

Lieutenant Long then ordered you to move out of the vehicle's path and you refused. Lieutenant Long ordered you to move 4 more times and you refused. You then called dispatch and addressed yourself as your badge number, 669, and asked to speak to Major Parrish. Once on the phone, Major Parrish informed you that Lieutenant Long was in charge of the scene and for you to follow his command. You advised Major Parrish that you understood that. When you hung up with Major Parrish you again refused to move, stating "I'm off duty." Lieutenant Long then - Lieutenant Long told you to move again, and you still refused. It wasn't until Lieutenant Long was in the process of placing you under arrest did you move out of the way.

2

CITY OF DOTHAN/CARNEY 000702
CONFIDENTIAL

9

Mr. Cloyd's vehicle came onto your property with your permission, and he had committed no crime. When your personal argument began with - with him began, you used your City patrol vehicle to prevent him from leaving without paying a towing charge. You also attempted to use your in-car camera to record Mr. Cloyd's vehicle during the incident. After refusing direct orders from superior officers on the scene to move your city patrol vehicle, you used your badge number with police dispatch to directly contact Major Parrish. Your actions in refusing to obey direct orders from those officers, as well as those of Major Parrish, to either move or allow Mr. Cloyd's car to be moved, constitute gross insubordination. Your further action of placing yourself in the path of Mr. Cloyd's vehicle while another officer was attempting to move it was a violation of a direct order given to you by a superior officer and also constitutes gross insubordination.

Your actions during this incident constitute gross insubordination as set out in the City of Dothan Personnel Rules and Regulations, Sec. 3-43. (18) Gross insubordination. This is an intolerable offense.

**KRIS KNIGHT**                :   Okay. Ms. Carney, do you have anything you would like to say in response to these charges?

**RAEMONICA CARNEY**      :   I have two statements, umm, a statement from myself - sworn statement from myself, and a sworn statement from Mr. Kenneth Cloyd, who was the other party involved in the domestic incident at my home on that evening, or that morning.

**KRIS KNIGHT**                :   Okay.

**RAEMONICA CARNEY**      :   These are your copies to keep...

**KRIS KNIGHT**                :   Okay.

**RAEMONICA CARNEY**      :   ...and I also request, umm, of the Chief, to, umm, have a outside internal - outside criminal investigation conducted, umm, into the actions of the officers that were involved into - in the investigation of the incident at my home, by the appropriate agencies necessary to conduct said investigation.

**KRIS KNIGHT**                :   Do you have anything else?  Okay.

Alright, then Chief Benton will give you his decision in writing within three working days of this hearing. Today is Monday, December 16th, so you should hear something no later than Thursday, December the 19th, at the close of business.

If you are dissatisfied with his decision, you have ten calendar days, from when you receive the decision in writing, to appeal to the Personnel Board.

This concludes the hearing for Raemonica Carney at 8:35 a.m.

3

CITY OF DOTHAN/CARNEY 000703
CONFIDENTIAL

10

1

### SWORN STATEMENT OF RAEMONICA CARNEY

I, RaeMonica Carney, being over the age of 19 years and of sound mind, hereby swear under penalty of perjury as follows:

The incident that occurred on Monday, December 9, 2013 around 12:00 a.m. between my fiancé Kenneth Cloyd and me after leaving Southeast Alabama Medical Center was a minor civil dispute that would have been resolved between us without police intervention. At the time of the incident I was off-duty from the Police Department and at my personal residence. I did not use my assigned patrol car for any reason contrary to department policy during this incident. As a private citizen, I exercised my legal right to deny access to persons whom I did not want on my property, and my legal right to remove unwanted property from my property.

The response of six Officers that included two supervisors, LT Scott Long and SGT Derek Wieczorek, and four Patrol Officers, Officer Taiwan Truitt, Officer Lacy Schulmerich, Officer Anthony McClendon, and Probationary Police Officer Matthew Brady, was excessive and not in accordance with standard operating dispatch procedures that dictate the dispatch of two patrol officers for domestic incidents where there have been no reports of disorderly persons, threats of violence, injury, or weapons being involved. The supervisors' actions towards me was not of finding out the facts about the reason Kenneth called, rather it was treated as a way to find some fault on my behalf so that disciplinary actions could be brought against me. Both supervisors' attitudes towards me were very hostile and overly aggressive. The fact that I informed all of them at one point or the other that Kenneth had been told not to come to my home, that he trespassed onto my property, that he struck my plantar with his vehicle, and that he grabbed my arm and pulled it twice seemed to be of little to no interest to them. I was given an incident case number by Officer Schulmerich upon the conclusion of the criminal investigation for Domestic Violence, whereby I was the victim, and was advised of warrant procedures if I wished to pursue obtaining a warrant against Kenneth.

I initially advised Officer Schulmerich that I did not want Kenneth or Officers on my property in regards to the civil dispute between us. Officer Schulmerich complied after my third request for her to question Kenneth outside the boundaries of my property. The incident should have been resolved between Kenneth and Officer Schulmerich when he advised her that he had been told by me not to come onto my property and then confirmed by my statement, however it was not. I advised Officer Schulmerich that I had not called to request the assistance of law enforcement because our dispute was civil in nature and that I did not want Officers on my property. When the other three Officers and two


DEFENDANT'S EXHIBIT
40

CITY OF DOTHAN/CARNEY 000704
CONFIDENTIAL

supervisors arrived they were advised of the same information about the civil dispute and my request for Officers to leave my property. The supervisors seemed to be extremely aggravated with my request for them to leave my property upon initial contact and during the course of their criminal investigation. I was asked was there physical contact between Kenneth and me and I answered truthfully. The supervisors came to the conclusion that my patrol car was used to block Kenneth's car in my driveway, but neither of them ever asked me anything about how my patrol car was involved.

LT Long had multiple phone conversations with CPT David Jay and Major Steve Parrish during the time they were at my home. LT Long requested the keys to my patrol car and when I asked how that would solve the issue of Kenneth's car being on my property, he refused to explain why he was requesting the keys then demanded the keys from me. In my attempts to get an understanding of what would be happening with my assigned vehicle, LT Long continued to be very hostile in his tone and body movements. His behavior towards me was threatening as he moved into my personal space. I advised LT Long that they had no reason to be on my property and since they were refusing to leave my property I asked him to call the Chief of Police. LT Long refused to contact any higher ranking supervisor in the chain of command and advised me that he would inform dispatch not to honor any request from me. LT Long told me he was going to allow Kenneth to enter upon my property against my wishes to remove his car from my property. SGT Wieczorek was very hostile towards me in his speech and behavior. SGT Wieczorek also told me that they were going to allow Kenneth to enter upon my property against my wishes to remove his vehicle. SGT Wieczorek intentionally placed my life in danger after he entered upon my property against my wishes then got into Kenneth's car and began backing it up while I was standing at the rear of the vehicle. LT Long ordered me to move off my driveway or be arrested after having all of the Patrol Officers surround me. When I stepped from behind Kenneth's car SGT Wieczorek again entered my property against my wishes and got into Kenneth's car and removed it from my driveway.

I contacted dispatch by phone and requested to be connected with Major Parrish or Chief Greg Benton. The dispatcher connected me with Major Parrish and I informed him briefly of the circumstances and that I requested the officers to leave. Major Parrish stated that because I indicated to him that I would have used my patrol car's video equipment to capture Kenneth's actions while he was placing city property in jeopardy of being damaged that I acted as a police officer. Major Parrish knew that I was off-duty and protecting my property from unwanted trespassers. Major Parrish instructed LT Long to make a decision regarding Kenneth's car and if I disagreed with his decision I could discuss it with him during my work day. Major Parrish advised LT Long to contact him if he needed to speak with

him further on his cell phone rather than my cell phone and disconnected the call as I was speaking. Major Parrish was unprofessional in his communication with me and demonstrated conduct unbecoming an officer. His directive to LT Long went against my request for all of the Officers under his command to leave my property over a civil dispute.

The civil dispute between Kenneth and I was turned into a Domestic Violence incident whereby I was the victim. The Supervisors and Officers that responded to my home overreacted which resulted in me being further victimized by their actions as they violated my Constitutional rights to privacy. The incident did not result in the immediate arrest of anyone nor any warrants being issued. As a result of the discourteous, unprofessional, and illegal manner in which this incident was handled, I have been subjected to being falsely accused of gross insubordination an intolerable offense punishable by termination. Due to the fact that I have a pending disciplinary appeal in Circuit Court and a pending Federal EEOC complaint against the Dothan Police Department involving Chief Benton and Major Parrish, I believe this new charge to be an act of retaliation in response to those complaints.

RaeMonica Carney

Dec. 16, 2013
Date

CITY OF DOTHAN/CARNEY 000706
CONFIDENTIAL

## SWORN STATEMENT OF KENNETH CLOYD

I, Kenneth Cloyd, being over the age of 19 years and of sound mind, hereby swear under penalty of perjury as follows:

This statement is my recollection of the events that occurred on Monday, December 9, 2013 around 12:00 a.m. between my fiancée RaeMonica Carney and me after leaving Southeast Alabama Medical Center.

I had been sick the morning of December 9. After I was released from treatment at the hospital, RaeMonica, who was off-duty, drove us to the parking lot of Northview Christian Church parking lot so that we could discuss an email message that came to my phone while she was using it with my permission. RaeMonica and I talked and had a verbal disagreement. As a result of me telling her that I wanted to end our relationship, she asked me to get out of her car. I asked her what about my car and she said she would have it towed from her property. I got out of her car and began walking out of the parking lot. RaeMonica stopped and rolled down the passenger window and told me not to come back to her home and that she would bring me my things. I continued walking to go back to her home as she drove away.

RaeMonica returned a little while later as I was walking along Ross Clark Circle near Webb Road and gave me my suitcase and other clothing items. I asked again about my car and she said she would have it towed and again stated do not come to her home. She drove off and I continued to make my way to her home. A few minutes later I made it to State Avenue where I made contact with RaeMonica near the intersection. When I turned onto State Avenue she asked me to go to a hotel and not come to her home. I continued walking past her without responding to her. She got back into her vehicle and drove to her home a short distance away.

I made it to her home, walked into the driveway and opened the trunk of my car. I put my suitcase and other clothing items in the trunk. RaeMonica had just parked her personal car inside the garage and was letting the garage door down. I saw her enter into the house from the staircase inside the garage before the garage door shut. I got into my car and attempted to maneuver my car out of the driveway. RaeMonica's patrol car was parked behind my car in the driveway. As I was trying to get my car around her patrol car, she came outside and asked me to stop before I accidentally strike the patrol car and get charged with damaging city property. She immediately walked over to the patrol car and started to move it from behind my car. I continued to try and move my car at the same time she was moving the patrol car. RaeMonica blew the car horn to get my attention so we would not collide with

CITY OF DOTHAN/CARNEY 000707
CONFIDENTIAL

each other. I accidentally struck a concrete planter in her yard with my car. I put my car in park and got out and walked over to her car door and opened it. I grabbed her left arm and sweater and pulled her arm twice. She told me to let go of her arm because the car was in drive. I asked her to put the car in park and let's go inside the house and talk as I let go of her arm. She said no to going inside the house. As I walked away from her car door I told her I was going to call the police. She said you can call whomever you want. She put the car in park, turned it off, and got out of it. She waited outside as I spoke to the 9-1-1 dispatcher on the phone. The dispatcher asked me, "What is your emergency?" I said, "I need someone to come and get my car out of the driveway at 2601 Stringer Street." She asked me my name, I said, "Kenneth Cloyd." She asked me who lives there and I said, "RaeMonica Carney, she's a police officer." She asked me, "What is your relationship to her" and I said, "Fiancee." She said she would send someone over and I hung up.

As the white female officer (Officer Lacy Schulmerich) drove up and parked, RaeMonica went back inside her home. Officer Schulmerich walked into the driveway and asked me "What was the problem." I told her, "I just need to get my car out of the driveway so I can go back to Kentucky." Officer Schulmerich walked over to RaeMonica and spoke to her. RaeMonica asked Officer Schulmerich to have me get off her property. RaeMonica walked towards the driveway at which time I said to her, "I thought you knew the law." Officer Schulmerich asked me not to say anything to RaeMonica. RaeMonica asked Officer Schulmerich a second time to please have me get off her property and for Officer Schulmerich to speak with me in the street. Officer Schulmerich told RaeMonica that I was still on the property because she had me there. RaeMonica told her I did not have permission to be on the property and asked her a third time to please leave her property and speak with me in the roadway. I started to walk toward the street at the direction of Officer Schulmerich who joined me in the roadway and told me a supervisor was coming. Officer Schulmerich asked me where I was coming from. I told her I walked from the church with the dome but that RaeMonica told me not to come and that she would call a tow truck to get my car off her property. RaeMonica walked back inside the house momentarily then came back outside and within a few minutes five other Police Officers quickly arrived.

I went and stood by the mailbox in front of the house while the officers went and spoke with RaeMonica after she walked out into the driveway behind my car. The heavier set white male officer (Officer Anthony McClendon) stood next to me and talked to me about where he was from and where in Kentucky he had been. He also spoke about a young lady who lived in Richmond, KY. Officer Schulmerich repeatedly walked over to me asking me for different information like my driver's license and where I worked. I answered her questions and she wrote down what I said. Officer Schulmerich

CITY OF DOTHAN/CARNEY 000708
CONFIDENTIAL

15

would walk back and forth from me to where RaeMonica was standing in her driveway.   I then saw one of the officers move RaeMonica's patrol car into the roadway after another officer had to move his patrol car that was blocking the driveway.

I saw the black male officer (Officer Taiwan Truitt) take pictures of RaeMonica's arm while they were standing behind my car. The short white male officer (SGT Derek Wieczorek) came over to me and asked me, "Can I have your key so I can move your car?" I told him, "My key is already in the car. All you have to do is just get in there and turn it over." SGT Wieczorek walked over to my car and got in it. He started my car, put it in reverse, and began backing up. RaeMonica and Officer Truitt were standing at the rear of my car as SGT Wieczorek began backing up. SGT Wieczorek got out of my car and came back over and said, "She said she wasn't moving out of the way for us to get your car out of the driveway."

A few minutes later, SGT Wieczorek got back into my car and backed it out of the driveway into the street. After pulling my car into the roadway, SGT Wieczorek was unable to get my car into drive and park it, so I had to move it to the side of the roadway. Officer Truitt came over and took pictures of my license plate. Officer Truitt said, "You alright man" or something similar to that and my response was, "I'm sweating." Officer Schulmerich came back over and asked if the phone number I provided was a good contact number to reach me at. I told her yes and she told me I could leave. I got in my car and left.

The two supervisors never questioned me about pulling RaeMonica's arm, about her claims that I was trespassing, or the damage to her planter. Officer Schulmerich and Officer McClendon asked me whether RaeMonica had been drinking. I laughed and said no, she doesn't drink. They asked whether I had been drinking, and I said no. Officer Schulmerich asked whether RaeMonica had been physically abusive to me, and I said no. Officer Schulmerich asked me if I had been physically abusive to her. I said no, then she asked did I pull on her arm. I said yes I pulled on her arm and shirt. It seemed like the officers were more interested in investigating RaeMonica than anything else. I regret having called the police, because I believe they overreacted and we could have worked it out on our own. I do not believe RaeMonica should be punished over this incident.

_Kenneth Cloyd_
Kenneth Cloyd

_12 - 15 -13_
Date

# DECISION OF DETERMINATION HEARING



(Personnel Form 155)

| Employee Name | Employee SSN | Department |
|---|---|---|
| RaeMonica Carney | 100585 | Police |

| Employee Job Title | Date of Determination Hearing |
|---|---|
| Police Corporal | 12-16-2013 |

**Statement of Department Head's Decision**

You are hereby notified that after the due process determination hearing and consideration of the charges and possible violations of Personnel Rules and/or the Civil Service Act of Dothan, as amended, I have made the following decision concerning disciplinary action: (*State the decision in the space below*)

After reviewing all the facts and circumstances, and the Internal Affairs Investigation I have determined you were in violation of Sec. 3-43 (18) of The City of Dothan Personnel rules and regulations: Gross Insubordination.

It is my decision to terminate your employment with The City of Dothan Police Department effective immediately.

Furthermore, you are hereby advised that if you are dissatisfied with this decision to discipline, you have available to you the procedures for review and/or appeal as provided by the Civil Service Act of Dothan, as amended, and the Personnel Rules and Regulations.

| Signature of Department Head | Date Signed |
|---|---|
| *[signature]* | 12 - 16 - 2013 |

**Employee Certification of Receipt of Department Head's Decision and Employee Notice of Appeal Right**

I hereby certify I have received a copy of this decision to discipline from my department head or his/her designated representative. I understand that should I wish to appeal my department head's disciplinary decision I must file a written notice with my department head and the Personnel Board within the time period specified in the Personnel Rules and Regulations, Section 3-50, Appeal of Disciplinary Action. Personnel Form #152 – City of Dothan Appeal Form may be used to initiate an appeal of disciplinary action. Any Classified employee or laborer, **other than those under initial probationary status,** may appeal any disciplinary action taken by following the procedure outlined in REGULATION V - GRIEVANCE AND APPEAL PROCEDURE or by following the procedures in Sections 21 and 22 of "the Civil Service Act of Dothan."

| Employee's Signature | Date Signed |
|---|---|
| *[signature]* RaeMonica Carney | DEC. 16, 2013 |

To be completed by person serving this notice to employee

| Signature of person serving this notice | Date Notice Served | Time Notice Served |
|---|---|---|
| *[signature]* | 12 - 16 - 2013 | 10.45 |

Distribution: ☑ Original to Personnel   ☐ Copy to Department Head   ☐ Copy to Employee

Personnel Form #155 (Revised 2/2001)
C:\Users\drmagill\Desktop\Carney\PF155 Decision Of Determination Hearing carney.doc



CITY OF DOTHAN/CARNEY 000699
CONFIDENTIAL

6

## DUE PROCESS INTERVIEW QUESTIONS TO BE ASKED PRIOR TO DETERMINATION HEARINGS

| Employee Name | Employee SSN | Employee Department |
|---|---|---|
| Raemonica Carney | 100585 | Police |
| Employee Job Title | Hearing Time | Date of Hearing |
| Police Corporal | 8:30AM | 12-16-13 |

**INSTRUCTIONS:** With the tape recorder on and recording, the following questions are to be asked directly of the employee for whom the determination hearing is being held. These questions are to be asked prior to proceeding with the hearing.

YES  NO

☑ ☐  1. Do you acknowledge that you were notified at least 24 hours in advance of this determination hearing?

☐ ☑  2. Do you have any specific questions regarding this procedure?

☑ ☐  3. Do you understand this is not an adversarial hearing? This means there is no cross examination of witnesses or calling of witnesses to testify?

☑ ☐  4. Do you understand that you do not have to reply to these charges?

☑ ☐  5. Do you understand you have the right to reply orally and/or in writing to these charges?

☑ ☐  6. Do you understand you have had a reasonable opportunity within the past 24 hours to reply in writing or submit sworn affidavits in reply to the charges if you so elected?

☑ ☐  7. Do you have a written statement or sworn affidavits you wish to submit in response to the charges?

☐ ☑  8. Do you have any reason at this time why this hearing should not proceed?

☐  The employee failed to appear for this determination hearing on the date and at the time scheduled.

☑  The employee was present and responded as shown to the above questions.

Signature of Personnel Department Staff: *Kris Knight*

In the space below or on the back of this form, list the name(s), title(s) and reason(s) for the presence of all others present during this hearing.

*Raemonica Carney, Chief Benton, Donny Smith, Doug Magil, Darryl Matthews, Pat Jones*

Tape No. *2013-04*

Public/PF154/REVISED 4/19/94 o 3/3/95 o 12/02/98

CITY OF DOTHAN/CARNEY 000700
CONFIDENTIAL

CITY OF DOTHAN          )
ALABAMA                 )          PERSONNEL BOARD ORDER NO. 14-01
HOUSTON COUNTY          )

THE PERSONNEL BOARD
City of Dothan
Dothan, Alabama

SUBJECT: Termination Appeal of Corporal RaeMonica Carney, Police Department.

Pursuant to the City of Dothan Personnel Rules and Regulations III – Disciplinary Policy, RaeMonica

Carney, Police Corporal, was served with a City of Dothan Disciplinary Action Report (Personnel

Form #147) dated December 12, 2013, charging Ms. Carney with an Intolerable Category Offense,

Sec. 3-43 (18), Grounds for Discharge. The statement of charges reads:

"On 12-9-2013 you were involved in a domestic incident at your residence involving
your fiancé, Kenneth Cloyd. During the incident, you used your city issued police
vehicle to block in Mr. Cloyd's vehicle and prevent him from leaving. You told Mr.
Cloyd (and later Lieutenant Long) the only way the vehicle was leaving your property
was via tow truck. Mr. Cloyd then called the Dothan Police Department and requested
assistance. Upon the arrival of two Dothan Police Supervisors, Sergeant Derek
Wieczorek and Lieutenant Scott long, Lieutenant Long ordered you to remove your city
issued vehicle from behind Mr. Cloyd's vehicle, in which you refused. Lieutenant Long
gave you a second command to give him the keys to your city issued car and you
refused. It wasn't until the third time being ordered did you comply with that order.
Lieutenant Long then moved your police issued vehicle out of the path of Mr. Cloyd's
vehicle and you immediately stepped to the rear of Mr. Cloyd's vehicle blocking the
exit again, this time with your person.

Lieutenant Long then ordered you to move out of the vehicles path and you refused.
Lieutenant Long ordered you to move 4 more times and you refused. You then called
dispatch and addressed yourself as your badge number (669) and asked to speak to
Major Parrish. Once on the phone, Major Parrish informed you that Lieutenant Long
was in charge of the scene and for you to follow his command. You advised Major
Parrish that you understood that. When you hung up with Major Parrish you again
refused to move stating "I'm off duty." Lieutenant Long told you to move again and you
still refused. It wasn't until Lieutenant Long was in the process of placing you under
arrest did you move out of the way.

Mr. Cloyd's vehicle came onto your property with your permission and he had
committed no crime. When your personal argument with him began, you used your



CITY OF DOTHAN/CARNEY 002004
CONFIDENTIAL
Page 1 of 1

City patrol vehicle to prevent him from leaving without paying a towing charge. You also attempted to use your in-car camera to record Mr. Cloyd's vehicle during the incident. After refusing direct orders from superior officers on the scene to move your city patrol vehicle, you used your badge number with police dispatch to directly contact Maj. Parrish. Your actions in refusing to obey direct orders from those officers as well as those of Maj. Parrish to either move or allow Mr. Cloyd's car to be moved, constitute gross insubordination. Your further action of placing yourself in the path of Mr. Cloyd's vehicle while another officer was attempting to move it was a violation of a direct order given to you by a superior officer and also constitutes gross insubordination.

Your actions during this incident constitute gross insubordination as set out in the City of Dothan Personnel Rules and Regulations, Sec. 3-43. (18) Gross insubordination. This is an intolerable offense."

Ms. Carney was served with Personnel Form #153, Notice of Determination Hearing and Possible Disciplinary Action, dated December 12, 2013, pursuant to the City of Dothan Personnel Rules and Regulations IV – Due Process Procedure.

A Determination Hearing was conducted on Monday, December 16, 2013, at which time Ms. Carney was given the opportunity to respond to the charges, either orally and/or in writing. A transcript of this determination hearing was submitted into the record at the Personnel Board hearing.

On December 16, 2013, Police Chief Gregory Benton issued Personnel Form #155, Decision of Determination Hearing, and Ms. Carney received this written decision on December 16, 2013. This decision reads:

"After reviewing all the facts and circumstances, and the Internal Affairs Investigation I have determined you were in violation of Sec. 3-43 (18) The City of Dothan Personnel rules and regulations: Gross Insubordination.

It is my decision to terminate your employment with The City of Dothan Police Department effective immediately."

On December 16, 2013, Ms. Carney filed Personnel Form #152, City of Dothan Appeal Form, requesting an appeal to the Personnel Board of the disciplinary action taken against her.

CITY OF DOTHAN/CARNEY 002005
CONFIDENTIAL

The Personnel Board convened to hear Ms. Carney's appeal on Thursday, March 13, 2014, 8:30 a.m., in the Board Room, Second Floor of the Dothan Civic Center.

**PERSONNEL BOARD CONSIDERATIONS:** The Personnel Board heard testimony, examined the evidence submitted during the hearing, and upon receipt of the official hearing transcript, reviewed the transcript and evidentiary exhibits again.

**PERSONNEL BOARD FINDING:** We find substantial evidence to terminate the employment of RaeMonica Carney for having an Intolerable Category Offense, Sec. 3-43 (18), Grounds for Discharge.

Signed this _14th_ day of April 2014.

ATTEST:

_Delvick J. McKay_
Delvick J. McKay
Personnel Director

_Mark Smith_
MARK SMITH, Chairperson

_Mary Davis_
MARY DAVIS, Member

_Tim Shirley_ 4/14/14
TIM SHIRLEY, Member

_Barbara A Spann_
BARBARA SPANN, Member

_Earl Tyson_
EARL TYSON, Member

CITY OF DOTHAN/CARNEY 002006
CONFIDENTIAL

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

RAEMONICA CARNEY,           )
Plaintiff,                  )
                            )
vs.                         )        **CIVIL ACTION NO:**
                            )        **1:14-cv-00392-WC**
CITY OF DOTHAN,             )
Defendant.                  )

### DEFENDANT'S SECOND INTERROGATORIES TO PLAINTIFF

Defendant, City of Dothan ("Dothan" or "Defendant"), by and through its counsel of record, submits the following interrogatories to Plaintiff, Raemonica Carney, to be answered separately and fully in writing and under oath, by March 23, 2015, in accordance with the Court's March 3, 2015 Order. (Doc. 36).

### DEFINITIONS AND INSTRUCTIONS

For purposes of these discovery requests:

(a)    "You" and "your" means Plaintiff, Raemonica Carney, and her agents, employees, attorneys, and all other persons who have acted on her behalf.

(b)    "Documents" means all written, recorded, electronic, or graphic matter, however produced and reproduced, including but not limited to all correspondence, memoranda, papers, records, notes, reports, statistical or other data, compilations, ledgers, tape recordings, telegrams, plans, drawings,



DEFENDANT'S EXHIBIT

43

summaries, and any other documents as that term is used in Rule 34 of the Federal Rules of Civil Procedure, including all non-identical copies of such documents.

(c)     "Identify" when used with reference to: (i) an individual person means to state his or her full name, employer, job title, present or last known address and telephone number, and present or last known business address and telephone number; (ii) a document means to state the type of document (*e.g.*, letter, memorandum, etc.) and its date, author, addressee, general subject matter and present location and custodian. (If any document was, but no longer is, in your possession, state what disposition was made of it and the facts or reasons for such disposition.)

(d)     "Person" or "persons" means any natural person, firm, proprietorship, partnership, joint venture, corporation, association, or other business entity, and all present and former officers, directors, agents, employees, and others acting for or purporting to act on behalf of such natural person, firm, proprietorship, partnership, joint venture, corporation, association, or other business entity with respect to the matter referred to in the discovery request and/or your answer thereto.

(e)     "Relate(s) to" or "relating to" means refer(s) to, reflect(s) or in any way logically or factually connect(s) with the matter described in the discovery request.

(f)     If any discovery request cannot be answered in full, then answer to the extent possible and state the reason or reasons for your inability to provide a complete answer.

(g)     With regard to your answer to each discovery request, identify the person(s) providing the information contained in the answer and state whether the information furnished is within the personal knowledge of the person providing the information and, if not, the identity, if known, of each person with whom the information is a matter of personal knowledge.

(h)     These discovery requests shall be deemed continuing, and supplemental answers shall be filed to the extent required by the Federal Rules of Civil Procedure.  If further information is obtained of the nature sought by these discovery requests after the service of your answer, you are specifically requested to supply such further information to Defendant.

(i)     If any privilege is claimed with respect to the information requested in any discovery request, state the privilege claimed and the basis for asserting such privilege.

(j)     PLEASE NOTE that a request is not necessarily objectionable merely because an answer to the discovery request involves an opinion or contention that relates to fact or the application of law to fact.

## INTERROGATORIES

For each of the audio recordings produced in this matter on January 29, 2015 (and listed in the attached chart) provide the following information.   Your answers may be input directly into the attached chart.

1. Provide the date each discussion was recorded.

2. Identity the individuals speaking on each recording, include the name, job title, race and gender of each individual.

3. Did the individual(s) on each recording (other than you) know that they were being recorded?  If so, identify which individual(s) knew they were being recorded at the time the recording was being made.

4. Did the individual(s) on the recording (other than you) consent to the recording?  If so, identify who consented to the recording.

5. Who made each audio recording?

6. What device did you use to record each discussion?

7. Where were you located when each discussion took place?

8. Have you produced the recorded discussions in their entirety?  If not, explain which portions have not been produced.

9. Have the audio recordings been altered or edited in any way?  If so, explain the details of the alterations and/or edits.

10. Does each audio recording truthfully and accurately reflect the discussion that occurred at the time the recording was made?

Respectfully submitted,


*/s/ Tiffany P. Rainbolt*
Christopher M. Mitchell
Stephanie H. Mays
Tiffany P. Rainbolt
Attorneys for Defendant


**OF COUNSEL:**

**MAYNARD, COOPER & GALE, P.C.**
1901 6th Avenue North
2400 Regions/Harbert Plaza
Birmingham, Alabama  35203
Phone:  (205) 254-1000
Fax:  (205) 254-1999
E-mail:  cmithcell@maynardcooper.com
        smays@maynardcooper.com
        trainbolt@maynardcooper.com

## CERTIFICATE OF SERVICE

I hereby certify that I have on this the 9th day of March, 2015, served a copy of these requests via U.S. Mail and Certified Mail to the following:

RaeMonica Carney Cloyd
11508 Nancy Stone Court
Louisville, Kentucky 40229

/s/ Tiffany P. Rainbolt
OF COUNSEL

| Audio Recording Number | 1. Date | 2. Identity of Speakers | 3. Knowledge of Recording | 4. Consent to Recording | 5. Who Made Recording | 6. Device Used | 7. Location of Promotion | 8. Produced in Entirety | 9. Altered | 10. Testified and Assembly |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 13M02-001 | 4/27/2013 | UNKNOWN/TOWN SHELBY | UNKNOWN/NOT REQUIRED BY LAW | | | | | | | |
| 2 13MO7-001 | 4/27/2013 | RECEA MATT | UNKNOWN/NOT REQUIRED BY LAW | | | | | | | |
| 3 13MO4-001 | 6/27/2013 | JOHN WHITE | UNKNOWN/NOT REQUIRED BY LAW | NO - NOT REQUIRED BY LAW | RAINONICA CANNOT LLOYD | SONY IC RECORDER | CIVIC CENTER MEETING ROOM | YES | NO | YES |
| 4 13MO5-000 | 8/14/2013 | JOHN WHITE | UNKNOWN/NOT REQUIRED BY LAW | NO - NOT REQUIRED BY LAW | RAINONICA CANNOT LLOYD | SONY IC RECORDER | CIVIC CENTER MEETING ROOM | YES | NO | YES |
| 5 13MO1-001 | 9/14/2013 | PERSONNEL, BOARD MEMBERS - BARBARA SPAWN/CARL EDWARDS/CHIEF GREG BENTON | UNKNOWN/NOT REQUIRED BY LAW | NO - NOT REQUIRED BY LAW | RAINONICA CANNOT LLOYD | SONY IC RECORDER | JAIL | YES | NO | YES |
| 6 13MO4-001 | 9/25/2013 | DEP DEVELLUS INTERASON, PETER MANGUM/CLOTT SHREVE/JOE MADDOX | UNKNOWN/NOT REQUIRED BY LAW | NO - NOT REQUIRED BY LAW | RAINONICA CANNOT LLOYD | SONY IC RECORDER | DOCKET/CONTROL ROOM CITY | YES | NO | YES |
| 7 13MO4-001 | 9/25/2013 | LT DAVEY/BRADLEY RICK MADDOX/DR BRADLEY BEATTY | UNKNOWN/NOT REQUIRED BY LAW | NO - NOT REQUIRED BY LAW | RAINONICA CANNOT LLOYD | SONY IC RECORDER | DOCKET/CONTROL ROOM CITY | YES | NO | YES |
| 8 13MO7-004 | 9/25/2013 | JAIL ADMINISTRATOR MAXINE McCOY/JOSH MAXON | UNKNOWN/NOT REQUIRED BY LAW | NO - NOT REQUIRED BY LAW | RAINONICA CANNOT LLOYD | JAIL/RAY ROGERS RESIDENCE | DOCKET/CONTROL ROOM CITY | YES | NO | YES |
| 9 13MO5-001 | 9/25/2013 | ISO ERIC MORALES/ISO RECEA FLOYD/ISO DEBRE BOATWRIGHT/ISO BRANSON | UNKNOWN/NOT REQUIRED BY LAW | NO - NOT REQUIRED BY LAW | RAINONICA CANNOT LLOYD | JAIL | DOCKET/CONTROL ROOM CITY | YES | NO | YES |
| 10 13MO8-001 | 9/25/2013 | ISO DEBRE BOATWRIGHT/ISO RECEA FLOYD | UNKNOWN/NOT REQUIRED BY LAW | NO - NOT REQUIRED BY LAW | RAINONICA CANNOT LLOYD | IN VEHICLE | DOCKET/CONTROL ROOM CITY | YES | NO | YES |
| 11 13MO9-001 | 9/25/2013 | ISO ERIC MORALES/JAIL ADMINISTRATOR MAXINE McCOY | UNKNOWN/NOT REQUIRED BY LAW | NO - NOT REQUIRED BY LAW | RAINONICA CANNOT LLOYD | JAIL | DOCKET/CONTROL ROOM CITY | YES | NO | YES |
| 12 13MO5-001 | 9/14/2013 | ISO DANA KOGER/JAIL ADMINISTRATOR MAXINE McCOY | UNKNOWN/NOT REQUIRED BY LAW | NO - NOT REQUIRED BY LAW | RAINONICA CANNOT LLOYD | JAIL | DOCKET/CONTROL ROOM CITY | YES | NO | YES |
| 13 13MO2-001 | 9/14/2013 | JAIL SGT GUNTER CANADY/ISO DEBRE BOATWRIGHT/ISO DANA ADMINISTRATOR MAXINE McCOY | UNKNOWN/NOT REQUIRED BY LAW | NO - NOT REQUIRED BY LAW | RAINONICA CANNOT LLOYD | JAIL | DOCKET/CONTROL ROOM CITY | YES | NO | YES |
| 14 13MO2-001 | 9/25/2013 | ISO ERIC MORALES/T MIKE STRICK/ISO DEBRE BOATWRIGHT/MAINTENANCE WORKER | UNKNOWN/NOT REQUIRED BY LAW | NO - NOT REQUIRED BY LAW | RAINONICA CANNOT LLOYD | JAIL | DOCKET/CONTROL ROOM CITY | YES | NO | YES |
| 15 13MO2-001 | 9/25/2013 | ISO ERIC MORALES/ISO EDITH/ISO MORRIS/ISO DEBRE BOATWRIGHT/MAINTENANCE WORKER | UNKNOWN/NOT REQUIRED BY LAW | NO - NOT REQUIRED BY LAW | RAINONICA CANNOT LLOYD | JAIL/RAY MATHEWS RESIDENCE | DOCKET/CONTROL ROOM CITY | YES | NO | YES |
| 16 13MO7-001 | 10/18/2013 | ISO DEBRE BOATWRIGHT/ISO ERIC MORRIS | UNKNOWN/NOT REQUIRED BY LAW | NO - NOT REQUIRED BY LAW | RAINONICA CANNOT LLOYD | JAIL | DOCKET/CONTROL ROOM CITY | YES | NO | YES |
| 17 13MO7-001 | 10/18/2013 | ISO ERIC MORALES/ISO ERIC MORRIS/ISO DEBRE BOATWRIGHT/UNKNOWN BONDSMAN | UNKNOWN/NOT REQUIRED BY LAW | NO - NOT REQUIRED BY LAW | RAINONICA CANNOT LLOYD | JAIL | DOCKET/CONTROL ROOM CITY | YES | NO | YES |
| 18 13MO5-001 | 10/18/2013 | MARC McCOY/MAINTENANCE WORKER | UNKNOWN/NOT REQUIRED BY LAW | NO - NOT REQUIRED BY LAW | RAINONICA CANNOT LLOYD | SONY IC RECORDER | DOCKET/CONTROL ROOM CITY | YES | NO | YES |
| 19 13MO5-001 | 12/6/2013 | LT SPEARMS | UNKNOWN/NOT REQUIRED BY LAW | NO - NOT REQUIRED BY LAW | RAINONICA CANNOT LLOYD | MY RECORDING | JAIL | YES | NO | YES |
| 20 13MO1-001 | 12/2/2013 | MIKE MATT | UNKNOWN/NOT REQUIRED BY LAW | NO - NOT REQUIRED BY LAW | RAINONICA CANNOT LLOYD | IN VEHICLE | JAIL | YES | NO | YES |
| 21 13MO3-001 OBROS | 2/24/2013 | MAL STEVE MARSH | UNKNOWN/NOT REQUIRED BY LAW | NO - NOT REQUIRED BY LAW | RAINONICA CANNOT LLOYD | MY RECORDING | JAIL | YES | NO | YES |
| 22 13MO3-001 05828 | 2/24/2013 | MIKE MATT | UNKNOWN/NOT REQUIRED BY LAW | NO - NOT REQUIRED BY LAW | RAINONICA CANNOT LLOYD | MY RECORDING | JAIL | YES | NO | YES |
| 23 13MO3-001 05813 | 2/26/2013 | LT DAVEY/SHERIFF | UNKNOWN/NOT REQUIRED BY LAW | NO - NOT REQUIRED BY LAW | RAINONICA CANNOT LLOYD | MY RECORDING | JAIL | YES | NO | YES |
| 24 13MO3-001 05513 | 2/2/2013 | LT BENNY BAILEY | UNKNOWN/NOT REQUIRED BY LAW | NO - NOT REQUIRED BY LAW | RAINONICA CANNOT LLOYD | MY RECORDING | JAIL | YES | NO | YES |
| 25 2013O10 055130 | 12/14/2013 | UNKNOWN RECORDING | UNKNOWN RECORDING | UNKNOWN RECORDING | UNKNOWN RECORDING | UNKNOWN RECORDING | UNKNOWN RECORDING | UNKNOWN RECORDING | UNKNOWN RECORDING | UNKNOWN RECORDING |
| 26 2013O10 153213 | 2/27/2013 | PERSONNEL DEPT - ELEANOR/VICE McCLAY | UNKNOWN/NOT REQUIRED BY LAW | NO - NOT REQUIRED BY LAW | RAINONICA CANNOT LLOYD | CIVIC CENTER MEETING DEPT | POLICE DEPT | YES | NO | YES |
| 27 2013O19 100545 | 2/28/2013 | LT BENNY BAILEY/UNKNOWN CONTRACTOR | UNKNOWN/NOT REQUIRED BY LAW | NO - NOT REQUIRED BY LAW | RAINONICA CANNOT LLOYD | POLICE DEPT | POLICE DEPT | YES | NO | YES |
| 28 2013O10 033329 | 12/9/2013 | LT BENNY BAILEY/SPEARMS | UNKNOWN/NOT REQUIRED BY LAW | NO - NOT REQUIRED BY LAW | RAINONICA CANNOT LLOYD | IN VEHICLE | JAIL | YES | NO | YES |
| 29 2013O13 173916 | 12/3/2013 | LT BENNY BAILEY | UNKNOWN/NOT REQUIRED BY LAW | NO - NOT REQUIRED BY LAW | RAINONICA CANNOT LLOYD | POLICE DEPT | POLICE DEPT | YES | NO | YES |
| 30 2013O14 012659 | 3/14/2013 | LT BENNY BAILEY | UNKNOWN/NOT REQUIRED BY LAW | NO - NOT REQUIRED BY LAW | RAINONICA CANNOT LLOYD | POLICE DEPT | POLICE DEPT | YES | NO | YES |
| 31 2013O14 145613 | 3/14/2013 | UNKNOWN THEY/COMMISSIONER SHELL/GROVE | UNKNOWN/NOT REQUIRED BY LAW | NO - NOT REQUIRED BY LAW | RAINONICA CANNOT LLOYD | CIVIC CENTER | CIVIC CENTER CITY | YES | NO | YES |
| 32 2013O14 164157 | 3/27/2013 | ED DAVEY/LT BENNY BAILEY | UNKNOWN/NOT REQUIRED BY LAW | NO - NOT REQUIRED BY LAW | RAINONICA CANNOT LLOYD | SHERIFF OFFICE | SHERIFF OFFICE | YES | NO | YES |
| 33 2013O23 155803 | 3/22/1947 | SGT JAKE CANADY/LT BRAD | UNKNOWN/NOT REQUIRED BY LAW | NO - NOT REQUIRED BY LAW | RAINONICA CANNOT LLOYD | POLICE DEPT | POLICE DEPT | YES | NO | YES |
| 34 2013O28 100125 | 12/1/1949 | CHIEF GREG BENTON | UNKNOWN/NOT REQUIRED BY LAW | NO - NOT REQUIRED BY LAW | RAINONICA CANNOT LLOYD | POLICE DEPT | POLICE DEPT | YES | NO | YES |
| 35 2013O409 100922 | 4/9/2010 | LT BENNY BAILEY/SHERIFF CANADY/DEBRE BOATWRIGHT/DEP DAELA GRAY/ET RAY WINDHAM | UNKNOWN/NOT REQUIRED BY LAW | NO - NOT REQUIRED BY LAW | RAINONICA CANNOT LLOYD | POLICE DEPT | POLICE DEPT | YES | NO | YES |
| 36 2013O110 153900 | 3/24/2013 | UNKNOWN RECORDING | UNKNOWN/NOT REQUIRED BY LAW | UNKNOWN RECORDING | RAINONICA CANNOT LLOYD | UNKNOWN RECORDING | UNKNOWN RECORDING | UNKNOWN RECORDING | UNKNOWN RECORDING | UNKNOWN RECORDING |
| 37 20131210 080729 | | SGT JOHNNY SMITH | UNKNOWN/NOT REQUIRED BY LAW | UNKNOWN RECORDING | | | | UNKNOWN RECORDING | UNKNOWN RECORDING | UNKNOWN RECORDING |

SPECIAL NOTE: SOME OF THE RECORDING CAPTURE THE VOICES OF UNKNOWN PERSONS. 05 04/24/2015

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| RAEMONICA CARNEY, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )     **Case No. 1:14-cv-392-WKW-PWG** |
| | ) |
| **CITY OF DOTHAN,** | ) |
| | ) |
| **Defendant.** | ) |

### ORDER

This matter is before the court on "Defendant's Motion Regarding Plaintiff's Audio Recordings and Renewed Motion for Additional Time to Depose Plaintiff." (Doc. 35). Defendant's counsel request permission to disclose the contents of audio recordings and social media discovery to their client. Also, Defendant requests leave to serve written discovery upon Plaintiff and to complete Plaintiff's deposition. Defendant seeks an expedited schedule for those discovery matters.

Upon consideration, it is **ORDERED**:

(1)    The stay of this case entered on January 30, 2015 (Doc. 33) is **LIFTED**;

(2)    "Defendant's Motion Regarding Plaintiff's Audio Recordings and Renewed Motion for Additional Time to Depose Plaintiff" (Doc. 35) is **GRANTED**;

(3)    Defendant's counsel are granted leave to disclose to Defendant the

1



contents of the audio recordings and social media discovery at issue;

(4)     Defendant may serve on Plaintiff written discovery, limited to ten (10) interrogatories, on the subject of the audio recordings and social media discovery by **March 9, 2015**;

(5)     Plaintiff must respond to Defendant's timely served written discovery requests by **March 23, 2015**;

(6)     Defendant is granted leave to re-open Plaintiff's deposition for the purpose of completing the original deposition and to inquire about the audio recordings and social media discovery. Because Plaintiff's original deposition was not completed and in light of the new evidence at issue, the re-opened deposition is limited to a total of six (6) hours. The deposition must take place after **March 23, 2015** and by **May 1, 2015**. If the parties cannot agree on a date and location for the deposition, it shall be conducted at **8:00 a.m. on Friday, May 1, 2015** in Courtroom 4-E in the United States Courthouse, 1 Church Street, Montgomery, Alabama. If the parties will use the courtroom, defense counsel is directed to notify the court by telephone at (334) 954-3960 at least seven (7) days prior to the deposition; and,

(7)     Except as otherwise stated herein, discovery is closed. (*See* Docs. 12, 14 & 15). The parties may petition the court for entry of an amended scheduling order after Plaintiff's deposition is taken.

2

Because Plaintiff is now proceeding *pro se*, the Clerk of Court is directed to mail a copy of this order to Plaintiff's address of record.

**DONE** and **ORDERED** this 3rd day of March, 2015.

/s/ Paul W. Greene
United States Magistrate Judge

**From:**  Benny, William <webenny@dothan.org>
**Sent:**  Friday, November 30, 2012 9:36 AM
**To:**  Carney, Raemonica
**Subject:**  Crimestoppers

Thanks for your hard work on setting up the TipSoft. The Admin rights have been changed to fall in line with the distribution and response needed for Crime Stopper Tips. You are of course still the liaison for the Dothan Police Department and the Chamber of Commerce for the Crime Stopper Program.

Lt. W. Benny
Criminal Investigation Division
Dothan Police Department
334-615-3644



DEFENDANT'S EXHIBIT

45

CITY OF DOTHAN/CARNEY 002003