IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| IVAN KEITH GRAY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO: |
| | ) | **1:14-cv-00592-MHT-SRW** |
| CITY OF DOTHAN, | ) | |
| Defendant. | ) | |

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT AND ITS MOTION FOR COMPLETE SUMMARY JUDGMENT

Chris Mitchell, Esq.
Stephanie H. Mays, Esq.
Tiffany P. Rainbolt, Esq.
**MAYNARD, COOPER & GALE, P.C.**
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, AL 35203-2618
Telephone: 205.254.1000
Fax: 205.254.1999
cmitchell@maynardcooper.com
smays@maynardcooper.com
trainbolt@maynardcooper.com
Attorneys for City of Dothan

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION……………………………………………...……4

II.     REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S
        UNDISPUTED FACTS……………………………………….…………6

        A.      Undisputed Facts from Defendant's Partial Motion for Summary
                Judgment…………………………………………………...………6

        B.      Undisputed Facts from Defendant's Motion for Complete Summary
                Judgment………………………………………………………....…9

III.    DEFENDANT'S RESPONSE TO PLAINTIFF'S ALLEGED
        UNDISPUTED FACTS……………………………………………….…...22

IV.     ARGUMENT………………………………………………….…………...26

        A.      Evidentiary Issues………………….………………..……………..26

        B.      Timeliness of Claims………………………………….…………29

        C.      Claim Under the Consent Decree………………………………...33

        D.      First Amendment Claim………………………………………35

        E.      Title VII Discrimination Claim………………………...…………..43

                1.  Plaintiff Abandoned Claims…………………………………43

                2.  Legitimate, Non-Discriminatory Reason for Termination…...44

                3.  Plaintiff Fails to Establish Pretext……………………………45

                        i.      *Plaintiff' Misrepresents the Testimony*………………..46

                        ii.     *Plaintiff Attempts to Undercut the Cell Phone
                                Evidence*………………………………………………46

iii.   *Plaintiff Incorrectly Accuses Witnesses of Inconsistency*……………………………………………..47

iv.   *Plaintiff Cites to Old, Irrelevant Events*………………47

v.   *Plaintiff References Insufficient Comparator Evidence*……………………………………………………49

vi.   *Plaintiff Contests Defendant's Good Faith*……………51

vii.   *Plaintiff Cites to Alleged Race Related Comments*……54

F.   Retaliatory Hostile Work Environment Claim………………..…55

V.   CONCLUSION………………………………………………………59

## I.   <u>INTRODUCTION</u>

On March 17, 2015, Defendant first filed its Motion for Partial Summary Judgement, attempting to narrow the issues in this case before full summary judgment briefing. (Doc. 31 & 34). On March 27, 2015, Defendant filed its Motion for Complete Summary Judgment, explaining why it was entitled to judgment on Plaintiff's claims in this case in their entirety. (Doc. 39).

At 11:59 p.m. on April 27, 2015, having had 31 days to consider and respond to Defendant's Complete Motion and 41 days to consider and respond to Defendant's Partial Motion, Plaintiff filed a response brief. (Doc. 43). The next day, Plaintiff filed a motion informing the Court that Plaintiff's Counsel had "inadvertently saved an older version over a more recent version" of its brief and requesting permission to "add portions of the legal argument that were lost" and to upload Exhibits C-H. (Doc. 44). Plaintiff specifically represented to the Court that he "d[id] not seek to file a 'new' brief" and that "[t]he fact sections (responding to Defendant's 206 alleged undisputed facts and Plaintiff's undisputed fact section) remain unchanged." *Id*. The Court granted Plaintiff's motion (Doc. 47) and on May 11, 2015, Plaintiff filed its replacement response brief. (Doc. 48).

Contrary to what Plaintiff represented to the Court, however, he did file a new brief, changing and making extensive additions to both Plaintiff's responses to Defendant's undisputed facts and Plaintiff's own "Undisputed Facts" section.

Furthermore, Plaintiff's new brief even replaced Plaintiff's original declaration with a new, substantially more extensive declaration. Given that the original declaration was filed as a separate document from the original brief and was not mentioned at all in the motion to amend, it is clear that Plaintiff took advantage of the opportunity to add to it. Thus, as a preliminary matter, Defendant submits that any portion of the fact sections of the new response brief or of Plaintiff's declaration that was attached to it that were not part of the original brief should be deemed untimely and should not be considered by the Court.

Despite the abundance of time afforded to Plaintiff to perfect his arguments, he still fails to establish that an issue of material fact exists and that Defendant's motions are due to be denied. First, he repeatedly responds to Defendant's undisputed facts by stating that he has "insufficient evidence" to admit or deny. While this may be a permissible response for a defendant in an answer pleading, it is not sufficient in a response to a motion for summary judgment. In sum, Plaintiff directly admits to most of Defendant's undisputed facts, indirectly admits to others by claiming "insufficient knowledge," and fails to provide the necessary citation to support most of his denials. Plaintiff's additional "Undisputed Facts" section is primarily comprised of unsubstantiated, conclusory arguments that Plaintiff veils as "undisputed facts." The section is not numbered and essentially reads as a thirty

page narrative of all the things that Plaintiff *believes* the City of Dothan Police Department did to harm him.

Finally, the pervasive theme of Plaintiff's argument is Defendant's alleged lack of 100% certainty about the evidence it used to support its decisions. Plaintiff fails to appreciate that the certainty standard he advocates for is not the law, as Defendant will explain in greater detail below. For the reasons explained below, Defendant renews its previous requests that the Court grant Defendant's Motion for Partial Summary Judgment and its Motion for Complete Summary Judgment and dismiss this case in its entirety.

## II.   REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S UNDISPUTED FACTS

### A.   Undisputed Facts from Defendant's Partial Motion for Summary Judgment

1-4.   Admitted by Plaintiff. Defendant admits that its brief omitted the final number of the Charge Number of Plaintiff's August 2, 2013 EEOC Charge and that the correct Charge number is 425-2013-00913.

5-7.   Admitted by Plaintiff.

8.   Plaintiff offers no evidence to dispute the fact as stated by Defendant that both of his applications for lieutenant occurred prior to 2009. As to the chief of police position, by stating that Plaintiff applied for the position in 2004, 2009, and April 2015, Plaintiff admits that at the time Defendant's Motion for Partial Summary Judgment was filed in March 2015, the statement was true. Any application Plaintiff may have made subsequent to the filing of his Complaint is outside the scope of this lawsuit.

9.   Admitted by Plaintiff.

10.   Admitted by Plaintiff.

11.     Plaintiff offers no evidence to dispute the fact that he was placed on a performance improvement plan on or about February 24, 2012. As such, this fact is admitted for purposes of summary judgment. Defendant objects to Plaintiff's insertion of argument, speculation and conjecture, and additional unresponsive statements in response to this paragraph.

12.     Admitted by Plaintiff. Defendant objects to Plaintiff's insertion of additional unresponsive and untrue statements in response to this paragraph.

13-14.  Plaintiff offers no evidence to dispute these allegations. As such, these facts are admitted for the purposes of summary judgment.

15.     Admitted by Plaintiff. Defendant objects to Plaintiff's insertion of additional unresponsive statements in response to this paragraph and notes that the portion of the record cited by Plaintiff does not support the additional statements.

16.     Admitted by Plaintiff. Defendant objects to Plaintiff's insertion of additional unresponsive statements in response to this paragraph and notes that the cited portion of the record does not support the additional statements.

17.     Admitted by Plaintiff. Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment. Defendant objects to Plaintiff's unsupported rewording of the fact and denies that Defendant did or did not select anyone to attend the FBI National Academy. As stated in Benton's declaration, "officers are selected to participate in the Federal Bureau of Investigation ("FBI") National Academy by the FBI." (Benton Declaration ¶ 29).

18.     Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.

19.     Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.

20.     Admitted by Plaintiff.

21.     Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.

22.     Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.

23.     Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment. Defendant objects to Plaintiff's insertion of additional unresponsive statements in response to this paragraph and notes that the cited portion of the record does not support the additional statement, as it makes no reference to Captain Jay.[1]

24.     Admitted by Plaintiff.

25.     Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.

26.     Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment. Defendant objects to Plaintiff's insertion of additional unresponsive statements in response to this paragraph and notes that the cited portion of the record does not support the additional statement, as it makes no reference to preferential training offered to Woodham.

27.     Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.

28.     Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.

29.     Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment. Defendant objects to Plaintiff's insertion of additional unresponsive statements with no citation to the record in response to this paragraph.

30.     Although Plaintiff states that he denies this allegation, he states that Hughes left the department prior to 2010, which means that Hughes could not have received preferential assignments since that time. As such, this fact is admitted for the purpose of summary judgment.

31.     Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment. Defendant objects to Plaintiff's insertion of additional unresponsive statements in response to this

---

[1] Throughout his brief Plaintiff cites to his sixteen (16) page, sixty-seven (67) paragraph declaration without citing to a specific paragraph. The Court's Scheduling Order states: "In all briefs filed by any party relating to the motion, the discussion of the evidence in the brief must be accompanied by a specific reference, by page and line, to where the evidence can be found in supporting deposition or document. Failure to make such specific reference will result in the evidence not being considered by the court." (Doc. 9, Section 2). As such, citations to Plaintiff's declaration should not be considered by this Court.

paragraph and notes that the cited portion of the record does not support the additional statement, as it makes no reference to preferential assignments offered to Gonzales.

32.   Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment. Defendant objects to Plaintiff's insertion of additional unresponsive and confusing statements in response to this paragraph and notes that the cited portion of the record does not support the additional statement, as it makes no reference to preferential training offered to Gonzales.

33.   Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.

34.   Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.

35.   Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.

36.   Admitted by Plaintiff.

37.   Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.

**B.   Undisputed Facts from Defendant's Motion for Complete Summary Judgment**

1.   It is undisputed that Plaintiff was hired by the City of Dothan in or around February 1985. Defendant objects to Plaintiff's insertion of additional unresponsive statements in response to this paragraph.

2-4.   Admitted by Plaintiff.

5.   Plaintiff admits that the position of captain is the third highest ranking position in the department.  Plaintiff offers no evidence to dispute the remaining allegation. As such, this fact is admitted for the purposes of summary judgment.

6.   Admitted by Plaintiff.

7.   Plaintiff offers no evidence to dispute this allegation.  As such, this fact is admitted for the purposes of summary judgment.

8.     It is undisputed that the City of Dothan issued Police Department General Orders, Personnel Board Rules and Regulations, and City policies.

9.     Plaintiff offers no evidence to dispute this allegation or to support his objection. Plaintiff's objection that Benton, Chief of the Dothan Police Department from 2010-2015 does not have first-hand knowledge about officers in the Department receiving a copy of policies when hired is unfounded and nonsensical and should be overruled.

10.     Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.

11.     Plaintiff testified in his deposition as follows:

Q:     Did you have access to those rules and regulations?

A:     Yes.

[Objection omitted.]

Q:     Did you have access to Dothan Police Department's general orders?

A:     Yes.

(Gray Depo, 159:14-21). Plaintiff's deposition testimony speaks for itself and establishes that Defendant did not overstate or contradict Plaintiff's testimony. Defendant objects to Plaintiff's insertion of additional unresponsive statements in response to this paragraph.

12.     Plaintiff offers no evidence to dispute this allegation. Furthermore, it is simply ridiculous that Plaintiff, who admitted he was employed by the Dothan Police Department for 28 years and was the third highest ranking officer in the Department beginning in 2010, would assert that he was not familiar with the Department's policies.

13.     Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment. Furthermore, Plaintiff's own testimony is that he is familiar with the General Orders and Code of Ethics generally and is not specific to any certain portions. (PB Transcript 31:11-19; 30:18-21).

14.     Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment. Furthermore, Gray Depo, Ex. 23, Bates 00938, cited by Plaintiff, specifically refers to the "Mobile Data Terminals and Electronic Messaging, Section I, paragraph 6" that it quoted in paragraph 14 of Defendant's undisputed material facts. In addition, the Court has denied Plaintiff's motion with regard to spoliation of evidence. (*See* Doc. 45).

15-18. Plaintiff's equivocal testimony that he could not state what policies were in effect is insufficient to dispute Defendant's affirmative evidence that the polices quoted were in effect and that the policy is correctly quoted by Defendant. As such, these facts are admitted for the purpose of summary judgment. Gray Depo, Ex. 23 speaks for itself. Defendant objects to Plaintiff's insertion of additional unresponsive, irrelevant, disputed, and argumentative statements in response to these paragraphs.

19.     Plaintiff's equivocal testimony that he could not state what policies were in effect is insufficient to dispute Defendant's affirmative evidence that the policies quoted were in effect and that the policy is correct quoted by Defendant. As such, these facts are admitted for the purpose of summary judgment.

20.     Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment. Defendant objects to Plaintiff's insertion of additional unresponsive, conclusory, and argumentative statements in response to this paragraph.

21.     Regardless of the exact wording of Plaintiff's testimony, it is undisputed that in the City of Dothan Police Department, the rank of corporal is above the rank of police officer.

22-24. Admitted by Plaintiff.

25.     Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.

26.     Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.

27.     Admitted by Plaintiff.

28.     Plaintiff offers no evidence to dispute this fact. As such, this fact is admitted for the purposes of summary judgment.

29.     Plaintiff offers no evidence to dispute this fact. As such, this fact is admitted for the purposes of summary judgment. Defendant objects to Plaintiff's insertion of unresponsive arguments in response to this paragraph. Here, Plaintiff denies an allegation not even asserted by Defendant in this paragraph. Plaintiff further fails to cite to any authority or record evidence to dispute this fact.

30.     Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment. Again, Plaintiff denies statements that were not asserted by Defendant and Defendant objects to Plaintiff's insertion of unresponsive arguments to this paragraph.

31.     Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment. Defendant objects to Plaintiff's insertion of additional unresponsive statements in response to this paragraph.

32.     Admitted by Plaintiff.

33-34.   Plaintiff offers no evidence to dispute the allegations in these paragraphs.  As such, these facts are admitted for the purposes of summary judgment.  As reflected in the record, during Plaintiff's deposition, he refused to even authenticate documents he produced in this case. Here, Plaintiff makes absurd, unreasonable objections regarding an audio recording that he produced. As is typical during a deposition, Counsel for Defendant used a copy of the audio recording as an exhibit. Furthermore, Counsel was under no obligation to ask Gray about self-serving statements that he made on the recording. Nevertheless, Defendant has produced the entire recording to this Court.

35.     Admitted by Plaintiff. Defendant objects to Plaintiff's assertion of additional unresponsive statements in response to this paragraph.

36.     Plaintiff offers no evidence to dispute this fact. As such, this fact is admitted for purposes of summary judgment. Defendant objects to Plaintiff's insertion of additional unresponsive, irrelevant statements in response to this paragraph.

37.     Admitted by Plaintiff.

38.     Admitted by Plaintiff. Defendant objects to Plaintiff's insertion of additional unresponsive statements in response to this paragraph.

39.     Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.

40.     Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.

41.     Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.

42.     Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment. Moreover, the cited portion of the record does not support Plaintiff's denial of this fact.

43.     Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.

44.     Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment. Defendant objects to Plaintiff's "denial" of statements that are not even asserted by Defendant.

45.     Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment. Defendant objects to Plaintiff's insertion of unresponsive arguments in response to this paragraph. The fact that an individual receives an "Exceptional Performer" rating on his performance evaluation does not mean that the individual does not have areas that need improvement.

46.     Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment. Defendant objects to Plaintiff's unresponsive and unrelated arguments in response to this paragraph.

47.     Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment. Defendant objects to Plaintiff's unresponsive and unrelated arguments in response to this paragraph.

48.     Plaintiff offers no evidence to dispute this allegation.  To the contrary, Plaintiff's response confirms Plaintiff's involvement in the three incidents at the night clubs.  As such, this fact is admitted for the purposes of summary judgment. Defendant objects to Plaintiff's unresponsive and unrelated arguments.  Moreover, the cited portion of the record does not support Plaintiff's denial of this fact.

49.    Admitted by Plaintiff. Defendant objects to Plaintiff's insertion of unresponsive arguments in response to this paragraph. Not in declaration. Moreover, the cited portion of the record does not support Plaintiff's denial of this fact.

50.    Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.

51.    Admitted by Plaintiff.

52.    Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.

53.    Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment. Defendant objects to Plaintiff's insertion of unresponsive arguments in response to this paragraph.

54.    Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment. Defendant objects to Plaintiff's insertion of unresponsive arguments with no citation to the record in response to this paragraph.

55.    Admitted by Plaintiff.

56.    Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment. Defendant objects to Plaintiff's insertion of unresponsive arguments in response to this paragraph.

57.    Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment. Defendant objects to Plaintiff's insertion of unresponsive arguments in response to this paragraph.

58.    Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment. Defendant objects to Plaintiff's insertion of unresponsive, irrelevant arguments in response to this paragraph.

59.    Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment. Defendant objects to Plaintiff's insertion of unresponsive arguments in response to this paragraph.

60.     Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.  Defendant objects to Plaintiff's insertion of unresponsive arguments in response to this paragraph.

61.     Admitted by Plaintiff.

62.     Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment. Defendant objects to Plaintiff's insertion of unresponsive arguments in response to this paragraph.

63.     Admitted by Plaintiff.

64.     Admitted by Plaintiff.

65.     Admitted by Plaintiff.

66.     Admitted by Plaintiff.

67.     Admitted by Plaintiff. Defendant objects to Plaintiff's insertion of unresponsive arguments in response to this paragraph.

68.     Admitted by Plaintiff.  Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment. Defendant objects to Plaintiff's insertion of unresponsive arguments in response to this paragraph.

69.     Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment. Plaintiff specifically testified:

Q.     What clubs do you know that are labeled as outlaw motorcycle clubs?

A.     I have learned that Legends of Doom has been labeled as an outlaw motorcycle club.  I know Outcast has been labeled as an outlaw motorcycle club, Sin City Cycles (sic), Hell's Angels. That is all I can think of right now. (Gray Depo, 89:17-23).

70.     Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment. Plaintiff specifically testified:

Q.     What is your understanding of what it means to be labeled an outlaw motorcycle club?
[Objection omitted]

A.   <u>My understanding</u> is that there are members in the club that <u>may have been involved in criminal activity</u>.  <u>They may not be law abiding</u>.   Any my understanding may not be the correct understanding or the understanding among other members or other clubs or what have you.  That is all I can think of right now.

(Gray Depo 90:1-11)(emphasis added).

71.    Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.  Plaintiff specifically testified: "To be a one percenter I think you have to have a criminal record."  (Gray Depo 92:16-17).

72.    Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.  As discussed in more detail below, the audio recording can be authenticated.

73.    Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.  Plaintiff's testimony at the Personnel Board hearing has been submitted to the Court in its entirety and speaks for itself.

74.    Admitted by Plaintiff.

75.    Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.  Importantly, Plaintiff does not specifically deny that he made the statements captured on the recording and relied on during the City's investigation.

76.    Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.  Plaintiff's sworn testimony during his deposition and during the Personnel Board hearing speaks for itself.

77.    Admitted by Plaintiff.

78.    Admitted by Plaintiff.

79.    Plaintiff offers no evidence to dispute this allegation and strategically omits Plaintiff's testimony supporting the undisputed statement of fact stated by Defendant. As such, this fact is admitted for the purposes of summary judgment.

80.   Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.   Plaintiff's sworn testimony during the Personnel Board hearing speaks for itself.

81.   Admitted by Plaintiff.

82.   Admitted by Plaintiff.  Moreover, despite Plaintiff's allegation to the contrary, Plaintiff's association with the Outcast motorcycle club is highly relevant to Plaintiff's claims in this case.

83.   Admitted by Plaintiff.

84.   Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.

85.   Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.

86.   Admitted by Plaintiff.

87.   Admitted by Plaintiff.

88.   Admitted by Plaintiff.  Defendant objects to Plaintiff's insertion of unresponsive arguments in response to this paragraph.

89.   Plaintiff admits that Big O, a member of Outcast, gave Plaintiff the Rest in Peace patches to give to members of Bama Boyz.

90.   Admitted by Plaintiff.

91.   Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.  Furthermore, Plaintiff's objection is misplaced as this fact can be submitted as admissible evidence at trial.

92.   Admitted by Plaintiff.

93.   Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.

94.   Admitted by Plaintiff.

95.   Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment. Defendant objects to Plaintiff's insertion of unresponsive arguments in response to this paragraph.

96.   Admitted by Plaintiff.[2]

97.   Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment. Defendant objects to Plaintiff's insertion of unresponsive arguments without any citation to record evidence in response to this paragraph.

98.   Admitted by Plaintiff.

99.   Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.

100.   Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.

101.   Admitted by Plaintiff.

102.   Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.

103.   Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment. Defendant objects to Plaintiff's insertion of unresponsive arguments in response to this paragraph. Moreover, as discussed in more detail below, Parrish is not a proper comparator in this case.

104.   Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.  Defendant objects to Plaintiff's insertion of unresponsive arguments without citation to record evidence in response to this paragraph.

105.   Plaintiff admits that that Defendant searched Plaintiff's police vehicle and City-issued cell phone.  Furthermore, Plaintiff offers no evidence to dispute the remaining allegations.  As such, this fact is admitted for purposes of summary judgment.  Defendant objects to Plaintiff's insertion of unresponsive arguments without specific citation to record evidence in response to this paragraph.

---

[2] However, Defendant and Sergeant Smith inadvertently state that the interview of Willie McGuire was video recorded.  The interview of Willie McGuire, a Troy fire fighter, was conducted by telephone and was not recorded.  As such, Exhibit 1 to Smith's declaration only contains six video files instead of seven as inadvertently referenced in his declaration and in this paragraph of the undisputed facts.

106.   Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.

107.   Admitted by Plaintiff.

108.   Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.  As discussed in greater detail below, the interview transcript can be authenticated.

109.   Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment. Defendant objects to Plaintiff's insertion of unresponsive arguments in response to this paragraph.

110.   Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment. Defendant objects to Plaintiff's insertion of unresponsive arguments in response to this paragraph.

111.   Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.

112.   Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.

113.   Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.

114.   Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment. Defendant objects to Plaintiff's insertion of unresponsive arguments in response to this paragraph.

115-118.     Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.

119.   Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.

120.   Plaintiff offers no evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.

121.   Admitted by Plaintiff.

122.   Admitted by Plaintiff. Defendant objects to Plaintiff's insertion of unresponsive arguments in response to this paragraph.

123.   Plaintiff admits that Plaintiff, Benton, Mathews, Plaintiff's counsel Pat Jones, Dwight Baker (Plaintiff's brother) and two individuals (Donny Smith and Doug Magill) from Internal Affairs  were present for the disciplinary hearing. Plaintiff further offers no evidence to dispute the allegation as stated by Defendant.

124.   Admitted by Plaintiff.  Defendant objects to Plaintiff's insertion of unresponsive arguments without any citation to the record in response to this paragraph.

125.   Admitted by Plaintiff.

126.   Admitted by Plaintiff.

127.   Admitted by Plaintiff.

128.   Admitted by Plaintiff.

129.   Admitted by Plaintiff.

130.   Plaintiff offers no admissible, relevant and/or timely evidence to dispute this allegation. As such, this fact is admitted for the purposes of summary judgment.

131.   Admitted by Plaintiff. Defendant objects to Plaintiff's insertion of unresponsive arguments in response to this paragraph.

132.   Admitted by Plaintiff.

133.   Admitted by Plaintiff.  Plaintiff's deposition testimony speaks for itself.

134.   Plaintiff offers no evidence to dispute this allegation. Instead, Plaintiff denies an allegation not asserted by Defendant.  As such, this fact is admitted for the purposes of summary judgment.

135.   Admitted by Plaintiff.

136.   Admitted by Plaintiff.

137.   Plaintiff offers no evidence to dispute this allegation. Instead, Plaintiff denies an allegation not asserted by Defendant.  As such, this fact is admitted for the purposes of summary judgment.  Defendant objects to Plaintiff's insertion of

unresponsive arguments in response to this paragraph.  Defendant further objects to the extent he mischaracterizes Benton's deposition testimony.

138.   Benton's testimony speaks for itself.

139.   Plaintiff admits that a representative of Southern Linc issued a Motorola cell phone to Plaintiff in or around March 2013.  Plaintiff offers no evidence to dispute the remaining allegation.  As such, this fact is admitted for the purposes of summary judgment.

140.  Plaintiff offers no evidence to dispute this allegation.  As such, this fact is admitted for the purposes of summary judgment.

141-144.   Plaintiff offers no evidence to dispute these allegations. Instead, Plaintiff alleges that Defendant mischaracterizes testimony that Defendant did not even cite to.  As such, this fact is admitted for the purposes of summary judgment.  Moreover, the Court has issued an Order denying the relief Plaintiff sought against Defendant regarding the cell phone. (*See* Doc. 45).

145.   Admitted by Plaintiff.

146.  Plaintiff offers no evidence to dispute this allegation but instead argues about a tangential issue.  As such, this fact is admitted for the purposes of summary judgment.  As Benton states in his declaration, "Sometime prior April or May 2013, I had requested that Gray provide me with information regarding the demographics of officers in the department.  Gray had completed the report I had requesting requiring him to gather military service and other personal information regarding officers in or around April or May 2013.  Nevertheless, in or around July 2013, Gray accessed multiple officer's personal information without the need to or instruction from me to do so." (Benton Declaration, ¶ 20).

147.   Admitted by Plaintiff.  Defendant objects to Plaintiff's insertion of unresponsive arguments referring to alleged information that was not disclosed during the course of discovery in this case.

148-152.   Admitted by Plaintiff.

153-158.   Plaintiff offers no evidence to dispute these allegations.  As such, these facts are admitted for the purposes of summary judgment. Defendant objects to Plaintiff's insertion of unresponsive arguments without any citation to the record in response to these paragraphs.  Plaintiff's sworn testimony at the Personnel Board hearing which has been submitted to the Court speaks for itself.

159-160. Plaintiff offers no evidence to dispute these allegations.  As such, this fact is admitted for the purposes of summary judgment.  Interestingly, Plaintiff objects on the basis that the Personnel Board's unanimous, highly relevant decision to uphold his termination is irrelevant in this case.

161.   Admitted by Plaintiff.

162.   Plaintiff offers no evidence to dispute these allegations.  As such, this fact is admitted for the purposes of summary judgment.

163.   Plaintiff offers no evidence to dispute these allegations.  As such, this fact is admitted for the purposes of summary judgment.

164.   Plaintiff offers no evidence to dispute these allegations.  As such, this fact is admitted for the purposes of summary judgment.  Plaintiff's sworn deposition testimony speaks for itself.

165.   Admitted by Plaintiff.

166.   Plaintiff admits that the City of Dothan Police Department has utilized an assessment center to hire individuals for the rank of corporal.  Plaintiff offers no evidence to dispute these remaining allegations.  As such, this fact is admitted for the purposes of summary judgment.

167.   Plaintiff offers no evidence to dispute these allegations.  As such, this fact is admitted for the purposes of summary judgment.

168.   Plaintiff offers no evidence to dispute these allegations.  As such, this fact is admitted for the purposes of summary judgment.

169.   Plaintiff offers no evidence to dispute these allegations.  As such, this fact is admitted for the purposes of summary judgment.  Plaintiff's sworn deposition testimony speaks for itself.

### III.   DEFENDANT'S RESPONSE TO PLAINTIFF'S ALLEGED UNDISPUTED FACTS

The format of Plaintiff's response brief makes Defendant's task of replying difficult. Plaintiff does not number his paragraphs or present his "statements" in

any form that enables Defendant (or ultimately the Court) to identify with specificity and clarity to which portion of the narrative Defendant is responding. Moreover, Plaintiff's "Undisputed Facts" are neither undisputed nor factual. Instead, the section reads more like a copy and paste of the unsubstantiated, conclusory allegations from Plaintiff's Complaint. *See Atkins v. Astrue*, No. CIVA 107-CV-1180-TWT, 2007 WL 4373598, at *1 (N.D. Ga. Dec. 5, 2007) (unsupported self-serving statements by the party opposing summary judgment are insufficient to avoid summary judgment). In fact, Plaintiff frequently cites to his own Complaint in support of his asserted facts. Citations to the pleadings are insufficient to counter a properly supported motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Plaintiff embarks on a thirty-page narrative of his story, mixing disputed and undisputed facts with inadmissible statements about his beliefs and perceptions and arguments that are not clearly defined or supported by any legal citations. As argued in Defendant's Motion to Strike Portions of Ivan Keith Gray's Declaration (Doc. 50), most of the allegations asserted by Plaintiff should be disregarded by this Court. Furthermore, any arguments made in the "Undisputed Facts" section should be disregarded and should not be considered in evaluating Plaintiff's claims, including those that Plaintiff has abandoned, as set out in Defendant's argument section, below.

In *Crayton v. Valued Services of Alabama, LLC*, this Court held that "the Court cannot turn a blind eye to this Circuit's precedent and Plaintiff's complete failure to address Defendant's assertions regarding the many perceived infirmities with these claims. Merely providing a narrative statement which encompasses some of the factual allegations of the complaint, under the rubric 'Contested Facts,' does not suffice as a defense to a motion for summary judgment or cure Plaintiff's effective abandonment of such claims." 737 F. Supp. 2d 1320, 1331 (M.D. Ala. 2010). Furthermore, Plaintiff continues to make arguments about spoliation and other evidentiary issues that have already been ruled on by the Court in response to Plaintiff's motion to compel. (Doc. 45).

In addition to his argumentative and conclusory statements, Plaintiff repeatedly makes assertions that are clearly disputed by the record. For example, Defendant denies that it did or did not select anyone to attend the FBI National Academy, as is clearly explained in Chief Benton's Declaration. (Benton Declaration ¶ 29). Defendant denies that the Plaintiff's Performance Improvement Plan was unjustified or intended to demean, embarrass, or undermine Plaintiff. (Parrish Declaration ¶¶ 5-6). Defendant denies that Officer Woodside fabricated the complaint that led to Plaintiff's termination. Even the declaration that Plaintiff obtained from Willie McGuire acknowledges that in the course of a Police

Department investigation at the Outcast clubhouse, Plaintiff was identified as a police officer affiliated with motorcycle clubs. (McGuire Declaration, ¶¶ 3-4).

Defendant reiterates its arguments from its Motion to Strike, particularly with regard to the many comparators that Plaintiff discloses for the <u>first time</u> in his response brief, despite Defendant's relevant inquiries through written discovery and deposition questions. Plaintiff's deliberately open ended answers to the questions posed to him at deposition prevent him from outright perjuring himself, but he nonetheless engages in a thinly veiled attempt to "hide the ball" during discovery and then dump large amounts of new information on Defendant that it did not have the opportunity to investigate or address during discovery. At no fault of its own, Defendant is placed in a position where it has a mere eleven days to reply to a host of new allegations and is past its deadline for disclosing any additional witnesses or documentation that might be necessary to adequately address the allegations, even if it could gather that information in such a short period of time. Plaintiff's actions boldly flout both the letter and spirit of the discovery process and of Rule 26 of the Federal Rules of Civil Procedure.

For these reasons, Defendant rests upon the undisputed material facts as submitted in Defendant's Motion for Partial Summary Judgment (Doc. 34) and Motion for Complete Summary Judgment (Doc. 39) and as addressed above. Defendant denies the "Undisputed Facts" as stated by Plaintiff in their entirety.

## IV.   <u>ARGUMENT</u>

### A.   **Evidentiary Issues**

Plaintiff raises a number of issues regarding admissibility and authenticity throughout his brief. Most of Plaintiff's quarrels are directed at the authenticity of various evidence that Defendant used in its investigation of Plaintiff's conduct and to support its decision to terminate his employment. To address Plaintiff's arguments, the Court must examine the standards for admissibility and authenticity and two different levels: first, the standard for what the decision makers for the City could permissibly consider in making their decisions, and second, what this Court may consider in making its decision.

On the first point, the U.S. Supreme Court has made clear that "employers, public and private, often do rely on hearsay, on past similar conduct, on their personal knowledge of people's credibility, and on other factors that the judicial process ignores. . . . Government employers should be allowed to use personnel procedures that differ from the evidentiary rules used by courts, without fear that these differences will lead to liability." *Waters v. Churchill*, 511 U.S. 661, 676-77 (1994). Thus, Defendant had no burden to follow the rules of evidence or any other court-like procedures in deciding what it could consider in making employment decisions regarding Plaintiff.  As long as Defendant can establish good faith, the Title VII standard, and reasonableness, the First Amendment standard, as set out

below, it was permitted to consider whatever evidence it chose without concern for admissibility or authenticity.

The second part of this inquiry involves the legal standards for admissibility and authenticity. With regard to admissibility, on motions for summary judgment, the Court may consider evidence which "can be reduced to an admissible form," even if that evidence is not in an admissible from at the summary judgment stage. *Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005). With regard to authenticity, the Eleventh Circuit has held that "[a]uthentication is satisfied by evidence sufficient to support a finding that the matter in question is ... 'What its proponent claims.'" *United States v. Shabazz*, 724 F.2d 1536, 1539 (11th Cir. 1984).

In this case, Plaintiff challenges the authenticity of several of the pieces of evidence gathered during the IA investigation. He argues that Defendant cannot authenticate the audio recording that the investigators found in Gray's car. (Smith Declaration, Exhibit 5). Nevertheless, Plaintiff has confirmed that various parts of the audio are his statements on multiple occasions (Gray Depo, 94:6-95:2, 249:12-250:9, Ex. 25; PB Transcript 82:3-6; 120:12-14; Smith Declaration, Exhibit 4 & 14, Bates 826, 849-50)). More importantly, Defendant asserts that the audio recording and the statements made on it are what Chief Benton and the Personnel Board *believed to be* Plaintiff's statements and are what those decision makers

relied on in making the decision to terminate Plaintiff's employment. Defendant *can* authenticate the recording for that purpose, as Sergeant Smith swears in his declaration that the recording presented to the Court as an exhibit to Defendant's brief is the one that was used in the Internal Affairs investigation and the one presented to Chief Benton and the Personnel Board. (Smith Declaration, ¶ 14).

Plaintiff also takes issue with Chief Benton's references to statements made by Lieutenant Will Benny. (Benton Declaration ¶ 13). Because Lieutenant Benny is a disclosed potential witness in this case, his statements are capable of being reduced to admissibility at trial and are, therefore, admissible at summary judgment. In addition, Chief Benton can testify to the fact that those statements were made and the fact that he relied on them without testifying as to their truth and preventing them from being hearsay.

As to the photos Defendant submits as attachments to Plaintiff's deposition, Plaintiff has refused to authenticate them (as he did with an audio recording he produced in this case), but he admits that he was at the events in question, associating with the individuals that *he identifies* as appearing in the photos. (Gray Depo, 256:17-261:15).

With regard to the transcripts of the two interviews that Sergeants Smith and Magill conducted with Plaintiff, Sergeant Smith was present for the conversation and is qualified to authenticate the documents by swearing that they are accurate

representations of the conversations that occurred, which he does. (Smith Declaration, ¶ 16). Likewise, with regard to the recording of the conversation between Plaintiff and Major Parrish regarding the Performance Improvement Plan, Major Parrish was present for the original conversation and has sworn that the recording submitted is an accurate representation of the original conversation. (Parrish Declaration, ¶ 6). *See United States v. Brown*, 587 F.3d 1082, 1093 (11th Cir. 2009) ("[W]here the [witness] laying the foundation can testify he or she heard the original conversation that was being recorded and that it is the same as the one being played at trial, this also provides sufficient evidence of authenticity.") Furthermore, Plaintiff's challenge to this piece of evidence demonstrates the absurdity of all of his authenticity challenges, as the recording of this conversation was one that he himself made and produced. To refuse to authenticate a recording merely because it is a copy of the one he produced and not the same exact CD is ridiculous. This absurdity is only heightened by the fact that Plaintiff and his counsel denied the authenticity of documents he was presented during his deposition at least fourteen (14) times.

### B.    Timeliness of Claims

Plaintiff's brief discussion in response to Defendant's timeliness arguments does nothing to change the bottom line with regard to timeliness: <u>All discrimination claims occurring before February 3, 2013 and all hostile work</u>

<u>environment claims regarding discrete acts occurring before February 3, 2013 are</u> <u>untimely</u>. In fact, the brevity of Plaintiff's argument only serves to highlight the weakness of his defense to this jurisdictional curtain.

Plaintiff attempts to sweep all of his untimely claims into consideration by invoking the "continuing violation doctrine." Although Defendant acknowledges that some recent district court authority exits in support of this doctrine, it maintains that the prevailing interpretation of *National Railroad Passenger Corp. v. Morgan* is that untimely discrete acts are not actionable even as part of a hostile work environment claim. 536 U.S. 101, 113 (2002) ("discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges"). One court recently summed it up well, stating:

> The Eleventh Circuit has placed great weight on *Morgan*'s distinction between hostile work environment claims and discrete acts of discrimination and retaliation. *See McCann,* 526 F.3d at 1378–79; *Davis v. Coca–Cola Bottling Co. Consol.,* 516 F.3d 955, 970 (11th Cir.2008); *Smithers v. Wynne,* 319 F. App'x 755, 756–57 (11th Cir.2008); *Chambless v. Louisiana–Pac. Corp.,* 481 F.3d 1345, 1349–50 (11th Cir.2007); *Ledbetter v. Goodyear Tire & Rubber Co., Inc.,* 421 F.3d 1169, 1178–80 (11th Cir.2005), *aff'd,* 550 U.S. 618, 127 S.Ct. 2162, 167 L.Ed.2d 982 (2007). Discrete acts of discrimination and retaliation "cannot be brought under a hostile work environment claim that centers on 'discriminatory intimidation, ridicule, and insult.'" *McCann,* 526 F.3d at 1379 (quoting *Morgan,* 536 U.S. at 116). Hiring decisions, work assignments, and instances of retaliation constitute discrete acts that cannot be considered part of a hostile work environment claim. *Davis*, 516 F.3d at 970. Therefore, "[i]n determining whether claims are timely, courts must distinguish between allegations which charge discrete acts of discrimination or retaliation from allegations that charge repeated acts or events

centering on discrimination, intimidation, and ridicule." *Freeman v. City of Riverdale,* 330 F. App'x 863, 866 (11th Cir. 2009). However, "[w]here [a timely] discrete act is sufficiently related to a hostile work environment claim so that it may be fairly considered part of the same claim, it can form the basis for consideration of untimely, non-discrete acts that are part of the same claim. The pivotal question is whether the timely discrete acts are sufficiently related to the hostile work environment claim." *Chambless,* 481 F.3d at 1350.

*Endemano v. Sec'y, Dep't of Homeland Sec.*, No. 6:13-CV-348-ORL-36, 2014 WL 1092279, at *13 (M.D. Fla. Mar. 19, 2014).

Although the applicability of the continuing violation doctrine in the post-*Morgan* legal landscape is questionable at best, even assuming that untimely discrete acts can contribute to a hostile work environment claim, those acts must still be part of a "single unlawful employment practice" that includes at least one timely act. *Morgan*, 536 U.S. at116-118. To be part of a single practice, the acts must be sufficiently related and of the same type. *See Chambless v. Louisiana-Pacific Corp*., 481 F.3d 1345, 1350 (11th Cir. 2007) (finding that failure to promote and retaliation are not the same type as—and, therefore, not a single practice with—intimidation, ridicule, and insult).

In this case, the timely acts alleged as part of Plaintiff's hostile work environment claim include the investigation regarding his association and affiliation with a one percenter motorcycle gang, his paid administrative leave and termination and alleged nitpicking by Major Parrish. The events leading up to and surrounding Plaintiff's termination are unique and do not relate back to any of

31

Plaintiff's earlier, untimely claims. None of Plaintiff's other claims are related to his association with motorcycle clubs or other criminal activity. Likewise, the alleged nitpicking is not part of the same practice as the earlier allegations as it involved one specific individual—Major Parrish—who, for the most part, was not a decision maker in the earlier allegations regarding specific instances of promotions, training, and/or assignments.

As to Plaintiff's dispute about the headings and nature of Count I (Race Discrimination), Defendant asserts that regardless of how that claim is interpreted, Defendant's Motion for Partial Summary Judgment addresses each discrete act listed in Count I and provides authority for why each claim is a discrete act that should be held to the February 3, 2013 time bar. (Doc. 34, pg. 22-24). Defendant will not restate its previous arguments but simply notes that Plaintiff does nothing to challenge the validity of Defendant's arguments and/or the law Defendant cites in support of the same. Plaintiff correctly notes that Defendant does not address a time bar for the "consent decree claim."   There can be no time bar for a cause of action that does not exist (a fact which Plaintiff completely ignores).

Finally, although Plaintiff is correct that some *relevant* background evidence is permissible, this allowance is not without limits. *United Air Lines, Inc. v. Evans*, the case Plaintiff cites to support his proposition, specifically holds that even an entire system that gives present effect to a past act of discrimination—such as

being passed over for training or a promotion—"is merely an unfortunate event in history which has no present legal consequences." 431 U.S. 553, 558. Although the court does not specifically define where the line is for "relevant" background evidence, common sense dictates that a line must be drawn. To the extent that Plaintiff continues to put forth claims regarding events that occurred over 25 years ago, Defendant will have no option but to respond resulting in the parties and the Court participating in overly burdensome, highly prejudicial and irrelevant mini-trials on each antiquated issue.

## C.    Claim Under the Consent Decree

Plaintiff's "arguments" regarding the consent decree are nothing but sensationalized statements, citations to irrelevant case law, and trivial rhetorical questions.    Plaintiff's argument does not even contain a single cite to record evidence as specifically required by the Uniform Scheduling Order governing this case (Doc. 9, pg. 2).

Defendant does not dispute that courts have acknowledged the *existence* of the Consent Decree; its existence, however, is an entirely different matter from whether it conveys a private right of action on a third party. Likewise, Plaintiff's citation to this Court's prior statements regarding a consent decree having attributes of a contract do not overcome—or even address—the Eleventh Circuit's holding that the proper way to address an alleged violation of a consent decree is

by moving the Court for an order to show cause. *Thomason v. Russell Corp*., 132 F.3d 632, 634 (11th Cir. 1998); *see also Lyons v. Ashurst*, No. 2:08-cv-394-WHA, 2008 WL 3821832, at *8 (M.D. Ala. Aug. 13, 2008) (finding that "[t]he proper method to enforce compliance with the . . .  consent decree [at issue] would be to file a contempt motion in [the original] case, not a separate complaint creating a new cause of action . . .").

Although Darryl Mathews's ("Mathews") statements are not relevant to this legal issue in the least, Defendant does take issue with the way they are construed by Plaintiff. When specifically asked about the background of the Consent Decree, Mathews explained the events that led to its entry, including the fact that the City originally denied the claims against it. (Mathews Depo, 114:14-116:14). When questioned on his terminology, Mathews clarified that he was not employed by the City at the time the Consent Decree was entered and was simply trying to describe the background, rather than express personal beliefs. (Mathews Depo, 116: 12-19). Mathews also described many of the City's efforts takes to increase the diversity in all of its Departments, including the Police Department, and to comply with the Consent Decree through validated tests, recruiting, and review of the hiring processes. (Mathews Depo, 110:4-7, 111:17-18). Delvick McKay, who, like Mathews, is an African-American male, also testified to those same efforts and to the City's many additional efforts to comply with the Consent Decree, including

maintaining a diverse Citizens Supervisory Committee, sponsoring a remedial program to help job applicants prepare for promotional tests, and specific training, assignment, and discipline policies within the Fire and Police Departments, among other efforts. (Third Declaration of Delvick McKay, ¶¶ 1-10, attached hereto as Exhibit **N** of Defendant's Evidentiary Submission in Support of Its Motion for Complete Summary Judgment).

In sum, Plaintiff's "argument" is silent regarding whether the law provides a private right of action for an alleged violation of the Consent Decree – which it does not. In addition, Plaintiff fails to cite any evidence in the record at all in this section of his brief – much less evidence demonstrating a lack of compliance with the Consent Decree.

### D.    First Amendment Claims

Defendant does not deny that public employees hold First Amendment rights, but simply reiterates that those rights are limited and must be balanced against the interest of the State. *See Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006); *Ross v. Clayton County, Ga*, 173 F.3d 1305, 1310 (11th Cir. 1999). Furthermore, Plaintiff makes an important error in his interpretation of the law in this area that permeates his entire argument. Contrary to Plaintiff's assertions, a Defendant does not have to present "credible evidence" of decreased efficiency or effectiveness, particularly in the law enforcement context. The Eleventh Circuit

has clearly held that "a requirement of a showing of <u>actual disruption</u> would be <u>overly burdensome</u>." *Ross,* 173 F.3d at 1311 (emphasis added).

Defendant has met and exceeded its burden to show that its interests outweigh Plaintiff's rights, particularly given the "special need to employ persons who act with good judgment and avoid potential conflicts of interest" in the "context of law enforcement." *Id*. In terminating Plaintiff, Defendant reasonably relied on evidence of Plaintiff's affiliation with an organization with criminal ties, including a plethora of Plaintiff's own statements (Smith Declaration, Exhibit 5-6; Exhibit 4 & 14; Gray Depo, 94:6-95:2; 249:12-250:9; PB Transcript 82:3-6; 120:12-14); statements of Outcast members (Smith Declaration, ¶ 11); and the testimony from an FBI agent and an ABI agent and resources from the FBI's website (Smith Declaration, Exhibit 15, Bates 000885-86; PB Hearing 236:18-298:23).

Current events reiterate the clear necessity for the City to take very seriously the association of one of its top-ranking officers with an outlaw motorcycle club. A shootout between biker gangs on May 17, 2015 in Waco, Texas left nine (9) people dead and eighteen (18) injured, led to about 170 arrests, and made national headlines, sparking renewed public awareness of what law enforcement circles have been alert to for years: these clubs must be taken very seriously. The shootout

involved the Bandidos, one of the clubs that Plaintiff noted existed in the Dothan area. (Smith Declaration, Exhibit 15, Bates 000826).

The New York Times reported that organizations such as the ones involved in the Waco shooting "sometimes describe themselves as 'outlaw motorcycle clubs,'" the very term Plaintiff used in describing to his prospects other clubs with which Bama Boyz affiliated such as Outcasts, Sin City Disciples, and Legions of Doom. *See* Manny Fernandez, Serge F. Kovaleski & Alan Blinder, *170 Bikers Charged in Waco, in a Rivalry Rooted in the 1960s*, N.Y. Times, May 18, 2015, http://mobile.nytimes.com/2015/05/19/us/waco-texas-biker-gang shooting.html?_r=0&referrer=. The article noted that in addition to their criminal enterprise, these organizations engage in political advocacy and charity runs. *Id.* The capacity of those clubs to host a charity event one week and engage in a shootout the next demonstrates why Plaintiff's assertions that Bama Boyz and Outcast frequently host charity events should be given little weight in determining whether they are organizations that Defendant can legitimately discipline him for associating with.

The Washington Post used the term one percenters to describe some of the clubs involved. Michael E. Miller*, How the Bandidos became one of the world's most feared biker gangs*, Wash. Post, May 18, 2015, http://www.washingtonpost.com/news/morning-mix/wp/2015/05/18/how-the-

bandidos-became-americas-most-feared-biker-gang/.  It also noted that the Cossacks, one of the lesser known clubs involved in the shooting, had been "flirting, if you will, with Hell's Angels," demonstrating the quick escalation that can result from a mere association with a one percenter or outlaw group. *Id*.

An NPR article notes that the Waco shooting arose out of a meeting of five clubs who had gathered to discuss "turf and recruitment." Krishnadev Calamur & Eyder Peralta, *$1M Bond Set For Members Of Biker Gangs Linked To Waco, Texas, Shootout*, NPR, May 18, 2015, http://www.npr.org/sections/thetwo-way/2015/05/18/407628236/gunfight-between-motorcycle-gangs-in-waco-texas-leaves-9-dead. Plaintiff testified that his club regularly met with other clubs, including outlaw/one percenter motorcycle clubs such as Outcast, to discuss turf issues and that he obtained blessings from multiple outlaw motorcycle clubs because of turf concerns.  (Smith Declaration, Exhibit 5-6, Bates 1892; Exhibit 14, Bates 000752 ("… it's territorial kind of…")). Although Plaintiff made some statements that evidenced an attempt to distance himself and Bama Boyz from the violence that can arise in motorcycle clubs, he made other statements that indicated the exact opposite. In his talk to the prospects he warned them that there was "some danger that was associated with us being on the set." (Smith Declaration, Exhibit 5-6, Bates 1802). He continued to say that if another club "starts some stuff," referring to conflict, "they're on their own" with the "one exception" of

Legions of Doom. *Id*. He noted that "those guys are like this with us" and "we…fall in behind them." *Id*. at Bates 1802-03. Defendant's research confirmed that Legions of Doom is an outlaw motorcycle club. (PB Transcript 167:1-169:15). It was statements such as these that Defendant relied on in making the decision to terminate Plaintiff's employment.

In attempting to distinguish the two cases that Defendant cites where courts have addressed the First Amendment impact of an officer's association with a motorcycle club, Plaintiff asserts that Defendant's "alleged evidence of association with the much more benign Outcast club is unreliable, unauthenticated, and virtually non-existent." Defendant has already identified some of the many pieces of evidence that demonstrate Plaintiff's association with Outcast, including Plaintiff's own testimony—which surely Plaintiff would allege is reliable. As to the "authenticity" of this evidence, as discussed above, Defendant was under no burden to invoke court-like procedures in its personnel investigation and had reasonable grounds to believe every piece of evidence it considered was reasonably "authentic." *See Waters v. Churchill*, 511 U.S. 661, 676-77 (1994) (noting that "employers, public and private, often do rely on hearsay, on past similar conduct, on their personal knowledge of people's credibility, and on other factors that the judicial process ignores. . . . Government employers should be allowed to use personnel procedures that differ from the evidentiary rules used by courts, without

fear that these differences will lead to liability."). Finally, the undisputed evidence shows that the Outcast club was far from "benign"—the very incident that sparked the investigation was an assault at the Outcast clubhouse that led to eight (8) felony arrests. (Smith Declaration, ¶ 5).

Plaintiff also makes several attempts to challenge the facts upon which Defendant made its termination decision, failing to realize that a dispute about the actual nature of Bama Boyz or Outcast or about the actual statements of Willie McGuire is insufficient to create a material dispute of fact for summary judgment. The Supreme Court has instructed courts undertaking a First Amendment analysis in the public employer context to "look to the facts as the employer *reasonably* found them to be." *Waters v. Churchill*, 511 U.S. 1878, 1889 (1994) (emphasis in original). Although this is a slightly different analysis than the good faith analysis used in the Title VII context, it nonetheless examines the facts of the situation as Defendant found them to be.

Plaintiff cites to Willie McGuire's declaration stating that Outcast is not a one percenter group.[3] This testimony was not part of what the Defendant

---

[3] Plaintiff accuses Defendant of "self-servingly interchanging" relevant terms in its motion. Defendant notes that many of the terms are used interchangeably in the record. Defendant uses the terms "outlaw motorcycle club/gang," "OMC" and "one percenter club/gang" interchangeably, because Plaintiff himself stated that they were the same in his address to prospective members of Bama Boyz. (Smith Declaration, Exhibit 5-6, Bates 1788) ("An outlaw motorcycle club is a one percenter.") Plaintiff also described one percenters as "the most volatile gang that there is out there." *Id*. The Outlaw Motorcycle Club (with a capital "O") referred in *Piscottano v. Murphy* is one specific club that falls under the category of an outlaw motorcycle club (with a lowercase "o") or a one percenter club. 511 F.3d 247, 255 (Outlaw Motorcycle Club "is a self-proclaimed one-percent gang"). Outcast Motorcycle Club, Sin City Disciples, and other clubs are also specific examples of clubs that fall into the category of outlaw motorcycle clubs or one percenter clubs. (Smith Declaration, Exhibit 5-6, Bates 1790).

reasonably relied on in making its termination decision; therefore, does not create a dispute of fact here. Furthermore, <u>Plaintiff himself stated</u> in his talk to his prospects, in his internal affairs interview, in his Personnel Board hearing, and again in his deposition that <u>Outcast is a one percenter/outlaw motorcycle club</u>. (Smith Declaration, Exhibit 5-6, Bates 1790; Exhibit 4 & 14, Bates 744; Gray Depo, 94:6-95:2; 249:12-250:9; PB Transcript 82:3-6; 120:12-14) (emphasis added).

In addition, Plaintiff argues that Willie McGuire's testimony means that Defendant "fabricated the 'complaint'" that sparked the investigation of Plaintiff. Defendant takes issue with this allegation on multiple grounds. First, even accepting McGuire's declaration on its face, it actually affirms that McGuire had a conversation with police officers about Plaintiff, identifying Plaintiff as someone who had been at charity events with at least one Outcast member (McGuire himself) and that the reason that the officers had come to the Outcast clubhouse that night was to investigate an incident that occurred the night before. (McGuire Declaration, ¶¶ 3-4). Second, even if McGuire's Declaration created a dispute of fact as to his statement to Dothan police in its entirety (which it does not), it would not be material because Defendant's investigation into Plaintiff's involvement with Outcast also involved the receipt of statements from six other individuals and, as discussed above the City, had additional evidence to support its actual termination

decision. *Goodman v. Georgia Sw.*, 147 F. App'x 888, 890 (11th Cir. 2005) ("the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment" (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986))); (Smith Declaration ¶¶ 7-8, Exhibit 1).[4]

As to Plaintiff's contention that these interviews were "coerced" because the interviewing officers offered leniency in exchange for information, Defendant notes that at least one of the individuals interviewed—Kunta McGoley—was not under arrest before, during, or after his interview with Officers Smith and Magill. (Smith Declaration ¶ 7). Furthermore, while information obtained pursuant to a promise of leniency might or might not be sufficient to convict someone of a crime, Defendant is not held to the same evidentiary standards in making employment decisions and reasonably relied on the statements of the Outcast members. *Waters*, 511 U.S. at, 676-77. Defendant did not take any adverse employment action regarding Plaintiff based on those statements information alone.

Finally, Plaintiff's arguments on his First Amendment claims blur the lines between his First Amendment claims and his racial discrimination claims. Although Defendant adamantly denies that it discriminated against Plaintiff

---

[4] As previously noted, the interview with McGuire is the only one that was not recorded; therefore, it is the only one that Plaintiff could even attempt to call into question.

because of his race and will address that point below, it is important to note that for the purposes of the First Amendment, it does not matter how Defendant treated various racial groups, but whether an individual's association is protected or unprotected. Here, Plaintiff's associations were clearly unprotected.

### E.   Title VII Discrimination Claim

#### 1.   Plaintiff Abandoned Claims

Defendant's motion goes through each of the claims listed in Plaintiff's Complaint, addressing the prima facie case, legitimate, non-discriminatory reason, and lack of pretext for each one. (Doc. 39, pg. 43-59). Plaintiff's response, however, only addresses his allegedly discriminatory termination. Although other alleged events are mentioned, none of them are argued or analyzed as separate discrimination claims. Plaintiff has, therefore, abandoned all claims of discrimination except his discriminatory termination claim. *See Wilkerson v. Grinnell Corp.,* 270 F.3d 1314, 1322 (11th Cir.2001) (finding claim abandoned and affirming grant of summary judgment as to claim presented in complaint but not raised in initial response to motion for summary judgment); *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.,* 182 F.3d 888, 892 (11th Cir.1999) (affirming "the unremarkable position that assertions made in the pleadings (*e.g.,* complaint or answer), but not made in opposition to a motion for summary judgment, need not be considered by the district court or the appellate court in ruling on the motion for

summary judgment."); *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir.1995) ( "In opposing a motion for summary judgment, 'a party may not rely on his pleadings to avoid judgment against him.' There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."). Plaintiff's mere mention of facts relating to those claims is insufficient. *Crayton*, 737 F. Supp. 2d at 1331 ("Merely providing a narrative statement which encompasses some of the factual allegations of the complaint, under the rubric 'Contested Facts,' does not suffice as a defense to a motion for summary judgment or cure Plaintiff's effective abandonment of such claims.")

### 2. Legitimate, Non-Discriminatory Reasons for Termination

Defendant does not dispute that Plaintiff is able to meet his prima facie case of discrimination on his termination alone, based on the mere fact that his replacement (who was the highest scoring individual on the validated promotional exam for the position) was white. Defendant maintains and the evidence establishes, however, that it had a legitimate, non-discriminatory reason for terminating Plaintiff's employment and that Plaintiff is unable to establish that the reason is pretextual.

Defendant terminated Plaintiff's employment because he was found to have engaged in conduct unbecoming of an officer through his association with outlaw motorcycle clubs and because he was found to be in violation of department guidelines regarding mobile data terminals and electronic messaging, truthfulness, investigative procedures, and ethics in private life. Each of these reasons is independently sufficient to justify his termination; thus, even if Plaintiff can establish a dispute of fact as to one of them (which he cannot), Defendant is still entitled to summary judgment. *See Chapman v. Al Transport*, 229 F. 3d 1012, 1037 (11th Cir. 2000) ("In order to avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that each of the employer's proffered nondiscriminatory reasons is pretextual." (emphasis added)).

### 3.   Plaintiff Fails to Establish Pretext

Plaintiff's attempts to attack Defendant's legitimate, non-discriminatory reasons in seven (7) ways: (1) he misrepresents testimony from the record; (2) he attempts to undercut the cell phone evidence; (3) he incorrectly accuses witnesses of inconsistency; (4) he cites to old, irrelevant events; (5) he references insufficient comparator evidence; (6) he contests Defendant's good faith; and (7) he cites to alleged race related comments—each of which fall short of establishing pretext.

### i.     Plaintiff' Misrepresents the Testimony

Plaintiff first attempts to skew the deposition testimony of Chief Benton, Sergeant Smith, and Sergeant Magill regarding whether Plaintiff had actually violated or witnessed the violation of a specific law; however, it was Plaintiff's association—not anything he did or witnessed—that led to the termination of his employment. In addition, Plaintiff's "paraphrase" of Chief Benton's testimony regarding whether Plaintiff had associated with criminals is outright wrong. Plaintiff alleges that Chief Benton testified he was not certain that Plaintiff was associating with criminals. Chief Benton actually testified that Plaintiff may not necessarily have *known for sure* he was associating with criminals *simply by virtue of being inside* a "one percent motorcycle clubhouse." (Benton Depo, 223:17-225:12). Benton never denied Plaintiff's association with criminals. As Defendant has already outlined in detail in its original motions and in its First Amendment argument, above, it had a great deal of evidence to establish Plaintiff's inappropriate association.

### ii.     Plaintiff Attempts to Undercut the Cell Phone Evidence

Plaintiff next attacks Defendant's finding that he accessed a pornographic website on his City-issued cell phone. Plaintiff's mere denial of having accessed the site is insufficient in light of Chief Benton's good faith reliance on the undisputedly pornographic content of the website accessed by Plaintiff's phone.

(Smith Declaration, Exhibit 9). Although Plaintiff attempts to undercut Corporal Mullis's certainty about the pornographic content of the phone, those efforts are likewise lacking because the report produced as a result of the forensic analysis is undisputedly an objective report that provides a listing of the memory contents of Plaintiff's phone that were physically dumped into the report and Plaintiff presents no evidence that it is unreliable.

### iii.    Plaintiff Incorrectly Accuses Witnesses of Inconsistency

Plaintiff next makes a vague, unsupported allegation regarding witnesses being "inconsistent" as to how Plaintiff was untruthful. The vagueness of this claim prevents Defendant from making any specific reply; Defendant can only point back to the examples of Plaintiff's contradictory statements in his internal affairs interviews that Defendant already cited in its original motion. (Doc. 39, pg. 17-19).

### iv.    Plaintiff Cites to Old, Irrelevant Events

Plaintiff concludes his direct attack on Defendant's legitimate reasons by making another vague and slightly sarcastic statement about the Sons of Confederate Veterans. Although Plaintiff argues that Defendant failed to investigate his allegations regarding the Sons of Confederate Veterans organization and Major Parrish's photo with the group, the record reflects otherwise. When asked about Major Parrish's affiliation with the Sons of Confederate Veterans

organization, Plaintiff testified that he had known about the affiliation and had possession of the photo for a long time, but the only specific complaints that he was able to identify were his complaints through his June 2013 Guardian Tracking entry. (Gray Depo, 204:15-212:19). Mathews <u>did</u> investigate this complaint by checking with the Southern Poverty Law Center who informed him that the Sons of Confederate Veterans was <u>not</u> a hate organization. (Mathews Declaration, Exhibit 6, Bates 604). Mathews documented this inquiry in his memorandum reporting his findings on Plaintiff's complaint. *Id*. He noted that further investigation was unnecessary because Major Parrish was no longer a member of the organization. *Id*. According to Major Parrish, he left the organization in 2006, s*even (7) years* prior to Plaintiff's June 2013 Guardian Tracking entry. (Parrish Declaration, ¶ 11; Exhibit 1, Bates 3366). Plaintiff presented no evidence to dispute the fact that Major Parrish had left the group years before and a mere statement to the contrary in Plaintiff's self-serving declaration is insufficient because he cannot establish that it is based on personal knowledge. Plaintiff's holding the photo in his back pocket and waiting years to complain renders the complaint about the Sons of Confederate Organization dramatically different than the concerns about Gray's current affiliation and is insufficient to show that

Defendant treated associations with African-American organizations and Caucasian organizations differently.[5]

> v.   *Plaintiff References Insufficient Comparator Evidence*

Plaintiff next unsuccessfully attempts take a more indirect approach to establishing pretext. Although he first accuses Defendant of "failure to follow policy," what he actually argues is that Plaintiff was treated differently than others who were found in violation of the same policy. Plaintiff never identifies an actual policy that Defendant failed to follow. Whatever he calls it, however, Plaintiff's argument fails on several grounds. First, the majority of the comparators that Plaintiff puts forth are due to be stricken for Plaintiff's failure to disclose their identities and/or alleged offenses in discovery, as set out in Defendant's Motion to Strike. (Doc. 50). The only cited examples to which Plaintiff made any reference in discovery were the alleged offense of Corporal Arthur Schaefer and the payments accepted by Darryl Mathews. Second, even taking Plaintiff's claims as true, he provides insufficient details about any of the circumstances to meet his burden to establish that any of them were similarly situated enough to have any relevance to Plaintiff's termination. See *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) ("To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that he and the employees are similarly situated

---

[5] Furthermore, as discussed above and in Defendant's Motion to Strike, Plaintiff's previously undisclosed "evidence" about the Sons of Confederate Veterans is due to be stricken.

in all relevant respects." (emphasis added)).  Plaintiff does not offer dates, time periods, identities of decision makers, details regarding each circumstance, or information regarding what discipline the comparator may have received other than termination. Without this information, those individuals cannot be considered comparators.

Finally, the details that Plaintiff does provide actually establish that none of the individuals were similarly situated to Plaintiff. Darryl Mathews did not even work in the Police Department and Plaintiff offers no evidence to establish that his acceptance of a legitimate referral fee is even a policy violation, much less a violation comparable to Plaintiff's. (Mathews Declaration, ¶ 2). All of the comparators mentioned except for Chief Benton are lower ranking officers. *See Roy v. Broward Sheriff's Office*, 160 Fed. Appx. 873, 876 (11th Cir. 2005) (holding that two police officers were not similarly situated, despite having been disciplined differently under the same policy, "because of their differences in rank and length of service"). Furthermore, Plaintiff makes no effort to demonstrate how any of their alleged offenses are similar to his in any way warranting comparison. *See Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) ("the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges").

In Plaintiff's "fact" section he also takes great offense to Defendant's use of a "catchall" policy to categorize Plaintiff's offense. It would be impossible, however, for an employer to articulate every single act for which it could legitimately discipline its employees and unlikely that many, if any, employers have the forethought to specifically address associations with motorcycle clubs.

### vi.   Plaintiff Contests Defendant's Good Faith

Plaintiff next argues that Defendant's legitimate, non-discriminatory reasons are pretextual because they lack good faith. In support of this argument, Plaintiff attempts to call into question Defendant's motivation for starting its investigation of Plaintiff and the status of Outcast as a one percenter club.

Defendant has already addressed Willie McGuire's declaration and the allegation that Defendant "coerced" statements from Outcast members, explaining how they are insufficient to call into question Defendant's motivation for beginning its investigation into Plaintiff. Defendant would merely add to its previous argument as follows.

The target of the good faith inquiry is the good faith of the decision maker. In this case, the initial decision maker was Chief Benton, followed by the Personnel Board who upheld his decision. Regardless of who asked whom for information in the conversation between McGuire and Officer Woodside, who spoke to McGuire directly in the aftermath of the assault, it is undisputed that the

detailed, well-written PD 12 that Officer Woodside submitted regarding the conversation was reasonably used to as part of the investigation and report that was in good faith relied on by the decision makers. (Smith Declaration, ¶ 15, Exhibit 8). Chief Benton testified that he asked Sergeant's Smith and Magill to look into Plaintiff's potential association based on information he received from Lieutenant Will Benny, who received information from Officer Woodside. (Benton Declaration, ¶ 13). Plaintiff has no evidence that a decision maker within the City instructed Officer Woodside to "conduct a witch hunt" or search for "dirt" on Plaintiff. In fact, even if Chief Benton had harbored such a mal-intent toward Plaintiff (which he did not), he had no way to know that Officer Woodside would be the individual responding to the assault that would lead an investigation regarding Plaintiff. Plaintiff's theory that the City concocted a witch hunt to terminate his employment is preposterous and is grossly inadequate to establish pretext. *See Goodin v. Secretary of Defense*, 292 Fed. Appx. 763, 763 (11th Cir. 2008) (upholding a district court's finding that plaintiff's "conclusory statements and conspiracy theory were insufficient because they were unsupported by evidence" where plaintiff alleged that defendant discriminated against him in the selection for a promotion). Furthermore, Plaintiff's allusion in his facts section to a sinister motive based on Defendant's failure to pursue an investigation against Taiwan Truitt is unconvincing because Truitt is also an African-American male.

Plaintiff adds to his earlier argument that the statements of the Outcast members were coerced by noting that the investigators were wearing firearms while questioning them. This fact, like the offers of leniency, fails to establish that the statements of the Outcast members were untrue or that the investigators and decision makers should not have relied on them. There is absolutely no evidence in the record to support Plaintiff's outrageous claims that these individual's statements were coerced. Defendant did not make a rash decision to terminate Plaintiff based on the statements of McGuire and the other Outcast members alone; instead, it conducted a thorough, four week investigation as was necessitated by the seriousness of the suspected conduct, the rank of the officer at issue, and the need to gather evidence to confirm or rebut the statements of the Outcast members. The investigation did, indeed, result in a plethora of confirming evidence—most notably, what they believed to be (as confirmed by Plaintiff in his interviews) Plaintiff's own statements from his talk to his prospects. As to Plaintiff's attempt to use the testimony of McGuire to establish that Outcast is not a one percenter club, his efforts are futile because his own admissions, among other evidence, have already established that fact. (Smith Declaration, Exhibits 4 & 14, Bates 744, 748).

### vii.    Plaintiff Cites to Alleged Race Related Comments

Plaintiff's final attempt to establish pretext is through citing to a handful of race-related comments that he became aware of through the course of his career and through the alleged racial animus that he claims existed in the work place. First, and most importantly, none of the alleged comments or other circumstances are in any way related to the termination decision at issue and shed no light on whether Defendant's legitimate, non-discriminatory reasons are valid. Plaintiff cites to no more than five or six examples of racial comments that he has been made aware of over his twenty-eight year career. Only one of these comments was directed at him and for some of them he was unable to even identify who used the word. Although use of the N----- word is never appropriate, a handful of instances over nearly three decades does nothing to establish pretext in the termination decision. *See Freeman v. City of Riverdale*, 330 Fed. Appx. 863, 866 (11th Cir. 2009) (finding that eleven incidents of racially derogatory language over thirteen years was insufficient to objectively be considered severe or pervasive); *Curtis v. Teletech Customer Care Mgmt. (Telecommunications), Inc.*, 208 F. Supp. 2d 1231, 1242 (N.D. Ala. 2002) (Racially discriminatory comments allegedly made by black employee's co-workers did not constitute evidence that employer's legitimate reasons for terminating employee were pretext for discrimination). Plaintiff does

not even contend that these incidents of racial slurs went unaddressed, but merely states that they did not lead to termination.

Plaintiff also makes much of Parrish's son's name but does not have personal knowledge as to Major Parrish's motivations for naming his son; therefore, as already discussed, that "fact" is due to be stricken and should not be considered. In addition, Defendant's previous arguments as to why Plaintiff's claims about the Sons of the Confederate Veterans and the photo with the Confederate flag also apply to establish they are not evidence of pretext. Finally, as to Plaintiff's claim that he made several complaints that went uninvestigated, the only specific examples he cites is of verbal comments he made to Chief Benton in 2012 and Darryl Mathews in early 2013. These alleged reports are unconnected to Plaintiff's termination and do not establish pretext.

F.     **Retaliatory Hostile Work Environment Claim**

Plaintiff barely even addresses the many reasons that Defendant thoroughly explains in its Motion for Complete Summary Judgement as to why his retaliatory hostile work environment claim fails as a matter of law. (Doc. 39). He does not explain why the Department's actions which served a legitimate purpose should be considered harassing. Furthermore, his discussion of the causation element of his prima facie case is brief and insufficient, as set out below. Finally, he <u>completely fails to address</u> the severe or pervasive requirement for his claim. Plaintiff

incorporates all of the arguments from its original motion on those topics and maintains those reasons alone are untouched by Plaintiff's response and demonstrate that Defendant is entitled to summary judgment.

Plaintiff's short argument first takes issue with Plaintiff's reassignment to the Administrative Services Bureau and the alleged removal of his supervisory authority. Although Plaintiff claims that his assignment to the Administrative Services Bureau was "less prestigious," he admitted that Chief Benton had the authority to transfer officers from one bureau to another at his discretion and that he made such reassignments on occasion. (Gray Depo, 41:10-16, 43:3-11). He also admitted that the transfer did not affect his pay or rank. (Gray Depo, 41:17-43:2). Plaintiff further admitted that he was told that Captain Stacy Robinson's health problems were one of the reasons for the transfer. (Gray Depo, 202:2-12). Other than Plaintiff's subjective opinion that the Administrative Services Bureau was less prestigious, he presents no evidence that the move was not a rational business decision. As to the alleged removal of supervisory authority, Plaintiff' claims that upon assuming command of the Administrative Services Bureau, he had direct supervision of two (2) direct reports. Defendant does not dispute that fact. Defendant points out, however, that the other two captains, both of whom were Caucasian, had comparable numbers of direct reports—Captain Robinson had two (2) and Captain Jay had seven (7). (Benton Declaration, ¶ 9). Thus, whatever

56

changes in supervisory authority might have been made in concurrence with the transfer of bureaus was made across the board and in a non-discriminatory and non-harassing manner.

Next Plaintiff again makes his "witch hunt" argument, dubbing his Internal Affairs interviews as "unfounded interrogations," his administrative leave as "meritless," and his termination as "unlawful." Plaintiff's use of inflammatory language does not transform these legitimate decisions into harassing acts. Defendant has already explained why both the instigation of the investigation and its length were necessary. Defendant followed Department policy in putting Plaintiff on administrative leave during the investigation (Benton Declaration ¶ 11, Exhibit 8) and did not terminate him until it had thoroughly investigated his associations and the evidence demonstrated that the termination of his employment was necessary.

Plaintiff's next point regarding "same decision" discrete acts misinterprets the argument that Defendant makes in its motion. Defendant agrees that the mere fact that a defendant is not found *liable* for a discrete act does not preclude liability under a hostile work environment claim because discriminatory intent could still be a part—just not a "but-for" cause—of the decision. In fact, Defendant specifically makes this point, quoting the same case law quoted by Plaintiff, in footnote 9 on page 61 of its motion. Defendant's argument is this: the same reasons why those

discreet acts were not discriminatory *at all* are the reasons those discrete acts do not establish a hostile work environment. Stated differently, mere lack of liability is *not* enough, but complete lack of discriminatory intent *is* enough to defeat a hostile environment claim.

Finally, Plaintiff argues that a presumption of retaliation exists under the Eleventh Circuit's "short time rule." With regard to the timing of Plaintiff's termination as it relates to any previous complaints, causation is broken by the third party events that precipitated the investigation of Plaintiff and, ultimately, his termination. *See Fleming v. Boeing Co.*, 120 F.3d 242, 248 (11th Cir. 1997) (holding that plaintiff's failure to meet the performance standards set by the employer broke the causal connection between any protected activity and adverse employment action); *see, e.g., Hankins v. AirTran Airways, Inc.*, 237 Fed. Appx. 513, 520-21 (11th Cir. 2007) (finding plaintiff's "intervening act of misconduct" as severing the causal connection between protected activity and adverse employment action that occurred five days thereafter). As to the timing of Plaintiff's transfer, Defendant also reiterates its original arguments and points out that Defendant received and addressed Plaintiff's complaints for the duration of his employment and continued to promote him; Plaintiff puts forth no reason why Defendant would suddenly begin retaliating against him following his most recent complaints.

Furthermore, Defendant did not control the timing of learning of Plaintiff's misconduct.

In sum, Plaintiff's arguments regarding his retaliatory hostile work environment claim do nothing to weaken Defendant's entitlement to summary judgment on the claim, as set out in its original motion. Plaintiff does not even attempt to establish that the alleged harassment was severe or pervasive, which precludes Defendant's liability on the claim.

## CONCLUSION

For the foregoing reasons, and for the reasons asserted in Defendant's Motion for Partial Summary Judgment (Doc. 34) and Motion for Complete Summary Judgment (Doc. 39), there are no genuine issues of material fact, and Defendant is entitled to judgment in its favor as a matter of law on all counts contained in Plaintiff's Complaint.

Respectfully submitted,

*/s/ Stephanie H. Mays*
Chris Mitchell, Esq.
Stephanie H. Mays, Esq.
Tiffany P. Rainbolt, Esq.
**MAYNARD, COOPER & GALE, P.C.**
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, AL 35203-2618
Telephone: 205.254.1000
Fax: 205.254.1999

cmitchell@maynardcooper.com
smays@maynardcooper.com
trainbolt@maynardcooper.com

## <u>CERTIFICATE OF SERVICE:</u>

I hereby certify that on May 22, 2015, I electronically filed the foregoing with the Clerk of Court and served a copy of the same via electronic notification to the following:

Sonya C. Edwards
Edwards Law, LLC
121 Edenton Street
Birmingham, AL 35242
sonyaedwardslaw@gmail.com
Phone: 205-408-0956
Fax: 205-408-9236

Jeffrey W. Bennitt
Edwards Law, LLC
121 Edenton Street
Birmingham, AL 35242
Bennittlaw.aol.com
Phone: 205-408-7240
Fax: 205-408-9236

*/s/ Stephanie H. Mays*