## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

IVAN "KEITH" GRAY,          )
                                 )
      Plaintiff,          )
                                 )     CIVIL ACTION NO:
vs.                         )     1:14-cv-00592
                                 )
CITY OF DOTHAN,         )
                                 )
      Defendant.       )

## PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST INTERROGATORIES AND REQUEST FOR PRODUCTION

COMES NOW Plaintiff Ivan "Keith" Gray and responds to Defendant's Interrogatories and Request for Production as follows:

### DEFINITIONS AND INSTRUCTIONS

Plaintiff objects to each instruction and definition to the extent that it purports to impose any requirement or discovery obligation greater than or different from those under the Federal Rules of Civil Procedure and the applicable Rules and Orders of the Court.

### RESPONSES TO INTERROGATORIES

1.     State your full name, date of birth, social security number, your current residence address and all residence addresses which you have had during the past 10 years (including the approximate dates during which you



DEFENDANT'S
EXHIBIT
I. Gray

have resided at each such address).

Plaintiff objects that the interrogatory is overly broad in scope, seeks irrelevant information and/or information that is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff objects to the extent that it requests information that is equally available to Defendant. Subject to and without waiving these objections, Plaintiff responds as follows:

Ivan Keith Gray

REDACTED

SSN xxx-xx-x283

1103 Meharis Circle, Dothan, AL 36303 (2012 to present)

560 Fortner Street, Dothan, AL 36301 (approximately 2004 to 2012).

2.    Identify all persons with whom you resided during the past five years.

Plaintiff objects that the interrogatory is overly broad in scope, seeks irrelevant information and/or information that is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, Plaintiff responds as follows: None.

3.    Summarize your employment history after your employment with Defendant, including any current employment, identifying each employer and including in your answer for each job or occupation (including any self employment): the dates of employment; the position(s) held and the

2

skills/experience/education required for each position; duties and responsibilities of each position held; rate of pay or salary; and the reason(s) for leaving each job and whether you left voluntarily.

Plaintiff objects that the interrogatory is overly broad in scope, unduly burdensome, seeks irrelevant information, and/or information that is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, Plaintiff responds as follows: None.

4.    Summarize your employment history before your employment with Defendant, identifying each employer and including in your answer for each job or occupation (including any self employment): the dates of employment; the position(s) held and the skills/experience/education required for each position; duties and responsibilities of each position held; rate of pay or salary; and the reason(s) for leaving each job and whether you left voluntarily.

Plaintiff objects that the interrogatory is overly broad in scope, unduly burdensome, seeks irrelevant information, and/or information that is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff objects to the extent that it requests information that is equally available to Defendant. Subject to and without waiving these objections, Plaintiff responds as follows: Plaintiff worked for Defendant for twenty-eight (28) years. For employment history prior to 1985, refer to Plaintiff's employment application on file with Defendant.

5.     Before your employment with Defendant state whether you have ever been involuntarily terminated from a position other than with Defendant and if so, identify the other employers who involuntarily terminated you, the circumstances surrounding those terminations and the reasons given for your termination.

Plaintiff objects that the interrogatory is overly broad in scope, unduly burdensome, seeks irrelevant information, and/or information that is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff objects to the extent that it requests information that is equally available to Defendant. Subject to and without waiving these objections, Plaintiff responds as follows: None.

6.     As to your duties with Defendant at the time your employment was terminated provide the following: the specific title of your position and the dates you were employed in this specific position; the duties of the position; name/describe the department/location where you usually worked while holding the position; and your experience/skills/education which qualified you to hold the position.

Plaintiff objects that the interrogatory is overly broad in scope, unduly burdensome, seeks irrelevant information, and/or information that is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff objects to the extent that it requests information that is equally available to Defendant. Subject

4

to and without waiving these objections, Plaintiff responds as follows: See attached resume, Bates numbers 00001-00004.

7.    Describe in detail all attempts to collect disability benefits (including but not limited to social security benefits) or unemployment benefits in the last five (5) years, listing the approximate dates of any such applications, the outcome of the application and amount received.

Plaintiff objects that the interrogatory is overly broad in scope, unduly burdensome, seeks irrelevant information, and/or information that is not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff objects to the extent that it requests information that is equally available to Defendant.  Subject to and without waiving these objections, Plaintiff responds as follows: Unemployment benefits awarded between approximately October 2013 and March 2014 totaling a gross amount of $5,830.00 before 10% taxes.

8.    Please describe your educational background.

Plaintiff objects that the interrogatory is overly broad in scope, unduly burdensome, vague, seeks irrelevant information, and/or information that is not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff objects to the extent that it requests information that is equally available to Defendant.  Subject to and without waiving these objections, Plaintiff responds as follows: Associate of Science, Bachelor of Science (Criminal Justice), Masters of

5

Science (Education), job-related courses and training. See also, Bates numbers 00001-00004.

9.     If you are seeking an award of any sum or money, whether by damages or otherwise, state the full amount of money you seek and describe **in detail** the manner in which the amount was calculated. Your description should include each element of damage or component of recovery that you seek, the amount sought for each element or component, the manner in which each element or component of the calculation was determined, and identify the source of each number used in the calculation.

Plaintiff objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work-product privilege, or any other privilege or protection applicable under the governing law. Plaintiff objects to the extent that it is overly broad in scope, unduly burdensome, and/or seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff objects to the extent that it requests information that is equally available to Defendant. Plaintiff objects to the extent that it seeks facts known or opinions held by non-witness experts. Plaintiff objects to the extent that it seeks legal conclusions or answers to questions of law. Subject to and without waiving these objections, Plaintiff states as follows: See Plaintiff's Initial Disclosures.

6

10.    Summarize each and every effort made by you to find employment since your employment with Defendant ended, including the following:

a)    list all employers you contacted regarding possible employment;

b)    list each potential employer to whom you applied for work, including the date you filled out the application;

c)    list each potential employer with whom you interviewed including the date of the interview;

d)    list each potential employer that offered you a position of employment; and

e)    list each offer of employment that you accepted; list any wages, income or compensation you received from any source after the date of your discharge from Defendant.

Plaintiff objects to this interrogatory as overly broad, unduly burdensome and/or that it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence.    Subject to and without waiving these objections, Plaintiff states as follows:

a) Flightline of Dothan, AL (Employment Application); George Wallace College (Resume Submitted).; Glock Inc., Atlanta GA (Resume Submitted); G&I Bonding Company, Dothan, AL (Employment Interview); Sears Inc., Dothan,

AL (Online Application and Applicant Screening Test); Dothan Airport Police Dept., Dothan, AL (Employment inquiry, advised no vacant positions); AMF Bowling Inc., Atlanta, GA; U.S. Transportation Security Administration (Online Applications/Resume); Florida Department of Law Enforcement Admission Application (Florida Law Enforcement Officer Proficiency Course [32 hours] at Chipola College Criminal Justice Training, State Officers Certification Examination); Government Contract Job in Dubai (Resume Submitted/Passport obtained);

b) See above response;

c) Andrew Turner G&I Bonding Co.;

d) Not applicable;

e) Not applicable.

11.    State whether you have ever been a plaintiff or defendant in any **civil or criminal** proceeding (including both past litigation and any suit which may currently be pending and including any Federal, State or local administrative proceeding) other than the instant case which you have filed against Defendant. If so, please state: the style of each such case, including the names of all parties to the case; whether you were a plaintiff or defendant in each such case; the name and city of the court where each such case was or is pending; the case number of

each such case; the approximate date when each such case was filed; the nature of each such case and the relief sought by the parties; and the outcome of each such case, including a statement of whether the plaintiff or the defendant prevailed and, if the plaintiff prevailed, the damages and other relief which were awarded.

Plaintiff objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work-product privilege, or any other privilege or protection applicable under the governing law. Plaintiff objects to the extent that it is overly broad in scope, unduly burdensome, vague, and/or seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff objects to the extent that it requests information that is equally available to Defendant or information that is a matter of public record. Plaintiff objects to the extent that it seeks legal conclusions or answers to questions of law. Subject to and without waiving these objections, Plaintiff states as follows: The present case is the only case in which I have either been a plaintiff or defendant in the past ten (10) years.

12.   Identify each and every person with knowledge (whether direct or indirect) of any fact regarding this lawsuit, whether known by you, your attorney, or anyone else who has acted on your behalf, describe what knowledge about the lawsuit each may have and indicate whether a statement was taken from each such witness.

Plaintiff objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work-product privilege, or any other privilege or protection applicable under the governing law.  Plaintiff objects to the extent that it is overly broad in scope, unduly burdensome, vague, and/or seeks information that is not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff objects to the extent that it requests information that is equally available to Defendant or information that is a matter of public record. Plaintiff objects to the extent that it seeks facts known or opinions held by non-witness experts.   Subject to and without waiving these objections, Plaintiff states as follows: See Plaintiff's Initial Disclosures.

13.   Identify any position for which you applied for and/or took a promotional exam for during your employment with Defendant and the approximate date on which you submitted any such application and/or took any such exam.

Plaintiff objects to the extent this interrogatory it is overly broad in scope, unduly burdensome, and/or seeks information that is not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff objects to the extent that it requests information that is equally available to Defendant.

14.     Identify each expert witness whom you intend to call as a witness at trial.    Separately summarize each expert's anticipated testimony/opinions and separately provide all background facts, data, studies, survey, articles etc. on which each expert relies.

Plaintiff objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work-product privilege, or any other privilege or protection applicable under the governing law.    Plaintiff objects to that it is overly broad, unduly burdensome, seeks irrelevant information or information that is not reasonably calculated to lead to the discovery of admissible evidence.    Plaintiff objects to the extent it seeks facts known or opinions held by non-witness experts.    Plaintiff objects to the extent that it seeks legal conclusions or answers to questions of law.    Subject to and without waiving these objections, Plaintiff states as follows: No expert has been retained as of the date of these Responses.

15.     State whether or not you have ever filed a charge of discrimination or any similar employment complaint or charge with the EEOC or with any other Federal or State agency or body against any employer other than the Defendants. If so, please state: the names of all parties involved in the charge; the name of the agency with which such charge or complaint was filed; the name and city of the EEOC or other agency office where each charge or

11

complaint was filed or is pending; the charge or case number of each such charge or complaint; the approximate date when each such charge or complaint was filed; the nature of each such charge or complaint and the relief sought; and the outcome of each such charge or complaint, including any determination made by the EEOC or other agency.

Plaintiff objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work-product privilege, or any other privilege or protection applicable under the governing law. Plaintiff objects to that it is overly broad, unduly burdensome, seeks irrelevant information or information that is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff objects to the extent that it requests information that is equally available to Defendant or a matter of public record. Plaintiff objects to the extent that it seeks legal conclusions or answers to questions of law. Subject to and without waiving these objections, Plaintiff states as follows: None.

16.   Please state whether you have ever been involved in any bankruptcy proceedings and if so, provide details of when and where the bankruptcy petition was filed and the current status or outcome of that proceeding.

Plaintiff objects to that this interrogatory seeks irrelevant information or information that is not reasonably calculated to lead to the discovery of

admissible evidence. Plaintiff objects to the extent that it seeks legal conclusions or answers to questions of law. Subject to and without waiving these objections, Plaintiff states as follows: Middle District of Alabama, Chapter 13 reorganization, discharged in 2008.

17.     Identify any communication after your discharge from Defendant between you and Defendant or any of its representatives relating to the allegations in the Complaint or any matters related to the claims in this action.

Plaintiff objects to this interrogatory as being overly broad, unduly burdensome, vague, and as seeking irrelevant information and/or information that is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff objects to the extent that it requests information equally available to Defendant. Subject to and without waiving these objections, Plaintiff states as follows: Plaintiff has had no material communication with Defendant or its representatives relating to the allegations in the Complaint or any claims in this action since his termination.

18.     Please identify the names and addresses of any and all medical physicians, psychiatrists, psychologists, or counselors from whom you have sought or received treatment in the last ten (10) years. Also, with regard to each physician, psychiatrist or psychologist or counselor:

    a.    List the name of each provider, where he or she practices and discuss in detail the extent of treatment;

    b.    List any and all medications they prescribed and the suggested dosage;

    c.    State the frequency or number of your visits to each of these professionals.

Plaintiff objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work-product privilege, or any other privilege, protection, or immunity applicable under the governing law. Plaintiff objects to the extent that it is overly broad in scope, unduly burdensome, vague, irrelevant, and/or seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff objects to the extent that it seeks facts known or opinions held by non-witness experts. Plaintiff objects to the extent it calls for a legal or medical conclusion. Plaintiff objects to the extent that it exceeds the number of interrogatories allowed by the Federal Rules of Civil Procedure and the applicable Rules or Orders of the Court. Subject to and without waiving these objections, Plaintiff states as follows:

    a.    Earl Jones, Ph.D.; Dothan, AL; Counselor/Therapist

         Robert Kreutzmann, M.D.; Ozark, AL; Federal Aviation

Association flight physician for pilot licensure;

Kenneth Tucker, M.D., Dothan, AL; Primary care physician

and treatment for anxiety and depression;

b.     Zoloft (Sertraline) 50 mg/day;

Zanax (Aprazolam) .25 mg 1-2 times daily;

Ambien (Zolpidem) 10 mg/night as needed;

c.     Tucker and Kreutmann, approximately 1-2 times per year;

Jones, approximately ten (10) times.

19.    Please identify with specificity all professional and personal diaries, journals, personal email accounts, and any accounts you have with social networking sites including, but not limited to, My Space, Facebook, Linked In, Twitter or Flicker.

Plaintiff objects to this interrogatory as overly broad in scope, unduly burdensome, vague, irrelevant, and/or seeks information that is not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff objects to the extent that it exceeds the number of interrogatories allowed by the Federal Rules of Civil Procedure and the applicable Rules or Orders of the Court.  Subject to and without waiving these objections, Plaintiff states as follows: MySpace, Facebook, LinkedIn, personal Yahoo e-mail account, personal Gmail account.

20.    Please state the full name and current address of all adult relatives, by

blood or marriage, who reside in the Middle District of Alabama.

Plaintiff objects to this interrogatory as overly broad in scope, unduly burdensome, vague, irrelevant, and/or seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff objects to the extent that it exceeds the number of interrogatories allowed by the Federal Rules of Civil Procedure and the applicable Rules or Orders of the Court. Subject to and without waiving these objections, Plaintiff can presently recollect the following:

Dwight Devoye Baker space REDACTED

Pamela Kaye Gray-Mosley REDACTED

Noris Leonard Danzey REDACTED

Lara Joyce Dawsey-Danzey REDACTED

Monique Danzey REDACTED

Annie West REDACTED

James Alton West REDACTED

Janetta Locket REDACTED

Cassandra Glover REDACTED

Kenneth Wayne Williams REDACTED

Vada Leon Holt ███████████REDACTED███████████

Carrie Lee flowers ███████████REDACTED███████████

Brian Baker ████████REDACTED████████

Cheryl Denise Sanders ██████████REDACTED██████████

Sandra Baker ███████REDACTED███████

Felicia Deon Baker, ████████REDACTED████████

Mike West, Anthony Holt, Sandra hope, Paula hope, Lisa Holt, Tony Holt,

Mike Holt, Anthony Robinson: addresses presently unknown.

[REMAINDER OF THIS PAGE LEFT INTENTIONALLY BLANK]

VERIFICATION

I do solemnly declare under the penalty of perjury that the foregoing Responses to Interrogatories are true and correct to the best of my knowledge, information, and belief.

_____

Ivan Keith Gray

I, the undersigned, a Notary Public, in and for said County, in said State, hereby certify that IVAN KEITH GRAY, whose name is signed to the foregoing Verification and who is known to me, acknowledged before me on this day, that, being fully informed of the contents of the foregoing instrument, he executed the same voluntarily on the day the same bears date.

Given under my hand and official seal on this _____ day of _____, 2014.


_____

Notary Public

My Commission Expires: _____


(NOTARIAL SEAL)

## RESPONSES TO REQUEST FOR PRODUCTION

1.    All documents provided by Defendant to you at any time and retained by you, either in the original or by a copy.

Plaintiff objects to this request to the extent that it overly broad in scope, unduly burdensome, vague, irrelevant, and/or seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff objects to the extent that it requests information that is equally available to Defendant.

2.    All documents and things from any source which in any way relate to or support the allegations contained in the Complaint.

Plaintiff objects to this request to the extent that it seeks information protected by the attorney-client privilege, the attorney work-product privilege, or any other privilege or protection applicable under the governing law. Plaintiff objects to the extent that it is overly broad in scope, unduly burdensome, vague, and/or seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff objects to the extent that it requests information that is equally available to Defendant and/or information that is a matter of public record. Plaintiff objects to the extent that it seeks facts known or opinions held by non-witness experts.   Subject to and without waiving these objections, Plaintiff states as follows: See Bates #'s 00001-00085.

3.     Each document, audio recording, video recording, text message and photograph, and which you anticipate offering for introduction into evidence at the trial of this case.

Plaintiff objects to this request as being vague as written. Plaintiff objects to the extent that it requests information that is equally available to Defendant and/or information that is a matter of public record. Plaintiff objects to the extent that it seeks facts known or opinions held by non-witness experts. Subject to and without waiving these objections, Plaintiff will provide an Exhibit List pursuant to the Scheduling Order entered by the Court in this action. Plaintiff may also use Bates #'s 00001-00004, 00056-00085.

4.     All documents of any kind evidencing, referring or relating to expenses and/or damages you are claiming as a result of the claims asserted in the Complaint.

Plaintiff objects to this request to the extent that it seeks information protected by the attorney-client privilege, the attorney work-product privilege, or any other privilege or protection applicable under the governing law. Plaintiff objects to the extent that it is overly broad in scope, unduly burdensome, vague, and/or seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff objects to the extent that it requests information that is equally available to Defendant or information that is a matter of public

record. Plaintiff objects to the extent that it seeks facts known or opinions held by non-witness experts. Subject to and without waiving these objections, Plaintiff may use Bates #'s 00001-00085.

5. All personal diaries, notes, desk calendars, memoranda, audio tapes, video tapes, emails, text messages, social media comments/posts, blog comments/posts, computerized documents or other documents assembled or compiled by you (in your possession or to which you have access) from the beginning of your employment with Defendant to the present reflecting any remarks or statements made by anyone concerning: (a) any employment contract, agreement, arrangement or understanding between you and Defendant; (b) the terms and conditions under which you performed services for Defendant; (c) encounters, meetings, or conversations with past or present employees, officials, agents, or attorneys of Defendant; (d) any reprimands, suspensions, or disciplinary actions against you in connection with employment; (e) any complaints of alleged discrimination, First Amendment violations, and/or hostile work environment, and/or (f) job performance, including but not limited to performance reviews, test results and examination scores; (g) job titles, duties and assignments; (h) training; (i) social media posts related to your claims in this case; and (j) the termination of your employment.

Plaintiff objects to this request to the extent that it seeks information protected by the attorney-client privilege, the attorney work-product privilege, or any other privilege or protection applicable under the governing law. Plaintiff objects that it is overly broad in scope, unduly burdensome, vague, and/or seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff objects to the extent that it requests information that is equally available to Defendant and/or information that is a matter of public record. Plaintiff objects to the extent that it seeks facts known or opinions held by non-witness experts. Plaintiff objects to the extent that it exceeds the number of requests allowed by the Federal Rules of Civil Procedure and the applicable Rules or Orders of the Court. Subject to and without waiving these objections, Plaintiff refers defendant to Bates #'s 00001-00085.

6.     All documents of any kind evidencing, referring or relating to your discharge from Defendant.

Plaintiff objects to this request to the extent that it seeks information protected by the attorney-client privilege, the attorney work-product privilege, or any other privilege or protection applicable under the governing law. Plaintiff objects that it is overly broad in scope, unduly burdensome, vague, and/or seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff objects to the extent that it requests information that is equally

available to Defendant and/or information that is a matter of public record. Plaintiff objects to the extent that it seeks facts known or opinions held by non-witness experts.   Plaintiff objects to the extent that it exceeds the number of requests allowed by the Federal Rules of Civil Procedure and the applicable Rules or Orders of the Court.

7.   All applications, statements, or other documents submitted in applications or pursuant to applications for benefits by you, your physician, or anyone else acting on your behalf in attempts to obtain benefits. This request includes any and all documents that discuss, refer, or relate to any attempt by you to obtain unemployment benefits, including, but not limited to, any list of potential employers prepared and/or submitted.

Plaintiff objects to this request to the extent that it seeks information protected by the attorney-client privilege, the attorney work-product privilege, or any other privilege or protection applicable under the governing law.   Plaintiff objects that it is overly broad in scope, unduly burdensome, vague, and/or seeks information that is not reasonably calculated to lead to the discovery of admissible evidence.   Plaintiff objects to the extent that it requests information that is equally available to Defendant.   Plaintiff objects to the extent that it seeks facts known or opinions held by non-witness experts.   Plaintiff objects to the extent that it exceeds the number of requests allowed by the Federal Rules of Civil Procedure and the

23

applicable Rules or Orders of the Court. Subject to and without waiving these objections, Plaintiff states that he is attempting to locate any unemployment documentation he may have in his possession and will supplement as appropriate.

8.    Any and all documents that discuss, refer, or relate to any wages, income, or compensation you received from any source from the date of your last day of work at Defendant. This request includes, but is not limited to, any paycheck stubs or deposit records which evidence any wages, income or compensation since your employment ended at Defendant.

Plaintiff objects to this request as overly broad in scope, unduly burdensome, vague, and/or seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff objects to the extent that it requests information that is equally available to Defendant. Plaintiff objects to the extent that it exceeds the number of requests allowed by the Federal Rules of Civil Procedure and the applicable Rules or Orders of the Court. Subject to and without waiving these objections, Plaintiff states as follows: See Response to Request for Production 7.

9.    Any and all documents that discuss, refer, or relate to any efforts by you to obtain employment during and/or after your last day of work at Defendant.

Plaintiff objects to this request as overly broad in scope, unduly burdensome, vague, and/or seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff objects to the extent that it exceeds the number of requests allowed by the Federal Rules of Civil Procedure and the applicable Rules or Orders of the Court. Subject to and without waiving these objections, Plaintiff states as follows: See Bates #'s 00001-00004.

10.   Any and all documents utilized or relied upon to answer Defendant's interrogatories.

Plaintiff objects to this request to the extent that it seeks information protected by the attorney-client privilege, the attorney work-product privilege, or any other privilege or protection applicable under the governing law. Plaintiff objects that it is overly broad in scope, unduly burdensome, vague, and/or seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff objects to the extent it requests information that is equally available to Defendant or a matter of public record. Plaintiff objects to the extent that it seeks facts known or opinions held by non-witness experts. Plaintiff objects to the extent that it exceeds the number of requests allowed by the Federal Rules of Civil Procedure and the applicable Rules or Orders of the Court.

11.   Any and all documents sent to or received from the EEOC or any other government agency in the last five years.

Plaintiff objects to this request to the extent that it seeks information protected by the attorney-client privilege, the attorney work-product privilege, or any other privilege or protection applicable under the governing law. Plaintiff objects that it is overly broad in scope, unduly burdensome, vague, and/or seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff objects to the extent it requests information that is equally available to Defendant and/or a matter of public record. Plaintiff objects to the extent that it exceeds the number of requests allowed by the Federal Rules of Civil Procedure and the applicable Rules or Orders of the Court.

12.    Any documents relating to any positions for which you applied for and/or took an exam for during your employment with Defendant.

Plaintiff objects to this request to the extent that it seeks information protected by the attorney-client privilege, the attorney work-product privilege, or any other privilege or protection applicable under the governing law. Plaintiff objects that it is overly broad in scope, unduly burdensome, vague, and/or seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff objects to the extent it requests information that is equally available to Defendant and/or a matter of public record. Plaintiff objects to the extent that it exceeds the number of requests allowed by the Federal Rules of Civil

Procedure and the applicable Rules or Orders of the Court. Subject to and without waiving these objections, Plaintiff states as follows: See Bates #'s 00056-00080.

13. All your income tax returns, both State and Federal, with attachments, for the years 2009-2014.

Plaintiff objects that it is overly broad in scope, unduly burdensome, and/or seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff objects to the extent that it exceeds the number of requests allowed by the Federal Rules of Civil Procedure and the applicable Rules or Orders of the Court. Subject to and without waiving these objections, Plaintiff states as follows: See Bates #'s 00005-00055.

14. Any and all written statements taken from any person concerning the matters alleged in this lawsuit.

Plaintiff objects to this request to the extent that it seeks information protected by the attorney-client privilege, the attorney work-product privilege, or any other privilege or protection applicable under the governing law. Plaintiff objects that it is overly broad in scope, unduly burdensome, vague, and/or seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff objects to the extent that it requests information that is equally available to Defendant or information that is a matter of public record. Plaintiff objects to the extent that it seeks facts known or opinions held by non-witness

experts. Plaintiff objects to the extent that it exceeds the number of requests allowed by the Federal Rules of Civil Procedure and the applicable Rules or Orders of the Court. Subject to and without waiving these objections, Plaintiff states as follows: As of the date of these Responses, Plaintiff has no written statements from any potential witnesses.

15. Any and all documents reflecting or relating to any alleged complaints relating to your claims in this lawsuit made by you during your employment with Defendant.

Plaintiff objects to this request to the extent that it seeks information protected by the attorney-client privilege, the attorney work-product privilege, or any other privilege or protection applicable under the governing law. Plaintiff objects that it is overly broad in scope, unduly burdensome, vague, and/or seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff objects to the extent that it requests information that is equally available to Defendant or information that is a matter of public record. Plaintiff objects to the extent that it seeks facts known or opinions held by non-witness experts. Plaintiff objects to the extent that it exceeds the number of requests allowed by the Federal Rules of Civil Procedure and the applicable Rules or Orders of the Court. Subject to and without waiving these objections, Plaintiff states as follows: Bates #'s 00056-00080, 00085.

16.    Copies of any statements made by you in any text message, personal e-mail account or on Facebook, MySpace, Linked In, Twitter, Flicker or any other social networking site regarding your claims in this lawsuit or your employment or discharge   from   Defendant and messages, comments and responses regarding the same.

Plaintiff objects to this request to the extent that it seeks information protected by the attorney-client privilege, the attorney work-product privilege, or any other privilege or protection applicable under the governing law.  Plaintiff objects that it is overly broad in scope, unduly burdensome, vague, and/or seeks information that is not reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff objects to the extent that it requests information that is equally available to Defendant or information that is a matter of public record.  Plaintiff objects to the extent that it exceeds the number of requests allowed by the Federal Rules of Civil Procedure and the applicable Rules or Orders of the Court.  Subject to and without waiving these objections, Plaintiff states that he has made no such copies.

17. Any and all documents received pursuant to a subpoena or FOIA request.

Plaintiff objects to this request to the extent that it seeks information protected by the attorney-client privilege, the attorney work-product privilege, or

any other privilege or protection applicable under the governing law. Plaintiff objects that it is overly broad in scope, unduly burdensome, vague, and/or seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff objects to the extent that it requests information that is equally available to Defendant and/or information that is a matter of public record. Plaintiff objects to the extent that it exceeds the number of requests allowed by the Federal Rules of Civil Procedure and the applicable Rules or Orders of the Court. Subject to and without waiving these objections, Plaintiff states as follows: None as of the date of these Responses.

18.   All documents provided to any expert witness and/or any expert consultant with whom Plaintiff and/or his attorneys have consulted in connection with any matter related to the allegations in the Complaint.

Plaintiff objects to this request to the extent that it seeks information protected by the attorney-client privilege, the attorney work-product privilege, or any other privilege or protection applicable under the governing law. Plaintiff objects that it is overly broad in scope, unduly burdensome, vague, and/or seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff objects to the extent that it requests information that is equally available to Defendant and/or information that is a matter of public record. Plaintiff objects to the extent that it exceeds the number of requests allowed by the

Federal Rules of Civil Procedure and the applicable Rules or Orders of the Court. Subject to and without waiving these objections, Plaintiff states as follows: None as of the date of these Responses.

19.     With respect to any expert witness you intend to call in this case: (1) all documents relating in any way to such witness's qualifications as an expert; 2) a written summary of such person's opinion and intended testimony and the facts underlying such opinion or testimony and (3) documents stating whether such person has ever been retained for consultation in a lawsuit involving claims under any municipal, state or federal fair employment law.

Plaintiff objects to this request to the extent that it seeks information protected by the attorney-client privilege, the attorney work-product privilege, or any other privilege or protection applicable under the governing law. Plaintiff objects that it is overly broad in scope, unduly burdensome, vague, and/or seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff objects to the extent that it requests information that is equally available to Defendant and/or information that is a matter of public record. Plaintiff objects to the extent that it exceeds the number of requests allowed by the Federal Rules of Civil Procedure and the applicable Rules or Orders of the Court. Subject to and without waiving these objections, Plaintiff states as follows: None as of the date of these Responses.

31

As to objections,

/s/ Sonya C. Edwards
Sonya C. Edwards

EDWARDS LAW, LLC
121 Edenton Street
Birmingham, Alabama 35242
SonyaEdwardsLaw@gmail.com
(205) 408-0956 Telephone
(205) 408-9236 Facsimile

/s/ Jeffrey W. Bennitt
Jeffrey W. Bennitt

JEFFREY W. BENNITT & ASSOCIATES
121 Edenton Street
Birmingham, Alabama 35242
Bennittlaw@aol.com
(205) 408-7240 Telephone
(205) 408-9236 Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing to all counsel of record via electronic mail on this the September 22, 2014 as follows:

Stephanie Mays, Esq.
smays@maynardcooper.com

Chris Mitchell, Esq.
cmitchell@maynardcooper.com

/s/Sonya Edwards_____
Of Counsel

DEFENDANT'S
EXHIBIT
2
I. Gray

# The City of Dothan
## PERSONNEL ACTION - STATUS CHANGE REPORT

PAYROLL EFFECTIVE DATE: _____  Date Prepared: 12-21-89   Hire Date: 2-11-85

Employee Name: _____ IVAN K. GRAY _____   Soc. Sec. No.: [REDACTED]

| CURRENT | | CHANGE TO | | |
|---|---|---|---|---|
| Department   POLICE | | | | |
| Job Title  POLICE OFFICER   Code 281 | | | Code | |
| Salary Account No.   [REDACTED] | | | | |
| AS OF 9-23-89 Pay Plan & Level   304   Step   04 | | Pay Plan & Level | Step | |
| AS OF 9-23-89 Salary: Biweekly $ 705.00   (4 dec.) Hourly $ 8.8125 | | Biweekly $ | (4 dec.) Hourly $ | Max |

## TYPE OF ACTION

1. Salary Change:
   ( ) Increase _____% Amount $_____
   ( ) Decrease _____% Amount $_____
   ( ) To Minimum
   **(X) Lump Sum Award _____% Amount $ 676.00 ✓

2. ( ) Demotion
3. ( ) Promotion
4. ( ) Reclassification
5. ( ) Transfer:    ( ) Position
                    ( ) Division
                   *( ) Department
6. ( ) Other Action _____

*Transfer must be approved by Releasing and Appointing Authorities, subject to approval of the Personnel Director. Section 15, Civil Service Act of Dothan, Alabama.
**Lump Sum Awards do not add to employee's base hourly rate.

## REASON FOR ACTION

1. ( ) Anniversary Step Increase (ASI) in accordance with current pay plan.   Ann. Date _____

2. (X) Performance Evaluation Dated 10-19-89   Rating 3.56 ✓
   Type of Evaluation:   ( ) C-Probation II/RS   ( ) F-Probation IV / RS
                         (X) G-Annual Performance Evaluation

3. ( ) Replacing _____, who was   ( ) demoted   ( ) promoted
   ( ) transferred   ( ) terminated   ( ) retired   ( ) deceased

4. (XX) Per Personnel Board Action dated   DECEMBER 11, 1989

5. ( ) Other reason _____

*Approved by: _____
(Transfers)   RELEASING APPOINTING AUTHORITY

Requested by: _____
APPOINTING AUTHORITY (DEPT. HEAD)

Approved by GOVERNING BODY: See Status Change memorandum dated _____

Approved by: _____, PERSONNEL DIRECTOR

| PERSONNEL USE ONLY: Status Code _____ /Next Eval. _____ /Type _____ /Ann. Date _____ |
|---|
| Reset Hrs _____ / Change Type _____ / F,P,T _____ / Exempt _____ / H,S _____ / Ret (T&B) _____ |
| Function _____ / Cat _____ / Checked by _____ / Entered by _____ |

CITY OF DOTHAN/GRAY 000073
CONFIDENTIAL

# The City of Dothan

## PERSONNEL ACTION - STATUS CHANGE REPORT

PAYROLL EFFECTIVE DATE: _1-14-90_  Date Prepared: _1-8-90_  Hire Date: _2-11-85_

Employee Name: _Ivan Keith Gray_  Soc. Sec. No.: [REDACTED]

| CURRENT | CHANGE TO |
|---|---|
| Department _Police_ | |
| Job Title _Police Officer_  Code _281_ | _Police Corporal_  Code _282_ |
| Salary Account No. [REDACTED] | _Same_ |
| Pay Plan & Level _304_  Step _0405_ | Pay Plan & Level _305_  Step _0405_ |
| Salary: Biweekly $ ~~725.00~~ 763.00 Hourly $ 9.5375 ~~9.1250~~ (4 dec.) | Biweekly $ ~~848.00~~ 842.00 (4 dec.) Hourly $ ~~10.1250~~ 10.5850  Max |

### TYPE OF ACTION

1. Salary Change: _79.00_
   (-) Increase _10.35_ % Amount $ ~~38~~
   ( ) Decrease _____ % Amount $_____
   ( ) To Minimum
   **( ) Lump Sum Award _____ % Amount $_____

2. ( ) Demotion
3. (X) Promotion
4. ( ) Reclassification
5. ( ) Transfer:
   ( ) Position
   ( ) Division
   *( ) Department
6. ( ) Other Action_____

*Transfer must be approved by Releasing and Appointing Authorities, subject to approval of the Personnel Director. Section 15, Civil Service Act of Dothan, Alabama.
**Lump Sum Awards do not add to employee's base hourly rate.

### REASON FOR ACTION

1. ( ) Anniversary Step Increase (ASI) in accordance with current pay plan.  Ann. Date_____

2. ( ) Performance Evaluation Dated_____  Rating_____
   Type of Evaluation:  ( ) C-Probation II/RS  ( ) F-Probation IV / RS
   ( ) G-Annual Performance Evaluation

3. (x) Replacing _Tony Luker_ , who was ( ) demoted  (xx) promoted
   ( ) transferred  ( ) terminated  ( ) retired  ( ) deceased

4. ( ) Per Personnel Board Action dated _____

5. ( ) Other reason _____

*Approved by: _____
(Transfers)  RELEASING APPOINTING AUTHORITY

Requested by: _____
APPOINTING AUTHORITY (DEPT. HEAD)

Approved by GOVERNING BODY, See Status Change memorandum dated _1/23/90_

Approved by: _____  PERSONNEL DIRECTOR

| PERSONNEL USE ONLY: Status Code _CB_ | Next Eval _05-22-90_ | Type _A_ | Ann. Date _01-28-__ |
|---|---|---|---|
| Reset Hrs _Y_  Change Type _P_ | F,P,T ____  Exempt _N_ | H,S _H_ | Ret (T&B) ____ |
| Function _04_  Cat _03_ | Checked by ____ | Entered by ____ | |

CITY OF DOTHAN/GRAY-000074
CONFIDENTIAL

Copy 1 — Finance Files    Copy 2 — Personnel Files    Copy 3 — Dept. Files    Copy 4 — Employee
Personnel Form -101 (Revised 11/89)

# The City of Dothan

## PERSONNEL ACTION - STATUS CHANGE REPORT

PAYROLL EFFECTIVE DATE: ___11/18/90___   Date Prepared: __10/25/90__   Hire Date: _2/11/85_

Employee Name: __GRAY, IVAN K.__   Soc. Sec. No.: ____REDACTED____

| CURRENT | CHANGE TO |
|---|---|
| Department __POLICE__ | |
| Job Title __POLICE CORPORAL__   Code 282 | __POLICE SERGEANT__   Code 283 |
| Salary Account No. __REDACTED__ | Same |
| Pay Plan & Level __305__   Step __05__ | Pay Plan & Level __306__   Step __05__ |
| Salary: Biweekly $ _376.00_   (4 dec.) Hourly $ _10.9500_ | Biweekly $ _979.00_   (4 dec.) Hourly $ _12.2375_   Max |

### TYPE OF ACTION

1. Salary Change:
   (X) Increase _11.75_% Amount $_103_
   ( ) Decrease ____% Amount $_____
   ( ) To Minimum
   **( ) Lump Sum Award ____% Amount $_____

2. ( ) Demotion
3. (X) Promotion

4. ( ) Reclassification
5. (X) Transfer:   (X) Position
                   ( ) Division
                   *( ) Department

6. ( ) Other Action_____

*Transfer must be approved by Releasing and Appointing Authorities, subject to approval of the Personnel Director. Section 15, Civil Service Act of Dothan, Alabama.
**Lump Sum Awards do not add to employee's base hourly rate.

### REASON FOR ACTION

1. ( ) Anniversary Step Increase (ASI) in accordance with current pay plan.   Ann. Date_____
2. ( ) Performance Evaluation Dated_____   Rating_____
   Type of Evaluation:   ( ) C-Probation II/RS   ( ) F-Probation IV / RS
                         ( ) G-Annual Performance Evaluation
3. (X) Replacing __JAMES HARTZOG (R# 90-159)__, who was ( ) demoted   ( ) promoted
   ( ) transferred   ( ) terminated   (X) retired   ( ) deceased
4. ( ) Per Personnel Board Action dated _____
5. ( ) Other reason _____

*Approved by: _____   Requested by: _Harold Fretel (Q)_
(Transfers)   RELEASING APPOINTING AUTHORITY   APPOINTING AUTHORITY (DEPT. HEAD)

Approved by GOVERNING BODY--See Status Change memorandum dated _11/9/90_

Approved by:_____   PERSONNEL DIRECTOR

PERSONNEL USE ONLY:   Status Code _03_ ✓ /Next Eval. _5 12 91_ ✓ /Type _A_ ✓ /Ann. Date _11 18_ ✓
Reset Hrs _✓_ / Change Type _PT_ ✓ /F,P,T _F_ ✓ / Exempt _N_ ✓ / H,S _H_ ✓ / Ret (T&B)_____
Function _04_ / Cat _TN_ ✓ / Checked by_____ / Entered by_KHLA_

CITY OF DOTHAN/GRAY 000077
CONFIDENTIAL

# PERSONNEL ACTION - STATUS CHANGE REPORT

| PAYROLL EFFECTIVE DATE: 09/17/2006 | DATE PREPARED: 08/31/2006 | HIRE DATE: 02/11/1985 |
|---|---|---|

| EMPLOYEE NAME: Gray, Ivan Keith | | EMPLOYEE NUMBER: 101492 | |

|  | CURRENT | | CHANGE TO | |
|---|---|---|---|---|
| DEPARTMENT | Police Department | | | |
| SALARY ACCOUNT | REDACTED | | | |
| JOB TITLE | Police Sergeant | | Police Lieutenant | |
| JOB CODE | 283 | | 286 | |
| PAY PLAN | LEVEL 306 | STEP 10 | LEVEL 307 | STEP 9 |
| AMOUNTS | BIWEEKLY $ 1,729.00 | HOURLY $ 21.6125 | BIWEEKLY $1,842.00 | HOURLY $ 23.025 |
|  | | | | BASE RATE FOR OT  $ |

## TYPE OF ACTION

| SALARY CHANGE | ( ) REGULAR STATUS | ( ) POSITION TRANSFER | ( ) DEMOTION |
|---|---|---|---|
| ( ) INCREASE  6.536% $ 113.00 | ( ) ACCOUNT # CHANGE | ( ) DEPARTMENT TRANSFER * | ( ) ADDITIONAL PAY |
| ( ) DECREASE        % $ | ( X PROMOTION | ( ) RECLASSIFICATION | |
| ( ) OTHER ACTION: | | | |

*TRANSFER MUST BE APPROVED BY RELEASING AND APPOINTING AUTHORITIES, SUBJECT TO APPROVAL OF PERSONNEL DIRECTOR, PER SECTION 15, CIVIL SERVICE ACT

## REASON FOR ACTION

( ) ANNIVERSARY STEP INCREASE (ASI) IN ACCORDANCE WITH CURRENT PAY POLICIES.    ANNIVERSARY DATE:          JPE RATING:

( ) REGULAR STATUS PER PERFORMANCE EVALUATION DATED:               JPE RATING:

    TYPE OF EVALUATION:  ( ) C - PROBATION II/REGULAR STATUS   ( ) F - PROBATION IV/REGULAR STATUS

( ) REPLACING PERSONNEL REQUISITION #: 06-126 VACATED BY: Jarich C.

WHO WAS: ( ) PROMOTED  ( ) TRANSFERRED  ( ) DEMOTED  ( ) TERMINATED  ( ) OTHER

( ) PER PERSONNEL BOARD ACTION DATED:

( ) OTHER REASON:

| *TRANSFER APPROVED BY RELEASING APPOINTING AUTHORITY: | | DATE: |
|---|---|---|
| REQUESTED BY APPOINTING AUTHORITY (DEPARTMENT HEAD): | | DATE: 9/6/06 |
| APPROVED BY PERSONNEL DIRECTOR: BROWN | | DATE: |
| APPROVED BY GOVERNING BODY PER STATUS CHANGE MEMORANDUM DATED: 9/11/06 | | |

## THIS SECTION FOR PERSONNEL USE ONLY

| STATUS CODE: | NEXT EVALUATION: 12/01/06 | TYPE: 11 | ANNIVERSARY DATE: | AAP CODE: |
|---|---|---|---|---|
| SCHEDULED HOURS CODE: RG  PS  P1  FS**  F1  BLANK | | ACCRUAL CODES: HA HF** H3 H4    SL S4 V | | CHANGE TYPE: PT |
| HOURLY/SALARIED:  ( H )  S | ( FT )  PT  TP | ACCRUAL START DATE: | EXEMPT:  Y  ( N ) | LIFE INSURANCE: EL  GL |
| RETIREMENT CODES - TAX & BENEFIT:  P4  P5  P6 | EEO FUNCTION: 64 | | EEO CATEGORY: PF | WORKERS COMP CODE: |
| CDL/DD: | DRUG CODE:  B  C ( D ) | ENTERED IN:  AS 400 | MPF: | ROLODEX |

CITY OF DOTHAN/GRAY 000305
CONFIDENTIAL

# PERSONNEL ACTION – STATUS CHANGE REPORT

| PAYROLL EFFECTIVE DATE: | 10/24/2010 | DATE PREPARED: | 10/08/2010 | HIRE DATE: | 02/11/1985 |
|---|---|---|---|---|---|
| EMPLOYEE NAME: | GRAY, IVAN KEITH | | EMPLOYEE NUMBER | 101492 | |

| | CURRENT: | | | CHANGE TO: | | |
|---|---|---|---|---|---|---|
| DEPARTMENT | POLICE | | | | | |
| SALARY ACCOUNT | REDACTED | | | REDACTED | | |
| JOB TITLE | POLICE LIEUTENANT | | | POLICE CAPTAIN | | |
| JOB CODE | 286 | | | 288 | | |
| PAY PLAN | LEVEL | 61 | STEP | LEVEL | 66 | STEP |
| | | | 1 | | | |
| SALARY | BIWEEKLY $ 2107.20 | HOURLY $ 26.34 | | BIWEEKLY $ 2317.92 | HOURLY $ 28.97 | 2318.40 / 28.97 |
| | | | | BASE RATE FOR OT $: | | |

## TYPE OF ACTION

| SALARY CHANGE | | | | ☐ REGULAR STATUS | ☐ POSITION TRANSFER | ☐ DEMOTION |
|---|---|---|---|---|---|---|
| ☒ INCREASE 10-02 | 10 | % | $ 210.72  211.20 | ☒ ACCT # CHANGE | ☐ DEPT. TRANSFER* | ☐ ADDITIONAL PAY |
| ☐ DECREASE | | % | $ | ☒ PROMOTION | ☐ RECLASSIFICATION | |
| ☐ OTHER ACTION | | | REMOVE FROM 7k | | | |

*TRANSFER MUST BE APPROVED BY RELEASING AND APPOINTING AUTHORITIES, SUBJECT TO APPROVAL OF PERSONNEL DIRECTOR, PER SECTION 15, CIVIL SERVICE ACT.

## REASON FOR ACTION

| ☐ PERFORMANCE INCREASE IN ACCORDANCE WITH CURRENT PAY POLICIES | JPE RATING | |
|---|---|---|
| ☐ REGULAR STATUS PER PERFORMANCE EVALUATION DATED: | JPE RATING | |
| ☒ REPLACING PERSONNEL REQUISITION # 205 | VACATED BY: | LARRY DRAUGHON |

WHO WAS: ☒ PROMOTED   ☐ TRANSFERRED   ☐ DEMOTED   ☐ TERMINATED   ☐ OTHER

☐ PERSONNEL BOARD ACTION DATED:

☐ OTHER REASON:

| TRANSFER APPROVED BY: RELEASING APPOINTING AUTHORITY: | | DATE: |
|---|---|---|
| REQUESTED BY: APPOINTING AUTHORITY (DEPARTMENT HEAD): | Gregory J. Benton | DATE: 10/08/2010 |
| APPROVED BY: PERSONNEL DIRECTOR: | | DATE: 10/18/10 |

## THIS SECTION FOR PERSONNEL USE ONLY

| STATUS CODE: CB | NEXT EVALUATION: 04-24-11 | TYPE: D | ANN DATE: | AAP CODE: |
|---|---|---|---|---|
| SCHEDULED HOURS CODE: RG PS P1 FS** F1 BLANK | ACCRUAL CODES: HA HF** H3 H4 SL S4 V_ | | CHANGE TYPE: PT |
| HOURLY/SALARIED: H S FT PT TP | ACCRUAL START DATE: | | EXEMPT: YES NO | LIFE INS: EL GL |
| REITREMENT CODES – TAX & BENEFIT: P4 P5 P6 | EEO FUNCTION: 04 | EEO CATEGORY: 0A | WORKERS COMP CODE: 7720 |
| CDL/JD: | DRUG CODE: B C D | ENTERED IN: AS400 KK | MPF: mm | ROLODEX: mm |

☐ COPY 1 – PERSONNEL   ☐ COPY 2 – DEPARTMENT   ☐ COPY 3 - EMPLOYEE

Personnel Form 101 (Revised 10-09)

RECEIVED
OCT -8 2010
CITY OF DOTHAN GRAY 000366
CONFIDENTIAL

Page 56



# THE CITY OF
# DOTHAN, ALABAMA

POST OFFICE BOX 2128 • DOTHAN, ALABAMA 36302 • 334-615-3000

GREGORY J. BENTON
CHIEF OF POLICE

July 26, 2012

Donald Petersen
Dothan Police Department
Dothan, AL 36303

Dear Donald,

I would like to congratulate you on your successful completion and graduation from the Alabama Criminal Justice Training Center Law Enforcement Academy. Your hard work and dedication has paid off and you now join thousands of officers in a respectful yet challenging profession. You are to be commended on a job well done! Beginning on July 27, 2012 you are to report to the department's firing range at 8:00 AM where the training division personnel will receive you. They will continue with equipment issue, and mandatory department training that is required of all sworn officers. You are to wear clothing that you have used for training at the police department or police academy such as cargo pants and polo style shirt, or workout gear. Maintenance and cleaning at the range will be conducted and you are to bring your duty belt with weapon. Leave your duty belt inside of your vehicles until directed otherwise. In approximately one week you will be re-assigned to the Patrol Services Bureau where you will begin your training in the field. Enclosed you will find a memorandum assigning you to a specific squad. Pay attention to the date and time that you are to report for your new 12 hour shift. Your supervisors have been informed of your arrival date and will expect you to arrive at least 15 minutes before duty. I would recommend you read General Order 100-35, "Appearance," and General Order 400-05H, "Patrol Operations" which will provide you with guidance of what is expected of you when you arrive for duty. You will be assigned to a Field Training Officer (FTO) who will merge our department's policies and procedures with what you have learned in the police academy. Remember what you learned in the police academy was taught in a controlled setting. Now you will be exposed to real life experiences under the direct supervision of your FTO. You are expected to follow the directions of your assigned FTO during this training. If you learn as expected, you will be recommended for solo status in 10 weeks. Be mindful that your off-duty conduct is under scrutiny just as well as your on-duty conduct. Good luck, and be safe.

Sincerely,

Captain K. Gray
Captain Keith Gray
Patrol Services Bureau



DEFENDANT'S
EXHIBIT
3
I. Gray

# POLICE DEPARTMENT

210 NORTH SAINT ANDREWS STREET • DOTHAN, ALABAMA 36303 • 334-615-3000
Email: dpd@dothan.org

CITY OF DOTHAN/GRAY 001121
CONFIDENTIAL



**John C. White**
CHIEF OF POLICE
210 NORTH SAINT ANDREWS STREET
DOTHAN, ALABAMA 36303
(334) 793-0212

October 27, 2000

Sergeant Keith Gray
Dothan Police Department
210 N. St. Andrews Street
Dothan, AL  36303

Dear Sergeant Gray:

This letter addresses my expectations of your courage and ethical behavior.  As an experienced law enforcement officer, you may have seen incidents' in which inappropriate behavior have occurred.

I expect you to make the right decisions, exhibit the appropriate behavior, and not condone inappropriate behavior.  Further, I expect you to verbally communicate your disapproval of unethical conduct to your fellow officers and report it to a supervisor.  Appropriate conduct is expected regardless of rank or assignment.

I have the absolute expectation that you will not engage in this type of conduct and immediately report it if you see it.  Let me give you examples of the type of behavior I expect you to prevent or report.  If you see another employee steal, an employee who is emotionally about to lose control or use unnecessary force, an employee driving dangerously, or similar conduct, take action.  If you notice that your fellow officer is developing a friendship or personal association with a person of questionable character, drug dealer or other individuals involved in criminal behavior, advise him or her to "clean up their act."  If the inappropriate behavior continues, then report it.  You are not expected to endure or tolerate misconduct or criminal behavior.  If your partner is driving like an absolute fool, even in a pursuit, immediately correct his or her behavior.  It is a cold consolation at a funeral, or when a colleague's career is destroyed, to realize you could have a made a difference.



CITY OF DOTHAN/GRAY 000203
CONFIDENTIAL

Page 2
Expectations

You will note an overriding theme in my expectations, and that is that we are one another's keepers. More so than any other professionals, we each play a role in governing the conduct and behavior of our colleagues. You must exhibit exemplary behavior and clearly know right from wrong in all your actions.

I know these are sobering thoughts. My guidance to you is not based on casual considerations, but rather upon years of experience. I have seen far too many unfortunate instances where difficult problems have developed and festered that otherwise could have been avoided had an employee demonstrated the courage and ethical behavior to intervene.

More so now, than any time during my 27 years as a law enforcement officer, has the public we serve been as critical and attune to our conduct on and off the job. It is with these thoughts in mind that I have taken this opportunity to encourage each of you to continue serving our community with pride. It is my honor to be associated with you.

Sincerely,

John C. White
Chief of Police

JCW/sd

CITY OF DOTHAN/GRAY 000204
CONFIDENTIAL



EXHIBIT
Gray
A

1          Transcript of Recording

2   KG:    Falling up under the OMC is the MC. That's a Motorcycle Club. Falling up under the MC is the RC.
3   That's a riding club. Falling up under them your gonna have your PO which is the Property Of, or your
4   supporter. Now your SC comes right up under your MC, ok. So now I'll skip that so the SC comes right up
5   under the MC. Start at the very top. OMC, Outlaw...Out...Outlaw Motorcycle Clubs are one percenters.
6   So just because they have the name "Outlaw" on their back doesn't mean they're an outlaw motorcycle
7   club. An outlaw motorcycle club is a one percenter, the one percenters, usually ride wearing a patch
8   that says, "1%" on it. So when you see someone with a patch that says one percenter on it know that's
9   the most volatile gang that there is out there ok. Now the OMC's as you've read some of the literature
10  um...um at the end of the war these guys got out of the military PTSD back there in World War II and all
11  this stuff I mean they didn't have a whole lot of things to help them cope with their angers and
12  frustrations. But you have guys um out on the battlefield that was watching each other's back, saving
13  each other's lives, and after that's over they are out and now they are on the streets trying to get jobs
14  they have PTSD and they have this..this..this..this comradery that they no longer had because all of their
15  buddies that just kept them from getting killed and that was a..a..a traumatic event so it really plays on
16  your emotions. Well these guys did something they had in common which was get on motorcycles.
17  They were now this motorcycle gang and were now the band of brothers again. So you had some that
18  um still had that violent streak in them. You had some that was smoking weed and doing heroin back
19  there back in the day and those guys just got together, talking about war stories and did what they had
20  to do and rode together and had that comradery but if you got in their way they would mow you down
21  one way or the other ok. So the history of it you have to really understand that's where it originated
22  before we started getting to everybody else ok. Your Hells Angels came out of that. Your real hardcore,
23  your Hells Angels, um you got your Pistolaros, out of them, you got your Outlaws out of them. You've
24  got your Vikings, your War Lords, um these guys were the big guys these guys were um and named ah
25  by the federal government as being the actual one percenters, those that are involved in racketeering,
26  um criminal enterprise, drug um distribution and things of that nature ok. They're...they are actually
27  listed by the federal government. So when you look at the one percenters all of them are not listed by
28  the federal government as being the main ones as being involved in all that but your Hells Angels, War
29  Lords, your Vikings, or Vice Lords those are. You'll see those vest from now..now and then. When you
30  see one you automatically know and accept that those are one's that you really don't even wanna waist
31  your time with, look around stop with because they tend to look for things to get into. They tend to be
32  the ones to start problems, but they also tend to be the one's that ride in big packs ok. Now, as...as..you
33  know life continued and people began to get into motorcycle clubs they began to get vest like ours and
34  put what they wanted out of it but they weren't the ones who went to war for whatever they want to
35  buy their bikes they wanted to get together um with friends and you know have comradery and what
36  have you and um they became the target of the OMC's because, "you're now trying to copy us, you have
37  no right to; you haven't gone through what we've gone through" you know, so this type of mentality is
38  what they had and there's a whole lot of squabbling between OMC's and MC's and to this day there is
39  still some of that going on, not as pronounced back then, but they, they it is still til this day. Now what
40  has happened is as um the entire motorcycle community has evolved, and keep in mind when we're
41  talkin' about this, we're talking about people that didn't care about what anybody else thought of them



DEFENDANT'S
EXHIBIT
5
I. Gray

CITY OF DOTHAN/GRAY 001148
CONFIDENTIAL

42 you know. They don't care what you think, they don't care how I dress, don't care how I...how I look you
43 give me the slightest look that you don't like me and I'm an OMC your ass is gonna get slapped,
44 whipped, jumped on by everybody or whatever you just don't disrespect them in any way. They don't
45 care what you think at all ok. Now as life evolved and the MC began to come on the scene what is
46 currently going on now is that in certain and different states things are known...things happen a little bit
47 differently. Because there is no book, there's no bible of how things is done, ok. There is no law that
48 says, "this motorcycle club you have to abide by this motorcycle club's protocol or their by-laws or
49 whatever ok." There is no law out there but there is a general consensus and understanding what you
50 are going through right now because it's the unwritten law that it's going to happen whether you want it
51 to or not you know. So as the MC started coming out on the scene and um there start to be more
52 charitable kind of contributions, these bike clubs are getting together to try to raise money for charities
53 and do different things um the OMC's got into that as well. Um so the OMC's have now pretty much
54 come together, let me go ahead and clarify this. I know in Alabama it's this way. I'm pretty sure around
55 our bordering states it's pretty much that way, but when you go to California, I would probably advise if
56 you are the only one wearing a vest or you're trying to get there. Don't wear it when you get up there
57 because you don't know what their mentality is ok. Um so I'm and Im gonna try to go over some..some
58 terminology cause I'm gonna say it to. Alabama, we do things according to OMC protocol. All that
59 means is that in the state of Alabama the dominant motorcycle clubs that are one percenters that we're
60 dealing with um the Outlaws are one percenters, your predominantly black um I mean predominantly
61 white motorcycle club in this area of Alabama. Your Pistolaros are as well, the Banditos are as well. All
62 three of those are one percenters and they are in Dothan, Enterprise, Level Plains, um maybe across the
63 line. But those are um and they are the predominantly white motorcycle clubs that are one percenters.
64 The African American motorcycle clubs predominantly um are Outcast, Wheels of Soul, Sin City
65 Disciples, Immortal Soulz their around this area predominantly black motorcycle um one percenters.
66 Now the thing about it is all of them know about each other, and all of them know who the president or
67 the dominant president or the officer is from each one of them is. They can pick up the phone and call
68 each one of them with no problem. They may not ride together, but they recognize each other and
69 allow each other to pretty much uh pretty much to exist. Now the um..the uh MC aspect of it is, since
70 we're an outlaw state which means before you can put a vest on with the designations or colors and
71 stuff on back, you have to have the permission of an OMC to be an MC. Have to have permission, we
72 have it ok, just follow. I know a lot of questions, just follow we have it to. We started out as a riding club
73 now just for definition purposes before people start skipping between OMC, MC and RC. The MC is
74 attached directly to the OMC we work hand in hand with them. We don't subscribe to the hardcore...if
75 there is a criminal element in them or there is a rough side of them we don't subscribe to that, but we
76 co-exist with them and they know it. They have said that, "...listen, we know that MC's are...are ladies
77 and gentlemen that wants to co-exist and have a good time like we are. And we know that they aren't
78 hardcore like us, so back off of the MC's, the OMC's we deal with each other on our level. Let them do
79 their thing and try to stay hands off." That's what we have around in this area Alabama, Georgia,
80 Florida, Tennessee right in this area. So now the MC's and when you see the vest it's on the back. The
81 MC is actually the...a big part of what identifies you from which club you are in. So the MC um is a
82 member....I want to tell you the techn...the..the proper way it's suppose to be and then I want to tell you
83 what we are seeing around in the area. The MC has a motorcycle, it's in a club, and they are...are

CITY OF DOTHAN/GRAY 001149
CONFIDENTIAL

84 approved...their blessed by the OMC to be wearing the MC on their back ok. Now below that you have
85 your RC. The MC's we go by a set of protocol. Whatever is set out within your club you're going by
86 protocol. But what you're doing is we're looking at what the OMC's have said how we are to organize.
87 Now let me give you an example. OMC have said that if you are an MC you gotta have a clubhouse
88 period. If you're an MC not suppose to be females wearing MC's on their back. If you're an MC you
89 cannot have a female as a president or a vice president, ok. These are just a few examples of that, but in
90 OMC's everything I just said, you won't see. In MC's you will see that because as I have said we're not
91 subscribing to the hardcore um way that the...the OMC's are going it and they are letting us have our
92 thing ok. They are letting us have our thing so there is...there is a disconnect as yall can see...there is a
93 disconnect, but we're allowed to do that because of...we're...of our MC status ok. Um now, below that
94 you have your social clubs. Your...your SC...your SC. Your SC is the social club that the MC um is
95 responsible for period ok. If the MC ceases to exist the SC automatically disappears. Automatically...an
96 SC cannot remain an SC an active SC unless they are directly under an MC period. Now that SC of they
97 want to continue to exist and the MC says that they can...they can fall under another MC. That's only if
98 the MC...that...allows them to do it. If the MC dissipates, they gotta have the approval of that MC even
99 though they dissipated go up under another one. If not, they're just over with ok. So...and the SC
100 operates independently, but supports the MC. MC's see they tend to go to their own events, they
101 have...you know conventions, they have anniversary's parties, and they tend to um...um go to their own
102 thing when the MC isn't having something. SC's have certain things that they have to abide by too.
103 Right now SC's cannot have any type of functions on Saturdays period. That's MC's day... can't have
104 it...cant do it ok. Um the SC's uh have their own president which runs their SC, and that president works
105 close with the MC, so everyone is on the same sheet of music ok. Now the um the RC is a riding club.
106 Not as well respected, really don't have protocol, they don't go by the strict MC protocol, but that their
107 there. So there...there is disconnect. There's really...I know that you've read the paperwork, but they're
108 the one's that's just...and Bama Boyz, we started out as an RC. Don't have to answer to nobody, don't
109 have to worry about all this BS, all of this protocol, you gotta do this this way, you can't have that that
110 way. Riding clubs are a group that comes together and they have their vests as well but it has to have RC
111 on it. Now what's the difference. The riding club in Alabama, the riding club is also allowed to be in
112 existence by the OMC. That's if they want...If they want to or not. Unintelligibly...if they want to have
113 anything to do with them or not. You won't see an OMC at an RC's event. You won't hardly see MC's at
114 an RC's event either cause they're just kinda like I say they're not ...beneath us in a way...you wanna take
115 it how you wanna take it I'm just trying to put it into the proper prospective. Um those things you won't
116 hardly see. Now as it relates to around here going back up to the MC. The MC's on your back
117 represents an organized club protocol. You have your OMC's you are following close behind and you are
118 following their directions and guidelines. And what we have around here is uh an association you will
119 also hear called a coalition ok. Every MC around here in our area is a part of our association. We have a
120 meeting every second... every other month, every second Sunday at 2' o clock every time. Give you an
121 example of how this OMC thing works, um in our coalition meetings the OMC said, "You know what,
122 anytime that there's no one represented by your club at our association meeting...cost your club a
123 hundred bucks. Just past this past Sunday. If a representative isn't at the meeting the second
124 time...three hundred bucks right out of your club right there. If they're not there a third time in a
125 calendar year...boom the whole club's colors come off for the rest of that year. Now the OMC can take

CITY OF DOTHAN/GRAY 001150
CONFIDENTIAL

126   the MC's colors at any time it was just done last month, at any time for something that is grossly against
127   what we know to be the proper protocol for handling things. Such as one starting a fight in another's
128   clubhouse ok. Just saying...(unintelligible). So um it can be pulled in and if there is no law about this
129   what's the consequences. After you get notification that you aren't suppose to wear those colors you
130   wear them and see. Okay you just see, because you know...(unintelligible) I'm the police. I got...Ive got
131   dawg gone access to as many..any guns and badges as I want to. Im not really...but the thing is that's
132   find and good here, but when I'm in Florida...or Tennessee or whatever you know...and they've got
133   chapters everywhere something's gonna happen bad ok. So the best thing for you to always do is to
134   show respect, because respect is gold. It's gold.

135   Prospect: You are telling me things that I've never... I've never

136   KG: I'm telling you things that a lot of people haven't heard.  And that's why we're doing this now...and
137   I'm saying this straight and...and... I'm saying it for a reason, because this MC thing is not just a past
138   time...somethin' that you just say, "um I don't have anything to do so I'll go. It is kind of like a way of
139   life, because with these...everybody in these organizations and wearing these colors that means
140   something.  You're representing your own...you were able to wear those colors...get those colors and
141   you're re...respected all the way around and I've said this once before but it doesn't matter if I've got
142   one leg...if I've got a vest on and I've got one leg...I've got just as much respect as every MC that see's
143   me tat's on my back than anybody else. I'm not judged. So the biker community is a whole lot of people
144   from even higher echelons in life that loves...um it's got a bad boy image, but you're not judged by
145   anybody. This is why everybody is so tight knit in a bike club you know.  Um, if you're looking for
146   structure...if you're looking for everything to be done right...I's dotted, T's crossed, you need to go
147   somewhere else cause this isn't it at all.  No part of this biker community...it's not it.  You can go just
148   have a good time and just...just it's embarrassing to people to stand around that doesn't know about
149   what's going on to us it's nothing.  We've walking into...go ahead.

150   Prospect: Yall are going to have to teach me these things

151   KG: That's what we're doing...

152   Prospect: I've just... this is just...

153   KG: That's what we're doing, I've got a lot more coming to you.

154   Prospect: Whooo

155   KG: So, when you go into...when you go into another biker's clubhouse, your facial expressions will get
156   you and the rest of your club beat down

157   LT: You dang right.

158   KG: Something you say about someone and you said it too loud and this member heard it will get you in
159   a whole lot of trouble.  That's why we say in our meetings our business stays our business.  We have a
160   lot of friends out here in the community and we don't have any enemies' period. That's just how we run

CITY OF DOTHAN/GRAY 001151
CONFIDENTIAL

161  our club. You know we keep the Lord first and we do the right thing, and we stay organized. And a lot
162  of clubs you'll see they just don't have that organization that we do and we're going to continue to have
163  that organization because that is what seems to be... of course first of all it's right, second of all when it's
164  organized yea you've got things just about as right as it can be, but when you are not organized you will
165  tell a rag-tag club in a heartbeat and yep they're talking about in your own set. And sometimes with
166  other clubs that can talk about it, but have to know that you can talk about that in that way.

167  Mama: Speaking of organizations we've sat in the parking lot ...everybody to get there so we can walk in
168  all at one time.

169  KG: Same time yep

170  LT: That's how organized we try to do our stuff.

171  KG: And when things...thanks for saying that because that gives me a segway to go into something.
172  Whenever we go to lets say to another bike club's event, suppose to be...start at 8 o'clock. We're
173  suppose to start at 8 o'clock.  Starts about 8:30...8:40 whatever...yea it just starts at (unintelligible).
174  Remember of what I just said about there's you know nothing you know that is absolute as everything
175  isn't to a fine science. Now we try to start at...at the right time. We try to put out there that we will be
176  on time. Most of the other clubs...some...some of yall has been to some of the things that we've had will
177  see some clubs that have a lot of people there you've got some of the clubs that are represented by 4 or
178  5 people.  That's fixing to change drastically because the coalition is seeing that and there's been
179  discussions that some clubs are getting um a little bit of animosity because when they come to another's
180  clubs event they make come with 15, 20 people and their all paying to get into the club your supporting
181  that club, have a good time, you know ah co-mingle, drink, party you know.  When you go to their club
182  you have 4 members, really not spending and they use that money for fund raisers, you know just
183  different things.  So there the ones you see most members theres usually because there is a fine
184  associated with it if you don't attend. Well guess what? We finally got to that point. We've got to do
185  the same thing because there is only a hand few of us that goes to everything... on a consistent basis.
186  Um so fines are normal in clubs which is you know if you just think about it guys everyone of you are
187  business owners Ok you have employees, if your employees don't come to transact your business your
188  going to lose money, your business is not ah going to prosper, um but there's incentives you know. Of
189  course a paycheck is an incentive. Next thing is if you lose that job or that employee you know you tell
190  that employee be here at 8 o'clock because we have customers coming, yada, yada, yada  you need to
191  get to work  you make it hard for other employees not being there. That's the same thing going on right
192  now ok. Well, hey this club doesn't pay any dividends, its not feeding my family why should I be there.
193  We shouldn't have to ask so...what the consequences are.  Guess what when we don't go to their events
194  they've already said that they're going to start pulling 50 bucks from the club for not having a minimum
195  a minimum of 5 members, 50 bucks. And I am sure that is going to go up I...I...I see the writing on the
196  wall. I've already heard 100 bucks and 10, so

197  DT: that's going to come from our club

198  KG: Ours period.

CITY OF DOTHAN/GRAY 001152
CONFIDENTIAL

199  DT: If its going to come from our club

200  PROSPECT: Across the United States what is that

201  KG: Good question, that applies to sanctioned events, we are in our coalition and let me, I've been
202  skipping over this word, intentionally because I hadn't explained it and I didn't want to use it a lot. The
203  set, the set is where we thrive, where we do our business, where we go associate with (unintelligible).
204  The set for us is pretty much from um Eufaula, all the way down to the FL line, all the way over to the
205  GA line and all the way down yea Fl on that side too. OK

206  PROSPECT: well it's no big deal then

207  KG: This is the set.

208  PROSPECT: Tennessee and everywhere else

209  KG: If you hear someone saying yea we don't do that on the set that just means that is not the way we
210  do it amongst the clubs that are all in the same association. Birmingham has a different set but when
211  that say that's the way we do it on the set, know that's the way we do in our community OK um
212  rags....rags rags are your colors, rags are your vest, fully tatted up those are your rags. That's also called
213  your cut ok just a couple of terminologies, you know you are going to be hearing so when we have...we
214  have to find um that we are going to attend each other's anniversary and there charity. Every club on
215  our set will have an anniversary party and they will have a charity a main charity that they are doing.
216  These are going to be mandatory. Our anniversary...our own anniversary party will be mandatory. Fines
217  will be associated with those things that (unintelligible) that you have to attend because the club is
218  going to lose out anyway, you know but if the members don't participate that is the only incentive to get
219  them to participate. We've been in existence since 08 and haven't had to do this and this is about a
220  thought having to do this for this long. Our club almost collapsed as a result of what, nobody in our club
221  coming to support each other to be on the set to support other clubs. Sat down thought about different
222  ways to make it come back and we did a good job of that. As a matter of fact we bounced all the way
223  back and went all the way to the top. And that is where we remain right now. The respect on the set
224  we got. The image on the set we've got. Bama Boyz MC has one issue on the set that I can think of
225  period out of anything that there could be. We haven't' had the numbers to go associate with
226  other...they don't tell you to your face but you start hearing it that they're hinting around for a little
227  while now, that's changing. That's that's just changing that is unacceptable. Prospects be where you
228  need to be...do what you need to do. This same thing but a lot more is going to be preached Sunday at
229  the house as well and we got some new exciting stuff to bring before yall as well. But generally, just
230  general giving a little bit of ah understanding about protocol for prospects you know yall've read the
231  paper work and everything. That is the general consensus. Are we in an organization that is so
232  dangerous that we need to fear for our life? I'm an executive in the police department, I protect the
233  governor of Alabama, I'm the...the head of the homeland security bomb squad um for region 2. Would I
234  be in this thing with that much to lose if it was absolutely that critical? And I won't to do... and I won't
235  have y'all to do a thing that I won't do first and know that. You know there was some danger that was
236  associate with us being on the set to that degree (unintelligible) I'm not gonna...I'm not gonna...I'm not

CITY OF DOTHAN/GRAY 001153
CONFIDENTIAL

237  gonna um put anybody's family, your own life in jeopardy but I will guarantee you one thing, if anybody
238  mess with any of y'all I am going to get in the first lick. I hope not to hit you I'm trying to reach by you
239  but I'm gonna be the first one there because what they did was they disgraced us because I know that
240  we don't go around acting like bad asses but were going to end the conflict if somebody else begins it
241  and its with us. If some other club starts some stuff on their own they're on their own because they
242  have to live by the same thing and they are on their set we don't know what kind of beef they may have
243  on their set you know. Um there may be one exception to that that I know of right now and that's LOD
244  down in Panama City, those guys are like this with us and Bama Girls...like this with us. I mean more so
245  than you know and you will see when we go down to there...when they have something coming up too
246  and we'll be down there.

247  ?: Halloween Party?

248  KG: Huh

249  ?: Halloween Party?

250  KG: Those guys are out of sight I mean out of this world. And I've given this example once before and
251  I'll give it again just in case for you new guys, um LOD, we've been going down to Panama City it's called
252  Legions Of Doom, we go down there and they have a club house, well when they first met us they
253  welcomed us the first time they saw us, we were...we stopped to get some fuel in Panama City and they
254  were there filling up and Bama Boyz we pulled up first time they ever seen us and everything. They
255  asked questions, man, showed much love, never seen us in our...the first day in our lives. They've got a
256  clubhouse, invited us down and we went down there, man they treated me better than my own family.
257  I mean they really did all out, man we fall in behind them a whole bunch of cats... you fall in and it's like
258  you run Panama City cause there are so many of you riding, so deep you...you'll just feel it. When you
259  get there you'll know exactly what I am talking about.

260  ?: And you won't have to pay for nothing right?

261  KG: Yep. They....you won't, they will damn near tackle you if you try to pay for something you know.
262  They let us come into their clubhouse and they let us write our name on the foyer going in on the wall
263  going in. With a bike club and you're writing something on the walls in their clubhouse... that is
264  huge....that is huge. Well a lot of the clubs name's are written on there as you are going in I mean all
265  over...all over as you're going through the door in their clubhouse. We went back, was it last year?
266  About last year all of the names were painted over but one and it was ours – all of them. Everybody on
267  the set here...everybody's were painted over but Bama Boyz and it is still sitting there today. We've
268  gone to a couple of their members funeral I mean it's just you can feel what I am talking about and that I
269  can't even say anything better than that so you can take that to the bank. So so what your role is as a
270  prospect is like the sheet says listen, do what you are told to do, you're assigned your sponsor, this is the
271  person you communicate with. Um he is responsible for letting you know where you are going, where
272  you doing, what you're doing and all that kind of stuff. This Sunday at my house I will have a um sheet
273  with everybody's name, phone number and if you gave me your address it will be on that too so
274  everybody will have each other's information. Flip it over it's going to have all of the events....it's going

CITY OF DOTHAN/GRAY 001154
CONFIDENTIAL

275  to have for the rest of the year...for the rest of the year.  The dates and everything and where they are
276  at and stuff like that.  There's a few that we wanna big showing...a big showing too.  This Sunday  um no
277  this Saturday the T-Roy Ryders in Troy, their annual,  which they are on the set that's the one that all of
278  us needs to be at, is only going to be a charity ride and a picnic that day they're not going to have a party
279  that night and usually with a bike clubs annual which is just their anniversary party, the way it is set up is
280  there is a meeting and greet generally on Friday and it usually starts late.  All that is...is for outside
281  members or outside clubs to come you get checked into whatever the host hotel is or whatever they
282  have on their flyer or their card.  Do you have one? Of anyone (unintelligible) you have, you usually get a
283  flyer or you will get it on face book or whatever and that is just set up for....for a meeting place for all
284  clubs to come to sit down, chew the fat, have a drink whatever and just settle in from a long ride if you
285  are riding on two's OK.  The next day they usually have some type of charity event.  It can be a ride, or
286  something, a donation yada...yada...yada generally 10 – 15 dollars....And that is the charity ride... OK
287  they may have...they may have this our (unintelligible).  Pass those three around and just look at them.
288  Um that money is to support their charity they can't get it any other way, they are trying to get it from
289  the community, in the bike club community and that's going to a chariot that they have, you know we
290  don't worry about its their's.  We don't' show up with a number of people guess what Bama Boyz here's
291  a check, sorry we weren't there...boom.  That's respect and that's protocol now.  We don't show up,
292  there are going to be holding a check period.  Because guess what we're going to ask them to come to
293  ours and pay (unintelligible).  We're swapping money this is all we are doing.  So um they have that
294  event and then there is usually a picnic you know maybe part of the overall price.  You eat, nice picnic,
295  good comradry and  there is usually some type of competition or games, or whatever, tug of war, slow
296  roll, tire toss, yada, yada, yada and you are representing your club trying to bring the trophy home.
297  Good fun.  After that there's usually some type of party that night ok, um they have a DJ it's either a
298  B.Y.O.B. or it's a cash bar or whatever, but you go in...your club goes in...you wearing the club colors
299  having a good time and party, dance have a good time and socialize and have a great time.  Um and then
300  they usually award trophies that you um have won and they usually have trophies for the most
301  represented, the longest, the farthest travelled on two's, um the most represented co-ed, if there is a
302  co-ed.  They may have the most represented social club, um and you know or we started something new
303  here...and we called it the "crunkest crew."  I think it's what?  Um a few years ago and we wanted
304  everybody at our party that night to just have a ball.  I mean we were just looking for a real good
305  frenzy...a real good time.  Everybody just having a good time so each club would get an opportunity to
306  just yell, scream, and show what they had.  Put a song on whatever they wanted to do, and that's who
307  won the big trophy.  When we did it somebody stole it, stole the idea so we're usually the leaders in
308  the...the newest thing to come out and then once it's out another club has stolen it.  And so, we keep on
309  moving, keep on doing thing different and let me tell yall what...Sunday when you see what we're gonna
310  get, what we're gonna wear, Saturday night is gonna be off the chart.  And...and prior um anniversary
311  parties we've you know went in nice shirt, tie, vest you know looking all clean dapper and everything
312  and having a good time and everything.  We're gonna spin it around a little bit.  There always wanting
313  you know one club went in with tuxedos on um not tux's... yea tux's...tux's you know, that's what they
314  did.  But it was a party it was a party

315  PROSPECT: and they went on the bikes?

CITY OF DOTHAN/GRAY 001155
CONFIDENTIAL

316  KG: No their bikes were there earlier. If you're the host club, your bike is usually inside the event as
317  part of the décor, or lined up. You know what I am saying. If we're...just like our anniversary party on
318  august 30 & 31, we'll be there hours before anybody else gets there setting up, and doing things and
319  getting ready to receive all these people. That's generally how it is...cause you too busy to be out on
320  bikes because you have to receive all these people from out of town and make sure you're taking up
321  money for tickets and you've got your food (unintelligible) I mean its a lot and you will see, so and you'll
322  will have a lot of work as prospects (unintelligible) because your gonna be dealing with the setting up,
323  getting the bikes in place and yada, yada, yada, yada, yada, yada, yada, yada, cooking the food for our
324  picnic and stuff like that you know making that everything is done um done you know taking care of.
325  Cleaning up afterwards and stuff like that. So generally that was just the overview um that I wanted to
326  share tonight about um um how you need to look at things from the prospects point of view. The dues
327  um are 20.00 a month from the time you are voted in. I remember that's one of the question that you
328  had from the time you are voted in um the um

329  DT: Tell them about the riding you know behind (unintelligible)

330  KG: In our ... in our tell you what, why don't you tell them, let me sit down . (unintelligible)

331  DT: Are you ready? When we're riding in our formation all prospects will ride behind all of the patched
332  members. We have it a formation where the founder/president, then the vp, then the secretary and on
333  down the line and generally like (unintelligible) Prospects are generally riding behind all patched
334  members and the same thing when we are going in and out of things...walking in front of them and all
335  around, but except when you swing off and you got the prospect goes wherever the president goes
336  (unintelligible). Prospect when we start riding with everybody to ah learn the way we ride the way we
337  ride....no wheelies and all of that, and on one wheel. (unintelligible). When riding in formation we
338  pretty much stay legit and ah sometimes in different situations (unintelligible)

339  KG: Um the ah only other thing uh about riding is that ah when ever um (unintelligible) you run into me,
340  I want my bike fixed the next day. (Laughter). So um that is just being respectful to each other. Keeping
341  your bike up and making sure that things are properly ah set on the bike. The bolts and stuff are torked
342  down, and there is no wires showing from your tires that look like it can almost pop at any moment now
343  or... or anything like that...just saying pay attention to where you are going so you don't have to slide
344  when the light turns red....up through everybody in the middle (laughter). Nothing like that, those are
345  just examples, you know I am just saying (unintelligible)

346  ?: Just riding on one of them (laughter). Switch from one to the other

347  KG: Now we did ask....ask yall to write down some questions that you may wanted to ask afterwards
348  um, did I answer some of the questions you had written down or is there separate questions?
349  Mama...you are in there looking

350  LT: Yea I'm looking. My question (unintelligible).

CITY OF DOTHAN/GRAY 001156
CONFIDENTIAL

351   KG:  The question is if you are asked to remove your patch or your colors, who does it (unintelligible)
352        and it depends on which context it isn't, if somebody from any other club tells you to remove your vest
353        (unintelligible) if it doesn't' come down...if it doesn't come down from the leadership from your
354        organization, you don't take anything off.  Pistolaro comes up to you, where all stopped, we're in the
355        store, you come out of the store and they try to jack you up (unintelligible).  Whatever you had not
356        better not come out of that vest (unintelligible) units as a club and we're going to different territories
357        always have somebody with you and if you are walking out and need to walk behind something or
358        whatever, take somebody with you all of the time.  What up Mama, I still see you looking at your paper.

359   LT:  Of course my vest is different than everybody's else's.  I am still a supporter patch right?  Depending
360        on wherever we go, whoever we meet, whatever we run up on, its still supporter.  I just want to know
361        about that?  So I'll know what I need to do (unintelligible).

362   DT:  One of the things with the supporter patch, you don't want to wear....don't want to wear that vest
363        flage-ing around like a fashion show.  Ah technically when you are wearing that supporter vest you are
364        with the club only.  You don't wear it to nothing else.  If you ain't doing a event or something with that
365        club you don't fly it.

366   KG:  And if someone tries to ask you questions about the club and they assume that you are a MC
367        because they didn't see that you don't have MC on the back, say "I'm just a supporter, I am not a MC":

368   ?  (Unintelligible)

369   KG:  (unintelligible) if you see someone with MC on their back.  And property of like I told them earlier
370        ...property of only deals with OMC's.   They are the only ones that can wear property of.  I heard Done
371        Deal supposedly got the OK from Big O to wear the property of but you won't' see anyone else um like
372        that unless (unintelligible)

373   DT:  ...I got that paper you wanted email, email, phone number....

374   PROSEPECT:  I don't even have a computer.

375   DT:  What did you want it on a email, phone number... what all you wanted Keith?

376   KG:  I've got his application still, I have his phone number and all his stuff.

377   ?:  I put my email but I didn't put my phone number.  Do I need to...

378   KG:  Um this is what I am looking at, um we've tried this one before and it didn't work, we're gonna try
379        to do it again um.  Whenever we transact a meeting and the topics everything, the minutes of the
380        meeting... you weren't there, its up to every member to contact the secretary to check the minutes so
381        you can be brought up to speed hasn't' been done, usually not (unintelligible) but we are finding there's
382        a lot of disconnect, a lot of the same questions being asked because somebody chose not to attend 3
383        meetings, you know or what have you. And um I'm just going to go ahead and tell you (unintelligible) Im
384        not gonna go back and review where you should have been at in the first place. Well if we have your

CITY OF DOTHAN/GRAY 001157
CONFIDENTIAL

385  email addresses, I'm going to have the secretary just...when they transcribe the minutes.  Just blast
386  them to everyone that has as email address and keep up (unintelligible).  You know business meetings
387  supporters do not have to attend at all.  You will be at the functions, the cookouts and things and you
388  are really in the support role.  You don't have a lot to worry about you shouldn't have to as a supporter.
389  You know the MC and all of the hype that goes along with it and the OMC stuff is for them specifically
390  because you're not going to be recognized as an MC you are going to be recognized as a supporter you
391  won't be questioned or jacked up by anybody or anything like that.  So um the business of the MC is
392  gonna be just that.  What I'm going to do and I think it's going to be Trigger but I am going to wait until
393  the meeting on Sunday.  I'm going to assign one person to all of the supporters as well and ah I'm going
394  to um...going to um assign one of them...one of the supporters so um you'll have one point of contact.
395  They will tell you what you need to know and um and get the information out.  Really the business of
396  the club for the supporters don't really have to worry about it.  Now we are gonna have dues for the
397  supporters and I think right now, and Sunday  I am going to have to verify it but I think it's 10.00 a
398  month.  But I will have to verify it with members.  But as far as you know um having to answer any
399  questions about the way the MC does things...supporters are here to have fun.

400  ?: How many supporters do we have?

401  KG: Huh

402  ? How many supporters do we have?

403  KG: 3

404  DT: We're gonna put a limitation on that too.

405  KG: Right now, you, Shawn, um, devil pup. Isnt you next door neighbor we talked about him?

406  ?: Well does an MC have to be...

407  KG: Oh this is a big thing that I've wanted to say all night.  Don't take offense, if an MC and you're as a
408  prospect...don't take offense with them treating you as dirt.  Treating you like dirt talking to you like dirt
409  because that is what you are to them.  Don't reach out to shake an MC's hand or you're gonna find out
410  real quick.  They're laughing because they have already they've already been there.

411  ?: And if they say go get me a beer, just go get.

412  KG: Yep (laughter)

413  DT:  Thang about it is....thang about it is you know once you been in that spot and then you get all of
414  your colors, and well get your rags then you don't have to deal with that anymore.  Then you wind up
415  with ten prospects under you going through the same things that yall going through.

416  KG:  You won't be confused if you walk up to the wrong person, say something they going to turn
417  around and walk away from  your or not say anything or they gonna tell you what they think of  you and
418  then turn around and walk off.

CITY OF DOTHAN/GRAY 001158
CONFIDENTIAL

419    PROSPECT: (unintelligible) Do what I can do.

420    KG:  (unintelligible) When you walk up to the bar...walk up to the bar if you order something or
421    whatever...whatever they tell you to go get me a beer. Don't turn around and walk away from the bar.

422    ?: (unintelligible)

423    KG:  When you walk up to a bar in an MC setting don't turn your back to the bar and walk away from the
424    bar.  Get your drink, take a couple of steps back and then you turn and walk away.  Second thing and
425    this is going to go ford MC's, SC's and everybody.  Remember when I said there is not a law etched in the
426    stone about how we do things, sometimes there's mess or drama brought up in your club. If a ...it's
427    usually around your officers if they've just had enough of mess and you are around and they tell a
428    member to get the fuck on, get the fuck out of my goddamn club, just get out because you have just
429    became an enemy because at times they could be so much drama with people and you've told
430    somebody something over and over again. Keep in mind the MC world is really the MC world because
431    were cordial and everything but brah let me tell you what,  when it comes down to it, there is no
432    understanding when it gets to be something that is just outrageous there is just no understanding.    I
433    felt like this one, twice. OK because it's the way I just said it is because I just said it and I'm the
434    president.  I just said it.  Shut the hell up.  Get out of my damn face. I just said it that's all you need to
435    know.  The deal is there's sometimes things are so simple, let me give you a good example.  Let me give
436    you a lifetime example.  You're gonna remember this one as soon as I open my mouth.  I had a prospect
437    in Florida at LOD's club house that went around somewhere, smoked some weed and came back and
438    was in our same setting and everybody smelled it.  And he was wearing this right here....some soft
439    colors. These are called soft colors got your name on it and everything its not um your tatt these are
440    called soft colors. He was wearing soft colors I like to have stroked out.  I like to have....I did OK.  I just
441    about had him my and Ilke this walking to the back of the back yard.  Because hey, I just felt like
442    knocking him out right there because that didn't disrespect him, that disrespected everyone of us that
443    were there period.  You know what im saying? Don't care what you do on your own, don't care if you
444    are embarrassed I don't give a damn, you know but when it has to do with our cut our repretation and
445    everything like that I just about stripped him naked of that....as a matter of fact I took his soft colors
446    right there.

447    PROSPECT: Everybody known what he did.

448    KG:  Yea not only did I take them, he followed me around like a puppy asking for them back the entire
449    time.  Which is embarrassing as hell around everybody there and every other club that knew it was
450    going on.  To get the F on is what I meant right there and nobody there gonna intercede...

451    DT: That's right

452    KG: Aint nobody's going to intercede. I don't care who is there guaranteed.  You know so that's what I'm
453    saying...you know. Something that's to the "emth" degree whatever you just totally just disrespect, and
454    you'll see it in other clubs.  You'll...you may see it in other clubs, you may see it in other clubhouses. I'm
455    telling you all of this stuff to give you the truth of it 'cause I'm not gonna paint it up. Um but now what

CITY OF DOTHAN/GRAY 001159
CONFIDENTIAL

456   we enjoy and what we see is a good time, riding bikes, doing what we do, having parties, having events
457   um out here for charities. We're going to do something for...for...for Christmas, for some kids for
458   Christmas because I wanted to do it last year, but wer'e just gonna have a good time and we're gonna
459   continue to build what we have. And keep the respect and hopefully keep the respect of everybody um
460   around here.

461   Prospect: Well I was trying to keep yall's respect (laughter).

462   KG: Well we're all one family, we're gonna remain that way and their's nothing any different. If you
463   gotta a problem with him, you gotta problem with me. If you gotta a problem with him, you gotta
464   problem with me.   OK we can settle our own and you know what from time to time there gonna be
465   two...some differences between two....two members or whatever. I'm going to say "you know what, yall
466   need to take care of that shit right there. Yall need to check that, go ahead and do what you need to do,
467   you know get it taken care of and let's get how we need to be because it may be valid business that yall
468   need to handle for real.   You know I don't have any problem with that but I'm...I've got too much stuff
469   on my plate being the founder, and executive board member and right now with things going on right
470   there, there's 3 critical things going on at one time. Actually there is 4 including the anniversary party
471   going on at one time and I have to decide for all of it, get with my executive board on some of it, get
472   with the regular executive board on it, get with the SC's on some of it and get with the chairman of the
473   anniversary party to make sure things are being done and all that shit is going through my mind
474   everyday. I haven't been able to sleep at night for about the last 2 (unintelligible).

475   ?: (unintelligible)

476   KG: ...because all I can do, I can go to bed and I can sleep for four hours and guess what wakes me up.
477   Man what am I going to do for Anniston. I got to get that in place. My mind is so active I can't go back
478   to sleep. (Unintelligible). Like I said it happens every time this every year. But it's just a whole lot of
479   stuff at one time. You know, so that is just the passion I have for this club, every member in it, what we
480   stand for (unintelligible). It's just me (unintelligible) can't help it it's just me. You know so...

481   DT: I was ex-president of the club. I was president of Bama Boyz back in 2011 and I call everybody, send
482   out text to everybody and guys...I send you a text, call you or whatever, call back, text back, or say
483   something. Very important or otherwisd we wouldn't be sending it to you and you know (unintelligible)

484   KG: (unintelligible) over and over gain

485   DT: As you keep coming to the meeting and once again as I say these patches that you get
486   (unintelligible) give them to you, you have to earn them. And (unintelligible) same thing with your bikes.
487   If you got a hand to lend, lend it. Good thing guys, and I hope some of yall hand in there with it get a
488   chance....

489   KG: (unintelligible) finding out that as we build the foundation as yall go, um yall have the right to know
490   things as prospects coming up (unintelligible) yall will be talking like that in about another...same thing.
491   You are going to see things as we go. That's part of prospecting as you go to all these different events

492  you're gonna see everything that I just told you. But the thing about it is you're going to have seen it an
493  noticed it and identified it even you will know exactly what he's talking about.

494  ?: (unintelligible) (All present taking a break).

495  KG: Let me end the first reference with the last reference. The first thing I referenced, yall wer'nt here,
496  the first thing I referenced were the soldiers fight and kill for each other wathching each soldier,
497  honoring each other by protecting their back . They had...that person kill somebody that was fixing to
498  kill me and I did the same thing, so as they have done things and gotten into the OMC world for that
499  same purpose are we to respect that and do the same thing for each other to that level. And you know
500  that we are one accord.

501  ?: Did we vote?

502  DT: Yea think we did. They were supposed to be here tonight, but uh.

503  KG: (unintelligible)...so Bo ah..that was loyalty, but Harley went to about 4 or 5 different places with us
504  before he even... Last thing, I really mean last thing. There's one exception to what I said about your
505  um, 6 month um prospect.  Founding Executive Board can (unintelligible).  Last night we were up til
506  12:30.

507  DT:Boy....Last Night

508  KG: Hashed out a whole lot of things we needed to get hashed out. This club, our Anniston Chapter,
509  social club.  Whole nine yards and we still did not get (unintelligible). Okay, my mouth is closed.

510  DT: Are we going to meet with him in a little bit...

CITY OF DOTHAN/GRAY 001161
CONFIDENTIAL



## THE CITY OF DOTHAN
## DOTHAN, ALABAMA

### January 2, 2007

### STATEMENT OF EEO POLICY

It is the policy of The City of Dothan to insure affirmative action in providing equal employment opportunities without regard to race, creed, religion, color, sex, age, handicapped persons or national origin, except where age or sex is a bona fide occupational qualification.

In the implementation of this policy The City of Dothan will, among other appropriate actions:

I.  Recruit, test, select, hire, train and promote personnel in all job classifications without regard to race, creed, religion, color, sex, age, handicapped persons or national origin, except where age or sex is a bona fide occupational qualification.

II. Base employment decisions as to further insure the principle of equal employment opportunity to all.

III. Base employment decisions as to further insure the principle of equal employment opportunity by imposing only valid and job-oriented requirements for promotional opportunities.

IV. It is the announced policy that all personnel actions, such as compensation, fringe benefits, or promotional training, social or recreational programs will be administered without regard to race, color, sex, religion, age, creed, handicapped persons or national origin.

Periodic analysis, at least every twelve months, will be made by the Personnel Department to insure that personnel actions are in accord with the aims and stated objective of this program.

_Pat Thomas_
**PAT THOMAS, Mayor**
*Board of City Commissioners*

KAI W. DAVIS
*Personnel Director*

DAVID THORNTON
*EEO Officer*

cc:   Department Bulletin Boards
      Mayor and Commissioners
      City Manager
      Department Heads
      Personnel Board

DEFENDANT'S EXHIBIT
6
I. Gray
PENGAD 800-831-6989



**THE CITY OF DOTHAN**
**DOTHAN, ALABAMA**

October 05, 2009

### STATEMENT OF EEO POLICY

It is the policy of The City of Dothan to insure affirmative action in providing equal employment opportunities without regard to race, creed, religion, color, sex, age, handicapped persons or national origin, except where age or sex is a bona fide occupational qualification.

In the implementation of this policy The City of Dothan will, among other appropriate actions:

I.  Recruit, test, select, hire, train and promote personnel in all job classifications without regard to race, creed, religion, color, sex, age, handicapped persons or national origin, except where age or sex is a bona fide occupational qualification.

II.  Base employment decisions as to further insure the principle of equal employment opportunity to all.

III.  Base employment decisions as to further insure the principle of equal employment opportunity by imposing only valid and job-oriented requirements for promotional opportunities.

IV.  It is the announced policy that all personnel actions, such as compensation, fringe benefits, or promotional training, social or recreational programs will be administered without regard to race, color, sex, religion, age, creed, handicapped persons or national origin.

Periodic analysis, at least every twelve months, will be made by the Personnel Department to insure that personnel actions are in accord with the aims and stated objective of this program.

MIKE SCHMITZ, Mayor
*Board of City Commissioners*

DELVICK J. MCKAY
*Personnel Director*

GARY J. GRIFFIN
*EEO Officer*

cc:   Department Bulletin Boards
      Mayor and Commissioners
      City Manager
      Department Heads
      ✓ Personnel Board



**THE CITY OF DOTHAN**
**DOTHAN, ALABAMA**

May 8, 2012

**STATEMENT OF EEO POLICY**

It is the policy of The City of Dothan to insure affirmative action in providing equal employment opportunities without regard to race, creed, religion, color, sex, age, handicapped persons or national origin, except where age or sex is a bona fide occupational qualification.

In the implementation of this policy The City of Dothan will, among other appropriate actions:

I.    Recruit, test, select, hire, train and promote personnel in all job classifications without regard to race, creed, religion, color, sex, age, handicapped persons or national origin, except where age or sex is a bona fide occupational qualification.

II.   Base employment decisions as to further insure the principle of equal employment opportunity to all.

III.  Base employment decisions as to further insure the principle of equal employment opportunity by imposing only valid and job-oriented requirements for promotional opportunities.

IV.   It is the announced policy that all personnel actions, such as compensation, fringe benefits, or promotional training, social or recreational programs will be administered without regard to race, color, sex, religion, age, creed, handicapped persons or national origin.

Periodic analysis, at least every twelve months, will be made by the Personnel Department to insure that personnel actions are in accord with the aims and stated objective of this program.

MIKE SCHMITZ, Mayor
*Board of City Commissioners*

DERVICK J. MCKAY
*Personnel Director*

cc:   Department Bulletin Boards
      Mayor and Commissioners
      City Manager
      Department Heads
      Personnel Board

DARRYL MATHEWS
*EEO Officer*

CITY OF DOTHAN/GRAY 001510

# DOTHAN POLICE DEPARTMENT
## GENERAL ORDER 200-42H
### *Mobile Data Terminals and Electronic Messaging*





**Purpose:** The purpose of this policy is to provide employees with guidance on the proper use of personal computers and related electronic messaging systems utilized within this agency for purposes of disseminating electronic mail, reports, directives or other matter utilizing the services of the Internet or City of Dothan owned networks for electronic message transmission and recording devices.

**Policy:** The availability and use of the personal computer within the work environment is providing many opportunities for enhancement of productivity and effectiveness. However, these new technologies also entail the opportunity for rapid transfer and broad distribution of sensitive information that can have damaging effects on the City of Dothan, this agency and employees utilizing these electronic systems. Therefore, it is the policy of this agency that all officers and/or other DPD employees abide by the guidelines set forth herein when using personal computers including laptop or other portable devices, services of external databases (such as ALACOP), information exchange networks, as well as voice, mobile data terminals and related messaging devices. Access to electronic hardware and software systems is provided for official business and is not intended for personal use.

**Definitions: (EMD) Electronic Messaging Device:** For the purposes of this policy, EMD's entail personal computers (any type), electronic mail systems and devices, voice mail systems and devices, paging systems, electronic bulletin boards, Internet services, Mobile Data Terminals, and facsimile transmissions.

**System Administrator:** For the purposes of this policy, System Administrators are City employees assigned or designated the responsibility for maintenance, setup, repair and management of personal computers as well as electronic

DEFENDANT'S
EXHIBIT
7
I. Gray
PENGAD 800-631-6989

CITY OF DOTHAN/GRAY 000718
CONFIDENTIAL

messaging through individual computers and computer networks within this agency or the City of Dothan or as specifically designated by the City of Dothan Information Technology Director.

**(MDB) Mobile Data Browser:** A secure, web-based software program installed on EMD's.

**(MDT) Mobile Data Terminal:** A mobile computer hardware configuration issued to Dothan Police Department employees for use in assigned duties typically installed in City of Dothan owned marked and unmarked vehicles.

**(ACJIC):** The Alabama Criminal Justice Information Center.

**(NCIC):** The National Crime Information Center.

**(ISIS):** Integrated State Interface Service.

**(TAC):** Terminal Agency Coordinator.

**(AISO):** Agency Information Security Officer.

**(SUNGARD/HTE):** The sole source provider of the City of Dothan Computer Aided Dispatch system.

**(IT):** Information Technology Department of the City of Dothan.

**(SOG):** City of Dothan Standard Operating Guidelines.


# I. ADMINISTRATIVE

## A. GENERAL

1. Transmission of electronic messages and information on communications media provided for employees of this agency are to be treated with the same degree of propriety and professionalism as official written correspondence.

2. This agency encourages authorized and trained personnel with access to EMD's to utilize these devices whenever appropriate. However, use of any of these devices is a privilege that is subject to revocation based on breaches of this or other applicable City of Dothan Standard Operating Guidelines or policy. (See also SOG 11, 12 and 13) and (ACJIS/ALACOP/LETS Rules and Regulations)

3. EMD's and their contents are the property of the City of Dothan and intended for use in conducting official business unless specifically authorized by the Chief of Police and the System Administrator, or as provided in item 9 of this section.

CITY OF DOTHAN/GRAY 000719
CONFIDENTIAL

4. Employees are advised that they do not maintain any right to privacy in EMD/MDT equipment or its contents. This agency and the City of Dothan reserves the right to access any information contained upon or within any agency or City of Dothan owned EMD and further may require employees to provide passwords to files that have been encrypted or password protected.

5. Personally owned EMD's that are authorized and used by on-duty employees to access or otherwise utilize City of Dothan owned networks, hardware, software, voice or messaging devices or systems must be approved by the System Administrator. If used on duty, the personally owned device is subject to the same restrictions and guidelines outlined in this general order and the City of Dothan Standard Operating Guidelines. (See also SOG 11, 12, and 13)

6. Discretionary viewing, downloading and/or transmitting materials (other than that required for police business) that involve the use of obscene language, images, jokes, sexually explicit materials or messages that are offensive or disparage any person, group or classification of individuals is prohibited.

7. Confidential, proprietary or sensitive information may be disseminated only to individuals with a need and a right to know and when there is sufficient assurance that appropriate security of such information will be maintained. Such information includes but is not limited to the following;

   a. Personal information such as salary, performance reviews, complaints, grievances, misconduct, disciplinary information, medical records or related information.

   b. Criminal history and/or driver's history information or confidential informant information.

   c. Internal or external intelligence and/or tactical operations information or files.

8. No employee shall access any file or database unless they have a need and a right to such information. Additionally, personal identification and access codes shall not be revealed to any unauthorized source or person.

9. EMD devices are designed and intended for conducting the business of this agency and the City of Dothan and are restricted to that purpose with the following exceptions:

   a. Infrequent personal use of these devices may be permissible if limited in scope and frequency, if in conformance with other requirements and restrictions of this policy, if not connected with a profit making business enterprise or the promotion of any product, service or cause that is not

CITY OF DOTHAN/GRAY 000720
CONFIDENTIAL

approved by the Chief of Police and the System Administrator. (See also City of Dothan SOG 11, 12, and 13)

b. Personnel may make off-duty personal use of City-owned computers for professional and career development purposes in keeping with other restrictions of this policy and with prior notification and approval by the Chief of Police and the System Administrator. (See also City of Dothan SOG 11, 12, and 13)

10. Importing/Downloading Information and Software:

a. Employees shall not install any file, software, or other materials without System Administrator approval and/or installation instructions.

b. Employees shall not download any file, software or other materials from the Internet or other external sources without System Administrator approval.

c. In no case shall external materials or applications be downloaded directly to any shared network drive without the approval of a System Administrator.

d. Employees in certain positions or assigned to specific duties or responsibilities specifically designated by the Chief of Police, who may find themselves in need of specific software to accomplish, shall follow the established City of Dothan software request procedures to obtain the items necessary. The System Administrator shall approve all installations of software to City of Dothan owned EMD's.

e. Employees shall observe the copyright and licensing restrictions of all software applications and shall not copy software from internal or external sources unless legally authorized.

  i. Any software for which proof of licensing (original disks, original manuals and/or license) cannot be provided may be removed by authorized agency personnel or the System Administrator.

  ii. Privately-owned software shall not be loaded or otherwise installed on City of Dothan owned EMD's. (See also Item 4)

f. Employees shall observe copyright restrictions of any documents sent through, attached to or stored on any electronic mail.

g. Any hardware enhancements or additions to City of Dothan-owned equipment must be authorized by a System Administrator. The System Administrator is responsible for maintaining a current list of approved

CITY OF DOTHAN/GRAY 000721
CONFIDENTIAL

software and hardware enhancements or additions as well as determining the proper installation procedures upon approval.

h. Employees shall not permit unauthorized persons to use City of Dothan-owned EMD's/MDT's or electronic mail system.

## B. TRAINING

1. All sworn and non-sworn personnel assigned a police department vehicle equipped with an in-car computer system shall be trained on the proper operation of such equipment, prior to use. Training shall occur during recruit school for all new employees hired after the approval date of this policy, prior to operation of in-car computer equipment, and training shall include:

   a. Proper operation of the field reporting system, E-Cite/E-Crash and all additional components of the software package as provided by manufacture instructions.

   b. Operator certification of ACJIC/NCIC software to include privacy and security, use of the ACJIC/NCIC Terminal, proper use of ACJIC and NCIC procedure books and other related material.

   c. Proper operation of the dispatch-to-car and car-to-car data transmission as provided by manufacture instructions.

   d. All training, retraining, and re-certification shall be monitored, coordinated and administered through the Dothan Police Department Training Unit or the City of Dothan IT Department, or both. The DPD Training Unit, IT, Terminal Agency Coordinator or State Certified designee will assure training is in accordance with ACJIC/NCIC guidelines.

## II. EMD/MDT OPERATION:

A. After completion of training requirements, personnel assigned in-car computer equipment shall be issued a network log-on password for access to the system and a user-name and password for the ACJIC/NCIC network.

B. Operators shall log on to the computer and ACJIC/NCIC network at the beginning of their tour of duty for access to the field reporting system and ACJIC/NCIC. Operators shall insure they are logged off of the system at the end of their shift.

C. Officers accessing LETS/ALACOP data for access to the ACJIC/NCIC Network is limited to the following, (ISIS is required for out of state queries):

| | |
|---|---|
| 1. Driver's License Inquiry | **4. Hazardous Material Inquiry** |
| 2. Vehicle Registration Inquiry | **5. Wanted Person Inquiry** |
| **3. General Inquiry** | |

G.O. 200-42H                    Page 5 of 7

CITY OF DOTHAN/GRAY 000722
CONFIDENTIAL

D. <u>Any HIT/WANTED returns must be confirmed through the Communications Center prior to any enforcement action being taken.</u> All other access to include the entry and removal of computer input such as hit confirmations, stolen articles, wanted persons, transmission of teletypes, and other similar inputs require advanced certification and are not authorized by in-car computer operators. Such occurrences will be conducted via communications personnel.

E. Officers may be "data" dispatched low-priority calls for service from the 911 Center via the Mobile Data Terminal. All high-priority calls as determined by the police department will be dispatched by use of the police radio. For safety reasons, operation of in-car computers, other than acknowledging the initial response to a "data" dispatch shall not be authorized by the vehicle operator while the vehicle is in motion.

F. Operators shall not allow the operation of in-car computers to distract them from their duties, to include the obligation of safety to others or from distracting the operator's attention with person(s) or vehicles during stops or on calls for service.

G. Operators shall utilize in-car computer systems for *Official Use Only.* Reminder: <u>*City employees have no expectation of privacy on any City owned computers.*</u> Any computer files entered, utilized, or stored on the mobile data terminals constitute an official police record and may be available under an open records request; therefore, such information entered and maintained must comply with departmental policy and state/federal law.

H. Patrol officers shall complete all field reports in the field utilizing the EMD/MDT system, following the guidelines outlined above. Officers are not permitted to complete the field report at the police department without the approval of an on-duty supervisor. Once the report is completed by the reporting officer, the report is forwarded to a supervisor pending approval. Once the report is reviewed and approved by a supervisor, the report shall be saved to the designated location provided within the City of Dothan mainframe computer by the approving supervisor. Upon notification, the officer may delete the report from the EMD/MDT.

I.

Once the report is sent to the mainframe computer, the information shall be maintained in accordance with City policy and/or Alabama State Law. Reports may be stored on the in-car computer systems until all revisions are accomplished by the reporting officer and supervisory personnel. All report information is stored on the mainframe computer and may be viewed under a "read-only" format by officers from workstations and in-car computer systems.

G.O. 200-42H                    Page 6 of 7

CITY OF DOTHAN/GRAY 000723
CONFIDENTIAL

## III. SYSTEM SECURITY

A. All information transmitted and received on in-car computer systems utilizes 128 bit encryption to prevent unauthorized personnel from intercepting and viewing the data.

B. When operating the in-car computer system, operators shall make every effort to ensure information displayed on the view screen is not viewable by unauthorized personnel. If necessary, operators may be required to place the view screen in the down position (screen lying down over keyboard), when away from the vehicle or in crowded areas where there is a possibility of non-police personnel viewing the screen.

C. When in-car computer operators are not on duty or away from their assigned department vehicle, the vehicle shall be secured to prevent unauthorized access or theft of the computer. Additionally, vehicle operators shall comply with *General Order 200-40H, "Vehicle Operations"*.

D. After completion of tour of duty, in-car computer operators will log-off the ACJIC/NCIC and computer network and power-down the system.

E. Operators shall immediately report any actual or suspected unauthorized access or password compromise, hardware/software malfunction, or damage of in-car computer systems and forward a completed Form PD 12 detailing the problem to their immediate supervisor for appropriate routing.

F. Periodically, supervisors will review car-to-car "data" transmissions to ensure proper and professional communications are being utilized.

G. ACJIC/NCIC audits shall be conducted in accordance to ACJIC/Federal regulations and all findings shall be reported to the Chief of Police or designee.

## IV. SPECIAL NOTICE AND REMINDER

Upon determination that any member or employee of this department is/has violated the provisions of this directive shall be subject to disciplinary action, including suspension or termination of employment. In addition, state or federal criminal charges may be filed against the employee.

CITY OF DOTHAN/GRAY 000724
CONFIDENTIAL

# DOTHAN POLICE DEPARTMENT
## GENERAL ORDER 100-41
### *Code of Ethics*




**Purpose:**   To establish that all sworn personnel of the Dothan Police Department shall abide by the Law Enforcement Code of Ethics as published by the Dothan Police Department.

**Policy:**    It is the policy of the Dothan Police Department that all personnel will receive ethics training regarding this general order and any other training related to ethics at least biennially.

## I.   GENERAL

A. **Primary Responsibility as a Police Officer:** A police officer acts as an official representative of government who is required and trusted to work within the law. The officer's powers and duties are conferred by statute. The fundamental duties of a police officer include serving the community; safeguarding lives and property; protecting the innocent; keeping the peace; and ensuring the rights of all to liberty, equality, and justice.

B. **Performance of the Duties of a Police Officer:** A police officer shall perform all duties impartially; without favor or affection or ill will; and without regard to status, sex, race, religion, political belief, or aspiration. All citizens will be treated equally with courtesy, consideration, and dignity.

Officers will never allow personal feelings, animosity, or friendships to influence official conduct. Laws will be enforced appropriately and courteously and, in carrying out their responsibilities, officers will strive to obtain maximum cooperation from the public. They will conduct themselves in appearance and deportment in such a manner as to inspire confidence and respect for the position of public trust they hold.

G.O. 100-41                 Page 1 of 3

**DEFENDANT'S EXHIBIT**
8
I. Gray

CITY OF DOTHAN/GRAY 000715
CONFIDENTIAL

C. **Discretion:** A police officer will responsibly use the discretion vested in the position and exercise it within the law. The principle of reasonableness will guide the officer's determinations and the officer will consider all surrounding circumstances in determining whether any legal action shall be taken.

Consistent and wise use of discretion, based on professional policing competence, will do much to preserve good relationships and retain the confidence of the public. There can be difficulty in choosing between conflicting courses of action. It is important to remember that a timely word of advice which may be correct in appropriate circumstances, rather than arrest, can be a more effective means of achieving a desired end.

D. **Use of Force:** A police officer will never employ unnecessary force or violence, and will use only such force in the discharge of duty as is reasonable in all circumstances. While the use of force is occasionally unavoidable, every police officer will refrain from applying the unnecessary infliction of pain or suffering and will never engage in cruel, degrading, or inhuman treatment of any person.

E. **Confidentiality:** Whatever a police officer sees, hears, or learns of, which is of a confidential nature, will be kept secret unless the performance of duty or legal provision requires otherwise.

Members of the public have a right to security and privacy, and information obtained about them must not be improperly divulged.

F. **Integrity:** A police officer will not engage in acts of corruption or bribery, nor will an officer condone such acts by other police officers.

The public demands that the integrity of police officers be above reproach. Police officers must, therefore, avoid any conduct that might compromise integrity and thus undercut the public confidence in a law enforcement agency. Officers will refuse to accept any gifts, presents, subscription, favors, gratuities, or promises that could be interpreted as seeking to cause the officer to refrain from performing official responsibilities honestly and within the law. Police officers must not receive private or special advantage from their official duty. Respect from the public cannot be bought; it can only be earned and cultivated.

G. **Cooperation with Other Officers and Agencies:** Police officers will cooperate with all legally authorized agencies and their representatives in the pursuit of justice. An officer's own agency may be one among many organizations that provide law enforcement services to a jurisdiction. It is imperative that police officers assist colleagues fully and completely with respect and consideration at all times.

H. **Personal/Professional Capabilities:** Police officers will be responsible for their own standard of professional performance and will take every reasonable opportunity to enhance and improve their level of knowledge and competence.

Through study and experience, a police officer can acquire the high level of knowledge and competence essential for the efficient and effective performance of duty. The

G.O. 100-41                          Page 2 of 3

CITY OF DOTHAN/GRAY 000716
CONFIDENTIAL

acquisition of knowledge is a never-ending process of personal and professional development that should be pursued constantly.

I.    **Private Life:** Police officers will behave in a manner that does not bring discredit to their agencies or themselves.

A police officer's character and conduct, while off duty, must always be exemplary, thus maintaining a position of respect in the community in which he or she lives and serves. The officer's personal behavior must be beyond reproach.

## II.    LAW ENFORCEMENT CODE OF ETHICS – IACP/DPD

*AS A LAW ENFORCEMENT OFFICER, my fundamental duty is to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation and the peaceful against violence or disorder; and to respect the constitutional rights of all to liberty, equality and justice.*

*I WILL keep my private life unsullied as an example to all and will behave in a manner that does not bring discredit to me or to my agency. I will maintain courageous calm in the face of danger, scorn or ridicule; develop self-restraint; and be constantly mindful of the welfare of others. Honest in thought and deed both in my personal and official life, I will be exemplary in obeying the law and the regulations of my department. Whatever I see or hear of a confidential nature or that is confided to me in my official capacity will be kept ever secret unless revelation is necessary in the performance of my duty.*

*I WILL never act officiously or permit personal feelings, prejudices, political beliefs, aspirations, animosities or friendships to influence my decisions. With no compromise for crime and with relentless prosecution of criminals, I will enforce the law courteously and appropriately without fear or favor, malice or ill will, never employing unnecessary force or violence and never accepting gratuities.*

*I RECOGNIZE the badge of my office as a symbol of public faith, and I accept it as a public trust to be held so long as I am true to the ethics of police service. I will never engage in acts of corruption or bribery, nor will I condone such acts by other police officers. I will cooperate with all legally authorized agencies and their representatives in the pursuit of justice.*

*I KNOW that I alone am responsible for my own standard of professional performance and will take every reasonable opportunity to enhance and improve my level of knowledge and competence. I will constantly strive to achieve these objectives and ideals, dedicating myself before God to my chosen profession . . . law enforcement.*

CITY OF DOTHAN/GRAY 000717
CONFIDENTIAL

# DOTHAN POLICE DEPARTMENT
## GENERAL ORDER 100-50
### *Code of Conduct*




**Purpose**: The purpose of this Order is to establish uniform rules of conduct and responsibilities required by employees and prohibited acts on the part of employees of the Dothan Police Department.

**Policy**:  This Order is to serve as a guideline and is not intended to encompass all policies, rules and/or regulations that may be stated elsewhere in the policy manual. It shall be departmental policy to provide employees with written rules and regulations that define what is expected of them with respect to their conduct and responsibilities. Employees are required to follow all directives and adhere to all rules and regulations imposed upon them by policy and by law.

## I. GENERAL

A. Officers and employees shall not commit any acts or omit any acts, which constitute a violation of any of the rules, regulations, directives, policies or orders of the Police Department or of the City of Dothan; whether cited in this Order, the City of Dothan Personnel Rules Manual, or elsewhere. A copy of the policy manual is maintained on the City of Dothan Intranet network and available for all employees.

B. Disciplinary actions that may be taken as a result of a violation of a policy, procedure, rule, or regulation of the Dothan Police Department are established in the *City of Dothan Personnel Rules and Regulations Employee Handbook*.

C. Each incident will be based on the merits of that case.

## II. CONDUCT UNBECOMING AN OFFICER

A. An officer must at all times, on duty and off duty, conduct himself in a manner which does not bring discredit to himself, the Department, the City of Dothan, or law enforcement in general.

DEFENDANT'S
EXHIBIT
9
I. Gray

CITY OF DOTHAN/GRAY 000725
CONFIDENTIAL

B. Conduct unbecoming an officer/employee shall include any conduct or personal association that brings the Department into disrepute; which adversely affects the morale or efficiency of the Department; has an adverse effect on the employee's job performance; or which has a tendency to destroy public respect for employees and confidence in the Department.

C. To sustain conduct unbecoming an officer, it is not necessary that the alleged conduct be criminal in nature. The basis for disciplinary action will be a preponderance of the evidence.

D. Typical examples of conduct unbecoming officers include, but are not limited to:

   1. Repeated or flagrant violations of laws or ordinances;

   2. Unreasonably vulgar or profane language in public;

   3. Attempting to improperly affect the disposition of a traffic ticket or other case;

   4. Assault on a fellow officer/employee;

   5. Misappropriation of City/Departmental Property;

   6. Intentionally damaging or attempting to damage City property;

   7. Intentional interference with legal processes or cases;

   8. Removal and/or release of Departmental records without authorization;

   9. Possession/use of illegal drugs/substances;

   10. Horseplay with firearms or other City Property;

   11. Failure to cooperate with an internal investigation;

   12. Public criticism of a Supervisor or Peer.

D. Any employee, to include a civilian employee, who observes or has knowledge of any other employee who is engaged in criminal activity, or any other activity which may be included in Section II. B. shall be obligated to report such activity in writing to the Office of the Chief of Police. This report should be submitted no later than eight hours after the beginning of the next working day following the observation or receipt of knowledge of the aforementioned activity.

## III. INSUBORDINATION

A. An officer may be disciplined or discharged for his speech or conduct before a superior officer if it is bitter, discourteous, abusive, profane, or threatening. Failing to carry out a lawful order when directed is insubordination.

B. Compliance with Lawful Orders: The Department is organized with a clearly defined chain of command. Obedience to a superior's lawful command is essential for the safe and prompt performance of law enforcement operations. Lawful orders, commands, rules, regulations, or directives shall be followed by all employees.

## IV. DERELICTION OF DUTY

A. An employee carries with him the responsibility for the safety of the community and

G.O. 100-50                          Page 2 of 15

CITY OF DOTHAN/GRAY 000726
CONFIDENTIAL

his fellow employees. He discharges that responsibility by the faithful and diligent performance of his/her assigned duties. Members of the Department shall promptly and punctually perform these duties.

B. Dereliction/Neglect of duty shall include but not be limited to:

1. Failure to arrest or notify a superior officer/ employee of a serious violation of the law which the officer/employee has knowledge and jurisdiction over;

2. Failure to report for duty, to include failure to report in answer to a judicial subpoena;

3. Failure to respond to a call for service;

4. Cowardice in the performance of duty, defined as shrinking away from danger or responsibility without justifiable cause;

5. Failure to respond when called via radio;

6. Sleeping on duty;

7. Repeatedly leaving assigned area without notifying communications or a superior officer/employee;

8. Allowing escape of a prisoner through negligence or willful conduct or actions.

## V. ABUSE OF POSITION

A. Employees shall not use their official position, official identification cards or badges to solicit any of the following:

1. Personal or financial gain, other than as outlined in this section;

2. Obtaining privileges not otherwise available to them except in the performance of duty;

3. Avoiding the consequences of illegal acts.

B. Failure to report any knowledge of an activity that could be construed as bribery is incompatible with the efficient operation of the Department and is grounds for dismissal.

C. Soliciting Gifts, Gratuities, Fees, Rewards, Loans, Etc.: Officers and employees shall not solicit any gift, gratuity, fee, reward, or loan, where there is a direct or indirect connection between the solicitation and their employment by or membership in the Police Department, unless approved by the Chief of Police.

D. Accepting Discounted Meals: Officers of the Dothan Police Department are authorized to accept discounted meals at restaurants which provide them; provided that the following guidelines are met:

1. The officer is "on-duty" at the time the discounted meal is offered and accepted;

2. The discounted meal is available to all on-duty police officers of this department;

3. The officer does not solicit the discount for the meal. This provides that even though it may be the establishment's policy to provide the discount, NO

CITY OF DOTHAN/GRAY 000727
CONFIDENTIAL

officer shall remind establishment's employees that such discount is expected;

4. The officer utilizes the discount no more than once a tour of duty at any given establishment;

5. The discount is only to be accepted by departmental personnel. The discount is not to be accepted for any family members, friends, or acquaintances, which may be present with officer; the giving of the discount or the receipt thereof does not provide any expectation to receive any kind of benefit for the restaurant, the department or officer.

6. The Chief of Police may at his discretion, alter, change or restrict this policy to correct abusive action that may result due to violations of the policy.

E. Accepting Gifts, Gratuities, Fees, Loans, Etc.: Officers and employees shall not accept, either directly or indirectly, any gift, gratuity, fee, loan, or any other thing of value arising from or offered because of police employment or any activity connected with such employment unless approved by the Chief of Police. Officers and employees shall not accept any gift, gratuity, fee, loan, or anything of value, when the acceptance might tend to influence, directly or indirectly, the actions of the member or employee or any other member or employee in any manner of police business, or which might tend to cast an adverse reflection on the Police Department or any officer or employee of the Department.

F. Acceptance of Rewards, Gifts and Gratuities by Departmental Bureaus or Sections: Any individual Departmental Bureau and/or Section may accept a gift or gratuity, provided that it is offered as a measure of appreciation and thoughtfulness, and that every member of that Bureau and/or section that was involved in the act being rewarded is included and provided for. Further, before acceptance of any gift or gratuity with a value exceeding $50.00, expressed authorization from the Chief of Police in the form of a written memorandum shall be obtained and filed with the Bureau Commander. (Unsolicited food items are excluded from this section.)

G. Disposition of Unauthorized Gifts, Gratuities, Etc.: Any unauthorized gift, gratuity, loan, fee, reward, or other thing falling into any of the above categories which come into the possession of any officer or employee will be forwarded to the Chief of Police together with a written report explaining the surrounding circumstances. The Chief of Police will make the final determination concerning the disposition of the item in question.

H. Endorsements and Referrals: Officers shall not recommend or suggest in any manner, while in the course of their official duties, the employment or procurement of a particular product, professional service, or commercial service (such as an attorney, ambulance service, towing service, bondsman, mortician, etc.). In the case of ambulance or towing service, when such service is necessary and the person needing the service is unable or unwilling to procure it or requests assistance, officers shall proceed in accordance with established departmental procedures.

## VI. INCOMPETENCY, INEFFICIENCY, AND/OR UNSATISFACTORY PERFORMANCE

A. Officers shall maintain sufficient competency to properly perform their duties and assume the responsibilities of their positions.

G.O. 100-50                    Page 4 of 15

CITY OF DOTHAN/GRAY 000728
CONFIDENTIAL

B. Officers shall perform their duties in a manner, which will maintain the highest standards of efficiency in carrying out the functions and objectives of the Department.

C. Unsatisfactory performance may be demonstrated by a lack of knowledge of the application of laws required to be enforced; an unwillingness or inability to perform assigned tasks; the failure to conform to work standards established for the officer's rank, grade, or position; the failure to take appropriate action on the occasion of a crime, disorder, or other condition deserving police attention; or absence without leave. This list is not, nor is it intended to be, all-inclusive.

D. Repeated poor evaluations and/or a written record of repeated infractions of rules regulations, directives, policies, or orders of the Department may be considered prima facie evidence of unsatisfactory performance.

## VII. CONFORMANCE TO LAWS

A. Officers are expected to obey all laws of the United States and of any State and local jurisdiction in which the officers are present.

B. Officers/employees will notify their Bureau Commander as soon as possible when they are arrested for any violation of law or become aware that they are considered a suspect in any crime.

C. The Chief of Police, Major and the respective Bureau Commander will consider the nature and frequency of the offense when determining if departmental action is necessary.

## VIII. REPORTING FOR DUTY

A. Officers shall report for duty at the time and place required by assignment or orders and shall be physically and mentally fit to perform their duties.

B. They shall be properly equipped and cognizant of information required for the proper performance of duty so that they may immediately assume their duties.

C. Judicial subpoenas shall constitute an order to report for duty under this section.

D. Calls dispatched by the Communications Center shall be considered orders of the Chief of Police and shall be carried out immediately. Any deviations shall require the affected personnel to submit a PD 12 explaining the reason for the deviation.

## IX. PUBLIC STATEMENTS AND APPEARANCES

A. Employees shall not publicly criticize or ridicule the Department, its policies, or other officers/employees by speech, writing, or other expression, where such speech, writing, or other expression is defamatory, obscene, or unlawful, and undermines the effectiveness of the Department, interferes with the maintenance of discipline, is detrimental to the welfare and good name of the Department, or is made with reckless disregard for the truth. Employees shall not address public gatherings, appear on radio or television, prepare any articles for publication, act as correspondents to a newspaper, internet blog or newspaper, or a periodical, release, or divulge, investigative information or any other matters of the Department as a department representative without proper authority from the Office of the Chief of Police.

## X. USE/MISUSE OF ALCOHOL AND/OR DRUGS

G.O. 100-50                          Page 5 of 15

CITY OF DOTHAN/GRAY 000729
CONFIDENTIAL

A. Use of Alcohol on Duty: Officers shall not consume intoxicating beverages while on-duty, or off-duty in uniform, except in the performance of duty and then only under specific and proper orders of a superior officer or when circumstances dictate. Officers shall not be under the influence of alcohol when reporting for duty. Officers shall not purchase alcohol when on-duty or in uniform or operating a departmental vehicle, even for consumption at a later time.

B. Possession and Use of Drugs: Employees shall not possess or use for personal consumption any controlled substances, narcotics, or hallucinogens except prescribed for treatment by a physician or dentist. When taking prescribed controlled substances or nonprescription medication likely to cause drowsiness, or other impairment, employees shall notify their superior officer.

C. Intoxication Verification: When reasonable grounds exist to believe an on-duty employee may be intoxicated (two supervisors must concur), that employee may be ordered to submit to chemical test(s) of his blood, breath, or urine to determine the presence of any alcohol or drug content, and the extent thereof. Employee Health Clinic form number 100 must be completed. Failure to obey an order to submit to chemical test(s) may result in charges of insubordination.

D. Use of Alcohol Off-Duty: Employees shall refrain from consuming intoxicating beverages to the extent that it results in impairment, intoxication, or obnoxious or offensive behavior which discredits them or the Department, or renders that employee unfit to report for their next regular tour of duty.

E. An arrest for and/or a pattern of intoxication are grounds for dismissal.

## XI. CARE AND MAINTENANCE OF EQUIPMENT

A. All equipment issued to employees of this Department is and remains the property of the Dothan Police Department.

B. Certain items issued by the Department are considered disposable, and need not be returned upon termination of employment (for example; shoes). However, these items must be present or accounted for during the course of employment.

C. It shall be the responsibility of each and every employee of this Department to properly care for and practice proper preventive maintenance for equipment issued for their use, and/or equipment of a general nature, which employees may come into contact with.

D. An employee who comes into contact with any piece of equipment, which is defective, soiled, broken, requires servicing, or is otherwise inoperable, shall immediately report such finding to his/her supervisor.

E. Under normal conditions, employees shall utilize Departmental equipment only for its intended use, in accordance with established Departmental procedures, and shall not unnecessarily abuse, damage, or lose Departmental equipment/property. All Departmental equipment shall be maintained in proper order at all times.

## XII. MISUSE OF FIREARMS

A. Officers shall not use or handle weapons in a careless or imprudent manner.

B. Typical examples of misuse of firearms include but are not limited to:

CITY OF DOTHAN/GRAY 000730
CONFIDENTIAL

1. Pointing any firearm at a fellow officer;

2. Firing any type of unauthorized ammunition that damages the weapon;

3. Negligent shooting of another;

4. Drawing a weapon in public except for inspection by a superior or for official duty reasons;

5. Carrying a loaded shotgun/rifle in the Police Department building.

6. Violation of safety rules and regulations while on the firing range.

## XIII. FAILURE TO PAY DEBTS

Employees are expected to meet their civil monetary liabilities. In addition, employees are not to establish any financial relationships that present a conflict of interest, or compromise the image of the Department.

## XIV. MISTREATMENT OF PRISONERS AND CITIZENS

An officer lawfully acting within the scope of his authority does not deprive persons of their civil liberties. However, when an officer exceeds his authority by unreasonable or unnecessary use of force or by negligent conduct which results in a deprivation of an arrestee or citizen's civil liberties, he violates the sanctity of the law which he is sworn to uphold and is subject to disciplinary and/or civil action and/or criminal prosecution.

## XV. INTERVENTION AND INTERFERENCE

A. Employees shall not interfere with or hinder the legal and legitimate official actions of other officers or by any other government agency unless ordered to intervene by a superior officer or the intervening officer believes beyond a reasonable doubt that a manifest injustice would result from failure to take immediate action.

B. Officers shall notify their immediate supervisor, as soon as reasonably possible, when the officer initiates any investigation or official action, which is not part of their regular duties. Officers may, however, take immediate appropriate action as necessary.

C. Officers/employees shall treat the official business of the Department as confidential. Information regarding official business shall be disseminated only to those for whom it is intended, in accordance with established, written departmental procedures.

D. Officers may remove or copy official records of reports from a police installation only in accordance with established, written departmental procedures.

E. Officers shall not divulge the identity of persons giving confidential information except as authorized by proper authority.

## XVI. SEXUAL AND RACIAL HARASSMENT

A. The Equal Employment Opportunity Commission (EEOC) has issued guidelines setting forth the Commission's interpretation regarding sexual and racial harassment as a violation of Title VII of the Civil Rights Act of 1964. These guidelines are consistent with our policy that conduct by employees which creates an intimidating, hostile, or offensive working environment in regards to sexual or racial matters will not be tolerated; and those violating this policy may be subject to disciplinary action up to and including discharge. Any employee who feels that he or she has been subjected to

CITY OF DOTHAN/GRAY 000731
CONFIDENTIAL

sexual or racial harassment is urged to contact his supervisor, Office of the Chief of Police, the City of Dothan EEO Officer, the Assistant Personnel Director, Personnel Analyst or the Personnel Director.

B. A supervisor of the Dothan Police Department who receives notification either in writing or verbally of the sexual or racial harassment of an employee, shall immediately document such notification in a signed memorandum to the Chief of Police providing the following information at a minimum:

   1. Name of person subjected to the harassment;

   2. Name of the person(s) conducting the harassment;

   3. Time, date, and location of the harassment;

   4. Brief description of incident;

   5. Indication as to whether this is an isolated incident or a recurring pattern, if known;

   6. Any other detail significant to the incident.

C. The memorandum will be hand carried by the employee documenting the notification of harassment to the Office of the Chief of Police. The Personnel Director and City of Dothan EEO Officer shall be notified immediately.

D. The Chief, upon receipt of the documented notification, will evaluate and determine if a criminal offense or misconduct involving Police Department personnel has occurred.   If an investigation is necessary the Office of the Chief of Police will conduct the investigation utilizing any of the following methods.

   1. Appointment of an internal investigator, Major or a Bureau Commander who will report their findings directly to the Chief;

   2. Request an outside agency to investigate the allegation and report their findings directly to the Chief;

   3. Investigate the incident himself.

E. Investigative findings and reports will be handled in accordance with policy established in the City of Dothan Employee Handbook.

F. Employees who are the victims of sexual or racial harassment are encouraged to take the matter directly to **their supervisor**, the Office of the Chief of Police, EEO Officer, the Assistant Personnel Director or Personnel Analyst.

## XVII. TELEPHONE AND TELEPHONE USAGE

A. Officers of this department are required to have a telephone contact number at all times and to supply the Department with the telephone number. Officers shall notify the Chief's Office in writing of any change of the telephone number or the address of their residence by completing a City of Dothan Employee Information Change Form PF186A within three days of such change.

B. Officers on paid leave status from the police department shall be responsible for returning telephone calls, pages, and/or messages from supervisory personnel of the police department as soon as possible.

C. Employees of this Department shall not use Department telephones for long distance

CITY OF DOTHAN/GRAY 000732
CONFIDENTIAL

calls except on departmental business or authorized by a supervisor. Telephone calls will be kept to a minimum and of a minimum duration.

D. Officers may, at their discretion, choose to possess a cellular telephone while on duty. However, personal calls must be limited while on duty. Officers may choose to use their cellular phone for departmental business at their expense. Officers shall exercise special care when using a cellular phone while operating a department vehicle and comply with any and all laws associated with the use of personal communications devices. The Chief of Police may revoke this privilege at any time.

## XVIII. RESIDENCE

Officers shall physically reside where they can respond to the Police Department within thirty (30) minutes from the time notified. Newly hired officers are required to comply with the residence requirement in accordance with established City of Dothan policy. Failure by any officer to comply with this requirement may result in termination.

## XIX. REQUESTS FOR ASSISTANCE

When any person requests assistance; to make a report; to be contacted by an officer, or lodge a complaint, either by telephone or in person, all pertinent information will be obtained in an official and courteous manner and will be properly acted upon consistent with established departmental procedures.

## XX. DEPARTMENTAL REPORTS

A. Officers shall submit all necessary reports on time and in accordance with established departmental procedures.

B. Reports submitted by officers shall be truthful and complete, and no officer shall knowingly enter or cause to be entered any inaccurate, false, or improper information, except as required in the performance of duty.

## XXI. PROCESSING PROPERTY AND EVIDENCE

A. Property or evidence which has been discovered, gathered, or received in connection with departmental responsibilities will be processed in accordance with established departmental procedures.

B. Officers shall not convert to their own use, conceal, manufacture, falsify, destroy, remove, tamper with, or withhold any property or evidence in connection with an investigation or other police action, except in accordance with established departmental procedures.

## XXII. ABUSE OF PROCESS

Officers shall not make false accusations in a criminal or traffic enforcement action or case.

## XXIII. SLEEPING ON DUTY

Officers shall remain awake and alert while on duty [Exceptions must be made in advance of the specific assignment; i.e., stakeouts]. If unable to do so, they shall report such to their supervisor immediately.

CITY OF DOTHAN/GRAY 000733
CONFIDENTIAL

**XXIV. LEAVING DUTY POST**

Officers shall not leave their assigned duty posts during a tour of duty without first seeking and receiving the permission of their supervisor; receiving dispatched instructions or upon the lawful order of a superior officer.

**XXV. MEAL BREAKS**

Officers on 7K work schedule shall be permitted to suspend patrol or other assigned activity for a period of forty-five (45) minutes, subject to immediate recall at any time, generally for the purpose of having meals during their tour of duty. All other employees shall limit their meal break as approved by Department policy or their Supervisor. Such break shall be only at such time and place, within or contiguous to the City limits, as approved by their immediate supervisor.

**XXVI. GAMBLING**

Officers shall not engage or participate in any form of illegal gambling at any time, except in the performance of duty and while acting under proper and specific orders from a Superior Officer or the Chief of Police. Except as outlined above; officers shall not engage in any form of gambling while on duty or in uniform.

**XXVII. IDENTIFICATION**

A. Employees and volunteers shall be issued a Dothan Police Department Identification Card when employed with the Department. The identification card for sworn personnel shall include a minimum of the Dothan Police Department patch, officer rank and name, officer photograph, officer employee number, name of the Chief of Police and be clearly marked POLICE at the bottom of the card. Retired Officers and non-sworn department personnel shall be issued Identification cards that are clearly marked RETIRED. Identification cards for regular, non-sworn members of the Department shall include a minimum of the Dothan Police Department patch, persons name, photograph, employee number, name of the Chief of Police and be clearly marked, STAFF at the bottom of the card. Identification cards for volunteer, non-sworn members of the Department shall include a minimum of the Dothan Police Department patch, persons name, photograph, employee number, name of the Chief of Police and be clearly marked, AUXILIARY or CHAPLAIN at the bottom of the card. All issued identification cards shall remain the property of the Dothan Police Department.

B. Officers shall carry their badge and Dothan Police Department Identification Card all times while on duty, except when impractical or dangerous to their safety or to an investigation. Officers shall have their badge and police department identification card readily available at all times while within the jurisdiction, whether on or off duty when armed.

C. Officers shall furnish their name and employee identification card for viewing to any person requesting that information when they are on duty or while holding themselves out as having an official capacity, except when the withholding of such information is necessary for the performance of police duties or is authorized by proper authority.

D. Regular, Auxiliary and Chaplain Members shall wear their Dothan Police Department Identification Cards plainly visible when working and are encouraged to carry and

CITY OF DOTHAN/GRAY 000734
CONFIDENTIAL

have their identification cards readily available when off duty. Police Officers when in civilian attire and on duty shall wear their Dothan Police Department Identification cards plainly visible unless to do so would compromise their safety or interfere with an investigation.

## XXVIII. CITIZEN COMPLAINTS

Officers/Employees shall courteously direct any complaint made by a citizen against any employee of the Department to the Shift Supervisor or Professional Standards. Officers/Employees shall follow established departmental procedures for processing complaints *(G.O. 200-30, Professional Standards)*.

## XXIX. COURTESY

Officers/Employees shall be courteous to the public. Officers/Employees shall be tactful in the performance of their duties, control their tempers, exercise patience and discretion, and shall not engage in argumentative discussion. In the performance of duty, officers/employees shall not use coarse, violent, profane, or insolent language or gestures, and shall not express any prejudice concerning race, religion, politics, national origin, lifestyle, or similar personal characteristics.

## XXX. OPERATING VEHICLES

Officers shall operate official vehicles in a careful and prudent manner, and shall obey all laws and all departmental orders pertaining to such operation *(General Order 200-40H)*. Loss or suspension of any driving license shall be immediately reported to the Bureau Commander.

## XXXI. CARRYING FIREARMS

A. Officers shall carry firearms in accordance with law and established departmental procedures *(See G.O. 200-11H, Weapons Authorization)*.

B. Any officer carrying his department-issued firearm while off duty must have his badge and I.D. card readily available. Any officer carrying a personal weapon while off duty must have his badge and I.D. card readily available when within the jurisdiction. Anytime an officer is relying upon his position for the authority to carry a weapon, he must have his badge and I.D. card readily available.

## XXXII. TRUTHFULNESS

Upon the order of the Chief, the Chief's designee, or a superior officer, employees shall truthfully answer all questions specifically directed and related to the scope of employment and operations of the Department, which may be asked of them.

Any employee found to be intentionally untruthful may be subject to termination, aside from any additional improper conduct discovered.

## XXXIII. ARREST, SEARCH, AND SEIZURE

Officers shall not make any arrest, search or seizure when they know or should know that it is contrary to law or departmental procedure.

## XXXIV. TARDINESS INCIDENTS

G.O. 100-50                            Page 11 of 15

CITY OF DOTHAN/GRAY 000735
CONFIDENTIAL

A. Employees are expected to be at work at the assigned time. Any officer or employee arriving for duty later than the scheduled time shall be considered tardy.

B. If the officer's supervisor feels that the officer or employee has an excusable reason for being tardy, he may excuse the tardiness, with no further involvement.

C. If, in the opinion of the Supervising Officer, the reason for tardiness is not excusable, the supervisor may take action in accordance with the City of Dothan Personnel Rules and Regulations as outlined in the Employee Handbook.

## XXXV. USE OF TOBACCO

A. Officers, when on duty and/or in uniform, may use tobacco as long as:

1. They are not in formation;

2. They must not leave their assignment/post for the sole purpose of doing so;

3. They are not engaged in traffic direction and/or control;

4. They are not engaged in official police business with a citizen.

5. They are not within the Police Headquarters Building or other tobacco prohibited area.

## XXXVI. CONDUCT TOWARD SUPERIORS, SUBORDINATES, & ASSOCIATES

A. All employees shall treat superior officers, subordinates, and associates with respect. They shall be courteous and civil at all times in their relationships with one another. Employees are forbidden to injure or discredit other employees by capricious conduct or by abusive language. When on duty and particularly in the presence of other officers, employees, or the public, officers shall be referred to by rank.

B. Ranking officers shall, by example, demonstrate proper deportment and desirable attitudes in dealing with the public and their subordinates. Authority in the department shall be exercised to the end that justice and fairness are accomplished. Supervisors are forbidden to injure or discredit those under their authority by tyrannical or capricious conduct or by abusive language.

## XXXVII. LABOR ACTIVITIES

Officers and employees shall not engage in any strike. A strike action includes the concerted failure to report for duty, willful absence from one's position, taking unauthorized holidays, sickness unsubstantiated by a physician's statement, the stoppage of work, or the abstinence in whole or in part from the full, faithful and proper performance of the duties of employment for the purpose of inducing, influencing or coercing a change in conditions, compensation, rights, privileges, or obligations of employment.

## XXXVIII. MEMBERSHIP IN ORGANIZATIONS

A. Officers and employees of this Department shall not affiliate with, or become a member of, any organization if such affiliation or membership would in any way impede or prevent their effective duty performance, or bring the credibility and integrity of the Department into question.

B. Officers and employees shall not affiliate with or become a member of any

CITY OF DOTHAN/GRAY 000736
CONFIDENTIAL

organization whose purpose, objective or reputation is, or has been shown to be, directed toward unlawful or illegal activities; except with permission from the Chief of Police specifically for legitimate law enforcement purposes.

C. Determination of violations of this section shall reside with the Office of the Chief of Police.

## XXXIX. REPORTING ACCIDENTS

A. Accidents involving department vehicles, property, personnel, and/or equipment must be reported in accordance with procedures established by Departmental policy (*G.O. 400-51, Traffic Accident Investigation* and the City of Dothan Motor Vehicle Operations Policy located in the Employee Handbook).

B. The supervisor of the operator involved in a motor vehicle accident shall submit necessary reports setting forth his findings relative to the responsibility or negligence on the part of the operator to the Chief of Police as soon as practical.

C. If the Officer is off duty when the accident occurs, the on-duty supervisor shall submit the necessary reports to the Chief of Police.

## XL. RADIO INSTRUCTIONS

A. All messages transmitted over the police radio system or Mobile Data Terminals (MDT) by any officer or communications personnel shall be direct and concise and shall conform to all departmental radio procedures and the rules and regulations of the Federal Communications Commission.

B. Officers are required to answer all radio calls in accordance with *General Order 200-20, Communications*. No officer shall fail to obey or refuse to acknowledge any communication or lawful order or direction transmitted by the Communications Center, unless directed to do so by a superior officer or supervisor.

## XLI. CIVIL DISPUTES

All officers shall take a neutral position in any dispute of a civil nature, acting only to prevent or control any breach of the peace that may arise and only take actions necessary to that end and/or in accordance with established policies or law.

## XLII. AWARENESS OF ACTIVITIES

A. Upon returning to duty from any period of absence, all officers and employees shall inform themselves about all new orders, regulations, memoranda and all other important matters governing their assignments to include checking their department email account, PowerDMS account, bulletin board and monitors located in their division.

B. A sworn officer shall familiarize himself with all the laws, statutes, ordinances and regulations necessary for the proficient execution of his duty as a Law Enforcement Officer.

## XLIII. KNOWLEDGE OF THE COMMUNITY

Every officer shall familiarize himself with the geography of the community, including routes of public transportation, the location of streets, highways, bridges, schools, public

G.O. 100-50                         Page 13 of 15

CITY OF DOTHAN/GRAY 000737
CONFIDENTIAL

buildings and places, hospitals, courts, transportation offices and stations, prominent or important office buildings, large industrial plants or commercial establishments, and such other information as may be disseminated by his superior officers from time to time.

## XLIV. LEAVING THE CITY LIMITS

A. Whenever it is necessary in the performance of duty for an officer to leave the city limits of Dothan, he shall request permission for such leave from his supervisor. Upon receipt of approval, the officer shall inform the Communications Center of his intentions prior to leaving the City Limits and notify the Communications Center upon return.

B. If an emergency prevents following the procedure outlined in paragraph "A", the officer must notify supervisor as soon as possible.

## XLV. MUTUAL PROTECTION

All officers shall come to the <u>immediate</u> aid, assistance, or protection of fellow officers, who in the performance of their duties require such aid and assistance.

## XLVI. PERSONAL RELATIONSHIPS

All officers and employees of this Department shall be considerate and polite at all times to all department personnel and maintain good relations with their superiors and their fellow officers in a spirit of mutual concern for their common objectives.

## XLVII. PHYSICAL OR PSYCHOLOGICAL EXAMINATION

An officer/employee shall submit to a physical, medical or psychological examination, at the expense of the Department, when so directed by the Chief of Police.

## XLVIII. PHYSICAL FITNESS

The nature of the job of law enforcement requires a certain degree of physical fitness and mental alertness. Officers are expected to keep themselves as physically fit as their age permits. Supervisors should allow a reasonable amount of time during a shift for sworn personnel to physically train to remain fit for duty. Public Safety and response times should not be diminished. Employees are encouraged to utilize city resources for physical fitness as well as any wellness programs or medical check ups that may be offered. **See also General Order 100-37 Physcial Fitness.**

## XLIX. TRIALS AND HEARINGS

All officers concerned with cases before the courts, grand jury, or bond hearings shall be punctual in attendance. All officers shall have the cases in which they are concerned properly prepared and their evidence suitably arranged for presentation to the court, grand jury or hearing board. They shall afford the utmost respect toward the court, officers of hearing boards, and members of the jury. When presenting evidence or testimony they shall speak calmly and explicitly in a clear, distinct and audible tone so as to be easily understood. They shall give evidence with accuracy, confining themselves to the case before the court. When cross-examined by a defense attorney, they shall answer with the same civility and readiness as when giving testimony in support of the prosecution.

CITY OF DOTHAN/GRAY 000738
CONFIDENTIAL

## L. DEPARTMENTAL LETTERHEAD

Employees shall not use the Department Letterhead for private correspondence or for sending official correspondence out of the Department without the permission from the Office of the Chief of Police.

## LI. MAILING ADDRESS

Officers and employees shall not use the Department as a mailing address for private purposes, without permission of the Chief of Police. At no time will the Department be used as mailing address for the purpose of a motor vehicle license or registration.

## LII. USE OF PRIVATE VEHICLES

While an officer or employee is on regular Departmental duty he shall not drive a privately owned vehicle to accomplish Departmental business, unless authorized to do so by a Bureau or Division Commander, Major or the Chief of Police.

## LIII. FRATERNIZATION

Social relationships may develop between employees from time to time. Although such consensual relationships are a matter of personal choice and privacy between the individuals involved, any adverse effect that such relationships have on the Department will not be tolerated. This is necessary to avoid misunderstandings; actual or potential conflicts of interest, complaints of favoritism, possible claims of sexual harassment or hostile work environment, and the morale and dissension problems that can result from fraternization.

Dating, cohabitation or sexual intimacy between supervisors and personnel under their supervision, or between two supervisors in the same chain of command, are clearly inappropriate and are prohibited. Additionally, dating, cohabitation or sexual intimacy between personnel assigned to the same precinct and shift, or specialized unit are prohibited.

Should two employees wish to be involved in a relationship which would be prohibited by this code of conduct, they must request through the chain of command that one party be transferred to another chain of command before beginning or continuing a relationship. The responsibility and mandatory obligation to disclose the existence of the relationship will rest with the supervisor or senior employee involved.

Failure by an employee to report a relationship as required will constitute misconduct and may subject an employee to disciplinary action.

CITY OF DOTHAN/GRAY 000739
CONFIDENTIAL

# DOTHAN POLICE DEPARTMENT
## GENERAL ORDER 200-30
### *Professional Standards*

 

**Purpose:**  This directive establishes guidelines for monitoring employee behavior, receiving and investigating complaints about employee performance or conduct, and provides for applying corrective actions as appropriate to include the documentation and maintenance of those records.

**Policy:**  It is the policy of the Dothan Police Department to actively monitor employee conduct and apply appropriate intervention when warranted. Furthermore to investigate all complaints against the department or its personnel to include anonymous complaints in a manner that will assure the community a prompt corrective action when police personnel conduct themselves improperly, while also protecting the Department and its personnel from unwarranted criticism, ridicule or other actions that are pursuant to the discharge of official duties.

## I.   ADMINISTRATION

A. Supervisors will be responsible for actively monitoring employee conduct, utilizing both Guardian Tracking and Performance Management as a means of recording, tracking and correcting behavior and performance.

B. The Chief of Police shall appoint Professional Standards Investigators from within the Department to serve in the Professional Standards Division. The Investigators shall be responsible and accountable for receiving and recording complaints made against the department and/or its employees. The PS Investigators shall conduct internal investigations of the Dothan Police Department as directed by the Chief of Police and this policy.  The Investigators shall report directly to the Chief of Police concerning the progress and findings of such investigations.

G.O. 200-30                              Page 1 of 11



DEFENDANT'S
EXHIBIT
*10*
I. Gray

CITY OF DOTHAN/GRAY 001455
CONFIDENTIAL

C. In cases where conflict of interest may be present, the Chief of Police may appoint any officer to act as an investigator for any internal investigation. This investigator shall report directly to the Chief of Police as needed for supervision and support.

D. The functions of the Professional Standards Division shall be:

1. Recording, controlling, tracking, and administering the investigation of complaints and allegations of misconduct against officers and employees.

2. Maintaining the confidentiality of the aforementioned procedures, investigations and associated documents.

3. Administrative control and documentation of all procedures and investigations.

E. All files, documents, information and other administrative records accumulated during an internal investigation shall be stored in a secure location, within a locked cabinet. Only the Chief of Police, the PS Investigators, and those personnel designated by the Chief of Police shall have unaccompanied access to the files at any time including during the course of any investigation. Such records shall be maintained according to the above guidelines until settlement plus ten (10) years or in accordance with the State of Alabama Records retention laws.

F. During the month of September of each year, the Professional Standards Division shall compile an annual report of statistical summaries based upon all internal and/or PS investigations. This report shall be made available to the public and all department employees.

## II.   PERSONNEL EARLY WARNING

A. Identification of an employee for review under the Early Warning System will originate from Supervisor entries into the Guardian Tracking System or the Office of Professional Standards.

B. Positive and negative behavior and performance indicators of employees will be documented and a record maintained pursuant to established thresholds detailed in this policy. If an employee meets or exceeds a threshold in any of the listed categories the employees' actions will be reviewed by the appropriate supervisor and/or Professional Standards.

1. Supervisor Inquiries External – three in a twelve month period

2. Supervisor Inquiries Internal – three in a twelve month period

G.O. 200-30                    Page 2 of 11

CITY OF DOTHAN/GRAY 001456
CONFIDENTIAL

3. Professional Standards Investigations – two in a twelve month period

4. Absentees – two incidents in a twelve month period

5. Law Suits – one in a twelve month period

6. Response to Resistance – six in a six month period

7. Vehicle Pursuits – three in a twelve month period

8. Vehicle Accidents – two in a twelve month period

9. Citizen Surveys Not Satisfied - three in a twelve month period

10. Tardiness - three in a two month period

11. Disciplinary Actions – four in a twelve month period

12. Work Related Injuries – two in a twelve month period

13. Yearly Evaluations Below Standards - one in a twelve month period

14. EAP Referral by Supervisor - one in a twelve month period

15. Drug Screen Positive Test Result – one in a twelve month period.

16. A combination of any 6 or more of the above categories in a 12 month period.


C. Reporting Requirements

Each time an employee is identified as having conduct that warrants further action or review the responsible supervisor will document it through Performance Management using the information that has been gathered through Guardian Tracking. The proper documentation will be generated for review through the Chain of Command by utilizing Guardian Tracking. The review shall include a recommendation for intervention, and/or remedial action, if appropriate. Recommended interventions may include:

1. Employee Assistance Program (EAP);

2. Training;

3. Counseling;

CITY OF DOTHAN/GRAY 001457
CONFIDENTIAL

4. Fitness for duty Evaluation;

5. Disciplinary action;

6. Monitoring by supervisor; and/or

7. Other discretionary incidents or trends.

D. Role of Supervisors

Supervisors will be responsible for generating the proper documentation for the purpose of review and retention. First line supervisors, in theory, have the best knowledge of their subordinates, and should be able to identify trends and/or changes in behavior. Supervisors shall utilize Guardian Tracking as their means of keeping records of their employees. These records serve a dual purpose, first to document employee performance so that accurate evaluations can be conducted and second, to provide the means for monitoring behavior than can be indicative of larger issues. Supervisors shall utilize Performance Management to address either positive or negative behaviors. Employee conduct that rises to the level of violations of department policy that have not been correctible through the Performance Management system shall be documented on a DPD 200-30.1 and forwarded to Professional Standards. Upon completion of an investigation either by Supervisors or Professional Standards the findings shall be forwarded to the Chief of Police for review.

E. Annual Evaluation of the System

Each year, the Police Major shall have a review conducted of the Early Warning System, to include the numbers and types of actions taken, and the general effectiveness of the system. This report will be forwarded to the Chief of Police.

## III.   COMPLAINT PROCESSING

A. A citizen requesting information on filing a complaint against a police employee may pick up a pamphlet detailing complaint processing and follow-up procedures in the Police Department lobby.

B. Some persons may falsely accuse officers of misconduct. These false accusations may sometimes be made maliciously and deliberately.   All accusations should be investigated to protect the integrity of the department and its employees, thereby instilling public confidence. A thorough and objective investigation will support and vindicate an officer falsely accused.

CITY OF DOTHAN/GRAY 001458
CONFIDENTIAL

C. A citizen who wishes to file a complaint will be directed to the Duty Officer in the department lobby during normal business hours. If the duty officer is not available, the PS Investigator or the on-duty Supervisor will be contacted. The aforementioned employees are receiving complaints are responsible for offering a Dothan Police Department Report of Complaint Form 200-30.1 *(Formerly PD-15A)* to a citizen, responsible for receiving the form and witnessing it in the place provided.

D. A citizen may refuse to fill out a complaint form, and wish only to advise a supervisor of a situation involving the Department of an officer or civilian employee. In such a circumstance, the supervisor will evaluate the information. The supervisor should obtain all information possible on the complainant (name, address, etc.) If known. Otherwise, he should indicate that the complainant is anonymous and refused to fill out the form. The Supervisor will then complete the Report of Complaint Form with all available information and forward it to the Professional Standards.

E. Complaints made over the telephone shall be referred to an on-duty Supervisor. The Supervisor shall provide the complainant an opportunity to complete a Report of Complaint Form. This may include mailing the form, if necessary. If the complainant refuses to accept the opportunity to fill out a form, the Supervisor will proceed as provided in "C".

F. In the event a citizen makes a complaint to an officer, and refuses the offer of speaking with a supervisor, and/or filing a written complaint, the officer will pass the complaint on to his Supervisor, who will proceed as provided in "C".

G. The supervisor will forward the Report of Complaint Form in a sealed interoffice envelope to the Professional Standards as soon as practical, but no later than the end of the shift when the complaint was made.

H. Citizen complaints may also be handled by the Duty Officer in the Department lobby. The Duty Officer shall provide the citizen with a Report of Complaint Form and answer any questions pertaining to filling out the document. The Duty Officer will then instruct the complainant to deposit the Report of Complaint Form into the drop box in the lobby. The drop box will be maintained and checked by the Professional Standards regularly. The drop box will be attached to the wall in a conspicuous place and labeled accordingly.

I. If a complainant wishes to speak to a PS Investigator in person and it is within normal duty hours, the person taking the information will request for a PS Investigator to come to the lobby.

J. If a complainant wishes to speak to a PS Investigator at other than normal duty hours, they will be advised of the next duty day for PS Investigators. The on-duty Patrol Services Division Commander may be contacted in lieu of a PS Investigator and the complaint handled in accordance with 'C' and 'D'.

CITY OF DOTHAN/GRAY 001459

K. All complaints against the Dothan Police Department or its employees shall be recorded and maintained in this manner regardless of the nature or reasonableness of the complaint. All complaints shall be referred to the Professional Standards for review and logging.

L. Professional Standards shall contact the complainant filing a written complaint by letter, in person, or by telephone, acknowledging receipt of the complaint. In the event that the investigation lasts more than ninety (90) days, Professional Standards will notify the complainant as to the status of the investigation. In any case and at the conclusion of the investigation, the Professional Standards will notify the complainant in writing as to the results of the investigation.

M. When an employee discharges a firearm, either intentionally or unintentionally while on duty or in an official capacity, other than while participating in a training activity, he shall immediately notify the on-duty supervisor. The on-duty Supervisor shall immediately notify the Chief of Police, Major, Bureau Commander for the officer involved, and Professional Standards. The employee who discharged their weapon will file a written report with their commanding officer as soon as practical and within twenty-four (24) hours, describing the circumstances in detail unless circumstances dictate otherwise and is authorized by a Bureau Commander or higher. This does not apply to intentional discharges at the Firearms Range, hunting, or other sporting activity involving firearms. Upon notification, Professional Standards will conduct a preliminary investigation and make a verbal report to the Chief of Police within twenty-four (24) hours followed with a written report. Upon the completion of the Professional Standards investigation of the firearm discharge, a Departmental Firearms Review Committee will review the incident.

N. All Professional Standards investigations will be completed in (60) days. If extenuating circumstances arise that hinder the sixty (60) day goal, the circumstances will be documented and presented to the Chief of Police for approval of an extension. If an extension is granted, the investigator assigned will report to the Chief of Police outlining the status of the investigation every thirty (30) days until completed.

## IV. INVESTIGATIVE PROCEDURES

A. All citizen complaints shall be forwarded to Professional Standards for review and tracking. Those complaints deemed minor in nature by the Professional Standards, i.e. minor traffic violations, minor violations of departmental rules and regulations, discourtesy to the public, etc., may be returned to the employee's immediate supervisor for investigation. The Supervisor will complete the "Supervisors Investigation" section on the Report of Complaint Form and return it to the Professional Standards as soon as practical.

B. An administrative internal inquiry or internal investigation may be conducted on non-criminal complaints, depending on the severity of the allegation(s). Should the

CITY OF DOTHAN/GRAY 001460
CONFIDENTIAL

inquiry/investigation discover possible criminal actions on the part of the employee, a criminal investigation may be initiated. (See Section IV).

C. Complaints relative to the innocence or guilt of the complainant concerning an arrest or traffic violation is a matter for a Judge or Court to decide and will not be taken.

D. The following types of incidents shall not be forwarded back to a Supervisor, but will be investigated by the Professional Standards:

   1. Incidents involving use of force;

   2. Complaints involving allegations of civil rights violations, or involving allegations that an employee has used racial or ethnic epithets;

   3. Incidents involving conduct, on or off duty, which reflects negatively on the Dothan Police Department of the City of Dothan;

   4. Incidents involving allegations of criminal or unethical activity;

   5. Allegations of negligence or neglect of duty;

   6. Complaints involving allegations of unlawful or improper manipulation of or tampering with the promotional, evaluation, or disciplinary process;

   7. Complaints involving allegations of abusive conduct by a supervisor directed toward a subordinate;

   8. All complaints involving allegations of racial and/or biased based profiling;

   9. Allegations of corruption or accepting bribes;

   10. Other incidents as directed by the Chief of Police.

E. Allegations and investigations included in III. C., above, will be brought to the attention of the Chief of Police by Professional Standards as soon as possible, and within 24 hours of becoming aware of the allegation.

F. The Chief of Police shall receive from the designated investigator a status report of the course of the investigation periodically, either in writing or in person.

G. If, after an initial screening of the complaint by the Professional Standards, it is determined that the complaint warrants a full internal investigation, the involved officer and his supervisor will be notified in writing by the Chief of Police or his designee, unless such notification would hinder the investigation. Notifications shall be in a written statement to the employee giving notice of the allegation(s) and of the employee's rights

G.O. 200-30                          Page 7 of 11

CITY OF DOTHAN/GRAY 001461
CONFIDENTIAL

and responsibilities relative to the investigation. If and whenever charges are formally filed, the officer shall be notified by the Chief of Police or his designee.

H. Upon sufficient cause as determined by the Profession Standards, and upon the express authorization of the Chief of Police, an internal administrative investigation may require an employee to submit to any or all of the following procedures:

    1. Medical or laboratory examinations;

    2. Participation in a line-up;

    3. Be photographed;

    4. A polygraph examination.

    5. These actions will only be taken when necessary and when they are material to a particular administrative internal affairs investigation conducted by this department.

I. To protect the rights of employees of the Department in official departmental investigations, the interviewer shall insure that the employee being investigated is or has been notified in writing that he/she is under investigation prior to conducting an interview. Also, all employees being interviewed shall be informed of the following:

    1. Rank, name and command of investigator;

    2. Identity of all persons present;

    3. Whether the employee is the subject or a witness in the investigation;

    4. The nature of the accusation;

    5. Identity of the complainant;

    6. Information concerning all allegations.

J. The interview shall be conducted at a reasonable hour, preferably when the employee is on duty.

J. The interview shall be recorded.

K. The following shall be prohibited at the interview:

    1. All "off-the-record" questions;

    2. Offensive language or threats;

G.O. 200-30                    Page 8 of 11

CITY OF DOTHAN/GRAY 001462

3. Promises of reward for answering questions;

4. The investigator conducting the interview is the only person authorized to record the proceedings. All other recordings are unauthorized and prohibited.

L. The duration of the questioning periods will be regulated to allow breaks for meals, personal necessity, etc., and all breaks will be documented.

M. During an administrative investigation, the refusal of an employee to answer questions truthfully and without intentionally omitting details concerning the matter under investigation may result in disciplinary action to include termination

## V.  CRIMINAL INVESTIGATIONS

A. When an administrative investigation reveals evidence of a criminal violation, the criminal investigation will be assigned to an investigator not associated with the administrative investigation. The two investigators will not discuss information obtained by Professional Services solely as a result of the employee being compelled to give information that would otherwise be protected in a criminal investigation. All efforts will be made to suspend an administrative investigation until after the criminal investigation is completed at the direction of the Chief of Police, the criminal investigation may include the use of investigators from an outside agency such as the Alabama Bureau of Investigation or the Federal Bureau of Investigation.

B. A Professional Standards investigation is administrative in nature, not criminal. Employees can be compelled to provide statements or answer questions under the Garrity Ruling (Garrity v. New Jersey, 385 U.S. 493 (1967)). Those statements or questions must be specifically directed and narrowly related to the performance of the employee's duties and his/her fitness for office. Garrity basically prohibits a compelled statement from being used against the employee in any subsequent criminal proceedings. It also prohibits any evidence obtained as a result of a compelled statement from being used against the employee in any subsequent criminal proceeding.

C. An employee under criminal investigation cannot be compelled to submit to any examination or procedure, such as a polygraph or any instrument designed to detect deception that may infringe upon his 5th Amendment and/or due process rights, as protected by Federal and/or State Law and guaranteed by the U.S. Constitution. However, an employee under investigation may voluntarily submit to such examination after being made aware that such actions are strictly voluntary and refusal to submit does not imply any guilt or admission of the violation; and a concurrent internal, administrative investigation, may require the employee to submit to the test, but may not reveal the results of the test to the criminal investigator.

## VI.   CONCLUSION OF FACT

G.O. 200-30                          Page 9 of 11

CITY OF DOTHAN/GRAY 001463

A. Professional Standards shall complete the investigative report, which will contain a conclusion of fact in the Investigation. The conclusion of fact shall further state one of the following findings:

    1. UNFOUNDED-Allegation is false or not factual.

    2. EXONERATED-The incident complained of occurred but was lawful and proper.

    3. NOT SUSTAINED-There was insufficient evidence either to prove or disprove the allegation.

    4. SUSTAINED-The allegation is supported by sufficient evidence.

## VII. ADMINISTRATIVE LEAVE PENDING INVESTIGATION

A. When there is a question as to the employee's fitness for duty, or when failure to remove an employee from duty may have a detrimental impact upon the operations of the Department, or at the discretion of the Chief of Police, an employee may be placed on administrative leave pending the outcome of an internal or criminal investigation, or when the Chief of Police determines return to work is applicable. This action will be accompanied by the issuance of a written Notice of Administrative Leave.

B. If the nature of a complaint is such that the employee's continued presence on-duty would have a detrimental impact on the operation of the Department or the confidence of the citizens, the supervisor may relieve the employee of duty. The supervisor shall issue the employee a Notice of Administrative Leave.

C. After the completion of an internal investigation wherein a conclusion of fact has been drawn to substantiate that the employee in question acted within the legal scope of his authority and violated no departmental policy or criminal law, the said employee shall be immediately re-instated into his previous position with no adverse action applying.

D. All disciplinary actions will be strictly adhered to in accordance with the City of Dothan Civil Service Act and the City of Dothan Personnel Rules and Regulations.

## VIII. TRACKING OF COMPLAINTS

A. All complaints shall be reported on the Dothan Police Department Report of Complaint *Form 200-30.1*. All use of force incidents will be reported in accordance with the requirements of *General Order 200-10H, Response to Resistance*. All complaints and use of force incidents received by the Professional Standards Division shall be entered into a computer database that is maintained exclusively by the Professional Standards Division. The database will automatically assign a separate, sequential number to each case as it is entered. The Report of Complaint Forms shall be entered into the Internal Affairs section of the database and assigned an IA/PSD tracking number. The use of force incidents shall be entered into the Incident Review section of the database and be assigned an Incident

G.O. 200-30            Page 10 of 11

CITY OF DOTHAN/GRAY 001464

Review number.  The database shall be so designed that statistical information shall be easily attained for reporting purposes.

B. Each original Report of Complaint Form, and all pertinent documents related to the investigation, shall be maintained in a folder that is marked with the PSD number in red, the officer's name in black, and the complainants name in black.  The folders shall be kept in an orderly fashion inside a locked cabinet exclusively maintained by the Professional Standards Division.

C. Each original use of force incident shall be maintained in a binder for Incident Reviews and will be maintained by the Professional Standards.

G.O. 200-30                      Page 11 of 11

CITY OF DOTHAN/GRAY 001465
CONFIDENTIAL

City of Dothan

# *Personnel Rules &*
# *Regulations*

*Employee Handbook*



DEFENDANT'S
EXHIBIT
11
I. Gray

## REGULATION III - DISCIPLINARY POLICY

**Sec. 3-10.**   **Policy:**

**Sec. 3-10.**   (1)   **Duty:**   It shall be the duty of all City employees to comply with and to assist in the compliance of the provisions of the Personnel Rules and Regulations. Employees shall be disciplined for violation of established rules and regulations; such discipline shall be in accordance with procedures established by the Personnel Rules and Regulations.

**Sec. 3-10.**   (2)   **Date of Record:**   The "date of record" used for disciplinary offenses is the date on which the department head signs the counseling or warning report. (PBA 5/9/94)

**Sec. 3-10.**   (3)   **Past Practice (Consistent Application):**   Non-enforcement of City Personnel Rules and Regulations can lead employees to believe that violation of specific rules and regulations is acceptable. Later attempts to enforce these rules and regulations can cause deep-seated discontent and morale problems. Be Consistent.

**Sec. 3-20.**   **Classification of Offenses:**   In order that discipline is not disproportionate to the offense, offenses are classified in a progression from minor, less serious type offenses—including Sick Leave Abuse; to major, serious offenses; and intolerable offenses. (See § 9-60(3), for Abuse of Sick Leave disciplinary action.) The classification of offenses are defined as follows:

**Sec. 3-20.**   (1)   **Minor, Less Serious Type Offenses:**   Disciplinary actions for violation of "Minor" offenses are designed to be positive in nature, whereby employees are accorded the opportunity to correct their behavior or performance.

(a)   Disciplinary actions for these type offenses progress through a formal counseling report, written warning report, final warning report or a final warning report with a one to five day suspension without pay. Whether or not an employee receives a final warning report and a suspension without pay shall depend upon whether there are any mitigating circumstances present. For employees who are unable or unwilling to correct their job performance and/or behavior in a satisfactory manner, the last recourse in disciplinary progression for minor type offenses is discharge. Exempt employees can only be suspended for violation of major safety related disciplinary infractions (See §8-70[6]). (PBA 9-9-96)

(b)   The disciplinary progression period for "Minor" offenses shall be twelve consecutive months from the date of the last Minor offense violated. In order for an employee to clear his record of "Minor" disciplinary offenses, employee must not commit any minor disciplinary offense for twelve continuous months from the "date of record" of the last Minor disciplinary offense. (PBA 5/9/94)

**Sec. 3-20.**   (2)   **Major Offense:**   "Major" offenses are offenses that are extremely serious in nature but not so serious that a discharge is required upon committing the first such offense.

(a)   The first "Major" offense committed shall result in a "final warning" and a one (1) to twenty-(20) day suspension without pay. Exempt employees can only be suspended for violation of major safety related disciplinary infractions. (See §8-70[6]). Violation of any subsequent "Major" offense within two years shall be grounds for discharge. (PBA 9-9-96)

Page revised 9/9/96

CITY OF DOTHAN/GRAY 001441
CONFIDENTIAL

A "day", as referenced in the Civil Service Act of Dothan, Section 22, Suspensions, is defined as 8 hours pay or compensation, or in the case of shift employees 1/10 (.10) of their bi-weekly pay or compensation. (An alternative method to administer the above provision of the Personnel Rules would be to transfer the suspended employee to 8-hour shifts for the duration of their suspension) (PBA 2/12/01)

(b)     The disciplinary progression period for "Major" category offenses shall be twenty-four consecutive months from the date of the last "Major" category offense violation. In order for an employee to clear his record of "Major" category offenses, the employee must not commit any major category disciplinary offenses during the twenty-four month progression period. (PBA 5/9/94) (PBA 2/03/03)

Sec. 3-20.

(3)     Intolerable Offenses:  "Intolerable" offenses are those offenses that are of such severe nature that the employer cannot tolerate more than the commission of one such offense. An employee who violates or commits an "Intolerable" offense shall be subject to discharge (Implemented in accordance with Personnel Regulation IV, DUE PROCESS PROCEDURE).

Sec. 3-30.     Types of Disciplinary Actions:

Sec. 3-30.

(1)     Formal Counseling Report:  This is the first step in the progressive disciplinary system for "Minor Offenses."  The Formal Counseling Report involves a formal conversation between a supervisor and an employee about a behavior and/or a performance problem. The supervisor shall explain to the employee the exact nature of the offense(s) violated and shall instruct the employee how the problem can be corrected.  At the time the supervisor meets with the employee, a completed Personnel Form #147 shall be given to the employee for his/her signature and a copy shall be given to the employee.  The original shall be remitted to the Personnel Department and shall become a part of the employee's personnel record.

Sec. 3-30.

(2)     Written Warning Report:  A Written Warning Report is the second step in the progressive discipline system for "Minor Offense" violations.  The supervisor shall complete Personnel Form #147 and meet with the employee for a formal discussion of the exact offense(s) the employee violated.  He shall explain to the employee how the problem may be corrected.  The supervisor shall also explain to the employee that further violation of any of the offenses classified as "Minor" within a twelve month period after the date of record for the last "Minor Offense," shall result in a "Final Warning" or a "Final Warning and Suspension Without Pay."  The employee shall sign a copy of the Personnel Form #147 report, which shall become part of the employee's personnel file, with a copy given to the employee and the original forwarded to the Personnel Department.

Sec. 3-30.

(3)     Final Warning Report or Final Warning Report With A One To Five Day Suspension Without Pay:  This is the third step in the progressive discipline system for "Minor Offense" violations.  The supervisor shall complete Personnel Form #147 and meet with the employee for a formal discussion of the exact offense(s) violated by the employee. The supervisor shall instruct the employee how he/she may improve his/her performance and/or behavioral problem.

Page Revised 2/03/03

CITY OF DOTHAN/GRAY 001442

The supervisor shall also explain to the employee the severity of a "Final Written Warning" or a "Final Written Warning and Suspension Without Pay" and shall explain to the employee that the commission of any other offense classified as "Minor" within a twelve-month period from the date of this warning report shall be grounds for the employee's discharge. The employee shall sign the completed Personnel Form #147 report; a copy shall be given to the employee and the original forwarded to the Personnel Department and shall become part of the employee's personnel file. (Note: A due process hearing [Determination Hearing] shall be conducted with an employee before any decision is made to suspend an employee without pay—Personnel Regulation IV, DUE PROCESS PROCEDURE.)

Sec. 3-30.       (4)     **Final Warning and One To Twenty Days Suspension Without Pay:** This is the disciplinary action that follows violation of any offense classified as "Major." A due process hearing (Determination Hearing) is conducted with the employee prior to making a decision to implement this disciplinary action (Personnel Regulation IV). The supervisor will meet in a formal discussion with the employee explaining the exact offense(s) the employee violated and the seriousness and consequences of the offense(s). The supervisor shall instruct the employee how he/she may correct his/her performance and/or behavioral problem. The supervisor shall explain to the employee that the violation of any further "Major Offense" within two years from the date of record of this offense is grounds for discharge. At the time of the meeting, the supervisor will have completed the Personnel Form #147 report documenting all points discussed in the formal meeting. He signs the Form and gives a copy to the employee. The original is forwarded to the Personnel Department, which becomes a part of the employee's personnel file. (PBA 5/9/94)

A "*day*", as referenced in the Civil Service Act of Dothan, Section 22, Suspensions, is defined as 8 hours pay or compensation, or in the case of shift employees 1/10 (.10) of their bi-weekly pay or compensation. (An alternative method to administer the above provision of the Personnel Rules would be to transfer the suspended employee to 8-hour shifts for the duration of their suspension) (PBA 2/12/01)

Sec. 3-30.       (5)     **Discharge:** Discharge is the most severe disciplinary action that may be taken against an employee. A due process hearing (Determination Hearing) must be conducted with an employee prior to making a decision to discharge an employee (Personnel Regulation IV). An employee who does not correct performance and/or behavioral problems after the progressive discipline process for "Minor" and/or "Major Offenses" or an employee who commits an "Intolerable Offense" is indicating an inability or unwillingness to correct his/her behavior. By utilizing progressive discipline, it is hoped that many employee problems can be corrected at an early stage, thereby benefiting both employees and the City by eliminating an employee's discharge from his/her position with the City of Dothan.

Sec. 3-30.       (6)     **Demotion:** See Personnel Rules and Regulations VIII, §8.53. The application of one disciplinary action does not preclude the imposition of another. (Note: A due process hearing [Determination Hearing] must be conducted with an employee prior to a decision being made to demote an employee [Personnel Regulation IV].)

Page Revised 2/03/03

CITY OF DOTHAN/GRAY 001443

**Sec. 3-40.    S C H E D U L E   O F   D I S C I P L I N A R Y   P E N A L T I E S: This schedule of** Disciplinary Penalties is not all inclusive. There may be offenses other than those listed for each category of "Minor", "Major",or "Intolerable Offenses" for which the appropriate level of discipline is administered. These types of offenses shall be explained in full on Personnel Form #147 under "Other" for each category of offense. The application of one disciplinary action does not preclude the imposition of another.

| Sec. 3-41.    MINOR OFFENSES | First Offense | Second Offense | Third Offense | Fourth Offense |
|---|---|---|---|---|
| Sec. 3-41.    (1)    Failure to give proper notice of an absence which could be anticipated | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41.    (2)    Unauthorized absence. | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41.    (3)    Failure to report to work as soon as possible from any period of paid time off, included but not limited to, personal illness, extended disability, sickness in family, death in family, jury duty, vacation. | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41.    (4)    Tardiness (An employee not at his or her assigned work station at the beginning of the first hour of his/her work day is considered tardy.) | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41.    (5)    Leaving work without permission | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41.    (6)    Interfering with the work of others, offensive personal habits which interfere with efficiency. | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41.    (7)    Inaccurate, careless, failure to comply with standard procedures, makes recurring errors. | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41.    (8)    Unsatisfactory learning rate, unable or unwilling to learn or understand work or new procedures as demonstrated by work standard or performance rating. | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41.    (9)    Unreliable, forgets to carry out normal assigned tasks; requires unusual amount of supervisory time. | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41.    (10) Uncooperative in dealing with co-workers, customers, supervisors, or public. | Formal Counseling | | Final Warning or Final Warning and Suspension | Discharge |

Page -12

CITY OF DOTHAN/GRAY 001444
CONFIDENTIAL

Personnel Rules and Regulations

| | | | | |
|---|---|---|---|---|
| Sec. 3-41.   (11)   Improper use of, or failure to exercise supervisory authority and responsibility. | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41.   (12)   Discourteous treatment of the public, customers or co-workers, | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41.   (13)   Violation of routine safety practices, failure to report a work related injury within a twenty-four period. | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41.   (14)   Improper use or care of city property. | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41.   (15)   Political solicitation during working time. | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41.   (16)   Violation of dress codes as prescribed by department policy. | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41.   (17)   Language or conduct that is abusive or offensive to members of the opposite sex. | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| ec. 3-41.(18)   Other; explain in detail on Personnel Form #147 the offenses(s) committed by the employee. | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |

Page -13

CITY OF DOTHAN/GRAY 001445

Reg.III, contd.

| Sec. 3-42.   MAJOR OFFENSES | First Offense | Second Offense | Third Offense | Fourth Offense |
|---|---|---|---|---|
| Sec. 3-42. (1)   Negligent damage to City property or to property of others. | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (2)   Dangerous horseplay, threatening physical harm to or otherwise endangering others. | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (3)   Serious violations of safety practices which could have dangerous consequences. | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (4)   Serious violation of city ordinances, administrative regulations, or department rules which could have dangerous consequences. | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (5)   Sexual harassment as defined in Personnel Rules and Regulations XI, Sec. 11-80. | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (6)   Action(s), or lack of action(s) that could endanger the life or health of self or others, that could cause undue financial loss to the City, negligence in carrying out assigned tasks or duties or responsibilities of one's position. | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (7)   Gambling or unauthorized loaning (loan sharking) of money while on the job. | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (8)   Sleeping on the job. | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (9)   Possession of alcoholic beverages with no proof of intention to consume while on the job. | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (10)   Careless misrepresentation of work records. | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (11)   Irresponsible use of City credit, purchasing authority. | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (12)   Delaying or restricting City operations or influencing others to do so. | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (13)   Misconduct, contravention of criminal law, or any disgraceful conduct which reflects unfavorably on the City as an employer or public entity. | Final Warning and Suspension | Discharge | | |

CITY OF DOTHAN/GRAY 001446
CONFIDENTIAL

| | | | | |
|---|---|---|---|---|
| Sec. 3-42. (14)    Insubordination | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (15)    Release of confidential or restricted information. | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (16)    First time loss of driver's license where driver's license is a requirement for the position in which employed.    License must be reinstated within ninety days, otherwise employee will be terminated after due process § 3-43. (20).  (PBA 1-13-92, 1-9-95) | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (17)    Failure    to    report    for emergency call-out or standby duty in maximum time    allowed    as    specified    at    Personnel Regulation VIII, § 8-80 (PBA 1-9-95) | Final Warning and Suspension | Discharge | | |
| Sec. 3-42.(18)    Employees who test positive for alcohol at a level of 0.02 to 0.079 in accordance with Drug and Alcohol Testing Policy, Section I-13.b.(1) (PBA 11-10-97) | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (19)    Other, explain in detail on Personnel Form #153 the offense(s) committed by the employee. (PBA 1-9-95) | Final Warning and Suspension | Discharge | | |

Page revised 11-10-97 corrected 12/19/97

CITY OF DOTHAN/GRAY 001447
CONFIDENTIAL

**Reg. III, cont'd.**

| Sec 3-43 INTOLERABLE OFFENSES | First Offense | Second Offense | Third Offense | Fourth Offense |
|---|---|---|---|---|
| Sec. 3-43. (1)   Possession   and/or   use   of controlled, non-prescribed dangerous drugs, while on the facility or on the job by other than sworn law enforcement officers in the line of duty performing evidence seizure or undercover operations of the Dothan Police Department. | Discharge | | | |
| Sec. 3-43. (2)   Use of alcohol while on the job or under the influence of alcohol while on the job | Discharge | | | |
| Sec. 3-43. (3)   Driving a City vehicle while under the influence of intoxicants such as alcohol, non-prescribed drugs, controlled substances. | Discharge | | | |
| Sec. 3-43. (4)   Actual physical possession and/or use of a firearm or force against another person while on City property by other than sworn law enforcement officers operating within the line of duty (NOTE: With the exception of properly permitted firearms secured in privately owned vehicles which are parked in public parking lots). | Discharge | | | |
| Sec. 3-43. (5)   Deliberate falsification of records and/or personal misrepresentation of statements given to a supervisor, officials, the public or Boards. | Discharge | | | |
| Sec. 3-43. (6)   Falsifying employment application, employee records or medical records. | Discharge | | | |
| Sec. 3-43. (7)   Punching another employee's time card or deliberate falsification of time cards. | Discharge | | | |
| Sec. 3-43. (8)   Willful and deliberate damage to city property, the public, or the property of co-employees. | Discharge | | | |
| Sec. 3-43. (9)   Violation of City of Dothan Drug Testing Policy and Procedures approved by Personnel Board 7/24/95 as amended. | Discharge | | | |
| Sec. 3-43. (10)   Theft of City property, property of the public or co-employees. | Discharge | | | |

CITY OF DOTHAN/GRAY 001448
CONFIDENTIAL

| | |
|---|---|
| Sec. 3-43. (11)   Membership in any organization which advocates the overthrow of the government of the United States by force or violence. | Discharge |
| Sec. 3-43. (12)   Acceptance   of   gratuities   for personal favors or personal gain as defined by the ethics laws of the State of Alabama | Discharge |
| Sec. 3-43. (13)   Refusal to be examined by a City authorized, fully licensed physician when so directed. | Discharge |
| Sec. 3-43. (14)  - Prohibited   political   activity   as defined in Section 11-80-6, Code of Alabama, 1975 as amended. | Discharge |
| Sec. 3-43. (15)   Repeated sexual harassment as defined by Personnel Rules and Regulations XI, §11-.80. | Discharge |
| Sec. 3-43. (16)   Abandoning the job, unauthorized absence for five consecutive work days. | Discharge |
| Sec. 3-43. (17)   Unsatisfactory work performance during the probationary period as evidenced by the employee's job performance evaluation reports. | Discharge |
| Sec. 3-43. (18)   Gross insubordination. | Discharge |
| Sec. 3-43. (19)   Other;   Explain   in   detail   on Personnel Form #153 the offense(s) committed by the employee. | Discharge |
| Sec. 3-43. (20)   Where   driver's   license   is   a requirement for the position in which employed, second loss of driver's license within a two-year period of time or loss for a period greater than ninety days. (PBA 1-13-92). | Discharge |

CITY OF DOTHAN/GRAY 001449

| Sec. 3-44.   SICK LEAVE ABUSE OFFENSES (See § 3-60(3) (b), for implementation) | First Offense | Second Offense | Third Offense | Fourth Offense |
|---|---|---|---|---|
| Sec. 3-44. (1)   Employee has used eight (8) occurrences of sick leave in a twelve (12) month period, and/or | Formal Counseling | Written Warning | Final Warning | Discharge |
| Sec. 3-44. (2)   where there is a consistent pattern of utilization of sick leave. (PBA 5/9/94) | Formal Counseling | Written Warning | Final Warning | Discharge |
| Sec. 3-44. (3)   Employee has failed to submit required doctor's certificate after 2nd offense written warning. (PBA 5/9/94) | NA | NA | Final Warning | Discharge |

Sec. 3-45      **VEHICLE ACCIDENT POINT SCALE AND DISCIPLINARY PROGRESSION.**

(1)     Employees accumulating vehicle accident points under the City of Dothan Motor Vehicle Operations Policy, adopted herein by reference, will be subject to the following disciplinary action(s), administered in accordance with this Regulation III and Regulation IV – Due Process Procedure:

| 1 point | Formal Counseling Report |
|---|---|
| 2 points | One (1) Day Suspension |
| 3 points | Three (3) Day Suspension |
| 4 points | Five (5) Day Suspension |
| 5 points | Ten (10) Day Suspension |
| Over 5 points | 11 – 20 Day Suspension or Termination |

(2)     The disciplinary action progression under this Vehicle Accident Point scale is independent of other disciplinary action progressions authorized by those Personnel Rules and Regulations. (PBM 9-10-01)

Sec. 3-50.      **Appeal of Disciplinary Action:**  Any Classified employee or laborer, other than those under probationary status, may appeal any disciplinary action taken by following the procedure outlined in REGULATION V - GRIEVANCE AND APPEAL PROCEDURE or by following the procedures in Sections 21 and 22 of "the Civil Service Act of Dothan" outlined below.

Sec. 3-50.      (1)     **Discharges:** A discharged employee may, within ten (10) days after receipt of the discharge notice, appeal the action of the department head to the Personnel Board, by filing a written answer to the chairman with a demand for a hearing. It shall be the duty of the Board to fix a time and place for hearing the appeal, and to give notice thereof to the employee and the department head, which appeal shall be heard by the Board on a date not later than thirty (30) days from the date the appeal is taken. The Personnel Board shall have the authority, after an appropriate hearing, and based upon a finding of the facts and applicable law involved, to reduce the severity of the disciplinary action taken by the department head, and issue such orders and decrees with reference thereto as may be just and reasonable, and for the best interest of the City. (rev. CSA 5/14/92)

Sec. 3-50.      (2)     **Suspensions:** A suspended employee may, within ten (10) days from the date of receipt of the suspension notice, file with the Personnel Board and the department head a written answer or explanation of the assigned charges and such answer shall be preserved as a part of the Public Record and the Board may, for cause shown, set aside such suspension order. (PBA 4-8-85)

Page revised 9/01

CITY OF DOTHAN/GRAY 001450

## REGULATION IV - DUE PROCESS PROCEDURE

**Sec. 4-10.**      Policy: When disciplinary action is indicated, it is necessary that such action be administered timely, justly, uniformly, and impartially.

**Sec. 4-20.**      Procedure: Whenever any such disciplinary action could result in suspension, demotion, or dismissal of a classified employee or laborer, the following procedures shall be followed to insure that each employee in fact receives "due process" in accordance with legal precedents.

**Sec. 4-20.**      (1)      Department heads, as appointing authorities, shall conduct determination hearings for their respective departments. If a department head is absent for any reason, the individual designated as acting department head is to conduct the hearing. For uniformity and convenience, standard forms have been prepared and are to be used.

**Sec. 4-20.**      (2)      The department head shall have completed Personnel Forms #147 (Employee Disciplinary Action Report Form) and #153 (Notice of Determination Hearing). The notices shall be served by the department head or through the Dothan Police Department to the affected employee at least twenty-four (24) hours prior to the date of the hearing. (PBA 6/8/92)

**Sec. 4-20.**      (3)      The Personnel Director or his designated representative shall be present at the hearing and assure that Personnel Form #154 (Interview Questions Prior to Determination Hearing) is completed before the hearing begins.

**Sec. 4-20.**      (4)      Within three (3) working days after the hearing is conducted, the department head shall render a decision based on the facts in the case, and notification of the decision (completed Personnel Form #155 - Decision of Determination Hearing) shall be served to the affected employee by the department head or through the Dothan Police Department.

**Sec. 4-20.**      (5)      In all cases, Forms #147, #153 and #155 shall be completed in triplicate. The affected employee shall receive a copy, the department head shall be furnished a copy, and the original shall be retained by the Personnel Director to be placed in the employee's 201 File.

**Sec. 4-20.**      (6)      In the event of a particularly violent action or intolerable offense on the part of an employee, e.g. fighting, destruction of City property, gross insubordination, etc. the employee shall be removed from the job and placed on administrative leave with pay until the determination hearing is held and the decision is made.

CITY OF DOTHAN/GRAY 001451
CONFIDENTIAL

REGULATION V - GRIEVANCE AND APPEAL PROCEDURE

Sec. 5-10.   Policy: It is the Policy of the Personnel Board to provide equitable treatment of all its employees. In order that local government can meet the needs of its citizens, it is imperative that there exist an orderly and constructive employee-employer relationship. In order to insure that such a relationship continues to exist, there must be prompt consideration and equitable adjustment of employee grievances.

Sec. 5-20.   Definition: A grievance is defined as a dispute or complaint by any classified employee with regard to the administration of policies, rules, procedures or other aspects of the working relationship with the City. Actual policy, rules and established procedure cannot be grieved. A grievable issue exists where there is a complaint regarding the administration of such policy, rule or procedure. Grievances shall include any dispute concerning
   •   the interpretation or application of policies, rules or procedures governing disciplinary action, performance ratings, attendance and hours of work, working conditions, and
   •   allegations of personal bias or reprisal, as well as
   •   any other matters which are germane to the employee's employment, and which are not specifically reserved to the Personnel Board under the law and rules of the Personnel Board, or are not reserved to the various governmental bodies under any statutory provision.

   Non-Grievable Issues: Matters dealing with classification, pay compensation and benefits and actions specifically set forth in the Civil Service act of Dothan and Personnel Board rules and regulations shall not be considered under grievance procedures, but shall be addressed in accordance with the provision set forth in the Civil Service Act and in the rules and regulations. Any question as to what constitutes a grievance or what should be processed as a grievance or what should be processed as a matter subject to the rules and regulations, shall be determined by the Personnel Director, subject to review by the Personnel Board.

Sec. 5-30.   Procedure: Any classified employee who is not under initial probationary status in accordance with the Policy outlined above may initiate a grievance. In the presentation of grievances, grievants are assured of freedom from restraint, interference, discrimination or reprisal. All adjudication of grievances processed under this rule shall be retroactive until the time the grievance occurred or as modified by the Personnel Board. The grievants may be represented by counsel only in step Two-B (Section 5-30.(2) [b]) of the grievance procedure.

Sec. 5-30.   (1)   Step One:   An employee who desires to initiate a Grievance must file a complaint in writing (Personnel Form Number 118), within ten working days after the date of the incident giving rise to the complaint, with the supervisor and furnish a copy thereof to the department head and the City Manager, unless the complaint is against the supervisor, in which case the grievant bypasses the supervisor and files the grievance directly with the department head. The department head shall, within five working days thereafter, arrange a conference on the grievance with the grievants, with or without the supervisor, and such other representatives as the department head and the grievants may agree upon in order to ascertain all the facts in the grievance. Both the department head and the grievant shall make a good faith effort to resolve the grievance. Within ten working days after such conference, the department head shall advise the grievant in writing of the disposition of the grievance, a copy of which shall be transmitted to the Personnel Director.

   If the disposition of the grievance from the department head has been filed with the Personnel Director and served on the grievant as herein prescribed, and the disposition is not satisfactory

Page revised 6-11-97

CITY OF DOTHAN/GRAY 001452
CONFIDENTIAL

to the grievant, the grievant may appeal the grievance to step two within five working days after such report has been filed. Unless the grievance shall be appealed to step two, the grievant shall be barred from any further proceedings with respect to such grievance.

Sec. 5-30. (2) **Step Two:** Appeal to the Personnel Board. In order for a grievance to be considered in step two, it must be presented in writing utilizing personnel form number 118 by the grievant to the Personnel Director with a copy to the department head within the time prescribed in step one above. The grievance as presented to the Personnel director shall consist of the statement of the grievance, the statement of the supervisor, if any, and the statement of the department head.

(a) **Pre-hearing fact finding investigation.** Within the period of twenty working days, the Personnel Department will conduct a fact finding investigation in order to ascertain for the Personnel Board the pertinent facts involved in the grievance. The Personnel Director or his/her designate shall obtain from the grievant and the department head a list of all individuals or witnesses involved in the grievance. The Personnel Director or his/her designate shall interview or obtain statements from the grievant and the department head and other witnesses to the grievance as noted above. The Personnel Director shall determine from the facts gathered from the investigation of the grievance what policies, rules or procedures are in question concerning the grievance and, if the grievance meets the criteria of the grievance policy, definition and procedures. The Personnel Director shall have compiled a report of all the findings for and certify the report to the Personnel Board along with a copy to the grievant and the department head.

(b) **Personnel Board.** Within twenty working days of receiving the Personnel Director's report, the Personnel Board shall convene a meeting with notices to all parties of the grievance to hear testimony, if any, as to the disposition of the grievance and whether or not to proceed with a Personnel Board Hearing.

If it is the decision of the Personnel Board to hear the grievance, the Board shall schedule a public hearing on the grievance as early as practical. Notice of the date, time and place shall be given to the grievant and the appointing authority (Department Head). The parties may be represented by counsel. The Board shall not be bound by technical rules of evidence and court but shall seek diligently all the information and evidence bearing on the merits of the case.

Sec. 5-40. **Attendance of witnesses.** It shall be the duty of the Personnel Director to subpoena witnesses for or against the employee upon written request of either party to the hearing. Civil Service employees under the jurisdiction of the Personnel Board shall be required to attend and testify without subpoena.

Sec. 5-50. **Personnel Board Hearing:** The hearing before the Board shall be de novo, and the Board may rescind, modify, alter or affirm the action of the appointing authority, if any, or may impose such additional or different action as may be warranted by the evidence adduced at the hearing. Within thirty working days after the conclusion of the hearing, the Board shall render its decision in the form of a Personnel Board Order. Copies of the decision shall be delivered to all parties at interest. The Board shall require that all testimony introduced at hearings shall be under oath and recorded and transcribed by a certified Court Reporter and that such record shall be preserved and filed in the Personnel Department. Any party to the hearing may request copies of the transcript, provided all costs of such transcription is borne by the party requesting same.





CITY OF DOTHAN/GRAY 001453
CONFIDENTIAL

# The City of Dothan, Alabama

# Civil Service Act



\CSC\CIVSERV.ACT

i

DEFENDANT'S
EXHIBIT

12

I. Gray

PENGAD 800-631-6989

CITY OF DOTHAN/GRAY 001542
CONFIDENTIAL

TABLE OF CONTENTS

Section 2.  DEFINITIONS                                                           -3-

Section 3.  UNCLASSIFIED SERVICE                                                  -4-

Section 4.  PERSONNEL DEPARTMENT CREATED                                          -4-

Section 5.  PURPOSES OF PERSONNEL DEPARTMENT                                      -5-

Section 6.  CITIZENS SUPERVISORY COMMITTEE                               -5-

Section 7.  ALTERNATE METHOD OF SELECTING BOARD                                   -6-

Section 8.  PERSONNEL BOARD                                                       -6-

Section 9.  PERSONNEL DIRECTOR                                                    7-

Section 10.  RULES AND REGULATIONS                                                -7-

Section 11.  CLASSIFICATION OF POSITIONS                                          -8-

Section 12.  COMPENSATION PLAN                                                    -8-

Section 13.  TESTS                                                                -8-

Section 14.  FILLING VACANCIES                                          -9-

Section 15.  TRANSFER                                                            -10-

Section 16.  DEMOTIONS                                                           -10-

Section 17.  PROVISIONAL APPOINTMENTS                                            -10-

Section 18.  WORKING TEST PERIOD                                                 -10-

Section 19.  SERVICE RATINGS                                                     -11-

Section 20.  LAY-OFFS                                                            -11-

Section 21.  DISCHARGES                                                          -11-

Section 22.  SUSPENSIONS                                                         -12-

Section 23.  POLITICAL ACTIVITIES PROHIBITED                            -12-

Section 24.  POLITICAL ACTIVITIES OF DEPARTMENT HEADS PROHIBITED                 -12-

Section 25.  INVESTIGATIONS                                                      -13-

Section 26.  CORRUPT PRACTICES                                                   -13-

Section 27.  CERTIFICATIONS OF PAYROLLS                                          -13-

\CSC\CIVSERV.ACT                          ii

CITY OF DOTHAN/GRAY 001543
CONFIDENTIAL

Section 28.  ATTENDANCE OF WITNESSES: FEES: FALSE OATHS          -14-

Section 29.  EXPENSES OF THE DEPARTMENT          -14-

Section 30.  USE OF BUILDING          -14-

Section 31.  LEGAL SERVICE          -15-

Section 32.  RECORDS OF THE DEPARTMENT          -15-

Section 33.  COURT PROCEEDINGS          -15-

Section 34.  SEVERABILITY          -15-

Section 35.  REPEALING CLAUSE          -16-

Section 36.  EFFECTIVE DATE          -16-

CITY OF DOTHAN/GRAY 001544
CONFIDENTIAL

| 1 | Created: Act No.  273, | Bill No. S.292 (Hardwick) | 8/07/47 |
| 2 | | | |
| 3 | Amended: Act No. 92-442, | Bill No. H-790 (Rep. Carothers) | 5/14/92 |

4
5                                    AN ACT
6    Enrolled, An Act
7
8    To create and establish in the City of Dothan a Civil Service System effecting certain personnel whose
9    compensation is now or may hereafter be payable, in full or in part, from the public funds of Dothan; (b)
10   to create a Personnel Department consisting of a Citizens Supervisory Committee, a Personnel Board and a
11   Personnel Director, for the supervision and administration of the system and department herein created;
12   (c) to fix and define the powers and authority and to prescribe the duties of each; (d) to define the scope
13   and extent of the operation of the system, of its powers and authority over the City of Dothan and its
14   employees; (e) to provide for the payment of the expenses of the administration of this Act and the
15   system and department created; (f) to provide for the adoption of reasonable Rules and Regulations; (g)
16   to provide for the enforcement of the provisions of this Act and the Rules and Regulations adopted
17   pursuant thereto and to provide penalties for their violation; (h) to authorize the discharge and suspension
18   of employees; and (i) to repeal all laws and parts of laws and all ordinances and parts of ordinances in
19   conflict with its provisions.
20
21   BE IT ENACTED BY THE LEGISLATURE OF ALABAMA:
22
23   Section 1.  Sections 3, 6, 8, 13, 14, 19, 21, 23, 24, 26, and 31 of "the Civil Service Act of Dothan", Act No.
24   273, S. 292, of the 1947 Regular Session (Local Acts of Alabama, 1947, p. 196), as amended, is amended
25   to read as follows:
26
27   Section 2.   DEFINITIONS.  The following words, terms and phrases, wherever used in this Act, shall have
28   the meaning respectively ascribed to them in this Section, unless the context plainly indicates a different
29   meaning:  'Masculine Gender' shall comprehend all other genders; 'Committee' means the Citizens
30   Supervisory Committee herein created; 'Board' means the Personnel Board herein authorized; 'Director'
31   means the Personnel Director herein created; 'Appointing Authority' means a Department Head;
32   'Employee' means a person in the Classified Service herein set up and appointed by the Appointing
33   Authority, unless herein expressly excepted; 'Classified Service' includes all offices, positions and
34   employment in the City of Dothan as these offices, positions and employment now or may hereafter exist,
35   the holders of which are paid whether by salary, wages or fees, in whole or in part from funds of the City,
36   except those expressly placed in the 'Unclassified Service'; 'Employment Register' means typewritten lists
37   containing the names of those applicants who have successfully passed mental tests for initial employment
38   within the Classified Service for any specific position and which names are listed in the order of the final
39   grades attained on such tests from the highest grade attained to the lowest grade attained; 'Roster'
40   means a typewritten list showing the names of persons employed in the Classified Service by Departments
41   and the position occupied by each employee concerned; 'Tests' mean written, oral or other methods of
42   evaluation established by the Board or Director, to determine the merit, aptitude, knowledge of the job
43   and general qualifications, other than physical, of applicants to fill initial positions within the Classified
44   Service, or for the promotion of those Classified Employees presently assigned to higher positions within
45   the Classified Service, or for the purpose of reclassification or transfer of such employees into new or
46   existing positions within the Classified Service; 'Public Hearing' means a meeting of the Board open to the
47   public, where any citizen, taxpayer or other interested party may appear and be heard, subject to the duly
48   adopted Rules and Regulations; 'Public Record' means a record which the members of the Public shall
49   have the right to inspect, within reason and during ordinary business hours; 'Department Heads' means
50   (1) City Manager as the administrative head of the municipal government, (2) City Clerk-Treasurer in

CITY OF DOTHAN/GRAY 001545
CONFIDENTIAL

1  charge of the Administrative Department, (3) City Engineer in charge of the Engineering Department, (4)
2  Electrical Superintendent in charge of the Electrical Department, (5) Fire Chief, (6) Chief of Police, (7)
3  Superintendent of Recreation, (8) Superintendent of Sanitation, (9) Superintendent of Streets and (10)
4  Superintendent of Water, and heads of such other functional departments that may be established or
5  created to provide services required in the efficient and effective administration and operation of the
6  municipal government, and to meet requirements imposed by state or Federal regulations and rules,
7  whether such new department is created by the abolition of an existing department or departments, the
8  consolidation of two or more departments into one department or by the creation of a completely new
9  department or departments.  Any proposed increase or decrease in the number of city departments shall
10 be initiated by the city governing body and shall become effective when approved by the Personnel Board;
11 'Rules and Regulations' mean a prescribed course of procedure adopted by the Board to promote the
12 administration of the provisions of this Act and the system hereby created; 'Promotional Register' means
13 typewritten lists containing the names of those Classified Employees, presently assigned, who have
14 successfully passed mental tests for promotion to higher positions within the Classified Service and which
15 names are listed in the order of final grades attained on such tests from the highest grade attained to the
16 lowest grade attained; and 'Examinations' mean physical fitness evaluation to include annual or other
17 physical examinations, physical fitness examinations, final physical examinations or any other type of
18 physical examinations as prescribed by the Personnel Board or the Director to determine the physical
19 fitness of initial applicants for employment within the Classified Service and the physical fitness of
20 Classified Employees now assigned, to qualify physically for the positions they now occupy or expect to
21 occupy within the Classified Service.
22
23 Section 3.  UNCLASSIFIED SERVICE.  The following named officials, persons and agencies of the City shall
24 constitute the 'Unclassified Service'; (a) Officers elected by popular vote and their successors in office; (b)
25 Principals, supervisors, teachers and instructors, engaged in supervising or teaching in the public schools,
26 and all employees of the City Board of Education; (c) The Personnel Director provided for by this Act; (d)
27 Independent contractors receiving their remuneration from public funds under contract awarded by
28 competitive bidding; (e) Common or temporary laborers, school crossing guards and seasonal recreation
29 employees; (f) Attorneys, physicians, surgeons, and dentists employed in their professional capacities; (g)
30 The judge of any municipal court; (h) Members of Boards who are not employed on a full-time basis and
31 not required to devote their entire service to the City; and (i) Department Heads consisting of but not
32 limited to (1) City Manager as the administrative head of the municipal government, (2) City Clerk-
33 Treasurer in charge of the Administrative Department, (3) City Engineer in charge of the Engineering
34 Department, (4) Electrical Superintendent in charge of the Electrical Department, (5) Fire Chief, (6) Chief
35 of Police, (7) Superintendent of Recreation, (8) Superintendent of Sanitation, (9) Superintendent of
36 Streets, and (10) Superintendent of Water, and the heads of such other functional departments that may
37 be established or created to provide services required in the efficient and effective administration and
38 operation of the municipal government, and to meet requirements imposed by state or Federal regulations
39 and rules whether such new department is created by the abolition of an existing department or
40 departments, the consolidation of two or more departments into one department or by the creation of a
41 completely new department or departments.  Any proposed increase or decrease in the number of
42 departments shall be initiated by the governing body and will become effective when approved by the
43 Personnel Board.
44
45 Section 4.  PERSONNEL DEPARTMENT CREATED.  There is hereby created and established in and for the
46 City of Dothan a Personnel Department, consisting of a "Citizens Supervisory Committee", a "Personnel
47 Board", and a "Personnel Director", each of which shall have the power and authority, perform the duties
48 and functions, and receive the remuneration hereinafter provided.
49
50 Section 5.  PURPOSES OF PERSONNEL DEPARTMENT.  Said Personnel Department shall, to the extent

CITY OF DOTHAN/GRAY 001546
CONFIDENTIAL

1   hereinafter provided, govern, supervise and control all individuals of the Classified Service, by Civil Service
2   Rules and Regulations, and in the manner hereinafter authorized.
3
4   Section 6. CITIZENS SUPERVISORY COMMITTEE. The membership of the Citizens Supervisory Committee
5   shall consist of qualified electors of the City of Dothan. The Citizens Supervisory Committee of the City of
6   Dothan shall be composed of the following:  One member or representative appointed or elected from the
7   following respective federated, national or international organizations, associations or groups whose
8   primary function is civic or service--as distinguished from social organizations, associations or groups now
9   existing in the City--and generally known as: (1) Altrusa Club (2)  Association of Women and Youth (3)
10   Dothan Area Chamber of Commerce (4) Civitan Club (5) Dothan Jaycees (6) Dothan Rotary Club (7)
11   Dothan-Wiregrass NAACP (8) Exchange Club (9) Kiwanis Club [Dothan] (10)  Kiwanis Club [Houston
12   County] (11)  Lions Club [Wiregrass] (12) Lions Club [Dothan] (13) Optimist (14) Pilot Club (15)
13   Renaissance Wives Club (16)  Rotary Club [Houston County] (17)  Wiregrass Elks Lodge  (18)  Young
14   Men's Civic Club, or any other like organization, association or group, after such organization, association
15   or group shall have been approved for membership at a regular meeting of the then existing members by
16   three-fourths of such membership present and voting.  Each member shall be a bona fide resident of
17   Dothan and a qualified elector of Dothan.  No person shall be elected or appointed as a member of said
18   committee if he is an elected or an appointed official or a classified or unclassified employee of the City of
19   Dothan. Members of the Citizen Supervisory Committee, so appointed or elected from organizations one
20   through eight above shall serve for a two-year term.  The members of the Citizens Supervisory Committee
21   so appointed or elected from organizations nine through eighteen above shall serve for a four-year term,
22   and their successors in office shall serve for a term of four years and until their successors in office have
23   been appointed or elected. The organizational or first meeting of the Committee shall be held within ninety
24   days from the day this act becomes effective.  The Personnel Director shall mail notification of the passage
25   of this act to each organization named above and each organization shall notify the Personnel Director by
26   mail of the appointment or election of their organization's member to the Citizens Supervisory Committee.
27   The first organizational meeting shall be held at City Hall. At its first meeting, the Committee shall appoint
28   or elect a chairperson and a vice-chairperson.  The chairperson of the Committee shall preside at all
29   meetings, or in the Chairperson's absence the Vice-Chairperson, and shall be entitled to vote only in the
30   case of a tie.  The proposed members of the Committee present, in the event less than a majority of the
31   members attend any meeting, shall adjourn the meeting and call another meeting at a time and place to
32   be then determined.  The designated members of the Committee shall have the right, respectively, to
33   serve as members of the Committee during the term of office in their respective organization, association
34   or group above identified.  Any qualified elector of the City of Dothan may file with the Chairperson of the
35   Committee the written objection to the right of any person or organization  to sit on the Committee. The
36   Chairperson shall rule upon the objections in writing.  The first order of business at the next meeting of
37   the Committee shall be a report by the Chairperson of the objections and ruling thereon.  The ruling shall
38   be final unless the objecting party, within five days, duly appeals to the Committee; in which event the
39   seated members shall, upon a hearing on the objection--after notice is duly given to the objecting party
40   and party objected to--determine the qualifications of the party objected to.  The vote of the majority of
41   the members of the Committee present shall govern in all matters if a quorum be present.  The Committee
42   may adopt, from time to time, such rules, regulations, and modes of procedure that it deems expedient to
43   enable it to dispatch its business in an orderly manner.  The Chairperson may call upon the Chief of Police
44   of the City to attend the meetings of the Committee and preserve order and execute the decisions, rules,
45   and orders of the Committee and of the Chairperson thereof.  The Chairperson may punish for contempt
46   of the Committee in like manner and extent as may be done by the judges of circuit courts of this state.
47   The Personnel Director shall act as secretary and such secretary shall be the keeper and custodian of the
48   minutes, records, property and paraphernalia of the Committee, and he may call upon the Personnel
49   Board to furnish such supplies and a safe place for keeping the records and property.  The expense and
50   cost of each meeting shall be paid in the manner as provided for in this act.  The Committee shall meet in

CITY OF DOTHAN/GRAY 001547
CONFIDENTIAL

1  regular session in each of the months of April and October, at such date and hour as the committee shall
2  determine to receive reports of the Mayor, Personnel Board and City Manager and to make such
3  recommendations to the Board as it shall deem in the interest of the sound administration of this act, to
4  elect a successor of any member of the Personnel Board whose term of office expires before the next
5  regular meeting of the committee and to transact such other business as may properly come before the
6  committee.  The Chairperson of the committee or a majority of the members thereof may call special
7  meetings of the committee to transact any business  which may have arisen.  All meetings shall be held at
8  the City Hall, or some other public meeting place designated by the Chairperson.  Notice of all call
9  meetings of the committee shall be given to members of the committee by certified mail giving at least five
10 days notice of such meeting; such notice must be signed by the persons calling the meeting and the
11 purpose thereof shall be briefly outlined.  Notice of regular meetings shall be given to members of the
12 committee by regular mail giving at least five days notice of such meeting, but failure of any member to
13 receive notice of any meeting either regular or special shall not invalidate any act of the committee
14 transacted at such meeting.  A majority of persons serving as members of the committee shall constitute a
15 quorum to do business, but less than that number may adjourn and may compel the attendance of the
16 absent members, in such manner and under such penalties as may be prescribed by the rules and
17 regulations promulgated by the committee.  The committee shall serve without compensation and shall
18 have general supervisory control of the Personnel Department.
19
20 Section 7. ALTERNATE METHOD OF SELECTING BOARD.  In the event the Committee shall fail for any
21 reason to elect the Personnel Board for a period of thirty (30) days after this Act becomes effective, or in
22 the event the Committee shall fail to fill any vacancy on the Personnel Board within a period of thirty (30)
23 days after such vacancy occurs, then, and in that event, the Governor is hereby empowered, authorized
24 and directed to appoint the members of said Board or fill any vacancy thereon.
25
26 Section 8. PERSONNEL BOARD.  The Personnel Board shall consist of five members and they and their
27 successors in office shall be elected or appointed by the Citizens Supervisory Committee.  The five
28 members shall be designated respectively as member No. 1, member No. 2, member No. 3, member No. 4,
29 and member No. 5.  Provided that after the effective date of the 1992 amendment hereto, that those
30 members in office on the effective date of said amendment may serve out the remainder of their
31 unexpired terms and shall be designated as member No. 1, member No. 2,  and member No. 3, in order of
32 their original appointments.  Member No. 4 shall be for a term of three years and until his successor is
33 appointed.  Member No. 5 shall be for a term of five years and until his successor is appointed, and their
34 successors in office shall serve for a term of five years and until their successors in office have been
35 appointed and qualified.  Each member shall be:  (a) Over 21 years of age, (b) Of recognized good
36 character and executive ability, (c) A bona fide resident of Dothan and (d) A qualified elector of Dothan.
37 No person shall I be elected or appointed as a member of said Board if he or she, within three years next
38 preceding the date of his appointment as a member of said Board, received an appointment to any public
39 office in the City or Houston County or becomes elected for any public office in the City or Houston
40 County; any member of said Board shall forthwith forfeit his position as a member of said Board.  Each
41 member of the Board shall receive $50 per meeting attended and $50 per day for attendance upon all
42 trials and hearings by the Board.  Such compensation shall be paid from the same funds as other expenses
43 of the Personnel Department are paid. The Personnel Board shall meet once a month on dates to be fixed
44 by its Rules and Regulation and as often as shall be necessary for the orderly dispatch of its business.  The
45 Board shall have the power and authority and it shall be its duty to:  (a) Select a Personnel Director of the
46 City of Dothan; (b) Adopt rules and regulations for the administration of the provisions of this act; (c)
47 Approve, modify, revise and reject recommendations made by the Director; (d) Make reasonable
48 investigations of all charges or complaints presented to it concerning the observance of the provisions of
49 this act; (e) Enforce the Provisions of this act and the provisions of the rules and regulations made in
50 pursuant thereof; (f) Consider and determine all matters referred to it by the Director; (g) Do all things

CITY OF DOTHAN/GRAY 001548
CONFIDENTIAL

1  necessary and proper to improve the administration of the Classified Service hereby established; (h)
2  Advise with and assist the Director in fostering and promoting the public interest;  (i)  Adopt rules
3  providing for subrogation of the City to the rights of an employee against a third party to the extent of all
4  salary and other expenditures made or to be made by the City to or for such employee because of injuries
5  received while in the line of duty due to the negligence of such third party;  (j) To conduct hearings and to
6  render decisions, as hereafter provided, on charges preferred against persons in the classified service;  (k)
7   To elect at the regular monthly meeting in January of each year one of its members to serve as
8  Chairperson of the Board of the ensuing twelve months; (l) To attend all regular meetings of the Citizen
9  Supervisory Committee; and (m)  Exercise all other powers, functions and duties provided by this act or
10  essential to its effective administration.
11
12  Section 9. PERSONNEL DIRECTOR.  The Personnel Director shall be elected or appointed by the Personnel
13  Board and he shall serve at the pleasure of the said Board; he shall:  (a) be over twenty-one years of age,
14  (b) be of recognized good character and administrative ability, and (c) be or become within thirty days of
15  appointment, a bona fide resident of Dothan.  The salary of the Personnel Director shall be fixed by the
16  Personnel Board.  The Director shall have power and authority and it shall be his duty to: (a) direct and
17  supervise the administrative and technical activities of the department; (b) appoint from the Employment
18  Register, with the approval of the Board, such employees and special assistants as may be necessary to
19  effectively organize the Department and the System herein created; (c) attend all meetings of the Board
20  and provide for recording its official acts; (d) prepare and recommend Rules and Regulations for the
21  administration of the provisions of this Act; (e) recommend and on its adoption establish, administer and
22  execute a plan for a Classified Service in the City of Dothan; (f) submit to the Board a Compensation Plan
23  for all positions in the Classified Service; (g) Conduct Tests, formulate Employment Registers and certify
24  names of persons qualified for appointment under the Classified Service; (h) devise and administer an
25  Employment Service Rating; (i) examine all payrolls or other compensation for personnel service, within
26  the Classified Service, and to disapprove from time to time, any compensation which is not in line with the
27  Compensation Plan adopted by the Board; (j) to establish and maintain a Roster of all of the officers and
28  employees in the Classified Service; (k) make reasonable investigations pertaining to personnel, salary
29  scales and employment conditions in the Classified Service as may be requested by the Board, the Citizens
30  Supervisory Committee or by the Governing Body of the City; (l) make investigations concerning the
31  administration and effect of this Act, the Rules and Regulations made thereunder and to report his findings
32  and recommendations to the Board; (m) make at least one comprehensive annual report to the Board,
33  which shall include the Efficiency Rating of each person employed under the Classified Service; and (n)
34  perform any other act or acts required of him under provisions of this Act, by the Personnel Board or by
35  the Citizens Supervisory Committee, which may be necessary or proper to carry into effect the purposes
36  and objectives of this Act.
37
38  Section 10.  RULES AND REGULATIONS.  No Rule or Regulation shall be adopted by the Board unless it is
39  proposed at a prior meeting and public notice thereof given by posting a copy of same for ten days within
40  the vestibule of the City Hall.  Any citizen or taxpayer in the City of Dothan may appear before the Board
41  and advocate or protest the adoption of such Rule or Regulation.  The scope of all Rules and Regulations
42  shall be:  (a) to provide a method for administering the Classification Service and the Compensation Plan,
43  adopted by the Board; (b) to establish, maintain, consolidate and cancel Personnel lists; (c) to provide a
44  system for receiving, accepting or rejecting applications for tests; (d) to prescribe the manner of giving
45  tests, grading papers and otherwise determining the qualifications of applications for rating under the
46  Classified Service; (e) pertaining to the adoption and application of a Service Rating System; (f) pertaining
47  to uniform recommendations as to working conditions, hours of employment, leaves of absence and
48  vacations of employees in the Classified Service; and (g) the order and manner in which suspension from
49  service may be applied to persons in the Classified Service.  All Rules and Regulations, duly adopted by the
50  Board, if not inconsistent with the provisions of this Act, shall have the force and effect of law and shall

CITY OF DOTHAN/GRAY 001549
CONFIDENTIAL

1  become effective when a copy thereof is recorded in the office of the Clerk of the City.
2
3  Section 11. CLASSIFICATION OF POSITIONS. The Director shall, as soon as practicable after his
4  appointment, ascertain and record an outline of the duties of each position to be filled from the Classified
5  Service, and, after consultation with the Appointing Authority, recommend to the Board a Classification
6  Plan, together with proposed Rules and Regulations for its administration. Such plan shall show each class
7  of position in the Classified Service, separately stated as to each Appointing Authority, and, when
8  approved by the Board, the plan together with the Rules and Regulations for its administration shall be
9  made public. Each such class shall include positions requiring duties which are substantially similar in
10 respect to the authority, responsibility and the character of the services required, and shall be designated
11 by a title indicative of such duties. Each class shall be so defined that the same general requirements as
12 to education, experience, capacity, knowledge, skill, and aptitude are demanded of incumbents, for the
13 proper performance of their respective duties. The same test of fitness may be used in selecting qualified
14 appointees, the same schedule of pay may apply where equitable and the same practical plan of
15 promotion and demotion shall as far as practicable be followed. The Director shall have authority and it
16 shall be his duty to investigate the number of employees in any department or office in the city and if in
17 his opinion, after conference with the Department Head, there are an excessive number, or an insufficient
18 number of employees, in proportion to the amount of work required in such department or office, the
19 Director shall recommend to the Board that the excessive number of employees be laid off or transferred,
20 either permanently or temporarily in accordance with the provisions of this Act; or the Director, if in his
21 judgment there be an insufficient number of employees, may, with the approval of the Board, certify to
22 the appointing Authority additional names to fill such positions, and the Appointing Authority shall
23 forthwith put into effect the order of the Personnel Board, in such respect.
24
25 Section 12. COMPENSATION PLAN. The Director shall prepare and recommend to the Board, after
26 consultation with the Appointing Authority and other officers, a uniform Compensation Plan for all
27 employees in the Classified Service; such plan shall include, for each class of positions, a minimum and
28 maximum rate not inconsistent with such rate or rates as may be fixed by law, in other specific instances.
29 The Director, in establishing such rates, shall give consideration to the experience in recruiting for
30 positions in the Classified Service, the prevailing rates of pay for comparable services in public and private
31 employment, living costs, maintenance or other benefits received by employees, and the financial condition
32 of the City. Such Compensation Plan shall take effect when approved by the Board, and same may be
33 thereafter modified or revised at the pleasure of the Board. Each employee in the Classified Service shall
34 be paid initially at the minimum rate fixed in the Compensation Plan for the Class of Positions in which he
35 is employed, and the raising or lowering of the pay of an individual, within such limitations, shall be done
36 upon request of the Appointing Authority, with a similar recommendation by the Director, and the approval
37 of the Governing Body. The foregoing provisions may be relaxed by the Board in fixing the compensation
38 of persons employed by the City at the time this Act becomes effective.
39
40 Section 13. TESTS.
41 General. The Director shall prepare and conduct tests for the purpose of enabling him to establish
42 Employment Registers for the various classes of positions in the Classified Service. The tests shall be
43 prepared and conducted so as to take into consideration elements of character, reputation, education,
44 aptitude, experience, knowledge, physical fitness and other pertinent matters. Such tests may be given in
45 writing, orally, or in any other manner which will enable the Director to determine the fitness of the
46 applicant for acceptance into some class of position in the Classified Service. Public notice of the time,
47 place and general scope of every test must be given by the Director. Promotional Tests shall be
48 conducted in like manner and embrace the same subject-matter as initial tests for similar Classified
49 Employment. Admissions to test shall be open to all persons who: (a) reasonably appear to the Director
50 to possess the required qualifications, (b) may be lawfully appointed to a position in the class for which a

CivilServiceActofDothan.doc                                                                    - 9 -

CITY OF DOTHAN/GRAY 001550
CONFIDENTIAL

list is to be established, and (c) pays the fees, if any, prescribed by the Rules.  The Director may, however, reject the application of any person for admission to test, or may strike the name of any person from a list, or refuse to certify the name of a person on a list for a position, if he finds that such person: (a) lacks any of the required qualifications; (b) is physically unfit to perform any of the duties of the position in which he seeks employment; (c) is addicted to the habitual use of drugs or intoxicating liquors; (d) has been convicted of any crime involving moral turpitude; (e) has been dismissed from public services for delinquency; (f) has made a false statement of a material fact pertaining to his qualifications and service; and (g) practiced or attempted to practice any fraud or deception in his application or Test, or in attempting to secure appointment.  The names of persons employed by the City at the time this Act becomes effective shall be placed on the Employment Roster without rating, and they shall be subject to all the provisions of this Act, except a certificate from the City Commission that any employee of the City has been employed in the same line of service for a period of two years and that such employee has rendered satisfactory service to the City shall relieve such person of taking any test authorized by the provisions of this Act, to continue to hold such position provided such employee is otherwise qualified.

Veteran.  Upon successfully passing an entrance examination for a position in the Classified Service, five point preference is given to honorably separated veterans who served on active duty in the Armed Forces of the United States during any war (the official dates of war service are April 6, 1917 - July 2, 1921, and December 7, 1941 - April 28, 1952); during the Period April 28, 1952, through July 1, 1955; in any campaign or expedition for which a campaign badge or service medal has been authorized; for more than 180 consecutive days, any part of which occurred after January 31, 1955, and before October 15, 1976. (An initial period of active duty of training under the "six-month" Reserve or National Guard programs does not count.)  Ten point preference is given to veterans who served on active duty in the Armed Forces at any time, and who (1) have a service-connected disability or (2) are receiving compensation, disability retirement benefits, or pension under laws administered by the Veterans Administration, Army, Navy, Air Force, Coast Guard, or Marine Corps.  A veteran who has been awarded the Purple Heart for wounds received in action is considered to have a service connected disability.

Section 14.  FILLING VACANCIES.  When any vacancy occurs in the Classified Service the Director, subject to the approval of the Personnel Board, may direct the filling of such vacancy by appointment, promotion, reappointment, transfer or demotion, where practical.

Appointment:  When it is necessary to fill a vacancy by appointment, the appointing  authority shall submit to the director a personnel requisition containing a statement of the title of the position and the desired qualifications of the person to be appointed, and request the director to certify to him the names of persons eligible for appointment to the position.  The Director shall certify to the appointing authority the names of three ranking eligibles from the most appropriate register and, if more than one vacancy is to be filled, the name of one additional eligible for each additional vacancy, or, if agreeable to the Appointing Authority all the names on the register, if there is less than the above required number.  If it is impossible to locate any of the persons so certified or if any of the certified persons decline to accept the position, and there are by reason thereof less than the above required eligibles, the appointing authority may request that additional names be certified until the proper number of eligible persons have been certified.   The appointing authority shall, within thirty days, appoint one of those whose names are certified to fill each vacancy.  In the event the requested number of eligibles cannot be certified to the appointing authority, he may chose from the remaining certified names or may elect to make a provisional appointment as provided in this act.  In the event there does not exist an employment register, which the Director deems appropriate for the class in which the position is established, he shall prepare such a register within a reasonable time after receipt of the request of the appointing authority that eligibles be certified.  Whenever an eligible has been certified to and objected by the appointing authority as many as three times, the Director may remove the name of such person from the employment register.

CivilServiceActofDothan.doc                                                    - 10 -

CITY OF DOTHAN/GRAY 001551
CONFIDENTIAL

Promotion:  Vacancies other than entry level positions shall be filled by promotion in so far as practicable, from the appropriate promotional register.  The certification of individuals for promotion shall be the same as provided for in paragraph (a) above, with the exception that individuals certified to the appointing authority as many as three times shall not be removed from the promotional register.

Section 15.  TRANSFER.  The Appointing Authority may, when desirable, transfer a Classified Employee under his jurisdiction from one position to another in the same class.  Any Classified Employee may be transferred from one department to another in the same class, provided the Director has authorized the transfer and it has been approved by the Appointing Authority concerned.  The Appointing Authority shall give written notice to the Director of each Transfer made by him and same may be disapproved by the Board, after a hearing.

Section 16.  DEMOTIONS.  An Appointing Authority may, with the approval of the Director, Demote a Classified Employee under his jurisdiction from a position in one class to a position in a lower class, upon giving written notice stating the reasons thereof, but such Demotion may be disapproved by the Board, after a hearing.

Section 17.  PROVISIONAL APPOINTMENTS.  Whenever in the opinion of the Director it is impossible within a reasonable time to certify eligible persons for appointment to a vacancy in the Classified Service, the Appointing Authority may nominate a person for the vacancy to the Director.  If such nominee is found by the director to have had experience and training which appear to qualify him for the position, the Director may authorize the Appointment of such person to such vacancy only until an appropriate eligible Register can be established and an Appointment made therefrom.  Such Provisional Appointments shall be for a period of ninety (90) days and may, with the approval of the Director, be extended for an additional ninety (90) days, however, in no event shall a provisional Appointment be made for a period aggregating more than 180 days.

Section 18.  WORKING TEST PERIOD.  (a) Every person appointed to a position in the Classified Service, after certification of his name from a Promotion List or an Employment Register, shall be tested by a Working Test while occupying such position.  The period of such Working Test shall commence immediately upon appointment and shall continue for such time, not less than six months, as shall be determined by the Director.  The Appointing Authority shall observe the employee's attitude toward his work, his capacity to perform the duties required of him, any habits which may affect in any manner the character of service performed by him, and his general dependability, during such Working Test Period, and report to the Director, periodically as required, in writing, the results of such observation.  The Appointing Authority may remove an employee, after a reasonable Test Period, if in his opinion the employee is unable or unwilling to perform the prescribed duties satisfactorily, or if his habits or dependability do not merit his continuance in the service, subject to the approval of the Director.  Notice of such removal, with the reasons assigned therefor, shall be given to the employee and the Director, at the time of the discharge.  No more than two employees shall be removed successively from the same position by the same Appointing Authority, during their Working Test Period, without the approval of the Director.  The Director may remove an employee during his Working Test Period if he finds, after notice and an opportunity to be heard, that such employee was appointed as a result of fraud or error.  (b) Ten days prior to the expiration of an employee's Working Test Period, unless the employee has been previously removed, the Appointing Authority shall notify the Director in writing whether the service of the employee has been satisfactory and whether he desires to continue the employee in his position, and a copy of such notice shall be given to the employee.  If he is not to be continued in the position, after such notice the employee shall not be paid for work performed after the expiration of his Working Test Period.  (c) If any employee is removed from his position during his Working Test Period and the Director

CivilServiceActofDothan.doc                                                          - 11 -

CITY OF DOTHAN/GRAY 001552
CONFIDENTIAL

1  determines that he is suitable for appointment to another position, his name may be restored to the list
2  from which it was certified. If any such employee was a regular employee in another position in the
3  Classified Service immediately prior to his appointment and such position has not been filled, he shall be
4  reinstated and if such position has been filled, his name shall be placed on the re-employment list.
5
6  Section 19. SERVICE RATINGS. The Director shall establish, in cooperation with the Appointing
7  Authorities, a system of Service Ratings, based upon standards of employment and output of employees in
8  each class of positions in the Classified Service, which may be amended from time to time as the necessity
9  arises, and such Service Ratings shall be considered in such manner and with such weight as shall be
10  provided by the Rules and Regulations: (a) in determining salary increases or decreases, within the
11  established limits; (b) as a factor in Promotional Tests; (c) as a factor in determining Lay-offs, when forces
12  should be reduced because of insufficient funds or work; (d) in determining the order in which names are
13  to be placed on the Re-employment Lists; and (e) as a means of discovering employees who should be
14  promoted, demoted, transferred or dismissed. Each Appointing Authority shall report to the Director, in
15  such manner and at such times as the Rules and Regulations require, the Service Ratings of Employees in
16  his division or department and shall also disclose such other information as the Director may request, to
17  enable the Director to determine the Service Ratings of all employees. Each employee shall be given
18  reasonable opportunity to inspect the records of the Department which show his Service Ratings.
19
20  Section 20. LAY-OFFS. An Appointing Authority may Lay-Off employees in the Classified Service, in
21  accordance with the Rules and Regulations adopted under the provisions of this Act, whenever he deems it
22  expedient because of shortage of work or funds or material changes in duties or organization, and
23  Seniority and Service Ratings of employees shall control in determining the order of Lay-Offs. The
24  Appointing Authority shall give written notice to the Director of every proposed Lay-Off, at least ten days
25  before the effective date thereof, and the Director shall make such orders relating thereto as he considers
26  necessary to secure compliance with the established Rules and Regulations. The name of any regular
27  employee laid-off shall be placed on the appropriate Re-employment List.
28
29  Section 21. DISCHARGES. (I) The Appointing Authority may discharge an employee in the Classified
30  Service, whenever he considers the good of the service and the welfare of the city will be best served
31  thereby, by making and filing in his office an order to that effect together with the reasons assigned for
32  the discharge, however, the power to discharge shall not be capriciously or arbitrarily exercised in any
33  case; a copy of such order and the reasons assigned shall be served upon each the employee and the
34  Director before the effective date thereof; and a copy served upon the Director shall be filed and retained
35  in this office as a Public Record. The discharged employee may, within ten days after receipt of the
36  discharge notice, appeal the action of the Appointing Authority to the Board, by filing a written answer to
37  the chairman with a demand for a hearing. It shall be the duty of the Board to fix a time and place for
38  hearing on the appeal, and to give notice thereof to the employee and the Appointing Authority, which
39  appeal shall be heard by the Board on a date not later than thirty days from the date the appeal is taken.
40  The Personnel Board shall have the authority, after an appropriate hearing, and based upon a finding of
41  the facts and applicable law involved, to reduce the severity of the disciplinary action taken by the
42  Appointing Authority, and issue such orders and decrees with reference thereto as may be just and
43  reasonable, and for the best interest of the City. The findings of fact by the Board, based upon its
44  records, and the testimony taken before it, shall be conclusive if supported by substantial evidence. If the
45  Appointing Authority is sustained by the Board, the discharge shall be final as of the date thereof; if the
46  discharge is not sustained, the employee shall continue in the service of the City and shall be entitled to
47  full compensation. (II) A person in the Classified Service may also be removed or disciplined in the
48  following manner: Charges may be filed with the Director by any officer, citizen, or taxpayer of the city and
49  the Director shall, after an investigation, certify the charges filed, together with the results of his
50  investigation, to the Personnel Board and said Board shall set a day for a public hearing on such charges.

CITY OF DOTHAN/GRAY 001553
CONFIDENTIAL

1   The Board shall on the date fixed receive testimony offered in support of and in denial of such charges
2   and from such testimony make a finding of the facts and applicable law involved, in writing, and make
3   such orders and decrees with reference thereto as may be just and reasonable and for the best interest of
4   the city. The findings of fact by the Board, based upon its records and the testimony taken before it, shall
5   be conclusive if supported by substantial evidence.  (III) If a person in the Classified Service relies upon a
6   direct order by a superior; (a) as a defense or excuse for the violation of any of the provisions of this Act
7   or the Rules and Regulations adopted thereunder, or (b) an omission to observe the provisions of this Act
8   or Rules and Regulations adopted thereunder, he must establish such direct order of a superior to the
9   reasonable satisfaction of the Board.
10
11   Section 22. SUSPENSIONS. An appointing Authority may, from time to time, suspend an employee
12   without pay or other compensation, as punishment for improper behavior, but no employee may be
13   suspended for a period or periods within the aggregate of more that [sic] 30 days in any year's service.  A
14   Suspension may be effected by serving written notice upon the employee together with a statement
15   clearly setting forth the causes thereof; a copy of which must be forthwith mailed or delivered to the
16   Director.  The suspended employee may file with the Board and the Appointing Authority a written answer
17   or explanation of the assigned charges and such answer shall be preserved as a part of the Public Record
18   and the Board may, for cause shown, set aside such suspension order.
19
20   Section 23. POLITICAL ACTIVITIES PROHIBITED. (a) No person shall be appointed or promoted to, or
21   demoted or dismissed from, any position in the Classified Service, or in any way favored or discriminated
22   against with respect to employment in the Classified Service because of his political or religious opinions or
23   affiliations.   (b) No person shall seek or attempt to use any political endorsement in connection with any
24   appointment to a position in the Classified Service. (c) No person shall use or promise to use, directly or
25   indirectly, any official authority or influence, whether possessed or anticipated, to secure or attempt to
26   secure for any person an appointment, or advantage in appointment, to a position in the Classified
27   Service, or an increase in compensation or other advantage in employment in any such position, for the
28   purpose of influencing the vote or political action of any person, or for any other consideration. (d) No
29   employee in the Classified Service shall, directly or indirectly, pay or promise to pay any assessment,
30   subscription or contribution for any political organization, or purpose, or solicit, or take any part in soliciting
31   any such assessment, subscription or contribution.  No person shall solicit any such assessment,
32   subscription or contribution of any employee in the Classified Service. (e) No employee in the Classified
33   Service shall be a candidate for nomination or election to any City of Dothan municipal public office or shall
34   take any part in the management in the affairs of any political party or any political campaign relating to
35   City of Dothan municipal elections except to exercise his right as a citizen privately to express his opinion
36   and to cast his vote. (f) Any officer or employee in the Classified Service who violates any of the foregoing
37   provisions of this Section shall forfeit his office or position and may not be again employed by the City of
38   Dothan.  The provisions of this Act shall not preclude any employee in the Classified Service who has been
39   elected to public office or nominated or selected as a member of a committee of a political party prior to
40   the effective date of this Act from discharging duties of his office.
41
42   Section 24. POLITICAL ACTIVITIES OF DEPARTMENT HEADS PROHIBITED. (a) No employee named in
43   Section 3 (i) of this bill shall:  (a) use or promise to use, directly or indirectly, any official authority or
44   influence, whether possessed or anticipated, to secure for any person an appointment, or advantage in
45   appointment, to a position in the Classified Service, or an increase in compensation or other advantage in
46   employment in any such position, for the purpose of influencing the vote or political action of any person,
47   or for any other consideration.  (b) Directly or indirectly, pay or promise to pay any assessment,
48   subscription or contribution for any political organization, or purpose, or solicit, or take any part in soliciting
49   any such assessment, subscription or contribution.  No person shall solicit any such assessment,
50   subscription or contribution of any employee in the Classified Service. (c) Be a candidate for nomination or

CivilServiceActofDothan.doc                                                                                    - 13 -

CITY OF DOTHAN/GRAY 001554
CONFIDENTIAL

1  election to any public office or participate in any political campaign relating to City municipal elections, or
2  shall take any part in the management of the affairs of any campaign committee, or any political campaign
3  related to City of Dothan municipal elections, except to exercise his right as a citizen privately to express
4  his opinion and to cast his vote.  Any such officer or employee who violates any of the foregoing provisions
5  of this Section shall forfeit his office or position and may not be again employed by the City of Dothan.
6
7  Section 25.  INVESTIGATIONS.  The Board and the Director shall make a study of all matters touching the
8  administration and enforcement of the provisions of this Act and the Rules and Regulations adopted
9  thereunder.  To this end, the Board or the Director may visit all offices and places of employment to
10  ascertain information and to advise with the heads of the various departments concerning their method of
11  handling matters affecting the Service; and to ascertain if the provisions of this Act and the adopted Rules
12  and Regulations are fully complied with.  The Board or Director, in the course of such inquiries, shall have
13  the power to administer oaths, subpoena and require the attendance of witnesses and the production of
14  records, books, papers and documents pertaining to the subject-matter under Investigations.  The Board,
15  or the Director, shall have the authority to inquire into the number of employees in any office or
16  department and, after notice and an opportunity to be heard by the Appointing Authority and the
17  employees affected, the Board may determine there is an excessive number of employees in such office or
18  department, in proportion to the amount of work required, and, in that event, it shall issue an order in
19  writing to the Appointing Authority to eliminate the number of employees found to be excessive, in the
20  manner prescribed by this Act or the Rules and Regulations, and such order shall be forthwith complied
21  with by the Appointing Authority.  The Board and the Director shall also study the organization of the
22  system, procedure of administration and other matters which affect the successful operation of the system
23  and make such lawful changes as may increase efficiency or economy.
24
25  Section 26.  CORRUPT PRACTICES.  (a) No person shall make any false statement, certificate, mark, rating
26  or report with regard to any test, certification or appointment made under any provision of this Act or in
27  any manner commit or attempt to commit any fraud preventing the impartial execution of the provisions of
28  this Act and the prescribed Rules and Regulations.  (b) No person shall, directly or indirectly, give, render,
29  pay, offer, solicit, or accept any money, service or other valuable consideration for or on account of any
30  appointment, proposed appointment, promotion or proposed promotion to, or any advantage in, a position
31  in the Classified Service.  (c) No employee of the Department or other person shall defeat, deceive, or
32  obstruct any person in his right to an examination, eligibility, certification or appointment under the
33  provisions of this Act, or furnish to any person any special or secret information for the purpose of
34  affecting the rights or prospects of any persons with respect to employment in the Classified Service.  (d)
35  No person shall be appointed or employed in any position in the Classified Service as defined in this Act in
36  a department of the City if such person is related by blood or marriage within the second degree to a
37  commissioner or to the department head who is in charge of such department. This provision shall not be
38  construed to require the dismissal of any employee in said Classified Service where, subsequent to his
39  original employment in such service, the department head of the department in which such employee is
40  working or Commissioner becomes related to such employee by blood or marriage within the second
41  degree.  The commission of any such corrupt practice shall constitute a misdemeanor and shall be
42  punished in the manner provided by the general laws of the State.
43
44  Section 27.  CERTIFICATIONS OF PAYROLLS.  (a) It shall be unlawful for any City official, employee or
45  other officer to pay or cause to be paid any salary or compensation to any person in the Classified Service
46  of the City, for Personal services, unless the payroll estimate, voucher, or account, for such compensation,
47  containing the name of the persons to be paid, shall bear the certification of such persons' Department
48  Head or Appointing Authority that the person or persons named therein are employees of the City and are
49  legally entitled to receive the sums stated therein and such payroll or voucher must be approved by the
50  Director.  (b) Any sum paid in violation to the provisions of this Act or the Rules and Regulations adopted

CITY OF DOTHAN/GRAY 001555
CONFIDENTIAL

thereunder may be recovered, in any action maintained in the name of the City, by the City Attorney, or by any Citizen or Taxpayer of the City, from the officer who made, authorized or approved such payment or who signed or countersigned any voucher, payroll, check or warrant for such payment, or from the sureties on the official bond of such officer, and all money recovered in such action shall be paid into the city treasury.  (c) Any person appointed or employed in violation of the provisions of this Act, the Rules and Regulations adopted, or the orders of the Board, who performs service for which he cannot be lawfully paid out of the municipal funds, may maintain an action against the Appointing Authority to recover the agreed pay for such services, or the reasonable value thereof, and no officer shall be reimbursed by the City at any time for any such sum recovered and paid.  (d) If the Director wrongfully withholds certification of the payroll voucher, or account of any employee, such employee may maintain a proceeding to compel the Director to certify such payroll, voucher or account.  (e) A thirty day month shall be used for the purpose of calculating the pay of employees compensated on a monthly basis.

Section 28.  ATTENDANCE OF WITNESSES: FEES: FALSE OATHS.  Any person who shall be served with a subpoena, issued in the course of an investigation or hearing conducted under any provision of this Act, to appear and testify or to produce records, books, and papers, who shall disobey or neglect to obey any such subpoena shall be guilty of a misdemeanor and punished as provided by the general laws of the State.  The fees of witnesses for attendance shall be the same as fees of witnesses before the courts of record and shall be paid as provided in this Act.  Any judge of a court of record, upon application of a member of the Board or the Director, shall compel the attendance of witnesses, the production of records, books and papers and the giving of testimony before the Board, by attachment, contempt proceedings or otherwise, in the same manner as the production of evidence may be compelled before said court.  Any person who, having taken oath or made affirmation in the cause of any investigation or hearing under the provisions of this Act, shall willfully and knowingly testify or declare falsely shall be guilty of perjury and upon conviction shall be punished as provided by the general laws of the State.  The Director or the Board may require the Attendance of employees who are needed as witnesses without subpoena.

Section 29.  EXPENSES OF THE DEPARTMENT.  The salaries and other compensation herein authorized to be paid to the members of the department herein created, together with the necessary expenses actually incurred by such Committee, Board or Director shall be paid by warrant or requisition drawn by the Personnel Board and signed by at least two members thereof; such warrant or requisition shall be drawn upon the same officer, payable in the same manner, and out of the same funds, as the salaries of the members of the City Commission are paid.  Within 90 days after his appointment, the Personnel Director shall submit a budget of operating expenses to the Personnel Board, and furnish a copy thereof to the Governing Body of the City, for the fiscal year ending October 1, 1947.  He shall likewise submit a budget of such operating expenses not less than 45 days before the beginning thereof for each subsequent fiscal year; and such budgets may include expenses incurred in any previous year and not duly paid.  The Governing Body of the City may appear before the Board and protest the approval of any item which it deems unnecessary or excessive, however, the Board may adopt a reasonable budget over the protest of the Governing Body of the City.

Section 30.  USE OF BUILDING.  The officials of the City are hereby required to furnish the Personnel Department necessary facilities in City Hall for the conduct of its business, provided for under the Provisions of this Act, to include office space, office equipment and supplies.

Section 31.  LEGAL SERVICE.  It shall be the duty of the City Attorney to furnish legal advice and legal service to the Board and the Director, in the administration of the Provisions of this Act and the Rules and Regulations adopted in pursuance thereof.  However, the Board is hereby authorized to employ special counsel when deemed necessary.  The City is hereby required to pay reasonable compensation for such service.

CITY OF DOTHAN/GRAY 001556
CONFIDENTIAL

Section 32.  RECORDS OF THE DEPARTMENT.  The records of the Department, except such records as the Rules and Regulations may require to be held confidential for reasons of public policy, shall be Public Records and open to Public inspection, subject to reasonable regulations as to the time and manner of inspection.

Section 33.  COURT PROCEEDINGS.  Orders of the Personnel Board may be enforced by mandamus, injunction, quo warranto or other appropriate proceedings, in any court of competent jurisdiction.  Any person or City official directly interested may, within five days, appeal to the Circuit Court of Houston County from any order of said Board by filing notice thereof with the Board, whereupon said Board shall certify to a transcript of the proceedings before it and file the same in said Court.  The findings of fact by said Board, duly set forth in the transcript, if supported by substantial evidence adduced before said Board, after notice to the interested party or parties and after affording such parties an opportunity to be heard, shall be conclusive on any appeal.  The issues on such appeal shall be made up under the directions of the court and within thirty days after such transcript is filed in court; and the trial thereof shall proceed on the evidence contained in such transcript, if it appears that the evidence was taken after such notice and opportunity to be heard.  If upon such appeal the court finds that the ruling, order or action appealed from is unlawful or unreasonable, within the meaning of this Act, it shall have power to vacate or modify the same.

Section 34.  SEVERABILITY.  This Act is hereby declared to be divisible and severable and the holding of any Provision thereof to be void, ineffective or unconstitutional for any cause, by any court of competent jurisdiction, shall not in any manner serve to affect the other Provisions thereof and such remaining portions of said Act shall remain in full force and effect.

Section 35.  REPEALING CLAUSE.  All laws or parts of laws and all ordinances or parts of ordinances inconsistent with any of the provisions of this Act are hereby expressly repealed.

Section 36.  EFFECTIVE DATE.  This Act shall become effective upon its adoption and approval or when it otherwise becomes law.  However, a period of ninety days thereafter shall be allowed in which to organize and prepare for the administration of the provisions of the Act.

Section 2.  This act shall become effective immediately upon its passage and approval by the Governor, or upon its otherwise becoming a law.

s/James S. Clark
Speaker of the House of Representatives

s/ Ryan DeGraffenried
President Pro Tem and Presiding Officer of the Senate

House of Representatives

I hereby certify that the within Act originated in and was passed by the House April 16, 1992

Senate  April 30          Amended and Passed

House  May 5, 1992        Concurred in Senate Amendment

Approved 5-14-92
Time     11:51 a.m.

CITY OF DOTHAN/GRAY 001557
CONFIDENTIAL

1
2    s/Guy Hunt
3    Governor

CivilServiceActofDothan.doc

CITY OF DOTHAN/GRAY 001558
CONFIDENTIAL