# EXHIBIT
# C

**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **IVAN KEITH GRAY,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO:** |
| | ) | **1:14-cv-00592-MHT-SRW** |
| **CITY OF DOTHAN,** | ) | |
| **Defendant.** | ) | |

## DECLARATION OF DELVICK MCKAY

I, the undersigned, Delvick McKay, hereby swear or affirm that the following is true and correct based on my personal knowledge and/or my review of records kept in the normal course of business by the City of Dothan.

1.      My name is Delvick McKay. I am over the age of twenty-one, I am of sound mind, and I am qualified to make this declaration. I understand that this declaration is being submitted in connection with a lawsuit filed against the City of Dothan ("City") by Ivan Keith Gray ("Gray").

2.      I have been employed by the City of Dothan since March 2006. I began my employment with the City of Dothan in or around March 2006 as a Personnel Analyst. In or around June 2008, I became the Assistant Personnel Director. In or around April 2009, I became the Interim Personnel Board Director. I am the current Personnel Board Director and have been in this position since in or around July 2009.

3.      Gray was placed on and performance improvement plan on or about February 24, 2012.

4.      Since 2006, the City of Dothan Police Department has utilized an assessment center to hire individuals for the ranks of sergeant, lieutenant, and captain. Since 2011, the City



of Dothan Police Department has utilized an assessment center to hire individuals for the rank of corporal.

5.      The City of Dothan investigated Anthony Westberry's ("Westberry") use of a racial slur in or around May-June 2010.  The City of Dothan has not investigated Westberry for using a racial slur at any other time.

6.      Gregory Benton ("Benton") attended the FBI National Academy in or around 2002.  Benton has been the Chief of Police of the Dothan Police Department since on or about January 13, 2010.  Since becoming Police Chief, Benton has attended various training courses – most of which occurred in 2010, 2011 and 2012.

7.      Steve Parrish was appointed Major of the Dothan Police Department effective July 18, 2010.

8.      David Jay ("Jay") was promoted to Police Captain on or about October 24, 2010 and assigned as investigative bureau commander on that same date.    Jay was transferred from the investigative services bureau to patrol services bureau on or about January 27, 2013 and remained in that bureau until his retirement in or around October 2014.  Jay most recently attended fire investigator training in or around February 1995, homicide investigation school in or around February 1996, and negotiations for first responders training in September 2006.  Jay was most recently assigned as the Lieutenant over the criminal investigations division in on around June 2008.

9.      Stacy Robinson ("Robinson") was promoted to Police Captain on or about October 24, 2010 and at that time was assigned as patrol bureau commander and was responsible for the SWAT team.  Robinson attended the FBI National Academy in 2006.



10.    Roy Woodham ("Woodham") was promoted to Lieutenant in January 2000. Woodham was a member of the SWAT team in or around 1998.   Woodham's most recent assignment to the criminal investigations division was in or around April 2002.

11.    Dewayne Herring ("Herring") was promoted to Lieutenant in or around January 2000.  Herring was assigned to the criminal investigations, narcotics division in May 2010.

12.    Darryl Mathews has served in the position of EEO/Training Officer for the City of Dothan multiple times and was assigned to that position most recently on or about February 7, 2012.

13.    John White retired as Police Chief from the Dothan Police Department effective on or about January 1, 2005.  John Powell was hired as Police Chief in 2005.

Dated this <u>17th</u> day of March 2015.

Delvick McKay

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **IVAN KEITH GRAY,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO:** |
| | ) | **1:14-cv-00592-MHT-SRW** |
| **CITY OF DOTHAN,** | ) | |
| **Defendant.** | ) | |

## DECLARATION OF DELVICK MCKAY

I, the undersigned, Delvick McKay, hereby swear or affirm that the following is true and correct based on my personal knowledge and review of documents kept by the City of Dothan in the normal course of business:

1.    My name is Delvick McKay. I am over the age of twenty-one, I am of sound mind, and I am qualified to make this declaration. I understand that this declaration is being submitted in connection with a lawsuit filed against the City of Dothan ("City") by Ivan Keith Gray ("Gray").

2.    I have been employed by the City of Dothan for approximately nine years. I am currently the Personnel Director for the City of Dothan. As Personnel Director, I am custodian of the personnel files of City employees and other files relating to their employment.

1


Initials

3.     The Personnel Board Rules and Regulations outline the disciplinary policy and due process procedure followed by the City of Dothan and provide that an intolerable offense for which an officer can be terminated includes conduct unbecoming of an officer.  Attached hereto as Exhibit 1 is a true and correct copy of the Personnel Rules and Regulations.

4.     Based on my review of documents kept in the normal course of business, Gray was hired by the City of Dothan as a Police Officer in or around February 1985.

5.     In May 2010, the Department investigated Lieutenant Anthony Westberry for use of a racial slur. Lieutenant Westberry, in telling a story, quoted a racial slur that someone else had used. Following the investigation, Lieutenant Westberry was counseled regarding his comment and issued an apology to those who heard the comment.

6.     In February 2012, the City investigated Information Technology Director Tim Stewart, who was not a police officer, for use of a racial slur. As a result of this incident, Stewart received discipline including, but not limited to, a one-week suspension without pay, probation for one year, and required participation in cultural sensitivity training.

2


Initials

7.     On or about June 10, 2013, Gray delivered to my office a copy of a Guardian Tracking entry he had entered in response to a Guardian Tracking entry Major Steve Parrish had made about him nearly a month earlier. I immediately forwarded Gray's report to Darryl Mathews, the EEO/Training Officer for investigation. A true and correct copy of my memo forwarding the report to Mathews is attached hereto as Exhibit 2.

8.     On or about October 1, 2013, Gray filed a notice of appeal and requested a hearing before the Personnel Board. The Personnel Board held an administrative appeal hearing on November 19, 2013. The Personnel Board members present for the hearing were Chairwoman Barbara Spann (African American), Earl Tyson (African American), Tim Shirley (Caucasian), Mary Davis (Caucasian), and Mark Smith (Caucasian).

9. The Personnel Board found "substantial evidence to terminate the employment of . . . Gray" and voted unanimously to uphold the decision to terminate Gray's employment. A true and correct copy of the Personnel Board's decision is attached hereto as Exhibit 3.

10.     Gray did not appeal the Personnel Board's decision.

11.     Attached hereto as Exhibit 4 is a true and correct record reflecting when Gray and others within the Department signed their acknowledgement of the

3


Initials

Department's Mobile Data Terminals and Electronic Messaging Policy. Attached hereto as Exhibit 5 is a true and correct record reflecting when Gray signed his acknowledgement of various Department policies.

12.     Based on my review of documents kept in the normal course of business, Plaintiff frequently complained about his employment at the City and the City promptly investigated his reports and took appropriate action, if necessary.

13.     Attached hereto as Exhibit 6 is a true and correct copy of a complaint Gray made about training within the Department and the Department's response to that complaint.

14.     Attached hereto as Exhibit 7 is a true and correct copy of an April 21, 2006 memorandum from Chief John Powell to Personnel Director Kai Davis responding to a complaint made by Gray.

15.     Attached hereto as Exhibit 8 is a true and correct copy of documents responding to Gray's October 29, 2009 complaint regarding his failure to be considered for the position of Police Chief.

16.     The Mayor and City Commissioners vote to approve the purchase of phones and services from SouthernLinc, not the Chief of Police. Attached hereto as Exhibit 9 is a true and correct copy of the City's resolutions approving the


Initials

SouthernLinc contracts and the State of Alabama Department of Finance Division Purchasing Contract Notice of Award.

17.    Due to the needs of the Department, we created a new captain's position in or around May 2014. This is the only new position that has been created since the termination of Gray's employment. Shortly thereafter, in October 2014, Captain David Jay retired, creating another open captain position. The two positions were filled by Todd David, white male, and William Benny, Hispanic male, respectively. Candidates for these positions were vetted using the assessment center method; these two individuals scored the highest on the examination and were selected without regard to any protected category that either of them might or might not be a part of.

Dated this 27th day of March, 2015.


Delvick McKay

5


Initials

# EXHIBIT
# 1

Personnel Rules and Regulations

# CITY OF DOTHAN

## *PERSONNEL RULES AND REGULATIONS*

(Revised _____)

## REGULATION 1 - GENERAL PROVISIONS

Sec. 1-10.    **Purpose:** It is the purpose of these rules and regulations to establish normal procedures which will serve as a guide in administrative action concerning the various personnel activities of the City of Dothan. These rules are supplementary to the "Civil Service Act of Dothan" and are not intended to supplant or overrule said act.

Sec. 1-20.    **Declaration of Policy:** The following personnel policies are established for the City of Dothan:

Sec. 1-20.    (1)    It is the policy of the City of Dothan to insure affirmative action in providing equal employment opportunities without regard to race, creed, religion, sex, age, mental or physical disability, national origin, or political background, except where age or sex is a bonafide occupational qualification. (PBA 11/9/92)

Sec. 1-20.    (2)    Employment with the City shall be based on merit and free of personal and political consideration.

Sec. 1-20.    (3)    Just and equitable incentives and conditions of employment shall be established and maintained to promote efficiency and economy in operation of the municipal government.

Sec. 1-20.    (4)    Positions having similar duties and responsibilities shall be classified and compensated on a uniform basis.

Sec. 1-20.    (5)    Appointments, promotions, and other personnel actions requiring the application of the merit system shall be based on systematic tests and evaluations.

Sec. 1-20.    (6)    Every effort shall be made to stimulate high morale by fair administration of these regulations and by every consideration of the right and interest of the employee, consistent with the best interest of the City.

Sec.1-20.    (7)    Continuation of employment with the City shall be subject to good behavior, satisfactory performance of work, necessity of the positions, and availability of funds.

Sec. 1-30.    **Coverage:** These rules shall apply to all positions and offices in the Classified Service unless otherwise provided by law.

Sec. 1-40.    **Classified Service:** The Classified Service shall comprise all offices and positions in the City employ, now existing or hereafter created, except those positions specified as the "Unclassified Service" by state laws.

CITY OF DOTHAN/GRAY 003980
CONFIDENTIAL

Personnel Rules and Regulations

Sec. 1-50.    Interpretation:  These regulations are intended to cover most personnel problems and actions likely to be encountered.  Those points not specifically covered shall be interpreted by the Personnel Director in keeping with the intent and objectives of these regulations.  Records of any interpretations shall be kept by the Personnel Director for consideration of incorporation into these regulations.

Sec. 1-60.    Enforcement and Administration:    The enforcement and administration of the rules and regulations set forth in this publication are the responsibility of the Personnel Director; however, the implementation of same is the responsibility of the department heads (Appointing Authorities).

Sec. 1-70.    Approval of Rules:  These rules shall be in force and effect when adopted by the Personnel Board.

CITY OF DOTHAN/GRAY 003981
CONFIDENTIAL

REGULATION II - RECRUITMENT, SELECTION AND PROBATION

Sec. 2-10.    The Classified Service:  The Classified Service shall comprise all offices and positions in the City employ, now existing or hereafter created, except those positions specified as the "Unclassified Service" by state laws.

Sec. 2-20.    Employee Status: The status of each person employed in a classified position falls into one of six separate and distinct categories. (PBA 7-24-95, 9-11-06)

Sec 2-20.    (1)    Regular Full Time:  A full time status employee is defined as an employee who is scheduled to work a minimum of forty (40) hours per work week for 52 weeks per twelve (12) month period (2080.0 hours per year) or an equivalent work schedule determined by the Personnel Director to constitute full time status including fire, police and public services shift employees. An employee earns regular full time status after satisfactorily completing the probationary working test period established for the class of position into which employed (see §2-80., Working Test Period) and being certified as qualified for the position by the department head. Employees under this status participate in employee benefits including group hospitalization and life insurance, retirement, vacation, sick leave, and holiday pay.  (PBA 6-8-87, 7-24-95, 10/11/04, PBA 6/11/07)

Sec. 2-20.    (2)    Probationary Full Time:  A full time status employee as defined in §2-20.(1), upon being employed in a classified or laborer position, whether through initial employment, re-employment, promotion, demotion, or transfer, is under this status until satisfactorily completing the probationary working test period established for the class of position into which employed (see §2-80., Working Test Period) and is certified as qualified for the position by the department head. Employees under this status participate in all employee benefits as listed under paragraph (1) above. (PBA 10/11/04, 9/11/06)

Sec. 2-20.    (3)    Part Time:  A part time status employee is defined as an employee, who is scheduled to work less than forty (40) hours per week. An employee earns regular part time status after satisfactorily completing the probationary working test period established for the class of position into which employed (see § 2-80, Working Test Period) and being certified as qualified for the position by the department head.  A part time status employee who is scheduled to work a minimum of thirty (30) hours per week is eligible for group health and life insurance benefits in accordance with the City's group health and life insurance policies. A part time status employee who is scheduled to work a minimum of twenty (20) hours per week participates in the Employees' Retirement Systems of Alabama. A part time status employee is not eligible for holiday, vacation or sick leave benefits. Note: unclassified part time appointed or elected officials are eligible for group health and life insurance benefits in accordance with the City's group health and life insurance policies. (PBA 7-24-95, 4-12-99, 10/11/04)

Sec. 2-20.    (4)    [deleted PBA 10/11/04]

Sec. 2-20.    (5)    Temporary:  A temporary status employee is defined as an employee who is hired for a limited period of time, not to exceed twelve (12) continuous months as defined by a calendar period, for the performance of specific tasks.  A temporary status employee may be scheduled to work any number of hours per week up to a full forty-(40) hour workweek. A temporary status employee is in the Classified Service.  An employee in this status is not eligible for group hospitalization and life insurance, vacation and sick leave benefits, and is not eligible to participate in the Employees' Retirement Systems of Alabama. A temporary status employee scheduled to work a full forty (40) hour work week is eligible for holiday pay provided he/she works the full eighty (80) hour pay period (except holidays) during which the holiday falls.  (PBA 7-24-95, 4-12-99, 10/11/04)

CITY OF DOTHAN/GRAY 003982
CONFIDENTIAL

Sec. 2-20.　　(6)　　**Unclassified Seasonal/Recreational:** A temporary unclassified seasonal/recreational status employee is an employee who is employed to work in the seasonal recreational programs sponsored by the City. An unclassified seasonal/recreational employee's work schedule is limited to and dependent upon the work hours per week and work weeks per calendar year required to operate the particular seasonal recreational program in which he/she is employed. An employee in this class generally works less than a cumulative 1,040.0 hours per year. An employee in this status is not eligible for group health and life insurance benefits, vacation or sick leave benefits or holiday pay. However, an employee in this status is eligible for holiday pay provided he/she works the full eighty (80)-hour pay period during which the holiday occurs. (PBA 7-24-95, 4-12-99, 10/11/04)

Sec. 2-25.　　**Temporary Alternative Duty** is duty that is assigned to employees who have a restricted activity status, as recommended by their treating physician, or in the case of a work related injury, by the City's Medical staff and/or treating physician. For non-work related injuries/illnesses temporary alternate duty is available to full time employees following their initial probationary period at time of hire. This alternate duty status has a time limit of eight calendar weeks within a twelve month period from the time the employee is first placed on 'light duty', regardless of the number of injuries/illnesses sustained during that twelve month period. It is the responsibility of the affected employee to present to the Employee Health Clinic with written documentation from their treating physician specifying the restrictions and the length of time the restriction applies. The employee should keep the Clinic staff informed of their status after each visit to their physician, which should be at least every four-calendar week. *If, after the eight week time frame, the employee is not released to his/her full duty status by their treating physician, he/she will have to be taken off work until which time his/her physician releases employee to full duty.* If the treating physician feels the employee cannot return to his/her full duty status, additional testing/evaluations may be warranted as recommended by the City's Medical Director. This will be at the expense of the employee if not covered by insurance.

In cases of restricted activity status that is a result of a work-related injury/illness, the eight-calendar week limit does not apply. The City's Medical staff in accordance with the authorized treating physician will monitor the covered employee's work status. (PBA 8/17/92, PBA 8-9-93, PBA 12/13/93, PBA 3/13/00, PBA 4/14/03)

Sec. 2-30.　　**Residence Rule:** It is the policy of the City of Dothan to give preference in hiring to persons living within the city limits of Dothan. This means that when a position vacancy occurs with the City of Dothan, those persons found to be most qualified for the position and living within the city limits of Dothan shall be given first preference for the position. If no individual is found to be most qualified within the city limits, selection shall be conducted outside the city limits.

Sec. 2-30.　　(1)　　All employees of the Fire, Police, Water, Public Works, Electric and Community Developments, and such other personnel as may be designated by department heads for emergency and/or standby duty must be immediately available to their department heads at all times by means of telephone and must be able to meet emergency calls in a minimum of time.

Sec. 2-30.　　(2)　　Maximum reporting time for emergency and/or standby duty for employees noted in § 2.30(1), above, is thirty (30) minutes from time notified to report to employee's regular work reporting station. (PBA 1/9/95)

| Note: *This reporting time supersedes all previous maximum reporting times.* (PBA 1/9/95) |
|---|

Sec. 2-30.　　(3)　　All employees of the City of Dothan are encouraged to move within the city limits, as preference shall be given to those employees living within the city limits in case of layoffs.

CITY OF DOTHAN/GRAY 003983
CONFIDENTIAL

Sec. 2-40.    Employment of Veterans and Disabled Persons:  It shall be the policy of the City to give special consideration to the employment of war veterans and to encourage wherever possible the employment of persons with disabilities in positions where the disability will not substantially interfere with the performance of assigned duties.  Veterans shall receive credit according to Section 13 of the Civil Service Act of Dothan:

"Upon successfully passing an entrance examination for a position in the Classified Service, five point preference is given to honorably separated veterans who served on active duty in the Armed Forces of the United States during any war (the official dates of war service are April 6, 1917 - July 2, 1921, and December 7, 1941 - April 28, 1952); during the Period April 28, 1952, through July 1, 1955; in any campaign or expedition for which a campaign badge or service medal has been authorized; for more than 180 consecutive days, any part of which occurred after January 31, 1955, and before October 15, 1976.  (An initial period of active duty or training under the "six-month" Reserve or National Guard programs does not count.); during the Gulf War between August 2, 1990 and January 2, 1992.  Ten point preference is given to veterans who served on active duty in the Armed Forces at any time, and who (1) have a service-connected disability or (2) are receiving compensation, disability retirement benefits, or pension under laws administered by the Veterans Administration, Army, Navy, Air Force, Coast Guard, or Marine Corps.  A veteran who has been awarded the Purple Heart for wounds received in action is considered to have a service connected disability.  (PBA 11-9-92) (6-17-2002 to reflect Civil Service Act)

Sec. 2-50.    Eligible, Promotional and Re-employment Registers:  The Personnel Director shall establish and maintain such eligible, promotional and re-employment registers for the various classes of positions within the City service as are necessary to meet the needs of the service.  The Personnel Director shall determine the period during which such registers shall remain in effect, but this period shall not exceed two (2) years. (PBA 11-14-88, 8-12-96)

Sec. 2-50.    (1)    Eligible Registers:  Eligible registers shall contain the names of those applicants who are deemed by virtue of the examination process (See § 2-60(5), Examination Process) to be qualified to perform the duties required of a specific class.  The names of the eligibles may be placed on such registers in order of applicants' final ratings on examinations.  Applicants shall be notified by the Personnel Director of their qualifying or failure to qualify for placement on an eligible register.  The Personnel Director may remove from an eligible register the name of an applicant who has been placed on such register if it is determined that he/she intentionally made a false statement on his/her application, cheated on his/her examination, or permitted any fraud preventing the impartial execution of the principles of selection through merit.  The Personnel Director shall notify each person of the removal of his/her name and the reason therefore.  When the Director deems it necessary to do so, a new eligible register may be combined with an existing register by placing the names of those eligible from both registers on a combined register.

Sec. 2-50.    (2)    Promotional or In-House Registers:  Promotional or in-house registers shall contain the names of those City employees who are qualified for a vacant position. (PBA 9/11/06)

(a)    Service Credit:  In establishing promotional or in-house registers, City employees receive a maximum of five (5) points for years of service.  The formula for computing service points should be a factor of .5 x years of service up to a maximum of five (5) points.  Such service points shall be added to the employee's total test score.  (PBA 4/8/96, 11/14/05)

CITY OF DOTHAN/GRAY 003984
CONFIDENTIAL

(b) **Time of Service Requirement:** For tested positions with a required study or preparatory period, the initial examination date will be used to determine whether an employee has completed any required time in grade or time in rank or years of experience requirements established for the position. For all other positions, the initial closing date for receiving applications will be used. (PBA 05/12/97, 11/14/05)

(c) **Examination date:** Any examination date(s) will be set by the Personnel Department allowing for the required study time as set by the testing instrument and recognizing the necessity of maintaining current promotional or in-house registers for high turnover positions. (PBA 01/13/89, 11/14/05)

Sec. 2-50.   (3)   **Re-employment Registers:** City employees separated from the Classified Service in good standing (See § 10.10(1), Resignation) or as a result of layoffs shall be placed on a re-employment register in an order determined by length of service. Each name on a re-employment register shall be removed from such register at the expiration of one (1) year from the effective date of separation. A person employed under this provision has suffered a break in service and is beginning a new employment period. A person re-employed under this provision must complete the required initial probationary period for the position into which re-employed. A person re-employed under this provision shall have time in rank, seniority or service credit calculated from the most recent date of hire. (PBA 10/09/06)

Sec. 2-60.   **Personnel Selection Procedures:** The following procedures shall be used in recruiting and selecting City employees.

Sec. 2-60.   (1)   **Written Notice:** The department head shall give notice in writing to the Personnel Director of any pending position openings, utilizing Personnel Requisition Form #139.

Sec. 2-60.   (2)   **Job Announcements:** The Personnel Director shall have prepared written job announcements giving the major functions, prerequisites, and minimum qualifications for each position to be filled, and the closing date for receiving applications. §2-60(3) and (4). Immediately following may be initiated simultaneously when time is a critical factor in filling a vacancy in the Classified Service.

Sec. 2-60.   (3)   **Promotions:** It is the policy of the City of Dothan to fill classified positions with the most qualified personnel available. To allow for upward mobility, all vacancies and promotional positions shall be advertised internally utilizing promotional registers; job announcements for same shall be posted on all departmental bulletin boards. The City of Dothan shall, as an Equal Opportunity Employer, recognize its responsibility to insure equal opportunity in promotional decisions based only on valid and job oriented requirements.

Sec. 2-60.   (4)   **Outside Advertisement:** If an insufficient number of City employees in the Classified Service are interested in and/or qualified for a vacant position, the Personnel Director shall advertise for applicants in whatever manner will provide a suitable number and quality of applicants including: advertisement of job announcements in local or national news media as appropriate; distribution of same to local employment agencies and/or colleges as required to attract the best qualified individuals; and utilization of eligible and re-employment registers.

Sec. 2-60.   (5)   **Examination Process:** All applications received for vacant positions shall be screened for required and/or basic qualifications. All qualified applicants shall be examined for qualifications by application review; and/or by written and/or performance tests related to training and experience; and/or by personal interview with the Appointing Authority in cases warranting same.

CITY OF DOTHAN/GRAY 003985
CONFIDENTIAL

Personnel Rules and Regulations

Sec. 2-60.    (6)    Selection: After oral interviews are completed, the department head shall examine the merits of all applicants interviewed, and select the person who best meets the job requirements.

Sec. 2-60.    (7)    Selection Follow-up: After an applicant has been selected, *notice of the selection shall be sent by the department head to the EEO Officer with Copy to the Personnel Director for his approval. In the event that a qualified applicant is considered for appointment and is not hired, the department head shall be responsible for explaining in detail and in writing his reasons for not hiring the person. This explanation shall be forwarded to the EEO Officer who shall satisfy himself that the reasons given are valid and nondiscriminatory. If he is not satisfied, the matter shall be referred to the Personnel Board, which shall conduct a hearing with notice to all parties. Thereafter, the EEO Officer shall be authorized to direct the appointment of the qualified applicant if the board has determined that the applicant was rejected or discriminated against because of his race, creed, religion, sex, age, mental or physical disability, national origin or political background. Applicants shall not be notified until the above process is completed. (PBA 11/9/92)

Sec. 2-60.    (8)    Processing: The new employee shall be referred to the Personnel Department for employment processing at least 24 hours prior to the starting date of employment. The Department Head shall have Personnel Form #110 completed and forwarded to the Personnel Department prior to the new employee's starting date.

Sec 2-67.5.    Drug and/or Alcohol Testing: Drug and/or alcohol testing of City employees shall be conducted in accordance with The City of Dothan Drug Testing Policy and Procedures which are incorporated herein by reference. (PBA 6-11-90, 1-9-95, 7/24/95, 3-11-96, 4-14-97, 11/10/97, 2/9/98, 9/13/99, 10/18/99, 4/08/02, 8/09/04, 12/13/04, Restated Policy adopted by PBA 9/11/06)

| COPY OF POLICY ON FILE IN PERSONNEL DEPARTMENT |
| --- |

Sec. 2-70.    Employment Physical Standards: The following procedures shall be used to determine applicants' conformance to the City of Dothan employment physical standards.

Sec. 2-70.    (1)    The Safety/Employee Health division shall be responsible for the development of physical standards for the various job classifications in the City of Dothan which are job related and in compliance with all applicable Federal and State laws and City policies concerning employee selection. These physical standards shall become effective when certified to the Personnel Director by the Employee Health Clinic Medical Director. (PBA 12-10-90)

Sec. 2-70.    (2)    All employees including full time, part time, seasonal and rehires shall be certified as meeting the City of Dothan physical standards for the position applied prior to the applicant being processed for employment by the Personnel Department.

Sec. 2-70.    (3)    It shall be the responsibility of the Employee Health Clinic to perform all physical examinations and certify the applicant as meeting the approved physical standards.

Final determination regarding an applicant's failure to meet physical standards shall be made by the Employee Health Clinic Medical Director (PBA 7-13-87). Results of pre-placement physical examinations will be documented on Personnel Form 168, (Screening Form). (PBA 12-10-90, PBA 3/13/00)

*Notice by Memorandum

Page revised 10/09/06

CITY OF DOTHAN/GRAY 003986
CONFIDENTIAL

**Sec. 2-80.**   **Working Test Period (Probation):**

**Sec. 2-80.**   (1)   **Appointed or promoted employees:** Every employee appointed or promoted to a position in the Classified Service or to a common laborer position, shall automatically be placed under probationary status and required to serve a working test period of not less than six (6) months. The length of the working test period or probationary status shall be determined by the class of position and training period established for the position. During this working test period, periodic performance and other job related evaluations showing employee progress shall be made, and the employee shall be kept informed of individual progress. Employees who prove unsatisfactory during the working test period may be removed from the position by the Appointing Authority at any time during this period, subject to the approval of the Personnel Director; however, inadequate job progress and/or deficiencies must be pointed out to the employee and the employee must be given the opportunity to improve and/or correct the inadequacies and/or deficiencies before being removed from the position. The Personnel Director may remove an employee during a working test period if the employee was appointed, promoted or demoted without prejudice as the result of fraud or error. The removal action is usually final. (Revised by Personnel Director 10/22/04)

**Sec. 2-80.**   (2)   **Demoted employees:** An employee demoted without prejudice shall be placed on probationary status as above if requested by his/her department head and approved by the Personnel Director. (PBA 09-19-88)

**Sec. 2-80.**   (3)   **Position change.** An employee serving an initial probationary working test period shall not be eligible for promotional and/or in-house vacancies in the Classified Service until satisfactorily completing this initial probationary working test period.

**Sec. 2-80.**   (4)   **Due process procedure.** Due process procedures as outlined in Regulation IV - DUE PROCESS PROCEDURE, shall be afforded any employee who is removed during an initial probationary working test period. (Approved PBA 6-9-86)

**Sec. 2-90.**   **Personnel Records:** Employees shall bring to the immediate attention of their supervisors and department heads any changes or errors in personal information such as change of name, phone number, dependent beneficiaries, etc. The department shall then notify the Personnel Department of such changes or errors and refer the employee to the Personnel Department, if necessary, for completion of proper forms. This will enable the City to keep up-to-date personnel information and at the same time assure the employee that items affecting pay, benefits, etc., are handled in a timely and efficient manner. The Personnel Department is the official repository for every employee's individual personnel records and related papers.

Page revised 3/14/00, 10/22/04, 10/09/06

CITY OF DOTHAN/GRAY 003987
CONFIDENTIAL

REGULATION III - DISCIPLINARY POLICY

Sec. 3-10.     **Policy:**

Sec. 3-10.     **(1)     Duty:**   It shall be the duty of all City employees to comply with and to assist in the compliance of the provisions of the Personnel Rules and Regulations.  Employees shall be disciplined for violation of established rules and regulations; such discipline shall be in accordance with procedures established by the Personnel Rules and Regulations.

Sec. 3-10.     **(2)     Date of Record:**   The "date of record" used for disciplinary offenses is the date on which the department head signs the counseling or warning report. (PBA 5/9/94)

Sec. 3-10.     **(3)     Past Practice (Consistent Application):**   Non-enforcement of City Personnel Rules and Regulations can lead employees to believe that violation of specific rules and regulations is acceptable.  Later attempts to enforce these rules and regulations can cause deep-seated discontent and morale problems. Be Consistent.

Sec. 3-10.     **(4)**     An employee in an active disciplinary progression period for a major category offense shall not be eligible for promotions or in-house position transfers. (PBA 12/12/05)

Sec. 3-10.     **(5)**     Expired disciplinary actions remain a part of an employee's personnel record. (PBA 12/12/05)

Sec. 3-10.     **(6)**     An employee's disciplinary history may be reviewed by a selecting appointing authority with the approval of the Personnel Director. (PBA 12/12/05)

Sec. 3-20.     **Classification of Offenses:**   In order that discipline is not disproportionate to the offense, offenses are classified in a progression from minor, less serious type offenses—including Sick Leave Abuse; to major, serious offenses; and intolerable offenses.  (See § 9-60(10), for Abuse of Sick Leave disciplinary action.) The classification of offenses are defined as follows:

Sec. 3-20.     **(1)     Minor, Less Serious Type Offenses:**   Disciplinary actions for violation of "Minor" offenses are designed to be positive in nature, whereby employees are accorded the opportunity to correct their behavior or performance.

     **(a)**     Disciplinary actions for these type offenses progress through a formal counseling report, written warning report, final warning report or a final warning report with a one to five day suspension without pay. Whether or not an employee receives a final warning report and a suspension without pay shall depend upon whether there are any mitigating circumstances present. For employees who are unable or unwilling to correct their job performance and/or behavior in a satisfactory manner, the last recourse in disciplinary progression for minor type offenses is discharge. Overtime exempt employees can only be suspended in full-day increments for infractions of safety rules of major significance, and certain workplace conduct rules such as sexual harassment and work-place violence. (See §8-70[8]). (PBA 9-9-96, 10/11/04)

     **(b)**     The disciplinary progression period for "Minor" offenses shall be twelve consecutive months from the date of the last Minor offense violated. In order for an employee to clear his record of "Minor" disciplinary offenses, employee must not commit any minor disciplinary offense for twelve continuous months from the "date of record" of the last Minor disciplinary offense. (PBA 5/9/94)

Page revised 9/09/96, 10/11/04, 12/12/05

CITY OF DOTHAN/GRAY 003988
CONFIDENTIAL

Personnel Rules and Regulations

Sec. 3-20.   (2)   Major Offense: "Major" offenses are offenses that are extremely serious in nature but not so serious that a discharge is required upon committing the first such offense.

(a)   The first "Major" offense committed shall result in a "final warning" and a one (1) to twenty-(20) day suspension without pay.   Overtime exempt employees can only be suspended in full-day increments for infractions of safety rules of major significance, and certain workplace conduct rules such as sexual harassment and work-place violence.   (See §8-70[6]).   Violation of any subsequent "Major" offense within two years shall be grounds for discharge.
(PBA 9-9-98, PBA 10/11/04)

A "day", as referenced in the Civil Service Act of Dothan, Section 22, Suspensions, is defined as 8 hours pay or compensation, or in the case of shift employees 1/10 (.10) of their bi-weekly pay or compensation.   (An alternative method to administer the above provision of the Personnel Rules would be to transfer the suspended employee to 8-hour shifts for the duration of their suspension) (PBA 2/12/01)

(b)   The disciplinary progression period for "Major" category offenses shall be twenty-four consecutive months from the date of the last "Major" category offense violation.   In order for an employee to clear his record of "Major" category offenses, the employee must not commit any major category disciplinary offenses during the twenty-four month progression period. (PBA 5/9/94)   (PBA 2/03/03)

Sec. 3-20.   (3)   Intolerable Offenses:   "Intolerable" offenses are those offenses that are of such severe nature that the employer cannot tolerate more than the commission of one such offense.   An employee who violates or commits an "Intolerable" offense shall be subject to discharge (implemented in accordance with Personnel Regulation IV, DUE PROCESS PROCEDURE).

Sec. 3-30.   Types of Disciplinary Actions:

Sec. 3-30.   (1)   Formal Counseling Report:   This is the first step in the progressive disciplinary system for "Minor Offenses."   The Formal Counseling Report involves a formal conversation between a supervisor and an employee about a behavior and/or a performance problem.   The supervisor shall explain to the employee the exact nature of the offense(s) violated and shall instruct the employee how the problem can be corrected.   At the time the supervisor meets with the employee, a completed Personnel Form #147 shall be given to the employee for his/her signature and a copy shall be given to the employee.   The original shall be remitted to the Personnel Department and shall become a part of the employee's personnel record.

Sec. 3-30.   (2)   Written Warning Report:   A Written Warning Report is the second step in the progressive discipline system for "Minor Offense" violations.   The supervisor shall complete Personnel Form #147 and meet with the employee for a formal discussion of the exact offense(s) the employee violated.   He shall explain to the employee how the problem may be corrected.   The supervisor shall also explain to the employee that further violation of any of the offenses classified as "Minor" within a twelve month period after the date of record for the last "Minor Offense," shall result in a "Final Warning" or a "Final Warning and Suspension Without Pay."   The employee shall sign a copy of the Personnel Form #147 report, which shall become part of the employee's personnel file, with a copy given to the employee and the original forwarded to the Personnel Department.

Sec. 3-30.   (3)   Final Warning Report or Final Warning Report With A One To Five Day Suspension Without Pay:   This is the third step in the progressive discipline system for "Minor Offense" violations.   The supervisor shall complete Personnel Form #147 and meet with the employee for a formal discussion of the exact offense(s) violated by the employee. The supervisor shall instruct the employee how he/she may improve his/her performance and/or behavioral problem.

Page revised 2/12/01, 2/03/03, 12/12/05

CITY OF DOTHAN/GRAY 003989
CONFIDENTIAL

The supervisor shall also explain to the employee the severity of a "Final Written Warning" or a "Final Written Warning and Suspension Without Pay" and shall explain to the employee that the commission of any other offense classified as "Minor" within a twelve-month period from the date of this warning report shall be grounds for the employee's discharge. The employee shall sign the completed Personnel Form #147 report; a copy shall be given to the employee and the original forwarded to the Personnel Department and shall become part of the employee's personnel file. (Note: A due process hearing [Determination Hearing] shall be conducted with an employee before any decision is made to suspend an employee without pay—Personnel Regulation IV, DUE PROCESS PROCEDURE.)

Sec. 3-30.    (4)    Final Warning and One To Twenty Days Suspension Without Pay:  This is the disciplinary action that follows violation of any offense classified as "Major."  A due process hearing (Determination Hearing) is conducted with the employee prior to making a decision to implement this disciplinary action (Personnel Regulation IV).  The supervisor will meet in a formal discussion with the employee explaining the exact offense(s) the employee violated and the seriousness and consequences of the offense(s).  The supervisor shall instruct the employee how he/she may correct his/her performance and/or behavioral problem.  The supervisor shall explain to the employee that the violation of any further "Major Offense" within two years from the date of record of this offense is grounds for discharge.  At the time of the meeting, the supervisor will have completed the Personnel Form #147 report documenting all points discussed in the formal meeting.  He signs the Form and gives a copy to the employee.  The original is forwarded to the Personnel Department, which becomes a part of the employee's personnel file.  (PBA 5/9/94)

A "day", as referenced in the Civil Service Act of Dothan, Section 22, Suspensions, is defined as 8 hours pay or compensation, or in the case of shift employees 1/10 (.10) of their bi-weekly pay or compensation.  (An alternative method to administer the above provision of the Personnel Rules would be to transfer the suspended employee to 8-hour shifts for the duration of their suspension) (PBA 2/12/01)

Sec. 3-30.    (5)    Discharge:  Discharge is the most severe disciplinary action that may be taken against an employee.  A due process hearing (Determination Hearing) must be conducted with an employee prior to making a decision to discharge an employee (Personnel Regulation IV).  An employee who does not correct performance and/or behavioral problems after the progressive discipline process for "Minor" and/or "Major Offenses" or an employee who commits an "Intolerable Offense" is indicating an inability or unwillingness to correct his/her behavior.  By utilizing progressive discipline, it is hoped that many employee problems can be corrected at an early stage, thereby benefiting both employees and the City by eliminating an employee's discharge from his/her position with the City of Dothan.

Sec. 3-30.    (6)    Demotion:  See Personnel Rules and Regulations VIII, §8.53.  The application of one disciplinary action does not preclude the imposition of another.  (Note: A due process hearing [Determination Hearing] must be conducted with an employee prior to a decision being made to demote an employee [Personnel Regulation IV].)

CITY OF DOTHAN/GRAY 003990
CONFIDENTIAL

Personnel Rules and Regulations

Sec. 3-40.   SCHEDULE OF DISCIPLINARY PENALTIES: This schedule of Disciplinary Penalties is not all inclusive. There may be offenses other than those listed for each category of "Minor", "Major", or "Intolerable Offenses" for which the appropriate level of discipline is administered. These types of offenses shall be explained in full on Personnel Form #147 under "Other" "Other" for each category of offense. The application of one disciplinary action does not preclude the imposition of another.

Sec. 3-40.   SCHEDULE OF DISCIPLINARY PENALTIES: This schedule of Disciplinary Penalties is not all inclusive. There may be offenses other than those listed for each category of "Minor", "Major", or "Intolerable Offenses" for which the appropriate level of discipline is administered. These types of offenses shall be explained in full on Personnel Form #147 under "Other" for each category of offense. The application of one disciplinary action does not preclude the imposition of another.

| Sec. 3-41.   MINOR OFENSES | First Offense | Second Offense | Third Offense | Fourth Offense |
|---|---|---|---|---|
| Sec. 3-41. (1)   Failure to give proper notice of an absence which could be anticipated | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41. (2)   Unauthorized absence. | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41. (3)   Failure to report to work as soon as possible from any period of paid time off, included but not limited to, personal illness, extended disability, sickness in family, death in family, jury duty, vacation. | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41. (4)   Tardiness (An employee not at his or her assigned workstation at the beginning of the first hour of his/her workday is considered tardy.) | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41. (5)   Leaving work without permission | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41. (6)   Interfering with the work of others, offensive personal habits which interfere with efficiency. | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41. (7)   Inaccurate, careless, failure to comply with standard procedures, makes recurring errors. | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41. (8)   Unsatisfactory learning rate, unable or unwilling to learn or understand work or new procedures as demonstrated by work standard or performance rating. | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41. (9)   Unreliable, forgets to carry out normal assigned tasks; requires unusual amount of supervisory time. | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41. (10) Uncooperative in dealing with co-workers, customers, supervisors, or public. | Formal Counseling | | Final Warning or Final Warning and Suspension | Discharge |

CITY OF DOTHAN/GRAY 003991
CONFIDENTIAL

Reg.III, continued.

| Sec. 3-41.       MINOR OFFENSES continued | First Offense | Second Offense | Third Offense | Fourth Offense |
|---|---|---|---|---|
| Sec. 3-41. (11)    Improper use of, or failure to exercise, supervisory authority and responsibility. | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41. (12)    Discourteous treatment of the public, customers or co-workers. | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41. (13)    Violation of routine safety practices, failure to report a work related injury within a twenty-four hour period. | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41. (14)    Improper use or care of city property. | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41. (15)    Political solicitation during working time. | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41. (16)    Violation of dress codes as prescribed by department policy. | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41. (17)    Language or conduct that is abusive or offensive to members of the opposite sex. | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |
| Sec. 3-41. (18)    Other; explain in detail on Personnel Form #147 the offenses(s) committed by the employee. | Formal Counseling | Written Warning | Final Warning or Final Warning and Suspension | Discharge |

CITY OF DOTHAN/GRAY 003992
CONFIDENTIAL

**Reg.III, continued.**

| Sec. 3-42.        MAJOR OFFENSES | First Offense | Second Offense | Third Offense | Fourth Offense |
|---|---|---|---|---|
| Sec. 3-42. (1)    Negligent damage to City property or to property of others. | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (2)    Dangerous horseplay, threatening physical harm to or otherwise endangering others. | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (3)    Serious violations of safety practices which could have dangerous consequences. | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (4)    Serious violation of city ordinances, administrative regulations, or department rules which could have dangerous consequences. | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (5)    Sexual harassment as defined in Personnel Rules and Regulations XI, Sec. 11-80. | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (6)    Action(s), or lack of action(s) that could endanger the life or health of self or others, that could cause undue financial loss to the City, negligence in carrying out assigned tasks or duties or responsibilities of one's position. | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (7)    Gambling or unauthorized loaning (loan sharking) of money while on the job. | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (8)    Sleeping on the job. | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (9)    Possession of alcoholic beverages with no proof of intention to consume while on the job. | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (10)   Careless misrepresentation of work records. | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (11)   Irresponsible use of City credit, purchasing authority. | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (12)   Delaying or restricting City operations or influencing others to do so. | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (13)   Misconduct, contravention of criminal law, or any disgraceful conduct which reflects unfavorably on the City as an employer or public entity. | Final Warning and Suspension | Discharge | | |

CITY OF DOTHAN/GRAY 003993
CONFIDENTIAL

Reg.III, continued.

| Sec. 3-42.    MAJOR OFFENSES continued | First Offense | Second Offense | Third Offense | Fourth Offense |
|---|---|---|---|---|
| Sec. 3-42. (14)    Insubordination | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (15)    Release of confidential or restricted information. | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (16)    First time loss of driver's license where driver's license is a requirement for the position in which employed.  License must be reinstated within ninety days, otherwise employee will be terminated after due process § 3-43. (20). (PBA 1-13-92, 1-9-95) | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (17)    Failure to report for emergency call-out or standby duty in maximum time allowed as specified at Personnel Regulation VIII, § 8-80 (PBA 1-9-95) | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (18)    Testing positive for alcohol (0.02 to 0.03999 for CDL/Public Safety/Safety Sensitive positions; 0.02 to 0.07999 for all other positions) in accordance with City of Dothan Drug and Alcohol Testing Policy. (PBA 11-10-97) | Final Warning and Suspension | Discharge | | |
| Sec. 3-42. (19)    Other, explain in detail on Personnel Form #153 the offense(s) committed by the employee. (PBA 1-9-95) | Final Warning and Suspension | Discharge | | |

Page revised 11-10-97 corrected 12/19/97

CITY OF DOTHAN/GRAY 003994
CONFIDENTIAL

Personnel Rules and Regulations

Reg.III, continued.

| Sec. 3-43.          INTOLERABLE OFFENSES | First Offense | Second Offense | Third Offense | Fourth Offense |
|---|---|---|---|---|
| Sec. 3-43. (1)     Possession and/or use of controlled, non-prescribed dangerous drugs, while on the facility or on the job by other than sworn law enforcement officers in the line of duty performing evidence seizure or undercover operations of the Dothan Police Department. | Discharge | | | |
| Sec. 3-43. (2)     Use of alcohol while on the job or under the influence of alcohol while on the job | Discharge | | | |
| Sec. 3-43. (3)     Driving a City vehicle while under the influence of intoxicants such as alcohol, non-prescribed drugs, controlled substances. | Discharge | | | |
| Sec. 3-43. (4)     Actual physical possession and/or use of a firearm or force against another person while on City property by other than sworn law enforcement officers operating within the line of duty (NOTE: With the exception of properly permitted firearms secured in privately owned vehicles which are parked in public parking lots). | Discharge | | | |
| Sec. 3-43. (5)     Deliberate falsification of records and/or personal misrepresentation of statements given to a supervisor, officials, the public or Boards. | Discharge | | | |
| Sec. 3-43. (6)     Falsifying employment application, employee records or medical records. | Discharge | | | |
| Sec. 3-43. (7)     Punching another employee's time card or deliberate falsification of time cards. | Discharge | | | |
| Sec. 3-43. (8)     Willful and deliberate damage to city property, the public, or the property of co-employees. | Discharge | | | |
| Sec. 3-43. (9)     Violation of City of Dothan Drug Testing Policy and Procedures approved by Personnel Board 4/08/02 as amended. | Discharge | | | |
| Sec. 3-43. (10)    Theft of City property, property of the public or co-employees. | Discharge | | | |

CITY OF DOTHAN/GRAY 003995
CONFIDENTIAL

Reg.III, continued.

| Sec. 3-43.   INTOLERABLE OFFENSES continued | First Offense | Second Offense | Third Offense | Fourth Offense |
|---|---|---|---|---|
| Sec. 3-43. (11)   Membership in any organization which advocates the overthrow of the government of the United States by force or violence. | Discharge | | | |
| Sec. 3-43. (12)   Acceptance of gratuities for personal favors or personal gain as defined by the ethics laws of the State of Alabama | Discharge | | | |
| Sec. 3-43. (13)   Refusal to be examined by a City authorized, fully licensed physician when so directed. | Discharge | | | |
| Sec. 3-43. (14)   Prohibited political activity as defined in Section 11-80-6, Code of Alabama, 1975 as amended. | Discharge | | | |
| Sec. 3-43. (15)   Repeated sexual harassment as defined by Personnel Rules and Regulations XI, §11-.80. | Discharge | | | |
| Sec. 3-43. (16)   Abandoning the job, unauthorized absence for five consecutive work days. | Discharge | | | |
| Sec. 3-43. (17)   Unsatisfactory work performance during the probationary period as evidenced by the employee's job performance evaluation reports. | Discharge | | | |
| Sec. 3-43. (18)   Gross insubordination. | Discharge | | | |
| Sec. 3-43. (19)   Other; Explain in detail on Personnel Form #153 the offense(s) committed by the employee. | Discharge | | | |
| Sec. 3-43. (20)   Where driver's license is a requirement for the position in which employed, second loss of driver's license within a two-year period of time or loss for a period greater than ninety days. (PBA 1-13-92). | Discharge | | | |

CITY OF DOTHAN/GRAY 003996
CONFIDENTIAL

Reg.III, continued.

| Sec. 3-44 SICK LEAVE ABUSE OFFENSES (See §9-60(10) for implementation) | First Offense | Second Offense | Third Offense | Fourth Offense |
|---|---|---|---|---|
| Sec. 3-44. (1) Employee has used eight (8) occurrences of unscheduled sick leave in a twelve (12) month period, and/or | Formal Counseling | First Written Warning | Final Written Warning/Discharge | |
| Sec. 3-44. (2) Where there is a consistent pattern of utilization of sick leave. (PBA 5/9/94) | Formal Counseling | First Written Warning | Final Written Warning/Discharge | |

Sec. 3-45 **VEHICLE ACCIDENT POINT SCALE AND DISCIPLINARY PROGRESSION.**

(1) Employees accumulating vehicle accident points under the City of Dothan Motor Vehicle Operations Policy, adopted herein by reference, will be subject to the following disciplinary action(s), administered in accordance with this Regulation III and Regulation IV – Due Process Procedure:

| | |
|---|---|
| 1 point | Formal Counseling Report |
| 2 points | One (1) Day Suspension |
| 3 points | Three (3) Day Suspension |
| 4 points | Five (5) Day Suspension |
| 5 points | Ten (10) Day Suspension |
| Over 5 points | 11 – 20 Day Suspension or Termination |

(2) The disciplinary action progression under this Vehicle Accident Point scale is independent of other disciplinary action progressions authorized by these Personnel Rules and Regulations. (PBM 9-10-01)

Sec. 3-50. Appeal of Disciplinary Action: Any Classified employee or laborer, other than those under probationary status, may appeal any disciplinary action taken by following the procedure outlined in REGULATION V - GRIEVANCE AND APPEAL PROCEDURE or by following the procedures in Sections 21 and 22 of "the Civil Service Act of Dothan" outlined below.

Sec. 3-50. (1) Discharges: A discharged employee may, within ten (10) days after receipt of the discharge notice, appeal the action of the department head to the Personnel Board, by filing a written answer to the chairman with a demand for a hearing. It shall be the duty of the Board to fix a time and place for hearing the appeal, and to give notice thereof to the employee and the department head, which appeal shall be heard by the Board on a date not later than thirty (30) days from the date the appeal is taken. The Personnel Board shall have the authority, after an appropriate hearing, and based upon a finding of the facts and applicable law involved, to reduce the severity of the disciplinary action taken by the department head, and issue such orders and decrees with reference thereto as may be just and reasonable, and for the best interest of the City. (rev. CSA 5/14/92)

Sec. 3-50. (2) Suspensions: A suspended employee may, within ten (10) days from the date of receipt of the suspension notice, file with the Personnel Board and the department head a written answer or explanation of the assigned charges and such answer shall be preserved as a part of the Public Record and the Board may, for cause shown, set aside such suspension order. (PBA 4-8-85)

REGULATION IV - DUE PROCESS PROCEDURE

Sec. 4-10.   Policy: When disciplinary action is indicated, it is necessary that such action be administered timely, justly, uniformly, and impartially.

Sec. 4-20.   Procedure: Whenever any such disciplinary action could result in suspension, demotion, or dismissal of a classified employee or laborer, the following procedures shall be followed to insure that each employee in fact receives "due process" in accordance with legal precedents.

Sec. 4-20.   (1)   Department heads, as appointing authorities, shall conduct determination hearings for their respective departments. If a department head is absent for any reason, the individual designated as acting department head is to conduct the hearing. For uniformity and convenience, standard forms have been prepared and are to be used.

Sec. 4-20.   (2)   The department head shall have completed Personnel Forms #147 (Employee Disciplinary Action Report Form) and #153 (Notice of Determination Hearing). The notices shall be served by the department head or through the Dothan Police Department to the affected employee at least twenty-four (24) hours prior to the date of the hearing. (PBA 6/8/92)

Sec. 4-20.   (3)   The Personnel Director or his designated representative shall be present at the hearing and assure that Personnel Form #154 (Interview Questions Prior to Determination Hearing) is completed before the hearing begins.

Sec. 4-20.   (4)   Within three (3) working days after the hearing is conducted, the department head shall render a decision based on the facts in the case, and notification of the decision (completed Personnel Form #155 - Decision of Determination Hearing) shall be served to the affected employee by the department head or through the Dothan Police Department.

Sec. 4-20.   (5)   In all cases, Forms #147, #153 and #155 shall be completed in triplicate. The affected employee shall receive a copy, the department head shall be furnished a copy, and the original shall be retained by the Personnel Director to be placed in the employee's 201 File.

Sec. 4-20.   (6)   In the event of a particularly violent action or intolerable offense on the part of an employee, e.g. fighting, destruction of City property, gross insubordination, etc. the employee shall be removed from the job and placed on administrative leave with pay until the determination hearing is held and the decision is made.

CITY OF DOTHAN/GRAY 003998
CONFIDENTIAL

REGULATION V - GRIEVANCE AND APPEAL PROCEDURE

Sec. 5-10.   **Policy:** It is the Policy of the Personnel Board to provide equitable treatment of all its employees. In order that local government can meet the needs of its citizens, it is imperative that there exist an orderly and constructive employee-employer relationship. In order to insure that such a relationship continues to exist, there must be prompt consideration and equitable adjustment of employee grievances.

Sec. 5-20.   **Definition:** A grievance is defined as a dispute or complaint by any classified employee with regard to the administration of policies, rules, procedures or other aspects of the working relationship with the City. Actual policy, rules and established procedure cannot be grieved. A grievable issue exists where there is a complaint regarding the administration of such policy, rule or procedure. Grievances shall include any dispute concerning

* the interpretation or application of policies, rules or procedures governing disciplinary action, performance ratings, attendance and hours of work, working conditions, and
* allegations of personal bias or reprisal, as well as
* any other matters which are germane to the employee's employment, and which are not specifically reserved to the Personnel Board under the law and rules of the Personnel Board, or are not reserved to the various governmental bodies under any statutory provision.

Non Grievable Issues: Matters dealing with classification, pay compensation and benefits and actions specifically set forth in the Civil Service act of Dothan and Personnel Board rules and regulations shall not be considered under grievance procedures, but shall be addressed in accordance with the provision set forth in the Civil Service Act and in the rules and regulations. Any question as to what constitutes a grievance or what should be processed as a grievance or what should be processed as a matter subject to the rules and regulations, shall be determined by the Personnel Director, subject to review by the Personnel Board.

Sec. 5-30.   **Procedure:** Any classified employee who is not under initial probationary status in accordance with the Policy outlined above may initiate a grievance. In the presentation of grievances, grievants are assured of freedom from restraint, interference, discrimination or reprisal. All adjudication of grievances processed under this rule shall be retroactive until the time the grievance occurred or as modified by the Personnel Board. The grievants may be represented by counsel only in step Two-B (Section 5-30.(2) [b]) of the grievance procedure.

Sec. 5-30.   **(1)   Step One:**   An employee who desires to initiate a Grievance must file a complaint in writing (Personnel Form Number 118), within ten working days after the date of the incident giving rise to the complaint, with the supervisor and furnish a copy thereof to the department head and the City Manager, unless the complaint is against the supervisor, in which case the grievant bypasses the supervisor and files the grievance directly with the department head. The department head shall, within five working days thereafter, arrange a conference on the grievance with the grievants, with or without the supervisor, and such other representatives as the department head and the grievants may agree upon in order to ascertain all the facts in the grievance. Both the department head and the grievant shall make a good faith effort to resolve the grievance. Within ten working days after such conference, the department head shall advise the grievant in writing of the disposition of the grievance, a copy of which shall be transmitted to the Personnel Director.

If the disposition of the grievance from the department head has been filed with the Personnel Director and served on the grievant as herein prescribed, and the disposition is not satisfactory to the grievant, the grievant may appeal the grievance to step two within five working days after such report has been filed. Unless the grievance shall be appealed to step two, the grievant shall be barred from any further proceedings with respect to such grievance.

CITY OF DOTHAN/GRAY 003999
CONFIDENTIAL

Sec. 5-30.    (2)    Step Two: Appeal to the Personnel Board. In order for a grievance to be considered in step two, it must be presented in writing utilizing personnel form number 118 by the grievant to the Personnel Director with a copy to the department head within the time prescribed in step one above. The grievance as presented to the Personnel director shall consist of the statement of the grievance, the statement of the supervisor, if any, and the statement of the department head.

        (a)    Pre-hearing fact finding investigation. Within the period of twenty working days, the Personnel Department will conduct a fact finding investigation in order to ascertain for the Personnel Board the pertinent facts involved in the grievance. The Personnel Director or his/her designate shall obtain from the grievant and the department head a list of all individuals or witnesses involved in the grievance. The Personnel Director or his/her designate shall interview or obtain statements from the grievant and the department head and other witnesses to the grievance as noted above. The Personnel Director shall determine from the facts gathered from the investigation of the grievance what policies, rules or procedures are in question concerning the grievance and, if the grievance meets the criteria of the grievance policy, definition and procedures. The Personnel Director shall have compiled a report of all the findings for and certify the report to the Personnel Board along with a copy to the grievant and the department head.

        (b)    Personnel Board. Within twenty working days of receiving the Personnel Director's report, the Personnel Board shall convene a meeting with notices to all parties of the grievance to hear testimony, if any, as to the disposition of the grievance and whether or not to proceed with a Personnel Board Hearing.

            If it is the decision of the Personnel Board to hear the grievance, the Board shall schedule a public hearing on the grievance as early as practical. Notice of the date, time and place shall be given to the grievant and the appointing authority (Department Head). The parties may be represented by counsel. The Board shall not be bound by technical rules of evidence and court but shall seek diligently all the information and evidence bearing on the merits of the case.

Sec. 5-40.    Attendance of witnesses. It shall be the duty of the Personnel Director to subpoena witnesses for or against the employee upon written request of either party to the hearing. Civil Service employees under the jurisdiction of the Personnel Board shall be required to attend and testify without subpoena.

Sec. 5-50.    Personnel Board Hearing: The hearing before the Board shall be de novo, and the Board may rescind, modify, alter or affirm the action of the appointing authority, if any, or may impose such additional or different action as may be warranted by the evidence adduced at the hearing. Within thirty working days after the conclusion of the hearing, the Board shall render its decision in the form of a Personnel Board Order. Copies of the decision shall be delivered to all parties at interest. The Board shall require that all testimony introduced at hearings shall be under oath and recorded and transcribed by a certified Court Reporter and that such record shall be preserved and filed in the Personnel Department. Any party to the hearing may request copies of the transcript, provided all costs of such transcription is borne by the party requesting same.

CITY OF DOTHAN/GRAY 004000
CONFIDENTIAL

REGULATION VI - CLASSIFICATION PLAN

Sec. 6-10.    **Purpose:**  The Classification Plan provides a complete inventory of all positions within the Classified Service and accurate descriptions and specifications for each class of employment. The plan standardizes titles, each of which is indicative of a definite range of duties and responsibilities and has the same meaning throughout the Classified Service.

Sec. 6-20.    **Classification Plan Defined:** The Classification Plan is the official and approved system of grouping positions into appropriate classes and covers all positions under the merit system.  It includes:

- A schematic index to class specifications,
- Class specifications, and
- Rules of administration.

Sec. 6-30.    **Responsibility of Administration:**  The Personnel Director shall be responsible for administering the Classification Plan.  The Director may delegate such functions as he deems advisable.

Sec. 6-40.    **Composition of the Classification Plan:** The Classification Plan consists of:

Sec. 6-40.    (1)    Groupings of classes of positions which are of approximately equal difficulty and responsibility, which require the same general qualifications and which can be equitably compensated for within the same range of pay under similar working conditions.

Sec. 6-40.    (2)    Classification Titles:  Classification titles are descriptive of the work of each classification which shall identify the classification.  Class titles shall be used in all personnel, accounting, budget, appropriation, and financial records.  No person shall be appointed or employed in a position in the Classified Service under a title not included in the Classification Plan.  Titles used in the course of departmental routine to indicate authority, status in the organization, or administration rank may continue to be used for such purposes.

Sec. 6-40.    (3)    Classification Specifications:  Written specifications for each classification containing a description of the nature of the work, relative responsibility of the position, examples of work which are illustrative of the duties of the position, requirements of the position in terms of knowledge, abilities, and skills necessary for performance of the work, and a statement of experience and training desirable for recruitment.  Specifications are to be interpreted in their entirety and in relation to others in the Classification Plan.  Particular phrases or examples are not to be isolated and treated as a whole definition of the class.  Specifications are deemed to be descriptive and explanatory of the kind of work performed and not necessarily inclusive of all duties performed.

Sec. 6-40.    (4)    An allocation list showing the classification title of each position in the City service as identified by the name of the employee holding that position.

Sec. 6-50.    **Uses of the Classification Plan:** The Classification Plan shall be used:

Sec. 6-50.    (1)    In preparing public announcements of examinations or vacancies.

Sec. 6-50.    (2)    As a guide in preparing examinations that will measure the qualifications needed to perform the work of the class.

Sec. 6-50.    (3)    In determining lines of promotion and in developing employee training programs.

Sec. 6-50.    (4)    In determining salaries to be paid for various types of work.

Sec. 6-50.    (5)    In determining personal service items in departmental budgets.

Sec. 6-50.    (6)    In providing uniform job terminology understandable by all City officers, employees and the general public.

CITY OF DOTHAN/GRAY 004001
CONFIDENTIAL

Sec. 6-60.   **Maintenance of the Classification Plan:**  The Personnel Director is charged with the responsibility for the proper and continuous maintenance of the Classification Plan so that it will reflect on a current basis the duties being performed by each employee in the Classified Service and the class to which each position is allocated.  The Director shall make necessary amendments to the Classification Plan in the form of new classifications, revisions of existing classifications and the abolition of classifications no longer required in the plan.  Revisions of specifications and reallocations within the approved Classification Plan shall be made as follows:

Sec. 6-60.   (1)   The Personnel Director shall study the duties and responsibilities of each new position and place it in the appropriate class within the classification plan for the duties performed.

Sec. 6-60.   (2)   Changes in the duties and responsibilities of a position, involving either the addition of new assignments or the taking away or modification of existing assignments shall be reported to the Personnel Director by department heads.  If these changes are determined to be permanent, are more than minor changes, and justify a reallocation to a different class, the Director shall place such position in the appropriate class.

Sec. 6-60.   (3)   The Personnel Director shall periodically review the classification of positions, and upon the basis of the investigation, make or recommend the making of appropriate changes in allocations or in the Classification Plan.

Sec. 6-60.   (4)   Any deletions or additions of positions are subject to the approval of the Personnel Board.

CITY OF DOTHAN/GRAY 004002
CONFIDENTIAL

REGULATION VII - JOB PERFORMANCE EVALUATIONS

Sec. 7-10.  **Purpose:**  The Personnel Director shall establish, in cooperation with department heads, a job performance evaluation system for each position classification in the Classified Service based on standards of employment and output of employees.  The system may be amended periodically as necessity arises.  Its main objective is to provide employees with sufficient information to enable them to improve their job performance.  Job performance evaluation ratings shall be considered in such manner and with such weight as hereby set forth in the Personnel Rules and Regulations: (PBA 5-11-09)

- In determining pay increases or decreases within the established limits,
- As a factor in promotional tests,
- As a factor in determining layoffs when forces are reduced because of insufficient funds or work,
- In determining the order in which names are to be placed on a reemployment register, and
- As a means of discovering employees who should be promoted, demoted, transferred or dismissed.

Sec. 7-20.  **Procedure:**  Job performance evaluations shall be made by the employee's supervisor.  All adverse evaluations shall include recommendations for corrective action for the employee.  After review and final approval of the approving authority all evaluations shall be discussed with the employee and shall be signed by the employee following the conclusion of such discussions.  In the event that an employee disagrees with an evaluation rating, he/she shall have the right to utilize the Grievance and Appeal Procedure.  All job performance evaluations shall become a part of the individual's personnel records. (PBA 09-19-88)

Sec. 7-30.  **Period of Evaluation:**  Job performance evaluations shall be made in writing at such periodic intervals as the Personnel Director deems necessary to effectively evaluate an employee's performance during the probationary or working test period established for the class of position held.  Upon successful completion of the probationary or working test period, job performance evaluations shall be made in writing at least annually. (See §2-80. -  Working Test Period). (Revised PBA 6-9-86)

Sec. 7-40.  **Unsatisfactory Job Performance Post Probationary Employees:**  If during the period of evaluation an employee's job performance is unsatisfactory, the employee's department head and evaluating supervisor shall immediately meet with the employee in order to determine the areas in which the employee fails to meet the expected levels of job performance and identify ways in which the employee may be able to improve his or her job performance.

The employee will be placed on a performance improvement plan and reevaluated at the completion of six months.  Failure of the employee to improve job performance to a satisfactory level at the completion of the six-month reevaluation period shall be grounds for discharge. (PBA 12-10-90, PBA 12/08/08)

A performance improvement plan allows an employee to have a performance planning session, coaching session, and final appraisal during this special evaluation period to ascertain such ability to maintain employment. (PBA 12/08/08)

An employee on this type of special evaluation schedule will not be eligible for promotion or transfer or other job action, including pay increases, until the employee has completed the six-month special evaluation schedule with a satisfactory or higher rating. (PBA 8-12-02, 5-11-09)

Sec. 7-50.  **Confidentiality:**  Job performance evaluations shall be confidential and shall be made available to only:

- The employee,
- the employee's supervisor and department head,
- the Personnel Director or representative, and the Personnel Board.

Page -24-

CITY OF DOTHAN/GRAY 004003
CONFIDENTIAL

REGULATION VIII - COMPENSATION PLAN AND WAGE ADMINISTRATION

Sec. 8-10.   Purpose: The Compensation Plan shall include a schedule of pay ranges consisting of minimum and maximum rates of pay for all classes of positions included in the Compensation Plan as adopted by the Personnel Board, and subsequent amendments thereto, and in accordance with the Compensation Plan and Policy approved by the Personnel Board on December 11, 2006 and subsequent amendments thereto. (PBA 3-11-91, *12-11-06, 5-11-09)

Sec. 8-15.   Policy: It is the policy of the City of Dothan to provide employee compensation that reflects equitable pay for positions requiring comparable knowledge, skills, and abilities. (PBA *12-11-06) (See CSA Sec. 11 Classification of Positions)

Sec. 8-20.   Pay Ranges:

Sec. 8-20.   (1)   Development and Maintenance of Pay Ranges:  Pay ranges shall be set with minimum and maximum rates of pay, in accordance with the procedure set out in the Compensation Plan and Policy.  (PBA 4-10-89, *12-11-06, 5-11-09)

Sec. 8-20.   (2)   Actions Pertaining to Pay Ranges:   Pay ranges furnish flexibility in providing performance/merit pay increases, promotions, and other related personnel actions for employees in the classified service, and in meeting conditions requiring pay adjustment. (PBA 10-16-89, 3-11-91, *12-11-06, 5-11-09)

Sec. 8-30.   Entrance at the Minimum:  An employee shall be paid, upon his/her original appointment to a classified or laborer position, the minimum rate of pay for that position except when it is determined that a new employee possesses exceptional qualifications or labor market conditions warrant employment at a higher rate in the pay range.  The authority to enter an employee above the minimum rate requires a request by the Appointing Authority, recommendation by the Personnel Director, and approval by the Governing Body. (PBA 04-09-84, 5-11-09)

Sec. 8-30.   (1)   An employee promoted to a position with a minimum pay rate that is equal to or less than his/her current pay rate shall receive a pay increase of at least 10% based on the employee's current pay rate.  In no event will an employee's pay rate exceed the maximum of the pay range to which the employee is being promoted.  (PBA 09-19-88, 10-08-07, 5-11-09)

Sec. 8-30.   (2)   An employee transferred to a different position with a minimum starting pay rate that is less than his/her current pay rate shall not receive a decrease in pay. (PBA 5-11-09)

Sec. 8-30.   (3)   An employee re-employed or reinstated to his/her former position, in accordance with §2-50(3) – Re-employment Registers and §10-10(1) - Resignation, and at the request of the Appointing Authority, may be paid at the same rate that he/she was receiving at the time of layoff or other separation in good standing.  In no event will the employee's pay rate exceed the maximum or fall below the minimum of the pay range to which the employee is being rehired. (PBA 11-12-02, 5-11-09)

*administrative changes made to reflect the Personnel Board's adoption of the Compensation Plan and Policy December 11, 2006

Page revised 12/01/00, 11/12/02, *12/11/06, 10/08/07, 5/11/09

CITY OF DOTHAN/GRAY 004004
CONFIDENTIAL

Sec. 8-40.    Lines of Progression:  The city recognizes that certain positions require a period of formal training for certification or an apprenticeship training period with the city before an employee is able to fully assume and perform the duties and responsibilities of the position.  These positions are Police Officer, Fire Fighter, Auto Equipment Mechanic Apprentice, Electric Meter Technician Apprentice, Lineman Apprentice, Radio Technician Apprentice, Water Station Operator Trainee, Wastewater Treatment Plant Operator Trainee (additional positions may be added or deleted as required upon the request of the Department Head and the approval of the Personnel Director).

Individuals entering any of the above named positions either through appointment, promotion, demotion or transfer will be required to enter the position at the minimum pay rate of the pay range to which the employee is entering. (PBA 08-14-89, 5-11-09)

Sec. 8-41.    **Additional Compensation for Classified Employees:**

Sec. 8-41.    (1)    Classified employees will not be assigned to unclassified positions except by resolution of the Board of City Commissioners. When a Classified employee is temporarily appointed to an unclassified position on an interim or acting basis, they shall receive a minimum additional pay amount of 10% of the base pay rate for the unclassified position, but in no case more than the current pay of the unclassified position, as compensation for the duties performed while serving in such interim or acting position, except where the authorizing Commission Resolution provides for a greater amount in additional compensation. All requests for temporary detail or assignment of a Classified employee to an unclassified position will be submitted in writing and approved by the Personnel Director through the City Manager. (PBA 8/11/03, 5-11-09)

Sec. 8-41.    (2)    A Classified non-probationary employee temporarily detailed or assigned, in writing, by the appointing authority with approval of the City Manager and Personnel Director, to perform the duties of another Classified position with more responsibility and a higher pay range shall, upon completion of not less than four (4) consecutive calendar weeks in the temporary detail or assignment, receive an additional pay amount equivalent to at least 10%, calculated in the same manner as a promotional increase (PBA 10/08/07), for the duration of the temporary detail or assignment.  (PBA 8/11/03, 5-11-09)

Sec. 8-41.    (3)    Classified employees will not be temporarily detailed or assigned to another classified position in a higher pay range in any other manner than stipulated above. (PBA 8/11/03, 5-11-09)

Sec. 8-50.    Promotion:  Promotion means an advancement from one class to another class of positions with increased duties, responsibilities, knowledge, skill and ability requirements, and for which a higher pay range has been established.   Promotional pay policies require that the employee:  (PBA 5-11-09)

Sec. 8-50.    (1)    Employee must not receive less in the new position than was received in the previous position.

Sec. 8-50.    (2)    Employee must not receive less than the minimum pay rate in the pay range authorized for the new positions, and (PBA 5-11-09)

Sec. 8-50.    (3)    Employee's pay rate shall not be limited to the minimum pay rate for the new position if his/her current pay rate is higher than said minimum rate of pay.  (PBA 5-11-09)

Sec. 8-51.    Position Reclassification:  This occurs as a result of a job evaluation study that determines that an employee is performing the duties and responsibilities of a higher position than their present position pay rate would warrant, and the employee's position is assigned to a higher pay range.  Adjustments to the employee's pay rate shall be calculated utilizing the same procedures as for promotions. (PBA 11-20-00, 5-11-09)

Page revised 11/20/00, 8/11/03, 10/08/07, 5/11/09

CITY OF DOTHAN/GRAY 004005
CONFIDENTIAL

Personnel Rules and Regulations

Sec. 8-52.  **Transfer:** Transfer means the lateral movement by an employee within the Classified Service from one position to another position in the same class. A transfer may be within a department or between two separate departments with the approval of the Appointing Authorities involved and the authorization of the Personnel Director. Transfer pay policies require that the transferring employee receive no change in their pay rate. (PBA 5-11-09)

Sec. 8-53.  **Demotion:** Demotion means a change in employment status resulting in the movement from one position to another position that requires lesser minimum qualifications and is assigned a lower pay range. There are five (5) reasons for demotions to take place: At employee's request, as a result of job evaluation, during reductions in force, as a disciplinary measure and unsatisfactory performance of a newly promoted employee. Effects Upon Pay:

Sec. 8-53  (1)  **At the employee's request:** An employee's request for demotion must be approved by the Department Head and by the Personnel Director. The employee must meet all the qualifications required of the job requested to be demoted to or must have previously held the position which the employee is requesting to be demoted to. If the employee has never held the position for which he/she is requesting demotion, they will be required to serve the probationary period that is required by that position. The employee demoted under these conditions shall receive a pay decrease of at least 10% based on the employee's current pay rate. In no event will the employee's pay rate exceed the maximum or fall below the minimum of the pay range to which he/she is being demoted. (PBA 12-14-92, 03/09/09, 5-11-09)

Sec. 8-53  (2)  **As a result of job reclassification:** This occurs as a result of a job evaluation study that determines that an employee is performing the duties and responsibilities of a lower range than their present pay would warrant. The pay of an individual demoted under these circumstances would remain the same. If the employee's present pay is above the maximum of the pay range in which the employee is being demoted, the employee's pay rate would be redlined at the employee's present rate until the pay range maximum increased above the employee's pay rate. If the employee's present pay rate is within the range of the position he/she is being demoted to, their present pay rate would not change and the employee would continue to be eligible for all pay increases as per present compensation plan and policy. (PBA 10-16-89, 12/10/07, 5-11-09)

Sec. 8-53  (3)  **Due to reductions in force:** An employee that is demoted as a result of reduction in force will be placed in the pay range of the position being demoted to at the employee's present pay rate. In no event will the employee's pay rate exceed the maximum of the pay range to which he/she is being demoted. (PBA 5-11-09)

Sec. 8-53  (4)  **As a disciplinary measure:** A demotion of this type is sometimes used as a disciplinary measure where an infraction of rules of conduct occurs and where mitigating circumstances dictate that the employee should not be dismissed nor should he continue to perform his present duties. An employee that is demoted to a lesser position due to disciplinary measures must have previously held the position being demoted to or must meet all the qualifications of the position being demoted to. The pay of employee demoted under these circumstances would be treated the same as in §8-53(1) above. (PBA 10-16-89)

CITY OF DOTHAN/GRAY 004006
CONFIDENTIAL

Personnel Rules and Regulations

Sec. 8-53    (5)    **Result of unsatisfactory performance or at the employee's request of a newly promoted employee:** This situation would occur when an employee is promoted to a higher pay range position and is unable, through no disciplinary infractions, to perform satisfactorily the duties and responsibilities of the higher position. An employee that is demoted in this situation would be allowed to retreat back to their former position within the same pay range at the same rate of pay in which they held at the time of promotion provided the position has not been filled. If their former position has been filled, the employee will be terminated and will be placed on a rehire register for that position for a one-(1) year period of time.   When an employee voluntarily requests a demotion while serving a promotional probationary period, the employee's rate of pay will be determined based on their rate of pay for the former position. (PBA 01-13-89, 03/09/09, 5-11-09)

Sec. 8-60.    **Part Time, Seasonal and Unclassified Positions:** The Personnel Director may, with the approval of the Personnel Board and/or the City Manager, Mayor and City Commissioners, establish rates of pay for part time, seasonal or other employment of a limited duration not to exceed six (6) months. In establishing such rates of pay, the Personnel Director shall take into consideration the applicable rate of full time employment of the same or similar nature, the prevailing rates in other employment and the appropriations available for such part time, seasonal or other employment.

Sec. 8-70.    **Hours of Work:**

Sec. 8-70.    (1)    **General:** Except for shift employees in the Fire Department (Fire Companies), and employees working other special shifts, employees of the City shall be on a forty (40) hour work week. The City's seven day work period begins at 12:00 a.m. Sunday and ends at midnight the following Saturday. Insofar as is possible, work should be scheduled during the regular office hours of the Administrative Department which are 8:00 a.m. to 5:00 p.m. Monday through Friday; however, some departments, may schedule their normal eight (8) hour work day to begin at an earlier hour for operational requirements and/or to serve the public more efficiently. All normal work hours and work hours of scheduled shifts shall be posted on respective departmental bulletin boards.   The Personnel Director shall be notified in writing of scheduled shift hours. Salaries are paid on a biweekly basis and City payroll checks are issued on alternate Fridays following the end of the biweekly pay period (Saturday). (Approved 4-9-84, PBA 7/13/92)

Sec. 8-70.    (2)    **Fire Companies:** Fire Companies shall operate on a twenty-four (24) hour "tour of duty" schedule with twenty-four (24) hours on and forty-eight (48) hours off. Three (3) shifts, A, B, and C, are established to man the Fire Companies.

Sec. 8-70.    (3)    **Trading Time:** A common practice or agreement among employees engaged in fire protection and law enforcement activities is that of substituting for one another on regularly scheduled shifts in order to permit an employee to absent himself/herself from work to attend to purely personal pursuits. This practice is commonly referred to as trading time and shall have no effect on hours of work if the following criteria are met:

(a)    The trading of time is done voluntarily by the employees participating in the program and not at the behest of the City.

(b)    The reason for trading of time is due not to the City's business operations, but to the employees' desires or needs to attend to personal matters.

(c)    A record is maintained by respective departments of all time traded by employees.

(d)    The period during which time is traded and paid back does not extend beyond the calendar year.

(e)    The practice must have the approval of the department head.

CITY OF DOTHAN/GRAY 004007
CONFIDENTIAL

Sec. 8-70.   (4)   Overtime: Classified employees and laborers shall receive compensation for overtime in accordance with the Fair Labor Standards Act (FLSA). Overtime payments will be made in the form of overtime pay. Overtime, within reason, is more appropriate to utilize than additional personnel; however, as a general rule, the requirement of frequent and considerable overtime in a department shall be considered evidence of under staffing and shall be subject to investigation by the Personnel Director. A record of all departmental overtime shall be kept by respective departments and shall be included as supporting documents to respective biweekly payrolls. Compensation shall be made as follows. (PBA 4/8/96, 7/11/05, 6/12/06)

(a)   Any classified employee or laborer, except employees engaged in fire protection activities [29 CFR 553.210] or an employee in law enforcement activities to include sworn police officers and security personnel in correctional institutions [29 CFR 553.211] assigned to a work period as allowed under Section 7(k) of the Fair Labor Standards Act [29 CFR 553.230], and those exempted in paragraph (6) below, who is required to work more than forty (40) hours in the stated seven day work period shall receive pay for those extra hours at one and one-half times his/her regular hourly rate. (PBA 7-13-92, 5/9/94, 4/8/96, 7/11/05, 6/12/06, 10/13/08)

(b)   Employees engaged in fire protection activities as defined in 29 CFR 553.210 and assigned by the Fire Chief to a work period of not less than 7 nor more than 28 days as allowed under Section 7(k) of the Fair Labor Standards Act [29 CFR 553.230] shall be paid at one and one half times the regular hourly rate for all hours worked in excess of the statutory maximum allowed for the work period. The designated work period shall be posted on all Fire Department bulletin boards and shall not be changed without the approval of the City Manager and the Personnel Director. (PBA 5-13-85, PBA 2/14/00, PBA 6/12/00, 6/12/06)

(c)   An employee in law enforcement activities to include sworn police officers and security personnel in correctional institutions within the Police Department assigned by the Police Chief to a work period of not less than 7 nor more than 28 days as allowed under Section 7(k) of the Fair Labor Standards Act [29 CFR 553.230] shall be paid at one and one half times the regular hourly rate for all hours worked in excess of the statutory maximum allowed for the work period. The designated work period shall be posted on all Police Department bulletin boards and shall not be changed without the approval of the City Manager and the Personnel Director. (PBA 6/12/06, 10/13/08)

(d)   In computing overtime hours worked, all paid leave to include vacation, sick leave, holiday, military, etc., shall be compensated as regular hours. (PBA 9-15-86, 7-13-92)

(e)   Members of the Police Department appearing as witnesses under power of subpoena in connection with law enforcement duties on their scheduled time off shall be entitled to overtime compensation at one and one-half times their regular hourly rate for the time spent in court for a minimum of 2 hours. Should Court overtime overlap another type of overtime because of the 2 hour minimum, then the officer will receive no more than one and one-half times their regular hourly rate for any hour or partial hour. (PBA 12-14-98)

(f)   No employee eligible to receive overtime pay shall order himself/herself into overtime work without the approval of his/her department head or, should the situation arise, the Personnel Director. Regularly designated standby crews are considered to have approval if a situation arises whereby they are called out to duty. (See §8-80, Standby and Call Out Rule.)

(g)   All overtime earned in a particular pay period must be paid in that same pay period.

Sec. 8-70.   (5)   [deleted PBA 4/8/96]

CITY OF DOTHAN/GRAY 004008
CONFIDENTIAL

Sec. 8-70.   (6)   **Exemptions From Overtime:** Certain positions in the Classified Service are in the category of Overtime Exempt Positions and do not receive overtime compensation except when recommended by the department head because of unusual circumstances and approved by the City Manager. These positions are identified by an asterisk (*) next to the job code number on Compensation Plan listings and include professional, supervisory and management personnel other than first-line supervisors who must work with their employees or crews when overtime work is required. Before a position is placed in this category, it shall meet all criteria for Exempt Category positions as specified in Section 541.100 Executive, 541.200 Administrative or 541.300 Professional, of the Fair Labor Standards Act. (PBA 4-8-85, 4/8/96, 10/11/04)

Sec. 8-70.   (7)   **Emergency Overtime Policy:** An emergency overtime situation exists when recommended by the Department Head and/or approved by the City Manger. Any Classified employee or laborer other than those exempted in §8-70(6), shall receive Emergency Overtime pay at the rate of one and one-half times his/her regular hourly rate of pay when he/she is instructed to report for duty before he/she has had eight (8) consecutive hours of off duty since the end of his/her last scheduled work period. Any employee who so reports shall be paid at the overtime rate for all hours worked thereafter until he/she has had eight (8) consecutive hours off duty. (PBA 8-9-82)

Sec. 8-70.   (8)   **Employment by a Different Department:** The prescribed rates of pay include payment for all work performed in those classes even though work may be performed in more than one department. Each department may pay its proportionate share of such services but the total compensation received by such employee shall not exceed the prescribed maximum rate for the class.

Sec. 8-80.   **Standby and Call Out Rule:**

Sec. 8-80.   (1)   **Definitions:**

(a)   **Standby:** An employee, as authorized by his/her department head, who is available at a designated non-job site after normal working hours to respond to calls for City services is on standby status.

(b)   **Call Out:** An employee, regardless of whether or not he/she is on standby status, who responds to a call to perform City services after normal working hours, as authorized by his/her department head, is on call out status.

Sec. 8-80.   (2)   **Period of Duty:** Standby status, and related pay for such duty, shall be for a period not less than eight (8) nor more than sixteen (16) hours between normal working days and for no more or less than twenty-four (24) hours on a scheduled off-duty day.

Sec. 8-80.   (3)   **Pay Schedule:**

(a)   **Standby:** Employees designated for this duty shall be paid one (1) hour of regular pay for each such duty shift during the normal work week he/she is on this status, and two (2) hours of regular pay for non-scheduled work days. If called out, such employee shall be paid at the call out rate in lieu of standby pay. Standby pay will be paid to police officers only on non-scheduled days at the rate of two (2) hours of regular pay. This will only apply to situations where officers are on standby for a court appearance. It must be verified by a court liaison. Should the officer need to attend court, Court overtime will be paid in lieu of standby pay.[PBA 12-14-98]

CITY OF DOTHAN/GRAY 004009
CONFIDENTIAL

(b)    Call Out: An employee shall be paid at overtime rates (one and one-half times his/her regular hourly pay rate) for all calls to which he/she responds. Such overtime shall be accounted for in increments of tenths (tenth of an hour equals six minutes). An employee shall be guaranteed a minimum of two (2) hours overtime for each time he/she is called out in intervals of two (2) hours. Overlap of the Call Out 2 hour minimum with another type of overtime will only be paid at one and one-half times the regular hourly pay rate for any hour or partial hour._Such time shall be computed from the time the employee leaves his non-job site and returns to that point (portal to portal). (PBA 6-9-86, 12-14-98]

Sec. 8-80.    (4)    General:

(a)    Department heads shall maintain with Central Dispatch a current list of employees who are on standby for emergency and/or other necessary services.

(b)    Department heads may provide electronic pagers to employees on standby to allow greater freedom of movement of the employee if particular circumstances justify such. The purchase of pagers for this purpose must be made upon the recommendation of the department head and must be approved by the City Manager

(c)    The privilege of taking a City vehicle home may be extended to employees on standby if the frequency of calls or the necessity of special equipment is necessary, or the nature of service is such that a City vehicle is necessary for identification purposes. Such use of City vehicles must be justified and recommended by the department head to the City Manager and approved by same.

Sec. 8-80.    (5)    Exemptions to the Rule:

(a)    Employees are exempt from standby and call out duty if their job classification specifically stipulates the exemption.

(b)    The Personnel Board may exempt supervisory, professional and management personnel from standby and call out duty.

CITY OF DOTHAN/GRAY 004010
CONFIDENTIAL

Sec. 8-90.    Holiday Pay:

Sec. 8-90.    (1)    An annual schedule of holidays can be found at §9-20 Holiday Leave of the Personnel Rules and Regulations.

Sec. 8-90.    (2)    a) When an employee's scheduled work day or scheduled day off falls on an announced holiday, the employee will be authorized to take the equivalent paid time off at a later date in-lieu-of the original holiday. The in-lieu-of holiday must be taken within 12 months from the date of the original holiday or it will be forfeited. Department Heads will be responsible for scheduling the in-lieu-of holidays within the 12-month period as stated above.

b) The maximum holiday hours accruable or payable for employees assigned to a work unit operating on a 24 hour, 7 day basis (hereinafter cited as 24/7 work unit) shall be determined by the number of hours for which the employee is normally and regularly scheduled to work during the normal work period for the work unit. The City recognizes the following shift schedules for holiday accrual and pay purposes for 24/7 work units: 8 hour work shifts (80.0 holiday hours maximum), to 24 hour work shifts (240 holiday hours maximum).

c) Employees transferred from a 24/7 work unit to a non-24/7 work unit or vice versa or between differing shift schedules on 24/7 work units shall have adjustments made in any holiday accrual balances to reflect the number of shift hours worked.

d) All non-24/7 work unit employees shall accrue or receive holiday pay based on an 8 hour work shift, up to a maximum of 80.0 hours accrued or paid in a 12 month period.

Sec. 8-90.    (3)    Supervisors will denote on the employee's time card HO for holidays taken on the actual holiday or HS for an in-lieu-of holiday.

Sec. 8-90.    (4)    A classified employee employed prior to April 13, 1992 leaving city employment in good standing (§10-10, Types of Separation, (1) Resignation or (6) Retirement), shall be authorized for any outstanding in-lieu-of holidays, as described in §8-90(2) above, at the employee's present rate of pay up to the maximums set out in §8-90(2)(b) above. (PBA 8-13-90) (PD 1/7/91) (PBA 4/13/92) (PBA 6-8-98) (PBA 12-14-98) (PBA 7-11-05)

Sec. 8-90.    (5)    Employees employed with the City of Dothan effective on or after April 13, 1992 must utilize outstanding in-lieu-of holidays as described in §8-90(2) above, prior to their separation from the employ of the City. Failure to do so will result in the loss of the holiday. (PBA 4/13/92)

Sec. 8-91.    Allowances:

Sec. 8-91.    (1)    Maintenance Allowances: Allowances given employees in the form of food, lodging, utilities, or other subsistence services shall be included in the total rates and equivalent cash values shall be deducted from the employees' stipulated pay rates. The Personnel Director shall determine such cash values, giving consideration to such factors as the conditions of each individual employment, additional service value of the employee to the City as a result of providing him/her with such subsistence, and the estimated cash value of such subsistence.

Sec. 8-91.    (2)    Travel and other Official Expenditures: The prescribed minimum and maximum rates of pay do not include allowances for official travel or other expenses incurred in City business or allowances made to employees for the official use of personally owned automotive equipment. Employees shall be reimbursed for such expenses in amounts as determined by the Personnel Director.

CITY OF DOTHAN/GRAY 004011
CONFIDENTIAL

Personnel Rules and Regulations

REGULATION IX - LEAVES OF ABSENCE

Sec. 9-10.   **General Policy:**

Sec. 9-10.   (1)   **Official Leaves:** Holiday leave, vacation leave, sick leave, military leave and civil leave are officially established leaves of absence and shall be granted by department heads in accordance with this Division, Regulation IX, of the Personnel Rules and Regulations.

Sec. 9-10.   (2)   **Other:** Periods of unpaid leave up to two (2) weeks shall be requested in writing by the employee and may be granted by department heads on a case by case basis, subject to the approval of the Personnel Director. Periods of unpaid leave exceeding two (2) weeks must be requested in writing by the employee, approved by the department head and the Personnel Board. (PBA 8/15/05).

Sec. 9-10.   (3)   **Maternity Leave:** Pregnancy shall be treated as any other illness. Sick leave and, if necessary, vacation leave may be utilized for this purpose.

Sec. 9-20.   **Holiday Leave:** Announced holidays for all employees are New Year's Day, Martin Luther King's Birthday, Memorial Day, Independence Day, Labor Day, Veteran's Day, Thanksgiving Day, day after Thanksgiving, Christmas Day, and any other day the Personnel Board proclaims a holiday. Whenever possible, when a holiday falls on a Saturday or Sunday, the following Monday shall be declared a holiday for City employees. Employees required to be on regular duty on an announced holiday shall receive compensation according to §8-90, Holiday Pay.

Sec. 9-30.   **Vacation Leave:** The City provides eligible employees with paid vacation leave benefits. All vacation leave shall be computed and reported in hours. Eight (8) hours leave equals one (1) working day, based on the eight-(8) hour, five-(5) day work week. (PBA 6/11/07)

Sec. 9-30.   (1)   **Accrual:** Each department head, classified employee and full time laborer shall accrue vacation leave as follows: (PBA 6-8-87, PBA 6/11/07)

    (a)   Employees with continuous service up to and through ten (10) years shall accrue four (4) hours vacation leave per each completed pay period (except the third pay period of any month) not to exceed a maximum of ninety-six (96) hours per year.

    (b)   Employees with over ten (10) years continuous service shall accrue six (6) hours vacation leave per each completed pay period (except the third pay period of any month) not to exceed a maximum of one hundred forty-four (144) hours per year.

    (c)   The pay period an employee becomes eligible to *accrue* six (6) vacation hours is the pay period after his/her ten-year anniversary hire date falls, except the third pay period of any month. Should an employee's ten-year anniversary hire date fall the pay period before or during a third pay period, his/her accumulation of six (6) vacation hours shall begin the pay period following the third pay period. (PBA 6/11/07)

    (d)   Employees hired during the first week of a pay period (except the third pay period of any month) shall accrue four (4) hours vacation leave for that pay period. Employees hired during the second week of a pay period begin accumulating four (4) hours vacation leave the following pay period unless that following pay period is the third pay period of any month, in which case accumulation begins the first pay period of the following month. Employees hired during the third pay period of any month begin accumulating four (4) hours vacation leave the following pay period. (PBA 6-8-87, PBA 6/11/07)

Page revised 8/15/05, 6/11/07

CITY OF DOTHAN/GRAY 004012
CONFIDENTIAL

Personnel Rules and Regulations

(e) **Public Safety-Fire.** 7K exempt employees with continuous service up to and through ten years shall accrue six (6) hours vacation per pay period. 7K exempt employees with over ten years continuous service shall accrue nine (9) hours vacation per pay period. (PBA 6/11/07)

The accrual formula for 7K exempt employees is computed as follows: Maximum number of shifts allowed x shift length in hours ÷ 24 pay periods per year = accrual per pay period. The maximum number of vacation shifts allowed for Fire Department 7K employees per year is six for employees with continuous service up to and through ten years and nine for employees with over ten years continuous service. (PBA 12-14-98, PBA 6/11/07)

Sec. 9-30.   (2)   **Bonus Vacation Hours:**

(a) An employee who does not use any non-FMLA qualifying sick leave hours for a period of one (1) year shall receive bonus vacation hours based upon his/her sick leave balance as of the last day of the pay period in which his/her anniversary sick day falls. If the employee's sick leave hours balance is 720, he/she shall receive 32 bonus vacation hours. If the employee's sick leave hours balance is at least 96, but less than 720, he/she shall receive 24 bonus vacation hours. (PBA 8-09-04)

(b) **Public Safety-Fire.** 7k exempt employees with a sick leave hours balance of 1080 shall receive 48 bonus vacation hours. If the employee's sick leave hours balance is at least 144, but less than 1080, he/she shall receive 36 bonus vacation hours. (PBA 12-14-98, PBA 6/11/07)

(c) Earned bonus vacation hours may be either added to the employee's vacation leave hours balance or may be paid to the employee at his/her current regular rate of pay.

(d) The employee must notify the department head during the pay period in which his/her anniversary sick day falls, using the appropriate time keeping method (time card or other acceptable time keeping record), whether he/she elects to have the bonus vacation hours added to his/her vacation leave hours balance or whether he/she elects to be paid for the bonus vacation hours at his/her current regular rate of pay. The election to be paid for bonus vacation hours cannot be made in a later pay period.

(e) In the event the employee fails to make an election as stated in 9-30.(2)(d) above, the bonus vacation hours shall be added to the employee's vacation leave hours balance as set out in 9-30.(2)(a) above. (PBA 8-09-04)

(f) The bonus vacation hours shall be credited to the employee during the pay period in which his/her anniversary sick day falls using the appropriate hours code. The election to be paid for bonus vacation hours cannot be made in a later pay period. (PBA 03-09-87)

(g) Sick leave hours substituted for qualifying FMLA hours are not considered sick leave use for purposes of determining eligibility for bonus vacation hours. However, if an employee has been advanced sick leave, they will be ineligible for vacation bonus hours until such time an employee's sick leave balance is at least 96 hours. (PBA 8-09-04, 10/11/10)

Sec. 9-30.   (3)   **Maximum Carry Over of Vacation Hours Into the Following Year.** These hours must be earned or accrued during the current year (January through December).

Page revised 12/14/98, 8/09/04, 6/11/07, 10/11/10

CITY OF DOTHAN/GRAY 004013
CONFIDENTIAL

(a)   Employees with continuous service up to and through ten (10) years may carry forward up to a maximum of 96 regular vacation hours plus bonus vacation hours, if any.

(b)   Employees with over ten (10) years continuous service may carry forward up to a maximum of 144 regular vacation hours plus bonus vacation hours, if any.

(c)   The year-end balance used in calculating carry over hours is the balance of vacation hours as of the last day of the last complete payroll period of the current year. (Employees who have or will have accrued vacation hours in excess of the maximum to be carried forward should use those hours on or before December 31st in order to avoid losing them.) Any vacation hours used or bonus hours earned after this date and before the end of the calendar year are treated as used/earned in the following calendar year as they are not reported and paid for until the first pay period in the new year. (PBA 05/14/12)

(d)   Maximum carry over of vacation hours into the following year for Public Safety: 7K employees will use the same logic as described in Section 9-30(3). [PBA 12-14-98]

Sec. 9-30.   (4)   Utilization of Vacation Leave:

(a)   Department heads will be responsible for scheduling the time at which vacation leave may be taken and shall allow or direct the taking of vacation leave as will best promote the efficiency of their employees and department and to insure that all employees are able to utilize their accrued vacation leave. Should a department head fail to allow an employee to take proper advantage of his/her accrued vacation leave due to emergencies or other mitigating circumstances, then the Department Head shall submit an explanation as to why vacation leave was not taken to the City Manager for his recommendation, and subject to the approval of the Personnel Board, said employee will be paid for his/her accrued vacation leave in excess of the maximum carry-over amount. In the absence of emergencies or other mitigating circumstances, accrued vacation hours in excess of the maximum to be carried forward at the end of the year shall be forfeited. (PBA 12-14-87/Effective 12-20-87)

(b)   Should a conflict arise in the scheduling of employees vacation leave, employment seniority with the City shall be the ruling factor. (PBA 12-14-87/Effective 12-20-87)

(c)   An employee shall only be authorized to use vacation leave accrued prior to the pay period in which the vacation leave is requested. No advance vacation leave shall be authorized. (PBA 12-14-87/Effective 12-20-87)

(d)   Any vacation leave use that qualifies as family/medical leave under the provisions of the Family Medical Leave Act (FMLA) will be substituted for an equivalent amount of unpaid FMLA leave. The substitution of paid leave for unpaid FMLA leave does not extend the 12-week FMLA leave period. (PBA 8-09-04)

Sec. 9-30.   (5)   Vacation Leave Separation Pay: A regular employee leaving City employment shall be compensated for vacation leave accrued to the date of separation. (PBA 6/11/07)

(a)   Vacation hours *accrued* during the pay period an employee terminates (except the third pay period of any month) are determined by the total number of hours, excluding overtime hours, for which said employee is to be paid that pay period, as follows:

   0 - 79 total hours = 0 vacation hours *accrued*
    80 total hours = 4 vacation hours *accrued* or 6 vacation hours *accrued*

(b)   Employees terminating during a third pay period do not *accrue* vacation leave during that pay period.

CITY OF DOTHAN/GRAY 004014
CONFIDENTIAL

Sec. 9-30.    (6)    Temporary, seasonal and part time employees do not *accrue* vacation leave.

Sec. 9-40.    **Military Leave:**

Sec. 9-40.    (1)    **General Policy:**  Military leave shall be granted to City employees for:

(a)    Training and service performed by an inductee, enlistee, or reservist, or any entrant into a temporary component of the Armed Forces of the United States.

(b)    Time spent in reporting and returning from such training and service; or if rejection occurs, from the place of reporting for service.

(c)    Active duty training of a reservist in the Armed Forces of the United States or of a member of the National Guard of the United States where the call is for training only.

Sec. 9-40.    (2)    **Military Leave with Pay:**  City employees on active military training, not to exceed 168 hours in a calendar year, shall be entitled to military leave of absence without loss of pay, time, efficiency rating, vacation leave and sick leave provided employees requesting Military Leave with pay have completed Personnel Form 300 in advance of commencing military duty.  In any event, an employee must notify his/her Department Head at least 24 hours prior to commencing military leave.  Failure to do so could result in disciplinary action.  Personnel Form 300 along with Military Orders must be forwarded to the Personnel Department no later than the pay period ending date in which the Military Leave occurs in order for the Military Leave to be paid.    (Rev. PBA 10-13-97)

Sec. 9-40.    (3)    **Re-employment Rights:**  A classified employee ordered to active duty as a reservist or member of the National Guard or ordered to initial active duty training for a period of not less than three (3) months nor more than six (6) months is entitled to re-employment rights provided he/she applies for same within thirty-one (31) days after his/her release from active duty.  Individuals who are on active duty for a period exceeding six (6) months have ninety (90) days to exercise re-employment rights.

Sec. 9-50.    **Civil Leave:**  Any employee shall be given necessary time off without loss of pay when performing jury duty.

Sec. 9-60.    **Sick Leave:**  (Policy revised 11/08/04, three pages inserted)

Sec. 9-60.    (1)    **General Policy:**  Sick leave is not a benefit payable upon demand. The purpose of sick leave benefits is to provide an eligible employee with income protection for periods of physical or mental disability resulting in a medically necessary absence from duty. Limited use of accrued sick leave benefits is available to eligible employees for family, parental or bereavement leave as set out in the following sections. (PBA 11/08/04)

Sec. 9-60.    (2)    An eligible employee (See Section 2-20, Employee Status) may be granted sick leave for absence from duty caused by:

(a)    **Personal illness.** An eligible employee may use accrued sick leave benefit hours for personal illness.

(b)    **Maternity.** Pregnancy, birth and delivery are treated as any other personal illness. An eligible employee may use accrued sick leave benefit hours, and if necessary vacation leave hours, for maternity leave.

(c)    **Legal quarantine.** An eligible employee may use sick leave benefit hours for periods of legal quarantine, when certified as necessary by a licensed health care professional.

CITY OF DOTHAN/GRAY 004015
CONFIDENTIAL

(d)   Illness in the Immediate family. Sick leave authorized for illness in the immediate family shall be limited to the equivalent of one work week for employees to make arrangements for the care of said member of his/her family who is ill. Additional sick leave may be taken for mitigating circumstances with the advice of the Supervisor, approval of the department head and concurrence of the Personnel Director, on a per occurrence basis. (PBA 1/09/06)

(e)   Parental Leave: Parental leave is provided to allow the employee time for bonding with the newborn or adopted child and/or to provide emotional and physical support to the mother following childbirth. An eligible employee may use up to the maximum of the equivalent of one calendar work week in accrued sick leave per twelve month period upon the birth or adoption of the employee's child. The number of accrued sick leave benefit hours authorized will depend upon the number of hours the employee is scheduled to work during the one week period. To qualify for this type of sick leave use,

    1)   The eligible employee must have a sick leave balance of at least ninety-six (96.0) hours (fire shift employees must have a balance of at least one hundred forty-four (144.0) sick leave hours); and (PBA 1/10/05)

    2)   The eligible employee must provide written notice to the appointing authority of the intent to take parental leave at least thirty (30.0) days prior to the start of the parental leave; and   (PF# 960e)

    3)   The parental leave must be taken within the first three (3) months immediately following the birth or adoption.

(f)   Bereavement: An eligible employee may use up to the equivalent of one (1) week accrued sick leave benefit hours for a death in the immediate family. The number of accrued sick leave benefit hours authorized will depend upon the number of hours the employee is scheduled to work during a one (1) week period. Eligible employees may request vacation leave in addition to or instead of sick leave authorized under this section.

Sec. 9-60.   (3)   A member of the employee's immediate family for purposes of sick leave use shall be construed to mean: the employee's spouse, their children, the employee's parents, the employee's spouse's parents, and the employee's brothers, sisters, grandparents and grandchildren. Step-, half-, and adoptive relationships to the employee are included in this definition. (PBA 12-14-87) (PBA 9-10-01)

Sec. 9-60.   (4)   Notification:

(a)   Employees are required to notify their department heads and/or supervisor as early as possible on the first day of their sick leave absence. Employees must also notify their supervisor as to whether their sick leave absence is due to personal illness or illness or death in their immediate family. (PBA 09-14-87)

Page revised 9/10/01, 11/08/04, 1/10/05,
    1/09/06

CITY OF DOTHAN/GRAY 004016
CONFIDENTIAL

Personnel Rules and Regulations

(b)     For FMLA determination and tracking purposes, department heads or supervisors are required to notify the Personnel Director in writing of any employee absence for a serious health condition or that involves inpatient care in a hospital, hospice or residential care facility or continuing treatment by a health care provider or sick leave absences of three (3) or more consecutive days.

Sec. 9-60.     (5)     Time lost due to a properly reported on the job injury will be charged as Hurt-On-Job leave time when authorized by the Employee Health Clinic.

Sec. 9-60.     (6)     Advanced sick leave is only available for the personal illness of an eligible employee (See Section 2-20, Employee Status), including an eligible employee's maternity leave.

Sec. 9-60.     (7)     Any sick leave benefit use that qualifies as family/medical leave under the provisions of the Family Medical Leave Act (FMLA) will be substituted for an equivalent amount of unpaid FMLA leave. The substitution of paid leave for unpaid FMLA leave does not extend the 12-week FMLA leave period.

Sec. 9-60.     (8)     An employee must make a reasonable effort to schedule medical treatments so that his or her absence will not unduly disrupt the operations of his or her department.

Sec. 9-60.     (9)     An employee absent from duty using paid or unpaid sick leave benefits shall not engage in other employment while on such paid or unpaid sick leave.

Sec. 9-60.     (10)     **Abuse of Sick Leave:** See §3-44 for schedule of corrective actions.

(a)     Abuse of sick leave is considered to be present when any of the following exist:

1)     An employee has eight (8) or more occurrences of unscheduled sick leave use in a twelve (12) month period. An occurrence is defined as any single instance of unscheduled sick leave use, whether partial day or full day, or any consecutive instances of unscheduled sick leave. Unscheduled means the employee did not give prior advance notice of an absence to his or her immediate supervisor or department head, or

2)     There is a consistent pattern of utilization of sick leave. A pattern is considered to exist when any of the following occur:

- Where there is a recurring instance of sick leave use before or after off days, holidays, weekends, seasonal events, or on the same date or day of the week.
- Where sick leave is used when a vacation leave or holiday leave request has been denied.
- Facts indicate that an employee has misrepresented the cause(s) or reason(s) for using sick leave and those causes or reasons given would not qualify for the use of sick leave.
- Facts indicate that an employee, while absent from work with the City on sick leave, has been gainfully employed elsewhere or engaged in activities of such a nature that it could be reasonably assumed the employee could perform his or her job duties with the City.

(b)     When sick leave abuse is present the following action shall be taken:

1)     First Occurrence: A Formal Counseling Report shall be issued to the employee concerning his/her unacceptable sick leave use, and:

CITY OF DOTHAN/GRAY 004017
CONFIDENTIAL

- Re-state to the employee the purpose for and appropriate use of sick leave and the importance of and expectation for regular attendance at work.
- Notify the employee that he/she is under a rolling 12-month attendance monitoring period as of the date of the Formal Counseling Report.
- Notify the employee that further occurrences of sick leave benefit use meeting any of the provisions of this section will result in loss of compensation for those occurrences during the rolling 12-month attendance monitoring period unless the employee provides medical certification from a licensed physician certifying that the employee was incapacitated for work for the length of the sick leave benefit used due to a physical or mental incapacitation that made it necessary to be absent from work.
- Notify the employee that further occurrences of sick leave benefit use meeting any of the provisions of this section, regardless of whether the employee provides a medical certification from a licensed physician, during the 12-month monitoring period will result in progressive disciplinary actions in accordance with the disciplinary progression for Sick Leave Benefit Abuse outlined in this section.
- Notify the employee that he/she must complete 12 months from the date of the last progressive disciplinary action for sick leave benefit abuse, to lift the attendance monitoring period.

2) Second Occurrence: (First Written Warning Report) If the employee has an occurrence of sick leave benefit use within the 12 month period following a Formal Counseling Report for sick leave benefit abuse, the employee will be issued a First Written Warning Report concerning the unacceptable use of sick leave benefits, and:

- Restate to the employee the purpose for and appropriate use of sick leave benefits and the importance of and expectation for regular attendance at work.
- Notify the employee that further absences meeting any of the provisions of this section will result in loss of compensation for those occurrences during the rolling 12-month attendance monitoring period unless the employee provides medical certification from a licensed physician certifying that the employee was incapacitated for work for the length of the sick leave benefit used and stating the nature of the sickness, illness or injury.
- Notify the employee that further occurrences of sick leave use meeting any of the provisions of this section, regardless of whether a medical certification is provided from a licensed physician by the employee, during the 12-month monitoring period will result in progressive disciplinary actions in accordance with the disciplinary progression for Sick Leave Benefit Abuse outlined in this section.
- Notify the employee that any further occurrences of sick leave benefit use within the 12 month period from the date of the First Written Warning will be grounds for termination, after due process.
- Notify the employee that he/she must complete 12 months from the date of the last progressive disciplinary action for sick leave benefit abuse, to lift the attendance monitoring period.

CITY OF DOTHAN/GRAY 004018
CONFIDENTIAL

3)   Third Occurrence: (Final Written Warning and Notice of Determination Hearing) If the employee has an occurrence of sick leave benefit use during the 12 month period following the First Written Warning, the employee will be issued a Final Written Warning detailing the employee attendance history and progressive disciplinary actions taken for sick leave abuse and a Notice of Determination Hearing (PF#163) giving the employee notice of termination proceedings to be implemented in accordance with Personnel Regulation IV, Due Process Procedure.

4)   Sick leave use qualifying as FMLA and designated as such under the provisions of the City's FMLA policy shall not constitute sick leave use for purposes of this section.

Sec. 9-60.   (11)   **Advanced Sick Leave:**

(a)   In cases of serious disability or illness, sick leave may be advanced to any eligible employee (see Section 2-20) after all accrued sick leave has been used. Each application for advanced sick leave must be supported by a doctor's certificate and must be approved by the department head and Personnel Director. The total advances of sick leave may not at any time exceed 160 hours.

(b)   Employees are not entitled to advanced sick leave until they have completed twelve (12) continuous months of employment. (PBA 6/11/07)

(c)   An employee who has used sick leave to the extent such use meets the definition of sick leave abuse shall not be eligible for advanced sick leave.

(d)   Any employee who has a record of advanced sick leave at the date of his/her termination shall reimburse the City for the total amount of such sick leave at the hourly rate of pay received by said employee during the time of such absence multiplied by the total number of advanced sick leave hours on record at the time of termination. The City of Dothan shall have the right to deduct from any pay or wages which may be accrued to such employee at the date of termination all sums of money which have been theretofore paid such individual for advanced sick leave. (PBA 5-11-09)

(e)   Each classified employee or laborer shall be required to sign an agreement to reimburse the City for advanced sick leave as described in Item 9-60(11)(d) above.

(f)   Any advanced sick leave use that qualifies as family/medical leave under the provisions of the Family Medical Leave Act (FMLA) will be substituted for an equivalent amount of unpaid FMLA leave. The substitution of paid leave for unpaid FMLA leave does not extend the 12-week FMLA leave period. If an employee has been advanced sick leave, they will be ineligible for vacation bonus hours until such time an employee's sick leave balance is at least 96 hours. (PBA 10/11/10)

Sec. 9-60.   (12)   **Computation, Accumulation and Utilization of Sick Leave:**   Sick leave shall be computed and reported in hours. Eight (8) hours leave equals one (1) working day, based on the eight-(8) hour, five-(5) day work week. Each department head, eligible classified employee and laborer shall accrue sick leave as follows:   (PBA 6-8-87, PBA 6/11/07)

(a)   Sick leave is accrued at the rate of four (4) hours per pay period (except the third pay period of any month), not to exceed a maximum of ninety-six (96) hours per year. The maximum number of sick leave hours an individual may accumulate while in the employment of the City is 720.

CITY OF DOTHAN/GRAY 004019
CONFIDENTIAL

Personnel Rules and Regulations

(b) **Public Safety-Fire.** 7K exempt employees shall accrue six (6) hours sick leave per pay period. The accrual formula for 7K exempt employees is computed as follows: Maximum number of shifts allowed x shift length in hours ÷ 24 pay periods per year = accrual per pay period. The maximum number sick leave shifts allowed for Fire Department 7K exempt employees per year is six shifts. The maximum number of sick leave shifts a 7K employee can accumulate is forty-five. (PBA 12-14-98, PBA 6/11/07)

(c) Employees hired during the first week of a pay period (except the third pay period of any month) shall accrue four (4) hours sick leave for that pay period. Employees hired during the second week of a pay period begin accumulating four (4) hours sick leave the following pay period, unless that following pay period is the third pay period of any month, in which case accumulation begins the first pay period of the following month. Employees hired during the third pay period of any month begin accumulating four (4) hours sick leave the following pay period. (PBA 6-8-87, PBA 6/11/07)

(d) An employee who does not use any sick leave hours for a period of one year is entitled to receive bonus vacation hours in accordance with §9-30(2), Bonus Vacation Hours.

Sec. 9-60. (13) **Sick Leave Pay at Retirement:**

(a) Upon retirement, and only upon retirement, employees hired prior to April 13, 1992 shall be authorized a separation payment based on the number of hours sick leave accumulated up to a maximum of 720 hours. The payment shall be computed as follows:

| Hired On or Before 5-11-1977 | Hired after 5-11-1977 |
|---|---|
| 1st 20 years X 2.5% | 1st 25 years X 2.0% |
| Next 5 years X 2.0% | Next 5 years X 1.5% |
| Next 5 years X 1.5% | Over 30 years X 1.0% |
| Over 30 years X 1.0% | |

CITY OF DOTHAN/GRAY 004020
CONFIDENTIAL

For purposes of this section and this calculation, years of service are limited to the net years of continuous service with the City of Dothan since the employees last date of continuous employment and shall not include any additional service credits that may be purchased by an employee. Additional service earned under ERS by public safety employees due to Hazardous Duty Pay as embodied in Alabama Act 2004-637 will not be used in the calculation for payment of sick leave.

There will be no sick leave separation payment at retirement for employees employed on or after April 13, 1992. (PBA 4/13/92, 10/11/04)

(b)   Any individual resigning or leaving City employment for any reason prior to retirement forfeits any accumulated sick leave.

Sec. 9-60.   (14)   Temporary, seasonal, and part time employees do not accrue sick leave.

Sec. 9-70.   FAMILY AND MEDICAL LEAVE ACT (FMLA) POLICY: (PBA 8-9-93):

The following is a summary of the provisions of the Family Medical Leave Act. It is intended to provide general guidance and information to you about your rights under the FMLA. Specific questions should be directed to the Personnel Department. (PBA 8-09-04)

The City of Dothan is covered by the federal Family and Medical Leave Act and will comply with the requirements of the Act.  Under the Act, you may take up to twelve weeks unpaid leave in a twelve month period that begins from the date you first take FMLA leave. FMLA leave may be taken for the following reasons:

(a)   To care for newborn or newly placed adopted or foster child;
To care for a spouse, parent, or child with a serious health condition; or because of your own serious health condition. (PBA 11-07-01)

(b)   Because of any qualifying exigency outlined by the federal FMLA Act arising out of the fact that the spouse, child, or parent of the employee is on active duty (or has been notified of an impending call or order to active duty) in the Armed Forces in support of a contingency operation.

An eligible employee who is the spouse, child, parent, or next of kin of a covered servicemember shall be entitled to a total of 26 workweeks of leave during a 12-month period to care for the servicemember. The leave described in this paragraph shall only be available during a single 12-month period. (PBA 03-10-08)

COMBINED LEAVE TOTAL—During a single 12-month period an eligible employee shall be entitled to a combined total of 26 workweeks of leave under paragraphs (A) and (B). Nothing in this paragraph shall be construed to limit the availability of leave under paragraph (A) during any other 12-month period. (PBA 03-10-08)

Your paid sick leave benefits and/or paid vacation leave benefits will run concurrently with any FMLA qualifying leave. (PBA 8-09-04)

CITY OF DOTHAN/GRAY 004021
CONFIDENTIAL

Personnel Rules and Regulations

Sec. 9-70    (1)    **Eligibility**—To be eligible for Family Medical leave, you must have worked for the City for at least 12 months, and have worked at least 1,250 hours during the twelve months before your request for leave. Time worked must be actual hours worked and shall not include any paid or unpaid leave time. (PBA 8-09-04)

(a)    In addition to eligibility requirements, employees requesting Active Duty Family Leave and Injured Servicemember Leave must produce a copy of active duty orders, commission documentation, and/or a statement from a physician stating you will need leave to care for a covered relative under Active Duty Family Leave and Injured Servicemember Leave. (PBA 03-10-08)

Sec. 9-70.    (2)    **Notice**—You must give the Personnel Director and your Department Head thirty days notice of your expected leave, or whatever notice is practical under the circumstances.

Sec. 9-70.    (3)    **Parental Leave**—The Act allows you to take leave for the birth of a child, or for the placement of an adopted or foster child. Generally, this type of leave must be taken in a block, up to twelve weeks. You may not take periodic leave or work a reduced schedule unless the Personnel Board approves your request. Parental leave must be taken within twelve months of the birth or placement of the child. (PBA 05/12/03)

Sec. 9-70.    (4)    **Medical Leave**—The Act also allows you to take leave to care for a spouse, parent, or child with a serious health condition, or because of your own serious health condition. Medical leave may be taken in either a block, or you may take periodic leave or work a reduced schedule. If you choose periodic leave or a reduced work schedule, the City may temporarily transfer you to another job that will better accommodate recurring periods of leave. If you are transferred, the alternate job will have pay and benefits that are equivalent to your current job. (PBA 05/12/03)

(a)    If you take any type of medical leave, you must provide the Personnel Director and your Department Head with a Certification of Health Care Provider, available from the Personnel Department, as soon as possible. The certification must include the following information:

- The date that the condition began;
- The expected length of the condition;
- The appropriate medical facts regarding the condition;
- If applicable, a statement that you are needed to care for your spouse, parent or child, and the approximate length of care needed;
- If applicable, a statement that you are unable to perform the functions of your job.

(b)    If you seek to take periodic leave or work a reduced schedule, your certification must include the information listed above, plus the following:

1)    If the leave is for your own serious health condition, the dates on which you expect to receive medical treatment and the length of time that you will be undergoing treatment; (PBA 8-09-04)

2)    If the leave is for the care of a spouse, parent, or child with a serious health condition, a statement that you will need leave to care for a covered relative with a serious health condition, or to help with the relative's recovery, and the expected length and schedule of your periodic leave or reduced work schedule. (PBA 8-09-04)

(c)    The City reserves the right to require a second or third medical opinion in appropriate cases where authorized by the Act. The City will pay the cost of any second or third opinion.

CITY OF DOTHAN/GRAY 004022
CONFIDENTIAL

Sec. 9-70.  (5)   Active Duty Family Leave—Employees with a spouse, parent, or child who is on or has been called to active duty in the Armed Forces may take up to 12 weeks of FMLA leave when they experience a "qualifying exigency." (PBA 03-10-08)

Sec. 9-70.  (6)   Injured Servicemember Leave—Employees who are the spouse, parent, child, or next of kin of a servicemember who incurred a serious injury or illness on active duty in the Armed Forces may take up to 26 weeks of leave in a 12-month period. (PBA 03-10-08)

Sec. 9-70.  (7)   Health Insurance—During the period of either parental or medical leave, The City will maintain your health insurance coverage. You must continue to make timely payments of your share of such coverage. Under most circumstances if you do not return to work at the end of your leave, the City will require you to reimburse the health insurance premiums that it paid during the period of your leave.

Sec. 9-70.  (8)   Return to Work—When you return to work at the end of either a parental or medical leave, you will be placed in your original job or an equivalent job with equivalent pay and benefits. You will not lose any seniority or other benefits that you had accumulated before you took your leave.   For performance appraisal purposes and in compliance with federal regulations, supervisors may not postpone an employee's performance appraisal while on approved Military or FMLA leave.   Personnel Rule §12-70, Returning to Work After a Serious off the Job Injury/Illness, will apply to work at the end of Medical Leave. (PBM 5-11-09)

Sec. 9-70.  (9)   Other Information Available—This is only a summary of the basic provisions of the Family and Medical Leave Act, and other exceptions and requirements may apply to you that are not discussed here. If you are considering taking a leave under the Act, you should consult with the Personnel Department for the details that apply to your situation.

Sec. 9-80.  Medical Leave of Absence Without Pay: Medical leave of absence without pay may be taken if it is necessary to leave your job for health reasons.   THIS RULE ACTS IN COMBINATION WITH PERSONNEL RULE §9-70. (PBA 12-14-92, 8-9-93)

Sec. 9-80.  (1)   Procedure - Requests for leave of absence must be in writing to the Personnel Board through your department head and accompanied by your doctor's written statement, clearly defining the disability and the approximate period of disability. You will be required to use your accrued sick leave, before being eligible to apply for a medical leave of absence. If you are unable to return by your leave expiration date, a written doctor's statement giving the new expected return date must be submitted prior to the expiration of your original leave. A doctor's release stating that you are able to return to the full duties and responsibilities of your job must be presented upon return to work, at which time you will be placed in the same or a comparable job. (PBA 12-14-92)

Sec. 9-80.  (2)   Benefits Effected - During a medical leave of absence, accrued time of service and other benefits are protected but do not continue to accrue. (PBA 12-14-92)

Sec. 9-80.  (3)   Limitation - Employees are responsible for paying their portion (portion on which the City pays the premium) and their dependent's portion of the health insurance premium, in order to keep health insurance coverage intact. Arrangements must be made in advance with payroll personnel in order to arrange payments for insurance benefits, etc. The total medical leave may not extend beyond nine months. If after nine months your doctor will not release you to return to work, your employment with the City will terminate. (PBA 12-14-92, 8-9-93)

Page revised 10/11/04, 3/10/08, 5/11/09

CITY OF DOTHAN/GRAY 004023
CONFIDENTIAL

## REGULATION X - SEPARATIONS

Sec. 10-10.     **Types of Separations:** All separations of classified and unclassified employees shall be designated as one of the following types and shall be accomplished in the manner indicated: resignation, compulsory resignation, quit without written notice, disability, death, retirement, layoff or dismissal. Department heads shall furnish the Personnel Director a Notice of Termination (Personnel Form #111) no later than one (1) working day (24 hours) following the effective date of separation. The Personnel Department will not process any related paperwork including personnel requisitions and retirement withdrawals until this Notice Of Termination has been received.

Sec. 10-10.     (1)     **Resignation:** An employee wishing to leave City employment in good standing shall file with his/her department head, at least one week before leaving, a written resignation stating the date the resignation shall become effective and the reason(s) for leaving. Failure to comply with this procedure may be considered cause for denying said employee future employment with the City. Department heads shall forward a copy of all written resignations to the Personnel Director within twenty-four (24) hours after receipt.

Sec. 10-10.     (2)     **Compulsory Resignation:** Unauthorized absence from work for a period of five (5) consecutive working days shall be considered a compulsory resignation.

Sec. 10-10.     (3)     **Quit Without Written Notice:** Quitting the job without written notice or other proper notice. (PBA 8-9-82)

Sec. 10-10.     (4)     **Disability:** An employee may be separated for disability when he/she cannot perform the required duties because of a physical or mental impairment. Actions may be initiated by the employee or by the City; however, all cases must be supported by medical evidence acceptable to the Personnel Director. Disability resulting from an on-the-job injury may lead to retirement of the employee.

Sec. 10-10.     (5)     **Death:** Separation shall become effective as of the date of death. All compensation due in accordance with §10-20, Rights of Employees at Separation shall be paid to the estate of the employee or to the surviving spouse as may be required by law.

Sec. 10-10.     (6)     **Retirement:** Eligible employees (See §2.20, Employee Status) are automatically covered under the Employees' Retirement Systems of Alabama as a condition of employment. (PBA 10/11/04)

        (a)     Payroll deductions for the retirement plan and Social Security (FICA) are automatically deducted at the prescribed percentages from each payroll check.

        (b)     For more details on the retirement system, please refer to Employees' Retirement System of Alabama Member Handbook. (PBA 10/11/04)

        (c)     No right to the receipt of any post employment benefit is conferred or guaranteed to any employee. Post employment benefits available to retiring employees (retiring under the provisions of the Employees' Retirement Systems of Alabama) may include group health, group dental and life insurance. Eligibility for the post employment benefits are determined by the provisions of each benefit plan as said plan(s) has been approved and or amended by the Governing Body and provided the retiring employee pays the required premium. Any employee hired after January 1, 2009 is solely responsible for the full cost of any post employment benefit upon retiring from employment. (PBA 11/10/08)

Page revised 10/11/04, 11/10/08

CITY OF DOTHAN/GRAY 004024
CONFIDENTIAL

Personnel Rules and Regulations

Sec. 10-10.    (7)    Layoff: A department head may lay off any employee whenever such action is made necessary by reason of shortage of work or funds, the abolition of a position, or because of changes in organization; however, no regular employee shall be laid off while there are temporary, provisional, or probationary employees serving in the same class of positions for which the regular employee is eligible and available. The Personnel Director shall prescribe layoff procedures to include consideration of length of service. The names of employees laid off for any of the above reasons shall be placed on a reemployment register for a period of one year. If an abolished position is recreated within one year, individuals laid off shall be reemployed according to their position on the reemployment register.

Sec. 10-10.    (8)    Dismissal: REGULATION IV - DUE PROCESS PROCEDURE must be followed in any dismissal case involving classified or unclassified employees, to include part time, temporary/seasonal or probationary employees. (See §2-80. Working Test Period for additional information regarding the dismissal of probationary employees.) (Revised PD 7-31-96)

Page revised 7/31/96, 10/11/04

CITY OF DOTHAN/GRAY 004025
CONFIDENTIAL

Sec. 10-20.     **Rights of Employees at Separation:**

Sec. 10-20.     **Payroll Time:**  Regular employees who separate shall receive payment for all earned pay and all authorized leave subject to deductions and any indebtedness pursuant to §10-30, City Equipment and Property.  Final payment for all payroll time shall be made at the end of the pay period during which the employee terminates. (PBA 4/8/96, 10/11/04, 5-11-09)

Sec. 10-30.     **City Equipment and Property:**  At the time of separation and prior to the time of final payment, all records, assets and items of City property in the employee's custody shall be transferred to the department head.  Certification to this effect shall be indicated on the Notice of Termination (Personnel Form #111) submitted by the department head to the Personnel Director.  Any amount due the City because of a shortage in the above shall be withheld from the employee's final paycheck.

CITY OF DOTHAN/GRAY 004026
CONFIDENTIAL

REGULATION XI - CONDUCT OF EMPLOYEES

Sec. 11-10.    Attendance and Punctuality:  Each employee is expected to be on duty at the time prescribed by his/her particular department or division.  It is the employee's responsibility to notify his/her supervisor of any intended or unintended absence prior to his/her normal reporting time. Absence from work without proper leave or notification can be the basis for disciplinary action.

Sec. 11-20.    Dress and Appearance:  There are no specific rules covering the dress and appearance of City employees.  Certain departments, however, do have such rules and these rules shall be adhered to by members of the affected departments.  Employees not covered by specific rules are expected to exercise their better judgment.  Each employee should keep in mind that he/she fills a public service position and that inappropriate appearance or dress habits can be as offensive to the citizens who pay City employee salaries as any other form of discourtesy or disrespect.

Sec. 11-30.    Outside Employment:  Although outside employment is discouraged, the City does allow its employees to hold another job while employed by the City.  A full time employee who undertakes regular employment outside of his/her City employment shall notify the Personnel Director through his/her department head.  If the outside employment in any way interferes with an employee's effectiveness in his/her work with the City, he/she may be asked to terminate such outside employment.  An employee holding outside employment is subject to the same call out procedure as any other City employee (See §8-80 Standby and Call Out Rule).  It should be clearly understood by all employees that the City is considered the primary employer and as such has the right to expect its employees to give priority to their job responsibilities with the City.

Sec. 11-40.    Political Activity:

Sec. 11-40.    (1)    The principle of the merit system is to keep government jobs free from political patronage.  This not only creates a patronage free public employee work force but also protects employees' jobs from being taken away because of political reasons; therefore, active political participation by City employees is prohibited.  This does not, however, interfere with an employee's right to vote or to express his/her opinion privately.

Sec. 11-40.    (2)    No person shall be promoted, appointed, demoted, or dismissed from any position in the Classified Service or in any way favored or discriminated against with respect to employment because of his/her political affiliation.

Sec. 11-40.    (3)    For more details on political activity, see Sections 23 and 24 of the "Civil Service Act of Dothan".

Sec. 11-50.    Loaning Money:  The practice of loaning money or its equivalent between City employees for the purpose of personal gain is against Personnel policy.  The responsibility for administration of this rule and any disciplinary action resulting from this rule shall rest with the individual department heads.

Sec. 11-60.    Reporting Illegal or Suspected Activity Involving City Employees:

Sec. 11-60.    (1)    Any City employee becoming aware of or having any information regarding illegal activity in any City department shall immediately notify his/her respective Department Head.

Sec. 11-60.    (2)    The Department Head receiving such information shall:

CITY OF DOTHAN/GRAY 004027
CONFIDENTIAL

Personnel Rules and Regulations

    (a)    If the activity is of a criminal nature, the City Manager and the ranking officer on duty in the Police Department shall be notified. The Police Department shall conduct an investigation to determine the validity of the information. If the information is valid, normal investigative procedures shall be followed. The Chief of Police or officer in charge shall keep the City Manager appraised as the investigation progresses.

    (b)    The Office of the Police Chief shall complete a report of the investigation and submit a copy to the City Manager and the Personnel Director.

    (c)    If the information is of a non-criminal nature, the Department Head shall notify the City Manager and the Personnel Director, who shall evaluate the information and order or conduct an investigation if deemed necessary. The City Manager shall have the prerogative of utilizing the Police Department to assist with or conduct the investigation. In any event, a report shall be compiled by the investigating department and submitted to the City Manager and Personnel Director.

Sec. 11-60.    (3)    Police Department Internal Investigations:

    (a)    In the event an investigation of any criminal offense or misconduct involving Police Department personnel becomes necessary, the incident shall be investigated by the Office of the Police Chief.

    (b)    If the incident does not come within the jurisdiction of the department by statute or City of Dothan Merit System, or if the incident is of a nature whereby another agency would have offense jurisdiction outside the department's jurisdiction, the proper agency shall be notified and department personnel shall cooperate with the authorized agency.

    (c)    In any investigation whereby the expertise or resources of another agency can or might assist or expedite the investigation, the services of that agency may be requested and utilized. (PBA 6-13-83)

Sec. 11-70.    Firearms:  With the exception of duly sworn law enforcement officers, all City employees are expressly prohibited from carrying firearms (pistols, guns, etc.), concealed or openly displayed, into any City owned or leased facility or property. Under certain conditions, work crews and/or survey parties may be authorized to carry a weapon (shotgun) when working in areas where snakes or other animals may endanger the safety or life of employees. Department Heads only have the authority to approve a request from their crew foreman to carry a weapon when working in such infested and hazardous areas.

Sec. 11-80.    Harassment, Threats, and Violence Policy:  (Rev. 10-18-99)

Sec. 11-80.    (1)    Purpose:  The purpose of this policy is to help assure a working environment where all employees can maximize productivity in their jobs by eliminating offensive or threatening conduct that might interfere with maximum productivity. There are several types of anti-social behavior that can interfere with this goal including: (1) sexual harassment; (2) racial, religious and other forms of harassment; and (3) Violence and threats of violence. All of these types of behavior can distract employees from their job-related duties, and it is the policy of the City of Dothan to prohibit and eliminate these types of behaviors.

CITY OF DOTHAN/GRAY 004028
CONFIDENTIAL

Sec. 11-80.   (2)   Definitions:

(a)   Sexual Harassment: Sexual Harassment can include:

1.   Physical assaults or physical conduct that is sexual in nature (touching, pinching, or brushing against another's body).

2.   Unwelcome sexual advances, propositions, comments, "kidding," "teasing," or requests for sexual favors.

3.   Sexual displays or publications such as calendars, cartoons, graffiti, or computer pornography.

4.   Other verbal or physical conduct of a sexual nature that would interfere with an individual's work performance, or create an intimidating, hostile or offensive work environment.

5.   Retaliation for complaints of harassment.

(b)   Racial, Religious, National Origin, Disability, or Age Harassment: These types of harassment can include:

1.   Any conduct based on race, religion, national origin, disability, or age that makes an employee uncomfortable at work or which interferes with an employee's ability to perform the job.

2.   Jokes which refer to race, religion, national origin, disability, or which portray age in a negative light.

3.   The posting or distribution of cartoons, drawings, or any other material which adversely reflects on a person's race, religion, national origin, disability, or age.

4.   The use of "slurs" or other offensive language.

5.   Practical jokes, horseplay, or teasing which tend to make fun of a person's race, religion, national origin, disability, or which reflect negatively on a person's age.

6.   Retaliation for complaints of harassment.

(c)   Violence and Threats of Violence. This type of anti-social behavior can include:

1.   Any conduct which involves the offensive touching of another employee.

2.   Intimidating or threatening gestures or body posture that reflect possible violence or a threat of violence.

3.   Verbal threats to "get even," "go postal," or similar statements that cause an employee to fear possible harm by another employee.

CITY OF DOTHAN/GRAY 004029
CONFIDENTIAL

Sec. 11-80.   (3)   **What To Do If You Experience Harassment, Threats Of Violence, Or Violent Behavior:** These types of anti-social behaviors can be blatant or they can be subtle. Despite the definitions given above, it is sometimes difficult to recognize whether particular conduct falls within these types of anti-social behaviors. Any employee who feels that he or she is the victim of any of these types of anti-social behaviors should report the conduct immediately. Further, any employee who observes conduct that could be a violation of this policy should report that conduct promptly.

Reports should be made to your supervisor, your Department Head, the EEO Officer, the Assistant Personnel Director or Personnel Analyst, or the Personnel Director. Upon receipt of a harassment complaint by a supervisor, department head, EEO Officer or Personnel Analyst, the Personnel Director shall be notified immediately. While verbal reports will be accepted, in most cases an employee reporting these types of behaviors will be asked to make a written report providing as much detail as possible concerning who has engaged in the behavior, when, where, and exactly what was done or said.

Sec. 11-80.   (4)   **How Reports Will Be Handled:** Reports of anti-social behavior will be promptly investigated. In most cases, the investigators will meet with the person making the report to get a complete and accurate statement concerning the nature of the problem. The investigators will then normally meet with the accused employees and other potential witnesses. Once the facts have been gathered, the City will try to address and eliminate any problems through one or more of the following actions: (1) verbal counseling sessions with those committing possible anti-social behavior; (2) group meetings or training sessions; (3) referrals to formal counseling; (4) written disciplinary action or suspension; or (5) terminations of employment.

In most cases, the employee reporting the anti-social behavior will be informed of the results of the investigation and of the remedial action taken.

While all reports of anti-social behavior will be treated as confidentially as possible, the requirement to conduct an impartial investigation means that complete confidentiality cannot be assured.

Sec. 11-80.   (5)   **Your Role and Responsibility:**

First and foremost, each of us is responsible for our own conduct and should avoid the types of behaviors addressed in this policy.

Second, each of us has a responsibility to report anti-social behavior that we experience or observe.

With your help in enforcing this policy, we can make our City a better and more productive place to work for all employees.

CITY OF DOTHAN/GRAY 004030
CONFIDENTIAL

REGULATION XII - SAFETY, ACCIDENTS, INJURIES AND INSURANCE

Sec. 12-10.     Purpose:  The purpose of this regulation is to establish rules governing safety, the reporting of accidents and injuries, and procedures for submitting workmen's compensation and insurance claims.

Sec. 12-20.     City Safety Creed:  The necessity of the service or the importance of the job is never so great that we cannot do the job safely!

Sec. 12-30.     Safety and Loss Prevention:   The Employee Safety Committee Policy shall by reference be incorporated and made a part of these rules and regulations.  (PBA 9-10-01)

Sec. 12-30.     (1)     General:

(a)     The safety of City employees is considered one of the primary obligations of the City.   Primary objectives of the safety and loss prevention program are the prevention of personnel accidents and fatalities both on and off the job, and the prevention of property damage and loss.

(b)     Safety and loss prevention are not separate and apart from the job but are an integral part of each assignment of all employees and shall be considered major elements in management appraisal and in job performance evaluations.

(c)     Safety and loss prevention are paramount considerations in providing tools, materials, and equipment necessary to accomplish an assigned job.

(a)     Responsibility for enforcement of safety and loss prevention rules and policies shall rest with department heads and supervisors. Disciplinary action for violation of, or non-compliance with, safety and loss prevention rules, policies and/or procedures (including but not limited to the Employee Procedure for On-The-Job Injuries, Supervisor Procedure for On-The-Job Injuries, Supervisor's First Report of Injury, the Motor Vehicle Operations Policy, the Employee Safety Committee Policy, and departmental safety policies and procedures) shall be implemented in accordance with these Personnel Rules and Regulations.  (PBA 11-8-82) (PBA 12-10-90) (PBA 9-10-01)

Sec. 12-30.     (2)     Employee Responsibility:

(a)     Employees are responsible for their own safety and are expected to satisfy themselves before starting any job that can be done safely under existing conditions. They must not take chances or permit associates to do so.

(b)     Employees are expected to conduct all job duties in a safe working manner in order to prevent property damage and personal liability losses due to their own negligence.

(c)     Employees are responsible for assisting others in avoiding the above losses by bringing loss producing situations and/or unsatisfactory working conditions to the attention of their co-workers and/or supervisors.

Sec. 12-30.     (3)     Supervisor Responsibility:

(a)     Supervisors at every level, from department heads down, are responsible for safeguarding the lives and health of the individuals under their supervision and for the prevention of loss, damage, and destruction of City property. (PBA 9-10-01)

CITY OF DOTHAN/GRAY 004031
CONFIDENTIAL

      (b)    Supervisory employees are particularly responsible for the training, performance, and behavior of employees under their supervision.

      (c)    Prompt disciplinary action shall be administered whenever a department head or supervisor determines that an employee has neglected required safety practices, deliberately disobeyed safety rules, or through unsafe acts endangered his/her own health or safety and/or the health or safety of others.

Sec. 12-40.    City Vehicle Accidents: The Motor Vehicle Operations Policy, incorporated herein by reference, shall be followed whenever any City vehicle is involved in an accident.  (PBA 9-10-01)

CITY OF DOTHAN/GRAY 004032
CONFIDENTIAL

Personnel Rules and Regulations

Sec. 12-50.   Worker's Compensation:  Any employee who is injured in any manner or degree while on duty or serving in the line of duty shall immediately notify his/her supervisor of such injury.

Sec. 12-50.   (1)    Employees injured on the job and supervisors of employees injured on the job shall follow "Employee Procedure for On-The-Job Injuries" and "Supervisors Procedure for On-The-Job Injuries".  Copies of these procedures are available in the Employee Health Clinic.

Sec. 12-50.   (2)    All on-the-job injuries shall be investigated for the purpose of preventing accidents of the same or similar type and to insure compliance with the safety rules and policies in accordance with the Employee Safety Committee Policy and/or the Vehicle Operations Policy and various department safety and loss prevention policies.   The results of these investigations and recommendations for prevention of future injuries and loss shall be reported to the City Manager and Department Heads.  (PBA 11-8-82) (PBA 12-10-90) (PBA 9-10-01)

Sec. 12-60.   Employee Group Insurance:   For details concerning insurance coverage, refer to the "Group Insurance Plan for Employees of the City of Dothan" or contact the insurance staff in the Personnel Department.

Sec. 12-70.   Returning to Work After Serious Off the Job Injury/Illness:   If an employee is hospitalized or under the care of a physician which requires a physician's recommendation as to when the employee should resume normal activities due to an illness and/or injury off the job, the employee shall present himself/herself in the Employee Health Clinic prior to returning to work.   The employee shall not be allowed to return to work without the proper "Return to Work" form (#165) from the Clinic.

---

NOTE:  The intent of this rule is to provide medical assistance to those employees that are returning to work after a serious illness and/or injury that required extensive treatment; i.e. surgery or recovery from a heart attack, etc.  There is no intention in the scope of this rule to take any adverse action against a City employee.  This rule is only intended to provide health assistance to our employees. (PBA 12-16-85)

---

CITY OF DOTHAN/GRAY 004033
CONFIDENTIAL

Personnel Rules and Regulations

REGULATION XIII - CREDIT UNION

Sec. 13-10.    Alabama Telco Credit Union and Five-Star Credit Union are financial service organizations available to all City employees. They provide savings and loan arrangements that assist all their members in saving or borrowing money at reasonable rates. A City employee may become a member of the credit unions by contacting the respective credit union office. Payroll deductions for savings and repayment of loans may be authorized by the employee.

CITY OF DOTHAN/GRAY 004034
CONFIDENTIAL

Personnel Rules and Regulations

REGULATION XIV - PERSONNEL BOARD REGULAR MEETING DATES

Sec. 14-10.    Regular monthly and special called meetings of the Personnel Board shall be held on dates and times at public meeting rooms as directed by the Personnel Board.  Notice of said meeting will be posted on all City Public and Department Bulletin Boards. (revision authority: Section 8, City of Dothan Civil Service Act, PD 1-7-91)

CITY OF DOTHAN/GRAY 004035
CONFIDENTIAL

REGULATION XV - AMENDMENT OF PERSONNEL RULES

Sec. 15-10.    Amendments and revisions to the Personnel Rules may be initiated by the Personnel Director, the Personnel Board, any department head, or the City Commission. Before becoming effective, such amendments or revisions shall be posted on a bulletin board to be designated by the Personnel Director, shall be given a public hearing, and shall be approved by the Personnel Board. Amendments and revisions shall become effective when approved by the Personnel Board.

CITY OF DOTHAN/GRAY 004036
CONFIDENTIAL

Personnel Rules and Regulations

## REFERENCES

Detailed references may be found in the following documents which are available in all City departments.

"The Civil Service Act of Dothan", Act No. 273, Alabama Law, dated August 7, 1947, as amended.

"Group Health Care Plan City of Dothan". Effective October 1, 1993, as amended.

"City of Dothan Drug and Alcohol Testing Policy," Personnel Board Action March 11, 1996 City of Dothan Policy #51, as amended.

Page revised 10/11/04

Page 55

CITY OF DOTHAN/GRAY 004037
CONFIDENTIAL

# EXHIBIT

# 2



THE CITY OF
# DOTHAN, ALABAMA
**CONFIDENTIAL**

POST OFFICE BOX 2128 · DOTHAN, ALABAMA 36302 · 334-615-3000

DELVICK J. MCKAY
PERSONNEL DIRECTOR

PERSONNEL BOARD
BARBARA A. SPANN, CHAIR
MARY W. DAVIS
TIM SHIRLEY
MARK SMITH
EARL TYSON

## MEMORANDUM

| | | |
|---|---|---|
| TO | : | F. Darryl Mathews, EEO/Training Officer |
| CC | : | Michael K. West, City Manager<br>Gregory J. Benton, Police Chief |
| FROM | : | Delvick J. McKay, Personnel Director |
| DATE | : | June 11, 2013 |
| SUBJECT | : | Documents received by Captain Keith Gray<br>with anticipated EEOC and Federal Consent Decree<br>Complaints to be filed. |

I received in my office on June 10, 2013; several documents from Captain Keith Gray including entries from Guardian Tracking (a documentation tool that the Police Department uses) outlining his intent to file a Title VII Charge of Racial Discrimination with the Equal Employment Opportunity Commission. Furthermore, Captain Gray also mentions that he believes such actions taken against him violate the Federal Consent Decree.

I am forwarding these documents to you and trust that you will investigate these matters with a sense of urgency to ascertain all facts in Captain Gray's complaint and to provide a report of your findings and recommendations to Greg Benton, Police Chief and myself.

Please follow your standard notification procedures to let the complainant know of your receipt of his complaint and begin your investigation as necessary. I certainly want to be sure if there is any validity to the concerns brought forward by Captain Gray that a workable solution is implemented as soon as possible.

If I can be of further assistance, please don't hesitate to let me know.

## PERSONNEL DEPARTMENT
126 NORTH SAINT ANDREWS STREET · DOTHAN, ALABAMA 36303 · PHONE 334-615-3180 · FAX 334-615-3189

Service · Excellence · Commitment ... *The Dothan Way*

CITY OF DOTHAN/GRAY 000470
CONFIDENTIAL

**By:**  Captain Gray, Keith (344)         **Entered:**   6/9/2013

Guardian Tracking Rebuttal
Entry by Major Steve Parrish on 4/8/13

Personnel Director:

On April 7, 2013 I was examined by a physician at the Southeast Alabama
Medical Center whom determined that I had a fibular fracture to my left leg at
which I received medication for pain. I received instructions to follow up at
Southern Bone and Joint in order that my leg be placed in a cast. During this
time I had a previously made arrangements to relocate my father, whom has
dementia, from Bonifay (Florida) Nursing Home to the Veterans Affairs Hospital
located in Tuskegee, Alabama on 4/8/13. I made contact with Chief Benton's
Administrative Assistant regarding my injury as well as Chief Benton. After my
follow up appointment at Southern Bone and Joint on 4/9/13 I proceeded to
the Employee Health Clinic with paperwork of my treatment and to file Family
Medical Leave regarding my elderly father care as well as my medical issues. I
brought the appropriate paperwork to the police department and gave it to
Pam Deese and spoke with Chief Benton (Major Parrish was not in the
building). I was approved for Family Medial Leave and was directed not to
return to work for approximately 3 weeks. Once I returned to work and was
able to check guardian tracking I discovered that Major Steve Parrish had
submitted a negative Supervisor Miscellaneous Incident Report on me (See
Attached Report dated 4/8/13). Within this report Parrish addresses my
absence from duty and lack of communication with him regarding my injury. In
addition he mentioned the deployment of the Dignitary Protection Unit recently
and stated that Chief Benton was informed of the deployment and he was not.
Apparently this is what led to Parrish submitting this guardian tracking entry.
In response to this negative entry that will be added to my personnel file
within the Coaching portion of my Employee Performance Evaluation this
month I must explain issues between Parrish and I that I feel is harassment
from him that dates back to January of 2013. My intent is to file a Title VII
Civil Rights Act Violation regarding Racial Discrimination and Unlawful
Employment Practices complaint with the Equal Employment Opportunity
Commission as a result of Parrish's ongoing practices of deliberately treating
me indifferent. In my opinion he has also violated the Federal Consent Decree
that is currently in place.

On 1/17/13 Captain Jay came to my office and told me that I was needed in
the Chief's Office. Once there Major Parrish and Chief Benton were sitting down
and Parrish informed me of my transferred from the Patrol Services Bureau to
the Administrative Services Bureau. I asked why and was told that Captain
Robinson had health issues that they felt could be better managed if he
supervised a bureau that was the most self-sustaining. In addition I was told

 Guardian Tracking          Page: 2 of 5

CITY OF DOTHAN/GRAY 000471
CONFIDENTIAL

that on occasion Captains would be transferred to all 3 bureaus for experience. I had already supervised the Administrative Bureau in the past so immediately I became suspicious at the timing of this transfer. I mentioned to Parrish that within the Administrative Bureau the Animal Control Division supervisor (Sgt. Woodruff) and I did not see eye-to-eye and we had prior issues. Parrish then said that she would just have respect that I was her supervisor and follow my directions. These were the only reasons I received from Parrish and Chief Benton. The transfer became effective on 1/27/13. Approximately 1 or 2 weeks later I entered Parrish's office and told him that my transfer, "Didn't pass the smell test." I felt that there were other reasons unknown to me that I had been transferred. He asked me to close his door and I asked if the recent department wide survey from employees had anything to do with my transfer and he said, "No". I then asked why I was transferred. The tone of his voice changed to chastisement as he began to accuse me of "micromanaging" and said that I had called for a, " three day investigation into an incident regarding Officer Peter Markow." I explained to Parrish in detail of several department and personnel violations (some of a major category) that Markow had committed during an incident where a suspect was apprehended. I advised Parrish that I met with several supervisors to determine if the department failed in training Markow prior to seeking disciplinary action in order to reduce liability. The suspect was a Black, Male and Parrish brought to my attention that the suspect plead guilty to the charges, and I responded that he was not represented by an attorney, and one of his charges were improperly brought by Markow. Next, Parrish accused me of not forwarding a polygraph report to Chief Benton once when he was looking for the results. I informed him that Lt. Roy Woodham was the person who assigns polygraphs and he has done so for several months. Parrish then described incidents where I was off-duty and came in contact with police officers. One of these such events I received a minor infraction for, however he mentioned another incident at Pocket's Lounge where I was threatened by a "Westside Boys Gang Member" as I was awaiting a to-go-order. Internal Affairs conducted an investigation into that incident and I was exonerated from any wrong doing. In that case I obtained a warrant for the arrest of the suspect instead of making an on-view arrest. I take offense to Parrish with this incident because I had to defend myself from being assaulted by 2 men much larger than I just because they discovered that I was an off-duty police officer and they became aware of that through other patrons of the establishment. Another incident that Parrish mentioned was that I assisted the owner of a local lounge in detaining a suspect that had counterfeit money and an illegal firearm until officers could arrive and make several felony charges. Usually this is something that an officer would normally receive praise for, but Parrish seems determined to chastise me for any small thing that he can. Parrish then told me that I, "... should not be out at 2:30 AM." I again took offense to Parrish's attempt to dictate where I go and what time that he feels I need to be at my residence during my off-duty private time. I then proceeded to inform Parrish that he needed tell juveniles what time to be in bed because I am an adult. In addition I told Parrish that he is not without fault as it relates to his job as a Major with this department. I explained that I know that he just does not like me as a person, and it is readily apparent by employees of this department that he deliberately treats


Guardian Tracking

CITY OF DOTHAN/GRAY 000472
CONFIDENTIAL

his close employee friends, some of which are in the organization "Sons of Confederate Soldiers" that Parrish has been a leader of, with more respect and favor than others. I told him that as a supervisor it was incumbent that he not show favoritism for some employees more so than other employees. He then said that maybe he needed to re-evaluate himself in that area. I have been employed with this department for over 28 years and in my opinion based on things that I have witnessed, Parrish has always been part of the "Good ol Boys" and it appears that he still subscribes to this practice. At the end of this discussion Parrish told me that he was monitoring me and that he was going to see if I let Lt. Nelms supervise without me micromanaging him. Since this conversation between Parrish and I he has removed my authority as a Bureau Commander by transferring division supervision from me to a Lieutenant Rank, as well as transferring divisions that would be under my command to be supervised by himself (Communications Division & Training Division). Parrish has created a position of "Administrative Services Bureau Supervisor" which is now the rank of Lieutenant in order to circumvent my authority. This has resulted in the alteration of the department's organizational chart which removes me, (Black, Male) from authority over my bureau and places it at the Lieutenant's level (White, Male). The other two Captains, (White, Male) still retains their authority over the other two bureaus without limitation, and does not have a "bureau supervisor" at the rank of Lieutenant.

Major Parrish has intentionally failed to make several guardian tracking entries that would be favorable for me, however he consistently makes favorable guardian tracking entries for other employees (mostly White) that seem minor. An example of that is Parrish made a favorable guardian tracking entry of an employee taking the assignment to drive newly purchased police vehicles to Dothan from another city. On the other hand Parrish failed to recognize me for: (1) Finding an Executive Protection School for several employees at no cost to the city. (2) Receiving a Commendation from the Governor of the State of Alabama for a recent Kidnapping Case. (3) Working on the kidnapping case without receiving additional compensation since I am a fixed salary. (4) Executive Protection Detail of Governor Robert Bentley during a recent economic announcement in Dothan.

Parrish has not communicated with me since our heated exchange on 1/17/13 where he falsely accused me of micromanaging and not turning in work that was not my responsibility at the time. I have since discovered that another reason for my transfer was indeed for some comments within the survey. I was not given an opportunity to address any of the above mention concerns prior to my transfer. So Parrish's negative guardian tracking regarding my lack of communication with him is hypocritical to say the least. I request to be removed from Parrish's chain-of-command due to his affiliation with Sons of Confederate Soldiers (See Attached Photo), false statements he has made to me, and absolutely no confidence I have in his ability to treat me equally as others within the department. I have two witnesses that have overheard Parrish inquiring as to the whereabouts of Captain Jay when he was absent from work recently, also with a leg injury. I feel certain that he has not written a negative guardian tracking entry such as mine on Jay. I have told Chief Benton as well as Major Parrish that due to his (Parrish's) actions I feel as if he

 GuardianTracking

CITY OF DOTHAN/GRAY 000473
CONFIDENTIAL

does not have my best interest in mind as it related to my position with this department, nor as a citizen of this city. For the record, Parrish cannot speak on my behalf, nor does he represent me in any way due to false statements that he has misrepresented me on. This guardian tracking entry is just another method for Parrish to discriminate on me as an African American due to the position of authority. The attached photocopy depicts Major Parrish with several former and present police department employees who receive preferential treatment, some of who were re-assigned to work directly under Parrish instead of me. The Federal Consent Decree prohibits Parrish from treating me the way he has over several months and I refuse to be subjected to this humiliation any longer.

Captain Keith Gray

cc: Chief Gregory Benton



CITY OF DOTHAN/GRAY 000474
CONFIDENTIAL

# Incident Report

6/10/2013

Dothan Police Department

## Supervisor Miscellaneous

**For:** Captain Gray, Keith (344)      **Occurred:** 4/8/2013
**By:** Major Parrish, Steve (337)      **Entered:** 4/8/2013

I had a few inquires this morning as to your whereabouts. It was not until I received an e-mail from the Chief that I knew you were out due to an off duty injury. As I have informed all captains in the past, I encourage you to communicate with the Chief freely. I do however, expect you to also communicate things such as an absence from duty with me. I bring this to your attention, because there seems to be a pattern developing with your lack of communications with me.

Another example was with the latest deployment of the Dignitary Protection Unit and a correspondence from you directly to the Chief, omitting me. You must know that he and I communicate several times daily. He sends me correspondents from all the captains if he does not see my name on them (if these thing pertain to the operations of this Department). I know at one point you said you were not comfortable with communicating with me. Nevertheless, as your supervisor I expect to be informed with things that relate to the operations of this Department.

 GuardianTracking

Page: 1 of 5

CITY OF DOTHAN/GRAY 000475
CONFIDENTIAL

CITY OF DOTHAN/GRAY 000476
CONFIDENTIAL

# EXHIBIT

# 3

| | | |
|---|---|---|
| CITY OF DOTHAN | ) | |
| ALABAMA | ) | PERSONNEL BOARD ORDER NO. 14-01 |
| HOUSTON COUNTY | ) | |

THE PERSONNEL BOARD
City of Dothan
Dothan, Alabama

---

SUBJECT:  Termination Appeal of Ivan Keith Gray, Police Captain.

---

Pursuant to the City of Dothan Personnel Rules and Regulations III – Disciplinary Policy, Ivan Keith Gray, Police Captain, was served with a City of Dothan Disciplinary Action Report (Personnel Form #147) dated September 20, 2013, charging Mr. Gray with an Intolerable Category Offense, Sec. 3-43 (19) Other, to include Conduct Unbecoming of an Officer. The statement of charges reads:

> "You are found to be in violation of Dothan Police Department General Order 100-50, Code of Conduct, section II, paragraph B, Conduct Unbecoming of an Officer and section XXXVIII, paragraph A, Membership in Organizations; General Order 20CM2H, Mobile Data Terminals and Electronic Messaging, Section 1, paragraph 6, Administrative; General Order 100-50, Code of Conduct, section XXXIII, paragraph A, Truthfulness; General Order 200-30, Professional Standards, section IV, paragraph M, Investigative Procedures and General Order 100-41, Code of Ethics, section I, paragraph I, Private Life. (See Exhibit "A" attached hereto and incorporated herein).

> You have further been found in violation of City of Dothan Personnel Rules and Regulations, Sec. 3-43, (19) Intolerable Offense: Other, to include Conduct Unbecoming of an Officer. (See Exhibit "A" attached hereto and incorporated herein)."

Attachment "A" to the statement of charges reads:

> "In the early morning hours of August 25, 2013, Dothan Police responded to an Assault 2nd call for assistance from 414 N. Appletree St. in Dothan, AKA the Outcast Motorcycle Club clubhouse.  Officers found numerous club members inside, all of whom had extensive criminal records.  Several of those club members were arrested on felony charges.

CITY OF DOTHAN/GRAY 000534
Page 1 of 1
CONFIDENTIAL

Upon your being identified by several of these club members and subsequently other members of the Outcast Motorcycle Club as being involved in various activities, an internal police investigation was begun. This investigation confirmed your involvement, including, but not limited to, your having met with Otis "Big O" Ashford, State President of Outcast Motorcycle Club in Bessemer, AL, sometime in April, 2013. This meeting was for the purpose of receiving approval or "blessing" of Outcast Motorcycle Club for the start of a new chapter of your motorcycle club, Bama Boyz, in Anniston, AL, which in fact, you did receive. You also sought and received the "blessing" of "Big Meat" (real name unknown), President of Sin City Disciples Motorcycle Club in Alabama. These two clubs are listed by the U. S. Justice Department as "Outlaw Motorcycle Gangs" in Alabama, whose members have voluntarily made a commitment to band together to abide by their organization's rules enforced by violence and who engage in activities that bring them and their club into repeated and serious conflict with society and the law, including a pattern of criminal or delinquent conduct.

The investigation confirmed that you have instructed new members of your club that it is "attached directly" to Outcast Motorcycle Club, that you "work hand-in-hand" with them and Sin City Disciples Motorcycle Club and that your club follows their directions and guidelines.

The investigation further revealed your misuse of DPD equipment, including, non-police business related access of personal information of your fellow officers on the City's Sungard AS400 system and inappropriate access and viewing of a pornographic internet website on your police issued cell phone.

During the course of this investigation you were untruthful with investigators and made statements intended to deceive and alter the course of their investigation into your conduct which made the basis of these charges."

Mr. Gray was served with Personnel Form #153, Notice of Determination Hearing and Possible Disciplinary Action, dated September 20, 2013, pursuant to the City of Dothan Personnel Rules and Regulations IV – Due Process Procedure.

A Determination Hearing was conducted on Monday, September 23, 2013, at which time Mr. Gray was given the opportunity to respond to the charges, either orally and/or in writing.

On September 23, 2013, Police Chief Greg Benton issued Personnel Form #155, Decision of Determination Hearing, and Mr. Gray received this written decision on September 23, 2013. This decision reads:

> "After reviewing all the facts and circumstances of this case, I have determined that you were in violation of the Dothan Police Department General Orders for which you were charged with.

> You have further been found in violation of the City of Dothan Personnel Rules and Regulations, Sec. 3-43, (19) Intolerable Offense: Other, to include Conduct Unbecoming of an Officer.

> It is my decision to terminate your employment with the Dothan Police Department effective immediately."

On October 2, 2013, Mr. Gray filed Personnel Form #152, City of Dothan Appeal Form, requesting an appeal to the Personnel Board of the disciplinary action taken against him.

The Personnel Board convened to hear Mr. Gray's appeal on Tuesday, November 19, 2013, 9:00 a.m., in the Sakado Room, second floor of the Dothan Civic Center.

**PERSONNEL BOARD CONSIDERATIONS:** The Personnel Board heard testimony, examined the evidence submitted during the hearing, and upon receipt of the official hearing transcript, reviewed the transcript and evidentiary exhibits again.

**PERSONNEL BOARD FINDING:** We find substantial evidence to terminate the employment of Ivan Keith Gray for having an Intolerable Category Offense, Sec. 3-43, (19) Intolerable Offense: Other, to include Conduct Unbecoming of an Officer.

CITY OF DOTHAN/GRAY 000536
Page 3 of 4
CONFIDENTIAL

Signed this __13th__ day of January 2014.

ATTEST:

_____
Delvick J. McRay
Personnel Director

_____
BARBARA SPANN, Chairperson

_____
MARY DAVIS, Member

_____
TIM SHIRLEY, Member

_____
MARK SMITH, Member

_____
EARL TYSON, Member

PBO 14-01 Gray

CITY OF DOTHAN/GRAY 000537
Page 4 of 4
CONFIDENTIAL

# EXHIBIT
# 4

9/16/13

Document

286

29

296

302

307

31

317

319

323

327

334

357

363

364

365

366

372

375

382

388

39

393

4

400

402

406

407

417

419

432

435

440

447

449

452

453

454

456

458

46

463

475

476

477

478

482

483

4930

495

497

503

5155

55

Document: 200-42H
**Subject:** Mobile Data Terminals and Electronic
Messaging
**Revision**  8/1/2011
**Date:**
**Signed**  200-42H - Mobile Data Terminal.pdf
**File:**
**Signed By:** Ivan Gray (344)
**Signed On:** 9/27/2011 7:51 PM

Close

| | |
|---|---|
| Heath, Charles | 8/5/2011 |
| Long, Brian | 8/7/2011 |
| Garrett, Jeffrey | 8/4/2011 |
| Martin, Andy | 8/2/2011 |
| Etress, Michael | 8/3/2011 |
| Woodruff, Adrianne | 8/2/2011 |
| Robinson, Stacy | 8/8/2011 |
| Nelms, Mark | 8/5/2011 |
| Smith, Brian | 8/7/2011 |
| Holloway, Michelle | 9/4/2013 |
| Shelley, Tonja | 8/4/2011 |
| Johnson, Stacy | 8/1/2011 |
| Neal, Jason | 8/10/2011 |
| Ott, Carlton | 8/4/2011 |
| Tallman, Louise | 8/2/2011 |
| Deese, Pamela | 8/8/2011 |
| Long, Loretta | 8/2/2011 |
| Benny, William | 8/15/2011 |
| Hutton, Shina | 8/2/2011 |
| Lewis, David | 8/2/2011 |
| Nunez, Peter | 8/19/2011 |
| Rice, John | 8/9/2011 |
| Odom, Timothy | 8/2/2011 |
| Skipper, Renee | 8/11/2011 |
| Arnold, Jeffrey | 8/9/2011 |
| David, Christopher | 8/8/2011 |
| Gray, Sheila | 8/3/2011 |
| Penn, Jason | 8/4/2011 |
| Coachman, Charles | 8/11/2011 |
| Rafferty, Kara | 8/2/2011 |
| Johnson, Stephanie | 8/11/2011 |
| Adkins, Jason | 8/9/2011 |
| Collins, Jeremy | 8/2/2011 |
| Allums, Clark | 8/9/2011 |
| Weed, Jason | 8/9/2011 |
| Gill, Anthony | 8/9/2011 |
| Robinson, James | 8/4/2011 |
| User, Test | 2/2/2012 |
| Miller, Timothy | 8/8/2011 |
| Butler, Develius | 8/2/2011 |
| Wozniak, William | 8/6/2011 |
| Shiver, Michael | 5/30/2013 |
| Adkins, Kristen | 9/20/2011 |

CITY OF DOTHAN/GRAY 002838
CONFIDENTIAL

2/3

# EXHIBIT
# 5

| 344 | Gray | Ivan | 100-40 | Oath of Office | 6/18/10 12:00 AM | New | General Orders | Captain of Police | Administrative Services Bureau | 6/24/10 11:26 AM |
| 344 | Gray | Ivan | 100-41 | Code of Ethics | 6/18/10 12:00 AM | New | General Orders | Captain of Police | Administrative Services Bureau | 6/24/10 11:26 AM |
| 344 | Gray | Ivan | 100-56 | Outside Employment | 6/25/10 12:00 AM | New | General Orders | Captain of Police | Administrative Services Bureau | 6/24/10 11:26 AM |
| 344 | Gray | Ivan | 20100623AllCityEmployees | Use of Social Networking Sites | 6/23/10 12:00 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 6/24/10 11:26 AM |
| 344 | Gray | Ivan | Taser9thCir2010 | Taser Use | 6/18/10 12:00 AM | New | Legal Updates | Captain of Police | Administrative Services Bureau | 8/9/10 2:37 PM |
| 344 | Gray | Ivan | 20100701 | Special Order | 7/15/10 12:00 AM | New | Special Orders | Captain of Police | Administrative Services Bureau | 8/16/10 2:47 PM |
| 344 | Gray | Ivan | 201008112 | Juvenile Custody and Transportation Procedure | 8/11/10 12:00 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 8/16/10 2:56 PM |
| 344 | Gray | Ivan | 201008121 | City Damage Claims | 8/12/10 12:00 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 8/16/10 3:00 PM |
| 344 | Gray | Ivan | Taser9thCir2009 | Taser Use | 12/28/09 12:00 AM | New | Legal Updates | Captain of Police | Administrative Services Bureau | 8/16/10 3:06 PM |
| 344 | Gray | Ivan | 201008063 | Immigration Customs Enforcement | 8/6/10 12:00 AM | New | Special Orders | Captain of Police | Administrative Services Bureau | 8/16/10 3:09 PM |
| 344 | Gray | Ivan | 200-81H | Bomb Threats | 8/6/10 12:00 AM | New | General Orders | Captain of Police | Administrative Services Bureau | 8/16/10 3:45 PM |
| 344 | Gray | Ivan | 400-51 | Traffic Collision Investigation | 7/23/10 12:00 AM | New | General Orders | Captain of Police | Administrative Services Bureau | 8/17/10 9:43 AM |
| 344 | Gray | Ivan | 100-10 | Jurisdiction and Mutual Aid | 7/30/10 12:00 AM | New | General Orders | Captain of Police | Administrative Services Bureau | 8/17/10 11:26 AM |
| 344 | Gray | Ivan | 400-06 | Bicycle Patrol | 8/6/10 12:00 AM | New | General Orders | Captain of Police | Administrative Services Bureau | 8/17/10 1:00 PM |
| 344 | Gray | Ivan | 201008172 | Violation of Protection Orders | 8/17/10 12:00 AM | New | Legal Updates | Captain of Police | Administrative Services Bureau | 8/19/10 10:42 AM |
| 344 | Gray | Ivan | 201008191 | Emergency Medical Dispatch | 8/19/10 12:00 AM | New | Special Orders | Captain of Police | Administrative Services Bureau | 8/19/10 5:28 PM |

1

CITY OF DOTHAN/GRAY 004601
CONFIDENTIAL

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 344 | Gray | Ivan | 400-30H | | Canine Unit | 8/20/10 12:00 AM | New | General Orders | Captain of Police | Administrative Services Bureau | 8/24/10 5:28 PM |
| 344 | Gray | Ivan | 201008192 | | Sovereign Citizen Advisory | 8/20/10 12:00 AM | New | Roll Call Training | Captain of Police | Administrative Services Bureau | 8/24/10 5:32 PM |
| 344 | Gray | Ivan | 100-31 | | Compensatory and Overtime | 8/27/10 12:00 AM | New | General Orders | Captain of Police | Administrative Services Bureau | 3/28/10 2:44 AM |
| 344 | Gray | Ivan | 200-32H | | Hostages and Barricaded Persons | 8/27/10 12:00 AM | New | General Orders | Captain of Police | Administrative Services Bureau | 9/7/10 6:19 AM |
| 344 | Gray | Ivan | 100-74 | | Media Information | 8/27/10 12:00 AM | New | General Orders | Captain of Police | Administrative Services Bureau | 9/7/10 7:10 AM |
| 344 | Gray | Ivan | 201008241 | | Juvenile Pickup Orders | 9/24/10 12:00 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 9/28/10 1:01 PM |
| 344 | Gray | Ivan | 201010181 | | Injury and Accident Photos | 10/19/10 12:00 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 10/29/10 11:34 AM |
| 344 | Gray | Ivan | 100-26 | | Planning and Research | 12/10/10 12:00 AM | New | General Orders | Captain of Police | Administrative Services Bureau | 12/9/10 12:15 PM |
| 344 | Gray | Ivan | 100-20 | | Staff Meetings | 12/3/10 12:00 AM | New | General Orders | Captain of Police | Administrative Services Bureau | 12/9/10 12:18 PM |
| 344 | Gray | Ivan | 201012061 | | ADFS Evidence Submission | 12/6/10 12:00 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 12/20/10 3:09 PM |
| 344 | Gray | Ivan | 201012142 | | Warrantless Arrests 11th Fed CCA | 12/14/10 12:00 AM | New | Legal Updates | Captain of Police | Administrative Services Bureau | 12/20/10 3:23 PM |
| 344 | Gray | Ivan | 300-45 | | Crime Analysis | 1/7/11 12:00 AM | New | General Orders | Captain of Police | Administrative Services Bureau | 12/20/10 3:55 PM |
| 344 | Gray | Ivan | 100-70 | | Administrative Reporting System | 1/7/11 12:00 AM | New | General Orders | Captain of Police | Administrative Services Bureau | 12/20/10 4:07 PM |
| 344 | Gray | Ivan | 201001041 | | Anonymous Callers | 1/4/11 12:00 AM | New | Legal Updates | Captain of Police | Administrative Services Bureau | 1/5/11 5:57 PM |
| 344 | Gray | Ivan | 201012301 | | Medications | 12/30/10 12:00 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 1/5/11 5:58 PM |
| 344 | Gray | Ivan | 100-92 | | Line of Duty Deaths and Serious Injuries | 12/3/10 12:00 AM | New | General Orders | Captain of Police | Administrative Services Bureau | 1/5/11 7:04 PM |

2

CITY OF DOTHAN/GRAY 004602
CONFIDENTIAL

| 344 | Gray | Ivan | 201101121 | 11th Cir Fed Ct Warrantless Entry Decision | 1/13/11 12:00 AM | New | Legal Updates | Captain of Police | Administrative Services Bureau | 1/26/11 8:06 AM |
| 344 | Gray | Ivan | 201101111 | 11th Cir Fed Ct LEO Shooting Decision | 1/11/11 12:00 AM | New | Legal Updates | Captain of Police | Administrative Services Bureau | 1/26/11 8:29 AM |
| 344 | Gray | Ivan | 300-50 | Vice, Drugs and Organized Crime | 8/27/10 12:00 AM | New | General Orders | Captain of Police | Administrative Services Bureau | 2/7/11 10:07 PM |
| 344 | Gray | Ivan | 400-20H | Domestic Violence | 8/27/10 12:00 AM | New | General Orders | Captain of Police | Administrative Services Bureau | 2/7/11 10:23 PM |
| 344 | Gray | Ivan | 100-91 | Victim/Witness Assistance | 9/17/10 12:00 AM | New | General Orders | Captain of Police | Administrative Services Bureau | 2/7/11 10:35 PM |
| 344 | Gray | Ivan | 100-53 | Awards Program | 11/14/10 12:00 AM | New | General Orders | Captain of Police | Administrative Services Bureau | 2/9/11 10:44 PM |
| 344 | Gray | Ivan | 201102141 | Bomb Squad K9 | 2/14/11 12:00 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 2/14/11 4:48 PM |
| 344 | Gray | Ivan | 201102182 | Information Technology Requests | 2/18/11 12:00 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 2/21/11 12:48 PM |
| 344 | Gray | Ivan | 201103072 | SouthernLinc Use | 3/7/11 12:00 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 3/7/11 5:52 PM |
| 344 | Gray | Ivan | 201103081 | K9 Leadership | 3/4/11 12:00 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 3/7/11 5:53 PM |
| 344 | Gray | Ivan | 201102221 | Federal Agent Ambush/Murder | 2/22/11 12:00 AM | New | Homeland Security Alert Bulletin | Captain of Police | Administrative Services Bureau | 3/23/11 1:58 PM |
| 344 | Gray | Ivan | 201103081 | Administrative Hours | 3/9/11 12:00 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 3/23/11 2:00 PM |
| 344 | Gray | Ivan | 201103111 | Weight Room | 3/11/11 12:00 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 3/23/11 2:01 PM |
| 344 | Gray | Ivan | 201103101 | Local Impact | 3/11/11 10:17 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 3/23/11 2:04 PM |
| 344 | Gray | Ivan | 500-05 | Training | 2/28/11 12:00 AM | New | General Orders | Captain of Police | Administrative Services Bureau | 3/23/11 3:00 PM |

3

CITY OF DOTHAN/GRAY 004603
CONFIDENTIAL

| 344 | Gray | Ivan | 201103291 | Crimestoppers Program | 3/29/11 2:14 PM | New | Memorandum | Captain of Police | Administrative Services Bureau | 3/29/11 2:18 PM |
| 344 | Gray | Ivan | 201104061 | Staff Inspection Officer | 4/7/11 8:14 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 4/15/11 9:50 AM |
| 344 | Gray | Ivan | 201104272 | GO 100-8S Appearance | 4/27/11 3:36 PM | New | Memorandum | Captain of Police | Administrative Services Bureau | 5/25/11 12:00 PM |
| 344 | Gray | Ivan | 201105172 | Physical Agility Test | 5/18/11 7:50 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 5/25/11 12:02 PM |
| 344 | Gray | Ivan | 201106231 | Southern Linc Replacement | 6/24/11 8:29 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 5/24/11 9:58 AM |
| 344 | Gray | Ivan | 201106221 | Bomb & Explosive Devices Unit | 6/22/11 3:14 PM | New | Memorandum | Captain of Police | Administrative Services Bureau | 6/24/11 9:59 AM |
| 344 | Gray | Ivan | 201106171 | US DOS Driver's Licenses | 6/17/11 12:00 AM | New | Legal Updates | Captain of Police | Administrative Services Bureau | 7/14/11 1:24 PM |
| 344 | Gray | Ivan | 201106141 | Facebook Safety for Law Enforcement | 6/14/11 12:00 AM | New | Roll Call Training | Captain of Police | Administrative Services Bureau | 7/14/11 2:09 PM |
| 344 | Gray | Ivan | 200-51H | Dealing with Mentally Ill Persons | 6/24/11 12:00 AM | Revised | General Orders | Captain of Police | Administrative Services Bureau | 7/15/11 8:53 AM |
| 344 | Gray | Ivan | 400-56H | Biased Based Profiling | 7/4/11 12:00 AM | New | General Orders | Captain of Police | Administrative Services Bureau | 7/15/11 9:10 AM |
| 344 | Gray | Ivan | 201105171 | Evidence Exigency US Supreme Court | 5/17/11 12:00 AM | New | Legal Updates | Captain of Police | Administrative Services Bureau | 7/15/11 9:29 AM |
| 344 | Gray | Ivan | WD201008171 | Court Attendance | 6/27/11 12:00 AM | Revised | Written Directives | Captain of Police | Administrative Services Bureau | 7/15/11 9:29 AM |
| 344 | Gray | Ivan | 201107131 | Critical Incidents | 7/13/11 2:45 PM | New | Memorandum | Captain of Police | Administrative Services Bureau | 7/15/11 9:43 AM |
| 344 | Gray | Ivan | C20110412 | Law Enforcement Ethics | 4/11/11 12:00 AM | New | Training Activity | Captain of Police | Administrative Services Bureau | 7/15/11 9:58 AM |
| 344 | Gray | Ivan | 100-80H.1 Warrant Service | Warrant Service Sheet | 4/18/11 5:12 PM | New | General Orders Associated Form | Captain of Police | Administrative Services Bureau | 7/19/11 9:30 AM |

4

CITY OF DOTHAN/GRAY 004604
CONFIDENTIAL

| 344 | Gray | Ivan | 300-60 | Interview Rooms | 7/18/11 12:00 AM | Revised | General Orders | Captain of Police | Administrative Services Bureau | 7/26/11 8:05 AM |
| 344 | Gray | Ivan | Leave Request | Leave Request | 7/19/11 12:00 AM | New | General Orders Associated Form | Captain of Police | Administrative Services Bureau | 8/4/11 2:14 PM |
| 344 | Gray | Ivan | 201108042 | Firing Range Hours | 8/8/11 2:49 PM | New | Memorandum | Captain of Police | Administrative Services Bureau | 8/17/11 1:43 PM |
| 344 | Gray | Ivan | 201108041 | Rescinding of Policy Manual and Supervisor PGO Man | 8/5/11 4:50 PM | New | Memorandum | Captain of Police | Administrative Services Bureau | 8/17/11 1:50 PM |
| 344 | Gray | Ivan | 200-20 | Communications | 7/19/11 12:00 AM | Revised | General Orders | Captain of Police | Administrative Services Bureau | 9/14/11 11:53 AM |
| 344 | Gray | Ivan | 201108262 | Security Measures | 8/26/11 1:47 PM | New | Memorandum | Captain of Police | Administrative Services Bureau | 9/14/11 11:56 AM |
| 344 | Gray | Ivan | 201108253 | Prisoner Transport Procedures | 8/26/11 8:55 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 9/14/11 12:01 PM |
| 344 | Gray | Ivan | 100-36 | Inspections | 7/26/11 12:00 AM | Revised | General Orders | Captain of Police | Administrative Services Bureau | 9/26/11 10:56 AM |
| 344 | Gray | Ivan | 200-42H | Mobile Data Terminals and Electronic Messaging | 8/1/11 12:00 AM | Revised | General Orders | Captain of Police | Administrative Services Bureau | 9/27/11 7:51 PM |
| 344 | Gray | Ivan | 400-54 | Use of Speed Detection Devices | 8/24/11 12:00 AM | Revised | General Orders | Captain of Police | Administrative Services Bureau | 9/27/11 10:09 PM |
| 344 | Gray | Ivan | 100-80H | Warrant/Subpoena process. | 8/29/11 12:00 AM | Revised | General Orders | Captain of Police | Administrative Services Bureau | 9/27/11 10:33 PM |
| 344 | Gray | Ivan | 200-11H.1 | Non Issued Personal Firearm Request/Qualification | 5/5/11 2:07 PM | New | General Orders Associated Form | Captain of Police | Administrative Services Bureau | 9/27/11 10:37 PM |
| 344 | Gray | Ivan | 201108161 | Emergency Escort Services | 9/19/11 11:35 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 9/27/11 10:40 PM |
| 344 | Gray | Ivan | 201109062 | Identification | 9/22/11 8:04 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 9/27/11 10:42 PM |
| 344 | Gray | Ivan | 201110101 | Lawsuit Notification | 10/10/11 4:04 PM | New | Memorandum | Captain of Police | Administrative Services Bureau | 10/11/11 4:14 PM |

5

CITY OF DOTHAN/GRAY 004605
CONFIDENTIAL

| 344 | Gray | Ivan | 200-53 | Juvenile Operations | 9/19/11 12:00 AM | Revis ed | General Orders | Captain of Police | Administrative Services Bureau | 10/23/11 11:52 PM |
| 344 | Gray | Ivan | 201110272 | Timesheets and Overtime Sheets Procedures | 10/31/11 11:08 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 10/31/11 2:59 PM |
| 344 | Gray | Ivan | 201110271 | Administrative Order - Juv Court of Houston County | 10/27/11 3:44 PM | New | General Announcement | Captain of Police | Administrative Services Bureau | 10/31/11 3:28 PM |
| 344 | Gray | Ivan | 201111091 | Awards Review Board Chairperson | 11/10/11 10:42 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 11/13/11 9:30 PM |
| 344 | Gray | Ivan | 201111081 | Staging Directive (Temporary) | 11/8/11 9:57 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 11/21/11 2:58 PM |
| 344 | Gray | Ivan | 201111292 | Patrol Evidence Locker Instructions | 11/29/11 4:57 PM | New | Memorandum | Captain of Police | Administrative Services Bureau | 11/30/11 12:06 PM |
| 344 | Gray | Ivan | 300-40 Training Document | Briefing on Criminal Intelligence Process | 12/1/11 9:43 AM | Roll Call Training | | Captain of Police | Administrative Services Bureau | 12/2/11 5:09 PM |
| 344 | Gray | Ivan | 201112072 | Radio Signal Modifications | 12/7/11 12:13 PM | New | Memorandum | Captain of Police | Administrative Services Bureau | 12/21/11 3:08 PM |
| 344 | Gray | Ivan | 100-52 | Social Media | 10/12/11 4:01 PM | New | General Orders | Captain of Police | Administrative Services Bureau | 12/21/11 3:23 PM |
| 344 | Gray | Ivan | 200-84 | Terrorism Prevention Plan | 9/27/11 12:00 AM | Revis ed | General Orders | Captain of Police | Administrative Services Bureau | 1/23/12 8:08 PM |
| 344 | Gray | Ivan | 400-53 | DUI Enforcement | 9/28/11 12:00 AM | Revis ed | General Orders | Captain of Police | Administrative Services Bureau | 1/23/12 8:21 PM |
| 344 | Gray | Ivan | 201201231 | Law Enforcement Lump Sum Payments | 1/23/12 10:34 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 1/23/12 8:34 PM |
| 344 | Gray | Ivan | 200-05H | Arrest Discretion and Authority | 10/31/11 12:00 AM | Revis ed | General Orders | Captain of Police | Administrative Services Bureau | 1/23/12 10:18 PM |
| 344 | Gray | Ivan | 400-52 | Traffic Direction and Control | 8/2/11 12:00 AM | Revis ed | General Orders | Captain of Police | Administrative Services Bureau | 1/23/12 10:26 PM |
| 344 | Gray | Ivan | 100-12 | Volunteers | 8/4/11 10:59 AM | New | General Orders | Captain of Police | Administrative Services Bureau | 2/2/12 3:59 PM |

6

CITY OF DOTHAN/GRAY 004606
CONFIDENTIAL

| 344 | Gray | Ivan | 100-01 | Written Directive System | 8/20/11 12:00 AM | Revised | General Orders | Captain of Police | Administrative Services Bureau | 2/2/12 4:27 PM |
| 344 | Gray | Ivan | 100-02 | ACIC/NCIC Rules and Regulations | 5/26/11 9:21 AM | Revised | General Orders | Captain of Police | Administrative Services Bureau | 2/2/12 4:31 PM |
| 344 | Gray | Ivan | 400-49 | Escorts | 5/25/11 12:00 AM | Revised | General Orders | Captain of Police | Administrative Services Bureau | 2/2/12 4:38 PM |
| 344 | Gray | Ivan | 400-55 | Vehicle Impound and Towing | 10/5/11 12:00 AM | Revised | General Orders | Captain of Police | Administrative Services Bureau | 2/6/12 10:01 PM |
| 344 | Gray | Ivan | 100-56 R | Secondary and Extra-Duty Employment | 10/11/11 12:00 AM | New | General Orders | Captain of Police | Administrative Services Bureau | 2/6/12 10:26 PM |
| 344 | Gray | Ivan | 201202061 | Law Enforcement Lump Sum Payments Update | 2/6/12 10:18 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 2/6/12 10:31 PM |
| 344 | Gray | Ivan | 201202062 | Travel Request Routing | 2/7/12 8:06 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 2/7/12 3:50 PM |
| 344 | Gray | Ivan | 300-61 | Temporary Detention | 12/28/11 12:00 AM | Revised | General Orders | Captain of Police | Administrative Services Bureau | 2/19/12 11:14 PM |
| 344 | Gray | Ivan | 300-10 | Use of Informants | 10/24/11 12:00 AM | Revised | General Orders | Captain of Police | Administrative Services Bureau | 2/21/12 4:25 PM |
| 344 | Gray | Ivan | 200-30 | Professional Standards | 10/27/11 12:00 AM | Revised | General Orders | Captain of Police | Administrative Services Bureau | 2/22/12 5:34 PM |
| 344 | Gray | Ivan | 100-90 | Crime Prevention and Community Involvement | 5/3/11 12:00 AM | New | General Orders | Captain of Police | Administrative Services Bureau | 2/22/12 5:38 PM |
| 344 | Gray | Ivan | 100-25 | Fiscal Management | 10/27/11 12:00 AM | Revised | General Orders | Captain of Police | Administrative Services Bureau | 2/24/12 3:36 PM |
| 344 | Gray | Ivan | 100-61 | Promotional procedures for sworn personnel. | 12/1/11 12:00 AM | Revised | General Orders | Captain of Police | Administrative Services Bureau | 2/24/12 4:26 PM |
| 344 | Gray | Ivan | 300-40 | Criminal Intelligence | 12/1/11 12:00 AM | Revised | General Orders | Captain of Police | Administrative Services Bureau | 2/24/12 4:38 PM |
| 344 | Gray | Ivan | C20120208 | Veh Ops in Emergency Situations | 2/7/12 12:00 AM | New | Training Activity | Captain of Police | Administrative Services Bureau | 2/28/12 8:22 AM |
| 344 | Gray | Ivan | 200-54 | SRO | 4/7/11 12:00 AM | New | General Orders | Captain of Police | Administrative Services Bureau | 2/28/12 8:26 AM |

7

CITY OF DOTHAN/GRAY 004607
CONFIDENTIAL

| 344 | Gray | Ivan | 200-90H | Courtroom Security | 2/29/12 12:00 AM | Revised | General Orders | Captain of Police | Administrative Services Bureau | 3/6/12 1:23 PM |
|---|---|---|---|---|---|---|---|---|---|---|
| 344 | Gray | Ivan | 201204302 | Emergency Radio Transmissions | 4/30/12 12:00 AM | New | Roll Call Training | Captain of Police | Administrative Services Bureau | 5/1/12 1:56 PM |
| 344 | Gray | Ivan | 201204201 | Local Impact Coordinator Assignment | 4/20/12 2:16 PM | New | Memorandum | Captain of Police | Administrative Services Bureau | 5/1/12 1:57 PM |
| 344 | Gray | Ivan | 201204301 | Alabama Dept of Forensic Sciences | 4/30/12 4:30 PM | New | General Announcement | Captain of Police | Administrative Services Bureau | 5/1/12 1:58 PM |
| 344 | Gray | Ivan | 100-14 | Reserves | 5/2/12 3:10 PM | New | General Orders | Captain of Police | Administrative Services Bureau | 5/3/12 3:10 PM |
| 344 | Gray | Ivan | 201008371 Revised 051712 | Court Attendance Directive Revised | 5/17/12 11:02 AM | New | Written Directives | Captain of Police | Administrative Services Bureau | 5/17/12 2:22 PM |
| 344 | Gray | Ivan | 200-11H | Weapons Authorization | 5/14/12 12:00 AM | Revised | General Orders | Captain of Police | Administrative Services Bureau | 5/23/12 8:37 AM |
| 344 | Gray | Ivan | 200-44 | Polygraphs | 6/4/12 12:00 AM | Revised | General Orders | Captain of Police | Administrative Services Bureau | 6/4/12 3:02 PM |
| 344 | Gray | Ivan | 201206081 | Sovereign Citizens on LEO During Traffic Stops | 6/8/12 12:00 AM | New | Homeland Security Alert Bulletin | Captain of Police | Administrative Services Bureau | 6/11/12 10:33 AM |
| 344 | Gray | Ivan | 201206152 | Traffic Court Dates | 6/18/12 11:14 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 6/18/12 11:20 AM |
| 344 | Gray | Ivan | 201207031 | Report Labeling | 7/9/12 11:13 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 7/9/12 4:06 PM |
| 344 | Gray | Ivan | 201207311 | Alabama Texting Law Act. 2012-291 | 7/31/12 9:58 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 8/3/12 5:32 PM |
| 344 | Gray | Ivan | 201208093 | CALEA Presentation | 8/9/12 4:49 PM | New | General Announcement | Captain of Police | Administrative Services Bureau | 8/9/12 5:42 PM |
| 344 | Gray | Ivan | 201208291 | Municipal Court Docket | 8/29/12 4:00 PM | New | Memorandum | Captain of Police | Administrative Services Bureau | 8/31/12 10:35 PM |

8

CITY OF DOTHAN/GRAY 004608
CONFIDENTIAL

| 344 | Gray | Ivan | 400-50 | Traffic Enforcement | 8/8/12 12:00 AM | Revised | General Orders | Captain of Police | Administrative Services Bureau | 8/31/12 10:38 PM |
|---|---|---|---|---|---|---|---|---|---|---|
| 344 | Gray | Ivan | 201209263 | Rapid Response Team Supervisor | 9/26/12 10:26 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 9/27/12 11:07 AM |
| 344 | Gray | Ivan | 200-86 Rapid Response Team | Rapid Response Team | 10/8/12 4:39 PM | New | General Orders | Captain of Police | Administrative Services Bureau | 10/8/12 5:19 PM |
| 344 | Gray | Ivan | 201210082 | Rapid Response Team Members | 10/8/12 3:51 PM | New | Memorandum | Captain of Police | Administrative Services Bureau | 10/8/12 5:20 PM |
| 344 | Gray | Ivan | 201210021 | Dignitary Protection Team | 10/4/12 11:54 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 10/8/12 5:40 PM |
| 344 | Gray | Ivan | 201210241 | Off Duty Employment Coordinator (Cain) | 10/24/12 1:59 PM | New | Memorandum | Captain of Police | Administrative Services Bureau | 10/24/12 4:00 PM |
| 344 | Gray | Ivan | 200-52 | Missing Persons | 10/24/12 12:00 AM | Revised | General Announcement | Captain of Police | Administrative Services Bureau | 10/24/12 4:04 PM |
| 344 | Gray | Ivan | 201211011 | Commitments through Judge of Probate | 11/1/12 10:50 AM | New | General Announcement | Captain of Police | Administrative Services Bureau | 11/16/12 4:53 PM |
| 344 | Gray | Ivan | 201211091 | Obtaining Warrants | 11/9/12 10:30 AM | New | General Announcement | Captain of Police | Administrative Services Bureau | 11/16/12 4:54 PM |
| 344 | Gray | Ivan | 201211141 | Advertising on City Vehicles | 11/14/12 3:18 PM | New | Memorandum | Captain of Police | Administrative Services Bureau | 11/16/12 4:59 PM |
| 344 | Gray | Ivan | 201211151 | Delayed Report Entry | 11/15/12 1:42 PM | New | Memorandum | Captain of Police | Administrative Services Bureau | 11/16/12 5:00 PM |
| 344 | Gray | Ivan | 100-60 Recruitment | G.O. Revision | 12/3/12 12:00 AM | Revised | General Orders | Captain of Police | Administrative Services Bureau | 12/11/12 10:34 AM |
| 344 | Gray | Ivan | 300-05 | Criminal Investigations | 12/5/12 12:00 AM | Revised | General Orders | Captain of Police | Administrative Services Bureau | 12/11/12 10:35 AM |
| 344 | Gray | Ivan | 200-55 | Animal Services | 10/26/12 12:00 AM | New | General Orders | Captain of Police | Administrative Services Bureau | 12/11/12 3:24 PM |

9

CITY OF DOTHAN/GRAY 004609
CONFIDENTIAL

| 344 | Gray | Ivan | 201301041 | Theft by Fraudulent Leasing | 1/4/13 3:17 PM | New | Memorandum | Captain of Police | Administrative Services Bureau | 1/9/13 10:10 AM |
| 344 | Gray | Ivan | 201301092 | Community Services Division | 1/9/13 9:08 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 1/9/13 10:27 AM |
| 344 | Gray | Ivan | 200-60 | Searches | 1/10/13 12:00 AM | Revised | General Orders | Captain of Police | Administrative Services Bureau | 1/17/13 4:23 PM |
| 344 | Gray | Ivan | 201301174 | Promotion Presentation | 1/17/13 11:43 AM | New | General Announcement | Captain of Police | Administrative Services Bureau | 1/17/13 4:53 PM |
| 344 | Gray | Ivan | 201301282 | RSA Retirement Presentations | 1/28/13 12:00 AM | New | Personnel Dept Document | Captain of Police | Administrative Services Bureau | 2/14/13 9:28 AM |
| 344 | Gray | Ivan | 201301311 | Transfer | 1/31/13 2:12 PM | New | Memorandum | Captain of Police | Administrative Services Bureau | 2/14/13 10:55 AM |
| 344 | Gray | Ivan | 201302111 | Polygraphs | 2/11/13 3:07 PM | New | Memorandum | Captain of Police | Administrative Services Bureau | 2/14/13 10:25 AM |
| 344 | Gray | Ivan | 201302061 | Dignitary Protection Unit Application | 2/6/13 9:38 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 2/14/13 10:27 AM |
| 344 | Gray | Ivan | 201302121 | Media Information Officer | 2/12/13 4:02 PM | New | Memorandum | Captain of Police | Administrative Services Bureau | 2/14/13 10:38 AM |
| 344 | Gray | Ivan | 201302151 | Transfers | 2/18/13 9:41 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 2/19/13 9:37 AM |
| 344 | Gray | Ivan | 100-30 | Deparmental Property | 2/18/13 2:52 PM | Revised | General Orders | Captain of Police | Administrative Services Bureau | 2/19/13 10:00 AM |
| 344 | Gray | Ivan | 200-80 | Unusual Occurrences | 2/26/13 12:00 AM | Revised | General Orders | Captain of Police | Administrative Services Bureau | 3/8/13 8:20 AM |
| 344 | Gray | Ivan | C20130215 Ethics | Law Enforcement Ethics | 2/15/13 12:00 AM | New | Training Activity | Captain of Police | Administrative Services Bureau | 3/8/13 12:23 PM |
| 344 | Gray | Ivan | 201302251 | National Crime Victims' Rights Week Awards | 2/25/13 2:18 PM | New | General Announcement | Captain of Police | Administrative Services Bureau | 3/8/13 12:25 PM |
| 344 | Gray | Ivan | 2013022S2 | 7K Schedule | 2/25/13 3:44 PM | New | Memorandum | Captain of Police | Administrative Services Bureau | 3/8/13 12:26 PM |

10

CITY OF DOTHAN/GRAY 004610
CONFIDENTIAL

| 344 | Gray | Ivan | 201302261 | Dignitary Protection Detail | 3/6/13 8:29 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 3/8/13 12:28 PM |
|---|---|---|---|---|---|---|---|---|---|---|
| 344 | Gray | Ivan | 201303051 | Special Response Team | 3/6/13 11:04 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 3/8/13 12:28 PM |
| 344 | Gray | Ivan | 100-35 | Appearance | 3/14/13 2:16 PM | Revised | General Orders | Captain of Police | Administrative Services Bureau | 3/25/13 11:21 AM |
| 344 | Gray | Ivan | 201303141 | Annual Awards Nominations | 3/15/13 8:12 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 3/25/13 11:22 AM |
| 344 | Gray | Ivan | 201303142 | Name Tags | 3/15/13 8:14 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 3/25/13 11:23 AM |
| 344 | Gray | Ivan | 201304032 | Community Watch Coordinator | 4/3/13 5:06 PM | New | Memorandum | Captain of Police | Administrative Services Bureau | 5/1/13 10:59 AM |
| 344 | Gray | Ivan | 201304052 | DPD 2013 Goals and Objectives | 4/5/13 1:30 PM | New | General Announcement | Captain of Police | Administrative Services Bureau | 5/1/13 11:01 AM |
| 344 | Gray | Ivan | 201304051 | Community Services / SRO Sergeant Position | 4/5/13 3:44 PM | New | Memorandum | Captain of Police | Administrative Services Bureau | 5/1/13 11:01 AM |
| 344 | Gray | Ivan | 201304053 | Administrative Services Lieutenant Position | 4/5/13 4:02 PM | New | Memorandum | Captain of Police | Administrative Services Bureau | 5/1/13 11:03 AM |
| 344 | Gray | Ivan | 201304151 | Transfers | 4/15/13 3:34 PM | New | Memorandum | Captain of Police | Administrative Services Bureau | 5/1/13 11:03 AM |
| 344 | Gray | Ivan | 201304054 | Transfers / Assignments | 4/5/13 4:03 PM | New | Memorandum | Captain of Police | Administrative Services Bureau | 5/1/13 11:04 AM |
| 344 | Gray | Ivan | 201304231 | Transfers / Assignments | 4/23/13 9:10 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 5/1/13 11:05 AM |
| 344 | Gray | Ivan | 201304301 | Comm Services / Community Watch Dist Coordinator | 5/1/13 8:24 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 5/1/13 11:06 AM |
| 344 | Gray | Ivan | 201305011 | VICE Investigator Position | 5/2/13 10:47 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 5/3/13 9:46 AM |
| 344 | Gray | Ivan | 201305021 | Internal Investigations Notifications | 5/3/13 9:29 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 5/3/13 9:47 AM |

11

CITY OF DOTHAN/GRAY 004611
CONFIDENTIAL

| 344 | Gray | Ivan | 200-10H | Response to Resistance | 5/8/13 12:00 AM | Revised | General Orders | Captain of Police | Administrative Services Bureau | 5/20/13 9:51 AM |
|---|---|---|---|---|---|---|---|---|---|---|
| 344 | Gray | Ivan | 201305081 | Promotions | 5/8/13 11:05 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 5/20/13 9:51 AM |
| 344 | Gray | Ivan | 201305082 | Off Duty Gas Mileage Reports | 5/8/13 11:08 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 5/20/13 9:52 AM |
| 344 | Gray | Ivan | 201305083 | Crimestoppers Coordinator | 5/8/13 11:10 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 5/20/13 9:52 AM |
| 344 | Gray | Ivan | 201305084 | Police Promotions Presentation Announcement | 5/8/13 11:12 AM | New | General Announcement | Captain of Police | Administrative Services Bureau | 5/20/13 9:53 AM |
| 344 | Gray | Ivan | 201305171 | Use of Force and Vehicle Pursuit Form Change | 5/17/13 9:48 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 5/20/13 9:54 AM |
| 344 | Gray | Ivan | 201305172 | VICE Sergeant Position | 5/17/13 2:54 PM | New | Memorandum | Captain of Police | Administrative Services Bureau | 5/20/13 9:54 AM |
| 344 | Gray | Ivan | 201305211 | Transfers | 5/21/13 11:10 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 6/13/13 8:49 AM |
| 344 | Gray | Ivan | 201305212 | Community Impact Team | 5/21/13 11:14 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 6/13/13 8:51 AM |
| 344 | Gray | Ivan | 201306081 | Firearms and Ammunition | 6/3/13 3:59 PM | New | Memorandum | Captain of Police | Administrative Services Bureau | 6/13/13 9:07 AM |
| 344 | Gray | Ivan | 201306082 | Recovery of Non Evidentiary Property | 6/3/13 4:02 PM | New | Memorandum | Captain of Police | Administrative Services Bureau | 6/13/13 9:09 AM |
| 344 | Gray | Ivan | 201306062 | Transfers | 6/6/13 1:49 PM | New | Memorandum | Captain of Police | Administrative Services Bureau | 6/13/13 9:10 AM |
| 344 | Gray | Ivan | 201306061 | Private Property Collision Reports | 6/6/13 4:37 PM | New | Memorandum | Captain of Police | Administrative Services Bureau | 6/13/13 9:11 AM |
| 344 | Gray | Ivan | 201306201 | E-Cite | 6/20/13 12:00 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 7/2/13 2:11 PM |
| 344 | Gray | Ivan | 201306202 | Bi-Annual Discipline Report | 6/24/13 12:56 PM | New | Memorandum | Captain of Police | Administrative Services Bureau | 7/2/13 2:13 PM |

12

CITY OF DOTHAN/GRAY 004612
CONFIDENTIAL

| 344 | Gray | Ivan | 201306281 | Transfers | 6/28/13 10:20 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 7/2/13 2:14 PM |
| 344 | Gray | Ivan | 201307121 | Acting Chief of Police | 7/12/13 11:27 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 8/2/13 6:22 PM |
| 344 | Gray | Ivan | 201307161 | Transfers | 7/16/13 3:50 PM | New | Memorandum | Captain of Police | Administrative Services Bureau | 8/2/13 6:23 PM |
| 344 | Gray | Ivan | 201307221 | Promotion | 7/22/13 9:18 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 8/2/13 6:23 PM |
| 344 | Gray | Ivan | 201307251 | Assignments | 7/25/13 8:36 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 8/2/13 6:24 PM |
| 344 | Gray | Ivan | 201307252 | Acting Chief of Police | 7/25/13 8:39 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 8/2/13 6:24 PM |
| 344 | Gray | Ivan | 201307253 | Acting ISB Commander | 7/26/13 9:07 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 8/2/13 6:25 PM |
| 344 | Gray | Ivan | 201308021 | Criminal Investigations Division | 8/2/13 10:47 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 8/2/13 6:25 PM |
| 344 | Gray | Ivan | 200-80-13 | Unusual Occurrences | 6/11/13 12:00 AM | New | Training Activity | Captain of Police | Administrative Services Bureau | 8/5/13 11:07 AM |
| 344 | Gray | Ivan | SOP 1 | SOP Purpose and Use | 12/15/11 12:00 AM | New | Docket SOP's | Captain of Police | Administrative Services Bureau | 8/12/13 10:07 AM |
| 344 | Gray | Ivan | SOP 2 | Reporting for Duty | 12/15/11 12:00 AM | New | Docket SOP's | Captain of Police | Administrative Services Bureau | 8/12/13 1:56 PM |
| 344 | Gray | Ivan | SOP 3 | Searches | 2/10/12 12:00 AM | New | Docket SOP's | Captain of Police | Administrative Services Bureau | 8/12/13 2:03 PM |
| 344 | Gray | Ivan | SOP 4 | Keys | 2/10/12 12:00 AM | New | Docket SOP's | Captain of Police | Administrative Services Bureau | 8/12/13 2:04 PM |
| 344 | Gray | Ivan | SOP 5 | Chain of Command | 2/10/12 12:00 AM | New | Docket SOP's | Captain of Police | Administrative Services Bureau | 8/12/13 2:09 PM |
| 344 | Gray | Ivan | SOP 10 | Suicidal Inmates | 2/15/12 12:00 AM | New | Docket SOP's | Captain of Police | Administrative Services Bureau | 8/12/13 2:12 PM |
| 344 | Gray | Ivan | 201308081 | Transfer | 8/8/13 10:05 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 8/12/13 2:12 PM |

13

CITY OF DOTHAN/GRAY 004613
CONFIDENTIAL

| 344 | Gray | Ivan | 201308091 | Proof of Fitness Form | 8/9/13 9:51 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 8/12/13 2:15 PM |
| 344 | Gray | Ivan | 201308092 | Leave Procedures | 8/9/13 9:52 AM | New | Memorandum | Captain of Police | Administrative Services Bureau | 8/12/13 2:17 PM |
| 344 | Gray | Ivan | 201307311 | Alabama 2013 Gun Law | 7/31/13 12:00 AM | New | Legal Updates | Captain of Police | Administrative Services Bureau | 8/12/13 2:18 PM |
| 344 | Gray | Ivan | SOP 6 | Detention Sergeant Duties | 2/15/12 12:00 AM | New | Docket SOP's | Captain of Police | Administrative Services Bureau | 8/12/13 2:22 PM |
| 344 | Gray | Ivan | SOP 7 | Detention Officer Duties | 2/15/12 12:00 AM | New | Docket SOP's | Captain of Police | Administrative Services Bureau | 8/13/13 8:52 AM |
| 344 | Gray | Ivan | SOP 8 | Telephone | 2/15/12 12:00 AM | New | Docket SOP's | Captain of Police | Administrative Services Bureau | 8/13/13 9:13 AM |
| 344 | Gray | Ivan | SOP 9 | Use of Force | 2/15/12 12:00 AM | New | Docket SOP's | Captain of Police | Administrative Services Bureau | 8/13/13 9:16 AM |
| 344 | Gray | Ivan | SOP 11 | Booking | 4/16/12 12:00 AM | New | Docket SOP's | Captain of Police | Administrative Services Bureau | 8/13/13 2:12 PM |
| 344 | Gray | Ivan | SOP 18 | Escapes and Attempted Escapes | 4/18/12 12:00 AM | New | Docket SOP's | Captain of Police | Administrative Services Bureau | 8/13/13 2:14 PM |
| 344 | Gray | Ivan | SOP 12 | Docket Control Room | 4/18/12 12:00 AM | New | Docket SOP's | Captain of Police | Administrative Services Bureau | 8/13/13 2:17 PM |
| 344 | Gray | Ivan | SOP 13 | Jail Control Room | 4/18/12 12:00 AM | New | Docket SOP's | Captain of Police | Administrative Services Bureau | 8/13/13 2:20 PM |
| 344 | Gray | Ivan | SOP 14 | Security Alarms | 4/18/12 12:00 AM | New | Docket SOP's | Captain of Police | Administrative Services Bureau | 8/13/13 2:25 PM |

14

CITY OF DOTHAN/GRAY 004614
CONFIDENTIAL

# EXHIBIT
# 6

EMPLOYEE'S GRIEVANCE STATEMENT

To Whom It May Concern:

Over the past several years there have been continuing education schools attended by several officers with the Dothan Police Department. Several of the schools have been funded by the Police Department by means of its budget. Most of the schools I have had no previous knowledge of. Talking with my African American counterparts this has held true with them also.

I must question the procedure for the selection process now being used by the Dothan Police Department as far as the qualifications of the individuals assigned to attend these schools.

I do not feel as if I am being considered for the higher caliber schools as my associates in the Criminal Investigation Division. (Ex. Arson Investigation, Homicide Investigation, Hostage Negotiation, Behavioral Analysis, etc.). In some instances I have had more time and grade then my counterparts that have attended the types of schools listed above.

I feel that there may be some type of favoritism shown towards certain investigators more so than others.

In Civil Action No. 75-57-S a Class Action suit filed on June 3, 1975 it was ordered, adjudged and decreed that Chief of Police "Be required to cross-train and assign black employees in the same manner that white employees are cross-trained and assigned, and to train and send to schools, training sessions, etc. black employees on the same basis as white employees".

I request that this matter be investigated by an authority higher than a captain of the police department or some other committee outside of the police department.

A JUST AND FAIR SOLUTION TO MY GRIEVANCE IS:

(1) Consider African Americans for the same caliber of schools and assignments equally as other members of this department.

(2) The Chief of Police closely oversee the assignment of duties and schools of minorities as compared to the majority to ensure equality for all parties involved.

(3) The Chief of Police meet with African American officers as to discuss problems similar to the above listed problem.

CITY OF DOTHAN/GRAY 000135
CONFIDENTIAL

I am unfamiliar with the schools you have been made unaware of in the past several years and cannot address that portion of your grievance.  I can inform you that the Training Division and your immediate supervisor are available daily to assist you with any schools or seminars you might be interested in attending.  These sources are available to all personnel.

The method of selection of personnel for schools was also questioned.  Attempts have been made to educate at least two members of CID in as many areas of specialized investigations as possible.  With the funds available, it is not feasible to attempt to train all investigators in every area.  Some of these schools are brought to the attention of the Division Commander by investigators who have located them and shown a desire to attend, however, others are located by the Division Commander and he selects the personnel to attend.  The objective in these assignments is to allow all investigators an opportunity to attend schools/seminars and still serve the best interest of the Division and Department by being prepared to capably handle all investigations.

You mentioned four schools of higher caliber you were not selected for.  The Arson Investigation School was offered to two investigators who were already classified as firefighters.  The Hostage Negotiators were selected by the Commander of the Department Tactical Team because he felt they were most qualified to handle the needs of this position.  The Behavioral Crime Scene Analysis Seminar was offered to two investigators because they were new assignees and had not been to any schools.  At the time you brought the Homicide School to my attention, there was no need to send another investigator.

You questioned the use of seniority when assigning schools and seminars.  Below is a list of ranking personnel in CID from the most senior through your position in these ranks:

| NAME | DATE OF RANK | SCHOOLS |
|------|-------------|---------|
| Sgt. Fred Fellows | 09/14/86 | 5 Schools<br>No Specialized Training |
| Sgt. Wendel Wooten | 09/14/86 | 11 Schools<br>Covert Vehicle Installation<br>Technical Services/Video<br>  Surveillance |
| Sgt. D.R. Owens | 05/21/89 | 11 Schools<br>Hostage Negotiator |
| Sgt. Jim Stanley | 05/21/89 | 13 Schools<br>Statement Analysis<br>Video Operations<br>  (excluding Narc Schools) |

CITY OF DOTHAN/GRAY 000136
CONFIDENTIAL

```
Sgt. Keith Gray        11/18/90      10 Schools
                                     Forensic Hypnosis
                                     Advanced Hypnosis
                                     Spanish for Law Enforcement
```

The total number of schools/seminars for this group is 50, which is an average of 10 per officer. You requested and received more and better quality schools than any of the officers senior to you.

Departmental records indicate that investigators, other than Officer Etress who was recently assigned, received a total of 110 schools/seminars since 1994. There are 12 investigators and this would average 9 schools/seminars per person. Most of these investigators have received specialized training in two basic fields during this time (see attached).

Records reflect that during this period of time, you received 10 schools/seminars. Of these schools/seminars, records reflect that you are the only member of this Department to be educated in Forensic Hypnosis and Advanced Hypnosis, both highly desirable schools. They also reflect that you and one other officer were selected to attend a Spanish Class for Law Enforcement Officers. You were also recently selected as one of two investigators to attend the Advanced Officer Tactical Training Course.

Your grievance also mentioned the need to cross train black employees and cited Civil Action No. 75-57-S filed on June 3, 1975. A review of your assignments reflect the following:

```
          Detention    02/85  -  10/86
          Patrol       10/86  -  11/90
          Narcotics    11/90  -  08/91
          Detention    08/91  -  07/92
          CID          07/92  -  Present
```

This record indicates a very well rounded cross training within this Department that all members would be proud to have.

It is my opinion that you have received as much training as the average investigator in your assigned division and you have also received your share of specialized schools and seminars.

I feel it should be noted that you received this training with the knowledge that you have been actively pursuing employment with federal law enforcement agencies during the past two years and was accepted at one point for employment by the Federal Bureau of Investigation.

CITY OF DOTHAN/GRAY 000137
CONFIDENTIAL

In my opinion, the Chief of Police should continue to strive to ensure that all personnel receive a fair share of training, regardless of whether they are African American, other minority, or white. To handle this matter in any other manner would be an act of discrimination.

It is further my opinion that your grievance is without substance.

CITY OF DOTHAN/GRAY 000138
CONFIDENTIAL

<u>ATTACHMENT</u>

| <u>NAME</u> | <u>BASIC SCHOOLS</u> | <u>SPECIALIZED TRAINING</u> |
|---|---|---|
| Beeson, Jon | 11 | Inv. Video Ops.<br>Tech. Serv. Video Ops. |
| Fellows, Fred | 5 | |
| Gray, Keith | 10 | Forensic Hypnosis<br>Advanced Hypnosis<br>Spanish |
| Hamm, Steve | 6 | Spanish Uniformed Off. |
| Jay, David | 11 | Homicide<br>Arson<br>Hostage Negotiator |
| Sorrells, Bobby | 4 | Homicide |
| Stanley, Jim | 13 | Statement Analysis<br>Video Ops.<br>   (excluding Narc. schools) |
| Wambles, Buren | 6 | |
| Williamson, Della | 7 | Financial Inv. Tech. |
| Woodham, Roy | 15 | Homicide<br>Arson |
| Wooten, Wendel | 11 | Covert Vehicle Installation<br>Tech. Serv. Video Surv. |

CITY OF DOTHAN/GRAY 000139
CONFIDENTIAL

# EXHIBIT
# 7



**THE CITY OF**

# DOTHAN, ALABAMA

POST OFFICE BOX 2128 • DOTHAN, ALABAMA 36302 • 334-615-3000

JOHN R. POWELL
CHIEF OF POLICE

## M E M O R A N D U M

**TO:**      Kai Davis, Personnel Director

**FROM:**   John R. Powell, Chief of Police

**DATE:**    April 21, 2006

**SUBJECT:** Sergeant Keith Gray

Attached you will find documentation concerning the transfer of Sergeant Keith Gray from the Administration Division to the Field Operations Bureau Patrol Division. You will see that at the time Sergeant Gray was transferred he was accompanied by nine other Sergeants, two of which are females and six white males. One of the females transferred, Sergeant Charlotte Jenkins, is senior to Sergeant Gray in rank. Sergeant Gray was notified of his pending transfer on June 01, 2005 with an effective date of August 07, 2005 or ten weeks later. Sergeant Gray like Sergeant Jenkins was provided a day shift rotation (preference) based on seniority.

Sergeant Gray alludes to the fact he was the senior person assigned to the Internal Affairs Unit, which is not the case since Sergeant Ray Owens is the senior Sergeant for the Dothan Police Department. Sergeant Owens also has tenure with the department over Sergeant Gray. Sergeant Gray did make a statement to me during the meeting that he needed to remain in his current assignment, Internal Affairs, because he was African American and there would be an outcry from the community and religious section of Dothan if he was transferred.

All the transfers were done based on the needs of the department, job experience or lack of experience. Sergeant Gray was provided an explanation prior to when the transfer took effect.

Sergeant Gray has made an issue concerning the evaluation provided to him by Captain Nick Monday and has cited this particular evaluation as an adverse action against him. This was also explained to Sergeant Gray during our meeting that evaluations are based on observation and opinion of the evaluator. In this particular case the evaluator was Captain Monday. While Sergeant Gray did not receive a score of 3 he did rate a 2.73.

## POLICE DEPARTMENT

210 NORTH SAINT ANDREWS STREET • DOTHAN, ALABAMA 36303 • 334-615-3601
Email: dpd@dothan.org

CITY OF DOTHAN/GRAY 000299
CONFIDENTIAL

Kai Davis, Personnel Director
Memorandum Re: Sergeant Keith Gray
April 21, 2006
Page 2 of 2


Out of the Sergeants that were transferred the following evaluation marks were given:

| | | |
|---|---|---|
| Sergeant Baxley | score 2.88 | evaluated by Captain Parrish |
| Sergeant Devano | score 2.42 | evaluated by Captain Parrish |
| Sergeant Hamm | score 2.94 | evaluated by Lieutenant Benton |
| Sergeant Henderson | score 2.81 | evaluated by Lieutenant Martin |
| Sergeant Holley | score 2.81 | evaluated by Lieutenant Martin |
| Sergeant Jenkins | score 2.00 | evaluated by Lieutenant Wiehe |
| Sergeant Reed | score 3.00 | evaluated by Captain Parrish |
| Sergeant Smith | score 2.93 | evaluated by Lieutenant Martin |

As you can see evaluations vary dependent upon who the evaluator may be.

After review of the attached documents please feel free to contact me in regards to this information. Please keep in mind Sergeant Gray has been involved in an Internal Investigation concerning evidence and weapons from the vault area of the Dothan Police Department. I would point out that while he has been under investigation so has approximately 40 other officers.

John R. Powell
Chief of Police

JRP/pd

Attachments

CITY OF DOTHAN/GRAY 000300
CONFIDENTIAL

# EXHIBIT

# 8

October 29, 2009

City of Dothan
Attn: Delvick McKay, Personnel Director
PO Box 2128
Dothan, AL 36302

Dear Delvick McKay,

I applied for the position of Police Chief (In-House) on September 21, 2009 with the City
of Dothan Personnel Department. The closing date for this position was September 30,
2009. I received an email via "info@governmentjobs.com" stating that my application
was not certified for this position because I did not meet the basic qualifications as
advertised. I disagree with the findings of your department that I am not qualified based
on the following facts:

1. I currently meet all qualifications that the City of Dothan has used in the past for
   hiring Police Chiefs. I am the first African American in the history of Dothan to
   meet the same qualifications that all the previous Police Chiefs (Caucasian,
   Males) had to qualify for.

2. I hold a Masters of Science Degree, but two other current employees with the
   City of Dothan (Caucasian, Males) have applied for the same position and
   neither of them have a Masters Degree. A Masters Degree was the only
   qualification listed as, "a Preferred qualification" for the position of Police Chief
   in the past.

I am aware that the City Manager, Michael West recently made changes to the Police
Chief's qualifications which now include FBI National Academy Graduation, which has
been added as a "Preferred Qualification." In addition, Mr. West has changed a basic
qualification that an applicant has to have, "A minimum of five (5) years of recent law
enforcement experience at the senior management level" instead of three (3) years that all
previous Police Chiefs had to qualify for. As of September 17, 2009 I met all
qualifications that all previous Police Chief's (Caucasian, Males) had to meet because I
had the three years of experience at the senior management level, but it seems that
Mr. West's new changes may have removed my application for consideration.

The City of Dothan claims to be an Equal Opportunity Employer, but I strongly disagree.
In my opinion the City of Dothan is not adhering to its own Equal Employment
Opportunity Policy, nor it's Affirmative Action Plan as mandated by the Consent Decree.

I respectfully request the specific reasons for the rejection from consideration of my
application.

Yours truly,

Ivan Keith Gray, MS

cc: Gary J. Griffin, EEO Officer

CITY OF DOTHAN/GRAY 000591
CONFIDENTIAL

**CONFIDENTIAL**

*File*



THE CITY OF
# DOTHAN, ALABAMA
POST OFFICE BOX 2128 · DOTHAN, ALABAMA 36302 · 334-615-3000

**DELVICK J. McKAY**
PERSONNEL DIRECTOR

**PERSONNEL BOARD**
ALAN B. CLARK, CHAIR
MARY W. DAVIS
MARK SMITH
BARBARA A. SPANN
EARL TYSON

November 3, 2009

Lieutenant Ivan K. Gray
560 Fortner Street #D-25
Dothan, AL 36301

Dear Lieutenant Gray:

After reviewing your letter submitted to my office on October 29, 2009; I am providing a response to your request to the specific reason to why your application did not meet the minimum requirements for consideration of Police Chief.

It is proper and within uniform guidelines of equal employment that positions of greater responsibility require greater qualifications and within equity of those current positions in the chain of command. The Police Major position was added in 2007, which required applicants to meet the minimum requirements of eight (8) or more years of progressive experience in law enforcement with a minimum of four (4) years at the Police Captain level with a BS degree. Likewise, the Police Chief, which was advertised in 2009, required greater qualifications than Police Major; requiring applicants to possess ten (10) or more years of progressive experience in law enforcement with a minimum of five (5) years of senior management experience with a BS degree.

The Police Lieutenant position is considered to be senior management; however, you did not meet the minimum five (5) years of senior management experience required to be considered for Police Chief.

The City of Dothan has followed all procedures according to uniform guidelines of equal employment and within state and federal guidelines.

I will forward my response to Mr. Gary Griffin-EEO/Training Officer for further due diligence.

Sincerely,

Delvick J. McKay

PERSONNEL DEPARTMENT
126 NORTH SAINT ANDREWS STREET · DOTHAN, ALABAMA 36303 · PHONE 334-615-3180 · FAX 334-615-3189
Service · Excellence · Commitment ... *The Dothan Way*

CITY OF DOTHAN/GRAY 000595
CONFIDENTIAL

THE CITY OF
DOTHAN, ALABAMA
POST OFFICE BOX 2128 • DOTHAN, ALABAMA 36302 • 334-615-3000

GARY J. GRIFFIN
EEO/TRAINING OFFICER

To: Mayor Mike Schmitz and City Commissioners

From: Gary J. Griffin, EEO/Training Officer

Date: December 3, 2009

Subject: Investigation into Dothan's Chief of Police Application Process Regarding Lt. Ivan K. Gray

## Overview:

On September 21, 2009, at approximately 4pm, Lieutenant Ivan K. Gray of the Dothan Police Department came to my office and discussed with me that he had applied for the position of Police Chief for the City of Dothan, Alabama. He told me that he had just completed 3 years and 2days of senior officer time-in-grade, and that until now, the Police Chief's job had required 3years as the minimum qualifications to apply.

However, on this current job announcement to replace Chief John Powell, the requirement for senior officer service had changed from 3 to 5 years, and graduation from the FBI Leadership Academy has been added as a preferred qualification requirement. Lt. Gray stated that he believe that the qualification requirements had been changed to deny him the opportunity to apply for the position of Police Chief. He further stated that he had filed a discrimination complaint with the Equal Employment Opportunity Commission (EEOC).

Although Lt. Gray did not request me to investigate this matter, I nevertheless, went to the Personnel Department and requested an explanation of the job description requirements for the current position description of the Chief Police.

The Personnel Director gave me the sequence of events surrounding the Police Chief's position and the fact that the requirements were changed because the position of "Police Major" was created on December 11, 2006, and that the Police Major's position was filled on March 19, 2007, by then, Captain Nick Monday who has since retired.

I reviewed the position description for Police Major and found that the job qualification requirements are 8 years of continuous experience with the Dothan Police Department, and that the last 4 years must be at the rank of Captain or at the senior experience level.

Since the new rank of Police Major was filled in March 2007, and requires 4 years of senior experience, and because the experience level for Police Chief must exceed the level of that of a Police Major, the senior level experience requirements for the rank of Police Chief were automatically changed from a 3 year to a 5 year requirement.

On October 29, 2009, I received a courtesy copy of a letter from Lt. Gray addressed to the City Personnel Director, Delvick McKay, to wit, Lt. Gray attached an email from the personnel department stating that he did not meet the basic qualifications as advertised. Lt. Gray also gave an itemized description of what he believes took place regarding his application process. He restated his qualifications, and subsequently, accused Mike West, City Manager, as having made the qualification changes to the position description. He further stated that "the City of Dothan claims to be an Equal Opportunity Employer, but I strongly disagree".

On November 3, 2009, the Personnel Director, Delvick McKay, responded TO Lt. Gray's letter of October 29, 2009.

The Personnel Director stated that he was providing a specific response to the reason why Lt. Gray's application did not meet the minimum requirements. Under uniform guidelines of equal employment, positions of greater responsibility require greater qualifications than those positions that they supervise in the chain of command. Therefore, if the Police Major's position requires 4 years of senior experience, the Police Chief's position must require 5 or more year's experience. Since Lt. Gray has only 3 years of senior experience, he does not meet the minimum or basic qualifications for the position of Police Chief.

On December 1, 2009, Lt. Gray addressed the commission under "privileges of the floor". Lt. Gray gave an outline of his Police career training and restated his belief that he somehow had been denied an opportunity, as a Black American, to exercise his right to apply and be considered for the position of Police Chief for the City of Dothan, Alabama.

CITY OF DOTHAN/GRAY 000593
CONFIDENTIAL

Because Lt. Gray feels that race is a factor in his not being considered to be qualified for the job of Police Chief, I am obligated, as the EEO/Training Officer, to review all of the circumstances surrounding his allegations, and I am herein responding to my findings.

## Conclusion

After a thorough review of all the documentation for both the Police Major's position, and the current Police Chief's job description requirements, I find that these changes in the job requirements were decided and acted upon by the Personnel Department long before it was known that police Chief John Powell would be vacating his position. As such, I do not find any circumstance where the personnel Director, City Manager, or any employee within the Personnel Department had the knowledge, in 2007, that Chief Powell would be departing from the City's employment in 2009. Therefore, I find no matters that lead me to believe that a system was designed 2 years ago to purposefully deny Lt. Gray an opportunity to qualify for the position of Police Chief.

As a matter of fact, the system is designed to force in house qualified personnel up through the ranks. For example, the minimum qualification requirements for the Police Major's position read; "Eight or more years of continuous experience in law enforcement with the Dothan Police Department, the last four years, of which, must be at the level of Police Captain".

The above qualification requirements for the rank of Major would indicate that unless an in house applicant had 4 years as a Captain, they would not be eligible to apply for job announcements at the rank of Major. Likewise, the minimum requirements for the rank of Police Chief read; "Ten (10) or more years of progressively responsible experience in law enforcement with a minimum of five years of recent experience at the senior management level". Personnel who do not meet these minimum qualifications are not sent forward to the selecting official by the personnel department. Instead they are notified, by letter or email, that they do not meet the minimum or basic qualifications. Lt. Gray was notified by email on October 22, 2009, that he did not meet the basic qualifications, as advertised, for Police Chief.

I reviewed all of the paper work for the job announcement for the Police Chief. In the case of Lt. Gray, the Personnel Department followed all of the established rules and regulations.

cc: Mike K. West, City Manager
    Delvick McKay, Personnel Director
    Lt. Ivan K. Gray, Dothan Police Department

CITY OF DOTHAN/GRAY 000594
CONFIDENTIAL



# CITY OF DOTHAN
# Equal Employment Opportunity Office

**FOR IMMEDIATE RELEASE**

**DATE:**     December 9, 2009
**CONTACT:** Gary Griffin, EEO/Training Officer
(334) 615-3119

## EEO INVESTIGATION COMPLETED

The City of Dothan's Equal Employment Opportunity Office has completed its investigation of the complaint made by Lieutenant Keith Gray that the minimum qualifications for the Police Chief's position were changed from 3 to 5 years of senior level experience to deny him an opportunity to qualify for the job.

On December 11, 2006, the Major's position was created in the Dothan Police department, and filled by Captain Nick Monday in 2007. Along with 8 years of continuous experience, the *Major position requires at least 4 years in senior management or at the rank of Captain.* Under uniform guidelines of equal employment, positions of greater responsibility require greater qualifications than those positions that they supervise in the chain of command. Therefore, the Police Chief must have more years of experience than those he/she supervises. As such, *the senior management experience for Police Chief automatically became 5 years.* The new job description for Police Chief was not officially written until the position became vacant, which has been a long-standing procedure in the Personnel Department. Lt. Gray, who has 3 years of senior level experience, was notified by email on October 22, 2009, that he did not meet the basic qualifications, as advertised, for Police Chief.

After a thorough review of all the documentation for both the Police Major's position, and the current Police Chief's job description requirements, I find that these changes in the job requirements were decided and acted upon by the Personnel Department long before it was known that Chief John Powell would be vacating his position. As such, I do not find any circumstance where the Personnel Director, City Manager, or any employee within the Personnel Department had the knowledge in 2007, when the Major position was filled, that Chief Powell would be departing from the City's employment in 2009. Therefore, I find no matters that lead me to believe that a system was implemented two years ago to purposefully deny Lt. Gray an opportunity to qualify for the position of Police Chief.

As a matter of fact, the system is designed to advance in-house qualified personnel up through the ranks. The above qualification requirements for the rank of Major would indicate that unless an in house applicant had four years as a Captain, they would not be eligible to apply for job announcements at the rank of Major. Likewise, the minimum requirements for the rank of Police Chief states that "Ten (10) or more years of progressively responsible

CITY OF DOTHAN/GRAY 000585
CONFIDENTIAL

experience in law enforcement with a minimum of five years of recent experience at the senior management level." Personnel who do not meet these minimum qualifications are not sent forward to the selecting official by the personnel department. Instead, they are notified by letter or email that they do not meet the minimum or basic qualifications.

I have reviewed all of the paper work for the job announcement for the Police Chief position. In the case of Lt. Gray, the Personnel Department followed all of the established rules and regulations.

## Police Chief Time Line

- **September 21, 2009: Met and discussed with Lieutenant Keith Gray the matter of his having applied for the Police Chief's job. He told me that the qualifications had been changed from 3 to 5 years for senior management. He has 3 years now and he believes that the change was made to deny him an opportunity to qualify for the job.**
- **I went to the personnel office to investigate the matter of the qualification requirements. Found that a new position had been created in the police department. The new rank is "Major" and the qualification requirements for the Major's position is 8 years of continuous experience and at least 4 years in senior management or at the rank of Captain.**
- **The Major's position was created on December 11 2006, and occupied on March 18, 2007 by Capt. Nick Monday, who has now retired.**
- **Upon creation of the position of Major, the senior level experience for Police Chief automatically became 5years because the Chief must have more senior level experience than those he supervises.**
- **October 29, 2009: Lt. Keith Gray sent me a courtesy copy of a letter that he had sent to the Personnel Director, Mr. Delvick McKay. Lt. Gray stated his case as to why he felt that the city had changed the qualification requirements for the position of Police Chief, which was to block him from qualifying for the job.**
- **November 3, 2009: Mr. McKay answered Lt. Gray's letter of October 29, 2009. Mr. McKay basically stated that positions of greater responsibility require even greater qualifications than those that it supervises. He explained the difference between the years of qualification requirements between the Police Major and the Police Chief positions.**
- **December 1, 2009: Lt. Gray addressed the City Commission and restated his case regarding as to why he felt that he had been denied an opportunity to be considered for the job of Police Chief.**
- **As the EEO Officer, I have investigated the matter and found that the increased qualification requirements of 5 years senior level experience for the Police Chief's job came about because of the new position created for the position of Police Major. The action occurred 2 years prior to Chief John Powell's departure from the City, and it in no way was accomplished to prevent or deny Lt. Keith Gray from applying for or being considered for the Police Chief's position.**

# EXHIBIT
# 9



**CITY OF DOTHAN**
Personnel Department
126 North Saint Andrews Street
Dothan, AL 36303

http://www.dothan.org
INVITES APPLICATIONS FOR THE POSITION OF:
**Police Chief**
SALARY
DOQ

**CLOSING DATE:** 09/30/09

This is responsible police management work directing all activities and employees of the Dothan Police Department. Plans, directs and controls patrol, traffic, criminal investigations, municipal jail operations, municipal court, municipal E911 communication center, security, animal control, and related services. Supervises the training, assignment and discipline of all department members.

Work is performed under policies and directives of the City Manager; however independent judgment and discretion must be exercised in the supervision of all members.

**QUALIFICATIONS:**

Bachelor's degree from a four-year college or university accredited by an accreditation agency recognized by the U. S. Department of Education (USDE) or the Council for Higher Education Accreditation (CHEA) in the field of Criminal Justice or a related field.

Ten (10) or more years of progressively responsible experience in law enforcement with a minimum of five years of recent experience at the senior management level.

Master's level degree from an accredited college or university in Criminal Justice or a closely related field is preferred.

Graduation from the Federal Bureau of Investigation (FBI) National Academy is preferred.

**Necessary Special Requirements:**

Possession of a valid operator driver's license and an acceptable driving record (09/10/01).

The applicant must meet the minimum standards for law enforcement officers as established by Alabama Law (State of Alabama Act. No. 1981, H. 732, 1972 regular session).

An employee in this position must be a resident of the city of Dothan, AL.

In an emergency and/or standby situation an employee in this position must be able to report to his/her regular work station in a maximum of 30 minutes from the time of notification. (PBA 01/09/95)

An employee in this position is subject to random drug testing. (PBA 08-13-90)

An applicant for this position is subject to various background investigations up to and including a criminal, credit, past employment, and reference checks. See City of Dothan's Background Check/Investigation Policy.

Must meet the City of Dothan's employment physical standard which includes drug/alcohol testing.

Qualified applicants will be evaluated based on training and experience as documented on their application. This evaluation will comprise 100% of their final grade.

Applicants with a disability who feel they need accommodation should contact the Personnel Department on or before the closing date.

For more detailed information and to apply go to the City of Dothan's website at http://www.dothan.org and click on the employment link.

An Equal Opportunity Employer, Affirmative Action Employer

CITY OF DOTHAN/GRAY 004038
CONFIDENTIAL



**CITY OF DOTHAN**
Personnel Department
126 North Saint Andrews Street
Dothan, AL 36303

http://www.dothan.org
INVITES APPLICATIONS FOR THE POSITION OF:
**Police Chief**
SALARY
DOQ

**CLOSING DATE:** 09/30/09      In-House Position Announcement

This is responsible police management work directing all activities and employees of the Dothan Police Department. Plans, directs and controls patrol, traffic, criminal investigations, municipal jail operations, municipal court, municipal E911 communication center, security, animal control, and related services. Supervises the training, assignment and discipline of all department members.
Work is performed under policies and directives of the City Manager; however independent judgment and discretion must be exercised in the supervision of all members.

**QUALIFICATIONS:**

Bachelor's degree from a four-year college or university accredited by an accreditation agency recognized by the U. S. Department of Education (USDE) or the Council for Higher Education Accreditation (CHEA) in the field of Criminal Justice or a related field.

Ten (10) or more years of progressively responsible experience in law enforcement with a minimum of five years of recent experience at the senior management level.

Master's level degree from an accredited college or university in Criminal Justice or a closely related field is preferred.

Graduation from the Federal Bureau of Investigation (FBI) National Academy is preferred.

**Necessary Special Requirements:**

Possession of a valid operator driver's license and an acceptable driving record (09/10/01).

The applicant must meet the minimum standards for law enforcement officers as established by Alabama Law (State of Alabama Act. No. 1981, H. 732, 1972 regular session).

An employee in this position must be a resident of the city of Dothan, AL.

In an emergency and/or standby situation an employee in this position must be able to report to his/her regular work station in a maximum of 30 minutes from the time of notification. (PBA 01/09/95)

An employee in this position is subject to random drug testing. (PBA 08-13-90)

An applicant for this position is subject to various background investigations up to and including a criminal, credit, past employment, and reference checks. See City of Dothan's Background Check/Investigation Policy.

Must meet the City of Dothan's employment physical standard which includes drug/alcohol testing.

Qualified applicants will be evaluated based on training and experience as documented on their application. This evaluation will comprise 100% of their final grade.

Applicants with a disability who feel they need accommodation should contact the Personnel Department on or before the closing date.

For more detailed information and to apply go to the City of Dothan's website at http://www.dothan.org and click on the employment link.

An Equal Opportunity Employer, Affirmative Action Employer

CITY OF DOTHAN/GRAY 004039
CONFIDENTIAL

RESOLUTION NO. *2012-20*

**BE IT RESOLVED** by the Board of Commissioners of the City of Dothan, Alabama, as follows:

**Section 1.** That the Board of Commissioners does hereby award bids which have been received and publicly opened and approve other purchases over $15,000.00 by the City, which are attached to and made a part of this Resolution.

**PASSED, ADOPTED AND APPROVED** on *January 17, 2012*.

ATTEST:

_____
City Clerk

_____
Mayor

_____
Associate Commissioner District 1

_____
Associate Commissioner District 2

_____
Associate Commissioner District 3

_____
Associate Commissioner District 4

_____
Associate Commissioner District 5

_____
Associate Commissioner District 6

*BOARD OF CITY COMMISSIONERS*

CITY OF DOTHAN/GRAY 005781
CONFIDENTIAL

## EXHIBIT "A"
## January 17, 2012

### BIDS

| DEPT. | BID # | #ITB | ITEM | VENDOR | AMOUNT |
|---|---|---|---|---|---|
| Fire | 12-012 | 17 | One (1) or more Class A Pumper to include four (4) door enclosed cab (See attached Memo for details) | NAFECO, Inc. Decatur, AL | $515,093.00 |
| General Services | 12-021 | 5 | Uniforms – Citywide | Unifirst Corporation Dothan, Alabama | Varies due to number of employees and type of uniforms |
| Leisure Services | 12-024 | 4 | Dumpster Service for Westgate Park, Eastgate Park (house & ball park), Wiregrass Park, Doug Tew, Andrew Belle, Westgate Tennis Center, Westgate Softball Complex, Water World, Pitman Field and Walton Park | Waste Management Campbellton, Florida | $9,410.20 |

**Note:** (#ITB) Number of Invitations to Bidders

### OTHER PURCHASES

| ITEM | VENDOR | AMOUNT |
|---|---|---|
| Professional Services | Baker Donelson Bearman Caldwell & Berkowitz Atlanta, GA | $11,629.00 |
| Annual City-wide Southernlinc Service per State Contract T129 | Southernlinc Atlanta, GA | $170,000.00 |

CITY OF DOTHAN/GRAY 005782
CONFIDENTIAL

## RESOLUTION NO. 2012-315

**BE IT RESOLVED** by the Board of Commissioners of the City of Dothan, Alabama, as follows:

**Section 1.** That the Board of Commissioners does hereby award bids which have been received and publicly opened and approve other purchases over $15,000.00 by the City, which are attached to and made a part of this Resolution.

**PASSED, ADOPTED AND APPROVED** on *November 6, 2012*.

ATTEST:

_____
City Clerk

_____
Mayor

_____
Associate Commissioner District 1

_____
Associate Commissioner District 2

_____
Associate Commissioner District 3

_____
Associate Commissioner District 4

_____
Associate Commissioner District 5

_____
Associate Commissioner District 6

*BOARD OF CITY COMMISSIONERS*

CITY OF DOTHAN/GRAY 005783
CONFIDENTIAL



**CITY OF DOTHAN, ALABAMA**
**November 6, 2012**
**EXHIBIT "A"**
**BIDS**

| DEPARTMENT | BID# | #ITB | ITEM | VENDOR | AMOUNT |
|---|---|---|---|---|---|
| Leisure Services | 12-090 | 3 | Westgate Park / Water World Security Officer Including a Vehicle for Patrol Walton/Wirgreass Park Security Officer Captain/Supervisor | DSI Security<br><br>Dothan, AL | 12.26 an hour<br><br>10.51 an hour<br>10.80 an hour |

| DEPARTMENT | BID# | #ITB | ITEM | VENDOR | AMOUNT |
|---|---|---|---|---|---|
| Leisure Services | 12-092 | 7 | Colby and Bottoms Fields' Pavillion | John E Daughtry Engineering<br><br>Greenville, SC | $   16,200.00 |
|  |  |  |  | Grand Total | $   16,200.00 |

NOTE: Number of Invitations to Bidders (#ITB)

Note: No additional funding is required to be budgeted for Bids Awarded or Purchases over $15,000.

CITY OF DOTHAN/GRAY 005784
CONFIDENTIAL



**CITY OF DOTHAN, ALABAMA**
**November 6, 2012**
**EXHIBIT "A"**
**PURCHASES OVER $15,000**

| DEPARTMENT | ITEM | VENDOR | AMOUNT | |
|---|---|---|---|---|
| Administration Legal Division | Trial Expert & Expert Analysis Claim Number 2002750 | School Consulting Engineering Co, Inc. | $ | 1,660.00 |
| | | | | 20,301.40 |
| | | Birmingham, AL | $ | 21,961.40 |

| DEPARTMENT | ITEM | VENDOR | AMOUNT | |
|---|---|---|---|---|
| Fire | Natural Gas Fiscal Year 2013 | S E Alabama Gas | | 10,791.00 |
| General Services | | District | | 23,310.00 |
| Leisure Services | | Dothan, AL | | 1,883.00 |
| Dothan Utilities | | | | 78.00 |
| | | | $ | 36,062.00 |

| DEPARTMENT | ITEM | VENDOR | AMOUNT | |
|---|---|---|---|---|
| Information Technology | Annual Citywide Southernlinc Service Per State Contract T129 10/01/2012 - 09/30/2013 | Southernlinc Atlanta, GA | $ | 192,000.00 |

| DEPARTMENT | ITEM | VENDOR | AMOUNT | |
|---|---|---|---|---|
| Information Technology | Monthly Services - Air Cards 10/30/12 - 09/30/13 | Verizon Wireless - Dothan Atlanta, GA | $ | 42,000.00 |

| DEPARTMENT | ITEM | VENDOR | AMOUNT | |
|---|---|---|---|---|
| Leisure Services Performing Arts | Concessions Supplies | Coca-Cola Tenn/AL Division | $ | 25,000.00 |
| | | | | 12,000.00 |
| | | Atlanta, GA | $ | 37,000.00 |

| DEPARTMENT | ITEM | VENDOR | AMOUNT | |
|---|---|---|---|---|
| General Services for Finance Dept. | Jeep Patriot - State Bid #4012427 Line 8 Commodity 070-06 | Ben Adkinson Tallassee, AL | $ | 17,291.00 |
| | | Grand Total | $ | 346,304.40 |

CITY OF DOTHAN/GRAY 005785
CONFIDENTIAL

RESOLUTION NO. 2013. 364

BE IT RESOLVED by the Board of Commissioners of the City of Dothan, Alabama, as follows:

Section 1. That the Board of Commissioners does hereby award bids which have been received and publicly opened and approve purchases over $15,000.00 by the City, which are attached to and made a part of this Resolution.

PASSED, ADOPTED AND APPROVED on _October 15, 2013_ .

ATTEST:

_Tommy Danner_
City Clerk

Mayor
_____

Associate Commissioner District 1
_____

Associate Commissioner District 2
_____

Associate Commissioner District 3
_____

Associate Commissioner District 4
_____

Associate Commissioner District 5
_____

Associate Commissioner District 6
*BOARD OF CITY COMMISSIONERS*

CITY OF DOTHAN/GRAY 005786
CONFIDENTIAL



**CITY OF DOTHAN, ALABAMA**
**October 15, 2013**
**EXHIBIT "A"**
**BIDS**

| DEPARTMENT | RFB | #ITB | ITEM | VENDOR | AMOUNT |
|---|---|---|---|---|---|
| General Services | 13-079 | 19 | Mid Size Sport Utility Vehicle - Unit Price $25,189.25 with Additional Options at Dealer Cost Units (1 or more) | Bondy's Ford Dothan, AL | See Price In Description |

NOTE: Number of Invitations to Bidders (#ITB)

### OTHER PURCHASES over $15,000

| DEPARTMENT | ITEM | VENDOR | AMOUNT |
|---|---|---|---|
| General Services Fleet | 2014 Ford Taurus SE Options: Blue Toothe, Day Time Running Lights per State of Alabama Contract T-191, Line 5 | Ben Atkinson Motors Tallassee, AL | $ 20,880.00 |
| Administration Legal | Trial Expert - Claim Number 2002758 | School Consulting Birmingham, AL | $ 9,770.00 |
| Information Technology | Annual Citywide Southernlinc Service Per State Contract T129 | Southernlinc Atlanta, GA | $ 120,000.00 |
| Information Technology | IBM Software Training, Maintenance & Support Plus Monthly Back-Up Monitoring, Archiving & I Series Maintenance Professional Services | Riley Group Dothan, AL | $ 14,900.00 |
| General Services Insurance | Insurance Renewals: General Liability: $188,371, Equipment Floater: $11,151, Contractor's Equipment: $12,078, Public Employee Bond: $6,985, Computer & Electronic Equipment: $8,907 | Garner Insurance Dothan, AL | $ 227,492.00 |
| Administration Legal | Professional Services - Claim Number 2002635 - Project Number 850310 | King & Spalding Atlanta, GA | $ 810.00 |
| | | **Grand Total** | **$ 393,852.00** |

CITY OF DOTHAN/GRAY 005787
CONFIDENTIAL

RESOLUTION NO. 2014-270

BE IT RESOLVED by the Board of Commissioners of the City of Dothan, Alabama, as follows:

Section 1.   That the Board of Commissioners does hereby approve purchases over $16,000.00 by the City, which is attached to and made a part of this Resolution.

PASSED, ADOPTED AND APPROVED on _October 7, 2014_.

_____
Mayor

ATTEST:

_____
Associate Commissioner District 1

_____
City Clerk

_____
Associate Commissioner District 2

_____
Associate Commissioner District 3

_____
Associate Commissioner District 4

_____
Associate Commissioner District 5

_____
Associate Commissioner District 6
**BOARD OF CITY COMMISSIONERS**

CITY OF DOTHAN/GRAY 005788
CONFIDENTIAL



**CITY OF DOTHAN, ALABAMA**
**October 7, 2014**
**EXHIBIT "A"**
**OTHER PURCHASES over $15,000**

| DEPARTMENT | ITEM | VENDOR | |
|---|---|---|---|
| Administration Legal | Professional Services through 8/31/14 Project Number 860310 | King & Spalding Atlanta, GA | $ 765.60 |

| DEPARTMENT | ITEM | VENDOR | AMOUNT |
|---|---|---|---|
| Citywide | Newspaper Advertisements in the Dothan Eagle for Personnel, Water World, Holiday Pick-Up Schedule Changes for Environmental, City Clerk Legal Notices, Bid Advertisements, CAFR, PAFR, Found Property, AUSA Kickoff Breakfast, MPO, Event Ads and Rezoning - Sole Source Provider, for Fiscal Year 2015[1] | Alabama Community Newspapers Dothan, AL | $ 92,350.00 |

| DEPARTMENT | ITEM | VENDOR | AMOUNT |
|---|---|---|---|
| Citywide | Desktop Computer Replacements Quantity 25 (or more)  Price $1,700.00; Workstation Computer Replacements Quantity 5 (or more), Unit Price: $2,200.00; Laptop Computer replacements, Quantity 5 (or more), Unit Price $2,200.00; Server Replacements, Quantity 2 (or more), Unit Price: $10,000.00-State of Alabama Contract Number T-531, Prices are a Percentage off Manufacturers Retail Price | Dell Marketing | $ 150,000.00 |

| DEPARTMENT | ITEM | VENDOR | AMOUNT |
|---|---|---|---|
| Citywide | Sole Source Provider Natural Gas for Fiscal Year 2015[1] | S E Alabama Gas District Dothan, AL | $ 67,250.00 |

| DEPARTMENT | ITEM | VENDOR | AMOUNT |
|---|---|---|---|
| General Services Fleet | Parts as Needed for Autocar Parts Authorized Autocar dealer for Our Area Fiscal Year 2015[1] | Action Truck Dothan, AL | $ 40,000.00 |

| DEPARTMENT | ITEM | VENDOR | AMOUNT |
|---|---|---|---|
| General Services Fleet | Dealer Original Equipment as Needed throughout Fiscal Year 2015, Only Local Ford Dealer[1] | Bondy's Ford, Lincoln Inc Dothan, AL | $ 100,000.00 |

CITY OF DOTHAN/GRAY 005789
CONFIDENTIAL

## OTHER PURCHASES over $15,000 (Continued)

| DEPARTMENT | ITEM | VENDOR | AMOUNT |
|---|---|---|---|
| General Services Fleet | Automotive, Truck and Equipment Batteries to be Purchased from National Joint Powers Alliance (NJPA) Cooperative Contact for Fiscal Year 2015[1] | Carquest Auto Dothan, AL | $75,000.00 |
| General Services Fleet | International Parts Purchased as Needed Authorized International Dealer for Our Area for Fiscal Year 2015 [1] | Coffman International Dothan, AL | $100,000.00 |
| General Services Fleet | Cummins Engine Parts from Nearest Authorized Cummins Engine Parts Dealer for Fiscal Year 2015[1] | Cummins Mid South LLC Dothan, AL | $30,000.00 |
| General Services Fleet | Parts Purchased as Needed throughout the Fiscal Year 2015[1] - Only Radiator Repair Vendor | Dothan Radiator Repair Dothan, AL | $25,000.00 |
| General Services Fleet | Heavy Duty Truck Parts to be Purchased as Needed for Fiscal Year 2015[1] | Fleetpride Inc Dothan, AL | $55,000.00 |
| General Services Fleet | Starter and Alternator Repairs as Needed for Fiscal Year 2015[1] Vendor is used when they have the lowest price and quickest repair time. | G & M Starter & Alternator Dothan, AL | $35,000.00 |
| General Services Fleet | Purchase of Tires for Fleet as Needed throughout Fiscal Year 2015[1], State of Alabama Contract T106 Lines: #G00 3249, Police Subsidiary #G000 3250 | Harris Tire Company Troy, AL | $60,000.00 |
| General Services Fleet | Purchase of Parts for Sweeper Dealer as Needed throughout Fiscal Year 2015[1] | Ingram Equipment Co. Pelham, AL | $25,000.00 |

CITY OF DOTHAN/GRAY 005790
CONFIDENTIAL

## OTHER PURCHASES over $15,000 (Continued)

| DEPARTMENT | ITEM | VENDOR | AMOUNT |
|---|---|---|---|
| General Services Fleet | McNeilus Parts Purchased As Needed Sole Source Provider for McNeilus Parts for Fiscal Year 2015[1] | McNeilus Truck & Manufacturing Villa Rica, GA | $ 50,000.00 |
| General Services Fleet | Parts as Needed for Fiscal Year 2015[1] | O'Reilly Automotive Parts Dothan, AL | $ 50,000.00 |
| General Services Fleet | Motorcraft (Ford) and AC Delco (GM) Parts as Needed for Fiscal Year 2015[1] | The Parts House Dothan, AL | |
| General Services Fleet | Parts to be Purchased as Needed for Knuckle Boom from Authorized Dealer for Fiscal Year 2015[1] | Ramer Manufacturing Ramer, AL | $ 25,000.00 |
| General Services Fleet | Tires and Alignments as Needed for Fiscal Year 2015 from State of Alabama Contract T106[1] | Road Mart Dothan, AL | $ 50,000.00 |
| General Services Fleet | Parts as Needed for Sweeper From Authorized Dealer for Fiscal Year 2015[1] | Sansom Equipment Co Birmingham, AL | $ 25,000.00 |
| General Services Fleet | Parts as Needed for Fire Trucks From Authorized E-One Dealer for Fiscal Year 2015[1] | Sunbelt Fire Equipment Co Fairhope, AL | $ 25,000.00 |
| General Services Fleet | Caterpillar Parts Purchased as Need from Authorized Caterpillar Dealer In Our Area for Fiscal Year 2015[1] | Thompson Tractor Co Inc Dothan, AL | $ 30,000.00 |

CITY OF DOTHAN/GRAY 005791
CONFIDENTIAL

## OTHER PURCHASES over $15,000 (Continued)

| DEPARTMENT | ITEM | VENDOR | AMOUNT |
|---|---|---|---|
| General Services Fleet | Komatsu Parts Purchased as Need from Authorized Dealer in Our Area for Fiscal Year 2015[1] | Tractor & Equipment Co Inc Dothan, AL | $ 40,000.00 |
| General Services Fleet | Parts for Medium/Heavy Trucks and Tractors for Fiscal Year 2015[1] | Tri State Diesel & Auto Dothan, AL | $ 50,000.00 |
| General Services Fleet | Purchase Big Truck Tires as Required throughout Fiscal Year 2015 using U S Communities Co-Operative[1] | Road Mart Inc Dothan, AL | $ 250,000.00 |
| Leisure Services Administration Football/Cheerleading Basketball | Scorekeepers, Umpires, Announcers, Officials for Baseball, Football, Softball and Flag Football for Fiscal Year 2015[1] | Dothan Youth Officials Assoc. Dothan, AL | $ 18,600.00 |
| Leisure Services Soccer | Youth Soccer Officials for Fiscal Year 2015[1] | Dale Thomas Dothan, AL | $ 13,000.00 |
| Leisure Services Softball/Football | Softball and Football Umpires for Fiscal Year 2015[1] | Wiregrass Sports Officials Assoc. Dothan, AL | $ 30,000.00 |
| Leisure Services Eastgate Park | Electricity for Fiscal Year 2015[1] | Wiregrass Electric Dothan, AL | $ 38,000.00 |
| Leisure Services Westgate Water World Concessions | Concessions Supplies From U S Communities Cooperative Contract for Fiscal Year 2015[1] | U S Foods Atlanta, GA | $ 44,000.00 |

CITY OF DOTHAN/GRAY 005792
CONFIDENTIAL

## OTHER PURCHASES over $15,000 (Continued)

| DEPARTMENT | ITEM | VENDOR | AMOUNT |
|---|---|---|---|
| Leisure Services Westgate Water World Concessions | Concession Supplies - Prices have been compared to Sam's Club. Pepsi Products are also sold. This is a historical representation of the amount of products sold in prior years. Only vendor who can deliver product and C02 tanks. Estimated Amount for Fiscal Year 2015[1]. | Coca Cola Dothan, AL | $ 18,000.00 |
| **DEPARTMENT** | **ITEM** | **VENDOR** | **AMOUNT** |
| Public Works Public Works Environmental | Estimated Recycling Costs FY 2015, Sole Source Provider of Recycling of Household Products for the Dothan Area. White Goods are not Included[1] | Waste Management Recycle America Midland City, AL | $ 60,000.00 |
| **DEPARTMENT** | **ITEM** | **VENDOR** | **AMOUNT** |
| Information Technology For Police | Police Mobile Data Terminals, Quantity 22, Unit Price $2,272.73, State of Alabama Contract Number, T-532 | Pinnacle Networkx Wetumpka, AL | $ 50,000.00 |
| **DEPARTMENT** | **ITEM** | **VENDOR** | **AMOUNT** |
| Information Technology For Fire & Police | For Public Safety Cell Phones and Push-to-Talk Service for Interacting with State and Other Local Public Safety Agencies, State of Alabama Contract # T129, Estimated Amount for Fiscal Year 2015 | Southernlinc Inc Dothan, AL | $ 85,000.00 |
| **DEPARTMENT** | **ITEM** | **VENDOR** | **AMOUNT** |
| Insurance | Liability Insurance: Commercial General, Law Enforcement, Public Officials, Employee Benefit and Commercial Auto Coverage | Alabama Municipal Insurance Corp. Montgomery, AL | $ 192,436.00 |
| **DEPARTMENT** | **ITEM** | **VENDOR** | **AMOUNT** |
| Insurance | Insurance Renewals: Property, Crime, Inland Marine, Terrorism, Contractor's Equipment and Cyber Liability | Flowers Insurance Agency Dothan, AL | $ 276,015.00 |

[1] For an estimated amount to cover "possible" Inventory purchases for Fiscal Year 2015.

CITY OF DOTHAN/GRAY 005793
CONFIDENTIAL

Page 1 of 12

PROG ID: POCPBK3A                                                DATE: 05/10/14

STATE OF ALABAMA
DEPARTMENT OF FINANCE
DIVISION OF PURCHASING
CONTRACT NOTICE OF AWARD

RADIO EQUIPMENT  800 MHZ
CONTRACT

T-NUMBER....... : 7129
USAGE.......... : STATEWIDE CONTRACT
PERIOD......... : NOVEMBER 1, 2011 TO OCTOBER 31, 2015
SOLICITATION NO : 2230533

CONTRACT BUYER...... : PAT ANBLE

BUYER PHONE.. : (334) 242-7253      PURCHASING NUMBER......... : (334) 242-7250
FAX NUMBER... : (334) 242-4419
DATE PRINTED. : 05/10/14

DIVISION OF PURCHASING
CONTRACT NOTICE OF AWARD

TERMS AND CONDITIONS                                              PAGE:   2

FAMILIARIZE YOURSELF WITH THIS CONTRACT AND THE TERMS AND CONDITIONS
REGARDING THE RESPONSIBILITIES OF THE STATE AND THE VENDORS.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
*                                                             *
* IT IS THE RESPONSIBILITY OF THE ORDERING AGENCY TO MAKE SURE THAT *
* ALL OF THE INFORMATION SUBMITTED ON THEIR REQUISITION IS CORRECT. *
* ALWAYS BE SURE TO RECHECK YOUR COMMODITY NUMBERS. AS SOON AS YOUR *
* PURCHASE ORDER ARRIVES, CHECK IT FOR ACCURACY. IF THERE ARE ANY *
* DISCREPANCIES, PLEASE NOTIFY THE VENDOR FIRST, THEN CONTACT THE *
* BUYER LISTED ON THE FRONT OF THIS CONTRACT AS SOON AS POSSIBLE. *
*       IN MOST INSTANCES, PROBLEMS CAN BE CORRECTED.         *
*                                                             *
* COMPLAINTS MUST BE DOCUMENTED & SUBMITTED TO THE BUYER IN WRITING. *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

*********** INFORMATION/INSTRUCTIONS - STATE AGENCIES ONLY ***********

WHEN PURCHASING EQUIPMENT FROM THIS CONTRACT, SUBMIT A RELEASE ORDER.

FOR EACH TYPE OF EQUIPMENT ENTER THE APPROPRIATE COMMODITY NUMBER.

THE UNIT WILL BE THE TOTAL QUANTITY OF ITEMS WITHIN THAT CATEGORY.

KNOW THE DESCRIPTIONS AND MODEL NUMBERS. ENTER THE PRICE ON THE LINE
"CATALOG PRICE".

FOR SERVICE, ENTER A CONTRACT RELEASE ORDER USING THE APPROPRIATE
LINE FOR THE SERVICE PACKAGE DESIRED. FOR SERVICE PACKAGES NOT LISTED
ON LINES 00001 THRU 00006, USE LINE 00007 AND ENTER THE PACKAGE INFOR-
MATION AND MONTHLY PRICING IN KMOD. DON'T FORGET TO INCLUDE THE PERIOD
OF COVERAGE, BILLING AND ACCOUNT NUMBERS IN THE KMOD.

ALL TRANSACTIONS CONDUCTED WITH SOUTHERN COMMUNICATIONS
(SOUTHERN LINC) MUST BE DONE THROUGH THEIR MONTGOMERY OFFICE. SEE

DIVISION OF PURCHASING
CONTRACT NOTICE OF AWARD

TERMS AND CONDITIONS                                              PAGE:   3

THE VENDOR INFORMATION INSIDE FOR CONTACT NAMES AND PHONE NUMBERS.

PRICING IS CONTAINED IN THE VENDOR'S CATALOG. CONTACT THE VENDOR FOR
A COPY OF CATALOG.
NOTE TO ALL AGENCIES:
USERS OF THIS CONTRACT SHOULD USE THESE RADIOS FOR THEIR DISPATCH,
CELLULAR AND PAGER NEEDS. USERS SHOULD NOT HAVE A 3-IN-1 RADIO AS
WELL AS A CELL PHONE AND/OR A PAGER.  SEE VENDOR'S CATALOG FOR
SERVICE RATES THAT COMBINE ALL THREE OF THESE SERVICES AT DISCOUNTED
RATES (INTEGRATED SERVICE MONTHLY RATES).
NOTICE!  USERS OF THIS CONTRACT MUST USE THE TWO-WAY RADIO SERVICE.
CELL PHONE ONLY OR PDA DATA ONLY WILL NOT BE ALLOWED.

FOR QUESTIONS CONCERNING THIS CONTRACT, CONTACT THE BUYER.

SOLICITATION NUMBER : 2230533

PURPOSE:        STATEWIDE CONTRACT

TO PROVIDE THE STATE OF ALABAMA WITH A DIGITAL WIDE AREA COMMUNICA-
TION SYSTEM COVERING BOTH RURAL AND METROPOLITAN AREAS WITH REGIONAL
COVERAGE TO INCLUDE AT A MINIMUM ALABAMA, GEORGIA, FLORIDA PANHANDLE
AND SOUTHEAST MISSISSIPPI.

ESTABLISH A SOURCE FOR ENHANCED SPECIALIZED RADIO SERVICES & PURCHASE
OF COMMUNICATIONS EQUIPMENT TO BE USED BY STATE OF ALABAMA AGENCIES,
SCHOOLS AND LOCAL GOVERNMENTAL AGENCIES (CITIES & COUNTIES).
VENDOR MUST HAVE 75% LAND AREA COVERAGE AT -87DBM SIGNAL LEVEL ACROSS
THE STATE OF ALABAMA.

CITY OF DOTHAN/GRAY 005794
CONFIDENTIAL

DIVISION OF PURCHASING
CONTRACT NOTICE OF AWARD

TERMS AND CONDITIONS                                          PAGE:   4

COMPLIANCE WITH STANDARDS AND REGULATIONS:
THE VENDOR SHALL BE KNOWLEDGEABLE OF APPLICABLE INDUSTRY STANDARDS
AND COMPLY WITH ALL APPLICABLE REGULATIONS OF THE STATE AND FEDERAL
GOVERNMENT, AND SHALL COMPLY WITH LAWS AND REGULATIONS REGARDING
SAFETY AND PROTECTION.


*********EQUIPMENT AND SERVICE MINIMUM REQUIREMENTS********

WHO CAN BID:
THE STATE OF ALABAMA WILL ACCEPT BIDS FROM VENDORS WHO ARE LICENSED
TO PROVIDE EQUIPMENT AND SERVICE USING THE MOTOROLA IDEN TECHNOLOGY
OR EQUAL.

SERVICE VENDORS MUST BE ABLE TO PROVIDE DISPATCH, CELLULAR AND PAGER
SERVICES IN ONE UNIT TO A MINIMUM OF 75% OF LAND MASS AT -97DBM SIGNAL
LEVEL ACROSS THE STATE OF ALABAMA AT THE TIME OF BID.

ALL SERVICE PLANS MUST INCLUDE AT A MINIMUM ALL OF ALABAMA, ALL OF
GEORGIA, THE FLORIDA PANHANDLE, AND SOUTHEAST PORTION OF MISSISSIPPI.

SYSTEM DESIGN:  COMMUNICATION SYSTEM DESIGNED WITH REDUNDANCIES AND
SAFEGUARDS BUILT-IN SO THAT THE SYSTEM WILL BE RELIABLE IN TIMES OF
EMERGENCY AND CATASTROPHE.

SYSTEM PERFORMANCE:  MUST BE MONITORED 24 HOURS A DAY TO PROVIDE FOR
SYSTEM TROUBLES AND REPAIRS. ALL SITES MUST OPERATE USING DC POWER
WITH BATTERY BACKUP.  AC COMMERCIAL POWER MUST BE BACKED UP BY AN
EMERGENCY GENERATOR WITH AUTOMATIC TRANSFER IN 90% OF SITES LOCATED
IN ALABAMA.

CUSTOMER SUPPORT:  VENDOR MUST PROVIDE 24/7 CUSTOMER SUPPORT.

INHERENT PRIVACY:  SYSTEM AUTHENTICATION AND REGISTRATION PROCESS MUST
PROVIDE INHERENT PRIVACY AND SHOULD BE SECURE FROM CLONING RADIOS AND
SCANNING CONVERSATIONS. THE MODULATION TECHNOLOGY MUST PREVENT ILLEGAL
EAVESDROPPING.

PTT-ID:
                        DIVISION OF PURCHASING
                        CONTRACT NOTICE OF AWARD

                        TERMS AND CONDITIONS                 PAGE:   5

VENDOR'S SYSTEM MUST HAVE CAPABILITY OF IDENTIFYING THE INITIATOR'S
RADIO ID ON THE RECEIVING RADIO'S DISPLAY DURING A GROUP, PRIVATE OR
EMERGENCY DISPATCH CALL. THE INITIATOR'S NAME IS TO BE DISPLAYED, IF
ALIASED, IN THE RECEIVING RADIO. USER MUST BE ABLE TO PROGRAM ALIASED
NAMES INTO THE RADIO HIMSELF OR THROUGH A SOFTWARE INTERFACE CONNECTED
TO THE RADIO KEYPAD.

PTT TIME:
INITIAL PTT SETUP TIME MUST AVERAGE BETWEEN 500-750 MILLISECONDS
FOR ANY GIVEN PTT CONVERSATION OF INITIAL AND SUBSEQUENT PTT CALLS
AS MEASURED BETWEEN THE REQUEST FOR CHANNEL GRANT AND THE ACCEPTANCE
OF CHANNEL GRANT WITHIN THE RF SYSTEM.

CALL ALERT:
A VENDOR'S SYSTEM MUST BE ABLE TO ALLOW A RADIO USER TO SEND A VISUAL
AND AN AUDIBLE DISPATCH CALL ALERT MESSAGE TO ANOTHER RADIO REGISTERED
ON THE SYSTEM AND NOT ENGAGED IN ANOTHER CALL. THE RECEIVING RADIO
WILL DISPLAY "ALERT" ON THE TOP DISPLAY LINE AND THE SENDER'S RADIO
IDENTIFICATION OR NAME, IF ALIASED, ON THE SECOND DISPLAY LINE. A TONE
WILL BE GIVEN, AND WILL CONTINUE PERIODICALLY UNTIL THE RECEIVING
RADIO USER:
      *RESPONDS BY PRESSING THE PUSH-TO-TALK BUTTON AND RETURNS A
       PRIVATE CALL TO THE INITIATOR, OR
      *CLEARS THE ALERT FROM THE DISPLAY

TALKGROUP CALL:
VENDOR'S SYSTEM MUST HAVE THE CAPABILITY TO PROVIDE A MINIMUM OF 255
TALKGROUPS WITHIN A FLEET AVAILABLE TO ASSIGN TO WORK GROUPS. RADIOS
MUST HAVE ABILITY TO BE ASSIGNED TO MULTIPLE TALKGROUPS FOR WORK GROUP
FUNCTIONALITY. SEPARATE TALKGROUPS MUST BE ABLE TO COMMUNICATE
SIMULTANEOUSLY IN GROUP DISPATCH MODE WITHOUT INTERFERING WITH EACH
OTHER. TALKGROUPS MUST HAVE CAPABILITY TO COMMUNICATE ACROSS A WIDE
GEOGRAPHICAL AREA WHILE IN THE VENDOR'S SERVICE COVERAGE AREA. TALK-
GROUPS MUST BE ABLE TO SUPPORT A MINIMUM OF 10,000 USERS TO SIMULTAN-
EOUSLY PARTICIPATE IN GROUP CALLS.

USERS MUST HAVE CAPABILITY TO BE ASSIGNED TO MORE THAN ONE TALKGROUP.
RADIOS NOT ASSIGNED WITHIN A COMMON TALKGROUP MUST HAVE CAPABILITY TO
                        DIVISION OF PURCHASING
                        CONTRACT NOTICE OF AWARD

                        TERMS AND CONDITIONS                 PAGE:   6

COMMUNICATE WITHIN THE FLEET VIA PRIVATE CALL.

PRIVATE CALLS:  USER MUST BE ABLE TO ENGAGE IN A ONE-ON-ONE CONVERSA-

CITY OF DOTHAN/GRAY 005795
CONFIDENTIAL

TION WITH ANOTHER UNIT IN A RADIO MODE, USER MUST HAVE CAPABILITY OF
HAVING PTT ACCESS ONLY, WITH NO INTERCONNECT.

TELEPHONE INTERCONNECT:  RADIO UNITS MUST BE ABLE TO MAKE FULL DUPLEX
TELEPHONE INTERCONNECT CALLS.  UNITS SHOULD BE ABLE TO OPERATE THROUGH
OUT THE SYSTEM WITHOUT HAVING TO USE ROAMING CODES TO RECEIVE OR
INITIATE A CALL.

INTEROPERABILITY:
VENDOR MUST HAVE CAPABILITY TO BE INTEROPERABLE WITH STATE-OWNED
ZETRON AND MOTOROLA CONSOLES.

VENDOR'S EQUIPMENT MUST BE ACU 1000 COMPATIBLE.

VENDOR MUST PROVIDE A "CROSS CONNECT" CAPABILITY FOR APPROXIMATELY
TWELVE (12) STATE OF ALABAMA, TWO-WAY RADIO TALK GROUPS ON TWELVE
(12) DIFFERENT TWO-WAY RADIO FLEETS TO CONNECT TO TWELVE (12)
OTHER OR DIFFERENT TALK GROUPS ON THE SAME TWELVE (12) TWO-WAY
RADIO FLEETS, WITH RESERVE SPACE TO INCREASE THIS CAPABILITY TO
EIGHTEEN (18) TALK GROUPS ON EIGHTEEN (18) FLEETS AND TALK GROUPS.
THE MINIMUM REQUIREMENTS FOR THIS INSTALLATION ARE AS FOLLOWS:
 *THE VENDOR MUST FURNISH APPROXIMATELY TWELVE (12) SQUARE FEET
  OF FLOOR SPACE FOR THE NECESSARY RACKED EQUIPMENT AT THE VENDOR'S
  SECURE LOCATION.
 *THE LOCATION OF THE INTEROPERABILITY CONTROLLERS, ASSOCIATED
  RADIO EQUIPMENT AND SPARE PARTS AND COMPONENTS MUST BE LOCATED
  AT A PRIMARY MSO (MOBILE SWITCHING OFFICE) WITHIN THE STATE OF
  ALABAMA. THIS LOCATION MUST BE ACCESSIBLE TO CONTRACTORS THAT
  THE STATE OF ALABAMA MAY DEEM NECESSARY FOR MAINTENANCE AND/OR
  MODIFICATIONS TO THE EQUIPMENT AND TO STATE OFFICIALS AND EMPLOYEES
  OF THE STATE OF ALABAMA HOMELAND SECURITY, ALABAMA EMERGENCY
  MANAGEMENT AGENCY AND THEIR DESIGNEES AS NEEDED TO MAKE ADJUST-
  MENTS AND/OR REPAIRS, AS AUTHORIZED BY THE STATE EMERGENCY MANAGE-
  MENT AGENCY OR DEPARTMENT OF HOMELAND SECURITY.
 *THE VENDOR MUST MAINTAIN A MICROSOFT WINDOWS STYLE COMPUTER
  WITH THE NECESSARY SOFTWARE INSTALLED TO MAKE ADJUSTMENTS TO THE

DIVISION OF PURCHASING
CONTRACT NOTICE OF AWARD

TERMS AND CONDITIONS                                    PAGE:   7

  INTEROPERABILITY EQUIPMENT. THIS COMPUTER WILL BE MADE AVAILABLE
  TO THE ALABAMA EMERGENCY MANAGEMENT AGENCY AND/OR THE ALABAMA
  DEPARTMENT OF HOMELAND SECURITY WHEN NEEDED OR REQUESTED.
 *THE VENDOR MUST PROVIDE SECURE STORAGE SPACE FOR APPROXIMATELY
  SIX (6) CUBIC FEET OF SPARE BOARDS, ASSEMBLIES AND OTHER
  ASSOCIATED EQUIPMENT RELATED TO THIS INTEROPERABILITY SYSTEM.
 *SPACE PROVIDED MUST BE AN ATMOSPHERICALLY CONTROLLED SPACE,
  MAINTAINING A TEMPERATURE WITHIN THE OPERATING RANGE OF THE
  INTEROPERABILITY EQUIPMENT WHILE MAINTAINING A HUMIDITY LEVEL
  BELOW SIXTY (60) PERCENT.
 *SPACE PROVIDED MUST HAVE FORTY-EIGHT (48) VOLTS, DC FUSE PRO-
  TECTED, AND WITH DIRECT CURRENT SERVICE FOR THE OPERATION OF
  EQUIPMENT. DIRECT CURRENT SERVICE MUST CONSIST OF NO LESS THAN
  ONE SEPARATE FEED OR SUPPLY FOR EACH RACK OF EQUIPMENT. THE
  SUPPLY FOR THIS VOLTAGE MUST BE VIA A RECTIFIER OR POWER SUPPLY
  SYSTEM WITH BATTERY BACKUP CAPACITY TO OPERATE THE SYSTEM FOR
  A MINIMUM OF FIVE (5) DAYS. THE RECTIFIER AND/OR BATTERY SYSTEM
  MAY BE SUPPLEMENTED WITH GENERATOR POWER, BUT IF SO, THE
  COMBINATION OF RESERVE CAPABILITIES MUST BE SUFFICIENT FOR A
  MINIMUM OF FIVE (5) DAYS OF FULL TIME SERVICE.
 *THE SPACE PROVIDED MUST ACCOMODATE UP TO THREE, SEVEN (7) FOOT
  TALL RACKS THAT ARE APPROXIMATELY THIRTY-FOUR (24) INCHES SQUARE.
 *VENDOR MUST PROVIDE ACCESS TO A MINIMUM OF FORTY-EIGHT (48)
  RADIO TALK PATHS WITH A SIGNAL LEVEL OF NO LESS THAN -80DB AT THE
  RECEIVER ANTENNA AND A SIGNAL QUALITY RATIO OF NO LESS THAN
  25,
 *VENDOR MUST ASSURE THAT THE RADIO SPECTRUM USED FOR THE INTER-
  OPERABILITY EQUIPMENT REMAINS FREE OF CONFLICT WITH THE OTHER
  FREQUENCIES AND SYSTEMS IN OPERATION IN OR NEAR THE INTEROP-
  ERABILITY EQUIPMENT.
 *THE VENDOR MUST PROVIDE MONITORING OF THE ENVIRONMENT IN WHICH THE
  EQUIPMENT IS INSTALLED. MONITORING MUST BE BY EITHER ALARM OR
  BY VIDEO SURVEILLANCE.
 *THE VENDOR MUST HAVE PERSONNEL ON THE PREMISES AT ALL TIMES, WHO
  WILL BE REQUIRED TO OCCASIONALLY OBSERVE THE EQUIPMENT AND
  PERFORM MINOR SWITCHING FUNCTIONS THAT MAY BE REQUESTED BY THE
  STATE OF ALABAMA DEPARTMENT OF HOMELAND SECURITY OR ALABAMA
  EMERGENCY MANAGEMENT AGENCY.
 *THE VENDOR MUST PROVIDE A VPN (VIRTUAL PRIVATE NETWORK), BRANCH

DIVISION OF PURCHASING
CONTRACT NOTICE OF AWARD

TERMS AND CONDITIONS                                    PAGE:   8

  TO BRANCH CONNECTION FOR USE BY THE INTEROPERABILITY EQUIPMENT.
  THIS WILL BE BOTH UDP AND TCP CONNECTIVITY TO A NAT (NETWORK
  ACCESS TRANSLATION) ROUTER ATTACHED TO THE EQUIPMENT FOR THE
  STATE'S ACCESS AND MONITORING REQUIREMENTS.
 *THE VENDOR MUST SET ASIDE A MINIMUM OF FIVE (5) TALK GROUPS ON
  EACH OF THE TWELVE (12) FLEETS AND ANY NEW MANAGED FLEETS FOR
  ANY STATE AGENCY TO BE USED FOR INTEROPERABLE COMMUNICATIONS.
 *IF CURRENT VENDOR IS NOT AWARDED THE CONTRACT, THE AWARDED
  VENDOR WILL BE RESPONSIBLE FOR REMOVAL AND INSTALLATION OF
  EQUIPMENT TO A NEW LOCATION AT NO CHARGE TO THE STATE OF
  ALABAMA. THE RELOCATION OF EQUIPMENT MUST BE COMPLETED WITHIN
  THIRTY (30) DAYS OF NOTICE OF AWARD.

PACKET DATA:  SYSTEM MUST HAVE PACKET DATA ADHERING TO STANDARD
TCP/IP AND UDP/IP USER APPLICATIONS AND NETWORK EQUIPMENT. PACKET DATA
MUST BE ACCESSIBLE THROUGH A WIDE VARIETY OF HANDSETS AND RUGGED DATA

CITY OF DOTHAN/GRAY 005796
CONFIDENTIAL

UNITS. END USERS MUST HAVE ABILITY TO ACCESS THE PACKET DATA NETWORK THROUGH THEIR OWN LAPTOP COMPUTERS USING WINDOWS NT, 95, 2000 AND XP OPERATIONS SYSTEMS. THE LAPTOP CAN BE "TETHERED" OR CONNECTED TO THE SUBSCRIBER UNIT THROUGH THE USB PORT ON THE COMPUTER. SOME HANDSETS SHOULD ALSO OFFER A "MICRO-BROWSER" WHICH ALLOWS USERS TO ACCESS INFORMATION FROM THE INTERNET FROM THEIR HANDSET.

CROSSFLEET: SYSTEM MUST HAVE ABILITY FOR UNITS IN DIFFERENT FLEETS TO COMMUNICATE THROUGH A PRIVATE CALL, IF SO PROVISIONED AND HANDSET CAPABLE.

ALPHANUMERIC TEXT PAGING: UNIT MUST BE ABLE TO RECEIVE ALPHANUMERIC TEXT PAGES.

AUTOMATIC SEAMLESS COVERAGE: UNIT MUST AUTOMATICALLY SELECT THE CELL SITE WITH THE HIGHEST SIGNAL LEVEL WITHOUT HUMAN INTERVENTION WHILE OPERATING IN ANY MODE.

PRIORITY:
THE VENDOR'S SYSTEM MUST PROVIDE MULTIPLE LEVELS OF DISPATCH QUEUING PRIORITY. THE DISPATCH QUEUING PRIORITY LEVELS WILL BE ASSIGNED ON A PER TALKGROUP BASIS. THE VENDOR WILL ASSIGN THE HIGHEST DISPATCH TRUNKING QUEUING PRIORITY LEVEL TO AGENCY USERS FACING LIFE THREATEN-

                    DIVISION OF PURCHASING
                  CONTRACT NOTICE OF AWARD

                   TERMS AND CONDITIONS                        PAGE: 9

ING SITUATIONS AND/OR CATASTROPHIC EVENTS.

PRIORITY APPLIES TO THE DISPATCH QUEUING ORDER. IF CONDITIONS EXIST WHERE ALL VOICE SERVERS ARE IN USE ON THE INITIATOR'S SITE, THE INITIATING RADIO WILL BE PLACED IN QUEUE AHEAD OF THE CURRENTLY QUEUED USERS WHOSE TALKGROUPS HAVE BEEN ASSIGNED A LOWER PRIORITY THAN THAT OF THE INITIATOR. FOR TALKGROUPS IN QUEUE WITH IDENTICAL PRIORITY LEVELS THE QUEUING WILL BE ON A "FIRST COME" BASIS.

AGENCY CONTROL: THE AWARDED VENDOR WILL DESIGNATE AGENCY CONTROL TO APPROVED PARTIES THAT WILL ALLOW THE FOLLOWING:

* TALKGROUP ASSIGNMENT AND MAINTENANCE WITHIN A FLEET ORGANIZATION.THE STATE MUST BE ABLE TO DESIGN AND MAINTAIN TALKGROUP ASSIGNMENTS AND FLEET CONFIGURATIONS.

* DYNAMIC RE-GROUPING: CHANGES IN UNIT TALKGROUPS OR FLEETS MUST BE ABLE TO BE DONE WITHOUT RETURNING UNIT TO SERVICE PROVIDER FOR CHANGES.

* FEATURE FLEXIBILITY: RADIO FEATURES CAN BE ENABLED OR DISABLED UNIT BY UNIT WITHOUT RETURNING UNIT TO SERVICE PROVIDER.

* STATUS TEXT MESSAGING: SHORT TEXT MESSAGES INDICATING CHANGE IN STATUS MUST BE ABLE TO BE SENT FROM RADIO TO RADIO WITHOUT ANY ADDITIONAL EQUIPMENT.

TALK AROUND:
VENDOR MUST BE ABLE TO PROVIDE A TALK AROUND FEATURE WHICH WILL ALLOW DIRECT TWO-WAY RADIO, RADIO-TO-RADIO COMMUNICATIONS BETWEEN TWO OR MORE RADIOS EQUIPPED FOR TALK AROUND, ENABLING THE USER TO MAKE AND RECEIVE TALK AROUND CALLS IN PLACES WHERE NO CARRIER SERVICE IS AVAILABLE. TALK AROUND FEATURE MUST ALLOW USER TO TALK TO ANYONE ON USER'S CODE AND CHANNEL WITHIN THE USER'S RANGE.
TALK AROUND FEATURE MUST ALLOW USER TO:
    •USE CODE OR PRIVATE MODE OPERATION
    •USE UP TO 10 CHANNELS

EMERGENCY SIGNAL:

                    DIVISION OF PURCHASING
                  CONTRACT NOTICE OF AWARD

                   TERMS AND CONDITIONS                        PAGE: 10

VENDOR MUST BE ABLE TO PROVIDE ADVANCED FEATURE RADIOS WITH AN EMERG-ENCY SIGNAL FEATURE (ORANGE BUTTON) THAT CAN ACTIVATE AN EMERGENCY DISTRESS SIGNAL BY HOLDING DOWN THE ORANGE BUTTON FOR 0.5 SECONDS. THE THE EMERGENCY SIGNAL WILL BE DISPLAYED ON OTHER ADVANCED FEATURE RADIOS, ON STATE-OWNED MOTOROLA CENTRACOM ELITE CONSOLES, OR ON STATE-OWNED ZETRON CONSOLES, WHICH HAVE THE EMERGENCY SIGNAL CAPABILITY ACTIVATED ON THE RADIOS AND ARE OPERATING WITHIN THE RADIO INITIATOR'S TALK GROUP OR ANOTHER DESIGNATED TALK GROUP DEFINED BY THE AGENCY. USERS MUST BE AVAILABLE TO RECEIVE THE EMERGENCY SIGNAL IF INVOLVED IN A GROUP CALL.

THE ORIGINATING RADIO ACTIVATING THE EMERGENCY SIGNAL MUST HAVE THE CAPABILITY TO SEIZE AN AVAILABLE TALK CHANNEL WHICH IS ALREADY IN USE. THE EMERGENCY CALL MUST BE ABLE TO BE MAINTAINED UNTIL THE USER DEACT-IVATES THE MODE BY HOLDING THE EMERGENCY BUTTON DOWN FOR THREE (3) SECONDS. VENDOR'S SYSTEM MUST HAVE CAPABILITY TO ALLOW THE USER'S DISPATCHER UTILIZING AN ADVANCED FEATURE CONTROL STATION, A CENTRACOM ELITE CONSOLE OR ZETRON CONSOLE TO DEACTIVATE THE EMERGENCY CALL.

RADIOS RECEIVING THE EMERGENCY SIGNAL WILL HEAR A TONE INDICATING AN EMERGENCY. THE TOP LINE OF THE RADIO DISPLAY MUST STATE "EMERGENCY". THE SECOND LINE MUST IDENTIFY WHO ACTIVATED THE EMERGENCY BY RADIO ID OR NAME, IF ALIASED, WITHIN THE RECEIVING RADIO. THE THIRD LINE MUST REFLECT THE RADIO ID OF THE RADIO CURRENTLY TRANSMITTING IN GROUP DIS-PATCH MODE DURING THE EMERGENCY.

THE INITIATING RADIO WILL RECEIVE AN EMERGENCY TONE. THE TOP LINE OF THE RADIO DISPLAY MUST STATE "EMERGENCY". THE SECOND LINE MUST INDI-CATE THE TALKGROUP IN WHICH THE EMERGENCY IS ACTIVATED. THE THIRD LINE

CITY OF DOTHAN/GRAY 005797
CONFIDENTIAL

MUST REFLECT THE RADIO ID OF THE RADIO CURRENTLY TRANSMITTING IN GROUP
DISPATCH MODE DURING THE EMERGENCY.

STAGING AREAS:
THE STATE OF ALABAMA ESTABLISHES STAGING AREAS DURING CRITICAL EVENTS.
THE AWARDED VENDOR MUST SUPPORT THE STATE BY PROVIDING COVERAGE FOR
THEIR STAGING AREAS AS THEY DEVELOP. IN ADDITION, THE AWARDED VENDOR
MUST PROVIDE AND MAINTAIN CRITICAL EQUIPMENT SUCH AS PORTABLE GENERA-
TORS FOR SITES WITHOUT GENERATORS IN ORDER TO MAINTAIN RADIO COMMUNI-
CATIONS DURING CRITICAL EVENTS WHEN POWER IS LOST. THESE GENERATORS

DIVISION OF PURCHASING
CONTRACT NOTICE OF AWARD

TERMS AND CONDITIONS                                              PAGE:  11

MUST BE LOCATED WITHIN THE STATE OF ALABAMA AT ALL TIMES. THE STATE
WILL WORK IN CONJUNCTION WITH THE AWARDED VENDOR IN PREPARING FOR
CRITICAL EVENTS SUCH AS HURRICANES. THE AWARDED VENDOR WILL HAVE
A TECHNICIAN IN THE ALABAMA EMERGENCY MANAGEMENT'S CONTROL CENTER
IN CLANTON, ALABAMA TO WORK TOGETHER WITH OTHER AGENCIES AND
VENDORS, SUCH AS AT&T AND ALABAMA POWER, TO HELP COORDINATE
REPAIRS AND RESTORATION OF SERVICE DURING CRITICAL EVENTS. THIS
SERVICE WILL BE PROVIDED TO THE STATE AT NO COST.

INTERNET DISPATCH:
THE VENDOR MUST BE ABLE TO OFFER A COMPUTER CLIENT THAT ENABLES THE
AGENCY TO MAKE ONE TO ONE AND GROUP DISPATCH CALLS TO ITS SUBSCRIBERS.
THE CLIENT MUST SUPPORT WINDOWS XP AND WINDOWS 2000 OPERATING SYSTEMS
RUNNING ON A PERSONAL COMPUTER WITH HIGH SPEED INTERNET CONNECTION.
IN ADDITION TO ONE TO ONE AND GROUP DISPATCH CALLS, THE PRODUCT MUST
ALSO BE ABLE TO SUPPORT USER DEFINED GROUP CALLS OF UP TO TWENTY (20)
USERS, DISPATCH VOICEMAIL, AND TEXT-TO-SPEECH CAPABILITIES.

WIRELESS PRIORITY SERVICE:
VENDOR MUST BE ABLE TO OFFER WIRELESS PRIORITY SERVICE TO AGENCIES
WITH ACCESS TO THE NEXT AVAILABLE WIRELESS CHANNEL BEFORE THE GENERAL
PUBLIC BY DIALING *272 BEFORE PLACING A CELLULAR CALL TO GET A QUICK
CONNECTION. IN ORDER TO USE THIS SERVICE, THE AGENCY MUST HAVE EACH
SUBSCRIBER THAT WISHES TO USE THIS FEATURE APPROVED BY THE NATIONAL
COMMUNICATIONS SYSTEM.

DETAILED EMERGENCY RESPONSE PLAN:
VENDORS MUST PROVIDE A DETAILED EMERGENCY RESPONSE PLAN WITH THE BID.

!''''EQUIPMENT SPECIFICATIONS''''''''''''

COMMUNICATIONS UNIT:   VENDOR MUST BE ABLE TO PROVIDE THE STATE WITH
UNITS THAT POSSESS CAPABILITY TO HAVE TWO-WAY RADIO GROUP AND PRIVATE
CALLS, TELEPHONE INTERCONNECT, STATUS TEXT MESSAGING, PACKET DATA,
EMERGENCY CALLS, TALK AROUND, AND ALPHA-NUMERIC PAGING. UNITS MUST
HAVE FLEXIBILITY TO CUSTOMIZE FEATURE OPTIONS FOR A PARTICULAR
COMMUNICATION REQUIREMENT. VENDOR MUST BE ABLE TO PROVIDE EQUIPMENT
THAT OFFERS ADVANCED FEATURES TO INCLUDE BUT NOT LIMITED TO MSTG,
EMERGENCY GROUP CALL AND STATUS MESSAGING. MUST BE ABLE TO PROVIDE

DIVISION OF PURCHASING
CONTRACT NOTICE OF AWARD

TERMS AND CONDITIONS                                              PAGE:  12

MIL STANDARD 810 F HANDSETS (MILITARY SPEC). UNITS MUST HAVE THE
ABILITY TO ALLOW THE USER TO MANUALLY OR AUTOMATICALLY LOCK THE
UNIT WITH A CODE TO PREVENT UNAUTHORIZED USE.

REPAIR SERVICE:
ALL WORK IS TO BE DONE BY THE VENDOR OR MANUFACTURER. THE STATE
WILL WORK WITHIN THE SERVICE CYCLE OF THE VENDOR. HOWEVER, WHEN
REPAIR SERVICE IS REQUIRED, A "LOANER" IN GOOD WORKING ORDER WILL
BE PROVIDED AS AN INTERIM REPLACEMENT.  THE "LOANER" MUST HAVE
THE CAPABILITY TO PERFORM SO AS NOT TO RESTRICT ITS USE.
VENDOR IS TO LIST ALL CRITERIA FOR SERVICE AND SERVICE LOCATIONS.

INSTALLATION:  MUST BE PERFORMED BY AUTHORIZED PERSONNEL OF THE VENDOR

WARRANTY:  ALL EQUIPMENT MUST HAVE A 12 MONTH MANUFACTURER'S WARRANTY.
ALL COMPONENTS COVERED BY THE WARRANTY MUST BE DESCRIBED IN DETAIL.
LIST ANY EXTENDED WARRANTIES AND PRICING FOR THE COMMUNICATION DEVICES

NON-WARRANTY SERVICE:  IF A RADIO BECOMES INOPERABLE THROUGH CUSTOMER
MISUSE OR ABUSE, WATER, OR THE WARRANTY HAS EXPIRED, THE STATE WILL BE
RESPONSIBLE FOR REPAIR OR REPLACEMENT.  THE "LOANER" ALSO APPLIES IN
THIS SITUATION.

DISCONTINUED EQUIPMENT:  IF ANY EQUIPMENT IS DISCONTINUED DURING THE
CONTRACT PERIOD, REPLACEMENT EQUIPMENT MUST BE EQUAL TO OR GREATER IN
PERFORMANCE, FEATURES AND FUNCTION, AND AT THE SAME PRICE, TERMS AND
CONDITIONS AS STATED IN THE BID, AS AVAILABLE FROM THE MANUFACTURER.

LOST OR STOLEN EQUIPMENT:  THE VENDOR MUST MAINTAIN A 24 HOUR, 7 DAY
A WEEK VENDOR FOR REPORTING LOST OR STOLEN EQUIPMENT SO THAT SERVICE
MAY BE SHUT OFF FOR THE NUMBERS INVOLVED.  THE STATE WILL NOT BE
RESPONSIBLE FOR ANY USAGE EXPENSES OR OTHER CHARGES AFTER REPORTING
THE EQUIPMENT LOST OR STOLEN.

INSTRUCTIONS AND TRAINING: VENDOR MUST PROVIDE PRINTED INSTRUCTIONS,
IN ENGLISH, ON THE USE OF EQUIPMENT, FEATURES AND SERVICE. WHEN
REQUESTED, THE VENDOR WILL INSTRUCT A GROUP OF USERS ON THE USE OF
THE EQUIPMENT AT NO COST TO THE STATE.

DIVISION OF PURCHASING
CONTRACT NOTICE OF AWARD

CITY OF DOTHAN/GRAY 005798
CONFIDENTIAL

TERMS AND CONDITIONS                                                    PAGE:  13

COVERAGE -- CELL SITE LOCATIONS:
VENDOR MUST HAVE A PERMANENT PHYSICAL CELL SITE, MAINTAINED AND
OPERATED BY THE VENDOR, WITH BACKUP POWER LOCATED IN 100% OF THE
COUNTIES OF THE STATE, AND COVERING 78% OF LAND MASS, AT TIME OF
AWARD. RADIO COVERAGE MUST BE AT -87DBM SIGNAL LEVEL ACROSS THE
STATE. VENDOR MUST SUBMIT A MAP SHOWING ALL CELL SITE LOCATIONS
WITH THE BID.

GENERATORS:
A MINIMUM OF NINETY (90) PERCENT OF CELL SITES IN ALABAMA MUST HAVE
GENERATOR BACKUP WITH AN AUTOMATIC TRANSFER SWITCH AND 100% OF CELL
SITES MUST HAVE BATTERY BACKUP FOR LESS EXTENDED POWER OUTAGES. IN
ADDITION, VENDOR MUST HAVE A MINIMUM OF 7 PORTABLE GENERATORS LOCATED
WITHIN ALABAMA TO USE AS BACKUP DURING CRITICAL EVENTS.

COASTAL COVERAGE:
VENDOR MUST HAVE GENERATORS WITH AN AUTOMATIC TRANSFER SWITCH IN 100%
OF THE CELL SITES LOCATED WITHIN 75 MILES OF THE COAST AT TIME OF BID
(THE ONLY EXCEPTION WILL BE ROOFTOP ANTENNAS. THESE MUST HAVE ACCESS
TO GENERATORS.).

EMERGENCY CELL SITE ON WHEELS AVAILABILITY:
VENDOR MUST HAVE A MINIMUM OF TWO (2) CELL SITES ON WHEELS (COW)
PERMANENTLY LOCATED WITHIN THE STATE FOR EMERGENCY RESPONSE.

DISASTER EQUIPMENT:
VENDOR MUST HAVE A MINIMUM OF 1,000 RADIOS AVAILABLE FOR DISASTERS/
CRITICAL EVENTS THAT CAN BE DELIVERED TO FIRST RESPONSE AGENCIES
WITHIN 24 HOURS OF REQUEST.

**********CUSTOMER SERVICE MINIMUM REQUIREMENTS*************

CONVERSION OF EXISTING SERVICE:
THERE IS TO BE NO CHARGE FOR CONVERSION OF EXISTING EQUIPMENT FROM
THE EXISTING CONTRACT SERVICE PROVIDER TO THE NEW CONTRACT SERVICE
PROVIDER'S SYSTEM DURING THE LIFE OF THE CONTRACT SHOULD THE AGENCY

                        DIVISION OF PURCHASING
                        CONTRACT NOTICE OF AWARD

                TERMS AND CONDITIONS                               PAGE:  14

CONVERT. IF THE AWARDED VENDOR'S SERVICE TECHNOLOGY IS NOT COMPATIBLE
WITH EXISTING EQUIPMENT, THE VENDOR MUST REPLACE, AT NO COST, SAID
EQUIPMENT WITH EQUAL EQUIPMENT WHICH IS COMPATIBLE WITH THE NEW
VENDOR'S SERVICE TECHNOLOGY. THIS INCLUDES ALL HANDSETS (INCLUDING
FLIP MODELS), CAR KITS, PDA'S, AND AIR CARDS. CONTROL STATIONS AND
MOBILE UNITS MUST BE REPROGRAMMED OR REPLACED AT NO COST.
THIS APPLIES TO ALL USERS OF THIS CONTRACT--STATE, LOCAL, SCHOOLS.

THE NEW SERVICE PROVIDER MUST ALSO PROVIDE WIRELESS LOCAL NUMBER
PORTABILITY (WLNP) TO THOSE CONVERTING. THE AWARDED VENDORS WILL WORK
WITH THESE USERS TO HAVE THESE NUMBERS PORTED IN A SMOOTH MANNER,
WITHOUT DISRUPTION OF SERVICE. THIS WILL BE ACCOMPLISHED AT NO COST
TO THE CONTRACT USERS.

IF THE CURRENT PROVIDER IS THE SUCCESSFUL AWARDED VENDOR, HE MUST
BE ABLE TO REPLACE ANY CURRENT RADIOS THAT ARE A MINIMUM OF TWO YEARS
OLD, AT TIME OF CONTRACT AWARD, AND EXCLUDING PDA'S AND BLACKBERRIES,
WITH ONE OF THE FREE MODELS THAT ARE BID. THE USER WILL CHOOSE WHICH
OF THE FREE MODELS HE/SHE WISHES TO REPLACE THEIR OLD RADIO WITH.

USERS WILL NOT BE ALLOWED TO USE CELL PHONE PACKAGES WITHOUT
A RADIO PACKAGE. THIS CONTRACT IS NOT TO BE USED FOR CELL
PHONE SERVICE ONLY. THE CELL PHONE MINUTES ABOVE MUST BE
INCORPORATED INTO A RADIO/CELL/PAGING SERVICE PACKAGE.

ALL NEW SERVICE ACTIVATIONS MUST HAVE THE TEXT FEATURE BLOCKED
UPON ISSUANCE TO THE AGENCY UNLESS SERVICE PLAN ORDERED INCLUDES
TEXT FEATURE.

MANDATORY SERVICE FEATURES:
ALL SERVICE PLANS THAT INCLUDE CELLULAR SERVICE MUST INCLUDE AT NO
CHARGE TO THE STATE, AT A MINIMUM:

            *  INCOMING PAGING SERVICE ACCESS
            *  CALL FORWARDING
            *  CALL WAITING
            *  CALLING LINE IDENTIFICATION (CALLER ID)
            *  VOICEMAIL SERVICE

                        DIVISION OF PURCHASING
                        CONTRACT NOTICE OF AWARD

                TERMS AND CONDITIONS                               PAGE:  15

ALL RADIO SERVICE PLANS MUST INCLUDE AT NO CHARGE TO THE STATE,
AT A MINIMUM:

            *  CROSSFLEET

POOLING RADIO MINUTES:  RADIO MINUTES ARE POOLED FOR USERS WITH LIKE
     SERVICE PLANS WITHIN THE SAME MASTER ACCOUNT PLAN.

POOLING CELLULAR MINUTES:  CELLULAR MINUTES ARE POOLED FOR USERS WITH
     LIKE SERVICE PLANS UNDER THE SAME MASTER ACCOUNT

CITY OF DOTHAN/GRAY 005799
CONFIDENTIAL

NIGHTS/WEEKENDS:  NIGHTS ARE DEFINED AS 7:00PM - 7:00AM MONDAY THRU
FRIDAY; WEEKENDS ARE DEFINED AS 7:00PM FRIDAY THRU
7:00AM MONDAY

PERMIT STATE CALLING CARD USAGE:
THE VENDOR'S NETWORK EQUIPMENT MUST IN NO WAY IMPEDE OR PREVENT STATE
OFFICIALS FROM USING THEIR STATE ISSUED CALLING CARDS FOR LONG DIS-
TANCE CALLS.

SUSPECTED FRAUD:
IN THE EVENT OF SUSPECTED FRAUD OR CLONING, THE VENDOR MUST NOTIFY
THE AGENCY/CUSTOMER PRIOR TO DISCONNECTING THE SERVICE.

BILLING FORMAT:
THE STATE REQUIRES THAT ALL BILLS SENT TO A SINGLE AGENCY BILLING BE
SENT WITH A SINGLE INVOICE SHOWING THE TOTAL AMOUNT BILLED FOR ALL
RADIO/CELL DEVICES AND SERVICES BEING BILLED TO THAT AGENCY ADDRESS,
ALONG WITH DETAILED CALL REPORTS BROKEN DOWN BY EACH RADIO ID OR PHONE
NUMBER, SHOWING ALL CALLS AND SERVICES BEING BILLED ON THE RADIO/
CELLULAR OR DEVICE NUMBER, SHOWING ALL CALLS AND SERVICES BEING BILLED
ON THE MONTHLY INVOICE, SHOWING THE DATE, TIME, NUMBERS CALLED OR RE-
CEIVED, AND THE DURATION OF THE CALLS.  AGENCIES MAY REQUEST THAT DE-
TAILED BILLING NOT BE PROVIDED FOR ONE OR MORE DEVICE NUMBERS. ALL
BILLING, INCLUDING ELECTRONIC BILLING, IS TO BE PROVIDED AT NO COST.
ALL BILLING IS TO BE IN ARREARS.

NOTICE:  THE STATE OF ALABAMA DOES NOT PAY FEDERAL EXCISE TAX, E-911
SERVICE CHARGE, OR COUNTY OR LOCAL SALES TAX.  THE STATE IS RESPONSI-

DIVISION OF PURCHASING
CONTRACT NOTICE OF AWARD

TERMS AND CONDITIONS                                    PAGE:  16

BLE FOR THE SIX (6) PERCENT CELLULAR USAGE TAX FOR LOCAL CALLS.

THE STATE DOES NOT PAY FOR DETAILED BILLING, NON-DETAILED BILLING,
ELECTRONIC BILLING,ACTIVATION OR SET-UP FEES,RECOVERY FEES,SURCHARGES,
THE FEDERAL UNIVERSAL SERVICE FEE, THE ADMINISTRATIVE ROAMING FEE, OR
ANY EARLY TERMINATION FEES. MINUTE OVERAGES AND OUT OF REGION
ROAMING CHARGES MUST BE STATED IN THE CATALOG, OR THE STATE WILL
NOT PAY.

THIRD PARTY SERVICES: THE VENDOR MAY INCLUDE THIRD PARTY SERVICES,
SUCH AS TELENAV AND COMET TRACKER, IN THE CATALOG. THE VENDOR WILL
CHARGE THE STATE FOR THESE SERVICES THROUGH THE REGULAR MONTHLY
BILLING PROCESS AND WILL BE RESPONSIBLE FOR PAYING THE THIRD PARTY
VENDORS. THE STATE IS AWARE THAT SERVICE PROVIDERS HAVE NO CONTROL
OVER SET UP/ACTIVATION FEES FOR THESE THIRD PARTY SERVICES AND WILL
PAY THOSE FEES.

NOTICE: UNDER STATE PURCHASING LAWS, AGENCIES HAVE THE RIGHT TO CANCEL
SERVICE WITH A THIRTY DAY WRITTEN NOTICE (THIS WOULD BE A PURCHASE
ORDER CHANGE), WITH NO EARLY TERMINATION FEES TO BE APPLIED.

NO OTHER NEW CHARGES OR FEES WILL BE ALLOWED ONCE A CONTRACT IS IN
PLACE, EXCEPT THOSE THAT ARE FEDERALLY MANDATED THAT THE USER IS
REQUIRED TO PAY.

USAGE REPORTS:
THE VENDOR MAY BE ASKED TO PROVIDE TO THE STATE OR RESPECTIVE AGENCY
USAGE REPORTS FOR THE PREVIOUS SIX MONTHS BILLING CYCLE.  THIS REPORT
WILL INCLUDE THE FOLLOWING DATA:  DATE AND TIME, NUMBER CALLED,
DURATION OF CALL, ASSOCIATED COST PER CALL, AND THE TOTAL COST. THIS
INFORMATION MUST BE SORTED BY STATE AGENCY AND RADIO/CELL NUMBER FOR
ALL HANDSETS AND DATA DEVICES BEING INVOICED TO THE RESPECTIVE
AGENCY. THIS REPORT WILL BE PROVIDED AT NO COST TO THE STATE.

INVENTORY REPORTS:
EACH JANUARY, THE VENDOR WILL PROVIDE AN INVENTORY LISTING FOR THE
LATEST PERIOD THAT IDENTIFIES EACH COMMUNICATION DEVICE ASSIGNED TO
THE STATE.  THE REPORT MUST BE SORTED BY STATE AGENCY AND WILL INCLUDE

DIVISION OF PURCHASING
CONTRACT NOTICE OF AWARD

TERMS AND CONDITIONS                                    PAGE:  17

THE FOLLOWING INFORMATION:

     •     EACH COMMUNICATION DEVICE NUMBER
     •     EACH RADIO ID NUMBER
     •     TOTAL NUMBER OF RADIOS/DEVICES PER STATE AGENCY
     •     TOTAL MINUTES OF USAGE PER STATE AGENCY
     •     GRAND TOTAL OF RADIOS/DEVICES
     •     GRAND TOTAL OF MINUTES OF USAGE

THIS REPORT WILL BE PROVIDED AT NO COST TO THE STATE.

PROTECTION AGAINST THEFT OF SERVICE:
VENDORS ARE TO DESCRIBE ANY FEATURES OR SERVICES USED TO PROTECT
AGAINST THEFT OF SERVICES SUCH AS DUPLICATION OF IDENTIFICATION NUM-
BERS TRANSMITTED BY WIRELESS EQUIPMENT OR THROUGH DUPLICATION OF FIRM-
WARE EQUIPMENT IDENTIFICATION NUMBERS FROM STOLEN EQUIPMENT, AND OTHER
UNAUTHORIZED USE.

AREA CODE BLOCKING:
VENDORS MUST DESCRIBE ANY CAPABILITIES THEY HAVE TO BLOCK OR PREVENT
CALLS TO 900 AND OTHER HIGH FRAUD AREA CODES.  ALSO DESCRIBE ANY OTHER
FEATURES TO RESTRICT CALLING SUCH AS CALLS TO LOCAL NUMBERS AND 1-800
NUMBERS.

CITY OF DOTHAN/GRAY 005800
CONFIDENTIAL

LOCAL OFFICE:
DUE TO THE HIGH VOLUME OF USAGE OF THIS CONTRACT, THE STATE WILL
REQUIRE THE VENDOR TO BE LOCATED IN MONTGOMERY, ALABAMA WITH AN
OFFICE SOLELY DEDICATED TO SERVE ONLY CUSTOMERS OF THIS CONTRACT, WITH
A SUFFICIENT NUMBER OF EMPLOYEES WHO ARE HIGHLY TRAINED AND CAN GIVE
THE STATE FAST AND EFFICIENT CUSTOMER SERVICE, AND WILL BE
SERVICED IN RETAIL CUSTOMER SPACE.

OVERNIGHT DELIVERY:
VENDOR MUST PROVIDE OVERNIGHT DELIVERY OF EQUIPMENT, AT NO EXTRA COST
TO THE STATE. IN ADDITION, POSTAGE ON ANY ITEMS RETURNED BY THE STATE
MUST BE PAID BY THE VENDOR.

RATE PLAN ANALYSIS:
THE VENDOR MUST PERFORM A RATE PLAN ANALYSIS AT MINIMUM TWICE PER YEAR

DIVISION OF PURCHASING
CONTRACT NOTICE OF AWARD

TERMS AND CONDITIONS                                    PAGE:  18

FOR EACH AGENCY. THE RESULTING REPORT MUST INCLUDE COST CONTROL RECOM-
MENDATIONS. THIS REPORT/SERVICE WILL BE PROVIDED AT NO COST TO THE
STATE.

ADDING/DELETING SERVICE:
EACH AGENCY WILL BE ALLOWED TO ADD OR DELETE SERVICE PACKAGES DURING
A FISCAL YEAR TO ACHIEVE OPTIMUM SAVINGS OR PERFORMANCE AT NO ADDI-
TIONAL CHARGE. THESE CHANGES WILL BE HANDLED BY THE DIVISION OF
PURCHASING THROUGH PURCHASE ORDER CHANGES.

FREE LOANERS:
FOR SPECIAL EVENTS, VENDOR MUST PROVIDE UP TO 50 RADIOS WITH SERVICES
FOR A LIMITED PERIOD OF TIME(FOR NO LONGER THAN 14 BUSINESS DAYS) AT
NO COST TO THE STATE. EXAMPLE:  EXTRA RADIOS FOR THE COLISEUM
EMPLOYEES DURING THE STATE FAIR OR RODEO, STATE LEGISLATORS DURING
LEGISLATIVE SESSIONS, ETC.

FREIGHT TERMS:
ALL ORDERS SHALL BE F.O.B. DESTINATION TO ANY POINT IN ALABAMA. ITEMS
WILL BE DELIVERED TO THE OFFICE OF THE ORDERING AGENCY LISTED ON THE
PURCHASE ORDER WITH ALL FREIGHT CHARGES PAID BY THE VENDOR.
DOCK DELIVERIES ARE NOT ACCEPTABLE.

ASSIGNMENT OF CONTRACT:
TO ASSIGN, SUBLET OR TRANSFER ANY CONTRACT RESULTING FROM THIS
SOLICITATION, THE VENDOR'S WRITTEN REQUEST MUST BE APPROVED BY THE
STATE PURCHASING DIRECTOR.

**********************************  E-RATE  ***************************

THE SCHOOLS AND LIBRARIES PROGRAM OF THE UNIVERSAL SERVICE FUND
(E-RATE) MAKES DISCOUNTS AVAILABLE TO ELIGIBLE SCHOOLS AND LIBRARIES

DIVISION OF PURCHASING
CONTRACT NOTICE OF AWARD

TERMS AND CONDITIONS                                    PAGE:  19

FOR TELECOMMUNICATION SERVICES, INTERNET ACCESS, AND INTERNAL
CONNECTIONS. THE PROGRAM IS INTENDED TO ENSURE THAT SCHOOLS AND
LIBRARIES HAVE ACCESS TO AFFORDABLE TELECOMMUNICATIONS AND INFORMATION
SERVICES. THE SERVICES OF THIS RESULTING CONTRACT INCLUDE ELIGIBLE
E-RATE SERVICES THAT E-RATE ELIGIBLE ENTITIES INCLUDING PUBLIC K-12
SCHOOLS AND LIBRARIES OF ALABAMA MAY CHOOSE TO PURCHASE.

DETAILED INFORMATION ABOUT THE E-RATE PROGRAM CAN BE FOUND AT
HTTP://WWW.USAC.ORG/SL/.  IT IS A REQUIREMENT THAT THE AWARDED VENDOR
WILL PROVIDE A SERVICE PROVIDER IDENTIFICATION NUMBER (SPIN) AND
MAINTAIN ELIGIBLE STATUS WITH THE UNIVERSAL SERVICE ADMINISTRATIVE
COMPANY (USAC) AND THE FEDERAL COMMUNICATIONS COMMISSION (FCC) IN
ORDER TO PARTICIPATE IN THE E-RATE PROGRAM.  IN THE EVENT THAT AN
E-RATE ELIGIBLE APPLICANT APPLIES FOR E-RATE SERVICES AND IS
DENIED FUNDING BY USAC OR FCC THE VENDOR MUST AGREE THAT THE APPLICANT
IS TO NOT BE HELD LIABLE FOR THE PURCHASE OF THE SERVICES THAT WERE
TO BE ESTABLISHED AS A RESULT OF THE E-RATE APPLICATION.

CONTRACT PERIOD:
ESTABLISH A 12 MONTH CONTRACT WITH AN OPTION TO EXTEND FOR A SECOND,
THIRD, FOURTH, AND FIFTH 12 MONTH PERIOD WITH THE SAME PRICING, TERMS
AND CONDITIONS. THE SECOND, THIRD, FOURTH, OR FIFTH 12 MONTH PERIOD,
IF AGREED BY BOTH PARTIES, WOULD BEGIN THE DAY AFTER THE FIRST,
SECOND, THIRD, OR FOURTH 12 MONTH PERIOD EXPIRES. ANY SUCCESSIVE
EXTENSION MUST HAVE WRITTEN APPROVAL OF BOTH THE STATE AND VENDOR NO
LATER THAN 30 DAYS PRIOR TO EXPIRATION OF THE PREVIOUS 12 MONTH
PERIOD.

NON-APPROPRIATION OF FUNDS:
CONTINUATION OF ANY AGREEMENT BETWEEN THE STATE AND A BIDDER BEYOND A
FISCAL YEAR IS CONTINGENT UPON CONTINUED LEGISLATIVE APPROPRIATION OF
FUNDS FOR THE PURPOSE OF THIS BID AND ANY RESULTING AGREEMENT. NON-
AVAILABILITY OF FUNDS AT ANY TIME SHALL CAUSE ANY AGREEMENT TO BECOME
VOID AND UNENFORCEABLE AND NO LIQUIDATED DAMAGES SHALL ACCRUE TO THE
STATE AS A RESULT. THE STATE WILL NOT INCUR LIABILITY BEYOND THE

DIVISION OF PURCHASING

CITY OF DOTHAN/GRAY 005801
CONFIDENTIAL

CONTRACT NOTICE OF AWARD

TERMS AND CONDITIONS                                          PAGE: 20

PAYMENT OF ACCRUED AGREEMENT PAYMENT.

PRORATION:
ANY PROVISION OF A CONTRACT RESULTING FROM THIS BID TO THE CONTRARY
NOTWITHSTANDING, IN THE EVENT OF FAILURE OF THE STATE TO MAKE PAYMENT
HEREUNDER AS A RESULT OF PARTIAL UNAVAILABILITY, AT THE TIME SUCH
PAYMENT IS DUE, OF SUCH SUFFICIENT REVENUES OF THE STATE TO MAKE SUCH
PAYMENT (PRORATION OF APPROPRIATED FUNDS FOR THE STATE HAVING BEEN
DECLARED BY THE GOVERNOR PURSUANT TO SECTION 41-4-90 OF THE CODE OF
ALABAMA 1975), THE CONTRACTOR SHALL HAVE THE OPTION, IN ADDITION TO
THE OTHER REMEDIES OF THE CONTRACT, OF RENEGOTIATING THE CONTRACT
(EXTENDING OR CHANGING PAYMENT TERMS OR AMOUNTS) OR TERMINATING THE
CONTRACT.

MATERIALS, SUPPLIES OR EQUIPMENT:
ALL MATERIALS, SUPPLIES OR EQUIPMENT BEING BID AND DELIVERED TO THE
STATE SHALL BE NEW, UNUSED, OF RECENT MANUFACTURE, FIRST CLASS IN
EVERY RESPECT, AND SUITABLE FOR THEIR INTENDED PURPOSE.

PRICE DECREASES:
THE BUYER SHALL BE NOTIFIED IMMEDIATELY IF THERE ARE ANY PRICE
DECREASES AFFECTING A STATE TERM CONTRACT.  THE STATE SHALL RECEIVE
THE BENEFIT OF THE DECREASE AS SOON AS POSSIBLE IN ACCORDANCE WITH THE
WRITTEN NOTIFICATION FROM THE CONTRACT VENDOR.

BIDDABLE SITUATION:
BIDS MAY BE SOLICITED FOR ANY PRODUCT INCLUDED IN THIS CONTRACT WHERE
AN IMMEDIATE/EMERGENCY NEED EXISTS, INCLUDING LARGE QUANTITIES.
THE DECISION OF THE PURCHASING DIRECTOR AS TO WHAT CONSTITUTES A
BIDDABLE SITUATION SHALL BE FINAL AND SHALL NOT BE CONSTRUED AS A
BREACH OF CONTRACT.

DIVISION OF PURCHASING
CONTRACT NOTICE OF AWARD

TERMS AND CONDITIONS                                          PAGE: 21

PROMOTIONAL OFFERINGS CONSISTING OF CONTRACT ITEMS WILL BE CONSIDERED
AND ARE OFFERED AT A REDUCED PRICE FOR THE PROMOTIONAL PERIOD.  A
PROMOTIONAL OFFERING OF ITEMS NOT ON CONTRACT WILL BE CONSIDERED IF
THE PRICE IS EQUAL TO OR LESS THAN THE SUM OF THE CONTRACT PRICES.
THE STATE WILL NOT FILE FOR REBATES; THE VENDOR MUST OFFER AND BILL AT
THE NET DISCOUNTED PRICE OF THE APPLICABLE OFFERING.  VOLUME DISCOUNTS
WILL BE ALLOWED WITH THE PROVISION THAT ANY PURCHASING ENTITY THAT
PURCHASES THE EQUIVALENT VOLUME BE OFFERED THE SAME RATE OF DISCOUNT.
NOTE:  THIS APPLIES TO EQUIPMENT AND/OR ACCESSORIES ONLY AND DOES
NOT INCLUDE SERVICE PLANS.
****************************************************************

THE SUCCESSFUL VENDOR WILL BE RESPONSIBLE FOR WORKING WITH EACH AGENCY
TO DETERMINE WHICH SERVICE PACKAGE WILL BE THE MOST BENEFICIAL.
SERVICE REQUIREMENTS MAY NEED TO BE RE-EVALUATED PERIODICALLY.

EACH AGENCY WILL BE ALLOWED TO ADD/DELETE SERVICE PACKAGES DURING A
FISCAL YEAR TO ACHIEVE OPTIMUM SAVINGS/PERFORMANCE. THESE CHANGES WILL
BE HANDLED BY THE DIVISION OF PURCHASING THROUGH PURCHASE ORDER
CHANGES.

THE ABOVE WILL BE OFFERED TO THE STATE AT NO CHARGE.

DIVISION OF PURCHASING
CONTRACT NOTICE OF AWARD

CONTRACT VENDORS                                             PAGE:  22

| CONTRACT NUMBER | VENDOR NUMBER NAME AND ADDRESS | CONTACT PERSON PHONE NUMBERS/FAX | TERMS AND DELIVERY |
|---|---|---|---|
| 4011729 | 582077864-01 SOUTHERN LINC WIRELESS 5415 ATLANTA HWY MONTGOMERY   AL 36109 | KAY MCHENRY 334-832-3925 000000000000000334-832-3929 | NET ASAP |

DIVISION OF PURCHASING
CONTRACT NOTICE OF AWARD

COMMODITY LISTING                                           PAGE:  23

| CONTRACT NUMBER/LINE # | COMMODITY NUMBER COMMODITY DESCRIPTION | UNIT PRICE MEASURE | VENDOR # NAME | TERMS |
|---|---|---|---|---|
| 4011729   00001 | 725-74-083797 | .00 EA | 582077864-01 SOUTHERN LINC WIRELESS | NET |

AIRTIME, TWO-WAY, CELLULAR, AND PAGING
IN ONE DEVICE IN ACCORDANCE WITH STATE-
WIDE CONTRACT T129
NOTE:  THE STATE DOES NOT PAY FEDERAL
EXCISE TAX, E-911 TAX, LOCAL TAX OR
FEDERAL UNIVERSAL SERVICE FUND

PRIVATE AND GROUP 100 PLAN:

CITY OF DOTHAN/GRAY 005802
CONFIDENTIAL

```
                      100 PRIVATE/GROUP PIT MINUTES (WILL
                      POOL WITH OTHER USERS ON SAME PLAN
                      UNDER SAME MASTER ACCOUNT)
                      ADDITIONAL PIT MINUTES @ $0.10/MINUTE
                      ANYTIME CELL MINUTES: 10
                      (WILL POOL WITH OTHER USERS ON SAME
                       PLAN UNDER SAME MASTER ACCOUNT)
                      ADDITIONAL CELL MINUTES @ $0.40/MINUTE
                      NATIONWIDE LONG DISTANCE INCLUDED
                      INCOMING TEXT MESSAGING:  UNLIMITED
                      OUTGOING TEXT MESSAGING:  NONE
                      VOICE MAIL INCLUDED
                      CALLER ID INCLUDED
                      PLAN # GS100
                      MONTHLY RATE:       $15.00
                      DIRECTORY ASSISTANCE:  $ 1.29 PER CALL
                      ALABAMA MOBILE COMM. SERVICE TAX:  6%


4011729    00002     725-78-083798                           .00 % 582077864-01          NET
                                                         LOT       SOUTHERN LINC WIRELESS

                      AIRTIME, TWO-WAY, CELLULAR, AND PAGING
                      IN ONE DEVICE IN ACCORDANCE WITH STATE-
                      WIDE CONTRACT T129
                      NOTE:  THE STATE DOES NOT PAY FEDERAL
                      EXCISE TAX, E-911 TAX, LOCAL TAX OR

                                 DIVISION OF PURCHASING
                              CONTRACT NOTICE OF AWARD

                                  COMMODITY LISTING                            PAGE:  24

       CONTRACT          COMMODITY NUMBER             UNIT PRICE   VENDOR #            TERMS
    NUMBER/LINE #        COMMODITY DESCRIPTION        MEASURE      NAME

                      FEDERAL UNIVERSAL SERVICE FUND

                      PRIVATE AND GROUP UNLIMITED PLAN:
                      UNLIMITED PRIVATE/GROUP PIT MINUTES
                      (WILL POOL WITH OTHER USERS ON SAME PLAN
                      UNDER SAME MASTER ACCOUNT)
                      ADDITIONAL PIT MINUTES:  N/A
                      ANYTIME CELL MINUTES: 10
                      (WILL POOL WITH OTHER USERS ON SAME
                       PLAN UNDER SAME MASTER ACCOUNT)
                      ADDITIONAL CELL MINUTES @ $0.40/MINUTE
                      NATIONWIDE LONG DISTANCE INCLUDED
                      INCOMING TEXT MESSAGING:  UNLIMITED
                      OUTGOING TEXT MESSAGING:  NONE
                      VOICE MAIL INCLUDED
                      CALLER ID INCLUDED
                      PLAN # GSPOU
                      MONTHLY RATE:       $20.00
                      DIRECTORY ASSISTANCE:  $ 1.29 PER CALL
                      ALABAMA MOBILE COMM. SERVICE TAX:  6%


4011729    00003     725-78-083799                           .00 % 582077864-01          NET
                                                         LOT       SOUTHERN LINC WIRELESS

                      AIRTIME, TWO-WAY, CELLULAR, AND PAGING
                      IN ONE DEVICE IN ACCORDANCE WITH STATE-
                      WIDE CONTRACT T129
                      NOTE:  THE STATE DOES NOT PAY FEDERAL
                      EXCISE TAX, E-911 TAX, LOCAL TAX OR
                      FEDERAL UNIVERSAL SERVICE FUND

                      PIT, CELLULAR 300 AND TEXT PLAN:
                      UNLIMITED PRIVATE/GROUP PIT MINUTES
                      300 MINUTES ANYTIME CELLULAR (WILL POOL
                      WITH OTHER USERS ON SAME PLAN UNDER
                      SAME MASTER ACCOUNT)

                                 DIVISION OF PURCHASING
                              CONTRACT NOTICE OF AWARD

                                  COMMODITY LISTING                            PAGE:  25

       CONTRACT          COMMODITY NUMBER             UNIT PRICE   VENDOR #            TERMS
    NUMBER/LINE #        COMMODITY DESCRIPTION        MEASURE      NAME

                      INCLUDES UNLIMITED NIGHTS & WEEKENDS
                      INCLUDES NATIONWIDE LONG DISTANCE,
                      UNLIMITED INCOMING TEXT MESSAGING,
                      UNLIMITED OUTGOING TEXT MESSAGING
                      INCLUDES VOICE MAIL
                      INCLUDES CALLER ID
                      INCLUDES CALL FORWARD, CALL WAITING,
                      CALL HOLD, 3-WAY CALLING
                      ADDITIONAL CELL MINUTES @ $0.40/MINUTE

                      PLAN # GSC3T
                      MONTHLY RATE:       $27.00
                      DIRECTORY ASSISTANCE:  $ 1.29 PER CALL
                      ALABAMA MOBILE COMM. SERVICE TAX:  6%


4011729    00004     725-78-083800                           .00 % 582077864-01          NET
                                                         LOT       SOUTHERN LINC WIRELESS

                      AIRTIME, TWO-WAY, CELLULAR, AND PAGING
                      IN ONE DEVICE IN ACCORDANCE WITH STATE-
                      WIDE CONTRACT T129
                      NOTE:  THE STATE DOES NOT PAY FEDERAL
                      EXCISE TAX, E-911 TAX, LOCAL TAX OR
                      FEDERAL UNIVERSAL SERVICE FUND
```

CITY OF DOTHAN/GRAY 005803
CONFIDENTIAL

PTT, UNL CELLULAR AND UNL TEXT PLAN:
UNLIMITED PRIVATE/GROUP PTT MINUTES
UNLIMITED ANYTIME CELLULAR MINUTES (WILL
POOL WITH OTHER USERS ON SAME PLAN UNDER
SAME MASTER ACCOUNT)
INCLUDES UNLIMITED NIGHTS & WEEKENDS
INCLUDES NATIONWIDE LONG DISTANCE,
UNLIMITED INCOMING TEXT MESSAGING,
UNLIMITED OUTGOING TEXT MESSAGING
INCLUDES VOICE MAIL
INCLUDES CALLER ID

DIVISION OF PURCHASING
CONTRACT NOTICE OF AWARD

COMMODITY LISTING                                    PAGE:  26

| CONTRACT NUMBER/LINE # | COMMODITY NUMBER COMMODITY DESCRIPTION | UNIT PRICE MEASURE | VENDOR # NAME | TERMS |
|---|---|---|---|---|
| | INCLUDES CALL FORWARD, CALL WAITING, CALL HOLD, 3-WAY CALLING ADDITIONAL CELL MINUTES:  N/A | | | |
| | PLAN # QSCIU MONTHLY RATE:        $40.00 DIRECTORY ASSISTANCE: $ 1.29 PER CALLER ALABAMA MOBILE COMM. SERVICE TAX:  6% | | | |
| 4011729   00005 | 725-78-075276 AIRTIME, TWO-WAY, CELLULAR AND PAGING IN ONE IN ACCORDANCE WITH STATEWIDE CONTRACT T129 NOTE: THE STATE DOES NOT PAY FEDERAL EXCISE TAX, E-911 TAX, LOCAL TAX OR FEDERAL UNIVERSAL SERVICE FUND | .00 % 592077864-01 LOT     SOUTHERN LINC WIRELESS | | NET |
| | UNLIMITED DATA FOR PDA AND UNLIMITED INCOMING/OUTGOING TEXT MESSAGING ADDED TO VOICE PLAN | | | |
| | PLAN # GSUDT | | | |
| | MONTHLY RATE:   $20.00 ALABAMA STATE MOBILE COMM. TAX:  6% | | | |
| 4011729   00006 | 725-78-075277 AIRTIME, TWO-WAY, CELLULAR AND PAGING IN ONE IN ACCORDANCE WITH STATEWIDE CONTRACT T129 NOTE: THE STATE DOES NOT PAY FEDERAL | .00 % 592077864-01 LOT     SOUTHERN LINC WIRELESS | | NET |

DIVISION OF PURCHASING
CONTRACT NOTICE OF AWARD

COMMODITY LISTING                                    PAGE:  27

| CONTRACT NUMBER/LINE # | COMMODITY NUMBER COMMODITY DESCRIPTION | UNIT PRICE MEASURE | VENDOR # NAME | TERMS |
|---|---|---|---|---|
| | EXCISE TAX, E-911 TAX, LOCAL TAX OR FEDERAL UNIVERSAL SERVICE FUND | | | |
| | 200 OUTGOING TEXT MESSAGES | | | |
| | PLAN # G200TM | | | |
| | MONTHLY RATE: $4.00 ADDITIONAL TEXT MESSAGES @ $0.15/MESSAGE STATE MOBILE COMMUNICATIONS TAX:  6% | | | |
| 4011729   00007 | 725-78-075278 AIRTIME, TWO-WAY, CELLULAR AND PAGING IN ONE IN ACCORDANCE WITH STATEWIDE CONTRACT T129 NOTE: THE STATE DOES NOT PAY FEDERAL EXCISE TAX, E-911 TAX, LOCAL TAX OR FEDERAL UNIVERSAL SERVICE FUND | .00 % 592077864-01 LOT     SOUTHERN LINC WIRELESS | | NET |
| | ***THIS LINE IS TO BE USED FOR OTHER*** SERVICE PACKAGES OFFERED IN VENDOR'S CATALOG | | | |
| | DIRECTORY ASSISTANCE (CELLULAR): $1.29 ALABAMA MOBILE COMM.SERVICE TAX:  6% | | | |
| 4011729   00008 | 725-78-075270 EQUIPMENT AND ACCESSORIES FOR TWO-WAY, CELLULAR AND PAGING IN ONE DEVICE FOR STATEWIDE CONTRACT T129 AS FOLLOWS: | .00 % 592077864-01 LOT     SOUTHERN LINC WIRELESS | | NET |

DIVISION OF PURCHASING
CONTRACT NOTICE OF AWARD

COMMODITY LISTING                                    PAGE:  28

CITY OF DOTHAN/GRAY 005804
CONFIDENTIAL

| CONTRACT NUMBER/LINE # | COMMODITY NUMBER COMMODITY DESCRIPTION | UNIT PRICE MEASURE | VENDOR # NAME | TERMS |
|---|---|---|---|---|

****SEE VENDOR'S CATALOG FOR ********
EQUIPMENT MODELS AND PRICES

NOTE:   THIS LINE NOT TO BE USED FOR
PDA'S OR AIR CARDS

4011729   00009   725-78-075271                     .00 & 592077864-01        NET
                                              LOT       SOUTHERN LINC WIRELESS

EQUIPMENT AND ACCESSORIES FOR TWO-WAY,
CELLULAR AND PAGING IN ONE DEVICE FOR
STATEWIDE CONTRACT T129 AS FOLLOWS:

PDA DEVICE AND ACCESSORIES

****SEE VENDOR'S CATALOG FOR MODEL****
NUMBERS AND PRICES

DIVISION OF PURCHASING
CONTRACT NOTICE OF AWARD

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

IF YOU NEED ASSISTANCE CONCERNING THIS CONTRACT, PLEASE CONTACT THE

BUYER LISTED ON THE COVER PAGE.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

THIS CONTRACT CONTAINS  29 PAGES.

CITY OF DOTHAN/GRAY 005805
CONFIDENTIAL

Alabama Department of Finance-Purchasing Division



Finance Home | Director's Office | News | Survey/Comments | Statements/Policies | Contact Finance Dept

**ALABAMA**
**Department of Finance**
**Division of Purchasing**

| Purchasing Home | Active Contracts | Open ITBs | ITB Responses | Awarded Bids | Vendor Registration | Rules & Regs | Purchasing Links | Login |

## List of Active Statewide Contracts

Contracts are updated frequently with changes, please check "Contract Change" column regularly. Also "refresh" or "reload" your screen when viewing contracts in order to see "new" copy.

- Please read the instructions - How to search for a contract, print a contract, and download a contract.
- Note: Contracts must be printed using "Landscape" page setup in order for all information to print out.
- T-NBR - Click on T-NBR (i.e. T119) showing in this column to view entire contract.
- Contract Change - Date showing in this column indicates the date a change was made to the contract and a new copy of the contract was placed on the Internet. Click on date to view description of change made.
- Vendor Web Sites? - If "YES" appears in this column - click to view links to contract vendor's web site. See Note.
- Although the Alabama Correctional Industries does not have an active statewide contract with the Division of Purchasing, per State Law AR - 286 (Prison Use Law, 1976), all government agencies are encouraged to purchase products and services from the Alabama Correctional Industries.
- Disclaimer

| T00A | T001 | | T004 | T006 | T009 | T010 | T011 | T013 | ''' | ''' | T018 | T019 | T020 | T022 |
|------|------|------|------|------|------|------|------|------|------|------|------|------|------|------|
| T026 | ''' | T027 | ''' | ''' | T032 | | T034 | ''' | ''' | T037 | T038 | T039 | ''' | ''' |
| T043 | T045 | ''' | ''' | ''' | T053 | T055 | ''' | T100 | T102 | T103 | T104 | T104A | T104U | T105 |
| T106 | T108 | T110 | T114 | T116 | ''' | T118 | T120A | T123 | T129 | T133 | ''' | T138 | T138 | ''' |
| ''' | T146 | ''' | T152 | T153 | T164 | T154A | T156 | T168 | T163 | ''' | ''' | T171 | T180 | T181 |
| T190 | T191 | T191A | T191H | T191L | T191R | ''' | T193 | T193A | T195 | T195A | T199 | T200 | T208 | ''' |
| ''' | T222 | ''' | T226 | T228 | T233 | T236 | ''' | ''' | ''' | T270 | T280 | T300 | T301 | T302 |
| T311 | T390 | ''' | ''' | T400 | T410 | T411 | T412 | T413 | T414 | T415 | T416 | T490 | T497 | T606 |
| ''' | T520 | T630 | T631 | T632 | T533 | T640 | T699 | T800 | ''' | ''' | T700 | T710 | ''' | ''' |
| ''' | ''' | ''' | T903 | T904 | ''' | T907 | T911 | ''' | ''' | T923 | ''' | ''' | ''' |

If T-NBR is known click above to view contracts

| Description | T-NBR | Begin | End | Buyer Name | Contract Change | Vendor Web Sites? |
|-------------|-------|-------|-----|------------|-----------------|-------------------|
| Aftermarket Auto Parts | T163 | 10/1/12 | 12/31/16 | ''' | ''' | NO |
| Aggregate | T119 | 9/8/14 | 9/7/15 | CRIST WATTS | ''' | NO |
| Ammunition | T208 | 6/23/13 | 6/22/15 | JENNIFER LORETZ | ''' | NO |
| Bag of Ice & Bottled Water | T053 | 8/1/13 | 7/31/15 | WENDY PENTON | ''' | NO |
| Body Worn Video Camera - Law Enforcement | T923 | 12/10/14 | 12/10/15 | PAT ANTLE | ''' | NO |
| Bread | T038 | 7/19/13 | 7/18/15 | WENDY PENTON | ''' | NO |
| Bridge Joint Sealant Materials | T055 | 6/9/13 | 6/8/15 | CRIST WATTS | ''' | NO |
| Broadbank Point-To-Point Svcs | T414 | 10/27/14 | 10/26/16 | PAT ANTLE | ''' | NO |
| Cellular Telephones Authorization to Pay | T301 | 12/16/09 | 12/15/14 | PAT ANTLE | ''' | NO |
| Comm Interoperability Device | T032 | 6/25/10 | 6/24/15 | PAT ANTLE | ''' | NO |

CITY OF DOTHAN/GRAY 005806

Alabama Department of Finance-Purchasing Division

| | | | | | | |
|---|---|---|---|---|---|---|
| Concrete | T025 | 1/7/16 | 1/6/16 | CRIST WATTS | *** | NO |
| Cutaway Chassis Bus 25 Passenger M | T903 | 9/1/12 | 8/31/16 | *** | *** | NO |
| Cutaway Chassis Bus 25 Passenger | T904 | 1/1/11 | 12/31/15 | *** | *** | NO |
| Cut Paper and Continuous Forms | T103 | 7/20/13 | 7/19/15 | WENDY PENTON | *** | YES |
| DAPTIV PPM Software & Services | T540 | 3/12/13 | 3/11/16 | JAERI ELLIS | *** | NO |
| Difco & BBL Diagnostics | T152 | 3/14/11 | 3/13/16 | *** | *** | NO |
| Educational Environment Furniture | T180 | 7/16/12 | 7/15/15 | PAM JOHNSON | *** | NO |
| E Government Services | T001 | 2/29/12 | 3/1/16 | JAERI ELLIS | *** | NO |
| Emergency Rations | T019 | 11/1/13 | 10/31/15 | WENDY PENTON | *** | NO |
| E-Ticket Perforated Roll Paper | T018 | 8/20/11 | 8/19/15 | WENDY PENTON | *** | NO |
| File Cabinets | T199 | 1/21/14 | 1/20/16 | PAM JOHNSON | *** | NO |
| Fingerprint Scanning Equipment | T710 | 2/1/16 | 1/31/16 | JENNIFER LORETZ | *** | NO |
| Fuel | T104 | 10/1/12 | 9/30/16 | *** | *** | NO |
| Fuel, Alternative | T104A | 1/1/13 | 9/30/16 | *** | *** | NO |
| Fuel, Less Than 1000 Galloons | T104U | 10/1/12 | 9/30/15 | *** | *** | NO |
| Fuel, Liquid Propane | T115 | 10/1/14 | 9/30/15 | *** | *** | NO |
| Fuel Quality Manage/Monitor | T110 | 1/1/12 | 12/31/15 | *** | *** | NO |
| Furniture | T390 | 12/1/11 | 11/30/16 | PAM JOHNSON | *** | NO |
| Gasoline Credit Card Authorization Letter | T045 | 10/26/09 | 7/30/13 | RAY BRESSLER | *** | NO |
| Heavy Equipment Rental | T158 | 1/21/14 | 1/20/16 | CRIST WATTS | *** | NO |
| Herbicides | T154 | 11/4/13 | 11/3/15 | CRIST WATTS | *** | NO |
| Herbicide Sprayers | T226 | 3/19/14 | 3/18/16 | CRIST WATTS | *** | NO |
| Herbicides in Re-useable Containers | T164A | 10/2/13 | 10/1/16 | CRIST WATTS | *** | NO |
| Incandescent, Fluorescent Lamp | T102 | 11/1/12 | 10/31/15 | RAY BRESSLER | *** | NO |
| Info Tech Services Mgt (ITSM) | T009 | 10/23/14 | 10/22/16 | JAERI ELLIS | *** | NO |
| Internet Services | T415 | 10/27/14 | 10/26/16 | PAT ANTLE | *** | NO |
| Laboratory Supplies | T233 | 1/27/16 | 1/26/16 | *** | | |
| Layer 2 Ethernet Services | T413 | 10/27/14 | 10/26/17 | PAT ANTLE | *** | NO |
| Liquid Asphalt | T116 | 11/5/13 | 11/4/15 | CRIST WATTS | *** | NO |
| Mail Machines | T311 | 7/14/14 | 7/13/16 | PAM JOHNSON | *** | YES |
| Maintenance, Repairs, and Operating Supplies | T700 | 10/1/14 | 9/30/16 | JENNIFER LORETZ | *** | YES |
| Minivans (DOT) | T907 | 1/1/11 | 12/31/15 | *** | *** | NO |
| Mosquito Control | T100 | 2/21/14 | 2/20/16 | CRIST WATTS | *** | NO |
| MPLS Services | T412 | 10/27/14 | 10/26/17 | PAT ANTLE | *** | NO |
| Multi-Function Network Devices | T190 | 9/1/12 | 8/31/16 | JENNIFER LORETZ | *** | NO |
| Network and Telecomm Equipment | T600 | 7/6/10 | 7/5/15 | JENNIFER LORETZ | *** | YES |
| Neoprene for Bridge Maintenance | T010 | 11/1/11 | 10/31/15 | BRYAN MATTHEWS | *** | NO |
| OEM Printer Cartridges | T004 | 10/24/11 | 10/23/15 | JENNIFER LORETZ | *** | NO |
| Office and School Tables | T181 | 7/8/13 | 7/6/15 | PAM JOHNSON | *** | NO |
| Office Supplies | T108 | 5/13/12 | 5/12/15 | PAM JOHNSON | *** | NO |
| Oil and Grease | T105 | 1/1/12 | 12/31/15 | *** | *** | NO |

CITY OF DOTHAN/GRAY 005807

Alabama Department of Finance-Purchasing Division                    Page 3 of 4

| | | | | | | |
|---|---|---|---|---|---|---|
| PC's / Servers - Apple | T630 | 11/1/13 | 10/31/16 | JAERI ELLIS | ''' | NO |
| PC's / Servers - Dell | T631 | 3/1/13 | 2/28/16 | JAERI ELLIS | ''' | NO |
| PC's / Servers -Fujitsu | T632 | 3/1/13 | 2/28/16 | JAERI ELLIS | ''' | NO |
| PC's/ Servers - HP | T633 | 3/1/13 | 2/28/16 | JAERI ELLIS | ''' | NO |
| Phone-Based Interpreter Service | T145 | 6/16/12 | 2/15/16 | RAY BRESSLER | ''' | NO |
| Plant Mix | T120A | 11/8/13 | 11/7/16 | CRIST WATTS | ''' | NO |
| Portable Oxygen Inhalators | T123 | 1/1/12 | 12/31/15 | ''' | ''' | NO |
| Premise Distribution System | T620 | 10/7/13 | 10/6/16 | PAT ANTLE | ''' | NO |
| Printers & Scanners | T020 | 12/17/12 | 12/16/15 | JENNIFER LORETZ | ''' | NO |
| Printing and Binding | T400 | 10/1/10 | 9/30/16 | WENDY PENTON | ''' | YES |
| Radio Equipment 800 MHZ Authorization Letter | T129 | 11/1/11 | 10/31/16 | PAT ANTLE | ''' | NO |
| Reflective Sheeting | T114 | 3/11/11 | 3/12/16 | CRIST WATTS | ''' | NO |
| Restroom Supplies | T270 | 1/1/11 | 12/31/15 | WENDY PENTON | ''' | NO |
| Right-of-Way Mowers | T226 | 7/12/10 | 7/11/16 | CRIST WATTS | ''' | NO |
| Rugged Laptop Homeland Defense | T606 | 10/15/10 | 10/14/15 | JAERI ELLIS | ''' | NO |
| Sand Spreaders | T699 | 6/9/14 | 6/8/15 | CRIST WATTS | ''' | NO |
| Service Pins | T200 | 10/1/10 | 9/30/15 | WENDY PENTON | ''' | NO |
| Shredding Service (On-Site) | T022 | 11/1/12 | 10/31/15 | RAY BRESSLER | ''' | NO |
| Shredders | T008 | 11/14/14 | 11/16/15 | RAY BRESSLER | ''' | No |
| Sign Blanks/Sheets | T153 | 4/11/07 | 4/10/15 | CRIST WATTS | ''' | NO |
| Sign Truck Bodies | T911 | 2/4/13 | 1/31/16 | CRIST WATTS | ''' | NO |
| SIP Trunking Services | T416 | 10/27/14 | 10/26/17 | PAT ANTLE | ''' | NO |
| Skim Milk | T039 | 10/1/14 | 9/30/15 | WENDY PENTON | ''' | NO |
| Soft Body Armor | T037 | 7/5/10 | 7/4/16 | JENNIFER LORETZ | ''' | NO |
| Software, Personal Computer (formerly T040 Microsoft Select Agreement) | T497 | 11/1/12 | 10/31/16 | JAERI ELLIS | ''' | NO |
| Statewide Voice Services | T411 | 10/27/14 | 10/26/17 | PAT ANTLE | ''' | NO |
| Steel Sign Supports | T138 | 3/25/13 | 3/24/16 | CRIST WATTS | ''' | NO |
| Telecom Local Services | T410 | 10/27/14 | 10/26/17 | PAT ANTLE | ''' | NO |
| Temp IT Personnel Service | T013 | 1/25/12 | 1/24/16 | JENNIFER LORETZ | ''' | NO |
| Time & Attendance Solution - KSH | T00A | 3/6/13 | 3/5/16 | JAERI ELLIS | ''' | NO |
| Temporary Personnel | T238 | 10/9/14 | 10/10/16 | JENNIFER LORETZ | ''' | NO |
| Tires | T106 | 10/3/12 | 3/31/17 | ''' | ''' | YES |
| Toner Cartridges, After Market | T490 | 6/1/10 | 6/31/15 | JENNIFER LORETZ | ''' | NO |
| Tractors | T222 | 10/8/14 | 10/6/15 | CRIST WATTS | ''' | NO |
| Traffic Control Equipment | T133 | 4/30/14 | 4/29/16 | CRIST WATTS | ''' | NO |
| Traffic Marking Materials | T156 | 12/11/12 | 12/10/16 | CRIST WATTS | ''' | NO |
| Traffic Strip/Pavement marking | T043 | 3/15/10 | 3/14/16 | CRIST WATTS | ''' | NO |
| Truck-19000# & Above D/P GVWR | T193 | 6/1/14 | 8/31/16 | ''' | ''' | NO |
| Trucks 6600 - 19000 GVWR | T193A | 6/1/14 | 8/31/16 | ''' | ''' | NO |
| Truck Body 19000# Up D/P GVWR | T195 | 12/1/13 | 8/31/16 | ''' | ''' | NO |

CITY OF DOTHAN/GRAY 005808

Alabama Department of Finance-Purchasing Division                                    Page 4 of 4

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Truck Body 8600-19000 GVWR | T195A | 12/1/13 | 2/28/16 | *** | *** | NO |
| Two-Way Radios and Parts | T300 | 10/1/13 | 9/30/15 | PAT ANTLE | *** | NO |
| Vehicles | T191 | 10/1/12 | 9/30/15 | *** | *** | NO |
| Vehicles - Alternate Fuel | T191A | 10/1/12 | 9/30/15 | *** | *** | NO |
| Vehicles - Hybrid | T191H | 10/1/12 | 9/30/15 | *** | *** | NO |
| Vehicles - Law Enforcement | T191L | 10/1/12 | 9/30/15 | *** | *** | NO |
| Vehicles - Rental | T191R | 10/1/10 | 9/30/15 | *** | *** | YES |
| Vending Machines | T280 | 3/1/13 | 2/28/16 | RAY BRESSLER | *** | NO |
| Video Surveillance Camera/Equip | T011 | 9/8/11 | 8/31/15 | PAT ANTLE | *** | NO |
| Wireless Service / Equipment Authorization to Pay | T302 | 10/1/14 | 9/30/15 | PAT ANTLE | *** | YES |
| Worker Protection Materials | T171 | 5/25/10 | 5/24/15 | CRIST WATTS | *** | NO |
| Page Last Update: February 26, 2015 | | | | | | |

Finance Home  |  Alabama Directory  |  Media  |  Online Services  |  Alabama.gov  |  Alerts  |  Feeds  |  OpenAlabama.gov
Governor's Site  |  Translation Services:  German (Deutsch)  |  Japanese 日本語  |  Korean 한국어  |  Spanish (Español)

CITY OF DOTHAN/GRAY 005809
CONFIDENTIAL