# EXHIBIT

# D

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

IVAN KEITH GRAY,            )
Gray,                      )
                           )
vs.                        )        CIVIL ACTION NO:
                           )        1:14-cv-00592-MHT-SRW
CITY OF DOTHAN,            )
Defendant.                 )

## <u>DECLARATION OF GREGORY BENTON</u>

I, the undersigned, Gregory Benton, hereby swear or affirm that the following is true and correct based on my personal knowledge and/or my review of records kept in the normal course of business by the City of Dothan.

1.      My name is Gregory Benton. I am over the age of twenty-one, I am of sound mind, and I am qualified to make this declaration. I understand that this declaration is being submitted in connection with a lawsuit filed against the City of Dothan ("City") by Ivan Keith Gray ("Gray").

2.      I have been employed by the City of Dothan since in or around September 1989. I began my employment at the City as a police officer. In 1994, I was promoted to corporal. In 1996, I was promoted to sergeant. In 1999, I was promoted to lieutenant. In 2008, I was promoted to captain. In January 2010, I was promoted to police chief and currently serve in that position. Mike West, the City Manager, is my current supervisor.

Initials  _GB_

3.     The Mayor and the City Commissioners vote to approve the purchase of cell phones and cell phone service for the Dothan Police Department, not me.

4.     On or about January 23, 2013, I received a memo from Major Parrish regarding a conference that he had with Gray in which Gray claimed that Parrish treated him differently.  I advised Parrish to discuss the issue with Darryl Mathews ("Mathews") the EEO/Training Officer.

5.     Guardian Tracking is a software that is used to track employee performance.  Officers can see entries that are input by their supervisors and can respond to the entries.  On or about June 12, 2013, I received a memo from Major Parrish requesting that I request an investigation into allegations made by Gray in a June 9, 2013 Guardian Tracking entry.  Attached hereto as Exhibit 1 is a true and correct copy the memo from Major Parrish. That same day, I requested that Mathews conduct an investigation and that it be "investigated outside the department due to the sensitivity and nature of the complaints by Captain Gray." Mathews sent me a memo informing me that he was initiating an investigation. Mathews also interviewed me regarding the allegations contained in Gray's report. Following the interview with Mathews, I submitted written responses to his inquiries.  Attached hereto as Exhibit 2 is true and accurate copy of the June 12, 2013 memo to Mathews and August 8, 2013 memo that I submitted to him following my interview.  At the conclusion of his investigation, I received and

2

Initials  _AB_

reviewed a copy of Mathew's final report and findings regarding Gray's complaint which concluded that Gray's allegations were unfounded.

6.     I have never filed any complaints against Gray and have never made any complaints about him during his employment. To the contrary, I gave him positive performance reviews and promoted him to captain in October 2010. Attached hereto as Exhibit 3 is a true and correct copy of portions of the performance evaluations that were issued to Gray in 2010, 2011, and 2012 which indicate that he was an exceptional performer during these performance periods.  I also assigned Gray to the roles of Operations Manager and Commander of the Patrol Bureau. Attached hereto as Exhibit 4 are true and correct copies of memorandums regarding his assignments to those roles.  I have even appointed Gray to act as chief of police in my absence.

7.     In or around April or May 2013, Gray provided me with biographical and military information that I had requested that he provide to me.  I had not made any similar requests of Gray in or around July-August 2013.

8.     In or around October 2010, Gray scored the highest on the captain's promotional exam and I promoted him to the rank of captain. The position of captain is the third highest ranking position in the Department and is a highly visible position entrusted with a significant amount of responsibility and discretion.

Initials _____

In general, special assignments and assignments to different Bureaus and/or Divisions do not result in a change in rank and/or pay.

9.      After becoming chief of police, I made decisions regarding assignments to various divisions with Major Parrish's input. At the time Gray was employed, the City of Dothan Police Department was composed of three (3) bureaus: Patrol Bureau, Administrative Services Bureau, and Investigations Bureau.  Each of the three bureaus was supervised by one of three captains within the Department. The Administrative Services Bureau has five divisions: training, communications center, jail, animal shelter and records.  In April 2012, while Stacy Robinson ("Robinson") was captain over the Administrative Services Bureau, he recognized the need for an extra layer of supervision to assist in managing the Bureau, which is the largest of the three. He created the assignment of police lieutenant within the Administrative Services Bureau. When first promoted to captain, Gray was assigned to the Administrative Services Bureau, Robinson was assigned to the Patrol Bureau and Jay was assigned to the Investigations Bureau. During the time Gray was a captain he was assigned to both the Patrol and Administrative Services Bureaus. His final assignment before the termination of his employment was to the Administrative Services Bureau where he supervised two direct reports. During the time Gray was a captain, Robinson was assigned to the Patrol, Administrative Services and, at the time of the

4

Initials _JMB_

termination of Gray's employment, the Investigative Bureau, where he supervised two direct reports.  During the time Gray was a captain, Jay was assigned to the Investigative and, at the time of the termination of Gray's employment, the Patrol Bureau, where he supervised seven direct reports.  Michael Etress was assigned to serve as the first Lieutenant of the Administrative Services Bureau. In January 2013, I reassigned two of the five divisions in the Administrative Services Bureau to report directly to Major Steve Parrish as a temporary measure to address the extensive workload of that Bureau.

10.     Key duties for all Dothan police officers include arresting those who violate the law and testifying in court against those they arrest.

11.     Police officers for the City of Dothan are required to complying with the Police Department's General Orders, the Personnel Board's Rules and Regulations and policies issued by the City.  Officers receive an Employee Handbook, containing the Rules and Regulations, and copies of the General Orders when they are hired. Updates to the rules are posted on the City's network. Attached hereto as Exhibit 5 is a true and correct copy of Dothan Police Department General Order 200-42H, Mobile Data Terminals and Electronic Messaging.  Attached hereto as Exhibit 6 is a true and correct copy of Dothan Police Department General Order 100-41, Code of Ethics. Attached hereto as Exhibit 7 is Dothan Police Department, General Order 100-50, Code of Conduct.

5

Initials _____

Attached hereto as Exhibit 8 is Dothan Police Department, General 200-30, Professional Standards.

12.     It is my responsibility to authorize internal affairs to conduct investigations.

13.     On or about August 25, 2013, Lieutenant Will Benny ("Benny") informed me that there had been a felony assault at the Outcast Motorcycle Clubhouse and that Gray's name had been mentioned multiple times as being associated with the Outcast Motorcycle Club. I then contacted Sergeants Donny Smith ("Smith") and Doug Magill ("Magill"), Internal Affairs Investigators and instructed them to conduct an investigation into the allegations. Prior to receiving the report from Benny on August 25, 2013, I had no prior knowledge that Gray was involved and/or associated with outlaw and/or one percenter motorcycle clubs. I was concerned that a law enforcement officer in my department had been identified as being associated with a one percent motorcycle gang because they are known to be engaged in criminal activity.

14.     On August 25, 2013, Smith and Magill interviewed Gray. I watched the interview from a separate room through a live video feed. Following this interview, I placed Gray on paid administrative leave, pending the outcome of the investigation. Gray remained on paid leave until I terminated his employment on, but he was not disciplined in any way during this time. Placing an officer on

6

Initials

administrative leave pending the outcome of an investigation is standard procedure within the Department and implies no presumption of guilt.

15.     As part of their investigation, Smith and Magill conducted in depth research regarding outlaw motorcycle gangs and provided me with a copy of their research in addition to a report regarding the outcome of the investigation including supporting documentation and recordings. I did not conduct the investigation regarding Gray's involvement in an outlaw motorcycle gang; however, Smith and Magill informed me regarding their progress during the investigation.

16.     I relied on the report provided by Smith, the investigation file submitted with the report including audio and video recordings of interviews; and various conversations with Smith, Magill and Tim Mullis in which they provided me with updates and information regarding the investigation in making the decision to terminate Gray's employment.

17.     After reviewing the entire investigation, I reached my own conclusions that Gray had been evasive and dishonest during the interviews. During one interview, Gray claimed he did not know Big O's status in his motorcycle club. However, just a few months prior to the interview, Gray had written a letter in which he wrote: "The found executive board has held a series of meetings regarding the possibility of starting a new chapter of Bama Boyz MC in

7

Initials _JB_____

Anniston, Alabama, upon receiving the blessings from Big O, <u>President of Outcast Alabama</u>, Big Meat Sin City Disciples Alabama and Catfish National President of Easy Riders." Attached hereto as Exhibit <u>9</u> is a true and correct copy of the letter that is contained in the internal affairs investigation file that I reviewed in this matter.

18.     Gray admittedly went to an outlaw motorcycle clubhouse on multiple occasions, attended the funeral of an Outcast motorcycle club member, proudly received a patch from Big O after attending the funeral, and received a blessing from motorcycle clubs that he had told prospective Bama Boyz members prior to the beginning of the August 2013 investigation were one percenter motorcycle clubs.

19.     Although the primary reason for the termination of Gray's employment was his conduct unbecoming of an officer – his association with outlaw motorcycle clubs, Gray also engaged in other misconduct. As part of their investigation, Smith and Magill requested that Corporal Tim Mullis conduct a forensic analysis on Gray's city-issued cell phone. The forensic analysis revealed that a pornographic website, xxx.blackbook.com had been accessed more than once from Gray's city-issued cell phone after Gray had received the phone. I received images from internal affairs that confirmed that the xxx site contained pornographic images.

Initials _____

20.     Sometime prior April or May 2013, I had requested that Gray provide me with information regarding the demographics of officers in the department. Gray had completed the report I had requesting requiring him to gather military service and other personal information regarding officers in or around April or May 2013.  Nevertheless, in or around July 2013, Gray accessed multiple officer's personal information without the need to or instruction from me to do so.

21.     Attach hereto as Exhibit 10 is a true and correct copy of the September 20, 2013 Disciplinary Action Report Form and Notice of Determination Hearing.

22.     Prior to issuing my final decision regarding Gray's termination, I offered Gray the opportunity to resign but Gray declined.

23.     On or about September 23, 2013, Gray participated in a determination hearing. Following the hearing, I met with Gray and his counsel and issued Gray him the Decision of Determination Hearing in which I informed him that his employment was being terminated.  Attached hereto as Exhibit 11 is a true and correct copy the transcript of the September 23, 2013 decision of determination hearing, the decision of determination hearing, and the audio recording of September 23, 2013 meeting during which I informed Gray of his termination.

24.     One other managerial official committed an intolerable offense during the time period surrounding Gray's allegations—Sergeant Anthony Nelms

9

Initials

("Nelms"), a Caucasian male.  Nelms was notified of his Determination Hearing, as was Gray, but chose to resign rather than exercise his right to a hearing.

25.     I am not aware of any other Dothan Police Officer (other than Gray) who is or has ever been associated with a one-percenter or outlaw motorcycle club.

26.     Carlton Ott ("Ott"), a Caucasian male, received the highest score on the validated promotional exam for the position of Captain following Gray's termination – similar to Gray who was promoted to the position of captain after he received the highest score on the validated promotional exam. The promotional exam, along with an interview, made up the assessment center mechanism used to make promotional decisions, including the one regarding Ott.

27.     I never received a complaint about Major Parrish's alleged previous membership in the Sons of Confederate Veterans.  It is my understanding that Major Parrish has not been a member of the organization for several years.

28.     I do not know of any members of the Dothan Police Department who have used the "n" word.  I have never used the "n" word and have never personally heard anybody use the "n" word.

29.     Officers are selected to participate in the Federal Bureau of Investigation ("FBI") national academy by the FBI.  As Chief of Police, officers who are interested in attending the national academy typically ask me to submit a letter of recommendation on their behalf.  Gray has never asked me to submit a

Initials _JB_

letter of recommendation on his behalf for participation in the FBI national academy.

30.    As part of the selection process for the chief of police, I was interviewed by a diverse panel of community leaders that included both African-American and Caucasian individuals.

Dated this *27* day of March 2015.

Gregory Benton

11

Initials *GB*

# EXHIBIT

# 1



**Dothan Police Department**
210 North Saint Andrews Street
Dothan, Alabama 36303
(334) 615-3000

Memorandum

Date:        June 12, 2013

To:          Chief Gregory Benton

From:        Major Steve Parrish

RE:          Discrimination Complaint against Me

On April 8, 2013 I completed a Guardian Tracking entry on Captain Keith Gray (see attached dated April 8) advising him to communicate with me when he was absent from work. On June 9, 2013, he responded (see attached).

Captain Gray is accusing me of being a "good ole boy", showing favoritism being a liar and a racist. His commentary was very disturbing when I read it and to say the least I am hurt and offended by the accusations.

I do however understand it is his right to report such suspected activity and in my opinion, he has done that by posting this attachment in Guardian Tracking. I therefore request you contact the Personnel Director and the Equal Opportunity Officer and request an investigation into these allegations made by Captain Gray.

He has also requested I be removed from his chain of command and said he has intentions of filing a Title 7 Discrimination complaint. I am not opposed to this for the duration of the investigation. I would respectfully request a summary of the investigators findings at the conclusion.

CITY OF DOTHAN/GRAY 000487
CONFIDENTIAL

# EXHIBIT

# 2



GREGORY J. BENTON
CHIEF OF POLICE

# THE CITY OF
# DOTHAN, ALABAMA

POST OFFICE BOX 2128 • DOTHAN, ALABAMA 36302 • 334.615.3000

## M E M O R A N D U M

**TO:**       Darryl Mathews, EEO

**FROM:**   Gregory J. Benton, Chief of Police

**DATE:**    June 12, 2013

**SUBJECT:**   Request for Investigation

The attached is a request from Major Steve Parrish requesting an investigation. He is asking that accusations by Captain Keith Gray be looked into due to the nature of the accusations. Captain Gray is accusing Major Parrish of being a "good ole boy" and showing favoritism. He is also accusing Major Parrish of being a liar and a racist. Major Parrish states, in his memorandum to me, that he is offended and hurt by these accusations.

These accusations are very detrimental to our agency and I am asking that this entire matter be investigated with due diligence. I am asking for this to be investigated outside the department due to the sensitivity and nature of the complaints by Captain Gray.

Gregory J. Benton
Chief of Police

GJB/pd

Attachment

cc: Delvick McKay, Personnel Director
    Michael K. West, City Manager

# POLICE DEPARTMENT

210 NORTH SAINT ANDREWS STREET • DOTHAN, ALABAMA 36303 • 334.615.3601
Email: dpd@dothan.org

CITY OF DOTHAN/GRAY 000486
CONFIDENTIAL

Darryl,

The following is in response to your email sent to me on Thursday, August 8, 2013:

- **Captain Grays' lack of communication with (supervision) Major Parrish**—Major Parrish has reported to me that Captain Gray resists communicating with him unless it is job related and absolutely necessary. This has gone on since Captain Gray's transfer. I have noticed Captain Gray increasingly communicating more with me and less with his supervisor by mid-year. This has caused me to have to deal more with Captain Gray from a subordinate standpoint than I really have time for and is the root of the controversy of whether or not he communicated some off time to his supervisor. Major Parrish and I have discussed this and he advised me he covered that in Captain Gray's mid-year Coaching Session and it seems to be some better. Captain Gray's resistance to communication with Major Parrish has caused instability in the Administrative hall. He is often in his office with the door closed and it radiates uneasiness among the other captains.

- **Captain Grays' alleged disparate treatment in the re-assignment of Captains' to police bureaus**—Other than what is explained below, Captain Gray has not expressed any allegations of disparate treatment to me. Assignments made in this Department are not grievable. The Personal Board has always maintained this posture. I assign officers to areas where I believe they can most benefit the Department as a whole and often time, as in this case, following a recommendation and discussion with the supervisor.

- **Allegation of Captain Grays' micro-management of Police bureau's i.e. Patrol and Administrative Bureau**—Major Parrish has reported to me on numerous occasions that Captain Gray is very "hands-on". He says that Captain Gray does not seem to have trust among his subordinates, nor does he seem to trust them. Rather than delegate authority to another supervisor, he tends to handle matters himself. Major Parrish said he has tried to communicate this to him as delicately as possible, but is met with accusations of discrimination. The incident involving disciplinary action received by Captain Gray is an example of perhaps over-managing an incident.

1. **The Business necessity for the Administrative Services Lieutenant position.**

I created the Administrative Services Lieutenant position at the request of Captain Stacy Robinson. Captain Robinson approached me in late March 2012 when he was serving as the bureau commander of Administrative Services. His desire was to stream-line his operation by placing his jail commander, Lieutenant Mark Nelms over the various divisions within his bureau. The division that was excluded at the time was the Communications Division because it was supervised by Lieutenant Woodham—an officer of equal rank with Lieutenant Nelms. I issued the memo for implementation on April 6, 2012.

2. **Re-assignment justification used to transfer Captain Gray from the Patrol Services Bureau to the Administrative Services Bureau and what was used to make that determination.**

Major Parrish first approached me about possibly changing the command staff around in the late summer of 2012. Captain Gray seemed to have a problem maintaining the flow of

PLAINTIFF'S
EXHIBIT

/   DM

paperwork relative to Patrol Services up the channels to my office. I do not have specific dates documented, but I recall Major Parrish and I having that conversation on numerous occasions when Captain Gray commanded Patrol. At one juncture, he was reviewing all polygraph reports administered by our examiners. They were late to the point I placed the dissemination and review of them under Lieutenant Woodham. Major Parrish also advised me that he felt Captain Gray was over-managing his bureau and morale was on the decline under his command. I told him I would consider the move as the year progressed. It was around that time that I directed the Major to discuss a Command Climate Survey for the department.

By mid-summer there had been two late-night incidences at local night clubs that Captain Gray had interaction with his subordinates. On one of those incidences, he received disciplinary action, and was temporarily relieved of his command and received a Performance Improvement Plan. Command was later reinstated. He improved for a time and began gradually reverting to previous ways of paperwork lagging in his office when it needed to be moved up the channels. Major Parrish advised me later in the year that he felt we could make our department more productive and increase morale by having Captain David Jay command Patrol Services. He also recommended that since Investigative Services was the least tasking to manage; Captain Robinson (who has health issues) would be his choice to assume those duties. In January, I issued the order to make the changes. This was largely due to Performance Management planning issues. Throughout this entire time frame, Major Parrish never advised me that Captain Gray was not capable of managing as a captain; rather he felt we could be more efficient making this adjustment.

3. **Internal Affairs reports on the incident that happen at Eton, Pockets and the place where the counterfeit money situation occurred**

   (See attached)

4. **A report of the Police Incident Involving Officer Markow.**
   (See attached)

5. **A copy of Captain Grays' Performance Improvement Plan**

   (See attached)

6. **Justification for Major Parrish moving Communication and Training from under Captain Gray.**

   Prior to Major Parrish and I meeting with Captain Gray and notifying him of the transfer in assignments, the Major requested that he be allowed to maintain command of Communications Division and the Training Division for a few months in order to see if Captain Gray could effectively manage what he had been given efficiently. Major Parrish said he intended to relinquish both Communications and Training once Captain Gray showed he could handle the current assignment without difficulty.

Major Parrish reported to me on January 23, 2013 that Captain Gray came to see him and they had a candid discussion about Captain Gray's management of Patrol Services. He later advised me that he met with you at your request on February 1, 2013 and discussed some issues Captain Gray had brought to your attention. He said you told him that Captain Gray seems to be of the opinion that he, "went from being number 3 in the command to number 5". He is the senior captain due to time in service. Captains are not viewed like that by any employee in the Department. Both Major Parrish and I have served in the capacity as captain over Administrative Services and have never seen it that way.

Major Parrish contacted me in mid May and said he was ready to relinquish the Communications and Training Divisions to Captain Gray. We discussed his efficiency and he felt it was adequate. Major Parrish reported to me that he discussed this with Captain Gray on May 22, 2013 and explained how Captain Gray was free to set up the structure within his bureau however he wanted it. He said Captain Gray just "snickered" and started looking around. He said he asked Captain Gray for a plan on how he wanted to organize the bureau and he has not received that plan. (see attached memorandum) Since that time Captain Gray has filed a complaint and requested he be removed from Major Parrish's chain of command. I have denied that request.

There has been an issue in where leave requests are concerned.I have tried to remedy this by standardizing the process of requesting leave (see attached memo). Where this is not really a problem with the majority of the department, it has been an issue among the command staff, specifically with Captain Gray.

I hope this will suffice.

Sincerely,

Gregory J. Benton

# EXHIBIT

# 3

## CITY OF DOTHAN *FINAL APPRAISAL*

ORIGINAL

FINAL APPRAISAL DUE IN PERSONNEL DEPARTMENT BY JANUARY 31,

Employee Name: _____ I. Keith Gray _____     Classification: _____ Full Time _____

Department: _____ Police _____     Performance Period: _____ August-October 2010 _____
Probationary ☐   Non-Probationary ☒

### PERFORMANCE MANAGEMENT SCORE

Locate the Functions Score and write it in the appropriate space.  Locate the Disciplinary Score and write it in the appropriate space.  The Disciplinary Score is subtracted from the Functions Score to derive the Performance Appraisal Score.

| 40 | 0 | = | 40 |
|----|---|---|----|
| Functions Score | Disciplinary Score | | Performance Appraisal Score |

Find the corresponding range in which the Performance Appraisal falls.  Place a mark in the box above the performance category.

| ☒ | ☐ | ☐ | ☐ | (44.7 – 50.0) Model Performer ☐ |
|----|----|----|----|----|
| (32.7 - 44.6) Exceptional Performer | (20.7 - 32.6) Fully Competent Performer | (8.7 – 20.6) Ineffective Performer | (8.6 – below) Unacceptable Performer | |

### APPRAISAL SIGNATURES: Signatures are to be provided after the form has been completed and discussed.  Signatures do not denote agreement necessarily, only that the discussion has been held.  If comments are added to the form, the box next to the corresponding name should be initialed.

Rating Supervisor Signature: _____ *signature* _____     Date: 10-28-10   ☐

Reviewing Supervisor Signature: _____     Date: _____   ☐

Department Head Signature: _____ *signature* _____     Date: 10-29-10   ☐

Employee Signature: _____ *Cpt. Keith Gray* _____     Date: 10-28-10   ☐

### COMMENTS/CALCULATIONS BY PERSONNEL DEPARTMENT:

### WORK CONDUCT: Check the appropriate box for each work habit area.

| | Satisfactory | Unsatisfactory |
|---|---|---|
| Attendance | ☒ | ☐ |
| Punctuality | ☒ | ☐ |
| Teamwork | ☒ | ☐ |
| Compliance with Policy/Procedures | ☒ | ☐ |

CITY OF DOTHAN/GRAY 000367
CONFIDENTIAL

***DISCIPLINE SCORE:*** List below any discipline that was taken with the employee during the ~~ORIGINAL~~

performance period.  For each action, list the specific step taken and date of action.

n/a

---

If a Formal Counseling was taken, the score is 0.  If a Written Warning was taken, the score is 6.  If a Final Written Warning/Minor Offense was taken, the score is 12.  If a Final Written Warning/Major Offense was taken, the score is 18.  If a Demotion was taken, the score is 24.  Otherwise, the Disciplinary Score will be 0.

DISCIPLINARY SCORE:    0

***FUNCTIONS:*** List an abbreviated version of the employee's Functions below as documented on and discussed during the Planning session.  Record the appropriate rating in the box for each Function.

| 4 | 3 | 2 | 1 | 5 |
|---|---|---|---|---|
| Exceeds Goals | Meets Goals | Partially Meets Goals | Does Not Meet Goals | Consistently Exceeds Goals |

*Function Ratings*

| | | |
|---|---|---|
| 4 | 1. | see attached |
| 4 | 2. | see attached |
| 3 | 3. | see attached |
| 4 | 4. | see attached |
| | 5. | |
| | 6. | |
| | 7. | |
| | 8. | |
| | 9. | |
| | 10. | |

***FUNCTIONS SCORE:***

| 16 | ÷ | 4 | = | 4.0 | X | 10 | = | 40 |
|---|---|---|---|---|---|---|---|---|
| Total Function Ratings | | Number of Functions Listed | | Average Function Rating | | | | Functions Score |

CITY OF DOTHAN/GRAY 000368
CONFIDENTIAL

## CITY OF DOTHAN FINAL APPRAISAL

FINAL APPRAISAL FOR PERSONNEL
DEPARTMENT USE ONLY

Employee Name: _____ I. Keith Gray

Classification: _____ Full Time

Department: _____ Police

Performance Period: _____ October 2010/October 2011

Probationary ☒   Non-Probationary ☐

## PERFORMANCE MANAGEMENT SCORE

Locate the Functions Score and write it in the appropriate space. Locate the Disciplinary Score and write it in the appropriate space. The Disciplinary Score is subtracted from the Functions Score to derive the Performance Appraisal Score.

| 40 | 0 | ☐ | 40 |
|---|---|---|---|
| Functions Score | Disciplinary Score | | Performance Appraisal Score |

Find the corresponding range in which the Performance Appraisal falls. Place a mark in the box above the performance category.

| ☒ | ☐ | ☐ | ☐ | | (44.7 – 50.0) Model Performer |
|---|---|---|---|---|---|
| (32.7 - 44.6) Exceptional Performer | (20.7 - 32.6) Fully Competent Performer | (8.7 – 20.6) Ineffective Performer | (8.6 – below) Unacceptable Performer | | ☐ |

## APPRAISAL SIGNATURES:

Signatures are to be provided after the form has been completed and discussed. Signatures do not denote agreement necessarily, only that the discussion has been held. If comments are added to the form, the box next to the corresponding name should be initialed.

Rating Supervisor Signature: _____   Date: _10-4-11_  ☐

Reviewing Supervisor Signature: _____   Date: _____  ☐

Department Head Signature: _Gregory Benton_   Date: _10-4-y_  ☐

Employee Signature: _Keith Gray_   Date: _10-19-11_  ☐

## COMMENTS/CALCULATIONS BY PERSONNEL DEPARTMENT:

## WORK CONDUCT:

Check the appropriate box for each work habit area.

| | Satisfactory | Unsatisfactory |
|---|---|---|
| Attendance | ☒ | ☐ |
| Punctuality | ☒ | ☐ |
| Teamwork | ☒ | ☐ |
| Compliance with Policy/Procedures | ☒ | ☐ |

CITY OF DOTHAN/GRAY 000390
CONFIDENTIAL

**DISCIPLINE SCORE:** List below any discipline that was taken with the employee during this performance period. For each action, list the specific step taken and date of action.

If a Formal Counseling was taken, the score is 0. If a Written Warning was taken, the score is 6. If a Final Written Warning/Minor Offense was taken, the score is 12. If a Final Written Warning/Major Offense was taken, the score is 18. If a Demotion was taken, the score is 24. Otherwise, the Disciplinary Score will be 0.

DISCIPLINARY SCORE: _____0_____

**FUNCTIONS:** List an abbreviated version of the employee's Functions below as documented on and discussed during the Planning session. Record the appropriate rating in the box for each Function.

| 4 | 3 | 2 | 1 | 5 |
|---|---|---|---|---|
| Exceeds Goals | Meets Goals | Partially Meets Goals | Does Not Meet Goals | Consistently Exceeds Goals |

**Function Ratings**

| Rating | # | Function |
|---|---|---|
| 4 | 1. | Manages Bureau |
| 4 | 2. | Manages Resources |
| 4 | 3. | Manages Supervision of Employees |
| 4 | 4. | Manages Quality Assurance |
|  | 5. |  |
|  | 6. |  |
|  | 7. |  |
|  | 8. |  |
|  | 9. |  |
|  | 10. |  |

**FUNCTIONS SCORE:**

| 16 | ÷ | 4 | = | 4 | X | 10 | = | 40 |
|---|---|---|---|---|---|---|---|---|
| Total Function Ratings | | Number of Functions Listed | | Average Function Rating | | | | Functions Score |

CITY OF DOTHAN/GRAY 000391
CONFIDENTIAL

## CITY OF DOTHAN *FINAL APPRAISAL*

FINAL APPRAISAL DUE IN PERSONNEL
DEPARTMENT BY JANUARY 31.

Employee Name: _____ Keith Gray _____   Classification: _____ Captain, La _____

Department: _____ Police _____   Performance Period: _____ 2012 _____
Probationary ☐   Non-Probationary ☒

### PERFORMANCE MANAGEMENT SCORE

Locate the Functions Score and write it in the appropriate space.  Locate the Disciplinary Score and write it in the appropriate space.  The Disciplinary Score is subtracted from the Functions Score to derive the Performance Appraisal Score.

| 35 | 0 | 35 |
|---|---|---|
| Functions Score | Disciplinary Score | Performance Appraisal Score |

Find the corresponding range in which the Performance Appraisal falls.  Place a mark in the box above the performance category.

| ☒ | ☐ | ☐ | ☐ | (45.0 – 50.0) Model Performer ☐ |
|---|---|---|---|---|
| (35.0 – 44.9) Exceptional Performer | (25.0 – 34.9) Fully Competent Performer | (12.6 – 24.9) Ineffective Performer | (12.5 – below) Unacceptable Performer | |

### APPRAISAL SIGNATURES:

Signatures are to be provided after the form has been completed and discussed.  Signatures do not denote agreement necessarily, only that the discussion has been held. If comments are added to the form, the box next to the corresponding name should be initialed.

Rating Supervisor Signature: _____   Date: 12-18-12   ☑

Reviewing Supervisor Signature: _____   Date: _____   ☐

Department Head Signature: _____   Date: 12-8-1   ☐

Employee Signature: _Captain Keith Gray_   Date: 1/3/13   ☐

### COMMENTS/CALCULATIONS BY PERSONNEL DEPARTMENT:

### WORK CONDUCT:  Check the appropriate box for each work habit area.

| | Satisfactory | Unsatisfactory |
|---|---|---|
| Attendance | ☒ | ☐ |
| Punctuality | ☒ | ☐ |
| Teamwork | ☒ | ☐ |
| Compliance with Policy/Procedures | ☒ | ☐ |

CITY OF DOTHAN/GRAY 000414
CONFIDENTIAL

***DISCIPLINE SCORE:*** List below any discipline that was taken with the employee during this performance period. For each action, list the specific step taken and date of action.

If a Formal Counseling was taken, the score is 0. If a Written Warning was taken, the score is 6. If a Final Written Warning/Minor Offense was taken, the score is 12. If a Final Written Warning/Major Offense was taken, the score is 18. If a Demotion was taken, the score is 24. Otherwise, the Disciplinary Score will be 0.

DISCIPLINARY SCORE: _____0_____

***FUNCTIONS:*** List an abbreviated version of the employee's Functions below as documented on and discussed during the Planning session. Record the appropriate rating in the box for each Function.

| 4 | 3 | 2 | 1 | 5 |
|---|---|---|---|---|
| Exceeds Goals | Meets Goals | Partially Meets Goals | Does Not Meet Goals | Consistently Exceeds Goals |

***Function Ratings***

| | | |
|---|---|---|
| 3 | 1. | Manages Bureau |
| 4 | 2. | Manages Resources |
| 3 | 3. | Manages Supervision of Employees |
| 4 | 4. | Manages Quality Assurance |
| | 5. | |
| | 6. | |
| | 7. | |
| | 8. | |
| | 9. | |
| | 10. | |

***FUNCTIONS SCORE:***

| 14 | ÷ | 4 | = | 3.5 | X | 10 | = | 35 |
|---|---|---|---|---|---|---|---|---|
| Total Function Ratings | | Number of Functions Listed | | Average Function Rating | | | | Functions Score |

CITY OF DOTHAN/GRAY 000416
CONFIDENTIAL

# EXHIBIT

# 4



# THE CITY OF
# DOTHAN, ALABAMA

POST OFFICE BOX 2128 • DOTHAN, ALABAMA 36302 • 334-615-3000

GREGORY J. BENTON
CHIEF OF POLICE

# MEMORANDUM

**TO:** All Personnel

**FROM:** Gregory J. Benton, Chief of Police

**DATE:** June 22, 2011

**SUBJECT:** Bomb & Explosive Devices Unit

Effective immediately the following personnel are reassigned on the Bomb & Explosive Devices Unit:

Captain Keith Gray – Operations Commander
Lieutenant Scott Heath – Team Commander
Sergeant Brian Smith – Assistant Team Commander

Gregory J. Benton
Chief of Police

GJB/pd

#201106221

# POLICE DEPARTMENT

210 NORTH SAINT ANDREWS STREET • DOTHAN, ALABAMA 36303
Email: dpd@dothan.org

CITY OF DOTHAN/GRAY 000375
CONFIDENTIAL



THE CITY OF
# DOTHAN, ALABAMA
POST OFFICE BOX 2128 • DOTHAN, ALABAMA 36302 • 334-615-3000

GREGORY J. BENTON
CHIEF OF POLICE

# M E M O R A N D U M

**TO:**       All Personnel

**FROM:**     Gregory J. Benton, Chief of Police

**DATE:**     September 28, 2011

**SUBJECT:**  Assignments

The following assignments will become effective Monday, October 3, 2011:

Captain Keith Gray will be assigned as Commander of the Patrol Bureau

Captain Stacy Robinson will be assigned as Commander of the Administrative Bureau

Gregory J. Benton
Chief of Police

GJB/pd

#201109281

# POLICE DEPARTMENT
210 NORTH SAINT ANDREWS STREET • DOTHAN, ALABAMA 36303 • 334-615-3601
Email: dpd@dothan.org

CITY OF DOTHAN/GRAY 000387
CONFIDENTIAL

# EXHIBIT

# 5

# DOTHAN POLICE DEPARTMENT
## GENERAL ORDER 200-42H
### *Mobile Data Terminals and Electronic Messaging*



| | |
|---|---|
| CHIEF OF POLICE: | CALEA STANDARD: |
| *Gregory J. Benton* | 41.3.7, 81.2, 108.2, 116 |
| Original Signed 06/17/2010 | |
| EFFECTIVE DATE: 08/06/2010 | INDEX: Mobile Data Terminals |
| LAST REVISION DATE: 10/12/2011 | |

**Purpose:**   The purpose of this policy is to provide employees with guidance on the proper use of personal computers and related electronic messaging systems utilized within this agency for purposes of disseminating electronic mail, reports, directives or other matter utilizing the services of the Internet or City of Dothan owned networks for electronic message transmission and recording devices.

**Policy:**   The availability and use of the personal computer within the work environment is providing many opportunities for enhancement of productivity and effectiveness. However, these new technologies also entail the opportunity for rapid transfer and broad distribution of sensitive information that can have damaging effects on the City of Dothan, this agency and employees utilizing these electronic systems. Therefore, it is the policy of this agency that all officers and/or other DPD employees abide by the guidelines set forth herein when using personal computers including laptop or other portable devices, services of external databases (such as ALACOP), information exchange networks, as well as voice, mobile data terminals and related messaging devices. Access to electronic hardware and software systems is provided for official business and is not intended for personal use.

**Definitions:** **(EMD) Electronic Messaging Device:** For the purposes of this policy, EMD's entail personal computers (any type), electronic mail systems and devices, voice mail systems and devices, paging systems, electronic bulletin boards, Internet services, Mobile Data Terminals, and facsimile transmissions.

  **System Administrator:** For the purposes of this policy, System Administrators are City employees assigned or designated the responsibility for maintenance, setup, repair and management of personal computers as well as electronic

CITY OF DOTHAN/GRAY 002186
CONFIDENTIAL

messaging through individual computers and computer networks within this agency or the City of Dothan or as specifically designated by the City of Dothan Information Technology Director.

**(MDB) Mobile Data Browser:** A secure, web-based software program installed on EMD's.

**(MDT) Mobile Data Terminal:** A mobile computer hardware configuration issued to Dothan Police Department employees for use in assigned duties typically installed in City of Dothan owned marked and unmarked vehicles.

**(ACJIC):** The Alabama Criminal Justice Information Center.

**(NCIC):** The National Crime Information Center.

**(ISIS):** Integrated State Interface Service.

**(TAC):** Terminal Agency Coordinator.

**(AISO):** Agency Information Security Officer.

**(SUNGARD/HTE):** The sole source provider of the City of Dothan Computer Aided Dispatch system.

**(IT):** Information Technology Department of the City of Dothan.

**(SOG):** City of Dothan Standard Operating Guidelines.

## I. ADMINISTRATIVE

### A. GENERAL

1. Transmission of electronic messages and information on communications media provided for employees of this agency are to be treated with the same degree of propriety and professionalism as official written correspondence.

2. This agency encourages authorized and trained personnel with access to EMD's to utilize these devices whenever appropriate. However, use of any of these devices is a privilege that is subject to revocation based on breaches of this or other applicable City of Dothan Standard Operating Guidelines or policy. (See also SOG 11, 12 and 13) and (ACJIS/ALACOP/LETS Rules and Regulations)

3. EMD's and their contents are the property of the City of Dothan and intended for use in conducting official business unless specifically authorized by the Chief of Police and the System Administrator, or as provided in item 9 of this section.

CITY OF DOTHAN/GRAY 002187
CONFIDENTIAL

4. <u>Employees are advised that they do not maintain any right to privacy in EMD/MDT equipment or its contents.</u> This agency and the City of Dothan reserves the right to access any information contained upon or within any agency or City of Dothan owned EMD and further may require employees to provide passwords to files that have been encrypted or password protected.

5. Personally owned EMD's that are authorized and used by on-duty employees to access or otherwise utilize City of Dothan owned networks, hardware, software, voice or messaging devices or systems must be approved by the System Administrator. If used on duty, the personally owned device is subject to the same restrictions and guidelines outlined in this general order and the City of Dothan Standard Operating Guidelines. (See also SOG 11, 12, and 13)

6. <u>Discretionary viewing, downloading and/or transmitting materials (other than that required for police business) that involve the use of obscene language, images, jokes, sexually explicit materials or messages that are offensive or disparage any person, group or classification of individuals is **prohibited.**</u>

7. Confidential, proprietary or sensitive information may be disseminated only to individuals with a need and a right to know and when there is sufficient assurance that appropriate security of such information will be maintained. Such information includes but is not limited to the following;

    a. Personal information such as salary, performance reviews, complaints, grievances, misconduct, disciplinary information, medical records or related information.

    b. Criminal history and/or driver's history information or confidential informant information.

    c. Internal or external intelligence and/or tactical operations information or files.

8. No employee shall access any file or database unless they have a need and a right to such information. Additionally, personal identification and access codes shall not be revealed to any unauthorized source or person.

9. EMD devices are designed and intended for conducting the business of this agency and the City of Dothan and are restricted to that purpose with the following exceptions:

    a. Infrequent personal use of these devices may be permissible if limited in scope and frequency, if in conformance with other requirements and restrictions of this policy, if not connected with a profit making business enterprise or the promotion of any product, service or cause that is not

CITY OF DOTHAN/GRAY 002188
CONFIDENTIAL

approved by the Chief of Police and the System Administrator. (See also City of Dothan SOG 11, 12, and 13)

b. Personnel may make off-duty personal use of City-owned computers for professional and career development purposes in keeping with other restrictions of this policy and with prior notification and approval by the Chief of Police and the System Administrator. (See also City of Dothan SOG 11, 12, and 13)

10. Importing/Downloading Information and Software:

a. Employees shall not install any file, software, or other materials without System Administrator approval and/or installation instructions.

b. Employees shall not download any file, software or other materials from the Internet or other external sources without System Administrator approval.

c. In no case shall external materials or applications be downloaded directly to any shared network drive without the approval of a System Administrator.

d. Employees in certain positions or assigned to specific duties or responsibilities specifically designated by the Chief of Police, who may find themselves in need of specific software to accomplish, shall follow the established City of Dothan software request procedures to obtain the items necessary. The System Administrator shall approve all installations of software to City of Dothan owned EMD's.

e. Employees shall observe the copyright and licensing restrictions of all software applications and shall not copy software from internal or external sources unless legally authorized.

   i. Any software for which proof of licensing (original disks, original manuals and/or license) cannot be provided may be removed by authorized agency personnel or the System Administrator.

   ii. Privately-owned software shall not be loaded or otherwise installed on City of Dothan owned EMD's. (See also Item 4)

f. Employees shall observe copyright restrictions of any documents sent through, attached to or stored on any electronic mail.

g. Any hardware enhancements or additions to City of Dothan-owned equipment must be authorized by a System Administrator. The System Administrator is responsible for maintaining a current list of approved

CITY OF DOTHAN/GRAY 002189
CONFIDENTIAL

software and hardware enhancements or additions as well as determining the proper installation procedures upon approval.

h. Employees shall not permit unauthorized persons to use City of Dothan-owned EMD's/MDT's or electronic mail system.

## B. TRAINING

1. All sworn and non-sworn personnel assigned a police department vehicle equipped with an in-car computer system shall be trained on the proper operation of such equipment, prior to use. Training shall occur during recruit school for all new employees hired after the approval date of this policy, prior to operation of in-car computer equipment, and training shall include:

   a. Proper operation of the field reporting system, E-Cite/E-Crash and all additional components of the software package as provided by manufacture instructions.

   b. Operator certification of ACJIC/NCIC software to include privacy and security, use of the ACJIC/NCIC Terminal, proper use of ACJIC and NCIC procedure books and other related material.

   c. Proper operation of the dispatch-to-car and car-to-car data transmission as provided by manufacture instructions.

   d. All training, retraining, and re-certification shall be monitored, coordinated and administered through the Dothan Police Department Training Unit or the City of Dothan IT Department, or both. The DPD Training Unit, IT, Terminal Agency Coordinator or State Certified designee will assure training is in accordance with ACJIC/NCIC guidelines.

## II. EMD/MDT OPERATION:

A. After completion of training requirements, personnel assigned in-car computer equipment shall be issued a network log-on password for access to the system and a user-name and password for the ACJIC/NCIC network.

B. Operators shall log on to the computer and ACJIC/NCIC network at the beginning of their tour of duty for access to the field reporting system and ACJIC/NCIC. Operators shall insure they are logged off of the system at the end of their shift.

C. Officers accessing LETS/ALACOP data for access to the ACJIC/NCIC Network is limited to the following, (ISIS is required for out of state queries):

   1. Driver's License Inquiry

   2. Vehicle Registration Inquiry

   3. **General Inquiry**

   4. **Hazardous Material Inquiry**

   5. **Wanted Person Inquiry**

CITY OF DOTHAN/GRAY 002190
CONFIDENTIAL

D. <u>Any HIT/WANTED returns must be confirmed through the Communications Center prior to any enforcement action being taken.</u> All other access to include the entry and removal of computer input such as hit confirmations, stolen articles, wanted persons, transmission of teletypes, and other similar inputs require advanced certification and are not authorized by in-car computer operators. Such occurrences will be conducted via communications personnel.

E. Officers may be "data" dispatched low-priority calls for service from the 911 Center via the Mobile Data Terminal. All high-priority calls as determined by the police department will be dispatched by use of the police radio. For safety reasons, operation of in-car computers, other than acknowledging the initial response to a "data" dispatch shall not be authorized by the vehicle operator while the vehicle is in motion.

F. Operators shall not allow the operation of in-car computers to distract them from their duties, to include the obligation of safety to others or from distracting the operator's attention with person(s) or vehicles during stops or on calls for service.

G. Operators shall utilize in-car computer systems for *Official Use Only*. Reminder: *City employees have no expectation of privacy on any City owned computers.* Any computer files entered, utilized, or stored on the mobile data terminals constitute an official police record and may be available under an open records request; therefore, such information entered and maintained must comply with departmental policy and state/federal law.

H. Patrol officers shall complete all field reports in the field utilizing the EMD/MDT system, following the guidelines outlined above. Officers are not permitted to complete the field report at the police department without the approval of an on-duty supervisor. Once the report is completed by the reporting officer, the report is forwarded to a supervisor pending approval. Once the report is reviewed and approved by a supervisor, the report shall be saved to the designated location provided within the City of Dothan mainframe computer by the approving supervisor. Upon notification, the officer may delete the report from the EMD/MDT.

I.

Once the report is sent to the mainframe computer, the information shall be maintained in accordance with City policy and/or Alabama State Law. Reports may be stored on the in-car computer systems until all revisions are accomplished by the reporting officer and supervisory personnel. All report information is stored on the mainframe computer and may be viewed under a "read-only" format by officers from workstations and in-car computer systems.

CITY OF DOTHAN/GRAY 002191
CONFIDENTIAL

## III. SYSTEM SECURITY

A. All information transmitted and received on in-car computer systems utilizes 128 bit encryption to prevent unauthorized personnel from intercepting and viewing the data.

B. When operating the in-car computer system, operators shall make every effort to ensure information displayed on the view screen is not viewable by unauthorized personnel. If necessary, operators may be required to place the view screen in the down position (screen lying down over keyboard), when away from the vehicle or in crowded areas where there is a possibility of non-police personnel viewing the screen.

C. When in-car computer operators are not on duty or away from their assigned department vehicle, the vehicle shall be secured to prevent unauthorized access or theft of the computer. Additionally, vehicle operators shall comply with *General Order 200-40H, "Vehicle Operations"*.

D. After completion of tour of duty, in-car computer operators will log-off the ACJIC/NCIC and computer network and power-down the system.

E. Operators shall immediately report any actual or suspected unauthorized access or password compromise, hardware/software malfunction, or damage of in-car computer systems and forward a completed Form PD 12 detailing the problem to their immediate supervisor for appropriate routing.

F. Periodically, supervisors will review car-to-car "data" transmissions to ensure proper and professional communications are being utilized.

G. ACJIC/NCIC audits shall be conducted in accordance to ACJIC/Federal regulations and all findings shall be reported to the Chief of Police or designee.

## IV. SPECIAL NOTICE AND REMINDER

Upon determination that any member or employee of this department is/has violated the provisions of this directive shall be subject to disciplinary action, including suspension or termination of employment. In addition, state or federal criminal charges may be filed against the employee.

CITY OF DOTHAN/GRAY 002192
CONFIDENTIAL

# EXHIBIT

# 6

# DOTHAN POLICE DEPARTMENT
## GENERAL ORDER 100-41
### *Code of Ethics*



| | |
|---|---|
| CHIEF OF POLICE: | CALEA STANDARD: |
| *Gregory J. Benton* | 1.1.2 |
| Original signed 05/03/2010 | |
| EFFECTIVE DATE: | INDEX: |
| | Code of Ethics |
| LAST REVISION DATE: 05/13/10 | |

**Purpose:** To establish that all sworn personnel of the Dothan Police Department shall abide by the Law Enforcement Code of Ethics as published by the Dothan Police Department.

**Policy:** It is the policy of the Dothan Police Department that all personnel will receive ethics training regarding this general order and any other training related to ethics at least biennially.

## I.   GENERAL

A. **Primary Responsibility as a Police Officer:** A police officer acts as an official representative of government who is required and trusted to work within the law. The officer's powers and duties are conferred by statute. The fundamental duties of a police officer include serving the community; safeguarding lives and property; protecting the innocent; keeping the peace; and ensuring the rights of all to liberty, equality, and justice.

B. **Performance of the Duties of a Police Officer:** A police officer shall perform all duties impartially; without favor or affection or ill will; and without regard to status, sex, race, religion, political belief, or aspiration. All citizens will be treated equally with courtesy, consideration, and dignity.

Officers will never allow personal feelings, animosity, or friendships to influence official conduct. Laws will be enforced appropriately and courteously and, in carrying out their responsibilities, officers will strive to obtain maximum cooperation from the public. They will conduct themselves in appearance and deportment in such a manner as to inspire confidence and respect for the position of public trust they hold.

CITY OF DOTHAN/GRAY 002183
CONFIDENTIAL

C. **Discretion:** A police officer will responsibly use the discretion vested in the position and exercise it within the law. The principle of reasonableness will guide the officer's determinations and the officer will consider all surrounding circumstances in determining whether any legal action shall be taken.

Consistent and wise use of discretion, based on professional policing competence, will do much to preserve good relationships and retain the confidence of the public. There can be difficulty in choosing between conflicting courses of action. It is important to remember that a timely word of advice which may be correct in appropriate circumstances, rather than arrest, can be a more effective means of achieving a desired end.

D. **Use of Force:** A police officer will never employ unnecessary force or violence, and will use only such force in the discharge of duty as is reasonable in all circumstances. While the use of force is occasionally unavoidable, every police officer will refrain from applying the unnecessary infliction of pain or suffering and will never engage in cruel, degrading, or inhuman treatment of any person.

E. **Confidentiality:** Whatever a police officer sees, hears, or learns of, which is of a confidential nature, will be kept secret unless the performance of duty or legal provision requires otherwise.

Members of the public have a right to security and privacy, and information obtained about them must not be improperly divulged.

F. **Integrity:** A police officer will not engage in acts of corruption or bribery, nor will an officer condone such acts by other police officers.

The public demands that the integrity of police officers be above reproach. Police officers must, therefore, avoid any conduct that might compromise integrity and thus undercut the public confidence in a law enforcement agency. Officers will refuse to accept any gifts, presents, subscription, favors, gratuities, or promises that could be interpreted as seeking to cause the officer to refrain from performing official responsibilities honestly and within the law. Police officers must not receive private or special advantage from their official duty. Respect from the public cannot be bought; it can only be earned and cultivated.

G. **Cooperation with Other Officers and Agencies:** Police officers will cooperate with all legally authorized agencies and their representatives in the pursuit of justice. An officer's own agency may be one among many organizations that provide law enforcement services to a jurisdiction. It is imperative that police officers assist colleagues fully and completely with respect and consideration at all times.

H. **Personal/Professional Capabilities:** Police officers will be responsible for their own standard of professional performance and will take every reasonable opportunity to enhance and improve their level of knowledge and competence.

Through study and experience, a police officer can acquire the high level of knowledge and competence essential for the efficient and effective performance of duty. The

G.O. 100-41                         Page 2 of 3

CITY OF DOTHAN/GRAY 002184
CONFIDENTIAL

acquisition of knowledge is a never-ending process of personal and professional development that should be pursued constantly.

1. **Private Life:** Police officers will behave in a manner that does not bring discredit to their agencies or themselves.

A police officer's character and conduct, while off duty, must always be exemplary, thus maintaining a position of respect in the community in which he or she lives and serves. The officer's personal behavior must be beyond reproach.

## II. LAW ENFORCEMENT CODE OF ETHICS – IACP/DPD

*AS A LAW ENFORCEMENT OFFICER, my fundamental duty is to serve the community; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation and the peaceful against violence or disorder; and to respect the constitutional rights of all to liberty, equality and justice.*

*I WILL keep my private life unsullied as an example to all and will behave in a manner that does not bring discredit to me or to my agency. I will maintain courageous calm in the face of danger, scorn or ridicule; develop self-restraint; and be constantly mindful of the welfare of others. Honest in thought and deed both in my personal and official life, I will be exemplary in obeying the law and the regulations of my department. Whatever I see or hear of a confidential nature or that is confided to me in my official capacity will be kept ever secret unless revelation is necessary in the performance of my duty.*

*I WILL never act officiously or permit personal feelings, prejudices, political beliefs, aspirations, animosities or friendships to influence my decisions. With no compromise for crime and with relentless prosecution of criminals, I will enforce the law courteously and appropriately without fear or favor, malice or ill will, never employing unnecessary force or violence and never accepting gratuities.*

*I RECOGNIZE the badge of my office as a symbol of public faith, and I accept it as a public trust to be held so long as I am true to the ethics of police service. I will never engage in acts of corruption or bribery, nor will I condone such acts by other police officers. I will cooperate with all legally authorized agencies and their representatives in the pursuit of justice.*

*I KNOW that I alone am responsible for my own standard of professional performance and will take every reasonable opportunity to enhance and improve my level of knowledge and competence. I will constantly strive to achieve these objectives and ideals, dedicating myself before God to my chosen profession . . . law enforcement.*

CITY OF DOTHAN/GRAY 002185
CONFIDENTIAL

# EXHIBIT
# 7

# DOTHAN POLICE DEPARTMENT

## GENERAL ORDER 100-50

### *Code of Conduct*



| CHIEF OF POLICE: | CALEA STANDARD: |
| Gregory J. Benton | 22.2.7, 22.3.1, 26.1.1, |
| | 26.1.3 |
| Original signed 08/11/2010 | |
| EFFECTIVE DATE: 08/13/10 | INDEX: Conduct |
| LAST REVISION DATE: 1/16/13 | |

**Purpose:** The purpose of this Order is to establish uniform rules of conduct and responsibilities required by employees and prohibited acts on the part of employees of the Dothan Police Department.

**Policy:** This Order is to serve as a guideline and is not intended to encompass all policies, rules and/or regulations that may be stated elsewhere in the policy manual. It shall be departmental policy to provide employees with written rules and regulations that define what is expected of them with respect to their conduct and responsibilities. Employees are required to follow all directives and adhere to all rules and regulations imposed upon them by policy and by law.

## I. GENERAL

A. Officers and employees shall not commit any acts or omit any acts, which constitute a violation of any of the rules, regulations, directives, policies or orders of the Police Department or of the City of Dothan; whether cited in this Order, the City of Dothan Personnel Rules Manual, or elsewhere. A copy of the policy manual is maintained on the City of Dothan Intranet network and available for all employees.

B. Disciplinary actions that may be taken as a result of a violation of a policy, procedure, rule, or regulation of the Dothan Police Department are established in the *City of Dothan Personnel Rules and Regulations Employee Handbook*.

C. Each incident will be based on the merits of that case.

## II. CONDUCT UNBECOMING AN OFFICER

A. An officer must at all times, on duty and off duty, conduct himself in a manner which does not bring discredit to himself, the Department, the City of Dothan, or law enforcement in general.

CITY OF DOTHAN/GRAY 002193
CONFIDENTIAL

B. Conduct unbecoming an officer/employee shall include any conduct or personal association that brings the Department into disrepute; which adversely affects the morale or efficiency of the Department; has an adverse effect on the employee's job performance, or which has a tendency to destroy public respect for employees and confidence in the Department.

C. To sustain conduct unbecoming an officer, it is not necessary that the alleged conduct be criminal in nature. The basis for disciplinary action will be a preponderance of the evidence.

D. Typical examples of conduct unbecoming officers include, but are not limited to:

1. Repeated or flagrant violations of laws or ordinances;

2. Unreasonably vulgar or profane language in public;

3. Attempting to improperly affect the disposition of a traffic ticket or other case;

4. Assault on a fellow officer/employee;

5. Misappropriation of City/Departmental Property;

6. Intentionally damaging or attempting to damage City property;

7. Intentional interference with legal processes or cases;

8. Removal and/or release of Departmental records without authorization;

9. Possession/use of illegal drugs/substances;

10. Horseplay with firearms or other City Property;

11. Failure to cooperate with an internal investigation;

12. Public criticism of a Supervisor or Peer.

D. Any employee, to include a civilian employee, who observes or has knowledge of any other employee who is engaged in criminal activity, or any other activity which may be included in Section II. B. shall be obligated to report such activity in writing to the Office of the Chief of Police. This report should be submitted no later than eight hours after the beginning of the next working day following the observation or receipt of knowledge of the aforementioned activity.

## III. INSUBORDINATION

A. An officer may be disciplined or discharged for his speech or conduct before a superior officer if it is bitter, discourteous, abusive, profane, or threatening. Failing to carry out a lawful order when directed is insubordination.

B. Compliance with Lawful Orders: The Department is organized with a clearly defined chain of command. Obedience to a superior's lawful command is essential for the safe and prompt performance of law enforcement operations. Lawful orders, commands, rules, regulations, or directives shall be followed by all employees.

## IV. DERELICTION OF DUTY

A. An employee carries with him the responsibility for the safety of the community and

CITY OF DOTHAN/GRAY 002194
CONFIDENTIAL

his fellow employees. He discharges that responsibility by the faithful and diligent performance of his/her assigned duties. Members of the Department shall promptly and punctually perform these duties.

B. Dereliction/Neglect of duty shall include but not be limited to:

1. Failure to arrest or notify a superior officer/ employee of a serious violation of the law which the officer/employee has knowledge and jurisdiction over;

2. Failure to report for duty, to include failure to report in answer to a judicial subpoena;

3. Failure to respond to a call for service;

4. Cowardice in the performance of duty, defined as shrinking away from danger or responsibility without justifiable cause;

5. Failure to respond when called via radio;

6. Sleeping on duty;

7. Repeatedly leaving assigned area without notifying communications or a superior officer/employee;

8. Allowing escape of a prisoner through negligence or willful conduct or actions.

## V. ABUSE OF POSITION

A. Employees shall not use their official position, official identification cards or badges to solicit any of the following:

1. Personal or financial gain, other than as outlined in this section;

2. Obtaining privileges not otherwise available to them except in the performance of duty;

3. Avoiding the consequences of illegal acts.

B. Failure to report any knowledge of an activity that could be construed as bribery is incompatible with the efficient operation of the Department and is grounds for dismissal.

C. Soliciting Gifts, Gratuities, Fees, Rewards, Loans, Etc.: Officers and employees shall not solicit any gift, gratuity, fee, reward, or loan, where there is a direct or indirect connection between the solicitation and their employment by or membership in the Police Department, unless approved by the Chief of Police.

D. Accepting Discounted Meals: Officers of the Dothan Police Department are authorized to accept discounted meals at restaurants which provide them; provided that the following guidelines are met:

1. The officer is "on-duty" at the time the discounted meal is offered and accepted;

2. The discounted meal is available to all on-duty police officers of this department;

3. The officer does not solicit the discount for the meal. This provides that even though it may be the establishment's policy to provide the discount, NO

CITY OF DOTHAN/GRAY 002195
CONFIDENTIAL

officer shall remind establishment's employees that such discount is expected;

4. The officer utilizes the discount no more than once a tour of duty at any given establishment;

5. The discount is only to be accepted by departmental personnel. The discount is not to be accepted for any family members, friends, or acquaintances, which may be present with officer; the giving of the discount or the receipt thereof does not provide any expectation to receive any kind of benefit for the restaurant, the department or officer.

6. The Chief of Police may at his discretion, alter, change or restrict this policy to correct abusive action that may result due to violations of the policy.

E. Accepting Gifts, Gratuities, Fees, Loans, Etc.: Officers and employees shall not accept, either directly or indirectly, any gift, gratuity, fee, loan, or any other thing of value arising from or offered because of police employment or any activity connected with such employment unless approved by the Chief of Police. Officers and employees shall not accept any gift, gratuity, fee, loan, or anything of value, when the acceptance might tend to influence, directly or indirectly, the actions of the member or employee or any other member or employee in any manner of police business, or which might tend to cast an adverse reflection on the Police Department or any officer or employee of the Department.

F. Acceptance of Rewards, Gifts and Gratuities by Departmental Bureaus or Sections: Any individual Departmental Bureau and/or Section may accept a gift or gratuity, provided that it is offered as a measure of appreciation and thoughtfulness, and that every member of that Bureau and/or section that was involved in the act being rewarded is included and provided for. Further, before acceptance of any gift or gratuity with a value exceeding $50.00, expressed authorization from the Chief of Police in the form of a written memorandum shall be obtained and filed with the Bureau Commander. (Unsolicited food items are excluded from this section.)

G. Disposition of Unauthorized Gifts, Gratuities, Etc.: Any unauthorized gift, gratuity, loan, fee, reward, or other thing falling into any of the above categories which come into the possession of any officer or employee will be forwarded to the Chief of Police together with a written report explaining the surrounding circumstances. The Chief of Police will make the final determination concerning the disposition of the item in question.

H. Endorsements and Referrals: Officers shall not recommend or suggest in any manner, while in the course of their official duties, the employment or procurement of a particular product, professional service, or commercial service (such as an attorney, ambulance service, towing service, bondsman, mortician, etc.). In the case of ambulance or towing service, when such service is necessary and the person needing the service is unable or unwilling to procure it or requests assistance, officers shall proceed in accordance with established departmental procedures.

## VI. INCOMPETENCY, INEFFICIENCY, AND/OR UNSATISFACTORY PERFORMANCE

A. Officers shall maintain sufficient competency to properly perform their duties and assume the responsibilities of their positions.

CITY OF DOTHAN/GRAY 002196
CONFIDENTIAL

B. Officers shall perform their duties in a manner, which will maintain the highest standards of efficiency in carrying out the functions and objectives of the Department.

C. Unsatisfactory performance may be demonstrated by a lack of knowledge of the application of laws required to be enforced; an unwillingness or inability to perform assigned tasks; the failure to conform to work standards established for the officer's rank, grade, or position; the failure to take appropriate action on the occasion of a crime, disorder, or other condition deserving police attention; or absence without leave. This list is not, nor is it intended to be, all-inclusive.

D. Repeated poor evaluations and/or a written record of repeated infractions of rules regulations, directives, policies, or orders of the Department may be considered prima facie evidence of unsatisfactory performance.

## VII. CONFORMANCE TO LAWS

A. Officers are expected to obey all laws of the United States and of any State and local jurisdiction in which the officers are present.

B. Officers/employees will notify their Bureau Commander as soon as possible when they are arrested for any violation of law or become aware that they are considered a suspect in any crime.

C. The Chief of Police, Major and the respective Bureau Commander will consider the nature and frequency of the offense when determining if departmental action is necessary.

## VIII. REPORTING FOR DUTY

A. Officers shall report for duty at the time and place required by assignment or orders and shall be physically and mentally fit to perform their duties.

B. They shall be properly equipped and cognizant of information required for the proper performance of duty so that they may immediately assume their duties.

C. Judicial subpoenas shall constitute an order to report for duty under this section.

D. Calls dispatched by the Communications Center shall be considered orders of the Chief of Police and shall be carried out immediately. Any deviations shall require the affected personnel to submit a PD 12 explaining the reason for the deviation.

## IX. PUBLIC STATEMENTS AND APPEARANCES

A. Employees shall not publicly criticize or ridicule the Department, its policies, or other officers/employees by speech, writing, or other expression, where such speech, writing, or other expression is defamatory, obscene, or unlawful, and undermines the effectiveness of the Department, interferes with the maintenance of discipline, is detrimental to the welfare and good name of the Department, or is made with reckless disregard for the truth. Employees shall not address public gatherings, appear on radio or television, prepare any articles for publication, act as correspondents to a newspaper, internet blog or newspaper, or a periodical, release, or divulge, investigative information or any other matters of the Department as a department representative without proper authority from the Office of the Chief of Police.

## X. USE/MISUSE OF ALCOHOL AND/OR DRUGS

CITY OF DOTHAN/GRAY 002197
CONFIDENTIAL

A. Use of Alcohol on Duty: Officers shall not consume intoxicating beverages while on-duty, or off-duty in uniform, except in the performance of duty and then only under specific and proper orders of a superior officer or when circumstances dictate. Officers shall not be under the influence of alcohol when reporting for duty. Officers shall not purchase alcohol when on-duty or in uniform or operating a departmental vehicle, even for consumption at a later time.

B. Possession and Use of Drugs: Employees shall not possess or use for personal consumption any controlled substances, narcotics, or hallucinogens except prescribed for treatment by a physician or dentist. When taking prescribed controlled substances or nonprescription medication likely to cause drowsiness, or other impairment, employees shall notify their superior officer.

C. Intoxication Verification: When reasonable grounds exist to believe an on-duty employee may be intoxicated (two supervisors must concur), that employee may be ordered to submit to chemical test(s) of his blood, breath, or urine to determine the presence of any alcohol or drug content, and the extent thereof. Employee Health Clinic form number 100 must be completed. Failure to obey an order to submit to chemical test(s) may result in charges of insubordination.

D. Use of Alcohol Off-Duty: Employees shall refrain from consuming intoxicating beverages to the extent that it results in impairment, intoxication, or obnoxious or offensive behavior which discredits them or the Department, or renders that employee unfit to report for their next regular tour of duty.

E. An arrest for and/or a pattern of intoxication are grounds for dismissal.

## XI. CARE AND MAINTENANCE OF EQUIPMENT

A. All equipment issued to employees of this Department is and remains the property of the Dothan Police Department.

B. Certain items issued by the Department are considered disposable, and need not be returned upon termination of employment (for example; shoes). However, these items must be present or accounted for during the course of employment.

C. It shall be the responsibility of each and every employee of this Department to properly care for and practice proper preventive maintenance for equipment issued for their use, and/or equipment of a general nature, which employees may come into contact with.

D. An employee who comes into contact with any piece of equipment, which is defective, soiled, broken, requires servicing, or is otherwise inoperable, shall immediately report such finding to his/her supervisor.

E. Under normal conditions, employees shall utilize Departmental equipment only for its intended use, in accordance with established Departmental procedures, and shall not unnecessarily abuse, damage, or lose Departmental equipment/property. All Departmental equipment shall be maintained in proper order at all times.

## XII. MISUSE OF FIREARMS

A. Officers shall not use or handle weapons in a careless or imprudent manner.

B. Typical examples of misuse of firearms include but are not limited to:

CITY OF DOTHAN/GRAY 002198
CONFIDENTIAL

1. Pointing any firearm at a fellow officer;

2. Firing any type of unauthorized ammunition that damages the weapon;

3. Negligent shooting of another;

4. Drawing a weapon in public except for inspection by a superior or for official duty reasons;

5. Carrying a loaded shotgun/rifle in the Police Department building.

6. Violation of safety rules and regulations while on the firing range.

## XIII. FAILURE TO PAY DEBTS

Employees are expected to meet their civil monetary liabilities. In addition, employees are not to establish any financial relationships that present a conflict of interest, or compromise the image of the Department.

## XIV. MISTREATMENT OF PRISONERS AND CITIZENS

An officer lawfully acting within the scope of his authority does not deprive persons of their civil liberties. However, when an officer exceeds his authority by unreasonable or unnecessary use of force or by negligent conduct which results in a deprivation of an arrestee or citizen's civil liberties, he violates the sanctity of the law which he is sworn to uphold and is subject to disciplinary and/or civil action and/or criminal prosecution.

## XV. INTERVENTION AND INTERFERENCE

A. Employees shall not interfere with or hinder the legal and legitimate official actions of other officers or by any other government agency unless ordered to intervene by a superior officer or the intervening officer believes beyond a reasonable doubt that a manifest injustice would result from failure to take immediate action.

B. Officers shall notify their immediate supervisor, as soon as reasonably possible, when the officer initiates any investigation or official action, which is not part of their regular duties. Officers may, however, take immediate appropriate action as necessary.

C. Officers/employees shall treat the official business of the Department as confidential. Information regarding official business shall be disseminated only to those for whom it is intended, in accordance with established, written departmental procedures.

D. Officers may remove or copy official records or reports from a police installation only in accordance with established, written departmental procedures.

E. Officers shall not divulge the identity of persons giving confidential information except as authorized by proper authority.

## XVI. SEXUAL AND RACIAL HARASSMENT

A. The Equal Employment Opportunity Commission (EEOC) has issued guidelines setting forth the Commission's interpretation regarding sexual and racial harassment as a violation of Title VII of the Civil Rights Act of 1964. These guidelines are consistent with our policy that conduct by employees which creates an intimidating, hostile, or offensive working environment in regards to sexual or racial matters will not be tolerated; and those violating this policy may be subject to disciplinary action up to and including discharge. Any employee who feels that he or she has been subjected to

CITY OF DOTHAN/GRAY 002199
CONFIDENTIAL

sexual or racial harassment is urged to contact his supervisor, Office of the Chief of Police, the City of Dothan EEO Officer, the Assistant Personnel Director, Personnel Analyst or the Personnel Director.

B. A supervisor of the Dothan Police Department who receives notification either in writing or verbally of the sexual or racial harassment of an employee, shall immediately document such notification in a signed memorandum to the Chief of Police providing the following information at a minimum:

1. Name of person subjected to the harassment;

2. Name of the person(s) conducting the harassment;

3. Time, date, and location of the harassment;

4. Brief description of incident;

5. Indication as to whether this is an isolated incident or a recurring pattern, if known;

6. Any other detail significant to the incident.

C. The memorandum will be hand carried by the employee documenting the notification of harassment to the Office of the Chief of Police. The Personnel Director and City of Dothan EEO Officer shall be notified immediately.

D. The Chief, upon receipt of the documented notification, will evaluate and determine if a criminal offense or misconduct involving Police Department personnel has occurred. If an investigation is necessary the Office of the Chief of Police will conduct the investigation utilizing any of the following methods.

1. Appointment of an internal investigator, Major or a Bureau Commander who will report their findings directly to the Chief;

2. Request an outside agency to investigate the allegation and report their findings directly to the Chief;

3. Investigate the incident himself.

E. Investigative findings and reports will be handled in accordance with policy established in the City of Dothan Employee Handbook.

F. Employees who are the victims of sexual or racial harassment are encouraged to take the matter directly to **their supervisor,** the Office of the Chief of Police, EEO Officer, the Assistant Personnel Director or Personnel Analyst.

## XVII. TELEPHONE AND TELEPHONE USAGE

A. Officers of this department are required to have a telephone contact number at all times and to supply the Department with the telephone number. Officers shall notify the Chief's Office in writing of any change of the telephone number or the address of their residence by completing a City of Dothan Employee Information Change Form PF186A within three days of such change.

B. Officers on paid leave status from the police department shall be responsible for returning telephone calls, pages, and/or messages from supervisory personnel of the police department as soon as possible.

C. Employees of this Department shall not use Department telephones for long distance

CITY OF DOTHAN/GRAY 002200
CONFIDENTIAL

calls except on departmental business or authorized by a supervisor. Telephone calls will be kept to a minimum and of a minimum duration.

D. Officers may, at their discretion, choose to possess a cellular telephone while on duty. However, personal calls must be limited while on duty. Officers may choose to use their cellular phone for departmental business at their expense. Officers shall exercise special care when using a cellular phone while operating a department vehicle and comply with any and all laws associated with the use of personal communications devices. The Chief of Police may revoke this privilege at any time.

## XVIII. RESIDENCE

Officers shall physically reside where they can respond to the Police Department within thirty (30) minutes from the time notified. Newly hired officers are required to comply with the residence requirement in accordance with established City of Dothan policy. Failure by any officer to comply with this requirement may result in termination.

## XIX. REQUESTS FOR ASSISTANCE

When any person requests assistance; to make a report; to be contacted by an officer, or lodge a complaint, either by telephone or in person, all pertinent information will be obtained in an official and courteous manner and will be properly acted upon consistent with established departmental procedures.

## XX. DEPARTMENTAL REPORTS

A. Officers shall submit all necessary reports on time and in accordance with established departmental procedures.

B. Reports submitted by officers shall be truthful and complete, and no officer shall knowingly enter or cause to be entered any inaccurate, false, or improper information, except as required in the performance of duty.

## XXI. PROCESSING PROPERTY AND EVIDENCE

A. Property or evidence which has been discovered, gathered, or received in connection with departmental responsibilities will be processed in accordance with established departmental procedures.

B. Officers shall not convert to their own use, conceal, manufacture, falsify, destroy, remove, tamper with, or withhold any property or evidence in connection with an investigation or other police action, except in accordance with established departmental procedures.

## XXII. ABUSE OF PROCESS

Officers shall not make false accusations in a criminal or traffic enforcement action or case.

## XXIII. SLEEPING ON DUTY

Officers shall remain awake and alert while on duty [Exceptions must be made in advance of the specific assignment; i.e., stakeouts]. If unable to do so, they shall report such to their supervisor immediately.

CITY OF DOTHAN/GRAY 002231
CONFIDENTIAL

## XXIV. LEAVING DUTY POST

Officers shall not leave their assigned duty posts during a tour of duty without first seeking and receiving the permission of their supervisor; receiving dispatched instructions or upon the lawful order of a superior officer.

## XXV. MEAL BREAKS

Officers on 7K work schedule shall be permitted to suspend patrol or other assigned activity for a period of forty-five (45) minutes, subject to immediate recall at any time, generally for the purpose of having meals during their tour of duty. All other employees shall limit their meal break as approved by Department policy or their Supervisor. Such break shall be only at such time and place, within or contiguous to the City limits, as approved by their immediate supervisor.

## XXVI. GAMBLING

Officers shall not engage or participate in any form of illegal gambling at any time, except in the performance of duty and while acting under proper and specific orders from a Superior Officer or the Chief of Police. Except as outlined above; officers shall not engage in any form of gambling while on duty or in uniform.

## XXVII. IDENTIFICATION

A. Employees and volunteers shall be issued a Dothan Police Department Identification Card when employed with the Department. The identification card for sworn personnel shall include a minimum of the Dothan Police Department patch, officer rank and name, officer photograph, officer employee number, name of the Chief of Police and be clearly marked POLICE at the bottom of the card. Retired Officers and non-sworn department personnel shall be issued Identification cards that are clearly marked RETIRED. Identification cards for regular, non-sworn members of the Department shall include a minimum of the Dothan Police Department patch, persons name, photograph, employee number, name of the Chief of Police and be clearly marked, STAFF at the bottom of the card. Identification cards for volunteer, non-sworn members of the Department shall include a minimum of the Dothan Police Department patch, persons name, photograph, employee number, name of the Chief of Police and be clearly marked, AUXILIARY or CHAPLAIN at the bottom of the card. All issued identification cards shall remain the property of the Dothan Police Department.

B. Officers shall carry their badge and Dothan Police Department Identification Card all times while on duty, except when impractical or dangerous to their safety or to an investigation. Officers shall have their badge and police department identification card readily available at all times while within the jurisdiction, whether on or off duty when armed.

C. Officers shall furnish their name and employee identification card for viewing to any person requesting that information when they are on duty or while holding themselves out as having an official capacity, except when the withholding of such information is necessary for the performance of police duties or is authorized by proper authority.

D. Regular, Auxiliary and Chaplain Members shall wear their Dothan Police Department Identification Cards plainly visible when working and are encouraged to carry and

CITY OF DOTHAN/GRAY 002232
CONFIDENTIAL

have their identification cards readily available when off duty. Police Officers when in civilian attire and on duty shall wear their Dothan Police Department Identification cards plainly visible unless to do so would compromise their safety or interfere with an investigation.

## XXVIII. CITIZEN COMPLAINTS

Officers/Employees shall courteously direct any complaint made by a citizen against any employee of the Department to the Shift Supervisor or Professional Standards. Officers/Employees shall follow established departmental procedures for processing complaints *(G.O. 200-30, Professional Standards)*.

## XXIX. COURTESY

Officers/Employees shall be courteous to the public. Officers/Employees shall be tactful in the performance of their duties, control their tempers, exercise patience and discretion, and shall not engage in argumentative discussion. In the performance of duty, officers/employees shall not use coarse, violent, profane, or insolent language or gestures, and shall not express any prejudice concerning race, religion, politics, national origin, lifestyle, or similar personal characteristics.

## XXX. OPERATING VEHICLES

Officers shall operate official vehicles in a careful and prudent manner, and shall obey all laws and all departmental orders pertaining to such operation *(General Order 200-40H)*. Loss or suspension of any driving license shall be immediately reported to the Bureau Commander.

## XXXI. CARRYING FIREARMS

A. Officers shall carry firearms in accordance with law and established departmental procedures *(See G.O. 200-11H, Weapons Authorization)*.

B. Any officer carrying his department-issued firearm while off duty must have his badge and I.D. card readily available. Any officer carrying a personal weapon while off duty must have his badge and I.D. card readily available when within the jurisdiction. Anytime an officer is relying upon his position for the authority to carry a weapon, he must have his badge and I.D. card readily available.

## XXXII. TRUTHFULNESS

Upon the order of the Chief, the Chief's designee, or a superior officer, employees shall truthfully answer all questions specifically directed and related to the scope of employment and operations of the Department, which may be asked of them.

Any employee found to be intentionally untruthful may be subject to termination, aside from any additional improper conduct discovered.

## XXXIII. ARREST, SEARCH, AND SEIZURE

Officers shall not make any arrest, search or seizure when they know or should know that it is contrary to law or departmental procedure.

## XXXIV. TARDINESS INCIDENTS

G.O. 100-50                       Page 11 of 15

CITY OF DOTHAN/GRAY 002233
CONFIDENTIAL

A. Employees are expected to be at work at the assigned time. Any officer or employee arriving for duty later than the scheduled time shall be considered tardy.

B. If the officer's supervisor feels that the officer or employee has an excusable reason for being tardy, he may excuse the tardiness, with no further involvement.

C. If, in the opinion of the Supervising Officer, the reason for tardiness is not excusable, the supervisor may take action in accordance with the City of Dothan Personnel Rules and Regulations as outlined in the Employee Handbook.

## XXXV. USE OF TOBACCO

A. Officers, when on duty and/or in uniform, may use tobacco as long as:

1. They are not in formation;

2. They must not leave their assignment/post for the sole purpose of doing so;

3. They are not engaged in traffic direction and/or control;

4. They are not engaged in official police business with a citizen.

5. They are not within the <u>Police Headquarters Building</u> or other tobacco prohibited area.

## XXXVI. CONDUCT TOWARD SUPERIORS, SUBORDINATES, & ASSOCIATES

A. All employees shall treat superior officers, subordinates, and associates with respect. They shall be courteous and civil at all times in their relationships with one another. Employees are forbidden to injure or discredit other employees by capricious conduct or by abusive language. When on duty and particularly in the presence of other officers, employees, or the public, officers shall be referred to by rank.

B. Ranking officers shall, by example, demonstrate proper deportment and desirable attitudes in dealing with the public and their subordinates. Authority in the department shall be exercised to the end that justice and fairness are accomplished. Supervisors are forbidden to injure or discredit those under their authority by tyrannical or capricious conduct or by abusive language.

## XXXVII. LABOR ACTIVITIES

Officers and employees shall not engage in any strike. A strike action includes the concerted failure to report for duty, willful absence from one's position, taking unauthorized holidays, sickness unsubstantiated by a physician's statement, the stoppage of work, or the abstinence in whole or in part from the full, faithful and proper performance of the duties of employment for the purpose of inducing, influencing or coercing a change in conditions, compensation, rights, privileges, or obligations of employment.

## XXXVIII. MEMBERSHIP IN ORGANIZATIONS

A. Officers and employees of this Department shall not affiliate with, or become a member of, any organization if such affiliation or membership would in any way impede or prevent their effective duty performance, or bring the credibility and integrity of the Department into question.

B. Officers and employees shall not affiliate with or become a member of any

CITY OF DOTHAN/GRAY 002234
CONFIDENTIAL

organization whose purpose, objective or reputation is, or has been shown to be, directed toward unlawful or illegal activities; except with permission from the Chief of Police specifically for legitimate law enforcement purposes.

C. Determination of violations of this section shall reside with the Office of the Chief of Police.

## XXXIX. REPORTING ACCIDENTS

A. Accidents involving department vehicles, property, personnel, and/or equipment must be reported in accordance with procedures established by Departmental policy (*G.O. 400-51, Traffic Accident Investigation* and the City of Dothan Motor Vehicle Operations Policy located in the Employee Handbook).

B. The supervisor of the operator involved in a motor vehicle accident shall submit necessary reports setting forth his findings relative to the responsibility or negligence on the part of the operator to the Chief of Police as soon as practical.

C. If the Officer is off duty when the accident occurs, the on-duty supervisor shall submit the necessary reports to the Chief of Police.

## XL. RADIO INSTRUCTIONS

A. All messages transmitted over the police radio system or Mobile Data Terminals (MDT) by any officer or communications personnel shall be direct and concise and shall conform to all departmental radio procedures and the rules and regulations of the Federal Communications Commission.

B. Officers are required to answer all radio calls in accordance with *General Order 200-20, Communications*. No officer shall fail to obey or refuse to acknowledge any communication or lawful order or direction transmitted by the Communications Center, unless directed to do so by a superior officer or supervisor.

## XLI. CIVIL DISPUTES

All officers shall take a neutral position in any dispute of a civil nature, acting only to prevent or control any breach of the peace that may arise and only take actions necessary to that end and/or in accordance with established policies or law.

## XLII. AWARENESS OF ACTIVITIES

A. Upon returning to duty from any period of absence, all officers and employees shall inform themselves about all new orders, regulations, memoranda and all other important matters governing their assignments to include checking their department email account, PowerDMS account, bulletin board and monitors located in their division.

B. A sworn officer shall familiarize himself with all the laws, statutes, ordinances and regulations necessary for the proficient execution of his duty as a Law Enforcement Officer.

## XLIII. KNOWLEDGE OF THE COMMUNITY

Every officer shall familiarize himself with the geography of the community, including routes of public transportation, the location of streets, highways, bridges, schools, public

CITY OF DOTHAN/GRAY 002235
CONFIDENTIAL

buildings and places, hospitals, courts, transportation offices and stations, prominent or important office buildings, large industrial plants or commercial establishments, and such other information as may be disseminated by his superior officers from time to time.

## XLIV. LEAVING THE CITY LIMITS

A. Whenever it is necessary in the performance of duty for an officer to leave the city limits of Dothan, he shall request permission for such leave from his supervisor. Upon receipt of approval, the officer shall inform the Communications Center of his intentions prior to leaving the City Limits and notify the Communications Center upon return.

B. If an emergency prevents following the procedure outlined in paragraph "A", the officer must notify supervisor as soon as possible.

## XLV. MUTUAL PROTECTION

All officers shall come to the immediate aid, assistance, or protection of fellow officers, who in the performance of their duties require such aid and assistance.

## XLVI. PERSONAL RELATIONSHIPS

All officers and employees of this Department shall be considerate and polite at all times to all department personnel and maintain good relations with their superiors and their fellow officers in a spirit of mutual concern for their common objectives.

## XLVII. PHYSICAL OR PSYCHOLOGICAL EXAMINATION

An officer/employee shall submit to a physical, medical or psychological examination, at the expense of the Department, when so directed by the Chief of Police.

## XLVIII. PHYSICAL FITNESS

The nature of the job of law enforcement requires a certain degree of physical fitness and mental alertness. Officers are expected to keep themselves as physically fit as their age permits. Supervisors should allow a reasonable amount of time during a shift for sworn personnel to physically train to remain fit for duty. Public Safety and response times should not be diminished. Employees are encouraged to utilize city resources for physical fitness as well as any wellness programs or medical check ups that may be offered. **See also General Order 100-37 Physcial Fitness**.

## XLIX. TRIALS AND HEARINGS

All officers concerned with cases before the courts, grand jury, or bond hearings shall be punctual in attendance. All officers shall have the cases in which they are concerned properly prepared and their evidence suitably arranged for presentation to the court, grand jury or hearing board. They shall afford the utmost respect toward the court, officers of hearing boards, and members of the jury. When presenting evidence or testimony they shall speak calmly and explicitly in a clear, distinct and audible tone so as to be easily understood. They shall give evidence with accuracy, confining themselves to the case before the court. When cross-examined by a defense attorney, they shall answer with the same civility and readiness as when giving testimony in support of the prosecution.

CITY OF DOTHAN/GRAY 002236
CONFIDENTIAL

## L. DEPARTMENTAL LETTERHEAD

Employees shall not use the Department Letterhead for private correspondence or for sending official correspondence out of the Department without the permission from the Office of the Chief of Police.

## LI. MAILING ADDRESS

Officers and employees shall not use the Department as a mailing address for private purposes, without permission of the Chief of Police. At no time will the Department be used as mailing address for the purpose of a motor vehicle license or registration.

## LII. USE OF PRIVATE VEHICLES

While an officer or employee is on regular Departmental duty he shall not drive a privately owned vehicle to accomplish Departmental business, unless authorized to do so by a Bureau or Division Commander, Major or the Chief of Police.

## LIII. FRATERNIZATION

Social relationships may develop between employees from time to time. Although such consensual relationships are a matter of personal choice and privacy between the individuals involved, any adverse effect that such relationships have on the Department will not be tolerated. This is necessary to avoid misunderstandings; actual or potential conflicts of interest, complaints of favoritism, possible claims of sexual harassment or hostile work environment, and the morale and dissension problems that can result from fraternization.

Dating, cohabitation or sexual intimacy between supervisors and personnel under their supervision, or between two supervisors in the same chain of command, are clearly inappropriate and are prohibited. Additionally, dating, cohabitation or sexual intimacy between personnel assigned to the same precinct and shift, or specialized unit are prohibited.

Should two employees wish to be involved in a relationship which would be prohibited by this code of conduct, they must request through the chain of command that one party be transferred to another chain of command before beginning or continuing a relationship. The responsibility and mandatory obligation to disclose the existence of the relationship will rest with the supervisor or senior employee involved.

Failure by an employee to report a relationship as required will constitute misconduct and may subject an employee to disciplinary action.

CITY OF DOTHAN/GRAY 002237
CONFIDENTIAL

# EXHIBIT

# 8

# DOTHAN POLICE DEPARTMENT
## GENERAL ORDER 200-30
### *Professional Standards*




**Purpose:**  This directive establishes guidelines for monitoring employee behavior, receiving and investigating complaints about employee performance or conduct, and provides for applying corrective actions as appropriate to include the documentation and maintenance of those records.

**Policy:**  It is the policy of the Dothan Police Department to actively monitor employee conduct and apply appropriate intervention when warranted. Furthermore to investigate all complaints against the department or its personnel to include anonymous complaints in a manner that will assure the community a prompt corrective action when police personnel conduct themselves improperly, while also protecting the Department and its personnel from unwarranted criticism, ridicule or other actions that are pursuant to the discharge of official duties.

## I.   ADMINISTRATION

A.  Supervisors will be responsible for actively monitoring employee conduct, utilizing both Guardian Tracking and Performance Management as a means of recording, tracking and correcting behavior and performance.

B.  The Chief of Police shall appoint Professional Standards Investigators from within the Department to serve in the Professional Standards Division. The Investigators shall be responsible and accountable for receiving and recording complaints made against the department and/or its employees. The PS Investigators shall conduct internal investigations of the Dothan Police Department as directed by the Chief of Police and this policy. The Investigators shall report directly to the Chief of Police concerning the progress and findings of such investigations.

CITY OF DOTHAN/GRAY 004054
CONFIDENTIAL

C. In cases where conflict of interest may be present, the Chief of Police may appoint any officer to act as an investigator for any internal investigation. This investigator shall report directly to the Chief of Police as needed for supervision and support.

D. The functions of the Professional Standards Division shall be:

    1. Recording, controlling, tracking, and administering the investigation of complaints and allegations of misconduct against officers and employees.

    2. Maintaining the confidentiality of the aforementioned procedures, investigations and associated documents.

    3. Administrative control and documentation of all procedures and investigations.

E. All files, documents, information and other administrative records accumulated during an internal investigation shall be stored in a secure location, within a locked cabinet. Only the Chief of Police, the PS Investigators, and those personnel designated by the Chief of Police shall have unaccompanied access to the files at any time including during the course of any investigation. Such records shall be maintained according to the above guidelines until settlement plus ten (10) years or in accordance with the State of Alabama Records retention laws.

F. During the month of September of each year, the Professional Standards Division shall compile an annual report of statistical summaries based upon all internal and/or PS investigations. This report shall be made available to the public and all department employees.

## II.   PERSONNEL EARLY WARNING

A. Identification of an employee for review under the Early Warning System will originate from Supervisor entries into the Guardian Tracking System or the Office of Professional Standards.

B. Positive and negative behavior and performance indicators of employees will be documented and a record maintained pursuant to established thresholds detailed in this policy. If an employee meets or exceeds a threshold in any of the listed categories the employees' actions will be reviewed by the appropriate supervisor and/or Professional Standards.

    1. Supervisor Inquiries External – three in a twelve month period

    2. Supervisor Inquiries Internal – three in a twelve month period

CITY OF DOTHAN/GRAY 004055
CONFIDENTIAL

3. Professional Standards Investigations – two in a twelve month period

4. Absentees – two incidents in a twelve month period

5. Law Suits – one in a twelve month period

6. Response to Resistance – six in a six month period

7. Vehicle Pursuits – three in a twelve month period

8. Vehicle Accidents – two in a twelve month period

9. Citizen Surveys Not Satisfied - three in a twelve month period

10. Tardiness - three in a two month period

11. Disciplinary Actions – four in a twelve month period

12. Work Related Injuries – two in a twelve month period

13. Yearly Evaluations Below Standards - one in a twelve month period

14. EAP Referral by Supervisor - one in a twelve month period

15. Drug Screen Positive Test Result – one in a twelve month period.

16. A combination of any 6 or more of the above categories in a 12 month period.

C. Reporting Requirements

Each time an employee is identified as having conduct that warrants further action or review the responsible supervisor will document it through Performance Management using the Information that has been gathered through Guardian Tracking. The proper documentation will be generated for review through the Chain of Command by utilizing Guardian Tracking. The review shall include a recommendation for intervention, and/or remedial action, if appropriate. Recommended interventions may include:

1. Employee Assistance Program (EAP);

2. Training;

3. Counseling;

CITY OF DOTHAN/GRAY 004056
CONFIDENTIAL

4. Fitness for duty Evaluation;

5. Disciplinary action;

6. Monitoring by supervisor; and/or

7. Other discretionary incidents or trends.

D. Role of Supervisors

Supervisors will be responsible for generating the proper documentation for the purpose of review and retention. First line supervisors, in theory, have the best knowledge of their subordinates, and should be able to identify trends and/or changes in behavior. Supervisors shall utilize Guardian Tracking as their means of keeping records of their employees. These records serve a dual purpose, first to document employee performance so that accurate evaluations can be conducted and second, to provide the means for monitoring behavior than can be indicative of larger issues. Supervisors shall utilize Performance Management to address either positive or negative behaviors. Employee conduct that rises to the level of violations of department policy that have not been correctible through the Performance Management system shall be documented on a DPD 200-30.1 and forwarded to Professional Standards. Upon completion of an investigation either by Supervisors or Professional Standards the findings shall be forwarded to the Chief of Police for review.

E. Annual Evaluation of the System

Each year, the Police Major shall have a review conducted of the Early Warning System, to include the numbers and types of actions taken, and the general effectiveness of the system. This report will be forwarded to the Chief of Police.

III.   COMPLAINT PROCESSING

A. A citizen requesting information on filing a complaint against a police employee may pick up a pamphlet detailing complaint processing and follow-up procedures in the Police Department lobby.

B. Some persons may falsely accuse officers of misconduct. These false accusations may sometimes be made maliciously and deliberately. All accusations should be investigated to protect the integrity of the department and its employees, thereby instilling public confidence. A thorough and objective investigation will support and vindicate an officer falsely accused.

CITY OF DOTHAN/GRAY 004057
CONFIDENTIAL

C. A citizen who wishes to file a complaint will be directed to the Duty Officer in the department lobby during normal business hours. If the duty officer is not available, the PS Investigator or the on-duty Supervisor will be contacted. The aforementioned employees receiving complaints are responsible for offering a Dothan Police Department Report of Complaint Form 200-30.1 *(Formerly PD-15A)* to a citizen, responsible for receiving the form and witnessing it in the place provided.

D. A citizen may refuse to fill out a complaint form, and wish only to advise a supervisor of a situation involving the Department of an officer or civilian employee. In such a circumstance, the supervisor will evaluate the information. The supervisor should obtain all information possible on the complainant (name, address, etc.) If known. Otherwise, he should indicate that the complainant is anonymous and refused to fill out the form. The Supervisor will then complete the Report of Complaint Form with all available information and forward it to the Professional Standards.

E. Complaints made over the telephone shall be referred to an on-duty Supervisor. The Supervisor shall provide the complainant an opportunity to complete a Report of Complaint Form. This may include mailing the form, if necessary. If the complainant refuses to accept the opportunity to fill out a form, the Supervisor will proceed as provided in "C".

F. In the event a citizen makes a complaint to an officer, and refuses the offer of speaking with a supervisor, and/or filing a written complaint, the officer will pass the complaint on to his Supervisor, who will proceed as provided in "C".

G. The supervisor will forward the Report of Complaint Form in a sealed interoffice envelope to the Professional Standards as soon as practical, but no later than the end of the shift when the complaint was made.

H. Citizen complaints may also be handled by the Duty Officer in the Department lobby. The Duty Officer shall provide the citizen with a Report of Complaint Form and answer any questions pertaining to filling out the document. The Duty Officer will then instruct the complainant to deposit the Report of Complaint Form into the drop box in the lobby. The drop box will be maintained and checked by the Professional Standards regularly. The drop box will be attached to the wall in a conspicuous place and labeled accordingly.

I. If a complainant wishes to speak to a PS Investigator in person and it is within normal duty hours, the person taking the information will request for a PS Investigator to come to the lobby.

J. If a complainant wishes to speak to a PS Investigator at other than normal duty hours, they will be advised of the next duty day for PS Investigators. The on-duty Patrol Services Division Commander may be contacted in lieu of a PS Investigator and the complaint handled in accordance with 'C' and 'D'.

CITY OF DOTHAN/GRAY 004058
CONFIDENTIAL

K. All complaints against the Dothan Police Department or its employees shall be recorded and maintained in this manner regardless of the nature or reasonableness of the complaint. All complaints shall be referred to the Professional Standards for review and logging.

L. Professional Standards shall contact the complainant filing a written complaint by letter, in person, or by telephone, acknowledging receipt of the complaint. In the event that the investigation lasts more than ninety (90) days, Professional Standards will notify the complainant as to the status of the investigation. In any case and at the conclusion of the investigation, the Professional Standards will notify the complainant in writing as to the results of the investigation.

M. When an employee discharges a firearm, either intentionally or unintentionally while on duty or in an official capacity, other than while participating in a training activity, he shall immediately notify the on-duty supervisor. The on-duty Supervisor shall immediately notify the Chief of Police, Major, Bureau Commander for the officer involved, and Professional Standards. The employee who discharged their weapon will file a written report with their commanding officer as soon as practical and within twenty-four (24) hours, describing the circumstances in detail unless circumstances dictate otherwise and is authorized by a Bureau Commander or higher. This does not apply to intentional discharges at the Firearms Range, hunting, or other sporting activity involving firearms. Upon notification, Professional Standards will conduct a preliminary investigation and make a verbal report to the Chief of Police within twenty-four (24) hours followed with a written report. Upon the completion of the Professional Standards investigation of the firearm discharge, a Departmental Firearms Review Committee will review the incident.

N. All Professional Standards investigations will be completed in (60) days. If extenuating circumstances arise that hinder the sixty (60) day goal, the circumstances will be documented and presented to the Chief of Police for approval of an extension. If an extension is granted, the investigator assigned will report to the Chief of Police outlining the status of the investigation every thirty (30) days until completed.

## IV. INVESTIGATIVE PROCEDURES

A. All citizen complaints shall be forwarded to Professional Standards for review and tracking. Those complaints deemed minor in nature by the Professional Standards, i.e. minor traffic violations, minor violations of departmental rules and regulations, discourtesy to the public, etc., may be returned to the employee's immediate supervisor for investigation. The Supervisor will complete the "Supervisors Investigation" section on the Report of Complaint Form and return it to the Professional Standards as soon as practical.

B. An administrative internal inquiry or internal investigation may be conducted on non-criminal complaints, depending on the severity of the allegation(s). Should the

CITY OF DOTHAN/GRAY 004059
CONFIDENTIAL

inquiry/investigation discover possible criminal actions on the part of the employee, a criminal investigation may be initiated. (See Section IV).

C. Complaints relative to the innocence or guilt of the complainant concerning an arrest or traffic violation is a matter for a Judge or Court to decide and will not be taken.

D. The following types of incidents shall not be forwarded back to a Supervisor, but will be investigated by the Professional Standards:

    1. Incidents involving use of force;

    2. Complaints involving allegations of civil rights violations, or involving allegations that an employee has used racial or ethnic epithets;

    3. Incidents involving conduct, on or off duty, which reflects negatively on the Dothan Police Department of the City of Dothan;

    4. Incidents involving allegations of criminal or unethical activity;

    5. Allegations of negligence or neglect of duty;

    6. Complaints involving allegations of unlawful or improper manipulation of or tampering with the promotional, evaluation, or disciplinary process;

    7. Complaints involving allegations of abusive conduct by a supervisor directed toward a subordinate;

    8. All complaints involving allegations of racial and/or biased based profiling;

    9. Allegations of corruption or accepting bribes;

    10. Other incidents as directed by the Chief of Police.

E. Allegations and investigations included in III. C., above, will be brought to the attention of the Chief of Police by Professional Standards as soon as possible, and within 24 hours of becoming aware of the allegation.

F. The Chief of Police shall receive from the designated investigator a status report of the course of the investigation periodically, either in writing or in person.

G. If, after an initial screening of the complaint by the Professional Standards, it is determined that the complaint warrants a full internal investigation, the involved officer and his supervisor will be notified in writing by the Chief of Police or his designee, unless such notification would hinder the investigation. Notifications shall be in a written statement to the employee giving notice of the allegation(s) and of the employee's rights

CITY OF DOTHAN/GRAY 004060
CONFIDENTIAL

and responsibilities relative to the investigation.  If and whenever charges are formally filed, the officer shall be notified by the Chief of Police or his designee.

H.  Upon sufficient cause as determined by the Profession Standards, and upon the express authorization of the Chief of Police, an internal administrative investigation may require an employee to submit to any or all of the following procedures:

    1.  Medical or laboratory examinations;

    2.  Participation in a line-up;

    3.  Be photographed;

    4.  A polygraph examination.

    5.  These actions will only be taken when necessary and when they are material to a particular administrative internal affairs investigation conducted by this department.

I.  To protect the rights of employees of the Department in official departmental investigations, the interviewer shall insure that the employee being investigated is or has been notified in writing that he/she is under investigation prior to conducting an interview.  Also, all employees being interviewed shall be informed of the following:

    1.  Rank, name and command of investigator;

    2.  Identity of all persons present;

    3.  Whether the employee is the subject or a witness in the investigation;

    4.  The nature of the accusation;

    5.  Identity of the complainant;

    6.  Information concerning all allegations.

J.  The interview shall be conducted at a reasonable hour, preferably when the employee is on duty.

J.  The interview shall be recorded.

K.  The following shall be prohibited at the interview:

    1.  All "off-the-record" questions;

    2.  Offensive language or threats;

CITY OF DOTHAN/GRAY 004061
CONFIDENTIAL

    3. Promises of reward for answering questions;

    4. The investigator conducting the interview is the only person authorized to record the proceedings. All other recordings are unauthorized and prohibited.

L. The duration of the questioning periods will be regulated to allow breaks for meals, personal necessity, etc., and all breaks will be documented.

M. During an administrative investigation, the refusal of an employee to answer questions truthfully and without intentionally omitting details concerning the matter under investigation may result in disciplinary action to include termination

## V. CRIMINAL INVESTIGATIONS

A. When an administrative investigation reveals evidence of a criminal violation, the criminal investigation will be assigned to an investigator not associated with the administrative investigation. The two investigators will not discuss information obtained by Professional Services solely as a result of the employee being compelled to give information that would otherwise be protected in a criminal investigation. All efforts will be made to suspend an administrative investigation until after the criminal investigation is completed at the direction of the Chief of Police, the criminal investigation may include the use of investigators from an outside agency such as the Alabama Bureau of Investigation or the Federal Bureau of Investigation.

B. A Professional Standards investigation is administrative in nature, not criminal. Employees can be compelled to provide statements or answer questions under the Garrity Ruling (Garrity v. New Jersey, 385 U.S. 493 (1967)). Those statements or questions must be specifically directed and narrowly related to the performance of the employee's duties and his/her fitness for office. Garrity basically prohibits a compelled statement from being used against the employee in any subsequent criminal proceedings. It also prohibits any evidence obtained as a result of a compelled statement from being used against the employee in any subsequent criminal proceeding.

C. An employee under criminal investigation cannot be compelled to submit to any examination or procedure, such as a polygraph or any instrument designed to detect deception that may infringe upon his 5th Amendment and/or due process rights, as protected by Federal and/or State Law and guaranteed by the U.S. Constitution. However, an employee under investigation may voluntarily submit to such examination after being made aware that such actions are strictly voluntary and refusal to submit does not imply any guilt or admission of the violation; and a concurrent internal, administrative investigation, may require the employee to submit to the test, but may not reveal the results of the test to the criminal investigator.

## VI. CONCLUSION OF FACT

CITY OF DOTHAN/GRAY 004062
CONFIDENTIAL

A. Professional Standards shall complete the investigative report, which will contain a conclusion of fact in the investigation. The conclusion of fact shall further state one of the following findings:

1. UNFOUNDED-Allegation is false or not factual.

2. EXONERATED-The incident complained of occurred but was lawful and proper.

3. NOT SUSTAINED-There was insufficient evidence either to prove or disprove the allegation.

4. SUSTAINED-The allegation is supported by sufficient evidence.

## VII. ADMINISTRATIVE LEAVE PENDING INVESTIGATION

A. When there is a question as to the employee's fitness for duty, or when failure to remove an employee from duty may have a detrimental impact upon the operations of the Department, or at the discretion of the Chief of Police, an employee may be placed on administrative leave pending the outcome of an internal or criminal investigation, or when the Chief of Police determines return to work is applicable. This action will be accompanied by the issuance of a written Notice of Administrative Leave.

B. If the nature of a complaint is such that the employee's continued presence on-duty would have a detrimental impact on the operation of the Department or the confidence of the citizens, the supervisor may relieve the employee of duty. The supervisor shall issue the employee a Notice of Administrative Leave.

C. After the completion of an internal investigation wherein a conclusion of fact has been drawn to substantiate that the employee in question acted within the legal scope of his authority and violated no departmental policy or criminal law, the said employee shall be immediately re-instated into his previous position with no adverse action applying.

D. All disciplinary actions will be strictly adhered to in accordance with the City of Dothan Civil Service Act and the City of Dothan Personnel Rules and Regulations.

## VIII. TRACKING OF COMPLAINTS

A. All complaints shall be reported on the Dothan Police Department Report of Complaint *Form 200-30.1*. All use of force incidents will be reported in accordance with the requirements of *General Order 200-10H, Response to Resistance*. All complaints and use of force incidents received by the Professional Standards Division shall be entered into a computer database that is maintained exclusively by the Professional Standards Division. The database will automatically assign a separate, sequential number to each case as it is entered. The Report of Complaint Forms shall be entered into the Internal Affairs section of the database and assigned an IA/PSD tracking number. The use of force incidents shall be entered into the Incident Review section of the database and be assigned an Incident

G.O. 200-30                       Page 10 of 11

CITY OF DOTHAN/GRAY 004063
CONFIDENTIAL

Review number.  The database shall be so designed that statistical information shall be easily attained for reporting purposes.

B.  Each original Report of Complaint Form, and all pertinent documents related to the investigation, shall be maintained in a folder that is marked with the PSD number in red, the officer's name in black, and the complainants name in black.  The folders shall be kept in an orderly fashion inside a locked cabinet exclusively maintained by the Professional Standards Division.

C.  Each original use of force incident shall be maintained in a binder for Incident Reviews and will be maintained by the Professional Standards.

CITY OF DOTHAN/GRAY 004064
CONFIDENTIAL

# EXHIBIT
# 9



# BAMA BOYZ
# MOTORCYCLE CLUB, Inc.

July 21, 2013

To All of Our Biker Family:

The Founding Executive Board has held a series of meetings regarding the possibility of starting a new chapter of Bama Boyz, MC in Anniston, Alabama. Upon receiving the blessings from Big O, President of Outcast, Alabama, Big Meat, Sin City Disciples, Alabama, and Catfish, National President of Easy Riders, MC it is effective immediately that Antwaun "King Ace" Clifton is the new President of the Anniston Chapter of Bama Boyz, MC. The Vice President will be Pervis "Cupid" Welch. All officers positions will be effective for two years unless circumstances dictate otherwise according to bylaws.

Bama Boyz, MC Inc., has always had a great reputation with all bike clubs, and we wish to continue being family with you all giving respect when given respect. If there are any negative issues about who we are, and what we stand for feel free to call on me. Judge us on our solid reputation within the community.

If you have any questions I can be reached at (334) 796-0134.

Respectfully yours,

*I. Keith Gray*

I. Keith Gray, M.S. (Chopper)
Founder
Bama Boyz Motorcycle Club, Inc

CITY OF DOTHAN/GRAY 000702
CONFIDENTIAL

# EXHIBIT
# 10

## The City of Dothan Employee Disciplinary Action Report Form
*Authority: Regulation III - DISCIPLINARY POLICY*

| SECTION III - EMPLOYEE INFORMATION | | | |
|---|---|---|---|
| Employee Name<br>Ivan Keith Gray | Employee ID Number<br>101492 | Hire Date<br>02-11-1985 | Department<br>Police |
| Employee Job Title<br>Captain | | Counseling Supervisor Name & Job Title<br>Gregory J. Benton, Chief | |

### SECTION IV - OFFENSE AND TYPE OF ACTION

Check (√) Category and Offense, Circle (O) Rule Number(s) violated

☐ MINOR CATEGORY  ☐ 1st Offense   ☐ 2nd Offense   ☐ 3rd Offense   ☐ 4th Offense
Violation of Rule: Section 3-41.  1  2  3  4  5  6  7  8  9  10  11  12  13  14  15  16  17  18

☐ MAJOR CATEGORY  ☐ 1st Offense   ☐ 2nd Offense
Violation of Rule: Section 3-42.  1  2  3  4  5  6  7  8  9  10  11  12  13  14  15  16  17  18  19

X  INTOLERABLE CATEGORY  X  1st Offense
Violation of Rule: Section 3-43.  1  2  3  4  5  6  7  8  9  10  11  12  13  14  15  16  17  18  (19)  20

Check (√) Type of Disciplinary Action For This Offense

☐ FORMAL COUNSELING   ☐ WRITTEN WARNING   ☐ FINAL WRITTEN WARNING   X  DISCHARGE

### SECTION V - DETAILS OF THIS DISCIPLINARY ACTION REPORT

In the space below or on additional sheets provide detailed documentation of the rule(s) violated to include dates and the specific actions of the employee. Include details of recommendations for corrective action and consequence of future violations.

You are found to be in violation of Dothan Police Department General Order 100-50, Code of Conduct, section II, paragraph B, Conduct Unbecoming of an Officer and section XXXVIII, paragraph A, Membership in Organizations; General Order 20CM2H, Mobile Data Terminals and Electronic Messaging, Section I, paragraph 6, Administrative; General Order 100-50, Code of Conduct; section XXXIII, paragraph A, Truthfulness; General Order200-30, Professional Standards, section IV, paragraph M, Investigative Procedures and General Order 100-41, Code of Ethics, section I, paragraph I, Private Life. (See Exhibit "A" attached hereto and incorporated herein).

You have further been found in violation of City of Dothan Personnel Rules and Regulations, Sec 3-43, (19) Intolerable Offense: Other, to include Conduct Unbecoming of an Officer. (See Exhibit "A" attached hereto and incorporated herein).

| Supervisor Signature<br>*[signature]* | Date signed<br>9-20-13 | Department Head Signature<br>*[signature] Gregory J. Benton* | Date Signed<br>9-20-13 |
|---|---|---|---|

I acknowledge I was counseled or warned in reference to the rule violation(s) cited above. I understand my signature on this form acknowledges the counseling or warning took place for the reasons given. I understand my signature does not mean I agree or disagree with the statements documented on this form. I also understand I may provide a written explanation of the offense for which the counseling or warning report has been issued and attach this written statement to this form. I understand this Personnel Form #147 and any attachments will be forwarded to the Personnel Department and become a part of my permanent employment record.

EMPLOYEE SIGNATURE: *[signature] Ivan K. Gray*                    Date Signed: 9-20-13

Distribution: ☐ORIGINAL to Personnel Department   ☐ COPY to Employee   ☐ COPY to Department Head

PERSONNEL FORM #147 (rev. 8/2006)

CITY OF DOTHAN/GRAY 000938<br>CONFIDENTIAL

## The City of Dothan Employee Disciplinary Action Report Form
*Authority: Regulation III – DISCIPLINARY POLICY*

**How to use the Tables below:** Complete SECTION I by listing the employee's minor offense history for the past twelve months and/or Major offense history for the past twenty-four months. Refer to the SECTION II - DISCIPLINARY ACTIONS SUMMARY TABLE to determine the appropriate disciplinary action to be taken and whether the disciplinary action must follow the Due Process Procedure as set out in Personnel Regulation IV.

Note: "Minor", "Major", or "Intolerable" offenses have separate disciplinary action progressions. See the SUMMARY TABLE in SECTION II below. The offense free time period required to clear a disciplinary record of MINOR offenses is 12 months and MAJOR offenses is 24 months from the "date of record" for last offense committed. ("Date of Record" is date form signed by department head.)

| SECTION I - REVIEW OF EMPLOYEE DISCIPLINARY HISTORY | | | |
|---|---|---|---|
| A review of this employee's active Disciplinary History includes the following MINOR category offense(s) and/or the following Major category offense(s). If the employee has no active disciplinary history, write N/A. | | | |
| Category | Type of Action | Dated | Specific Violation - Cite Rule and Offense |
| MINOR | Formal Counseling | | |
| MINOR | Written Warning | | |
| MINOR | Final Written Warning or Final Written Warning & 1-5 Day Suspension | | |
| MAJOR | Final Written Warning & 1-20 Day Suspension | | |

The SUMMARY TABLE below shows: (1) The disciplinary progression (1st, 2nd, 3rd, etc., offense) and resulting disciplinary action for MINOR, MAJOR, and INTOLERABLE offenses; and (2) Whether a disciplinary action requires a Due Process Hearing before being administered.

| SECTION II - REVIEW OF ACTION SUMMARY TABLE | | | | |
|---|---|---|---|---|
| **DUE PROCESS HEARING NOT REQUIRED** | First Offense MINOR<br><br>Formal Counseling | Second Offense MINOR<br><br>Written Warning | Third Offense MINOR<br><br>Final Warning or (See below) | Fourth Offense MINOR<br><br>See Below |
| **DUE PROCESS HEARING REQUIRED PRIOR TO ADMINISTERING.** | First Offense MAJOR<br><br>Final Warning and 1-20 Day Suspension. | Second Offense MAJOR<br><br>Discharge | Third Offense MINOR<br><br>Final Warning and 1-5 Day Suspension | Fourth Offense MINOR<br><br>Discharge |
| ❖ | First Offense INTOLERABLE<br><br>Discharge | Due Process Hearings are implemented in accordance with Personnel Regulation IV | | |



In the early morning hours of August 25, 2013, Dothan Police responded to an Assault 2nd call for assistance from 414 N. Appletree St. in Dothan, AKA the Outcast Motorcycle Club clubhouse. Officers found numerous club members inside, all of whom had extensive criminal records. Several of those club members were arrested on felony charges.

Upon your being identified by several of these club members and subsequently other members of the Outcast Motorcycle Club as being involved in various other activities, an internal police investigation was begun. This investigation confirmed your involvement, including, but not limited to, your having met with Otis "Big O" Ashford, State President of Outcast Motorcycle Club in Bessemer, AL, sometime in April, 2013. This meeting was for the purpose of receiving approval or "blessing" of Outcast Motorcycle Club for the start of a new chapter of your motorcycle club, Bama Boyz, in Anniston, AL, which in fact, you did receive. You also sought and received the "blessing" of "Big Meat" (real name unknown), President of Sin City Disciples Motorcycle Club in Alabama. These two clubs are listed by the U.S. Justice Department as "Outlaw Motorcycle Gangs" in Alabama, whose members have voluntarily made a commitment to band together to abide by their organization's rules enforced by violence and who engage in activities that bring them and their club into repeated and serious conflict with society and the law including a pattern of criminal or delinquent conduct.

The investigation confirmed that you have instructed new members of your club that it is "attached directly" to Outcast Motorcycle Club, that you "work hand-in-hand" with them and Sin City Disciples Motorcycle Clubs and that your club follows their directions and guidelines.

The investigation further revealed your misuse of DPD equipment, including, non-police business related access of personal information of your fellow officers on the City's Sungard AS400 system and inappropriate access and viewing of a pornographic internet website on your police issued cellphone.

During the course of this investigation you were untruthful with investigators and made statements intended to deceive and alter the course of their investigation into your conduct which made the basis of these charges.

1

CITY OF DOTHAN/GRAY 000940
CONFIDENTIAL

# NOTICE OF DETERMINATION HEARING AND POSSIBLE DISCIPLINARY ACTION
(Reproduce in one page (front and back) format to maintain form integrity)

| (Employee Name) | TO: | Ivan Keith Gray | Emp ID: | 101492 |
|---|---|---|---|---|
| (Department Head) | FROM: | Chief Gregory J. Benton | | |
| | DATE: | 09-20-2013 | | |

## SECTION I - NOTICE OF CATEGORY FOR CHARGES
(✓ All that apply)

| | | |
|---|---|---|
| ·MINOR CATEGORY: | | ✳ 3rd Offense, Final Warning & 1-5 Day Suspension |
| | | ✳ 4th Offense, Grounds for Discharge |
| MAJOR CATEGORY: | | ✳ 1st Offense, Final Warning & 1-20 Day Suspension |
| | | ✳ 2nd Offense, Grounds for Discharge |
| INTOLERABLE CATEGORY: | X | ✳ 1st Offense, Grounds for Discharge. |
| SICK LEAVE ABUSE: | | ✳ 4th Offense, Grounds for Discharge |
| VEHICLE ACCIDENT: | | ✳ 2 - 5 Points, Suspension |
| | | ✳ Over 5 Points, Suspension or Termination |

✳ PF #147 (or PF#147-A for Sick Leave Abuse, or PF#148 Vehicle Accident) is submitted when an employee commits any category offense requiring due process and is attached to PF#153 for Major and Intolerable Offenses. If after due process the Department Head or Personnel Board determines the employee did not violate any rules, all copies of the applicable PF#147/PF#147-A/PF#148 are destroyed.

## SECTION II - NOTICE OF CHARGES

You are hereby notified that possible disciplinary action is contemplated against you on the charges specified below and that such action could result in suspension, demotion or dismissal. It has been brought to my attention as Department Head that you have possibly violated the Personnel Rules and/or Civil Service Act of the City of Dothan, Alabama, in that [Give specific details of the offense(s) to include date(s), location(s), person(s) involved, cite rule(s) violated. Additional sheets may be attached if needed]:

You are found to be in violation of Dothan Police Department General Order 100-50, Code of Conduct, section II, paragraph B, Conduct Unbecoming of an Officer and section XXXVIII, paragraph A, Membership in Organizations; General Order 20CM2H, Mobile Data Terminals and Electronic Messaging, Section I, paragraph 6, Administrative; General Order 100-50, Code of Conduct; section XXXIII, paragraph A, Truthfulness; General Order 200-30, Professional Standards, section IV, paragraph M, Investigative Procedures and General Order 100-41, Code of Ethics, section I, paragraph I, Private Life. (See Exhibit "A" attached hereto and incorporated herein).

You have further been found in violation of City of Dothan Personnel Rules and Regulations, Sec 3-43, (19)
Intolerable Offense: Other, to include Conduct Unbecoming of an Officer. (See Exhibit "A" attached hereto and incorporated herein).

## SECTION III - NOTICE OF HEARING ON CHARGES

You are hereby given twenty-four (24) hours advance notice that a Determination Hearing will be held

| (Day of week, Calendar Date and Time of Hearing) | on: | Monday, September 23, 2013 at 0900 hours (9:00 A.M.) |
|---|---|---|
| (Location where hearing will be held) | at: | Roy M. Driggers Municipal Building (Civic Center) 1st Floor Room 101 |

At the time of the Determination Hearing you will have the opportunity to respond to the above charge(s) orally and/or in writing if you so desire. If you wish to reply to the charges in writing, you must have the documents prepared and ready to present at the time designated for the hearing. You may submit sworn affidavits in reply to these charges if you so elect. You are hereby advised that you have the right not to respond to these charges if you so elect. If you desire, you may be accompanied by an impartial observer of your choosing. This hearing will not be of an adversary nature and no examination or calling of witnesses to testify will be permitted.

You will be notified in writing of the Department Head's disciplinary decision within three (3) working days after the date of this hearing. In the event disciplinary action is taken, the procedures for review and appeal are provided by the Personnel Rules and/or Civil Service Act of the City of Dothan are available to any Classified employee or laborer, other than those under initial probationary status.

Signature of Department Head: *Gregory J. Benton*

CITY OF DOTHAN/GRAY 000941
CONFIDENTIAL

**NOTICE OF DETERMINATION HEARING AND POSSIBLE DISCIPLINARY ACTION**
(Reproduce in one page (front & back format) to maintain form integrity)

**SECTION IV - DOCUMENTATION OF NOTICE BEING SERVED**
(Complete *either* Part A *or* both Part B and C of this section)

**PART A.**

I certify that I served _Ivan Keith Gray_ a copy of this Notice of hearing at
(Employee Name)

_0755_ O'clock (☐ am  ☒ pm) on _9·20·13_
(Time Served)                                        (Date Served - M/D/Y)

which is at least twenty-four (24) hours prior to the date and time specified on the front of this form.

_____
(Signature of Department Head or Supervisor)

**OR**

**PART B.**

I certify that due to the unavailability of the employee I have delivered a copy of this Notice of Determination Hearing (Personnel Form #153) to the City of Dothan Police Department for service on the employee named on the front of this Notice at least twenty-four (24) hours in advance of the time and date specified on this notice.

_____
(Signature of Department Head or Supervisor)

**PART C.**

I certify that a copy of this Notice of Determination Hearing was served on the employee named on the front of this Notice at

_____ on _____
(Time of Service)                          (Date Served - M/D/Y)

_____
(Signature of Server (Member, Dothan Police Department))

**SECTION V - DOCUMENTATION OF NOTICE BEING RECEIVED**

I acknowledge that I received a copy of this Notice of Determination Hearing at least twenty-four (24) hours prior to the date and time of said hearing.

Signature of Employee: _____  Date: _9-20-13_

Distribution of PF#153:   ☐ Original to Personnel Department   ☐ Copy to Department Head.   ☐ Copy to Employee

CITY OF DOTHAN/GRAY 000942
CONFIDENTIAL



In the early morning hours of August 25, 2013, Dothan Police responded to an Assault 2nd call for assistance from 414 N. Appletree St. in Dothan, AKA the Outcast Motorcycle Club clubhouse. Officers found numerous club members inside, all of whom had extensive criminal records. Several of those club members were arrested on felony charges.

Upon your being identified by several of these club members and subsequently other members of the Outcast Motorcycle Club as being involved in various other activities, an internal police investigation was begun. This investigation confirmed your involvement, including, but not limited to, your having met with Otis "Big O" Ashford, State President of Outcast Motorcycle Club in Bessemer, AL, sometime in April, 2013. This meeting was for the purpose of receiving approval or "blessing" of Outcast Motorcycle Club for the start of a new chapter of your motorcycle club, Bama Boyz, in Anniston, AL, which in fact, you did receive. You also sought and received the "blessing" of "Big Meat" (real name unknown), President of Sin City Disciples Motorcycle Club in Alabama. These two clubs are listed by the U.S. Justice Department as "Outlaw Motorcycle Gangs" in Alabama, whose members have voluntarily made a commitment to band together to abide by their organization's rules enforced by violence and who engage in activities that bring them and their club into repeated and serious conflict with society and the law including a pattern of criminal or delinquent conduct.

The investigation confirmed that you have instructed new members of your club that it is "attached directly" to Outcast Motorcycle Club, that you "work hand- in- hand" with them and Sin City Disciples Motorcycle Clubs and that your club follows their directions and guidelines.

The investigation further revealed your misuse of DPD equipment, including, non-police business related access of personal information of your fellow officers on the City's Sungard AS400 system and inappropriate access and viewing of a pornographic internet website on your police issued cellphone.

During the course of this investigation you were untruthful with investigators and made statements intended to deceive and alter the course of their investigation into your conduct which made the basis of these charges.

1

CITY OF DOTHAN/GRAY 000943
CONFIDENTIAL

# EXHIBIT
# 11

# DECISION OF DETERMINATION HEARING COPY

(Personnel Form 155)

| Employee Name | Employee SSN | Department |
|---|---|---|
| Ivan Keith Gray | 101492 | Police |

| Employee Job Title | Date of Determination Hearing |
|---|---|
| Police Captain | 09-23-13 |

### Statement of Department Head's Decision

You are hereby notified that after the due process determination hearing and consideration of the charges and possible violations of Personnel Rules and/or the Civil Service Act of Dothan, as amended, I have made the following decision concerning disciplinary action: (State the decision in the space below)

After reviewing all the facts and circumstances of this case, I have determined that you were in violation of the Dothan Police Department General Orders for which you were charged with.

You have further been found in violation of City of Dothan Personnel Rules and Regulations, Sec 3-43, (19) Intolerable Offense: Other, to include Conduct Unbecoming of an Officer.

It is my decision to terminate your employment with the Dothan Police Department effective immediately.

Furthermore, you are hereby advised that if you are dissatisfied with this decision to discipline, you have available to you the procedures for review and/or appeal as provided by the Civil Service Act of Dothan, as amended, and the Personnel Rules and Regulations.

| Signature of Department Head | Date Signed |
|---|---|
| *[signature]* Gregory J Benton | 9-23-2013 |

### Employee Certification of Receipt of Department Head's Decision and Employee Notice of Appeal Right

I hereby certify I have received a copy of this decision to discipline from my department head or his/her designated representative. I understand that should I wish to appeal my department head's disciplinary decision I must file a written notice with my department head and the Personnel Board within the time period specified in the Personnel Rules and Regulations, Section 3-50, Appeal of Disciplinary Action. Personnel Form #152 – City of Dothan Appeal Form may be used to initiate an appeal of disciplinary action. Any Classified employee or laborer, other than those under initial probationary status, may appeal any disciplinary action taken by following the procedure outlined in REGULATION V - GRIEVANCE AND APPEAL PROCEDURE or by following the procedures in Sections 21 and 22 of "the Civil Service Act of Dothan."

| Employee's Signature | Date Signed |
|---|---|
| *[signature]* Ivan Keith Gray | 9-23-2013 |

### To be completed by person serving this notice to employee

| Signature of person serving this notice | Date Notice Served | Time Notice Served |
|---|---|---|
| *[signature]* Gregory J Benton | 9.23.2013 | 9:30 a.m. |

Distribution:   ☐ Original to Personnel   ☐ Copy to Department Head   ☐ Copy to Employee

Personnel Form #155 (Revised 2/2001)
C:\Users\dwsmith\Documents\INTERNAL AFFAIRS INVESTIGATIONS\INTERNAL INVESTIGATIONS\2013\2013 - 00059 Internal Affairs - Capt. K. Gray\PF155 Decision Of Determination Hearing - 2.doc

CITY OF DOTHAN/GRAY 000944
CONFIDENTIAL

THE CITY OF DOTHAN
Dothan, Alabama

## DETERMINATION HEARING OF KEITH GRAY

**KRIS KNIGHT**  :  Alright. Today is Monday, September 23rd [2013] at 9:00 a.m.

This hearing is being recorded, and will be the official transcript in the event of an appeal by the employee to the Personnel Board. My name is Kris Knight, Personnel Analyst with the City of Dothan. Present in the room for the determination hearing are Ivan Keith Gray, Chief Benton, Sgt. Smith, Sgt. Magill, Darryl Mathews, Pat Jones, Pam Moseley, and Dwight Baker.

Captain Gray, do you acknowledge that you were served notice of this determination hearing on or about 3:55 p.m. on September 20, 2013?

**KEITH GRAY**  :  Yes, I do.

**KRIS KNIGHT**  :  Do you acknowledge that this is your signature?

**KEITH GRAY**  :  Yes, it is.

**KRIS KNIGHT**  :  Have you read the information provided on the form, and did you understand the procedure outlined on the form?

**KEITH GRAY**  :  Yes, I did.

**KRIS KNIGHT**  :  Alright. I have several questions I need to ask you. Please respond with yes or no, and respond loud enough for the recorder to pick up your response. If you have a question or do not understand what I am asking you, please direct your questions to me.

Do you acknowledge that you were notified at least 24 hours in advance of this determination hearing?

**KEITH GRAY**  :  Yes.

**KRIS KNIGHT**  :  Do you have any specific questions regarding this procedure?

**KEITH GRAY**  :  No.

**KRIS KNIGHT**  :  Do you understand this is not an adversarial hearing, this means there's no cross examination of witnesses or calling of witnesses to testify?

**KEITH GRAY**  :  Yes.

**KRIS KNIGHT**  :  Do you understand that you do not have to reply to these charges?

**KEITH GRAY**  :  Yes.

1

**KRIS KNIGHT**     :    Do you understand you do have the right to reply orally, and/or in writing, to these charges?

**KEITH GRAY**     :    Yes.

**KRIS KNIGHT**     :    Do you understand you have had a reasonable opportunity within the past 24 hours to reply in writing, or submit sworn affidavits in reply to the charges, if you so elected?

**KEITH GRAY**     :    Yes.

**KRIS KNIGHT**     :    Do you have a written statement or sworn affidavit you wish to submit in response to the charges?

**KEITH GRAY**     :    I do.

**KRIS KNIGHT**     :    Okay. We'll need to get a copy, one for the Chief and one for the record; but we can do that afterwards.

**KEITH GRAY**     :    Okay.

**KRIS KNIGHT**     :    Do you have any reason at this time why the hearing should not proceed?

**KEITH GRAY**     :    No.

**KRIS KNIGHT**     :    Okay, then at this time the Chief will begin the hearing by presenting the charges to you again.

**CHIEF BENTON**     :    Captain Gray, in the early morning hours of August 25, 2013, Dothan Police responded to an Assault 2nd call for assistance from 414 N. Appletree St. in Dothan, AKA the Outcast Motorcycle Club clubhouse. Officers found numerous club members inside, all of who had extensive criminal records. Several of those club members were arrested on felony charges.

Upon your being identified by several of these club members and subsequently other members of the Outcast Motorcycle Club as being involved in various activities, an internal police investigation was begun. This investigation confirmed your involvement, including, but not limited to, your having met with Otis "Big O" Ashford, State President - Ashford, State President of Outcast Motorcycle Club in Bessemer, Alabama, sometime in April, 2013. This meeting was for the purpose of receiving approval or blessing of Outcast Motorcycle club for the start of a new chapter of your motorcycle club, Bama Boyz, in Anniston, Alabama, which, in fact, you did receive. You also sought and received the blessing of "Big Meat" real name unknown, President of Sin City Disciples Motorcycle Club in Alabama. These two clubs are listed by the U. S. Justice Department as "Outlaw Motorcycle Gangs" in Alabama, whose members have voluntarily made a commitment to band together to abide by their organization's rules enforced by violence and who engage in activities that bring them and their club into repeated and serious conflict with society and the law, including a pattern of criminal or delinquent conduct.

This investigation confirmed that you have instructed new members of your club that it is attached directly to Outcast Motorcycle Club, that you work hand-in-hand with them and Sin City Disciples Motorcycle Club and that your clubs follows their guidelines.

2

CITY OF DOTHAN/GRAY 000948
CONFIDENTIAL

The investigation further revealed your misuse of DPD equipment, including non-police business related access of personal information of your fellow officers on the City's Sungard AS400 system and inappropriate access and viewing of a pornographic internet website on your police issued cell phone.

During the course of this invest - during the course of this investigation you were untruthful with investigators and made statements intended to deceive and alter the course of their investigation into your conduct which made the basis of these charges.

You are found to be in violation of Dothan Police Department General Order 100-50, Code of Conduct, section II, paragraph B, Conduct Unbecoming of an Officer; and section XXXVIII, paragraph A, Membership in Organizations; General Order 20CM2H, Mobile Data Terminals and Electronic Messaging, Section 1, paragraph 6, Administrative; General Order 100-50, Code of Conduct; Section XXXIII, paragraph A, Truthfulness; General Order 200-30, Professional Standards, section IV, paragraph M, Investigative Procedures and General Order 100-40 [100-41], Code of Ethics, section I, paragraph I, Private Life.

You have further been found in violation of City of Dothan Personnel Rules and Regulations, Sec. 3-43, (19) Intolerable Offense: Other, to include Conduct Unbecoming of an Officer.

**KRIS KNIGHT**           :     Okay. Captain Gray, do you have anything you would like to say in response to these charges?

**KEITH GRAY**           :     Yes. I've been the victim of racial discrimination during my employment with the City of Dothan, beginning in 1985 to the present. I've been denied promotions for which I was qualified, and I am currently being retaliated against for filing an Equal Employment Opportunity Commission complaint in August 2013. In addition to retaliation, I am also the victim of racial harassment, which is, has culminated into this witch hunt, the result of which is an attempt to destroy my career. I, uh, adamantly deny every one of the, uh, charges that Chief Benton has, has just read, and would just like to say, umm, for the record, directly to the Chief - you know me, and you know my heart. And, I have no ill will towards you, and I think you know that as well, 'cause we've talked a lot on personal basis, and, umm, I've not changed. I'm not any different than, when I was - when you road in my Corvette during the Peanut Festival Parade, or when my organization pulled together for fundraisers to, umm, donate to the Police Athletic League. And, uh, I understand that you're, you're the Chief, and, and I respect that, but I'm just wanting to just say that, directly to you.

**CHIEF BENTON**        :     Thank you.

**KRIS KNIGHT**          :     Okay, I will make a copy of this.

Alright, Chief Benton will give you his decision in writing within three working days of this hearing. Today is Monday, September 23rd, so you should hear something no later than Thursday, September the 26th, at the close of business.

If you are dissatisfied with his decision, you have ten calendar days, from when you receive the decision in writing, to appeal to the Personnel Board.

This concludes the hearing for Ivan K. Gray at 9:10 a.m.

CITY OF DOTHAN/GRAY 000949
CONFIDENTIAL

