EXHIBIT F

Page 1

```
 1        IN THE UNITED STATES DISTRICT COURT
 2          MIDDLE DISTRICT OF ALABAMA
 3              SOUTHERN DIVISION
 4
 5  CIVIL ACTION NO.: 1:14-CV-00592
 6
 7  IVAN "KEITH" GRAY,
 8        Plaintiff,
 9  vs.
10  CITY OF DOTHAN,
11        Defendant.
12
13
14        S T I P U L A T I O N S
15
16      IT IS STIPULATED AND AGREED by
17  and between the parties, through their
18  respective counsel that the deposition of
19  DOUG MAGILL, may be taken before RHONDA W.
20  HEAD, CCR, Commissioner, at the law
21  offices of SHERRER JONES, P.C., 335 West
22  Main Street, Dothan, Alabama 36301, on the
23  25th day of February, 2015.
```

Page 2

```
 1      IT IS FURTHER STIPULATED AND
 2  AGREED that the signature to and the
 3  reading of the deposition by the witness
 4  is waived, the deposition to have the same
 5  force and effect as if full compliance had
 6  with all laws and rules of Court relating
 7  to the taking of depositions.
 8      IT IS FURTHER STIPULATED AND
 9  AGREED that it shall not be necessary for
10  any objections to be made by counsel to
11  any questions except as to form or
12  leading questions, and that counsel for
13  the parties may make objections and
14  assign grounds at the time of trial
15  or at the time said deposition is offered
16  in evidence or prior thereto.
17      IT IS FURTHER STIPULATED AND
18  AGREED that the notice of filing of the
19  deposition by the Commissioner is waived.
20
21
22
23
```

Page 3

```
 1        A P P E A R A N C E S
 2
 3  FOR THE PLAINTIFF:
 4  SONYA C. EDWARDS, ESQUIRE
 5  EDWARDS LAW
 6  121 EDENTON STREET
 7  BIRMINGHAM, ALABAMA 35242
 8
 9  FOR THE DEFENDANT:
10  CHRIS M. MITCHELL, ESQUIRE
11  STEPHANIE MAYS, ESQUIRE
12  2400 REGIONS/HARBERT PLAZA
13  1901 6TH AVENUE NORTH
14  BIRMINGHAM, ALABAMA 35203
15
16  ALSO PRESENT:
17  DELVICK MCKAY
18
19
20
21
22
23
```

Page 4

```
 1          I N D E X
 2  EXAMINATION BY:            PAGE:
 3  MS. EDWARDS:               7
 4
 5
 6
 7
 8
 9
10
11        E X H I B I T S
12
13      (No Exhibits Marked.)
14
15
16
17
18
19
20
21
22
23
```

Page 5

1    I, RHONDA W. HEAD, CCR, a Court
2  Reporter of Birmingham, Alabama, and
3  Notary Public for the State of Alabama at
4  Large, acting as Commissioner, certify
5  that on this date, as provided by the
6  Alabama Rules of Civil Procedure and the
7  foregoing stipulation of counsel, there
8  came before me at the law offices of
9  Sherrer Jones, P.C., 335 West Main Street,
10  Dothan, Alabama 36301, beginning at 2:45
11  p.m., DOUG MAGILL, witness in the above
12  cause, for oral examination, whereupon the
13  following proceedings were had:
14
15        DOUG MAGILL,
16  the witness, having been first duly sworn
17  by the Court Reporter, was examined and
18  testified as follows:
19
20        THE COURT REPORTER:  Usual
21  stipulations?
22        MS. EDWARDS:  I guess,
23  except we reserve objections for summary

Page 6

1  judgment.
2        MS. EDWARDS:  Yes.
3            EXAMINATION
4  BY MS. EDWARDS:
5      Q    Sergeant Magill, my name is
6  Sonya Edwards, and I represent Keith Gray.
7  I'm going to ask you a series of questions
8  about this case concerning your background
9  and your knowledge of the facts underlying
10  this case, and if at any time I ask you a
11  question that you do not understand, if
12  you could please just ask me to rephrase
13  and I will reask the question.
14      A    Okay.
15      Q    If you could, please, answer
16  my questions out loud with a yes or a no
17  instead of a nodding of the head or a
18  uh-huh or a unh-unh, that way Ms. Head
19  will be able to take down your testimony
20  more accurately.
21      A    Yes, ma'am.
22      Q    And if we take a break
23  during the deposition, all I will ask is

Page 7

1  that you answer the question I have
2  pending prior to taking a break.
3      A    Yes, ma'am.
4      Q    Could you please state your
5  full name for the record?
6      A    Douglas Russell McGill, Jr.
7      Q    Do you have any nicknames or
8  other names that you have gone by?
9      A    Just Doug for short.
10      Q    What is your position with
11  the City of Dothan?
12      A    Sergeant with the Internal
13  Affairs Division.
14      Q    Do you have any other
15  special assignment positions within the
16  department?
17      A    Yes.  Polygraph examiner.
18      Q    How long have you been in
19  Internal Affairs?
20      A    Since February of 2013.
21      Q    Have you ever taken a
22  deposition before?
23      A    I have.

Page 8

1      Q    How many?
2      A    One.
3      Q    And what case was that?
4      A    My ex-wife had filed a -- I
5  don't know what it was, sexual harassment
6  charge against Gerald McDaniel, and I had
7  to have a deposition for that.
8      Q    What is your ex-wife's name?
9      A    Carie, one "r," Spann.
10      Q    C-a-r-i-e?
11      A    Yes.  It's like Marie with a
12  "C."
13      Q    Spann, S-p-a-n-n?
14      A    Correct.
15      Q    Who is Gerald?
16      A    That was her old boss.
17      Q    So she was alleging sexual
18  harassment in the workplace.
19      A    Correct.
20      Q    Were you her witness or his
21  witness?
22      A    I was her witness.
23      Q    And can you describe the

Page 9

```
 1  nature of your testimony?
 2       A   It was just incidents that
 3  she was reporting back to me when I came
 4  home and things that I documented for that
 5  case.
 6       Q   Did you testify at trial in
 7  that case?
 8       A   No.  They settled.
 9       Q   So other than that one case,
10  have you taken any other depositions?
11       A   No, ma'am.
12       Q   Have you testified in
13  court --
14       A   Yes.
15       Q   -- in any other actions?
16       A   Yes.
17       Q   What actions?
18       A   Criminal trials and grand
19  juries.
20       Q   Involving the City of
21  Dothan?
22       A   As a representative of the
23  City of Dothan.
```

Page 10

```
 1       Q   Have you ever been sued in
 2  your personal capacity?
 3       A   No, ma'am.
 4       Q   Have you ever filed suit
 5  against anyone?
 6       A   No, ma'am.
 7       Q   So your testimony in court
 8  was as a witness for the City of Dothan.
 9       A   Correct.
10       Q   What did you do to prepare
11  for this deposition today?
12       A   Reviewed notebooks.
13  Reviewed case files.  I listened to the
14  interviews and met with our attorneys.
15       Q   I don't want to know
16  anything that you discussed with your
17  attorneys, but when and where did you meet
18  with them?
19       A   Yesterday in the chief's
20  conference room, and the day before in the
21  personnel conference room in the Civic
22  Center.
23       Q   Who was present at those
```

Page 11

```
 1  meetings?
 2       A   Chief Benton, myself,
 3  Sergeant Smith, Donny Smith, Corporal
 4  Mullis, Tim Mullis, and my attorneys --
 5  our attorneys and Darryl Mathews.  This is
 6  on the first, the first one.
 7       Q   Okay.  Is that everybody at
 8  the first one?
 9       A   I believe so, yeah.  Yes,
10  ma'am.  I believe so.
11       Q   What about your meeting
12  yesterday?
13       A   It was myself and Sergeant
14  Smith and our attorney.
15       Q   Now, when you say you
16  reviewed notebooks, which notebooks?
17       A   The ones that were provided
18  by the attorneys, and information that was
19  recorded from a case file that was sent to
20  them.
21       Q   What case file?
22       A   The file that they got all
23  this information from.
```

Page 12

```
 1       Q   Is the case file that you
 2  gave to your attorneys within these two
 3  notebooks given to you by your attorneys?
 4       A   Correct.
 5       Q   So is there anything in your
 6  case file that you haven't given to your
 7  attorneys?
 8       A   No.  We had a -- had a paper
 9  today that we had found that we were
10  looking for.  I just gave it to them, and
11  I think they are going to give it to you.
12       MS. EDWARDS:  May I see it?
13  Let's go off the record.
14       (Off the record.)
15       MS. EDWARDS:  Back on.
16       Q   (BY MS. EDWARDS:)  Do you
17  know what these documents are?
18       A   I do.
19       Q   What are they?
20       A   They are Captain Gray's
21  AS-400, what he looked up on AS-400 from
22  January of 2012, and the ending print says
23  12 of 2013.
```

Page 13

1    Q   What do you mean by what he
2  looked up?
3    A   On the AS-400, our database,
4  what case numbers or officers he looked
5  up.
6    Q   This wasn't part of your
7  investigative file --
8    A   It was.
9    Q   -- that you gave to --
10    A   I don't know if it was our
11  fault or their fault, but it got lost in
12  the mix.
13    Q   But you just said you did
14  not give it to your attorneys.
15    A   What I'm saying, it was part
16  of the original ones.  I don't know
17  whether we dropped the ball or they did.
18    Q   Is there any other
19  information that you failed to give to
20  your attorneys that you allege is part of
21  your Internal Affairs investigation?
22    A   Again, I don't know if I
23  failed to give it to the attorneys.

Page 14

1    Q   Do you allege that this
2  would have been a part of a complete
3  Internal Affairs file that you gave to
4  your attorneys per their request?
5    A   I'm saying we had it when we
6  interviewed Captain Gray on what happened.
7  So what happened with the attorneys, I'm
8  not sure.
9    Q   Is there any reason why this
10  would not have been kept with the overall
11  internal investigation file?  Why would
12  this one file be separate?
13    A   Because it was looseleaf,
14  and there's over fifteen hundred pages.  I
15  don't know what to tell you.
16    Q   So are you alleging that
17  this -- where was this found?
18    A   It was actually found in my
19  sent e-mail or received e-mail.
20    Q   From whom?
21    A   Greg Dean, the IT director
22  with the City of Dothan.
23    Q   Greg Dean?

Page 15

1    A   Yes, ma'am.
2    Q   And you just stumbled across
3  this today.
4    A   Last night.
5    Q   And this is dated, purports
6  to be dated August 28, '13.
7    A   Correct.
8    Q   And you just stumbled across
9  it in your e-mail last night.
10    A   I did not find it in the
11  book and went looking for why it wasn't in
12  the book and found it in the e-mails.
13    Q   Where is the e-mail where
14  Greg Dean sent this to you?
15    A   Right there (indicating).
16    Q   No.  There's no e-mail here.
17  There's only --
18    A   I printed out the PDF, but
19  it was on my e-mail.
20    Q   May I have a copy of the
21  e-mail that Greg -- in which Greg Dean
22  sent this to you.
23    A   (Witness nodding head).

Page 16

1        MS. EDWARDS:  Is that
2  something that I can have by the end of
3  the day?
4        MR. MITCHELL:  I don't know.
5        MS. EDWARDS:  Is this
6  something else that I'm going to have to
7  compel that should have been produced
8  previously to this?
9        MR. MITCHELL:  I don't know
10  if it was subject to a previous production
11  request.
12        MS. EDWARDS:  I requested
13  the complete and final, full investigative
14  file for Keith Gray.  We are entitled to
15  the complete file alleging and underlying
16  his termination.
17        MR. MITCHELL:  Right.  I
18  understand that.  You're asking about an
19  e-mail.  I don't know if it was part of
20  that file, if it's covered by the
21  production request.
22        MS. EDWARDS:  The --
23        MR. MITCHELL:  I hear what

Page 17

1  you're saying.
2          MS. EDWARDS:  Your 30(b)(6),
3  who is here to testify as to the Internal
4  Affairs investigation that was conducted
5  on Mr. Gray, just testified that he
6  stumbled across an e-mail from August of
7  '13, that should have been included in his
8  internal affairs investigation --
9          MR. MITCHELL:  You are
10  falsely stating facts.
11          MS. EDWARDS:  I'm not.
12          MR. MITCHELL:  He didn't
13  give a date for any e-mail or any such
14  thing.
15          MS. EDWARDS:  Okay.  Well, I
16  would like to see the e-mail --
17          MR. MITCHELL:  You're making
18  up facts as you go.
19          MS. EDWARDS:  I would like
20  to see the e-mail.
21          MR. MITCHELL:  You just keep
22  making up facts.
23          MS. EDWARDS:  And that is

Page 18

1  precisely one of the reasons I want to see
2  the e-mail from Mr. Dean to compare the
3  date on the e-mail to the date that this
4  report was purportedly run.
5          MR. MITCHELL:  Okay.
6          MS. EDWARDS:  So will you or
7  will you not provide the e-mail?
8          MR. MITCHELL:  I don't know.
9          MS. EDWARDS:  Well, I'll
10  have to take "I don't know" as no, if
11  you're not going to voluntarily go to your
12  client to produce this document.
13          MR. MITCHELL:  You may take
14  it however you wish.
15          MS. EDWARDS:  Without your
16  going back to the your client to
17  voluntarily request the information,
18  you're necessitating a Motion to Compel,
19  Mr. Mitchell.
20      Q   (BY MS. EDWARDS:)  So Greg
21  Dean is your IT director; is that correct?
22      A   No.
23      Q   Is he the former IT

Page 19

1  director?
2      A   No.
3      Q   I'm sorry.  What is his
4  position?
5      A   He works in IT.
6      Q   Just works in IT.  What is
7  his title?
8      A   I don't know.  He's just
9  Greg Dean in IT.  I don't know what his
10  official title is.
11      Q   Is he with the City of
12  Dothan?
13      A   Yes, ma'am.
14      Q   What is the date of his
15  e-mail, do you know?
16      A   It was August something of
17  '13.  I remember that.  I don't know the
18  exact date.
19      Q   You don't have a problem
20  producing the e-mail cover for this, do
21  you?
22      A   Whatever my attorney
23  decides.

Page 20

1      Q   Okay.  Other than these
2  binders, the case file, which, as I
3  understand, includes everything that's in
4  your case file is included in these
5  binders and this; is that correct?
6      A   Yes, ma'am.
7      Q   And when you say "case
8  file," you mean your Internal Affairs
9  investigation, correct?
10      A   Yes.
11      Q   Have you reviewed anything
12  outside of those documents?
13      A   No, ma'am.
14      Q   Have you ever been arrested?
15      A   No, ma'am.
16      Q   Never been charged with any
17  crime?
18      A   No.
19      Q   Have you ever filed for
20  bankruptcy?
21      A   Yes.
22      Q   When?
23      A   2011.

Page 21

1   Q  What is the status of that,
2   was it discharged?
3       A  Yes, ma'am.
4       Q  When were you discharged?
5       A  June of 2011.  I think it
6   was filed in March and discharged in June.
7       Q  What court was that with?
8       A  It was federal court.  It
9   was here.
10      Q  Here?
11      A  Yes.
12      Q  What is your level of
13  education?
14      A  I'm a college graduate with
15  a Bachelor's in Business Administration.
16      Q  From where?
17      A  Faulkner.
18      Q  Are you a member of any
19  professional groups or organizations?
20      A  The IBPO.
21      Q  Anyone, any other
22  organizations or groups, social clubs?
23      A  Notre Dame Fighting Irish in

Page 22

1   the South.
2       Q  Anyone else, any other
3   clubs?
4       A  No, ma'am.
5       Q  How long have you been with
6   the City of Dothan?
7       A  I was hired November 8th,
8   1999.
9       Q  What position were you hired
10  into?
11      A  I was hired as a patrol
12  officer.
13      Q  How long were you an
14  officer?
15      A  I worked patrol from
16  November or December of '99 until January
17  of 2007.
18      Q  After that, what rank did
19  you hold?
20      A  I was promoted to corporal.
21      Q  How long were you corporal?
22      A  Until February of 2011.
23      Q  And then what was your rank?

Page 23

1       A  I was promoted to sergeant.
2       Q  To whom do you report?
3       A  Chief Benton.
4       Q  How long have you reported
5   to him?
6       A  Since the Internal Affairs
7   assignment in February of 2013.
8       Q  Who did you report to before
9   him?
10      A  I was over -- I was a
11  sergeant over the juvenile division.  I
12  reported to Lieutenant Will Benny.
13      Q  How long did you report to
14  Lieutenant Benny?
15      A  Probably six months because
16  he got promoted and took over.
17      Q  Took over what?
18      A  CID.  He took over the job
19  CID from the previous lieutenant.
20      Q  Who was your supervisor
21  before Lieutenant Benny?
22      A  Lieutenant Tony Luker.
23      Q  And how long were you under

Page 24

1   him?
2       A  I guesstimation, probably
3   about a year, a year and a half.
4       Q  Have you ever been
5   disciplined?
6       A  No, ma'am.
7       Q  Have you ever been
8   counseled?
9       A  No, ma'am.
10      Q  I mean written, verbal.
11      A  No, ma'am.
12      Q  No one's ever said anything
13  to you critiquing your work performance.
14      A  Verbal, yes.  I've had
15  verbal, not nothing written.
16      Q  Who has verbally counseled
17  you?
18      A  Sergeant Jason Penn.
19      Q  Okay.  What was that -- what
20  was the reason for the counselling?
21      A  I had a -- I had a victim
22  that I hadn't called back.  I had a victim
23  I didn't call back in time.

Doug Magby
Case 1:14-cv-00392-WKW-SRW  Document 69-6  Filed 09/25/15  Page 8 of 27
Case 1:14-cv-00392-WKW-SRW  Document 48-6  Filed 05/15/15  Page 8 of 27
12/25/2015
Pages 25 to 28

Page 25

1    Q   And when you say, "victim,"
2 what do you mean?
3    A   She was a victim of a crime.
4 It was more of, in my opinion, it was more
5 of a civil matter, and I didn't call her
6 back enough and she complained on me for
7 not calling her back.
8    Q   Were you an officer working
9 a crime scene involving this victim?
10   A   No, ma'am.  I was a
11 investigator working a theft of property
12 case.
13   Q   So she was a victim of
14 theft.
15   A   It turned out not to be a
16 theft.  It turned out to be a civil.  It
17 was an estate problem.
18   Q   How did you become involved
19 with this victim?
20   A   She was -- she was one of
21 those -- she was persistent in calling and
22 wanting somebody to investigate her case.
23 And I investigated her case and informed

Page 26

1 her that it was a civil matter and it
2 wasn't a criminal matter, and we hung up
3 the phone.  And then she called back a
4 couple of times and I just ignored her
5 phone call.  And Sergeant Penn got on me
6 about it.  And I called her back.  And I
7 talked to the district attorney and he
8 said it's civil.  We're not doing anything
9 with it, and that was the end of it.
10   Q   When did that occur?
11   A   2000 -- I'm not sure of the
12 exact date or time.  It was 2008, 2009.
13 I'm not sure.
14   Q   Other than this incident,
15 have you ever been verbally counselled?
16   A   I don't recall any other
17 time.
18   Q   Where did you work before
19 the City of Dothan?
20   A   The Midland City Police
21 Department.
22   Q   What dates did you work for
23 them?

Page 27

1    A   April of '97 until November
2 of '99.
3    Q   What was your position with
4 them?
5    A   I was canine handler,
6 patrol.
7    Q   What was your reason for
8 leaving?
9    A   Better pay in Dothan.
10   Q   Were you terminated?
11   A   No, ma'am.
12   Q   Did you resign?
13   A   Yes, ma'am.
14   Q   And before Midland City,
15 where did you work?
16   A   I was with Jerry Mitchell,
17 car sales in Ozark.
18   Q   What was your position?
19   A   I was a salesman.
20   Q   How long did you work there?
21   A   Um, ten months.
22   Q   Where did you work before
23 there?

Page 28

1    A   I was in the U.S. Army.
2    Q   What was your rank?
3    A   I was a specialist.
4    Q   How long did you serve?
5    A   I served for seven years.
6    Q   Were you discharged?
7    A   I was.
8    Q   Honorable or not?
9    A   Honorable, yes, ma'am.
10   Q   Have you ever had any
11 complaints made against you in any of your
12 positions by coworkers?
13   A   Yes.
14   Q   Tell me what those are and
15 start with the City of Dothan, most
16 recent.
17   A   It's the only one.  It was
18 in 2009.  Lieutenant Ray Owens made a
19 complaint against me to Internal Affairs.
20   Q   What was the basis of his
21 complaint?
22   A   That I was supposedly -- his
23 allegation was that there was a guy that

Page 29

1  was trying to drum up business, a patrol
2  officer was trying to drum up business
3  that Tim and I was going to start in
4  polygraphing.
5      Q   I'm sorry.  He complained --
6      A   Yes.
7      Q   -- about what specifically?
8      A   That he felt that Officer
9  Derrick Wizorek was out trying to find a
10  business for Tim and I from the victims of
11  crime for a polygraph business.
12      Q   Did he accuse you of sending
13  Wizorek to do this for you?
14      A   Yes.
15      Q   How was that complaint
16  resolved?
17      A   I was exonerated.  It was
18  unfounded.
19      Q   Any other complaints made by
20  coworkers against you?
21      A   No, ma'am.
22      Q   Have you ever had any member
23  of the public, other than the one incident

Page 30

1  that we discussed earlier, make any
2  complaints against you?
3      A   Yes.
4      Q   What are those?
5      A   Charlene Sutherland made a
6  complaint on me.
7      Q   I'm sorry.  Her last name
8  was?
9      A   Sutherland.
10      Q   What was her complaint?
11      A   Rude and discourteous
12  treatment.
13      Q   When was this complaint
14  made?
15      A   I cannot give you an exact
16  date or even year, but I would say
17  probably 2003.
18      Q   Were you investigated for
19  that complaint?
20      A   Yes.
21      Q   And what was the outcome of
22  that investigation?
23      A   It was unfounded.

Page 31

1      Q   Any other complaints other
2  than Charlene Sutherland and the estate
3  lady complaint that we discussed earlier?
4      A   There was a complaint that I
5  was involved in, but I wasn't named
6  specifically.  It was a -- an
7  investigation into Steven Jones, Officer
8  Steven Jones, and I was actually --
9  responded to the call, but was actually
10  not involved in the call, if that makes
11  sense.  He was complained on and they
12  investigated everyone involved in the
13  scene.
14      Q   What was the complaint
15  against Steven Jones?
16      A   Excessive force.
17      Q   Who was the victim?
18      A   I -- I don't recall.
19      Q   So you were on the scene.
20      A   I showed up on the scene,
21  but he had chased him out the back door,
22  and him and another group of officers
23  ended up tackling him or getting him,

Page 32

1  wherever, and I stayed with the victim and
2  was doing the paperwork.
3      Q   And so the complaint
4  referenced you.
5      A   No.  It just referenced
6  Steven Jones, and I was investigated, or I
7  was questioned in reference to Steven
8  Jones' actions.
9      Q   What was the outcome of that
10  complaint?
11      A   I don't -- I don't know.  I
12  don't know.
13      Q   Was he found to have used
14  excessive force?
15      A   I don't know.
16      Q   Do you know if he was
17  disciplined?
18      A   I don't know.
19      Q   When you were interviewed,
20  what was your statement that you gave
21  Internal Affairs?
22      A   They just asked me did I see
23  anything.  And I explained to them when I



Page 33

1  got there, they had already run out the
2  back door and I stayed with the victim and
3  I never had any contact with -- I had a
4  backup officer with me, and everyone else
5  was gone, so I don't know what occurred.
6       Q   What race was the victim?
7       A   I don't know for sure.
8       Q   You were standing there with
9  her.
10      A   Oh, the victim?  I thought
11 you said the suspect.  Oh, yeah.  The
12 victim was African American.
13      Q   What race was Charlene
14 Sutherland?
15      A   She was African American.
16      Q   What race was the estate
17 victim?
18      A   She was white.
19      Q   Any other complaints made
20 against you other than those three?
21      A   No, ma'am.
22      Q   Any complaints made against
23 you by coworkers in your previous jobs?

Page 34

1       A   No, ma'am.
2       Q   Any complaints made against
3  you by a member of the public in your
4  previous jobs?
5       A   No, ma'am.
6       Q   Now, I'm going to ask you a
7  few questions about the internal affairs
8  investigation allegedly underlying Mr.
9  Gray's termination.
10      I understand that there was an
11 assault incident at a motorcycle clubhouse
12 on August 24th, 2013; is that correct?
13      A   Yes, ma'am.
14      Q   And that incident
15 precipitated the investigation into Mr.
16 Gray.
17      A   Yes, ma'am.
18      Q   How did you come to be
19 involved in the incident?
20      A   I received a phone call from
21 Chief Benton at my residence.
22      Q   When did Chief Benton call
23 you?

Page 35

1       A   The 25th at about lunchtime,
2  around lunchtime.
3       Q   What did Chief Benton say to
4  you?
5       A   I can't quote him exactly
6  what he said, but it was that CID is out
7  with an assault, or whatever, and
8  apparently Captain Gray's name has come up
9  and another officer's involved.  I don't
10 know exactly what's going on, and I need
11 you and Donny to get out there and see
12 what's going on.
13      Q   Do you remember that he
14 mentioned specifically Keith Gray in that
15 call to you?
16      A   Yes, ma'am.
17      Q   Do you remember him
18 mentioning anybody else's name
19 specifically?
20      A   He said somebody else, but
21 he did not give me a name.  He said
22 somebody else.
23      Q   What did he say about it

Page 36

1  I mean, what other details did he give
2  you?
3       A   He said he didn't understand
4  exactly what was going on.  He said there
5  has been some allegations against Keith
6  Gray, and he said somebody else he didn't
7  know.  He said I need you and Donny to go
8  out there and see what's going on and to
9  get with Lieutenant Benny.
10      Q   Did you proceed to the scene
11 then?
12      A   I mean, within moments.  I
13 think I had to get dressed.  I had shorts
14 on, but yeah, pretty quick.
15      Q   So when you arrived on the
16 scene, who was there?
17      A   I don't remember everybody
18 that was there.  I made contact with
19 Lieutenant Will Benny, and I got there
20 before Sergeant Smith.  I can't tell you
21 all the other officers that were there.
22      Q   Who did you specifically
23 speak to when you arrived?

---

Page 37

```
 1        A   Lieutenant Will Benny.
 2        Q   What did Lieutenant Benny
 3   tell you?
 4        A   He informed me that there
 5   was a complaint made about Captain Gray
 6   being in a clubhouse, smoking marijuana --
 7   where they were smoking marijuana and
 8   drinking illegal liquor, something to that
 9   extent.
10        Q   A complaint was made to
11   whom?
12        A   Officer Woodside.
13        Q   So Officer Woodside told
14   Lieutenant Benny that someone made a
15   complaint.
16        A   Had a name, yes, ma'am.
17        Q   Who?
18        A   Willie McGuire.
19        Q   Willie McGuire allegedly
20   made a complaint.
21        A   Well, he made comments, yes.
22   I guess it would be a complaint, yes,
23   ma'am.
```

---

Page 38

```
 1        Q   In your Internal Affairs
 2   investigation --
 3        A   Uh-huh.
 4        Q   -- did or did not Willie
 5   McGuire make a complaint against Keith
 6   Gray?
 7        A   He made it known to us.
 8        Q   So he didn't file a formal
 9   complaint against Keith Gray.
10        A   I mean, what's your
11   definition of formal?  I don't understand
12   what you're saying.
13        Q   You have no record of any
14   complaint filed by Willie McGuire against
15   Keith Gray, do you?
16        MR. MITCHELL:  Object to
17   form.
18        A   Can you rephrase the
19   question?
20        Q   You have no record of any
21   complaint filed by Willie McGuire against
22   Keith Gray, do you?
23        MR. MITCHELL:  Object to
```

---

Page 39

```
 1   form.
 2        Q   You can answer.  Your
 3   attorney will object throughout this
 4   deposition.
 5        A   I understand.
 6        Q   But unless he instructs you
 7   not to answer, you have to answer.
 8        A   I understand.  I'm not
 9   trying to -- I talked to Willie McGuire.
10   A complaint doesn't have to be written.
11        Q   Well, how did he complain
12   about Keith Gray?
13        A   He said that he didn't think
14   it was fitting that a high ranking officer
15   in the department was at an establishment
16   where they were smoking marijuana and
17   drinking beer, is what he said.
18        Q   So you're there, the Dothan
19   police department is there investigating
20   an assault.
21        A   Correct.
22        Q   And you allege that Willie
23   McGuire just walked up and said, I've got
```

---

Page 40

```
 1   a complaint to make about Keith Gray.
 2        MR. MITCHELL:  Object to
 3   form.
 4        A   That's -- Willie McGuire
 5   made contact with an officer on the scene
 6   and said -- said what he said.
 7        Q   Who did he make contact
 8   with?
 9        A   Mike Woodside.  Officer Mike
10   Woodside.
11        Q   Did you talk to Mike
12   Woodside?
13        A   I don't recall talking to
14   Officer Woodside.
15        Q   Don't you think that would
16   be important?  You launched an Internal
17   Affairs investigation against Keith Gray
18   and you didn't speak to the officer to
19   whom this alleged complaint from Willie
20   McGuire was made.
21        MR. MITCHELL:  Object to
22   form.  He didn't launch it.
23        Q   You launched an Internal
```

Case 1:14-cv-00392-WKW-SRW  Document 69-34  Filed 09/25/15  Page 12 of 27
Doug Magru 00392-WKW-SRW  Document 48-6  Filed 09/15/15  Page 12 of 27/25/2015

Pages 41 to 44

Page 41

1  Affairs investigation, didn't you?
2      A   No, ma'am, I didn't.
3      Q   Who launched it?
4      A   Sergeant Smith talked to
5  Officer Woodside.  I did not talk to
6  Officer Woodside.
7      Q   Well, what if he said you
8  talked to Officer Woodside.
9      A   I talked to Lieutenant Benny
10  and he is mistaken.
11      Q   So neither of you talked to
12  Officer Woodside.
13      A   Officer Woodside was spoke
14  to, yes, ma'am.
15      Q   No.  Neither one of you
16  spoke to Officer Woodside, did you?
17      MR. MITCHELL:  Object to
18  form.
19      Q   You didn't speak to Officer
20  Woodside, did you?
21      A   I did not.
22      Q   But you spoke to Lieutenant
23  Benny.

Page 42

1      A   Correct.
2      Q   And so you're hearing
3  hearsay through Lieutenant Benny about
4  what this Willie McGuire allegedly said to
5  Officer Woodside, correct?
6      A   Can you rephrase the
7  question?
8      Q   You're hearing it second
9  hand through Lieutenant Benny what this
10  Willie McGuire allegedly said to Officer
11  Woodside, correct?
12      A   Correct.
13      Q   So you're getting secondhand
14  information from a member of a motorcycle
15  club at a clubhouse where the police are
16  on the scene related to an assault that
17  occurred the night before, correct?
18      MR. MITCHELL:  Object to
19  form.  That's five questions.
20      Q   Do you understand my
21  question?
22      A   No.  Ask it again.  I'm
23  sorry.

Page 43

1      Q   Okay.  You are telling me
2  that you're hearing it secondhand from
3  Lieutenant Benny --
4      A   Uh-huh.
5      Q   -- about an alleged
6  complaint, in your words, from a Willie
7  McGuire who is a member of a motorcycle
8  club, correct?
9      A   Yes.
10      Q   At a clubhouse, correct?
11      A   Yes.
12      Q   A motorcycle clubhouse,
13  correct?
14      A   Uh-huh.
15      Q   Where Dothan police are on
16  the scene due to an assault that occurred
17  the night before, correct?
18      A   Yes.
19      Q   An assault that Keith Gray
20  had nothing to do with, correct?
21      A   Correct.
22      Q   He was not anywhere -- he
23  wasn't at that clubhouse that night, was

Page 44

1  he?
2      A   Correct.
3      Q   So you're hearing secondhand
4  information through Lieutenant Benny
5  through Officer Woodside --
6      A   Uh-huh.
7      Q   -- about these allegations
8  made by this motorcycle club member,
9  correct?
10      A   Correct.  And can I say
11  something -- back up on something?
12      Q   Do you need to correct
13  something you have just said?
14      A   I just -- I don't know if a
15  yes or no was correct in that answer.
16      Sergeant Smith did talk to
17  Officer Woodside.  I was with Lieutenant
18  Benny when Sergeant Smith was talking --
19      Q   Well, we'll allow his
20  testimony to stand for itself.
21      A   Okay.
22      Q   And so you hear from
23  Lieutenant Benny that he hears from

Page 45

1 Officer Woodside that Willie McGuire, this
2 motorcycle club member made this statement
3 about Captain Gray while his clubhouse is
4 being investigated, correct?
5        A   That's not correct.  It's
6 not Willie McGuire's clubhouse.  He's not
7 a member of Outcast.
8        Q   What motorcycle club is he a
9 member of?
10       A   I don't recall right
11 offhand.  But he is a -- he is a
12 firefighter from Troy, and that was the
13 first time he had ever been to the
14 clubhouse, and he was not going back
15 because of the activities that were going
16 on there.
17       Q   But he is with a motorcycle
18 club.  He's a member of a motorcycle club.
19       A   He's a member of motorcycle
20 club, but not Outcast.
21       Q   A motorcycle club.
22       A   Yes, ma'am.
23       Q   And so based on your

Page 46

1 discussion with Lieutenant Benny, what did
2 you do from there?  Did you speak with
3 anybody else while you were at the
4 clubhouse?
5        A   Yeah.  I talked to Sergeant
6 Smith, and I think Keith Carpenter was
7 there with the ABC.  And he had pointed
8 out a poster to me inside the club.
9        Q   And that poster doesn't
10 relate to your Internal Affairs
11 investigation, to my understanding.
12       A   No.  I wasn't sure at the
13 time.
14       Q   You didn't confiscate it and
15 it had nothing to do with the
16 investigation into Keith Gray.
17       A   Unh-unh.  We didn't know at
18 the time, but, correct.
19       Q   But you discovered it had
20 nothing to do with Keith Gray; is that
21 correct?
22       A   Correct.
23       Q   Now, during your

Page 47

1 investigation, you ultimately found that
2 you had no evidence that Mr. Gray broke
3 any laws, correct?
4        A   Criminal laws?
5        Q   Yes.
6        A   I mean --
7        Q   He wasn't charged with
8 anything, was he?
9        A   No, he wasn't.
10       Q   I mean, he would have been
11 charged if he had violated the law,
12 wouldn't he?
13       A   I mean, not necessarily,
14 but, no.
15       Q   Did he or did he not -- did
16 you or did you not find that he broke any
17 laws?
18       A   No, he did not break any
19 laws.
20       Q   Did you or did you not prove
21 that he -- that the Bama Boyz Motorcycle
22 Club was involved in any crime?
23       A   I mean, there was -- no, I

Page 48

1 was not able to prove there was any crime,
2 no, ma'am.
3        Q   Didn't your investigation
4 prove that Bama Boyz Motorcycle Club is
5 not a one percenter motorcycle club?
6        A   I guess I need to phrase
7 this correctly.  I guess, we're getting
8 off track.
9        Q   That's a yes or no question.
10 Is --
11           MR. MITCHELL:  It's not a
12 yes or no question.  He didn't prove
13 anything.  He investigated.
14           MS. EDWARDS:  Okay.
15           MR. MITCHELL:  The word,
16 "prove," is an improper question.
17       Q   All right.  Well, what did
18 your findings find from your
19 investigation?  Is Bama Boyz Motorcycle
20 Club a one percenter or not?
21       A   They're associated with one
22 percenters.
23       Q   But they're not.

Page 49

1      A    But they're associated with
2  them.
3      Q    But they're not.
4      A    They're not one percenters.
5  They're associated with one percenters.
6      Q    All right.  "Associated
7  with."
8      A    Uh-huh.
9      Q    What do you mean by that?
10     A    Meaning they have to go to
11  them, ask their permission to ride.
12     Q    Who said that?
13     A    That's Captain Gray's words.
14     Q    He didn't say he had to, did
15  he?
16     A    No, he didn't have to.  He
17  chose to.
18     Q    Well, so that's
19  contradictory, don't you think?
20     A    No.  And once you ask for
21  permission, you have to -- when you ask
22  for permission and those permissions are
23  granted, then you fall into their rule,

Page 50

1  and if you don't do what they say, then
2  there's discipline, and it's either
3  pulling colors or -- or --
4      Q    Whoever said he fell under
5  anybody's rule?
6      A    He works hand and hand with
7  them.  That was his statement.
8      Q    Hand-in-hand, huh?
9      A    That was his words.
10     Q    Hand-in-hand by requesting
11  permission to ride in a territory to avoid
12  friction, correct?
13     A    And there was more than
14  that.
15     Q    Oh.  Well, did he or did he
16  not tell you that he sought this, quote,
17  unquote, blessing as you like to put it --
18     A    That was his words.
19     Q    -- by riding in a particular
20  territory to avoid conflict with a
21  motorcycle club?  Did he not tell you that
22  during his interview?
23     A    But there is more to it than

Page 51

1  that.
2      Q    I'm asking you a question.
3  Did Captain Gray say to you during your
4  Internal Affairs investigation, that the
5  reason he requested the blessing was so
6  that he could avoid friction for his
7  motorcycle club and keep his members of
8  his club safe?
9          MR. MITCHELL:  Object to
10  form.
11     Q    Did he tell you that?
12     A    He told me that there was no
13  violence, and then he did tell me that
14  also.  So he said it was both.  He said
15  both.
16     Q    So he said he has never
17  witnessed any violence.
18     A    No.  He actually said he was
19  almost kicked off a motorcycle in Florida,
20  but he -- that he said he did go to them
21  for protection because he didn't want any
22  problems, is what he said.  That was in
23  the first interview.

Page 52

1      Q    So he's avoiding conflict,
2  correct?
3      A    If he wanted to avoid
4  conflict, he would have remained a riding
5  club, not a motorcycle club.
6      Q    Oh, how does that make a
7  difference?
8          MR. MITCHELL:  Well, let me
9  say this, the sarcasm needs to stop or
10  else we will leave, and I mean that.  We
11  will leave.
12     Q    Sergeant Magill, am I
13  intimidating you in any way?
14     A    I'm going by the advice of
15  my attorney.
16     Q    Am I making you
17  uncomfortable?  Am I intimidating you in
18  any way?
19     A    No, ma'am.
20     Q    You never uncovered anything
21  in your investigation that would lead you
22  to believe that Mr. Gray or the Bama Boyz
23  have been associated with any crime, have

Case 1:14-cv-00392-WKW-SRW   Document 69-34   Filed 09/25/15   Page 15 of 27
Doug Magni          Case 1:14-cv-00392-WKW-SRW   Document 46-6   Filed 09/15/15   Page 15 of 27          7/25/2015

Pages 53 to 56

Page 53

1  you?
2      A  With any criminal crime, no,
3  ma'am.
4      Q  And, in fact, when he
5  discusses --
6      A  Can I retract that?  Can I
7  retract that?
8          MR. MITCHELL:  Yes.
9          MS. EDWARDS:  Says the
10 attorney.
11     A  Besides the marijuana
12 smoking, that there was an allegation some
13 Bama Boyz were smoking marijuana.
14     Q  That Keith Gray was smoking
15 marijuana?
16     A  No, that Bama Boyz were
17 smoking marijuana, not Keith Gray.
18     Q  The fact that your
19 investigation specifically found that
20 Keith Gray had not smoked marijuana.
21     A  Correct.
22         MR. MITCHELL:  But your
23 question dealt with Bama Boyz and not just

Page 54

1  Keith Gray.
2          MS. EDWARDS:  Well, okay,
3  Mr. Mitchell.  I'm going to make it very
4  clear for your client here.
5      Q  Now, you have no record of
6  any -- let me rephrase that.
7          Keith Gray was never guilty of
8  any crime in this investigation, correct?
9      A  None were uncovered,
10 correct.
11     Q  Have you ever investigated
12 any officer with Dothan Police Department
13 for involvement with a motorcycle club?
14     A  No, ma'am.  Well, during
15 this investigation, yes, Taiwan Truitt.
16 But outside of this, no.
17     Q  You also investigated a
18 ReaMonica Carney, didn't you?
19     A  Being in a motorcycle gang?
20 No, ma'am.
21     Q  You never launched an
22 Internal Affairs investigation into Taiwan
23 Truitt, did you?

Page 55

1      A  He was encompassed in this
2  investigation.
3      Q  You would have had to launch
4  a separate Internal Affairs investigation
5  into Taiwan Truitt and you did not do so,
6  did you?
7      A  There was no allegation on
8  Taiwan Truitt.  All the people that
9  testified on Keith Gray said that Taiwan
10 hadn't done anything wrong.
11     Q  So the answer to that
12 question is you never launched an
13 investigation into Taiwan Truitt, did you?
14     A  My answer is it was
15 encompassed into this one.
16     Q  I'm saying to you, you did
17 not launch a separate Internal Affairs
18 investigation into Taiwan Truitt, did you?
19         MR. MITCHELL:  Object to
20 form.  What does launch mean?
21     Q  You didn't conduct as a
22 separate Internal Affairs investigation
23 into Taiwan Truitt's affiliation with a

Page 56

1  motorcycle club, did you?
2      A  Taiwan Truitt came up during
3  this investigation, because we didn't know
4  everybody that was involved, and he came
5  up, and there was no further evidence to
6  substantiate any claim for Taiwan Truitt,
7  so there was no need to go any further
8  with it.
9      Q  In your opinion.
10     A  In my experience.
11     Q  Now, it was alleged that he
12 received a blessing from the Outcast
13 Motorcycle Club as well, correct?
14     A  Who is that?
15     Q  Taiwan Truitt.
16     A  No.
17     Q  So your testimony is is that
18 no information was uncovered in your
19 investigation that Taiwan Truitt also
20 requested a blessing or permission to ride
21 in a specific territory with another
22 motorcycle club.
23     A  No.

Page 57

1    Q   Now, you requested a copy of
2  OS Triage software from Tim Mullis to run
3  on Mr. Gray's computer, didn't you?
4    A   No, ma'am.  I requested -- I
5  asked Tim Mullis the specifications, what
6  it could look for.
7    Q   But you didn't run it?
8    A   No, ma'am.
9    Q   He gave you a copy of it,
10 didn't he?
11   A   I don't recall if he did or
12 not.  I never used it.
13   Q   So Mr. Mullis would be lying
14 if he said that you requested a copy of OS
15 Triage from him.
16   A   Mr. Mullis -- I asked Mr.
17 Mullis what the capability of OS Triage
18 were.
19   Q   And so you're saying he's
20 lying when he said he gave you a copy.
21   A   No.  I'm saying I don't
22 recall if he gave me a copy.
23   Q   Are you denying asking him

Page 58

1  for a copy of OS Triage?
2    A   I never asked him for a
3  copy.  I asked him what OS Triage could
4  do.
5    Q   Why did you want to know
6  that?
7    A   Because after it was raised
8  that the Outcast president, McGoley, had
9  made comments that Keith Gray was going to
10 find out if he was under investigation.
11 And then when we interviewed Keith Gray
12 the first time, Keith Gray stated, yeah,
13 he asked me if I was under investigation.
14 So it confirmed the story that they were
15 actually communicating about whether he
16 was under investigation.
17   Q   You never found any evidence
18 in your Internal Affairs investigation
19 that Mr. Gray was passing along
20 information to any head of any motorcycle
21 club, did you?
22   A   I mean, that's a difficult
23 question.  I don't have any idea.  I

Page 59

1  mean --
2    Q   You don't know what your own
3  Internal Affairs investigation recovered
4  after that?
5    A   No.  I understand what my
6  Internal Affairs -- but looking at those
7  sheets where he looked up officer's
8  information, I don't know what has been
9  passed and what hasn't been passed.
10   Q   You never stated or
11 recommended to Chief Benton that you found
12 any evidence that he had passed on
13 sensitive information or any internal
14 information to an outside motorcycle club
15 gang, did you?
16   A   No.
17   Q   So what did Mr. Mullis tell
18 you about what the OS Triage software
19 would do?
20   A   I don't recall exactly what
21 it was, except that it wasn't what I
22 needed.  I don't recall.
23   Q   So you deny that you

Page 60

1  requested a copy of that software from Mr.
2  Mullis.
3    A   Yes.  I never asked him for
4  a copy of it.  I asked him what the
5  capabilities were.
6    Q   So, do you -- is it your
7  testimony that he just volunteered this
8  copy of this software to you?
9    A   What I'm saying is I never
10 had OS Triage on -- I never ran OS Triage
11 on the computer.
12   Q   You never ran OS Triage
13 software.
14   A   I never ran OS Triage on the
15 computer.
16   Q   Did anybody run OS Triage
17 software on Mr. Gray's computer?
18   A   I do not know what ABI ran
19 on his computer.
20   Q   How would ABI have run
21 anything on his computer?  Who is ABI?
22   A   I don't remember the
23 investigator.

Case 1:14-cv-00392-WKW-SRW Document 69-34 Filed 09/25/15 Page 17 of 27
Doug Magm          Case 1:14-cv-00392-WKW-SRW Document 43-6 Filed 09/15/15 Page 17 of 27   7/25/2015

Pages 61 to 64

Page 61

1    Q   Was ABI involved in this
2  investigation?
3    A   The computer went up to ABI,
4  yes, ma'am.
5    Q   Who sent the computer to
6  ABI?
7    A   I don't remember who drove
8  it up there.
9    Q   This is part of your
10  Internal Affairs investigation, do you
11  understand that?
12    A   I understand.  I understand.
13  I don't recall who drove the computer up
14  there.  I think --
15    Q   And your partner testified
16  earlier that ABI had no role in this
17  investigation.  So you're saying that they
18  did now.
19    A   My partner doesn't know
20  exactly what I did.  He did other things.
21  He did a lot more of the motorcycle --
22    Q   So then you had involvement
23  with ABI.

Page 62

1    A   Yes.
2    Q   Who?
3    A   I don't remember the
4  investigator's name.
5    Q   Do you have any
6  documentation of your dealings with ABI in
7  this investigation?
8    A   Just the report that Officer
9  Mullis had on the computer.
10    Q   Where?  Where is that report
11  in this file?
12    A   I don't think it's in my
13  files.
14    Q   It's part of the
15  investigation, is it not?
16    A   Well, some of the computer
17  stuff that -- I'm not savvy, tech savvy.
18  I can only testify he's got it.
19    Q   Who does?
20    A   Tim Mullis.
21    Q   Would that not be included
22  in the Internal Affairs investigative
23  file?

Page 63

1    A   Okay.  I'll try to explain
2  this again.  We sent a file up to our
3  attorney.  They broke it down into areas
4  of responsibility.
5    Q   Excuse me?
6       MR. MITCHELL:  Yes.  You
7  gave us a 30(b)(6) notice.  We had to
8  designate witnesses.
9       MS. EDWARDS:  Yeah, but --
10       MR. MITCHELL:  And so we had
11  to break it down into areas of
12  responsibility and parcel it out.
13       MS. EDWARDS:  And his area
14  of responsibility is the investigation of
15  Keith Gray.
16    A   Correct.
17    Q   (BY MS. EDWARDS:)  Now, you
18  just said to me that you involved the ABI.
19    A   I went to the ABI, yes.
20    Q   Who did you talk to at the
21  ABI?
22    A   What I'm telling you is I
23  don't remember the investigator's name.

Page 64

1    Q   How would that be computer
2  related, oh, Tim Mullis has it, when you
3  contacted the ABI?
4    A   When Investigator Mullis, I
5  believe was the one who had the contact,
6  and the report went to Investigator Mullis
7  or Corporal Mullis.  And it was -- I don't
8  know --
9    Q   And so he's lying when he
10  said he didn't run any computer forensic
11  testing on the computer.
12    A   Yeah, he didn't do it.  ABI
13  did it.
14    Q   So basically nothing was
15  found on Mr. Gray's computer.
16    A   Nothing meaning what?
17    Q   Nothing that would -- that
18  underlies his termination.
19    A   There was definitely some
20  stuff found on his computer, yes.
21    Q   Where is that report?
22    A   Again, I think Tim Mullis
23  has it, and I think y'all went over it

Case 1:14-cv-00392-WKW-SRW Document 69-34 Filed 09/25/15 Page 18 of 27
Doug Magri                    Case 1:14-cv-00392-WKW-SRW  Document 48-6  Filed 09/15/15  Page 18 of 27     7/25/2015
Pages 65 to 68

Page 65

1  yesterday.
2      Q   He testified nothing was
3  found on the computer.
4      A   Well, I found or they found
5  a personal picture of Steve Parrish on the
6  computer deleted files.  They found
7  some --
8      Q   What do you mean a personal
9  picture of Steve Parrish?
10     A   Like a personal picture of
11 Steve Parrish.  He's not in any uniform, a
12 personal picture.
13     Q   Holding the confederate
14 flag?
15     A   No.
16     Q   That one?
17     A   No.
18     Q   What personal picture of
19 Steve Parrish?
20     A   It looked like maybe one
21 taken out of a newspaper.
22     Q   Well, big deal.  What does
23 -- I mean, I --

Page 66

1      MR. MITCHELL:  You asked the
2  question, what did he find, so he told
3  you.
4      Q   Okay.  Well, what else?
5      A   There was other stuff that
6  we weren't sure exactly what it was.  Had
7  Google Map squares that were --
8      Q   Where is the report of all
9  of this in this file?
10     A   Well, it wasn't -- we didn't
11 document it.
12     Q   So you have no documentation
13 of what was found on the computer, is that
14 what you're telling me?
15     A   There was nothing
16 significant to the case at that point,
17 correct.
18     Q   So in other words, nothing
19 was found on his computer underlying his
20 termination.
21     A   Correct.
22     Q   Have you ever sent any other
23 City of Dothan police department

Page 67

1  employees' computer to ABI for testing?
2      A   No.  I've never worked a
3  case this big, no, ma'am.
4      Q   Have you ever known of any
5  other employees' computer to be sent to
6  ABI for testing?
7      A   Not to my knowledge.
8      Q   Did you summarize your
9  findings from your investigation into a
10 written report?
11     A   I did.
12     Q   Where is that?
13     A   I do not know.
14     Q   You don't know?
15     A   No.
16     Q   Is it not part of the
17 investigative file?
18     A   It was not.  It was one of
19 those things I was looking for.  I gave it
20 to Sergeant Smith and he doesn't know what
21 happened to it.
22     Q   Do you recall a trip that
23 you took with Mr. Gray and Mr. Mullis to

Page 68

1  Flora-Bama?
2      A   Mr. Mullis?
3      Q   Mullis.  Excuse me.
4      A   To where?
5      Q   To Flora-Bama.
6      A   I do.
7      Q   Do you recall consuming
8  alcohol while driving a city vehicle?
9      A   I did not drive the city
10 vehicle.
11     Q   Who drove?
12     A   Donovan Aries.
13     Q   Who?
14     A   Donovan Aries.
15     Q   How convenient.
16     MS. EDWARDS:  Okay.  No
17 further questions.
18     MR. MITCHELL:  Okay.
19
20     FURTHER THE DEPONENT SAITH NOT.
21
22
23

```
                    Page 69
 1          C E R T I F I C A T E
 2  STATE OF ALABAMA  )
 3  JEFFERSON COUNTY  )
 4
 5      I hereby certify that the above and
 6  foregoing deposition was taken down by me
 7  in stenotype, and the questions and
 8  answers thereto were transcribed by means
 9  of computer-aided transcription, and that
10  the foregoing represents a true and
11  correct transcript of the testimony given
12  by said witness upon said hearing.
13      I further certify that I am neither of
14  counsel, nor of any relation to the
15  parties to the action, nor am I anywise
16  interested in the result of said cause.
17
18  /s/Rhonda W. Head
19  RHONDA W. HEAD, CCR
20  CERTIFICATION NO. AL-CCR-264
21  NOTARY PUBLIC, STATE OF ALABAMA
22  MY COMMISSION EXPIRES: 03-07-2017
23
```

Case 1:14-cv-00392-WKW-SRW Document 69-34 Filed 09/25/15 Page 20 of 27
Case 1:14-cv-00392-WKW-SRW Document 48-6 Filed 09/15/15 Page 20 of 27

**Doug Magill**

2/25/2015

Page 70

**A**

**ABC** 46:7
**ABI** 60:18,20
  60:21 61:1,3,6
  61:16,23 62:6
  63:18,19,21
  64:3,12 67:1,6
**able** 6:19 48:1
**accurately** 6:20
**accuse** 29:12
**acting** 5:4
**action** 1:5
  69:15
**actions** 9:15,17
  32:8
**activities** 45:15
**Administration**
  21:15
**advice** 52:14
**affairs** 7:13,19
  13:21 14:3
  17:4,8 20:8
  23:6 28:19
  32:21 34:7
  38:1 40:17
  41:1 46:10
  51:4 54:22
  55:4,17,22
  58:18 59:3,6
  61:10 62:22
**affiliation**
  55:23
**African** 33:12
  33:15
**AGREED** 1:16
  2:2,9,18
**AL-CCR-264**
  69:20
**Alabama** 1:2
  1:22 3:7,14
  5:2,3,6,10
  69:2,21
**alcohol** 68:8
**allegation**
  28:23 53:12
  55:7
**allegations** 36:5
  44:7

**allege** 13:20
  14:1 39:22
**alleged** 40:19
  43:5 56:11
**allegedly** 34:8
  37:19 42:4,10
**alleging** 8:17
  14:16 16:15
**allow** 44:19
**American**
  33:12,15
**answer** 6:15 7:1
  39:2,7,7 44:15
  55:11,14
**answers** 69:8
**anybody** 35:18
  46:3 60:16
**anybody's** 50:5
**anywise** 69:15
**apparently**
  35:8
**April** 27:1
**area** 63:13
**areas** 63:3,11
**Aries** 68:12,14
**Army** 28:1
**arrested** 20:14
**arrived** 36:15
  36:23
**AS-400** 12:21
  12:21 13:3
**asked** 32:22
  57:5,16 58:2,3
  58:13 60:3,4
  66:1
**asking** 16:18
  51:2 57:23
**assault** 34:11
  35:7 39:20
  42:16 43:16
  43:19
**assign** 2:14
**assignment**
  7:15 23:7
**associated**
  48:21 49:1,5,6
  52:23
**attorney** 11:14

  19:22 26:7
  39:3 52:15
  53:10 63:3
**attorneys** 10:14
  10:17 11:4,5
  11:18 12:2,3,7
  13:14,20,23
  14:4,7
**August** 15:6
  17:6 19:16
  34:12
**AVENUE** 3:13
**avoid** 50:11,20
  51:6 52:3
**avoiding** 52:1

**B**

**B** 4:11
**Bachelor's**
  21:15
**back** 9:3 12:15
  18:16 24:22
  24:23 25:6,7
  26:3,6 31:21
  33:2 44:11
  45:14
**background**
  6:8
**backup** 33:4
**ball** 13:17
**Bama** 47:21
  48:4,19 52:22
  53:13,16,23
**bankruptcy**
  20:20
**based** 45:23
**basically** 64:14
**basis** 28:20
**beer** 39:17
**beginning** 5:10
**believe** 11:9,10
  52:22 64:5
**Benny** 23:12,14
  23:21 36:9,19
  37:1,2,14 41:9
  41:23 42:3,9
  43:3 44:4,18
  44:23 46:1

**Benton** 11:2
  23:3 34:21,22
  35:3 59:11
**Better** 27:9
**big** 65:22 67:3
**binders** 20:2,5
**Birmingham**
  3:7,14 5:2
**blessing** 50:17
  51:5 56:12,20
**book** 15:11,12
**boss** 8:16
**Boyz** 47:21 48:4
  48:19 52:22
  53:13,16,23
**break** 6:22 7:2
  47:18 63:11
**broke** 47:2,16
  63:3
**business** 21:15
  29:1,2,10,11

**C**

**C** 3:1,4 8:12
  69:1,1
**C-a-r-i-e** 8:10
**call** 24:23 25:5
  26:5 31:9,10
  34:20,22
  35:15
**called** 24:22
  26:3,6
**calling** 25:7,21
**canine** 27:5
**capabilities**
  60:5
**capability**
  57:17
**capacity** 10:2
**Captain** 12:20
  14:6 35:8 37:5
  45:3 49:13
  51:3
**car** 27:17
**Carie** 8:9
**Carney** 54:18
**Carpenter** 46:6
**case** 6:8,10 8:3

  9:5,7,9 10:13
  11:19,21 12:1
  12:6 13:4 20:2
  20:4,7 25:12
  25:22,23
  66:16 67:3
**cause** 5:12
  69:16
**CCR** 1:20 5:1
  69:19
**Center** 10:22
**CERTIFICA...**
  69:20
**certify** 5:4 69:5
  69:13
**charge** 8:6
**charged** 20:16
  47:7,11
**Charlene** 30:5
  31:2 33:13
**chased** 31:21
**Chief** 11:2 23:3
  34:21,22 35:3
  59:11
**chief's** 10:19
**chose** 49:17
**CHRIS** 3:10
**CID** 23:18,19
  35:6
**city** 1:10 7:11
  9:20,23 10:8
  14:22 19:11
  22:6 26:19,20
  27:14 28:15
  66:23 68:8,9
**Civic** 10:21
**civil** 1:5 5:6
  25:5,16 26:1,8
**claim** 56:6
**clear** 54:4
**client** 18:12,16
  54:4
**club** 42:15 43:8
  44:8 45:2,8,18
  45:18,20,21
  46:8 47:22
  48:4,5,20
  50:21 51:7,8

**Doug Magill**

Case 1:14-cv-00392-WKW-SRW Document 69-34 Filed 09/25/15 Page 21 of 27
Case 1:14-cv-00392-WKW-SRW Document 48-6 Filed 09/15/15 Page 21 of 27

2/25/2015

Page 71

52:5,5 54:13
56:1,13,22
58:21 59:14
**clubhouse**
34:11 37:6
42:15 43:10
43:12,23 45:3
45:6,14 46:4
**clubs** 21:22
22:3
**college** 21:14
**colors** 50:3
**come** 34:18
35:8
**comments**
37:21 58:9
**COMMISSI...**
69:22
**Commissioner**
1:20 2:19 5:4
**communicati...**
58:15
**compare** 18:2
**compel** 16:7
18:18
**complain** 39:11
**complained**
25:6 29:5
31:11
**complaint**
28:19,21
29:15 30:6,10
30:13,19 31:3
31:4,14 32:3
32:10 37:5,10
37:15,20,22
38:5,9,14,21
39:10 40:1,19
43:6
**complaints**
28:11 29:19
30:2 31:1
33:19,22 34:2
**complete** 14:2
16:13,15
**compliance** 2:5
**computer** 57:3
60:11,15,17

60:19,21 61:3
61:5,13 62:9
62:16 64:1,10
64:11,15,20
65:3,6 66:13
66:19 67:1,5
**computer-aid...**
69:9
**concerning** 6:8
**conduct** 55:21
**conducted** 17:4
**confederate**
65:13
**conference**
10:20,21
**confirmed**
58:14
**confiscate**
46:14
**conflict** 50:20
52:1,4
**consuming** 68:7
**contact** 33:3
36:18 40:5,7
64:5
**contacted** 64:3
**contradictory**
49:19
**convenient**
68:15
**copy** 15:20 57:1
57:9,14,20,22
58:1,3 60:1,4
60:8
**corporal** 11:3
22:20,21 64:7
**correct** 8:14,19
10:9 12:4 15:7
18:21 20:5,9
34:12 39:21
42:1,5,11,12
42:17 43:8,10
43:13,17,20
43:21 44:2,9
44:10,12,15
45:4,5 46:18
46:21,22 47:3
50:12 52:2

53:21 54:8,10
56:13 63:16
66:17,21
69:11
**correctly** 48:7
**counsel** 1:18
2:10,12 5:7
69:14
**counseled** 24:8
24:16
**counselled**
26:15
**counselling**
24:20
**COUNTY** 69:3
**couple** 26:4
**court** 1:1 2:6
5:1,17,20 9:13
10:7 21:7,8
**cover** 19:20
**covered** 16:20
**coworkers**
28:12 29:20
33:23
**crime** 20:17
25:3,9 29:11
47:22 48:1
52:23 53:2
54:8
**criminal** 9:18
26:2 47:4 53:2
**critiquing**
24:13

----

### D

**D** 4:1
**Dame** 21:23
**Darryl** 11:5
**database** 13:3
**date** 5:5 17:13
18:3,3 19:14
19:18 26:12
30:16
**dated** 15:5,6
**dates** 26:22
**day** 1:23 10:20
16:3
**deal** 65:22

**dealings** 62:6
**dealt** 53:23
**Dean** 14:21,23
15:14,21 18:2
18:21 19:9
**December**
22:16
**decides** 19:23
**Defendant** 1:11
3:9
**definitely** 64:19
**definition** 38:11
**deleted** 65:6
**DELVICK**
3:17
**deny** 59:23
**denying** 57:23
**department**
7:16 26:21
39:15,19
54:12 66:23
**DEPONENT**
68:20
**deposition** 1:18
2:3,4,15,19
6:23 7:22 8:7
10:11 39:4
69:6
**depositions** 2:7
9:10
**Derrick** 29:9
**describe** 8:23
**designate** 63:8
**details** 36:1
**difference** 52:7
**difficult** 58:22
**director** 14:21
18:21 19:1
**discharged**
21:2,4,6 28:6
**discipline** 50:2
**disciplined** 24:5
32:17
**discourteous**
30:11
**discovered**
46:19
**discussed** 10:16

**discusses** 53:5
**discussion** 46:1
**district** 1:1,2
26:7
**division** 1:3
7:13 23:11
**document**
18:12 66:11
**documentation**
62:6 66:12
**documented**
9:4
**documents**
12:17 20:12
**doing** 26:8 32:2
**Donny** 11:3
35:11 36:7
**Donovan** 68:12
68:14
**door** 31:21 33:2
**Dothan** 1:10,22
5:10 7:11 9:21
9:23 10:8
14:22 19:12
22:6 26:19
27:9 28:15
39:18 43:15
54:12 66:23
**Doug** 1:19 5:11
5:15 7:9
**Douglas** 7:6
**dressed** 36:13
**drinking** 37:8
39:17
**drive** 68:9
**driving** 68:8
**dropped** 13:17
**drove** 61:7,13
68:11
**drum** 29:1,2
**due** 43:16
**duly** 5:16

----

### E

**E** 3:1,1 4:1,11
69:1,1
**e-mail** 14:19,19

**30:1 31:3**

Doug Magill

Case 1:14-cv-00392-WKW-SRW   Document 69-34   Filed 09/25/15   Page 22 of 27
Case 1:14-cv-00392-WKW-SRW   Document 48-6   Filed 09/15/15   Page 22 of 27

2/25/2015

Page 72

15:9,13,16,19
15:21 16:19
17:6,13,16,20
18:2,3,7 19:15
19:20
**e-mails** 15:12
**earlier** 30:1
31:3 61:16
**EDENTON** 3:6
**education**
21:13
**Edwards** 3:4,5
4:3 5:22 6:2,4
6:6 12:12,15
12:16 16:1,5
16:12,22 17:2
17:11,15,19
17:23 18:6,9
18:15,20
48:14 53:9
54:2 63:9,13
63:17 68:16
**effect** 2:5
**either** 50:2
**else's** 35:18
**employees'**
67:1,5
**encompassed**
55:1,15
**ended** 31:23
**entitled** 16:14
**ESQUIRE** 3:4
3:10,11
**establishment**
39:15
**estate** 25:17
31:2 33:16
**everybody** 11:7
36:17 56:4
**evidence** 2:16
47:2 56:5
58:17 59:12
**ex-wife** 8:4
**ex-wife's** 8:8
**exact** 19:18
26:12 30:15
**exactly** 35:5,10
36:4 59:20

61:20 66:6
**examination**
4:2 5:12 6:3
**examined** 5:17
**examiner** 7:17
**excessive** 31:16
32:14
**Excuse** 63:5
68:3
**Exhibits** 4:13
**exonerated**
29:17
**experience**
56:10
**EXPIRES**
69:22
**explain** 63:1
**explained** 32:23
**extent** 37:9

---
**F**

**F** 69:1
**fact** 53:4,18
**facts** 6:9 17:10
17:18,22
**failed** 13:19,23
**fall** 49:23
**falsely** 17:10
**Faulkner** 21:17
**fault** 13:11,11
**February** 1:23
7:20 22:22
23:7
**federal** 21:8
**fell** 50:4
**felt** 29:8
**fifteen** 14:14
**Fighting** 21:23
**file** 11:19,21,22
12:1,6 13:7
14:3,11,12
16:14,15,20
20:2,4,8 38:8
62:11,23 63:2
66:9 67:17
**filed** 8:4 10:4
20:19 21:6
38:14,21

**files** 10:13
62:13 65:6
**filing** 2:18
**final** 16:13
**find** 15:10 29:9
47:16 48:18
58:10 66:2
**findings** 48:18
67:9
**firefighter**
45:12
**first** 5:16 11:6,6
11:8 45:13
51:23 58:12
**fitting** 39:14
**five** 42:19
**flag** 65:14
**Flora-Bama**
68:1,5
**Florida** 51:19
**following** 5:13
**follows** 5:18
**force** 2:5 31:16
32:14
**foregoing** 5:7
69:6,10
**forensic** 64:10
**form** 2:11
38:17 39:1
40:3,22 41:18
42:19 51:10
55:20
**formal** 38:8,11
**former** 18:23
**found** 12:9
14:17,18
15:12 32:13
47:1 53:19
58:17 59:11
64:15,20 65:3
65:4,4,6 66:13
66:19
**friction** 50:12
51:6
**full** 2:5 7:5
16:13
**further** 2:1,8,17
56:5,7 68:17

68:20 69:13

---
**G**

**gang** 54:19
59:15
**Gerald** 8:6,15
**getting** 31:23
42:13 48:7
**give** 12:11
13:14,19,23
17:13 30:15
35:21 36:1
**given** 12:3,6
69:11
**go** 12:13 17:18
18:11 36:7
49:10 51:20
56:7
**going** 6:7 12:11
16:6 18:11,16
29:3 34:6
35:10,12 36:4
36:8 45:14,15
52:14 54:3
58:9
**Google** 66:7
**graduate** 21:14
**grand** 9:18
**granted** 49:23
**Gray** 1:7 6:6
14:6 16:14
17:5 34:16
35:14 36:6
37:5 38:6,9,15
38:22 39:12
40:1,17 43:19
45:3 46:16,20
47:2 51:3
52:22 53:14
53:17,20 54:1
54:7 55:9 58:9
58:11,12,19
63:15 67:23
**Gray's** 12:20
34:9 35:8
49:13 57:3
60:17 64:15
**Greg** 14:21,23

15:14,21,21
18:20 19:9
**grounds** 2:14
**group** 31:22
**groups** 21:19
21:22
**guess** 5:22
37:22 48:6,7
**guesstimation**
24:2
**guilty** 54:7
**guy** 28:23

---
**H**

**H** 4:11
**half** 24:3
**hand** 42:9 50:6
50:6
**Hand-in-hand**
50:8,10
**handler** 27:5
**happened** 14:6
14:7 67:21
**harassment** 8:5
8:18
**head** 1:20 5:1
6:17,18 15:23
58:20 69:18
69:19
**hear** 16:23
44:22
**hearing** 42:2,8
43:2 44:3
69:12
**hears** 44:23
**hearsay** 42:3
**high** 39:14
**hired** 22:7,9,11
**hold** 22:19
**Holding** 65:13
**home** 9:4
**Honorable** 28:8
28:9
**huh** 50:8
**hundred** 14:14
**hung** 26:2

---
**I**

**IBPO** 21:20

Case 1:14-cv-00392-WKW-SRW   Document 69-34   Filed 09/25/15   Page 23 of 27
Case 1:14-cv-00392-WKW   Document 48-6   Filed 09/15/15   Page 23 of 27

idea 58:23
ignored 26:4
illegal 37:8
important 40:16
improper 48:16
incident 26:14 29:23 34:11 34:14,19
incidents 9:2
included 17:7 20:4 62:21
includes 20:3
indicating 15:15
information 11:18,23 13:19 18:17 42:14 44:4 56:18 58:20 59:8,13,14
informed 25:23 37:4
inside 46:8
instructs 39:6
interested 69:16
internal 7:12 7:19 13:21 14:3,11 17:3,8 20:8 23:6 28:19 32:21 34:7 38:1 40:16,23 46:10 51:4 54:22 55:4,17 55:22 58:18 59:3,6,13 61:10 62:22
interview 50:22 51:23
interviewed 14:6 32:19 58:11
interviews 10:14
intimidating 52:13,17

investigate 25:22
investigated 25:23 30:18 31:12 32:6 45:4 48:13 54:11,17
investigating 39:19
investigation 13:21 14:11 17:4,8 20:9 30:22 31:7 34:8,15 38:2 40:17 41:1 46:11,16 47:1 48:3,19 51:4 52:21 53:19 54:8,15,22 55:2,4,13,15 55:18,22 56:3 56:19 58:10 58:13,16,18 59:3 61:2,10 61:17 62:7,15 63:14 67:9
investigative 13:7 16:13 62:22 67:17
investigator 25:11 60:23 64:4,6
investigator's 62:4 63:23
involved 25:18 31:5,10,12 34:19 35:9 47:22 56:4 61:1 63:18
involvement 54:13 61:22
involving 9:20 25:9
Irish 21:23
IVAN 1:7

J
January 12:22

22:16
Jason 24:18
JEFFERSON 69:3
Jerry 27:16
job 23:18
jobs 33:23 34:4
Jones 1:21 5:9 31:7,8,15 32:6
Jones' 32:8
Jr 7:6
judgment 6:1
June 21:5,6
juries 9:19
juvenile 23:11

K
keep 17:21 51:7
Keith 1:7 6:6 16:14 35:14 36:5 38:5,9,15 38:22 39:12 40:1,17 43:19 46:6,16,20 53:14,17,20 54:1,7 55:9 58:9,11,12 63:15
kept 14:10
kicked 51:19
know 8:5 10:15 12:17 13:10 13:16,22 14:15 16:4,9 16:19 18:8,10 19:8,9,15,17 32:11,12,15 32:16,18 33:5 33:7 35:10 36:7 44:14 46:17 56:3 58:5 59:2,8 60:18 61:19 64:8 67:13,14 67:20
knowledge 6:9 67:7
known 38:7

67:4
L
L 1:14
lady 31:3
Large 5:4
launch 40:22 55:3,17,20
launched 40:16 40:23 41:3 54:21 55:12
law 1:20 3:5 5:8 47:11
laws 2:6 47:3,4 47:17,19
lead 52:21
leading 2:12
leave 52:10,11
leaving 27:8
Let's 12:13
level 21:12
lieutenant 23:12,14,19 23:21,22 28:18 36:9,19 37:1,2,14 41:9 41:22 42:3,9 43:3 44:4,17 44:23 46:1
liquor 37:8
listened 10:13
long 17:18 22:5 22:13,21 23:4 23:13,23 27:20 28:4
look 57:6
looked 12:21 13:2,4 59:7 65:20
looking 12:10 15:11 59:6 67:19
looseleaf 14:13
lost 13:11
lot 61:21
loud 6:16
Luker 23:22
lunchtime 35:1

35:2
lying 57:13,20 64:9

M
M 3:10
ma'am 6:21 7:3 9:11 10:3,6 11:10 15:1 19:13 20:6,13 20:15 21:3 22:4 24:6,9,11 25:10 27:11 27:13 28:9 29:21 33:21 34:1,5,13,17 35:16 37:16 37:23 41:2,14 45:22 48:2 52:19 53:3 54:14,20 57:4 57:8 61:4 67:3
Magill 1:19 5:11,15 6:5 52:12
Main 1:22 5:9
making 17:17 17:22 52:16
Map 66:7
March 21:6
Marie 8:11
marijuana 37:6 37:7 39:16 53:11,13,15 53:17,20
Marked 4:13
Mathews 11:5
matter 25:5 26:1,2
MAYS 3:11
McDaniel 8:6
McGill 7:6
McGoley 58:8
McGuire 37:18 37:19 38:5,14 38:21 39:9,23 40:4,20 42:4 42:10 43:7

Case 1:14-cv-00392-WKW-SRW Document 69-34 Filed 09/25/15 Page 24 of 27
Case 1:14-cv-00392-WKW-SRW Document 48-6 Filed 09/15/15 Page 24 of 27

45:1
**McGuire's** 45:6
**MCKAY** 3:17
**mean** 13:1 20:8
  24:10 25:2
  36:1,12 38:10
  47:6,10,13,23
  49:9 52:10
  55:20 58:22
  59:1 65:8,23
**meaning** 49:10
  64:16
**means** 69:8
**meet** 10:17
**meeting** 11:11
**meetings** 11:1
**member** 21:18
  29:22 34:3
  42:14 43:7
  44:8 45:2,7,9
  45:18,19
**members** 51:7
**mentioned**
  35:14
**mentioning**
  35:18
**met** 10:14
**MIDDLE** 1:2
**Midland** 26:20
  27:14
**Mike** 40:9,9,11
**mistaken** 41:10
**Mitchell** 3:10
  16:4,9,17,23
  17:9,12,17,21
  18:5,8,13,19
  27:16 38:16
  38:23 40:2,21
  41:17 42:18
  48:11,15 51:9
  52:8 53:8,22
  54:3 55:19
  63:6,10 66:1
  68:18
**mix** 13:12
**moments** 36:12
**months** 23:15
  27:21

**Motion** 18:18
**motorcycle**
  34:11 42:14
  43:7,12 44:8
  45:2,8,17,18
  45:19,21
  47:21 48:4,5
  48:19 50:21
  51:7,19 52:5
  54:13,19 56:1
  56:13,22
  58:20 59:14
  61:21
**Mullis** 11:4,4
  57:2,5,13,16
  57:17 59:17
  60:2 62:9,20
  64:2,4,6,7,22
  67:23 68:2,3

―――――――――
          **N**
―――――――――
**N** 1:14 3:1 4:1
**name** 6:5 7:5
  8:8 30:7 35:8
  35:18,21
  37:16 62:4
  63:23
**named** 31:5
**names** 7:8
**nature** 9:1
**necessarily**
  47:13
**necessary** 2:9
**necessitating**
  18:18
**need** 35:10 36:7
  44:12 48:6
  56:7
**needed** 59:22
**needs** 52:9
**neither** 41:11
  41:15 69:13
**never** 20:16
  33:3 51:16
  52:20 54:7,21
  55:12 57:12
  58:2,17 59:10
  60:3,9,10,12

**Motion** 18:18
60:14 67:2
**newspaper**
  65:21
**nicknames** 7:7
**night** 15:4,9
  42:17 43:17
  43:23
**nodding** 6:17
  15:23
**NORTH** 3:13
**Notary** 5:3
  69:21
**notebooks**
  10:12 11:16
  11:16 12:3
**notice** 2:18 63:7
**Notre** 21:23
**November** 22:7
  22:16 27:1
**numbers** 13:4

―――――――――
          **O**
―――――――――
**O** 1:14
**object** 38:16,23
  39:3 40:2,21
  41:17 42:18
  51:9 55:19
**objections** 2:10
  2:13 5:23
**occur** 26:10
**occurred** 33:5
  42:17 43:16
**offered** 2:15
**offhand** 45:11
**officer** 22:12,14
  25:8 29:2,8
  31:7 33:4
  37:12,13
  39:14 40:5,9
  40:14,18 41:5
  41:6,8,12,13
  41:16,19 42:5
  42:10 44:5,17
  45:1 54:12
  62:8
**officer's** 35:9
  59:7
**officers** 13:4

31:22 36:21
**offices** 1:21 5:8
**official** 19:10
**oh** 33:10,11
  50:15 52:6
  64:2
**okay** 6:14 11:7
  17:15 18:5
  20:1 24:19
  43:1 44:21
  48:14 54:2
  63:1 66:4
  68:16,18
**old** 8:16
**once** 49:20
**one's** 24:12
**ones** 11:17
  13:16
**opinion** 25:4
  56:9
**oral** 5:12
**organizations**
  21:19,22
**original** 13:16
**OS** 57:2,14,17
  58:1,3 59:18
  60:10,10,12
  60:14,16
**Outcast** 45:7,20
  56:12 58:8
**outcome** 30:21
  32:9
**outside** 20:12
  54:16 59:14
**overall** 14:10
**Owens** 28:18
**Ozark** 27:17

―――――――――
          **P**
―――――――――
**P** 1:14 3:1,1
**P.C** 1:21 5:9
**p.m** 5:11
**PAGE** 4:2
**pages** 14:14
**paper** 12:8
**paperwork**
  32:2
**parcel** 63:12

**Parrish** 65:5,9
  65:11,19
**part** 13:6,15,20
  14:2 16:19
  61:9 62:14
  67:16
**particular**
  50:19
**parties** 1:17
  2:13 69:15
**partner** 61:15
  61:19
**passed** 59:9,9
  59:12
**passing** 58:19
**patrol** 22:11,15
  27:6 29:1
**pay** 27:9
**PDF** 15:18
**pending** 7:2
**Penn** 24:18
  26:5
**people** 55:8
**percenter** 48:5
  48:20
**percenters**
  48:22 49:4,5
**performance**
  24:13
**permission**
  49:11,21,22
  50:11 56:20
**permissions**
  49:22
**persistent**
  25:21
**personal** 10:2
  65:5,8,10,12
  65:18
**personnel**
  10:21
**phone** 26:3,5
  34:20
**phrase** 48:6
**picture** 65:5,9
  65:10,12,18
**Plaintiff** 1:8 3:3
**PLAZA** 3:12

please 6:12,15
  7:4
point 66:16
pointed 46:7
police 26:20
  39:19 42:15
  43:15 54:12
  66:23
polygraph 7:17
  29:11
polygraphing
  29:4
position 7:10
  19:4 22:9 27:3
  27:18
positions 7:15
  28:12
poster 46:8,9
precipitated
  34:15
precisely 18:1
prepare 10:10
present 3:16
  10:23
president 58:8
pretty 36:14
previous 16:10
  23:19 33:23
  34:4
previously 16:8
print 12:22
printed 15:18
prior 2:16 7:2
probably 23:15
  24:2 30:17
problem 19:19
  25:17
problems 51:22
Procedure 5:6
proceed 36:10
proceedings
  5:13
produce 18:12
produced 16:7
producing
  19:20
production
  16:10,21

professional
  21:19
promoted
  22:20 23:1,16
property 25:11
protection
  51:21
prove 47:20
  48:1,4,12,16
provide 18:7
provided 5:5
  11:17
public 5:3
  29:23 34:3
  69:21
pulling 50:3
purportedly
  18:4
purports 15:5
put 50:17

**Q**

question 6:11
  6:13 7:1 38:19
  42:7,21 48:9
  48:12,16 51:2
  53:23 55:12
  58:23 66:2
questioned 32:7
questions 2:11
  2:12 6:7,16
  34:7 42:19
  68:17 69:7
quick 36:14
quote 35:5
  50:16

**R**

r 3:1 8:9 69:1
race 33:6,13,16
raised 58:7
ran 60:10,12,14
  60:18
rank 22:18,23
  28:2
ranking 39:14
Ray 28:18
reading 2:3
ReaMonica

54:18
reask 6:13
reason 14:9
  24:20 27:7
  51:5
reasons 18:1
recall 26:16
  31:18 40:13
  45:10 57:11
  57:22 59:20
  59:22 61:13
  67:22 68:7
received 14:19
  34:20 56:12
recommended
  59:11
record 7:5
  12:13,14
  38:13,20 54:5
recorded 11:19
recovered 59:3
reference 32:7
referenced 32:4
  32:5
REGIONS/H...
  3:12
relate 46:10
related 42:16
  64:2
relating 2:6
relation 69:14
remained 52:4
remember
  19:17 35:13
  35:17 36:17
  60:22 61:7
  62:3 63:23
rephrase 6:12
  38:18 42:6
  54:6
report 18:4
  23:2,8,13 62:8
  62:10 64:6,21
  66:8 67:10
reported 23:4
  23:12
Reporter 5:2
  5:17,20

reporting 9:3
represent 6:6
representative
  9:22
represents
  69:10
request 14:4
  16:11,21
  18:17
requested
  16:12 51:5
  56:20 57:1,4
  57:14 60:1
requesting
  50:10
reserve 5:23
residence 34:21
resign 27:12
resolved 29:16
respective 1:18
responded 31:9
responsibility
  63:4,12,14
result 69:16
retract 53:6,7
reviewed 10:12
  10:13 11:16
  20:11
RHONDA 1:19
  5:1 69:19
ride 49:11
  50:11 56:20
riding 50:19
  52:4
right 15:15
  16:17 45:10
  48:17 49:6
role 61:16
room 10:20,21
Rude 30:11
rule 49:23 50:5
rules 2:6 5:6
run 18:4 33:1
  57:2,7 60:16
  60:20 64:10
Russell 7:6

**S**

S 1:14,14 3:1
  4:11
S-p-a-n-n 8:13
s/Rhonda 69:18
safe 51:8
SAITH 68:20
sales 27:17
salesman 27:19
sarcasm 52:9
savvy 62:17,17
saying 13:15
  14:5 17:1
  38:12 55:16
  57:19,21 60:9
  61:17
says 12:22 53:9
scene 25:9
  31:13,19,20
  36:10,16 40:5
  42:16 43:16
second 42:8
secondhand
  42:13 43:2
  44:3
see 12:12 17:16
  17:20 18:1
  32:22 35:11
  36:8
sending 29:12
sense 31:11
sensitive 59:13
sent 1:19
  14:19 15:14
  15:22 61:5
  63:2 66:22
  67:5
separate 14:12
  55:4,17,22
sergeant 6:5
  7:12 11:3,13
  23:1,11 24:18
  26:5 36:20
  41:4 44:16,18
  46:5 52:12
  67:20
series 6:7
serve 28:4
served 28:5

**Doug Magill**

Case 1:14-cv-00392-WKW-SRW   Document 69-34   Filed 09/25/15   Page 26 of 27
Case 1:14-cv-00392-WKW-SRW   Document 48-6   Filed 09/15/15   Page 26 of 27

2/25/2015

Page 76

**settled** 9:8
**seven** 28:5
**sexual** 8:5,17
**sheets** 59:7
**Sherrer** 1:21
  5:9
**short** 7:9
**shorts** 36:13
**showed** 31:20
**signature** 2:2
**significant**
  66:16
**six** 23:15
**Smith** 11:3,3,14
  36:20 41:4
  44:16,18 46:6
  67:20
**smoked** 53:20
**smoking** 37:6,7
  39:16 53:12
  53:13,14,17
**social** 21:22
**software** 57:2
  59:18 60:1,8
  60:13,17
**somebody**
  25:22 35:20
  35:22 36:6
**Sonya** 3:4 6:6
**sorry** 19:3 29:5
  30:7 42:23
**sought** 50:16
**South** 22:1
**SOUTHERN**
  1:3
**Spann** 8:9,13
**speak** 36:23
  40:18 41:19
  46:2
**special** 7:15
**specialist** 28:3
**specific** 56:21
**specifically**
  29:7 31:6
  35:14,19
  36:22 53:19
**specifications**
  57:5

**spoke** 41:13,16
  41:22
**squares** 66:7
**stand** 44:20
**standing** 33:8
**start** 28:15 29:3
**state** 5:3 7:4
  69:2,21
**stated** 58:12
  59:10
**statement**
  32:20 45:2
  50:7
**STATES** 1:1
**stating** 17:10
**status** 21:1
**stayed** 32:1
  33:2
**stenotype** 69:7
**STEPHANIE**
  3:11
**Steve** 65:5,9,11
  65:19
**Steven** 31:7,8
  31:15 32:6,7
**STIPULATED**
  1:16 2:1,8,17
**stipulation** 5:7
**stipulations**
  5:21
**stop** 52:9
**story** 58:14
**Street** 1:22 3:6
  5:9
**stuff** 62:17
  64:20 66:5
**stumbled** 15:2
  15:8 17:6
**subject** 16:10
**substantiate**
  56:6
**sued** 10:1
**suit** 10:4
**summarize**
  67:8
**summary** 5:23
**supervisor**
  23:20

**supposedly**
  28:22
**sure** 14:8 26:11
  26:13 33:7
  46:12 66:6
**suspect** 33:11
**Sutherland**
  30:5,9 31:2
  33:14
**sworn** 5:16

_____
             **T**
_____
**T** 1:14,14 4:11
  69:1,1
**tackling** 31:23
**Taiwan** 54:15
  54:22 55:5,8,9
  55:13,18,23
  56:2,6,15,19
**take** 6:19,22
  18:10,13
**taken** 1:19 7:21
  9:10 65:21
  69:6
**talk** 40:11 41:5
  44:16 63:20
**talked** 26:7
  39:9 41:4,8,9
  41:11 46:5
**talking** 40:13
  44:18
**tech** 62:17
**tell** 14:15 28:14
  36:20 37:3
  50:16,21
  51:11,13
  59:17
**telling** 43:1
  63:22 66:14
**ten** 27:21
**terminated**
  27:10
**termination**
  16:16 34:9
  64:18 66:20
**territory** 50:11
  50:20 56:21
**testified** 5:18

  9:12 17:5 55:9
  61:15 65:2
**testify** 9:6 17:3
  62:18
**testimony** 6:19
  9:1 10:7 44:20
  56:17 60:7
  69:11
**testing** 64:11
  67:1,6
**theft** 25:11,14
  25:16
**thereto** 2:16
  69:8
**thing** 17:14
**things** 9:4
  61:20 67:19
**think** 12:11
  21:5 36:13
  39:13 40:15
  46:6 49:19
  61:14 62:12
  64:22,23
**thought** 33:10
**three** 33:20
**Tim** 11:4 29:3
  29:10 57:2,5
  62:20 64:2,22
**time** 2:14,15
  6:10 24:23
  26:12,17
  45:13 46:13
  46:18 58:12
**times** 26:4
**title** 19:7,10
**today** 10:11
  12:9 15:3
**told** 37:13
  51:12 66:2
**Tony** 23:22
**track** 48:8
**transcribed**
  69:8
**transcript**
  69:11
**transcription**
  69:9
**treatment**

  30:12
**Triage** 57:2,15
  57:17 58:1,3
  59:18 60:10
  60:10,12,14
  60:16
**trial** 2:14 9:6
**trials** 9:18
**trip** 67:22
**Troy** 45:12
**true** 69:10
**Truitt** 54:15,23
  55:5,8,13,18
  56:2,6,15,19
**Truitt's** 55:23
**try** 63:1
**trying** 29:1,2,9
  39:9
**turned** 25:15
  25:16
**two** 12:2

_____
             **U**
_____
**U** 1:14
**U.S** 28:1
**uh-huh** 6:18
  38:3 43:4,14
  44:6 49:8
**ultimately** 47:1
**Um** 27:21
**uncomfortable**
  52:17
**uncovered**
  52:20 54:9
  56:18
**underlies** 64:18
**underlying** 6:9
  16:15 34:8
  66:19
**understand**
  6:11 16:18
  20:3 34:10
  36:3 38:11
  39:5,8 42:20
  59:5 61:11,12
  61:12
**understanding**
  46:11

| | | | |
|---|---|---|---|
| **unfounded** 29:18 30:23 | 63:19 64:6,23 | **y'all** 64:23 | **335** 1:21 5:9 |
| **unh-unh** 6:18 46:17 | **weren't** 66:6 | **yeah** 11:9 33:11 36:14 46:5 58:12 63:9 64:12 | **35203** 3:14 |
| **uniform** 65:11 | **West** 1:21 5:9 | | **35242** 3:7 |
| **UNITED** 1:1 | **white** 33:18 | **year** 24:3,3 30:16 | **36301** 1:22 5:10 |
| **unquote** 50:17 | **Willie** 37:18,19 38:4,14,21 39:9,22 40:4 40:19 42:4,10 43:6 45:1,6 | **years** 28:5 | **4** |
| **Usual** 5:20 | | **yesterday** 10:19 11:12 65:1 | **5** |
| **V** | | **Z** | **6** |
| **vehicle** 68:8,10 | **wish** 18:14 | | **6TH** 3:13 |
| **verbal** 24:10,14 24:15 | **witness** 2:3 5:11,16 8:20 8:21,22 10:8 15:23 69:12 | **0** | **7** |
| **verbally** 24:16 26:15 | | **03-07-2017** 69:22 | **7** 4:3 |
| **victim** 24:21,22 25:1,3,9,13,19 31:17 32:1 33:2,6,10,12 33:17 | **witnessed** 51:17 | **1** | **8** |
| | **witnesses** 63:8 | **1:14-CV-00592** 1:5 | **8th** 22:7 |
| | **Wizorek** 29:9 29:13 | **12** 12:23 | **9** |
| **victims** 29:10 | **Woodside** 37:12,13 40:9 40:10,12,14 41:5,6,8,12,13 41:16,20 42:5 42:11 44:5,17 45:1 | **121** 3:6 | **97** 27:1 |
| **violated** 47:11 | | **13** 15:6 17:7 19:17 | **99** 22:16 27:2 |
| **violence** 51:13 51:17 | | **1901** 3:13 | |
| **voluntarily** 18:11,17 | | **1999** 22:8 | |
| **volunteered** 60:7 | **word** 48:15 | **2** | |
| **vs** 1:9 | **words** 43:6 49:13 50:9,18 66:18 | **2:45** 5:10 | |
| **W** | | **2000** 26:11 | |
| **W** 1:19 5:1 69:18,19 | **work** 24:13 26:18,22 27:15,20,22 | **2003** 30:17 | |
| **waived** 2:4,19 | | **2007** 22:17 | |
| **walked** 39:23 | **worked** 22:15 67:2 | **2008** 26:12 | |
| **want** 10:15 18:1 51:21 58:5 | **working** 25:8 25:11 | **2009** 26:12 28:18 | |
| **wanted** 52:3 | **workplace** 8:18 | **2011** 20:23 21:5 22:22 | |
| **wanting** 25:22 | **works** 19:5,6 50:6 | **2012** 12:22 | |
| **wasn't** 13:6 15:11 26:2 31:5 43:23 46:12 47:7,9 59:21 66:10 | **wouldn't** 47:12 | **2013** 7:20 12:23 23:7 34:12 | |
| | **written** 24:10 24:15 39:10 67:10 | **2015** 1:23 | |
| | | **2400** 3:12 | |
| | **wrong** 55:10 | **24th** 34:12 | |
| **way** 6:18 52:13 52:18 | **X** | **25th** 1:23 35:1 | |
| **we'll** 44:19 | **X** 4:1,11 | **28** 15:6 | |
| **we're** 26:8 48:7 | **Y** | **3** | |
| **went** 15:11 61:3 | | **30(b)(6)** 17:2 63:7 | |