IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| RAEMONICA CARNEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:14-CV-392-WKW |
| | ) | [WO] |
| CITY OF DOTHAN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's motion for summary judgment.  (Doc. # 43.)

Plaintiff filed a response (Doc. # 68), and Defendant filed a reply (Doc. # 74).

Upon consideration of the parties' arguments, the evidence, and the relevant law,

the motion is due to be granted.

## I.  JURISDICTION AND VENUE

Subject-matter jurisdiction is exercised pursuant to 28 U.S.C. § 1331, 42

U.S.C. § 1983, and 42 U.S.C. § 2000e, *et seq.*  The parties do not contest personal

jurisdiction or venue.

## II.  STANDARD OF REVIEW

To succeed on a motion for summary judgment, the moving party must

demonstrate "that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The

court must view the evidence and the inferences from that evidence in the light most favorable to the nonmoving party. *Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010).

On a motion for summary judgment, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This responsibility includes identifying the portions of the record illustrating the absence of a genuine dispute of material fact. *Id.* If the moving party does not bear the trial burden of production, it may assert, without citing the record, that the nonmoving party "cannot produce admissible evidence to support" a material fact. Fed. R. Civ. P. 56(c)(1)(B); *see also* Fed. R. Civ. P. 56 advisory committee's note ("Subdivision (c)(1)(B) recognizes that a party need not always point to specific record materials. . . . [A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact."). If the moving party meets its burden, the burden shifts to the nonmoving party to establish—with evidence beyond the pleadings—that a genuine dispute of material fact exists as to each of its claims for relief. *Celotex*, 477 U.S. at 324. A genuine dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return

a verdict in its favor. *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

## III.  BACKGROUND

This lawsuit arises from Plaintiff's employment as a police officer in Dothan, Alabama.  She brought an action alleging employment discrimination, violation of a consent decree, deprivation of First Amendment Rights, and retaliatory hostile work environment.  The specific facts and procedural history will be discussed below.

### A.   Facts

The facts are derived from the evidentiary submissions of the parties and are viewed in the light most favorable to Carney.  The only evidence under consideration is that which is admissible on its face or can be reduced to an admissible form and complies with Rule 56(e) of the Federal Rules of Civil Procedure.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Macuba v. DeBoer*, 193 F.3d 1316, 1322-24 (11th Cir. 1999).  (*See* Doc. # 82.)  The content of the evidentiary submissions will only be addressed to the extent the party offering the evidence makes specific reference to it in a brief.  *See* Fed. R. Civ. P. 56(c).  In addition, affidavit and declaration testimony will only be considered to the extent that the averments contained therein are made on the basis of personal

knowledge and are matters on which the affiant is competent to testify. *See* Fed. R. Civ. P. 56(c)(4).

Facts pertaining generally to the Dothan Police Department will be addressed first. Facts pertaining to Plaintiff's employment will be addressed second.

### 1. *Dothan Police Department*

The Dothan Police Department (the "Department") is a subdivision of the City of Dothan, and the Dothan City Manager supervises the police chief. (Benton Decl., Doc. # 44-6, at 3.) As employees of the Department, all police officers are required to comply with the Department's General Orders. (Benton Decl., Doc. # 44-6, at 3.) And as employees of the City of Dothan, all officers also must comply with rules and regulations promulgated by the Dothan Personnel Board and with general city policies. (Benton Decl., Doc. # 44-6, at 3.) Upon their hiring, all officers receive an employee handbook, which contains the relevant rules, regulations, and orders by which they are bound. (Benton Decl., Doc. # 44-6, at 3.) Any changes to these policies are posted to the City of Dothan's internal computer network. (Benton Decl., Doc. # 44-6, at 4.)

Specifically, officers are bound by the Department's general orders regarding use of social media. General Order 100-52 provides that employees should not engage in speech that will "impair working relationships of [the]

[D]epartment for which loyalty and confidentiality are important, impede the performance of duties, impair discipline and harmony among coworkers, or negatively affect the public perception of the department." (General Order 100-52, Doc. # 44-6, at 13.)

General Order 100-50 prohibits "bringing discredit to . . . the Department, the City of Dothan, or law enforcement in general." (General Order 100-50, Doc. # 44-6, at 17.) General Order 100-50 further provides that officers should refrain from conduct that "adversely affects the morale or efficiency of the Department[,] has an adverse effect on the employee's job performance, or which has a tendency to destroy public respect for employees and confidence in the Department." (General Order 100-50, Doc. # 44-6, at 18.)

In addition, the City of Dothan Personnel Rules and Regulations prohibit "misconduct, contravention of criminal law, or any disgraceful conduct which reflects unfavorably on the City as an employer or public entity." (Personnel Rules and Regs., Doc. # 44-6, at 46.) Those rules also list gross insubordination as an "intolerable offense" for which termination is a mandatory consequence. (Personnel Rules and Regs., Doc. # 44-6, at 49.)

The City of Dothan has previously dealt with issues of workplace discrimination. In 1976, it entered a Consent Decree by which it agreed to refrain from discriminating in employment. (Consent Decree, Doc. # 1-1, at 1-2.) It also

agreed to implement an affirmative action plan with respect to its hiring decisions. (Consent Decree, Doc. # 1-1, at 1-2.)

### 2.   *Carney's Employment*

Plaintiff RaeMonica Carney ("Carney"), a black female, began working as a police officer with the City of Dothan in June of 1999.  (Carney Depo., Doc. # 44-1, at 16.)  She worked within the Department as a police officer from 1999 to 2004, when she moved to Arizona.  (Carney Depo., Doc. # 44, at 17.)  Carney returned to Dothan in 2005, and the Department rehired her.  (Carney Depo., Doc. # 44-1, at 18.)  She continued her employment within the Department until her termination in 2013.  (Benton Decl., Doc. # 44-6, at 8.)

### a.   Assignments

The Chief of Police, as head of the Department, assigns officers to certain roles.  What constitutes a desirable assignment varies based on an individual's preferences, and the assignments do not affect officer pay, rank, or benefits. (Carney Depo., Doc. # 44-1, at 144; Benton Decl., Doc. # 44-6, at 3.)  Carney took several assignments during her employment.

During her initial period of employment, Carney worked in the narcotics and patrol divisions.  (Carney Depo., Doc. # 44-1, at 16.)   In April of 2008, the Department assigned Carney, at her request, to a detail as school resource officer. (McKay Decl., Doc. # 44-5, at 3.)

Carney took an assignment as coordinator of the Department's community watch program in November of 2010.  (McKay Decl., Doc. # 44-5, at 4.)  Gregory Benton ("Benton"), who was the Department's Chief of Police from 2010 to 2015, selected Carney for this assignment.  (Carney Depo., Doc. # 44-1, at 23-24.)  In that capacity, Carney met with and provided training for community members in the Dothan area.  (Carney Depo., Doc. # 44-1, at 23.)  In April of 2011, Carney requested an assignment to the crimes analysis and dissemination division of the Department.  (McKay Decl., Doc. # 44-5, at 8.)  An officer with a higher rank who was already working in that department received the assignment.  (McKay Decl., Doc. # 44-5, at 8.)  That same month, Benton instead assigned Carney to serve as recruiting team member.  (McKay Decl., Doc. # 44-5, at 3.)

In August of 2012, Benton moved Carney to an assignment within the crime stoppers program.  (McKay Decl., Doc. # 44-5, at 4.)  This assignment required extensive visibility within the community.  Carney participated in community meetings, appeared on television, gave interviews for news media outlets, and became generally well-known throughout Dothan.  (Carney Depo., Doc. # 44-1, at 26.)  As part of the crime stoppers program, the Department granted Carney access to TipSoft, a web-based application that allowed the Department to receive crime tips from community members.  (EEOC Charge, Doc. # 44-11, at 2.)

Benton sent a memorandum to all Department employees in November of 2012 notifying them of the opportunity to transfer to the criminal investigations division, but Carney did not submit a request for this assignment. (McKay Decl., Doc. # 44-5, at 8–9.) In January of 2013, the Department again assigned Carney to the role of school resource officer. (McKay Decl., Doc. # 44-5, at 4.)

### b.    Training Opportunities

During her tenure at the Department, Carney took advantage of a number of training opportunities. In all, she attended over 130 training courses. (McKay Decl., Doc. # 44-5, at 9.) Specifically, the Department granted Carney's request to attend the "Every 15 Minutes Coordinators Training" program, providing her with special funds for travel. (McKay Decl., Doc. # 44-5, at 9.)

### c.    Promotions and Testing

Within the Department, individuals begin their employment as police officers. Each officer then has the potential to advance to higher ranks. In order from lowest to highest, the ranks include corporal, sergeant, lieutenant, captain, and major. (Carney Depo., Doc. # 44-1, at 27.)

### i.    Corporal

The Department required that candidates for the rank of corporal take a test, and the Department considered their scores in determining which officers to promote. (Carney Depo., Doc. # 44-1, at 129.) Carney first applied for promotion

to the rank of corporal in May of 2006.  (Carney Depo., Doc. # 44-1, at 128.)    The personnel director at the time determined that Carney was ineligible for promotion due to her initial probationary working status.  (Carney Depo., Doc. # 44-1, at 128–29.)  In May of 2011, Carney applied again for a promotion to the rank of corporal. (Carney Depo., Doc. # 44-1, at 129).    The Department promoted Carney to corporal in September of 2011.  (Carney Depo., Doc. # 44-1, at 128.)

> ii.    Sergeant

Candidates for the rank of sergeant also underwent testing procedures. (Benton Decl., Doc. # 44-6, at 6.)   The Department ranked officers who were eligible for the promotion, determining the order largely on the basis of their test scores.  (Carney Depo., Doc. # 44-1, at 139; Eligible Candidates List, Doc. # 44-5, at 72.)    The Department then awarded promotions in order of this ranking. (McKay Decl., Doc. # 44-5, at 7.)  The scores and rankings remained valid for one year.  (Carney Depo., Doc. # 44-1, at 139.)

In August of 2013, the Department invited all officers to attend an informational meeting regarding promotions.  (Candidate Orientation Email, Doc. # 44-5, at 46.)   At the meeting, candidates received information about how the exam would be administered and how to best prepare.  (McKay Decl., Doc. # 44-5, at 6.)  Carney attended this meeting.  (Attendance List, Doc. # 44-5, at 48.)  Aside

from providing information at this meeting, the Department did not facilitate special training for candidates.  (McKay Decl., Doc. # 44-5, at 7.)

Carney completed the testing procedure in August of 2013, ranking eighth out of the seventeen candidates for sergeant.  (Eligible Candidates List, Doc. # 44-5, at 72.)  Carney believed that when she took the exam, the questions were listed out of order on a flip chart, which affected her score.  (Doc. # 69-2, at 5.)[1]  The Department promoted officers in order of ranking, eventually elevating ten officers to the rank of sergeant.  (McKay Decl., Doc. # 44-5, at 7.)  At the time of Carney's termination, the Department had not yet reached her name in the order of officers eligible for promotion.   (Benton Decl., Doc. # 44-6, at 6.)   The Department promoted at least one black officer from that list.  (Carney Depo., Doc. # 44-1, at 139.)

### iii.    Firearms Testing

The Department conducts periodic firearms testing, and all officers are required to attain a minimum score of seventy on the test.  (Firearms Score, Doc. # 44-5, at 42.)  The results of the firearms test are also used to determine eligibility for the Special Weapons and Tactics ("SWAT") team and the Special Reaction Team ("SRT").  (McKay Decl., Doc. # 44-5, at 6.)  In March of 2013, Carney took

---

[1] The parties dispute whether Carney complained about issues with the text.  Carney stated in her affidavit that she complained about the irregularity to Nichole Gibson, but that her complaint prompted no investigation. (Carney Aff., Doc. # 69-2, at 5.)  McKay stated, however, that Gibson offered Carney an opportunity to review her results, and Carney failed to take advantage of the opportunity.  (McKay Decl., Doc. # 44-5, at 7.)

the firearms test and received a score of ninety.  (Firearms Score, Doc. # 44-5, at 42.)  This score met the minimum required to be considered for SWAT or SRT.  (McKay Decl., Doc. # 44-5, at 6.)

After taking the March 2013 firearms test, Carney challenged the score she initially received, arguing that she did not receive credit for all accurate shots.  (Carney Aff., Doc. # 69-2, at 2.)  The white officer scoring her test gave her credit for only some of the shots she felt she fired accurately.  (Carney Aff., Doc # 69-2, at 2.)  The process of scoring shots on such a test, however, is not wholly objective, and requires some judgment in determining whether shots land within the target or go through an existing hole.  (Carney Depo., Doc. # 44-1, at 50.)

### iv.    Ethics Testing

At some point during the early part of 2013, the Department required that Carney take an ethics test.  (Carney Depo., Doc. # 44-1, at 49.)  She felt that she did not receive credit for a question on the test that she answered correctly.  (Carney Depo., Doc. # 44-1, at 49.)  She reported this issue to Chief Benton.  (Carney Depo., Doc. # 44-1, at 49.)  She did not receive the score she believed she earned, but still received a passing grade.  (Carney Depo., Doc. # 44-1, at 49.)

### c.    TipSoft Access

Though Carney initially had access to the TipSoft program as part of her assignment to the crime stoppers program, the Department removed her access in

11

November of 2012.  (Benton Decl., Doc. # 44-6, at 5.)  Benton made this decision for administrative reasons.  (Benton Decl., Doc. # 44-6, at 5.)  The criminal investigations department was able to respond more efficiently by assigning tips directly to investigators, and Benton felt that transferring administrative access to another officer within criminal investigations facilitated more effective use of the program.  (Benton Decl., Doc. # 44-6, at 5.)  Lieutenant Benny, the officer who received administrative access to TipSoft as a result of Benton's decision, sent an email to Carney notifying her of the change in access.  (Benny Email, Doc. # 44-2, at 220.)

### d.   Facebook Comments

Carney maintained an active personal Facebook page.  (2013 Personnel Board Hearing, Doc. # 44-3, at 54.)  When she posted to that page, the public could view her comments.  (2013 Personnel Board Hearing, Doc. # 44-3, at 54.)  Carney used this forum to comment on various topics, including the infamous saga of police officer Christopher Dorner ("Dorner").  (2013 Personnel Board Hearing, Doc. # 44-3, at 55.)

Dorner, an officer with the Los Angeles Police Department ("LAPD"), killed several fellow officers and civilians.  (*See generally* Dorner Manifesto, Doc. # 44-8, at 26-49.)  In an open letter he penned, which has come to be known as his Manifesto, Dorner confessed to the killings and shed light on the motivations

12

behind his sinister acts.  (Dorner Manifesto, Doc. # 44-8.)    He spoke out against his fellow officers for what he perceived to be a culture of racism and misuse of police power within the LAPD.  (Dorner Manifesto, Doc. # 44-8, at 28.)  He felt that the LAPD terminated him in retaliation for his actions, and that killing others was the only effective response.    (Dorner Manifesto, Doc. # 44-8, at 30.) Authorities eventually tracked Dorner, engaged in a shootout with him, and burned the cabin where he was hiding.  (Smith Decl., Doc. # 44-8, at 3.)

Carney made a series of Facebook posts regarding the Dorner fiasco.  (Smith Decl., Doc. # 44-8, at 2–3.)  Fellow officers described these posts as sympathizing with Dorner and supporting his action.  (*See, e.g.*, Officer's Investigation Report, Doc. # 44-8, at 55.)  A review of the record reveals that Carney made the following Facebook posts regarding the Dorner incident:

> When a person is pushed to the point where they begin to destroy EVERYTHING that once was held in the HIGHEST ESTEEM and EVERYONE who should have stood for what was RIGHT, the one thing they were ready to give up is the only thing they feel taking out will be the solution to restoring the name, respect, and honor that he was revered for:  HUMAN LIFE!!!
>
> We never know what values a person truly has until they stand up, stand firm, and fight for them!!!  Like if you will stand up, stand firm, and fight for the values you have….I WILL!!!!
>
> CNN is playing the audio from the shoot out allegedly [between] Christopher Dorner and San Bernardino Officers….sounds like several hundreds of rounds being fired and none from a semiautomatic weapon….one man can only fire a maximum of two handguns at one time which would equate to roughly 30 rounds with no magazine

exchanges (hard to do with both hands holding guns)…AND the fire was set from outside the cabin not inside the cabin….I'm NOT SURPRISED!!!  Does this not sound like slavery times when mobs would burn blacks just because….

Did law enforcement burn Barker Ranch where Charles Mansen [sic] and his followers lay after killing so many people that the true count is still not known…NO!!!  Instead he and his band of murderers are still sitting in jail being fed by taxpayer dollars…..but ONE MAN who stands for JUSTICE is, if you believe the news story, burned to charred remains by a group of what are supposed to be enforcers of the law and protectors of life but in my opinion are no more than VIGILANTES WITH A BADGE AND GUN!!!  NOT MY BROTHERS IN LAW ENFORCEMENT.

[Facebook] form your own opinion about Christopher Dorner after you read his manifesto at the link below.  'For what shall profit a man, if he shall gain the whole world, and lose his own soul?'  (Mark 8:36-37 KJV). (linking to the Dorner Manifesto)

Christopher Dorner said in his manifesto that no other deaths would occur if those people whom he mentioned in it would simply TELL THE TRUTH which would clear his name… Instead they continued to make matters worse by vilifying a man whose morals, ethics, and integrity were beyond reproach and unquestionable.

In order to clearly understand the position this man was pushed into you would have had to have walked in his shoes and experienced the things he experienced or in the very least experienced something very similar to what he was blowing the whistle on.  I HAVE!!!  Have you?

I understand how you feel….Sometimes the hardest lessons in life are learned [through] death.

You see I think that's where people have misjudged [Dorner's] actions and intentions by referring to them as revenge…it was his way of getting justice for the injustices that he and others suffered at the hands of those people.  JUSTICES FOR THE INJUSTICES!

(Carney Facebook, Doc. # 44-8 at 7–25.)  Before the Department engaged in any formal investigation of the postings, Major Steve Parrish spoke with Carney about her social media activity.  (Carney Depo., Doc. # 44-1, at 60–62.)  He reminded Carney of the personnel rules, and she responded that she appreciated his concern. (Carney Depo., Doc. # 44-1, at 62.)

Benton became aware of Carney's postings when he reviewed Wiregrass Live, a local online discussion forum.  (Benton Decl., Doc. # 44-6, at 6.)  He noticed that Emily Hays, a Dothan citizen, complained about Carney's Facebook posts.  (Benton Decl., Doc. # 44-6, at 6.)  He instructed Sergeants Smith and Magill to investigate the Facebook comments.  (Benton Decl., Doc. # 44-6, at 6.) Equal Employment Opportunity ("EEO") Officer Daryl Mathews ("Mathews") also conducted an investigation.  (Benton Decl., Doc. # 44-6, at 6.)  During the course of the investigation, the Department received seventeen complaints from other officers, many of whom expressed their feeling that, based on Carney's comments, they were uncomfortable with her being called to back them up in a dangerous situation.  (Smith Decl., Doc. # 44-8, at 3.)  The investigators found that there was no doubt Carney condoned Dorner's actions.  (Internal Investigation Report, Doc. # 44-8, at 79.)

After reviewing the investigatory findings, Benton determined that Carney was in violation of General Order 100-52 and Section 3-42(13) of the City of

Dothan Personnel Rules and Regulations.  (Benton Decl., Doc. # 44-6, at 6.) Benton disciplined Carney by suspending her for a period of ten days, removing her from the details to which she was assigned at that time, and relegating her to front desk duty.  (Benton Decl., Doc. # 44-6, at 7.)

Carney appealed Benton's disciplinary decision to the City of Dothan Personnel Board, which included both white and black members.  (McKay Decl., Doc. # 44-5, at 4.)  At the hearing, Carney testified that she felt she would be justified in shooting a co-worker or a co-worker's family members if the co-worker wronged her.  (2013 Personnel Board Hearing, Doc. # 44-2, at 69.)  Based on this statement, the Department required that Carney undergo a psychological evaluation to determine whether she was fit for duty.  (Benton Decl., Doc. # 44-6, at 7.)

Carney also testified at the hearing that other officers within the Department made offensive comments on social media.  (Smith Decl., Doc. # 44-8, at 4.)  The Department investigated these other posts and determined that none of them violated Department policy.[2]  (Smith Decl., Doc. # 44-8, at 4.)  After hearing all the evidence, the Personnel Board upheld Benton's disciplinary action.  (McKay Decl., Doc. # 44-5, at 4.)  Carney appealed the Personnel Board's decision to the

---

[2]  In 2014, the Department disciplined two other officers for making inappropriate comments on Facebook.  One was a white female, and the other was a black male.  (McKay Decl., Doc. # 44-5, at 13.)

Houston County Circuit Court, which also upheld Benton's disciplinary action. (McKay Decl., Doc. # 44-5, at 5.)

### e.    EEOC Charge and Other Complaints

Carney eventually decided to file an official complaint alleging discriminatory practices within the Department.   On February 15, 2013, Carney emailed Delvick McKay ("McKay"), the current Personnel Director for the City of Dothan, informing him of her intention to file an EEO complaint.   (McKay Decl., Doc. # 44-5, at 5.)   McKay forwarded this correspondence to Benton and began gathering relevant information.   (McKay Decl., Doc. # 44-5, at 5.)   Carney submitted her formal complaint to Mathews, the EEO Officer, on February 26, 2013.[3]   (Mathews Decl., Doc. # 44-7, at 3.)   On February 27, 2013, McKay met with Carney to discuss her complaint.   (McKay Decl., Doc. # 44-5, at 5.)   McKay responded to each of Carney's concerns in writing.   (McKay Decl., Doc. # 44-5, at 5.)

On April 26, 2013, Carney filed a Charge with the Equal Employment Opportunity Commission ("EEOC").   (EEOC Charge, Doc. # 44-11.)   Carney

---

[3] Carney contends that the testimony of Mathews and McKay is incredible.  (Doc. # 68, at 10.)   On a motion for summary judgment, the court does not weigh the evidence or make determinations as to credibility. *Lane v. Celotex Corp.*, 782 F.2d 1526, 1528 (11th Cir. 1986).   It merely peruses the evidentiary submissions to determine whether there is a genuine dispute of material fact.  Carney has not submitted evidence rebutting the testimony of Mathews or McKay.

amended her EEOC charge on December 17, 2013, to add retaliation.[4]   (Carney

Aff., Doc. # 69-2, at 1.)  The EEOC issued a dismissal notice of rights on February

19, 2014.  (Doc. # 1-2.)  The City of Dothan never received an amended charge

from the EEOC.  (McKay Decl., Doc. # 44-5, at 8.)

### f.      Office Relocation

In February of 2013, the Department relocated its community services

division.  (Benton Decl., Doc. # 44-6, at 5.)  The new location was closer to a

recreation center, and the Department felt the move would help it attain a stronger

presence in the community.  (Benton Decl., Doc. # 44-6, at 5.)  The Department

sent Carney, as community watch coordinator, and Lieutenant Benny Baxley

("Baxley") to the new location.  (Benton Decl., Doc. # 44-6, at 5.)  Baxley was not

under Department investigation for any misconduct.  (Benton Decl., Doc. # 44-6,

at 5.)  Any tasks Carney performed in the new location were part of the effort to

improve the Department's community presence.  (Benton Decl., Doc. # 44-6, at 5.)

### g.      Domestic Dispute

In December of 2013, Carney and her then-fiancé, Kenneth Cloyd

("Cloyd"),[5] engaged in a verbal dispute while riding in Carney's personal vehicle.

(Carney Depo., Doc. # 44-1, at 110.)  Cloyd eventually exited the vehicle and

---

[4] At some point during her employment, Carney filed a complaint against a fellow officer, alleging excessive force.  (Carney Aff., Doc. # 69-2, at 9.)  She witnessed the officer punching a disabled man while effecting an arrest.  (Carney Aff. Doc. # 69-2, at 9.)

[5] Carney and Cloyd are now married.  (Carney Depo., Doc. # 44-1, at 5.)

began walking toward Carney's home in Dothan, where he had left his own vehicle.  (Carney Depo., Doc. # 44-1, at 111.)  While back at her home, Carney parked her personal vehicle and moved her Department patrol car so that it blocked Cloyd's vehicle.  (Carney Depo., Doc. # 44-1, at 114.)  Cloyd returned to Carney's home on foot and attempted to move his blocked vehicle.  (Carney Depo., Doc. # 44-1, at 115.)

Because he was unable to move his vehicle, Cloyd contacted the Department for assistance.  (Carney Depo., Doc. # 44-1, at 115.)  When officers arrived at Carney's home, they instructed Carney to move her patrol vehicle.  (Carney Depo., Doc. # 44-1, at 116.)  Carney refused.  (Carney Depo., Doc. # 44-1, at 116.) Carney eventually went through the Department dispatcher and requested to speak with Major Steve Parrish.  (Carney Depo., Doc. # 44-1, at 116.)  Major Steve Parrish instructed Carney to follow the instructions of the officers at her home, making it clear that he intended this as an order from police superior to police subordinate.  (Carney Depo., Doc. # 44-1, at 118.)  Carney eventually allowed the officers on the scene to move her patrol car, but she did not allow them to move Cloyd's vehicle.  (Carney Depo., Doc. # 44-1, at 118–19.)  This was in spite of the fact that the officers on the scene and Major Steve Parrish had repeatedly instructed her to do so.  (Carney Depo., Doc. # 44-1, at 118–19.)

In light of this incident, the Department initiated an internal investigation. (Smith Decl., Doc. # 44-8, at 4.)  The Department placed Carney on administrative leave pending the outcome of the investigation.  (Benton Decl., Doc. # 44-6, at 8.) Carney signed a Garrity notice and answered investigators' questions regarding the incident.  (Smith Decl., Doc. # 44-8, at 4.)  The Department held a Notice of Termination hearing at which Carney presented evidence.  (Carney Depo., Doc. # 44-1, at 124–25.)  After the investigation and hearing, the Department terminated Carney's employment for gross insubordination.  (Benton Decl., Doc. # 44-6, at 8.)

Carney appealed the termination to the City of Dothan Personnel Board, which upheld the decision.  (McKay Decl., Doc. # 44-5, at 8.)  She did not appeal the Personnel Board's decision to the Houston County Circuit Court.  (McKay Decl., Doc. # 44-5, at 8.)

## B.   **Procedural History**

Carney initiated this action when she filed a complaint on May 23, 2013. (Doc. # 1.)  The City of Dothan filed this motion for summary judgment on July 17, 2015.  (Doc. # 43.)  Before responding to the motion, Carney sought leave to amend her complaint.  (Doc. # 58.)  That motion was denied.  (Doc. # 62.)  Carney filed a motion to set aside the order denying leave to amend the complaint (Doc. # 67), but that motion will be denied.  Carney responded to the motion for summary judgment on September 25, 2015.  (Doc. # 68.)  Before filing a reply, the City of

Dothan filed four separate motions to strike evidence submitted by Plaintiff (Docs. # 70, 71, 72, and 73).   Those motions were denied.   (Doc. # 82.)   The City of Dothan replied on October 2, 2015.  (Doc. # 74.)

## IV.  DISCUSSION

In the motion now pending before the court (Doc. # 43), Defendant seeks summary judgment as to all counts.   Count I alleges race and gender[6] discrimination under Title VII of the Civil Rights Act ("Title VII").   Count II alleges violations of a consent decree to which Defendant is a party.   Count III asserts a claim for deprivation of Plaintiff's First Amendment rights under 42 U.S.C. § 1983.   Count IV claims Defendant subjected Plaintiff to a retaliatory hostile work environment in violation of Title VII.

**A.**     **Race and Gender Discrimination under Title VII (Count I)**

Carney contends that the City of Dothan's actions constitute discrimination on the basis of race and gender in violation of Title VII.   The first issue to be addressed is the relevant time period under consideration and the events that may form the basis of liability.   The merits of Carney's claims of race and gender discrimination will then be discussed separately.

---

[6] Title VII prohibits discrimination "because of . . . sex."  42 U.S.C. § 2000e-2.  For purposes of this opinion, and because Carney styles Count I as a claim for "gender discrimination," the terms "sex" and "gender" will be used interchangeably.

### 1.   *Timeliness Issues*

Title VII imposes procedural limitations on the actions that may form the basis of liability in an employment discrimination action.   Under § 706 of the statute, a claimant must file an EEOC charge within 180 days of an allegedly unlawful employment practice.   42 U.S.C. § 2000e-5(e)(1).[7]   For purposes of this Count I, which alleges discrete acts of race and gender discrimination, only those practices that occurred within 180 days before the operative EEOC charge may be considered in determining the employer's liability.   *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 103 (2002).   A charge is considered filed upon the date of the EEOC's receipt thereof.   29 C.F.R. § 1601.13(a)(1).

There are two filings at issue in this case.[8]   The EEOC received Carney's initial charge on April 26, 2013.   Accordingly, discrete acts occurring between October 12, 2012, and April 26, 2013, may be considered.   Included within this period are alleged discriminatory actions relating to Carney's opportunities for promotions, work assignments within the Department, training opportunities, the

---

[7] The allegedly unlawful employment practices at issue in this case occurred in the state of Alabama, which is a non-deferral state.   Accordingly, the 180-day period applies.   *See Ledbetter v. Goodyear Tire & Rubber Co.*, 421 F.3d 1169, 1178 (11th Cir. 2005).

[8] Carney filed EEOC charges in 2006 and 2009.   (Carney Decl., Doc. # 69-2, at 1.)   She disputes the City of Dothan's contention that these charges are irrelevant to the instant suit. (Carney Decl., Doc. # 69-2, at 1.)   To the extent that these past charges allege discrete acts of discrimination, those discrete acts are time-barred and may not be considered in relation to the instant Title VII claims.   *See* 42 U.S.C. § 2000e-5(1); *Morgan*, 536 U.S. at 103.   To the extent that they may be relevant to a claim for hostile work environment, those timeliness issues will be addressed separately in Part IV.D, *infra*.

Department's testing procedures, Carney's access to the TipSoft program, access to paid leave, and the Department's disciplinary action in response to Carney's Facebook comments.  Concerns regarding untimely employment actions will be addressed throughout Part A.2, *infra*.

The other filing at issue in this case is a purported amended charge of discrimination, which Carney signed on December 17, 2013.  (Amended Charge, Doc. # 69-5, at 2.)  This amended charge, if properly filed, would encompass the events surrounding Carney's termination, which occurred after her April 26, 2013 charge.  If Carney failed to properly file this amended charge, these additional events may not be considered in connection with this claim of Title VII liability. *See* 42 U.S.C. § 2000e-5(a)(1); *Morgan*, 536 U.S. at 103.

It is clear from the undisputed evidence that Carney prepared and verified this amended charge, but the evidence does not establish whether she ever filed it with the EEOC.  Carney admitted that she is unaware whether her counsel ever submitted this amended form (Carney Depo., Doc. # 44-1, at 151), and the City of Dothan has presented evidence indicating that it did not receive an amended charge.  (McKay Decl., Doc. # 44-5, at 8.)  Because the circumstances surrounding Carney's termination ultimately do not give rise to liability under Title VII, the issue of their consideration under § 706 of the statute need not be decided.  This issue will be addressed in greater detail in Part IV.A.2.i, *infra*.

2.    *Race Discrimination*

Carney first alleges discrimination on the basis of race in violation of Title VII.  Where, as here, a claimant attempts to prove intentional discrimination by circumstantial evidence, the claims are analyzed under the framework set out in *McDonnell Douglas Corp. v. Green*.  411 U.S. 792 (1973).  Under *McDonnell Douglas*, the claimant bears the initial burden of establishing a prima facie case of discrimination.  *Id.* at 802.  The burden of production then shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions.  *Id.*  If the employer provides a sufficient reason, the claimant again bears the burden of showing that the offered reason was merely pretext for unlawful discrimination.  *Id.* at 804.

The elements of a prima facie case are dynamic, necessarily changing with the nature of the underlying factual scenarios.  *Id.* at 802 n.13.  With respect to Carney's claim, there are several categories of employment actions at issue, each of which will be discussed in turn.  They include (a) failure to promote, (b) work assignments, (c) training opportunities, (d) work environment, (e) testing, (f) access to TipSoft, (g) paid leave, (h) Facebook discipline, and (i) termination.

a.    **Failure to Promote**

With respect to issues of promotion, Carney alleges that the Department "promoted white officers with less seniority and experience at a faster rate than

[her]."   (Complaint, Doc. # 1, at 10.)   During her employment with the Department, Carney was eligible for promotions to the ranks of corporal and sergeant.   As it relates to Carney's claim of racially discriminatory failure to promote, the City of Dothan's motion for summary judgment is due to be granted.

### i.      Promotion to Corporal

Carney's claims relating to her promotion to the rank of corporal are untimely.  The Department promoted her to that rank in September of 2011, well before the relevant time period began on October 12, 2012.  Any purportedly discriminatory actions relating to Carney's promotion to corporal occurred outside the relevant time period for this litigation, and therefore are not actionable.

### ii.      Failure to Promote to Sergeant

Though Carney did receive a promotion to the rank of corporal, she never achieved the rank of sergeant.  The City of Dothan does not dispute that Carney successfully presents a prima facie case of discrimination for this employment action.  Instead, the City of Dothan contends that it has offered a legitimate, nondiscriminatory reason for its decision, and that Carney has failed to offer evidence establishing that the reason was pretext for discrimination.

The City of Dothan's arguments are well taken.  The undisputed evidence establishes that the Department promoted candidates in order of ranking, based largely on their sergeant's exam scores.  Carney ranked eighth out of seventeen

eligible candidates.   Though her ranking and eligibility endured for a year, the Department terminated her for other reasons before it reached her in the order.   The Department eventually promoted ten officers from the list, including at least one black officer.   The Department's testing and ranking procedure constitutes a legitimate, nondiscriminatory reason for its failure to promote Carney.

In her affidavit, Carney contends that when she took the sergeant's exam, she was "subjected to an improper set-up of the flip chart," which affected her score.   (Doc. # 69-2, at 5.)   Carney makes no mention of this fact in her brief in opposition to the motion for summary judgment, but the City of Dothan does address it in its own briefing.   Though the court is under no duty to address portions of the record upon which the parties do not rely, [9] this alleged testing issue will be briefly addressed.

Carney's testimony regarding the sergeant's exam, ultimately, is insufficient to allow a finder of fact to conclude that the City of Dothan's legitimate, nondiscriminatory reason was mere pretext for racial discrimination.   There is an issue of fact with respect to whether Carney experienced testing irregularities, but this dispute is not material.   *Waddell*, 276 F.3d at 1279 (holding that a genuine

---

[9] The onus is on the parties to formulate arguments based on the evidence submitted in connection with a motion for summary judgment. *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).   The court need not "distill every potential argument that could be made based on the materials before it on summary judgment . . . .   [G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Id.* (citation omitted).   This is a portion of the record to which the City of Dothan makes reference, so it will be addressed.

dispute of material fact exists when the nonmoving party produces evidence allowing a reasonable fact finder to return a verdict in its favor).  The material element, which Carney must prove, is that the Department engaged in intentional racial discrimination.  The undisputed evidence does show that another black officer, Maurice Eggleston, ranked third out of seventeen candidates for the rank of sergeant.  The Department promoted him to the rank of sergeant based on his high order on the list of eligible candidates.  Carney is unable to identify any preferential treatment given to white officers who ranked higher than her on the eligible candidates list.

The evidence, drawing all inferences in the light most favorable to Carney, only allows for the rational conclusion that the Department failed to promote Carney for a nondiscriminatory reason.[10]  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) ("Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory.").  When the employer offers evidence of a legitimate, nondiscriminatory reason, the plaintiff's burden of

---

[10] Though Carney has come forward with evidence of purported racial issues affecting other City of Dothan employees, none of this evidence comes to bear on the events pertaining to Carney's opportunities for advancement within the Department.  (*See* Davis Aff., Doc. # 69-6, Gray Depo., Doc. # 69-5.)  Carney has failed to show how this "me-too" evidence is relevant to her own experience or claims.  *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008).

showing pretext "merges with the ultimate burden of persuading the court that she has been a victim of intentional discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). On a motion for summary judgment arising in this posture, where the nonmoving party bears the ultimate burden of persuasion, the moving party may prevail by showing that the nonmoving party cannot produce evidence sufficient to establish a material element of the claim. *See* Fed. R. Civ. P. 56(c) (advisory committee note to 2010 amendment).

Here, it is clear that Carney bears the ultimate burden of persuading the court that she is a victim of intentional racial discrimination. *Burdine*, 450 U.S. at 256. Though Carney has come forward with evidence suggesting that she experienced testing irregularities, she has not come forward with any evidence suggesting that the test administration, the score she received, or her ranking among eligible officers resulted from intentional racial discrimination. Because she has failed to come forward with this evidence, she has failed to carry her burden, even as a nonmoving party, on this motion for summary judgment. Fed R. Civ. P. 56(c).

Ultimately, the City of Dothan failed to promote Carney because it had reason to terminate her before it reached her name in the list of eligible candidates. Because she has failed to introduce any relevant evidence from which a finder of fact could reasonably conclude that the City of Dothan's promotional decision

constituted racial discrimination, Carney has failed to establish the existence of a genuine dispute of material fact on this issue. The motion for summary judgment will be granted as to this aspect of Carney's claims.

### b. Work Assignments

Carney also alleges that the City of Dothan determined her work assignments in a discriminatory manner. (Doc. # 1, at 10.) Specifically, she alleges that the City of Dothan offered preferential assignments to white officers, removed Carney from her assignment duties and reassigned them to a white officer, denied Carney's requests for assignments within the Investigative Division and the Hostile Negotiation Team, and stripped her of her duties as community watch coordinator, crime stoppers coordinator, and recruiting team member. (Doc. # 1, at 4, 6–7, and 10.)

Under the burden-shifting framework set out in *McDonnell Douglas*, Carney must first establish a prima facie case of discrimination with respect to her work assignments. 411 U.S. at 802. Though the precise contours of the prima facie case depend on the nature of the employment action being challenged, every claimant must show, at a minimum, that she suffered an "adverse employment action." *Davis v. Town Lake Park*, 245 F.3d 1232, 1238 (11th Cir. 2001). To rise to an actionable level under Title VII's anti-discrimination clause, the employment action must result in a "serious and material change in the terms, conditions, and

privileges of employment." *Id.* at 1239.  Whether the action is sufficiently material or serious is an objective inquiry, and does not depend on the employee's subjective interpretation of the events.  *Id.*  For purposes of this summary judgment motion, Carney must offer evidence establishing a genuine dispute of material fact with respect to whether she suffered an adverse employment action as a result of her work assignments within the department.

Changes in work assignments generally are not actionable under Title VII. *Id.* at 1245.  Delegation of tasks and allocation of human resources are activities that fall uniquely within the judgment and expertise of the employer.  *Id.* at 1244. Where the employer is a public entity, such as a police department, these concerns are equally relevant.  *Id.*  And mere changes in work-related duties, where unaccompanied by changes in compensation or other tangible conditions of employment, generally are not material under the meaning of the statute.  *See id.* at 1245.

In this case, it is undisputed that work assignments within the Department do not affect directly officer pay, rank, or benefits.  The evidence also establishes that what constitutes a desirable assignment is subjective, depending on the preferences of the individual officer.  To the extent Carney claims that the Department discriminated in determining her work assignments, these events do not constitute adverse employment actions.

Even assuming, without deciding, that the Department's removal of Carney from her roles within the community watch and crime stoppers programs was sufficiently material to constitute an adverse employment action, the City of Dothan offers a legitimate, nondiscriminatory reason for making this change. As discussed in Part IV.A.2.h., *infra*, the Department took this action based on Carney's violation of an established social media policy, and Carney has failed to offer sufficient evidence of pretext to carry her burden under the *McDonnell Douglas* framework. As it relates to Carney's allegations of racial discrimination in work assignments, Defendant's motion for summary judgment will be granted.

### c.      Training Opportunities

As to training opportunities within the Department, Carney alleges that the City of Dothan offered better opportunities to white officers. (Doc. # 1, at 10.) To establish a prima facie case of discrimination based on denial of training opportunities, Carney must show that  she suffered an adverse employment action in connection therewith. To show that denial of a training opportunity constitutes an adverse employment action, the claimant must establish that the training opportunity itself was material. *Johnson v. Gestamp Ala., LLC*, 946 F. Supp. 2d 1180, 1202 (11th Cir. 2013) (citing *Turlington v. Atlanta Gas & Light Co.*, 135 F.3d 1428, 1435 n.16 (11th Cir. 1998)).

In support of this motion for summary judgment, the City of Dothan has come forward with evidence establishing that the Department did not deny Carney of any material training opportunities. In response, Carney has submitted no evidence indicating that the Department denied her any training opportunities. For purposes of the instant motion, Carney has failed to establish the existence of a genuine dispute of material fact as to this issue. Accordingly, as it relates to Carney's claims of discrimination based on denial of training opportunities, the motion for summary judgment is due to be granted.

### d.    Work Environment

Included in Count I is Carney's allegation that the City of Dothan "offered white officers a better work environment." (Doc. # 1, at 10.) Carney does not address this aspect of her claim in response to the motion for summary judgment. This "work environment" allegation, inasmuch as it relates to Count I, is deemed abandoned. *See Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001). Issues relating to Carney's hostile work environment claim will be addressed in Part IV.D, *infra*.

### e.    Testing

As to issues involving the Department's testing procedures, Carney alleges that white officers received "preferential treatment." ( Doc. # 1, at 10.) The tests at issue include an ethics test, a firearms test, and the sergeant's exam.

i.      Ethics Test

The alleged scoring error the Department made in grading Carney's ethics test does not constitute an adverse employment action.  Carney took the ethics test in question in early 2013.  Though she took issue with the way the Department graded her responses, she ultimately received a passing score on this test.  The evidence establishes that this alleged error in scoring had no tangible effect on Carney's employment.  *See Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1261 (11th Cir. 2001).  Accordingly, it cannot form the basis of Title VII liability.

ii.     Firearms Test

Any issues with the firearms test likewise do not constitute adverse employment actions.  Carney took the firearms test in March of 2013.  She challenged the score she received, but alleges that the scoring officer did not give her credit for all accurate shots.  She received a score of ninety on the exam.  Not only did this constitute a passing score, but it also met the minimum requirements to be considered for SWAT or SRT.  Carney also admitted that she was not seeking a position on SWAT or SRT.  These alleged errors did not result in any "tangible, negative effect" on Carney's employment.  *Lucas*, 257 F.3d at 1261.

iii.    Sergeant's Exam

With respect to the sergeant's exam, Carney alleges irregularities in administration of the oral portion of her test.  As discussed in Part IV.A.2.a.ii,

*supra*, Carney has not come forward with evidence establishing that the alleged testing irregularities resulted from intentional racial discrimination. The evidence only allows the conclusion, drawing inferences in the light most favorable to Carney, that any alleged testing irregularities occurred for nondiscriminatory reasons. Accordingly, the motion for summary judgment is due to be granted with respect to all issues of testing.

### f.   TipSoft Access

As part of Count I, Carney also alleges that the Department engaged in racial discrimination by restricting her access to "computer programs given to white officers that better enabled them to perform their duties." (Doc. # 1, at 10.) The computer program at issue is TipSoft, which allows the Department to receive and act upon tips from community members in conjunction with the crime stoppers program. The evidence establishes that the Department, through Chief Benton, changed administrative access to the program because he determined that the change would allow for more efficient administration of the program. This constitutes a legitimate, nondiscriminatory reason for rescinding Carney's administrative access. Carney has not come forward with evidence suggesting this reason was pretext for unlawful discrimination. *McDonnell Douglas*, 411 U.S. at 802–04. Defendant is entitled to summary judgment as to this aspect of Carney's claim.

### g.    Paid Leave

Carney also alleges, in Count 1 of the complaint, that the City of Dothan "credited white officers with more paid leave time" than her.  (Doc. # 1, at 10.)  In support of this motion for summary judgment, the City of Dothan has offered Carney's deposition testimony, in which she admitted that she cannot identify any officers who received more paid leave.  (*See* Carney Depo., Doc. # 44-1, at 32.)  Carney offers no evidence to support her claim on this issue of paid leave.  Without any evidence supporting this claim, Carney cannot make out a prima facie case of discrimination.  *McDonnell Douglas*, 411 U.S. at 802.  There is no genuine dispute of material fact with respect to paid leave, and the City of Dothan is entitled to judgment as a matter of law on this portion of Count I.   Summary judgment, therefore, will be entered in favor of Defendant as to the issue of paid leave

### h.    Facebook Discipline

Carney further alleges that the Department engaged in racial discrimination when it suspended her without pay and placed her on probation for violations of its social media policy.  (Doc. # 1, at 10–11.)  According to Carney's allegations, the Department failed to discipline white officers who committed similar or worse offenses.  (Doc. # 1, at 11.)  Because Carney cannot make out a prima facie case of discrimination, and because the Department has offered an unrebutted legitimate,

nondiscriminatory reason for disciplining Carney, the City of Dothan is entitled to summary judgment on this aspect of Carney's claim.

First, Carney has failed to make out a prima facie case of discrimination. Specifically, she has not shown that the Department treated similarly situated white officers more favorably. *See Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003). The Department suspended Carney because it determined that her Facebook comments, which it determined to be supportive of Dorner's murderous actions, violated its social media policies. Carney complained that other officers posted on social media in violation of the policy, but the Department investigated those other comments and determined that they were not violative of city policy. These officers cannot be considered similarly situated because their posts were not objectionable in the way Carney's posts were. The undisputed evidence establishes that the Department did in fact discipline other officers, both black and white, for posts that did violate its policies.

Second, assuming *arguendo* that Carney establishes a prima facie case, the City of Dothan is entitled to summary judgment based on its legitimate, nondiscriminatory reason for disciplining Carney. As will be discussed in more detail in Part IV.B, *infra*, the Department determined, after a full investigation, that Carney's Facebook commentary ran afoul of its established policies. This is sufficient to constitute a legitimate, nondiscriminatory reason under the *McDonnell*

36

*Douglas* framework.  411 U.S. at 802–04.  Carney has offered no evidence that this reason was pretextual.  Because Carney cannot make out a prima facie case of discrimination, and because the Department took action for a legitimate, nondiscriminatory reason, Defendant's motion is due to be granted as to this issue.

### i.   Termination

Carney further contends that the City of Dothan engaged in racial discrimination when it terminated her for gross insubordination.  (Doc. # 1, at 11.) She alleges that white officers engaged in similarly objectionable conduct, but were not terminated.  (Doc. # 1, at 11.)  Ultimately, these contentions are without merit, and the motion for summary judgment is due to be granted.  Issues of timeliness will be addressed first.  Then the merits of her claims will be discussed.

Carney's initial charge of discrimination, which the EEOC received on April 26, allows her to bring this action with respect to discrete acts occurring between October 12, 2012, and April 26, 2013.  The Department terminated Carney on December 17, 2013, long after she filed her initial charge.  Because this event did not occur within the period encompassed by the April 26, 2013 charge, Title VII's procedural bar requires that she file a new charge covering her termination.  *See* 42 U.S.C. § 2000e-5(e)(1).

Carney submitted an amended charge, but it does not bear the EEOC's imprimatur of receipt.  The City of Dothan avers that it never received the

amended charge, and Defendant's counsel represents that she could not secure a copy in response to a Freedom of Information Act Request.  (Doc. # 43, at 81.)  It is unclear whether Carney in fact filed the amended charge such that she exhausted her administrative remedies under Title VII.  Because Defendant is entitled to summary judgment for other reasons, this issue need not be resolved.

Even if it is assumed without deciding that Carney exhausted her administrative remedies with respect to issues of termination, summary judgment is appropriate on this issue for two reasons.  First, Carney cannot make out a prima facie case of discrimination.  Second, she cannot establish that the City of Dothan's legitimate, nondiscriminatory reason was pretext for discrimination.

To make out a prima facie case of discrimination, Carney must show that the Department treated similarly situated employees of other races more favorably than her.  *Knight*, 330 F.3d at 1316.  To constitute a similarly situated employee, the comparator must be similar to the plaintiff in all respects.  *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).  This includes being involved in or accused of similar misconduct.  *Id.*  Here, Carney has produced no evidence tending to show that another Dothan officer engaged in the sort of misconduct for which the Department terminated her.  It is undisputed that Carney repeatedly disobeyed orders from a superior officer, which, in the Department's view, constitutes gross

insubordination.  Carney has offered no evidence establishing that an officer of another race received more favorable treatment in response to insubordination.

Carney also has brought forth no evidence indicating that the City of Dothan's legitimate, nondiscriminatory reason for terminating her was pretext for discrimination.  The Department has established that, pursuant to established city policy, termination is a mandatory consequence of gross insubordination.  It has also established that Carney refused to obey the orders of a superior officer during a domestic dispute at her home.  Carney has offered no evidence to establish a genuine dispute of material fact, and has not offered any evidence establishing that this reason was pretextual.  As to Carney's claim for discrimination in her termination, the City of Dothan is entitled to summary judgment.

### j.    Failure to Investigate

Carney's final allegation under Count I relates to the Department's response to her internal complaints.  She alleges that when she heard racist jokes and slurs in the workplace, she complained to management.  (Doc. # 1, at 8.)  According to Carney, the City of Dothan failed to investigate these complaints.

In response to these allegations, the City of Dothan presents evidence establishing that these contentions are without merit.  When Carney complained to Benton and McKay about perceived mistreatment, the Department took prompt action.   McKay and Mathews investigated and responded to each of her

allegations.  Carney has not come forward with evidence of any other complaints to which the Department should have responded.  The undisputed evidence shows that the City of Dothan properly responded to Carney's complaints, and Defendant is entitled to judgment as a matter of law.  Because Defendant has satisfied the requirements of Rule 56(a), summary judgment will be entered in Defendant's favor.

### 3.    *Gender Discrimination*

In addition to her allegations of racial discrimination, Carney contends that the City of Dothan treated her unfairly on the basis of her gender.  In support of her gender claims, Carney states, in conclusory fashion, that the Department discriminated against her on the basis of sex.  (Doc. # 1, at 11.)  In fact, the factual allegations in the complaint only mention her sex four times.  (*See* Doc. # 1, at 7, 10, and 11.)  In response to the motion for summary judgment, Carney makes no arguments regarding this alleged gender discrimination.  *Resolution Trust*, 43 F.3d at 599 ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").  She also fails to cite any specific evidence regarding gender discrimination.  (*See generally* Doc. # 68.)

The City of Dothan has presented ample evidence establishing that it did not unlawfully discriminate against Carney, be it on the basis of her race or on the basis of her sex.  Carney has failed to rebut this evidence, and it is clear that there

are no genuine disputes as to any material fact.   For the same reasons that Defendant is entitled to summary judgment as to Carney's racial discrimination claims,[11] it is also entitled to summary judgment as to her claims of gender discrimination.

## B.   Violation of Consent Decree (Count II)

Defendant is entitled to summary judgment as to any claim allegedly arising under the Consent Decree.   Pursuant to the Consent Decree, which is dated February 13, 1976, the City of Dothan agreed to refrain from discriminating in employment and to implement an affirmative action hiring plan.  (Consent Decree, Doc. # 1-1, at 1–2.)

On its face, the Consent Decree does not provide a separate right of action to Carney.  Contempt is the proper vehicle for enforcement of such an order.  Rather than alleging violation of the order in a separate proceeding, as Carney has done here, a party seeking to enforce a consent decree should file a motion in the case from which the decree emanated.  *See Lyon v. Ashurst*, No. 2:08-cv-394, 2008 WL 3821832, at *8 (M.D. Ala. Aug. 13, 2013).   Other than to urge the court to

---

[11] Each of Carney's alleged bases of racial discrimination fails for one or more of the following reasons:  failure to exhaust administrative remedies; inability to show that the relevant event constitutes an adverse employment action; inability to make out a prima facie case of discrimination; and inability to show pretext in the face of the City of Dothan's legitimate, nondiscriminatory reason.   *See* Part IV.A.2, *supra*.   If Carney's evidence regarding racial discrimination was insufficient to overcome this motion for summary judgment, it follows *a fortiori* that her claims of gender discrimination, which enjoy no evidentiary support, likewise cannot survive the instant motion.

entertain this cause of action in the interest of "judicial economy," Plaintiff has expended no effort in rebutting the City of Dothan's arguments as to Count II. With respect to this purported cause of action, there are no genuine disputes of material fact, and Defendant is entitled to judgment as a matter of law.

## C.   <u>Deprivation of First Amendment Rights Under § 1983 (Count III)</u>

In Count III, Carney alleges that she is entitled to relief under 42 U.S.C. § 1983 for deprivation of her First Amendment rights.   Though all persons are entitled to protection under the First Amendment, a public employee enjoys limited rights to freedom of speech.  *Bryson v. City of Waycross*, 888 F.2d 1562, 1565 (11th Cir. 1989) (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)).

To succeed on a claim under § 1983 for First Amendment retaliation, a public employee must show (1) that she was speaking as citizen on a matter of public concern, (2) that her interests as a citizen outweighed the interests of her employer, and (3) that the speech played a substantial or motivating role in the adverse employment action.  *Vila v. Padron*, 484 F.3d 1334, 1339 (11th Cir. 2007). In the interest of clarity, the speech at issue will be briefly reviewed.  The elements of Plaintiff's case will then be discussed.

### 1.   *Plaintiff's Speech*

The speech giving rise to Plaintiff's First Amendment claim appeared on her Facebook page.   She made a series of comments regarding Dorner, a Los Angeles

policeman who murdered fellow officers and civilians in retaliation for perceived injustice in his workplace. Carney made comments in which she likened the LAPD's response to a lynching, characterized LAPD officers as vigilantes, accused the LAPD of murder, encouraged others to read Dorner's manifesto, upheld Dorner as a man of laudable morals, and described Dorner's actions as justified. When the Dothan Personnel Board questioned Carney about these statements, she confirmed that she too would feel justified in killing co-workers or their relatives if they wronged her.

Dothan community members and Carney's fellow officers responded negatively to Carney's posts. One Dothan citizen took to an online forum to complain, asking whether the Department would tolerate this sort of officer misconduct. Seventeen officers within the Department filed formal complaints relating to Carney's posts, noting that the comments affected their ability to work with Carney. The Department responded by suspending Carney, reassigning her to front desk duty, and removing her from any other official assignments.

### 2. *Carney was Speaking as a Citizen on a Matter of Public Concern*

To ultimately prevail on her First Amendment claim, Carney must first show that she was speaking as a citizen on a matter of public concern. *Vila*, 484 F.3d at 1339. The resolution of this threshold issue determines whether the speech in question implicates the First Amendment at all. *Id.* Where a public employee

makes a statement pursuant to her official duties, the First Amendment does not insulate her from employer discipline. *Garcetti v. Ceballos*, 547 U.S. 410, 421–22 (2006). Neither is her speech protected where she speaks as an employee on a personal matter. *Vila*, 484 F.3d at 1339. For speech to be deemed a matter of public concern, it must relate to a matter of "political, social, or other concern to the community." *Watkins v. Bowden*, 105 F.3d 1344, 1353 (11th Cir. 1997).

For purposes of this summary judgment motion, there is sufficient evidence in the record to support a finding that Carney was speaking as a citizen. Carney did, in connection with her involvement in the crime stoppers program, make frequent public appearances on behalf of the Department. But there is no evidence indicating that Carney's official duties included posting comments on her personal Facebook page. *See Garcetti*, 547 U.S. at 421–22. It is clear that she was commenting on the Dorner incident in her private capacity as a citizen.

There is also sufficient undisputed evidence to support a finding that Carney was speaking on a matter of public concern. Though it is true that Carney's commentary on the Dorner incident alluded to her own experiences as a Department employee, these individualized aspects of her speech do not overcome its ultimately public nature. *Morgan v. Ford*, 6 F.3d 750, 755 (11th Cir. 1993) ("An employee's speech will rarely be entirely private or entirely public."). The gravamen of Carney's commentary was to complain about perceived improprieties

44

within a government agency; to wit, she alleged wrongdoing on the part of the LAPD. *See Akins v. Fulton Cnty.*, 420 F.3d 1293, 1304 (11th Cir. 2005) (holding that employee speech was on a matter of public concern where the employee complained of wrongdoing within a county government). The fact that Carney lodged these complaints on a public Facebook page, an undeniably open forum, bolsters the finding that they were public in nature. *Id.*

### 3.    *The City of Dothan's Interests Outweigh Carney's Interests*

As to the issue of balancing interests, the undisputed evidence establishes that the City of Dothan's interests in taking disciplinary action against Carney outweigh Carney's interests in freedom of speech. Under this prong of the First Amendment retaliation analysis, the claimant must show that her interests in freedom of speech outweigh the employer's interest in maintaining an efficient workplace. *Pickering*, 391 U.S. at 568.

In striking a balance between these interests, courts consider whether the employee's speech impairs the ability of superiors to discipline subordinates, affects harmony among co-workers, impairs working relationships for which loyalty and confidence are necessary, or interferes with the operation of the government entity. *Rankin v. McPherson*, 483 U.S. 378, 388 (1987). Crucially, where the employer is a law enforcement agency, there is a "heightened need for

order, loyalty, morale, and harmony" among officers.  *Oladeinde v. City of Birmingham*, 230 F.3d 1275, 1293 (11th Cir. 2000).

Applying these principles to the facts of this case, it is evident that the scale tips in favor of the City of Dothan.  Carney's Facebook statements impaired the confidence of her fellow officers, garnering seventeen internal complaints.  Several officers within the Department stated that they would not feel comfortable having Carney back them up in a dangerous situation.  Carney, an officer who frequently represented the Department at community events, publicly discredited the actions of another law enforcement organization.  At least one citizen took to an online discussion forum to speak out against Carney's behavior, indicating the erosion of the community's trust in the Department as a result of her speech.  It is clear that the interests of the City of Dothan in ensuring efficient operation of the Department outweigh the interests of Carney in exercising her limited First Amendment rights.

In light of this finding, the final element of the prima facie case need not be addressed.  Carney has not submitted evidence establishing a genuine dispute of material fact relevant to this claim, and it is clear that Defendant is entitled to judgment as a matter of law.  Accordingly, as it relates to Count III, Defendant's motion for summary judgment is due to be granted.

**D.** **Retaliatory Hostile Work Environment Under Title VII (Count IV)**

In Count IV of her complaint, Carney contends that the City of Dothan is liable for subjecting her to a retaliatory hostile work environment. Issues of timeliness, as they are relevant to Carney's exhaustion of administrative remedies, will be discussed first. The merits of Carney's retaliatory hostile work environment claim will be addressed second. Third, liability for discriminatory hostile work environment will be discussed. The City of Dothan ultimately is entitled to summary judgment on Count IV.

**1.** *Timeliness Issues*

Under Title VII's procedural bar, a plaintiff must file an EEOC charge within 180 days after an unlawful employment practice. 42 U.S.C. § 2000e-5(e). When alleging discrete acts of discrimination, a plaintiff may only recover for acts that occurred within the 180-day period covered by the EEOC charge. *See Morgan*, 536 U.S. at 114. Discrete acts, which are easy to identify, include termination, failure to promote, denial of transfer, and failure to hire. *Id.*

When a plaintiff brings a claim for hostile work environment, however, the procedural bar applies in a nuanced fashion. Hostile work environment claims arise from a series of events that collectively constitute actionable employment discrimination. *Id.* at 117. The continuing nature of the violation is such that acts occurring outside of the 180-day period may be properly under consideration. *Id.*

47

This continuing violations doctrine, however, cannot be used to wedge untimely discrete acts into the hostile work environment paradigm.  If a singular event is actionable on its own, and it occurs outside the 180-day period, it cannot form the basis of a hostile work environment claim.  *See Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 970 (11th Cir. 2008) (holding that work assignments, which constituted discrete acts, are not part of a hostile work environment); *Crayton v. Ala. Dep't of Agric. & Indus.*, 589 F. Supp. 2d 1266, 179–80 (M.D. Ala. 2008) ("[A] discrete act cannot be part of a hostile environment claim and instead constitutes a separate unlawful employment practice.").  Accordingly, only events that are timely or non-discrete in nature may be considered in connection with Count IV.

The City of Dothan contends that there are several discrete, untimely events that should be excluded from consideration with respect to Carney's hostile work environment claim.  These include failures to promote and work assignments that occurred after Carney's April 26, 2013 Charge.  (*See* Doc. # 1, at 16–17.)  If Carney's amended charge is effective, these events are properly under consideration.  As discussed in Part IV.A.1, *supra*, it is unclear whether Carney in fact filed this amended charge with the EEOC.  Even taking these potentially untimely, discrete acts into consideration, the evidence establishes that Carney's

hostile work environment claim is without merit.   Accordingly, this issue of timeliness need not be decided.

### 2.   *Retaliatory Hostile Work Environment*

To establish a prima facie case of retaliatory hostile work environment, a claimant must show that "(1) she engaged in protected activity; (2) after doing so, she was subjected to unwelcome harassment; (3) her protected activity was a 'but-for' cause of the harassment; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of her employment; and (5) a basis exists for holding her employer liable either directly or vicariously." *Swindle v. Jefferson Cty. Comm'n*, 593 F. App'x 919, 929 n.10 (11th Cir. 2014).   These elements will be addressed as they apply to Carney's claim.

### a.   **Protected Activity**

Carney bases her retaliatory hostile work environment claim on two instances of purported protected activity.   First, she contends that she engaged in protected activity when she complained about perceived mistreatment of fellow officer Sylvia Summers ("Summers").   The City of Dothan argues that this complaint cannot constitute protected activity because Carney has failed to show that any of the alleged harassing officers knew of this protected activity.   (*See* Doc. # 43, at 90 (citing *Brown v. City of Opelika*, 211 F. App'x 862, 863 (11th Cir. 2006).)   Whether decision makers knew of the protected activity, however, speaks

49

to the causation element of the prima facie case. Complaining about the mistreatment of other officers constitutes a protected activity. Whether the protected activity is causally linked to the alleged harassing conduct will be address in Part IV.D.2.c, *infra*.

Carney further alleges that she engaged in protected conduct when she filed her EEOC charge of discrimination on April 26, 2013. The parties agree that this charge is protected activity that can form the basis of a retaliatory hostile work environment claim.

### b.    Unwelcome Harassment

In support of her claim, Carney alleges that the Department denied her promotional opportunities, transferred her to a new office location, suspended her for ten days without pay, removed her from certain work assignments, demoted her to front desk duty, subjected her to a psychological exam, subjected her to racial jokes and slurs, placed her on probation, and terminated her employment. (Doc. # 1, at 16–17.) The City of Dothan contends that, with respect to several of these alleged harassing incidents, the Department's conduct does not constitute harassment. It argues that any action it took for a legitimate, non-retaliatory reason cannot, by definition, constitute harassment. (Doc. # 43, at 91.) Whether the Department took action for non-retaliatory reasons goes to the causation element of the prima facie case, and accordingly will be addressed in Part IV.D.2.c, *infra*.

### c.  Causation

In its motion for summary judgment, the City of Dothan contends that Carney fails to establish that her protected activity was the but-for cause of any alleged harassing conduct.  First, it argues that Carney cannot establish that any decision maker knew of her complaints regarding Summers.  Second, it contends that, with respect to several instances of allegedly harassing conduct, it can show that it took action for a legitimate reason.  Third, it argues that Carney's misconduct severs any causal connection between her protected activity and the adverse employment action.

### i.  Decision-Makers were Unaware of Summers Complaints

With respect to her complaints regarding the mistreatment of Summers, Carney fails to come forward with evidence establishing that any Department decision-makers were aware of these complaints.  Accordingly, she cannot establish the causation element of her retaliatory hostile work environment claim. *Brown*, 211 F. App'x at 863.  In her deposition, Carney stated that she could not identify any officers within the Department who were privy to these complaints. (Carney Depo., Doc. # 44-1, at 47.)  Carney cites no evidence even establishing that she made these complaints.  Accordingly, this activity cannot form the basis of Carney's retaliatory hostile work environment claim.  Carney's filing of the EEOC charge therefore is the only protected activity that can form the basis of this claim.

ii.     The Department's Legitimate Reasons

The City of Dothan has come forward with evidence establishing that it took each of the allegedly harassing employment actions for a legitimate, non-retaliatory reason.[12]   Though the City of Dothan offers this evidence to show that the actions it took do not constitute harassment, it is more properly considered as showing that Carney cannot prove the causation element of the prima facie case.[13]

It is true, as Carney notes, that the causation inquiry operates differently in discrete action and hostile work environment claims.   Whereas the question of

---

[12]   In the context of a claim for discriminatory retaliation, and where proof of discriminatory intent is offered by way of circumstantial evidence, courts apply a burden-shifting scheme akin to the *McDonnell Douglas* framework.  If the plaintiff makes out a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate reason for the adverse employment action.  *Sullivan v. Nat'l R.R. Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999).  If the employer proffers a legitimate reason, the burden shifts back to the employee to show that the legitimate reason was pretext for prohibited retaliatory conduct.  *Id.*

Under this burden-shifting framework, the employer's legitimate reason for taking adverse action against the employee seems to merge with the causation element of the prima facie case.  That is, if the employer took each individual action for a legitimate, non-retaliatory reason, then the protected activity was not a but-for cause of aggregate hostile work environment, which is the ultimate adverse employment action in a retaliatory hostile work environment claim.

In this case, the City of Dothan's legitimate reasons for taking each action will be addressed in conjunction with the causation portion of the discussion.  If Carney were able to make out a prima facie case, the evidence the City of Dothan has brought forth would apply with equal force to rebut it.  *See Sullivan*, 170 F.3d at 1059.  But because Carney cannot establish the requisite elements of the prima facie case, this evidence need not be analyzed in that posture.

[13]   The City of Dothan contends that employer conduct constitutes harassment only where it causes substantial distress and serves no legitimate purpose.  (Doc. # 43, at 91 (citing *United States v. Tison*, 780 F.2d 1569, 1570 (11th Cir. 1986).)  This definition of harassment derives from the Victim and Witness Protection Act, 18 U.S.C. § 1514, which relates to intimidation of witnesses and informants.  The City of Dothan has cited no authority suggesting that Congress intended this definition of harassment to apply in the Title VII context.  Because this motion for summary judgment can be disposed of on different grounds, the City of Dothan's invitation to apply definitions across statutes will be declined.

causation in a discrete action claim focuses singularly on the but-for cause of each employment action, the question in a hostile environment case is more holistic, focusing on whether the protected activity was the but-for cause of the harassing environment. *See Gowski v. Peake*, 682 F.3d 1299, 1313 (11th Cir. 2012). But the particular reasoning of *Gowski*, on which Carney relies, is inapposite.

The *Gowski* court held that the employer's successful invocation of the same-decision defense, which allows the defendant to show that it would have made the same employment decision despite the presence of discriminatory intent, is insufficient to undermine the causation element of a retaliatory hostile work environment claim. *Id.* But the same-decision defense is only relevant in mixed-motives cases, where the plaintiff demonstrates that race (or some other protected characteristic) was a motivating factor in the challenged employment practice. 42 U.S.C. § 2000e-2(m); 42 U.S.C. § 2000e-5(g)(2)(B). *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 94–95 (2003).

In this case, there has been no finding—and there is insufficient evidence to support a finding—that discriminatory animus was a motivating factor in the employment actions at issue. Accordingly, this is not a mixed-motives case, and the implications of the same-decision defense have no bearing on the outcome of the City of Dothan's motion for summary judgment. Put another way, there is no finding of discriminatory animus cutting against the City of Dothan's legitimate

reasons for taking each discrete employment action.  If the City of Dothan took each allegedly harassing action for a legitimate, non-retaliatory reason, then it stands to reason that Carney's protected activity was not the but-for cause of the alleged resulting hostile environment.

Here, the City of Dothan has offered substantial evidence showing that it took all allegedly harassing employment actions for legitimate, non-retaliatory reasons.  This evidence is sufficient to show that, in the aggregate, the allegedly harassing environment to which Carney was subject is not causally linked to her protected activity.  The legitimate reasons will be briefly addressed.

As to any alleged denials of promotions, it is evident that the City of Dothan took these actions for legitimate reasons.  It initially denied her promotion to corporal because new hires were placed on probationary working status.  It eventually promoted her to corporal when she was eligible.  The Department determined that Carney was eligible for a promotion to sergeant, but circumstances forced it to terminate her before it reached her name in the promotions list.  Carney's protected activity clearly was not the but-for cause of these promotional decisions.

With respect to Carney's transfer to a new office location, it is clear that the Department took this action for a legitimate reason unrelated to her protected activity.  In order to attain a stronger presence within the community, the

Department moved its community services division to a new location closer to a city recreation center.  The Department moved a white male officer to this new location as well.  It is clear that Carney's protected activity was not the but-for cause of this relocation.

The City of Dothan likewise subjected Carney to a psychiatric evaluation for legitimate, non-retaliatory reasons.  When Carney testified at a Personnel Board hearing regarding disciplinary actions taken against her, she stated that she would feel justified killing her fellow officers or their family members under certain circumstances.  The Department, in an effort to ensure that Carney was fit for duty, and out of understandable concern for the safety of officers and community members, ordered the psychiatric exam to determine her fitness for duty.  The Department was justified in taking this action, and it clearly was not retaliating against Carney for her protected activity.  *See Watson v. City of Miami Beach*, 177 F.3d 932, 935 (11th Cir. 1995) (holding that a police department may, as a matter of business necessity, order a fitness for duty exam whenever it has reason to believe that an officer is even mildly paranoid, oppositional, or hostile).

It is also clear that the Department suspended Carney for a legitimate, non-retaliatory reason.  The suspension followed the Department's investigation of Carney's Facebook posts about the Dorner incidents.  After a lengthy investigation, the Department determined that Carney had violated its social media policies and it

disciplined her accordingly.  Both the City of Dothan Personnel Board and the Houston County Circuit court upheld this disciplinary action.  Carney's protected activity was not the cause of this challenged action.

With respect to work assignments, it is clear that the Department had a legitimate reason for removing Carney from certain duties and placing her on front desk duty.  As with the suspension, the Department made these reassignments to discipline Carney for her violation of the social media policy.  For this same legitimate reason, the Department placed Carney on probation.  There is no evidence indicating that the probationary period resulted from retaliatory animus.

As for Carney's termination, to the extent this event contributed to a hostile working environment, it is clear that protected activity played no role in the Department's decision.  Carney repeatedly violated orders from a superior officer, using her official Department vehicle to impede the resolution of a domestic dispute.  The Department itself did not initiate this domestic dispute, nor did Carney.  Cloyd called for assistance, and in compliance with its duties, the Department responded to the call.  When Carney used the official dispatcher to contact a superior officer, she invited her superior officers to give her official orders in her official capacity as an officer.  Whether, when, and how either Carney or Cloyd initiated or perpetuated this unfortunate episode is of no moment; the relevant consideration is Carney's gross insubordination.  It is clear that the

Department terminated Carney for a legitimate reason unrelated to her protected activity.

The only remaining element contributing to the alleged retaliatory hostile work environment is use of "racial jokes and slurs" within the Department. Carney brought forth evidence of only one such joke or slur.[14] She testified that another officer referred to her shift as the "soul patrol." (Carney Depo., Doc. # 44-1, at 147.) Carney admitted that this comment took place several years ago, and she has offered no evidence establishing that this comment was in response to her filing an EEOC complaint. It is clear from the undisputed evidence that this isolated comment was in no way related to Carney's protected activity.

Assuming *arguendo* that this spate of allegedly harassing conduct is collectively sufficient to constitute a hostile work environment, Carney has offered no evidence indicating that her EEOC complaint was the but-for cause of its creation. Nothing in the record suggests that the Department took these separate actions in a concerted effort to punish Carney for engaging in protected activity. In fact, the undisputed evidence shows that the Department reacted appropriately to her EEOC complaint, diligently investigating and responding to each allegation of discrimination. The record is devoid of evidence from which a finder of fact could

---

[14] Carney also mentioned an instance in which an officer from a northern state was called a "Yankee." (Carney Depo., Doc. # 44-1, at 147.) This does not appear to be related to race, and Carney makes no effort to argue that it is so related.

conclude that Carney's protected activity was the but-for cause of the alleged harassing conduct.  For this reason, the City of Dothan is entitled to summary judgment on Count IV.

iii.    Carney's Misconduct Severs the Chain of Causation

The City of Dothan finds further support for its motion for summary judgment in the fact that Carney's misconduct severs the chain of causation.  It is clear that her suspension, work reassignments, probation, and termination resulted not from her complaints of discrimination, but rather from her violation of established policies.  She violated social media policy, and she engaged in gross insubordination.  It is clear that this misconduct is sufficient to sever any causal chain that might exist between her protected activity and the alleged harassing conduct.  *See Fleming v. Boeing Co.*, 120 F.3d 242, 248 (11th Cir. 1997).

**d.    Severe or Pervasive Harassment**

The City of Dothan is also entitled to summary judgment because the undisputed evidence shows that the alleged harassment to which Carney was subjected was not severe or pervasive.  Carney produced evidence of one incident of the use of a racial joke or slur.  According to Carney, a white officer within the Department referred to her patrol as the "soul patrol."  It is clear that this constitutes a mere offensive utterance rather than conduct that is threatening or humiliating.  *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).  This isolated

comment cannot be said to be so severe or pervasive as to have a material effect on the terms and conditions of her employment.

Ultimately, the City of Dothan is entitled to summary judgment on Carney's retaliatory hostile work environment claim. Carney has failed to establish a genuine dispute of material fact with respect to the causation element of her claim. She has also failed to offer evidence establishing a dispute of material fact regarding whether she experienced severe or pervasive retaliatory harassment. The evidence the City of Dothan has brought forth, which Carney has failed to rebut in any material way, establishes that this claim is without merit and that the City of Dothan is entitled to judgment as a matter of law. Accordingly, as it relates to the claim for retaliatory hostile work environment, the City of Dothan's motion for summary judgment is due to be granted.

### 3.   *Discriminatory Hostile Work Environment*

Though Carney styles Count IV as a claim for retaliatory hostile work environment, her pleading and the arguments she makes in response to the motion for summary judgment indicate that she also intends to assert a claim for discriminatory hostile work environment. For the same reasons her claim for retaliatory hostile work environment fails, any claim for discriminatory hostile work environment also must fail.

Specifically, Carney has not submitted sufficient evidence to establish the existence of a genuine dispute of material fact regarding whether the alleged harassment she faced was based on her status as a black woman. *See* Part IV.D.2.c, *supra* (discussing the legitimate, non-discriminatory reasons for which the City of Dothan took allegedly harassing actions). It is evident that, for every action allegedly contributing to the existence of a hostile work environment, the City of Dothan had a legitimate, nondiscriminatory justification for its conduct. In addition, Carney fails to establish the existence of a genuine issue of material fact regarding the severe or pervasive nature of the alleged harassment. *See* Part IV.D.2.d, *supra* (discussing the paucity of evidence that would support a finding that Carney faced severe or pervasive harassment). The record is insufficient to support a finding that Carney faced harassment of a magnitude sufficient to alter the terms and conditions of her employment. The City of Dothan therefore is entitled to summary judgment as to the entirety of Count IV.

## V. CONCLUSION

Accordingly, it is ORDERED that Defendant's motion for summary judgment (Doc. # 43) is GRANTED. It is further ORDERED that Plaintiff's motion to set aside order on motion for leave to file amended complaint (Doc. # 67) is DENIED as moot.

A separate final judgment will be entered.

DONE this 28th day of January, 2016.

                 /s/ W. Keith Watkins
                CHIEF UNITED STATES DISTRICT JUDGE